IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA          ) Greensboro, North Carolina
                                  ) September 3, 2014
    vs.                           ) 10:57 a.m.
                                  )
BRIAN DAVID HILL,                 )
                                  ) Case No. 1:13CR435-1
    Defendant.                    )
_____    )

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE WILLIAM L. OSTEEN, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:   TIMOTHY NICK MATKINS, AUSA
                      Office of the U.S. Attorney
                      PO BOX 1858
                      Greensboro, North Carolina 27402


For the Defendant:    ERIC D. PLACKE, AFPD
                      Office of the Federal Public Defender
                      301 N. Elm Street, Suite 410
                      Greensboro, North Carolina 27401

Court Reporter:     Joseph B. Armstrong, RMR, FCRR
                    324 W. Market, Room 101
                    Greensboro, NC  27401

Proceedings reported by stenotype reporter.
Transcript produced by Computer-Aided Transcription.

P R O C E E D I N G S

1     (At 10:57 a.m., proceedings commenced.)

2     (Defendant present.)

3     MR. MATKINS:  Your Honor, the final matter the

4  Government will call this morning is United States versus Brian

5  David Hill, 1:13CR435-1.  Mr. Hill is represented by Attorney

6  Eric Placke, and the matter is before the Court for a motion.

7     THE COURT:  Mr. Hill, you may have a seat.  I'm going

8  to talk to Mr. Placke first.

9     All right, Mr. Placke.  Presently before the Court is

10  your motion to withdraw in light of the most recent letter sent

11  by Mr. Hill in this case.  As I read the motion to withdraw, it

12  certainly expresses some concern about the allegations made by

13  Mr. Hill with respect to counsel's performance, but it also

14  seems to me to say that at this point in time the Court needs

15  to make a decision on whether I should remain in this case; and

16  if the Court decides that I should, then I can certainly

17  continue and see this to conclusion.  Is that summary fair?

18     MR. PLACKE:  That's a fair summary, Your Honor.

19     THE COURT:  All right.  Mr. Hill, I'm going to speak

20  with you a minute.  You are represented by counsel in this

21  case, which means you have an absolute right to remain silent.

22  Do you understand that?

23     THE DEFENDANT:  (Nodding.)

24     THE COURT:  Mr. Hill?

US v. Hill - Motion - September 3, 2014

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And if you choose to address the Court

3    or, as you've done, to write a letter to the Court, then I can

4    take that information contained in that letter or that is

5    provided in your statements, and not only me or the

6    Government -- the Government also, we can consider that against

7    you in this case.  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  So if you choose to speak, that's

10   ultimately your choice to give up this right you have to remain

11   silent and have your attorney speak on your behalf.  Do you

12   understand that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  And if ultimately you do decide to say

15   something, and you hurt your case or hurt your future, that's

16   your responsibility.  Do you understand that?  It's part of the

17   decision you make.

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you understand that?

20         THE DEFENDANT:  Um-hum.

21         THE COURT:  Now, having warned you about that, you've

22   written a letter making allegations against Mr. Placke with

23   respect to some of the facts of the case and some other

24   information you want investigated, and you sent that to the

25   Probation Office.  I've seen that letter.  Knowing that I've

US v. Hill - Motion - September 3, 2014

1  seen that letter that you wrote, is there anything else you

2  want to say?

3          THE DEFENDANT:  I have evidence, Your Honor, a

4  four-page declaration of lawyer that I have sent to the State

5  Bar and I have sent to the clerk of court, but it's not been

6  filed on the docket yet, Your Honor.  The papers are right over

7  here.  And pretty much it contains all the facts that my

8  counsel has not done a good enough job to prove my innocence.

9  My counsel has basically not suppressed the evidence when there

10  was evidence of such.  And in these four pages, it explains

11  everything.  That is the reason why I withdraw Mr. Placke as

12  counsel.

13          THE COURT:  All right.  So you and Mr. Placke are

14  still talking to each other; is that correct or incorrect?

15          THE DEFENDANT:  I did meet with him one time, but

16  other than that, we haven't -- well --

17          THE COURT:  When you have met, when the two of you

18  have been together, are you able to speak with Mr. Placke?  I'm

19  not talking about agree or disagree with what's going on.  I'm

20  just asking can you talk to him?  Have you been talking to him?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And you disagree now with what Mr. Placke

23  recommended you do with this case, is that correct?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Do you remember appearing here in court

1  and being placed under oath?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And do you remember pleading guilty?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And you remember telling me that you were

6  pleading guilty because you were, in fact, guilty?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And are you now coming in here and

9  telling me that's not true?

10          THE DEFENDANT:  Permission to speak?

11          THE COURT:  Just a yes or no.  Are you coming in here

12  and telling me that's not true?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  So after making -- so if that is, in

15  fact, the case, why did you tell me something false during a

16  Rule 11 hearing?

17          THE DEFENDANT:  Basically, I was being rushed into

18  the jury trial, and all my evidence that I had sent to the

19  court never made docket, and all the suppression stuff never

20  made it.  I basically sent stuff to the Clerk of Court with the

21  reasons why, but basically my health is bad.  My A1C is 10.9.

22  That's verifiable with the FCI Butner medical records.  Because

23  of my health, because of the rush to jury trial, and the fact

24  that there was no defense being sent, that Placke didn't have

25  any kind of defense, I would have been found guilty on the spot

with up to 20 years hard time in prison.  I wanted to fight on

my own, but then my family told me over there -- you know, when

they were sitting over there, they said take the guilty plea,

take the guilty plea, and I was like what?  And I was wondering

why do they want me to take the guilty plea.  And I learned

later that basically they said I would have been found guilty

on the spot.  So I had no chance to -- I had no chance to be

able to submit evidence.  Everything just -- you know, it's a

combination, lack of --

THE COURT:  Let me ask you a question.  From your

perspective, who was responsible for rushing you to a jury

trial?  Whose fault was that?

THE DEFENDANT:  N.C. Tilley, Jr.

THE COURT:  Judge Tilley's the one?

THE DEFENDANT:  Yeah.

THE COURT:  That actually is pretty close to a

correct answer.  Mr. Placke can't control when cases are called

for trial.  The judges do.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  The law says you have a certain amount of

time to prepare for trial under the Speedy Trial Act; but once

that time frame is met, it's up to the judges of this district,

whichever judge is assigned your case, to ultimately decide

when your case gets called for trial, correct?

THE DEFENDANT:  Yes, sir.

1          THE COURT:  And what I hear you saying to me right

2    now is that you were interested in perhaps having a little more

3    time yourself, but your family told you to take the plea in the

4    case, correct?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And you listened to them?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  So tell me this.  Did your family give

9    you good advice or bad advice?

10         THE DEFENDANT:  Bad advice.

11         THE COURT:  All right.  But that was their advice?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Now, what is the condition you just

14   mentioned earlier, diagnosed by Butner?

15         THE DEFENDANT:  My A1C was 10.9.

16         THE COURT:  What's your A1C?

17         THE DEFENDANT:  A1C blood hemoglobin level is the

18   level of a three-month average where the higher the level, that

19   means my blood sugars have been more higher, and it can affect

20   my ability to think clearly, and it can also cause

21   complications such as kidney failure, eyesight failure, nerve

22   damage.  The longer my A1C stays up, my health deteriorates

23   with a high A1C average.

24         THE COURT:  All right.  All right.  Let's -- have you

25   been evaluated during the course of this case?

US v. Hill - Motion - September 3, 2014

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  By a psychologist or a psychiatrist?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And are there any other conditions that

5  you have that you are aware of?

6          THE DEFENDANT:  I think so.

7          THE COURT:  What is it -- what do you think?

8          THE DEFENDANT:  I know I have mild autism, OCD, and,

9  you know, obsessive compulsive disorder, and, you know, I have

10  a lot of anxiety, so general anxiety disorder.

11          THE COURT:  And so is it fair -- do those -- and I'm

12  not trying to embarrass you.  I just need to get to the bottom

13  of this issue that you have raised.  You mentioned OCD,

14  obsessive compulsive disorder.  When you were originally

15  debriefed in this case -- or when you were originally arrested

16  and confronted by law enforcement, you told those officers that

17  someone else must have downloaded those images to your

18  computer, is that correct?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Am I remembering correctly, Mr. Placke?

21          MR. PLACKE:  In part, Your Honor.  There was a

22  noncustodial interview conducted the day after the search

23  warrant.  It was recorded, and I've listened to it several

24  times, played it with Mr. Hill.  That was said initially.

25  Later, the course of the interview changed, and Mr. Hill told

 1  the officers that he had downloaded child pornography.

 2          THE COURT:  That's right.  There was an initial

 3  statement, and then later that changed.

 4          Mr. Hill, ultimately, you can tell -- you can talk to

 5  your lawyer about whatever you think might be helpful to you in

 6  defending a case.  Do you understand?

 7          THE DEFENDANT:  Yes, sir.

 8          THE COURT:  But at the end of the day, the question

 9  becomes what evidence will be presented by the Government, what

10  evidence will there be of what you say may have occurred.  Do

11  you understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  So let's say that Mr. Placke went out and

14  got all this evidence to support what you have said about

15  somebody else must have downloaded these images to my computer.

16  You're still left with a problem, and that is you've admitted

17  that you did it.  Do you understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you understand the problems that that

20  causes?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And do you understand that those are

23  things you need to discuss with your attorney?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Regardless of who that is?

```
1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  And do you understand that your attorney

3    may disagree with you on the wisdom of going to trial when

4    there is mixed evidence, some that might show somebody else did

5    it, and some that might show you did it.  Do you understand

6    that?

7              THE DEFENDANT:  Um-hum, yes.

8              THE COURT:  And so seizing on to one piece or one

9    thought, somebody else did this, may not be in your best

10   interest.  Do you understand that?  I'm not saying it is or it

11   isn't.  I'm just asking if you understand that concept?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  So would you agree or disagree with me

14   that while there may be some things that you wish could be done

15   differently that you and Mr. Placke did discuss the options

16   that were available to you.  Do you agree with that?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  And do you agree that you and Mr. Placke

19   tried to make the best -- or the decision that was in your best

20   interest at the time whether to go to trial or plead guilty?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  And at this point in time you're not

23   happy about that decision, is that correct?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  But at the same time in talking to me
```

about this, do you at least a little bit understand how that

may have been -- the decision to plead guilty may have been an

appropriate decision at the time?  Do you understand that?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  All right.  Now, in terms of Mr. Placke,

you disagree with some of the -- or don't like some of the

things he did or didn't do on your behalf, correct?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  Now -- but in terms of the way this case

has proceeded, hindsight's always 20/20, but I don't hear a lot

of doubt in your mind that Mr. Placke was trying to do what was

in your best interest, and at least at points you agreed with

him; is that correct?

          THE DEFENDANT:  I don't think so, no.

          THE COURT:  You don't think so.

          THE DEFENDANT:  I mean, with all the evidence, I've

pretty much got four witnesses to the fact that I was

threatened to falsely confess, and I have two witnesses to the

fact that the computer was being used by the police detectives

before it was sent to the state crime lab.

          THE COURT:  All right.  That's the information you've

got in that piece of paper?  That's information developed after

you had entered a guilty plea?

          THE DEFENDANT:  Yeah.

          THE COURT:  And who are the four witnesses?

1          THE DEFENDANT:  My mother, Roberta Ruth Hill.

2          THE COURT:  The same person who told you to plead

3  guilty?

4          THE DEFENDANT:  Yes.  And the second witness is

5  Stella Forinash.

6          THE COURT:  Who's she?

7          THE DEFENDANT:  My grandma.

8          THE COURT:  Another one that was telling you to plead

9  guilty?

10          THE DEFENDANT:  Yeah.

11          THE COURT:  All right.

12          THE DEFENDANT:  The third witness is my grandpa,

13  Kenneth Forinash.

14          THE COURT:  And he was also here the day of your

15  guilty plea, wasn't he?

16          THE DEFENDANT:  Yep, um-hum.

17          THE COURT:  And who else?

18          THE DEFENDANT:  Myself.

19          THE COURT:  All right.  And you, as we discussed

20  earlier, stood up and said under oath that you were pleading

21  guilty because you are, in fact, guilty, correct?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Mr. Hill, let me make a comment.  I don't

24  know how your case is going to end up.  You have some mental

25  and emotional difficulties.  You seem to be relatively bright.

US v. Hill - Motion - September 3, 2014

You also seem to be very pleasant to talk to.  You are

represented by an attorney in this district who works for the

Federal Public Defender but is a very, very fine criminal

defense lawyer.  And I can understand someone in your

condition, having entered a guilty plea, looking back and

thinking maybe I could have done something different or maybe

something would have worked out otherwise.  Have you seen your

presentence report at this point?

THE DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  And my guess is the guideline calculation

calls for a pretty lengthy sentence, doesn't it?

THE DEFENDANT:  Yes.

THE COURT:  And that's got you second guessing

whether or not you should have taken the plea, is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  But you don't know yet how this case is

going to work out, do you?

THE DEFENDANT:  No.

THE COURT:  And it's very hard to trust a lawyer when

there is so much uncertainty, correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  But would you agree with me that maybe

the better path is to continue to trust in Mr. Placke's

judgment in this case since he understands and has been through

this type of case before?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  All right.  Listen to me.  Why in the

3    world would you, who have never been through something like

4    this before, make a decision that runs against what somebody

5    who is very well-experienced in this has told you?

6          THE DEFENDANT:  Well, I believe I have enough

7    evidence to challenge the case and that with the letters I've

8    sent to the FBI, the letters I've sent to the DOJ, I have

9    worked hard in trying to challenge the evidence that the

10   Government has so that I would be able to have enough evidence

11   with an investigation to overturn -- overturn the evidence that

12   the prosecution has and prove my innocence.

13         THE COURT:  All right.  Anything else, Mr. Hill?

14         THE DEFENDANT:  Pretty much I submit these papers to

15   the Court.

16         THE COURT:  All right.  Mr. Placke, do you want me to

17   take a look at the papers?

18         MR. PLACKE:  Your Honor, I haven't seen the most

19   recent --

20         THE COURT:  Why don't you look at them first.

21         MR. PLACKE:  If I may.

22         THE COURT:  You may.  Let's take about a 10-minute

23   recess and let Mr. Placke look at those papers.  Then we'll

24   come back.  Mr. Matkins, you may -- I don't know how much you

25   know about this case.  I believe, if I remember correctly, the

Government agreed that Mr. Hill could plead to the zero to 10,
is that right?

MR. PLACKE:  That's correct, Your Honor.

THE COURT:  Zero to 10 possession offense.  I think
that no matter what the guideline range may show, I don't
believe your office is pushing for a lengthy active -- any type
of active sentence.  I may have misread what I was hearing, but
at this point I'd be -- assuming all those facts to be the
case, I would be inclined to not substitute counsel here but
let this case move forward to what appeared to me to have been
the intended resolution.  I may be speaking out of turn, but I
certainly recall there being signals of that type.  So if you
need to talk to Mr. Ramaswamy, we'll be at ease for 10 minutes.

(At 11:18 a.m., break taken.)

(At 11:31 a.m., break concluded.)

THE COURT:  All right.  Mr. Placke, do you want me to
take a look at that, or what's your position?

MR. PLACKE:  Your Honor, I first appreciate the
chance to review it.  I don't believe there's anything new that
the Court hasn't already heard in one form or another that
would be adverse to Mr. Hill.  By and large, it's simply
comments about me, and I certainly don't want to interfere with
his ability to communicate to the Court about that.  I checked
with Mr. Hill during the recess, and he does want the Court to
see it.  Therefore, I prefer to just provide it to the Court.

1          THE COURT:  All right.  If you'll hand it up, I'll

2   take a look at that.

3          (Court reviewing documents.)

4          THE COURT:  I reviewed Mr. Hill's letter, and at this

5   point I have not seen the presentence report.  I have, however,

6   seen the evaluations and the factual basis and a number of

7   letters.  Mr. Hill, if nothing else, is a prolific letter

8   writer.  Let me see.  I said I've seen the factual basis.  I've

9   seen some facts somewhere, but was there one filed in this

10  case, or was it withheld?

11         MR. PLACKE:  There was a factual basis, Your Honor.

12         THE COURT:  Well, as I alluded to earlier, the

13  Government in the vast majority of these possession of child

14  pornography cases these days where file sharing is involved has

15  been requiring a plea to the 5 to 20 offense rather than a zero

16  to 10.  So there is -- in light of the Government's extension

17  of a plea to the zero to 10 offense, the zero to 10 possession

18  offense rather than the 5 to 20 offense, that certainly at

19  least indicates to some degree the Government's evaluation of

20  the seriousness of the offense.  I think for whatever reason

21  there was some discussion at the Rule 11 colloquy about this

22  particular case as well in terms of the Government's position.

23  Yes, sir, Mr. Matkins?

24         MR. MATKINS:  I received an email from Mr. Ramaswamy

25  yesterday regarding this matter, and I came to the same

1  conclusion that the Court came to or recalls from the change of

2  plea previously as to the Government's position.

3        THE COURT:  Yeah, okay.  It's a difficult time for

4  Mr. Hill, I'm sure, confronted with a guideline calculation

5  that's probably -- if it's not up -- I haven't seen the

6  presentence report, but the majority of these types of cases

7  end up with an 84-, 97-, or even higher than 120-month

8  guideline calculation, and that would have difficult -- could

9  have an extreme effect on anyone, and it's certainly

10  understandable the effect that seeing that presentence report

11  would have on Mr. Hill in light of various mental and emotional

12  conditions that he has described here today, much of that

13  confirmed by various evaluations.  I can understand where there

14  would be some turmoil and concern about revisiting decisions

15  with respect to plea or trial that had already been made.

16        Now, ultimately, I will say, I think to be clear,

17  that it wouldn't make any difference to me in any way, shape,

18  form, or fashion what the extended plea was if a defendant came

19  forward with a proffer of substantial evidence of innocence

20  such that the case should be set aside.  Unfortunately, in this

21  case, Mr. Hill's current complaints echo a lot of what Mr. Hill

22  was representing originally in this case, and ultimately here

23  we're not -- in this type of possession of child pornography

24  case, the investigations are not extremely complicated.

25        So ultimately, it seems to me, number one,

1  Mr. Hill -- I am impressed with Mr. Hill's candor.  He

2  begrudgingly, but candidly, admitted that he and Mr. Placke

3  were still communicating, and he candidly admitted that, in

4  large part, he relied on pressure from his family, which is --

5  a defendant is free to rely on whatever advice they choose to

6  rely on in terms of accepting a plea.  But in fairness to

7  Mr. Hill, I don't think there's any question but that

8  Mr. Placke recommended this course as well as evidenced from

9  the responses given during the Rule 11 colloquy.

10         I simply don't find Mr. Hill's current allegations to

11  rise anywhere near a level expressing ineffective assistance of

12  counsel or actual innocence or any other matter that would

13  necessitate allowing -- substituting counsel and allowing

14  Mr. Hill to -- and/or allowing Mr. Hill to withdraw his plea

15  and proceed to trial in this case.  These letters, like a

16  number of other letters that Mr. Hill has written, claim to

17  have substantial evidence, but ultimately present nothing more

18  than a series of conclusory allegations unsupported by any

19  evidence with respect to his innocence of these particular

20  charges.

21         So, ultimately, I conclude that while there is at

22  present some disagreement between Mr. Hill and Mr. Placke as to

23  how this case should proceed that there is still communication

24  between the parties, Mr. Placke is still -- even under very

25  difficult circumstances has Mr. Hill's best interest in mind in

pursuing this matter, and ultimately it seems to me the best course is to proceed with this case as is and deny Mr. Hill's request for substitution of counsel.

And to put it all in complete perspective at this point, Mr. Hill's statements in his letters run completely contrary to what would ordinarily be required for an individual defendant to receive acceptance of responsibility following the entry of a guilty plea and an acknowledgment of guilt at a Rule 11 colloquy. However, I have seen enough of Mr. Hill's letters -- I think, unless I'm mistaken, there have been two evaluations. Was Mr. Hill originally sent to Butner for an evaluation?

MR. PLACKE: Your Honor, this spring he was evaluated at Butner with respect to competency and mental responsibility at the time of the offense. More recently, he was evaluated as part of the presentence process by Dr. Hirsch. There is concurrence on the three diagnoses that have been discussed here today. Dr. Hirsch did identify and make one additional diagnosis that's probably particularly relevant, delusional disorder, persecutory type, and that's discussed in his report as well as in the position paper filed.

THE COURT: Those diagnoses collectively also give this Court substantial doubt with respect to the -- I'm not sure exactly what word to use. It may very well be that Mr. Hill genuinely believes some of what -- some or all of what

1  he's saying.  I don't know the answer to that.

2        But in terms of the veracity of these allegations

3  with respect to actual innocence, I have substantial doubt.

4  Quite frankly, the statements, the letters, and other things

5  are entirely consistent with the disorders that -- or the

6  issues that have been identified by the -- through the

7  evaluations, and, quite honestly at this point, I don't find

8  anything here that ultimately causes -- I don't even find that

9  these allegations, in light of all the circumstances, rise to

10  the level where I would take -- where I would at this point

11  take away acceptance of responsibility from Mr. Hill, just to

12  be completely fair and candid.

13        It's a very difficult situation that's been

14  presented.  I understand completely Mr. Hill's concern about

15  his future in light of what I believe would have been the

16  presentence report guideline calculation, maybe even properly

17  calculated, but without regard to departure or variance issues

18  that will be presented at the time of sentencing in light of

19  all these evaluations.

20        So, Mr. Placke and Mr. Matkins, unless there is

21  some -- something that I have said that you disagree with or

22  wish to be heard further on, that will be -- that's my

23  conclusion and will ultimately be my ruling here.

24        Mr. Placke, do you wish to be heard further at this

25  point?

1    MR. PLACKE:  No, Your Honor.  I would simply add that
2  if those diagnoses were not present, my position would probably
3  be different.

4    THE COURT:  As would mine.

5    MR. PLACKE:  But as the Court has alluded to and more
6  explicitly stated, we, the criminal justice system, have to be
7  able to move forward in cases like this, and the individuals
8  involved, counsel, whoever, have to be able to move forward or
9  else it's ultimately to the detriment, I believe, of the
10  individual.

11    THE COURT:  I agree.  I haven't made a decision with
12  respect to a plea.  I can completely understand being concerned
13  about that decision and these various conditions leading to
14  attacks or efforts to change that decision, but at this point I
15  think -- number one, I don't think there's grounds to go back
16  and revisit the decision.  Number two, I think it's, to a large
17  degree, understandable.

18    Mr. Matkins, you would be the one ultimately
19  defending what I do here today.  Do you wish to be heard
20  further on this?

21    MR. MATKINS:  No, sir, Your Honor.

22    THE COURT:  All right.  Mr. Hill, let me ask you to
23  stand up, please, sir.  I know that you probably disagree with
24  some or all of what I have said, and you're entitled to
25  disagree with me.  On the other hand, I have to make certain

1　decisions about -- based on the evidence that's been presented,

2　and I make those decisions, and the case continues to move

3　forward.  At this point I am denying your motion for new

4　counsel for the reasons that I have described.  Do you

5　understand that?

6　　　　　　　THE DEFENDANT:  Yes, sir.

7　　　　　　　THE COURT:  And that means that Mr. Placke will

8　continue to represent you in this case.  There is -- when's

9　this case set for sentencing, Mr. Placke?  It's like in two or

10　three weeks maybe?

11　　　　　　　MR. PLACKE:  Later this month, Your Honor.  It's set

12　for -- I can't remember if it's September 26 or September 30.

13　　　　　　　MR. MATKINS:  I believe it's the 30th, Your Honor.

14　　　　　　　MR. PLACKE:  The 30th.

15　　　　　　　THE COURT:  Mr. Placke -- I am directing Mr. Placke

16　to proceed ahead with his representation of you, Mr. Hill, in

17　terms of the presentence report and the various other matters

18　to be presented.  I'm going to ask -- since I've denied the

19　motion, I'm going to ask that you continue to work with

20　Mr. Placke even though you may disagree with the things that he

21　is doing on your behalf to finish this case up.  Do you

22　understand that?

23　　　　　　　THE DEFENDANT:  Yes, sir.

24　　　　　　　THE COURT:  All right.  I'm going to tell you that

25　you have been very respectful toward me in the way you have

addressed this Court and the way you have expressed the matters
that you are concerned about, and I appreciate that.  I want
you to leave here with some understanding that I wasn't always
a judge.  I used to do similar cases.  I'm sure I didn't handle
them nearly as well, but I used to handle cases like
Mr. Placke, criminal defense work, and I've been there when
there have been problems when the presentence report was
disclosed and things looked very bleak in terms of how the case
was going to work out.

You are entitled to your lawyer -- to the best advice
your lawyer can possibly give you, you're entitled to a lawyer
who represents your interests to the best of his ability, and
you are entitled to a lawyer who advocates on your behalf in
the courtroom.  The one thing you're not entitled to is a
lawyer who simply tells you what you want to hear just to make
you feel better or advises you to do something simply because
it's the easiest way to make you happy.  Do you understand
that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Placke at this point has not
presented anything to me to suggest that Mr. Placke has failed
to discharge his duties to you or that he has given bad advice
to the extent that it rises to the level of ineffective
assistance of counsel.  Do you understand that?

THE DEFENDANT:  Yes, sir.

1          THE COURT:  I'm going to ask you to trust in

2   Mr. Placke just a little bit longer, and let's see how this

3   case works out.  All right?

4          THE DEFENDANT:  All right.

5          THE COURT:  All right.  Anything further, Mr. Placke?

6          MR. PLACKE:  Just for the record, Your Honor, the

7   second half of the motion was for an extension of the pleading

8   deadline.  Since there's not going to be new counsel, I think

9   that's moot.  I filed our position paper.

10         THE COURT:  There was a position paper.  All right.

11  I'm going to ask Ms. Welch to note upon the docket that the

12  motion to withdraw is denied for the reasons stated in the

13  record; and as a result of the denial of the motion, the Court

14  finds the motion for extension of time to file sentencing

15  pleadings is moot and, therefore, denied.

16         Anything further, Mr. Matkins?

17         MR. MATKINS:  No, sir, Your Honor.

18         THE COURT:  Mr. Placke?

19         MR. PLACKE:  No, Your Honor.  There is something on a

20  completely different matter, though, if the Court has a moment

21  after we've adjourned.

22         THE COURT:  All right.  I'll do that.  If there's

23  nothing further, we'll stand in recess until 2:00.

24         (At 11:50 a.m., proceedings concluded.)

25

US v. Hill - Motion - September 3, 2014

1                              * * * * *

2                        C E R T I F I C A T E

3       I certify that the foregoing is a correct transcript
        from the proceedings in the above-entitled matter.
4

5                              _Joseph B. Armstrong_
                        _____
6       Date: 06/24/2015     Joseph B. Armstrong, RMR, FCRR
                             United States Court Reporter
7                            324 W. Market Street
                             Greensboro, NC  27401
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                 US v. Hill - Motion - September 3, 2014