```
 1               IN THE UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF NORTH CAROLINA
 2
   UNITED STATES OF AMERICA      ) Greensboro, North Carolina
 3                               ) September 30, 2014
        vs.                      ) 11:11 a.m.
 4                               )
   BRIAN DAVID HILL,             )
 5                               ) Case No. 1:13CR435-1
        Defendant.               )
 6  _____ )

 7
                       TRANSCRIPT OF HEARING
 8        BEFORE THE HONORABLE WILLIAM L. OSTEEN, JR.
                    UNITED STATES DISTRICT JUDGE
 9
   APPEARANCES:
10
   For the Government:  ANAND P. RAMASWAMY, AUSA
11                      Office of the U.S. Attorney
                        101 S. Edgeworth Street, 4th Floor
12                      Greensboro, North Carolina 27401

13
   For the Defendant:   ERIC D. PLACKE, AFPD
14                      Office of the Federal Public Defender
                        301 N. Elm Street, Suite 410
15                      Greensboro, North Carolina 27401

16

17

18

19

20

21

22 Court Reporter:      Joseph B. Armstrong, RMR, FCRR
                        324 W. Market, Room 101
23                      Greensboro, NC  27401

24           Proceedings reported by stenotype reporter.
          Transcript produced by Computer-Aided Transcription.
25
```

## P R O C E E D I N G S

1

2          (At 11:11 a.m., proceedings commenced.)

3          (Defendant present.)

4          MR. RAMASWAMY:  Good morning, Your Honor.

5          THE COURT:  Good morning, Mr. Ramaswamy.  You may

6   call the next case.

7          MR. RAMASWAMY:  Yes, sir.  The Government would call

8   United States versus Brian David Hill in 1:13CR435-1.  He is

9   represented by Mr. Placke.  The matter was set today for

10  sentencing.

11         THE COURT:  All right.  Mr. Placke, are you and

12  Mr. Hill ready to proceed?

13         MR. PLACKE:  Yes, Your Honor.

14         THE COURT:  All right.  I will note in passing that

15  Mr. Hill's prolific motion filing ability continues.  I've

16  reviewed a number of those motions.  At this point, having

17  heard from Mr. Hill previously, I am not inclined to address

18  all these pro se motions individually, having found, number

19  one, that Mr. Hill is represented by competent counsel; number

20  two, that there's no reason for that counsel to be removed from

21  the case; and, number three, it appears to me now, particularly

22  with the benefit of a presentence report, that, as I found the

23  last time, much of this motions practice by Mr. Hill is

24  prompted by psychological factors that are more thoroughly

25  described in the presentence report and don't need to be fully

1   addressed here.

2        So to the extent Mr. Hill seeks to reopen this case

3   and file additional evidence and withdraw his plea and proceed

4   ahead to trial upon a plea of not guilty with additional

5   evidence, I find that those motions should be denied at this

6   point in time for the reasons I addressed last time I had heard

7   from Mr. Hill on his request to substitute counsel.

8        Now, having said that, I received a declaration from

9   a woman named Susan Basko.  Ms. Welch, if you'll hand that to

10  Mr. Ramaswamy.  I don't know if you all have seen that

11  declaration.  If you'll step forward and take a look.  Have you

12  seen that, Mr. Placke?

13       MR. PLACKE:  I have, Your Honor.  That is what

14  arrived at our office via email last week, one of several

15  different emails from Ms. Basko.

16       THE COURT:  Have you communicated with her at all?

17       MR. PLACKE:  No, I haven't, Your Honor.

18       THE COURT:  I don't know who she is to make -- she

19  claims she's a lawyer.

20       MR. PLACKE:  I did check with the California State

21  Bar and the Illinois State Bar.  She is currently admitted to

22  practice in both states.

23       THE COURT:  Is this Mr. Hill's family in the back?

24       MR. PLACKE:  It is, Your Honor.

25       THE COURT:  Grandparents and mother?

US v. Hill - Hearing - September 30, 2014

1          MR. PLACKE:  Yes, Your Honor.

2          THE COURT:  Have you all been contacted by this

3   woman, Ms. Basko?

4          MS. BURNETT:  In December of 2013.

5          THE COURT:  Mr. Ramaswamy, if you don't mind, will

6   you hand that affidavit back to Ms. Welch.  Let me ask you

7   about this.  If you all don't mind, if you'll step forward.

8   Right behind Mr. Placke will be fine.  Actually, just Ken

9   Forinash and Stella Burnett.  Mr. -- is it Forinash?  Is that

10  correct?

11         MR. FORINASH:  Yes, sir.

12         THE COURT:  Let me ask you first.  This affidavit

13  says that "I have been told by Brian's grandparents, Ken

14  Forinash and Stella Burnett, that Brian wants to withdraw his

15  guilty plea because he is innocent, and he wants a substitute

16  public defender."  Did you all tell her that?

17         MS. BURNETT:  Yes, sir, we did.

18         THE COURT:  And why did you tell her that?

19         MS. BURNETT:  Because Brian is innocent, and he's

20  really not been represented.  This attorney has never talked to

21  us until right at the end.  He called us the night before the

22  sentencing hearing and told us to have Brian to plead guilty

23  and so that's what we did, and that was wrong because Brian is

24  not guilty.  He's got autism.  He's not guilty.  He doesn't

25  like being around children.

1          THE COURT:  What does the autism got to do with his

2 guilt or innocence?

3          MS. BURNETT:  Because we're around Brian all the

4 time, and he does not like children at all.  He's like a child.

5 I mean, when it comes time to watch a parade or anything like

6 that, he doesn't even recognize the children there.  He walks

7 up front and takes his pictures.

8          THE COURT:  Have you seen any of the forensic

9 evidence in the case?

10          MS. BURNETT:  No, sir.

11          THE COURT:  Have you seen any of the images?

12          MS. BURNETT:  No, sir.

13          THE COURT:  Are you aware of any of the statements

14 that Brian gave law enforcement officers at the time of his

15 arrest --

16          MS. BURNETT:  Yes, sir, we are.

17          THE COURT:  -- or at the time of the search?

18          MS. BURNETT:  Yes, sir, but --

19          THE COURT:  What did he tell them at that time?

20          MS. BURNETT:  At the time of the search?

21          THE COURT:  Yes, ma'am.

22          MS. BURNETT:  Something about being interested in 12

23 year olds, but we've never --

24          THE COURT:  What did he tell them at that time?

25          MS. BURNETT:  Tell?

```
 1              THE COURT:  Law enforcement at the time of the
 2     search.
 3              MS. BURNETT:  Did you not see the papers we sent you?
 4              THE COURT:  I'm asking you.
 5              MS. BURNETT:  What did he -- I wasn't there.  Oh, I
 6     was at the search.
 7              THE COURT:  Yes, what did he tell law enforcement at
 8     the time of the search?
 9              MS. BURNETT:  Nothing.
10              THE COURT:  Nothing?
11              MS. BURNETT:  No, we were all on the front porch.
12     They called him in, and we weren't in there.
13              THE COURT:  You didn't hear what was said at the
14     time?
15              MS. BURNETT:  At the time of the search, no, I
16     didn't.
17              THE COURT:  So you don't know whether he admitted to
18     the conduct or not?
19              MS. BURNETT:  No, sir.  We just know that we have
20     been lied to by the same police that say he said that.  We have
21     been lied to.  We sent that to the Court, yes, sir, we have.
22     By the same officers --
23              THE COURT:  Why would you communicate to this -- have
24     you ever met this woman?
25              MS. BURNETT:  Met whom?
```

US v. Hill - Hearing - September 30, 2014

1          THE COURT:  This Susan Basko?

2          MS. BURNETT:  No, sir, but she is an attorney.  The

3   things she told about, we have pictures, Your Honor, with --

4          THE COURT:  Before you pull anything out, she's an

5   attorney where?

6          MS. BURNETT:  On the internet.  She represents people

7   on the internet like news people and alternative news people.

8          THE COURT:  So you contacted her?

9          MS. BURNETT:  No, sir.  Actually when Brian was

10  arrested, he gave us this email, and we saw where she had sent

11  some emails.  Then, yeah, after that, we contacted her.

12         THE COURT:  And you told her you thought he was

13  innocent?

14         MS. BURNETT:  Yes, sir, we do think he's innocent.

15  We know he's innocent.

16         THE COURT:  Mr. Forinash, do you agree with that?

17         MR. FORINASH:  Yes, sir.

18         THE COURT:  All right.  You may have a seat.

19         I'm going to make a comment here.  I said it before,

20  and I'm going to say it again.  For this lawyer in Illinois or

21  wherever she is located to make a statement under oath that "I

22  am aware that Brian David Hill is innocent of the charges, and

23  I will explain how I know this," and then to read how she

24  describes she is aware of that, I find, quite honestly on this

25  record, to -- I don't want to use the word fraud, but I find

1 that to be almost as irresponsible a statement by an attorney

2 as I have seen in some period of time.  And I make that

3 statement because she nowhere in this declaration describes any

4 familiarity with the statements that Mr. Hill made at the time

5 of the arrest, with the forensic analysis of Mr. Hill's

6 computer, nor, frankly, in my mind, does she fully describe a

7 connection between Mr. Hill and these other individuals who she

8 claims were set up by persons or persons unknown such that that

9 would explain making a statement like, "I am aware that Brian

10 David Hill is innocent of the charges, and I will explain

11 herein how I know this."

12        Number two, for an attorney, without having the

13 benefit of that type of information before corresponding with

14 and speaking to family members of an individual defendant

15 about, A, the innocence of the defendant -- absolute innocence,

16 not qualified, absolute innocence of the defendant -- and, B,

17 thereby impinging the work of counsel of record in the case

18 and, in my mind, likely confidence in counsel of record, is

19 about as concerning of conduct as I've seen been by an attorney

20 in a case.

21        Paragraph 2 of this affidavit says, "I'm a lawyer

22 licensed in Illinois and California.  I practice law for

23 independent media, including the internet.  I do not generally

24 go into court, so I ask the Court to please forgive if my

25 paperwork is not in the exact usual form."

So what's wrong with that?  Number one, as I
understand what I was just told by Mr. Hill's grandparents, she
is rendering advice and counsel in the state of North Carolina
to family members in relation to a criminal case pending in the
state of North Carolina.

Number two, it seems to me, that by sending a
declaration to the Court describing the innocence of a
defendant who has been prosecuted in the United States District
Court for the Middle District of North Carolina, she has
injected herself and her opinion in these proceedings, and,
quite frankly, not in any positive way.

I don't know what to do about this, quite honestly.
I'm troubled on two levels.  Number one, troubled by this
conduct of Ms. Basko holding herself out rendering advice and
counsel in a pending criminal case when it appears to me she
really has no business rendering advice and counsel.

And, number two, I, quite honestly, now fully
appreciate the position that Mr. Placke found himself in where
he is having to defend himself not only to his client, but to
family members who are challenging Mr. Placke's actions without
any understanding of the evidence in the case, the relevant
admissible evidence in the case.  Quite honestly, I don't know
that I find it fair for Mr. Placke to have to continue under
these circumstances.

Mr. Ramaswamy, I'm curious as to what the

Government's impression of this situation is at this point?

MR. RAMASWAMY: Frankly, Your Honor, I had not considered it in the manner that the Court has framed it. Early in this matter, very early in this matter, there was an email. I believe because our email addresses are part of the ECF record, Mr. Placke and I received the same email. As Mr. Placke did, I did confirm that she was -- this person was a licensed attorney in California, appears to be a licensed but nonpracticing attorney.

I did not look at it so much in the attorney context because -- as with much of the filings here and some of the things that are from prior proceedings in this court and in the magistrate court related to Mr. Hill that become reported on the internet by persons associated with him that are largely not representing what actually happened, it appeared that person, the attorney, was yet another one of the ones associated through the internet of reporting things were not factually correct to maintain the actual innocence.

I hadn't considered it in terms of her -- she's the only one of the group who is in that filing to the Court using her credentials as an attorney to bolster her statements, but there are a number of people, not in filings to the Court, but in internet postings who, I'd say, maintain similar positions. That had not been a concern because I think to explore that further may go into some of the issues and the persecution --

1  the ideas of persecution or give an impression that this

2  prosecution is about anything other than the offense conduct.

3  It has nothing to do with any belief political or otherwise of

4  the defendant.  I'm not certain --

5          THE COURT:  I'll tell you what I'm thinking about

6  doing.  Let me hear from Mr. Placke.  Mr. Placke, do you want

7  to address any of this?

8          MR. PLACKE:  Just two things, Your Honor.  One

9  related to Ms. Basko and some of these other folks.  I did

10 review everything that she sent to our office.  I did check to

11 see if she was actually an attorney.  I was concerned that she

12 was expressing opinions that didn't seem to have a basis in

13 knowledge of the evidence in the case.  She had asked in her

14 email that I present this declaration to the Court.  I declined

15 to do that.  But I tended to view it like much of the other

16 internet material I had seen related to this case, intended to

17 sort of place her in that category of people.  I didn't realize

18 she was going to send her declaration directly to the Court.

19          THE COURT:  She sent it to be filed on CM/ECF, and

20 the Clerk's Office sent it to me for determination as to

21 whether it should be filed on CM/ECF.

22          MR. PLACKE:  Quite frankly, when she sent it to me,

23 and I just let it sit there declining to do anything further, I

24 thought that was going to be the end of it.

25          THE COURT:  That's what I would have done if I had

US v. Hill - Hearing - September 30, 2014

been in your shoes.

          MR. PLACKE:  She actually mentions some folks in
there, one of whom I did talk to at length at Mr. Hill's
request some months ago, a Mr. Dan Johnson.  He -- we spent
quite a bit of time on the phone, and he gave me his opinion
about exactly what had happened and how I should handle the
case and so forth.  I asked some pointed questions about how
what he was saying would fit in the rules of evidence and the
rules of procedure, and that sort of turned the conversation a
little bit.  Mr. Johnson is a 20-year-old in Ohio who is very
active on the internet and concerned about certain issues and
had been in contact with Mr. Hill.  After that conversation, I
didn't view it as particularly productive for Mr. Hill's
defense to continue contacting all these other people.

          Anyway, my point there and my first point was simply
in trying to triage how to handle things in this case, I tended
to put things from Ms. Basko in the same category as my phone
conversations with Mr. Johnson, again, not knowing that she
intended to send her declaration directly to the Court.

          The second thing I would say regarding the whole
issue of counsel is Mr. Hill has continued to ask for new
counsel.  It's continued to be my view that under the
circumstances, our office -- I should individually and our
office as an office should do everything we can to assist
Mr. Hill and as much as possible shrug off, if you will, some

of the extra work necessitated by some of these things and to
recognize that some of it is the product of mental illness.

That said, over the weekend, I received a voice mail
indicating that Mr. Hill intended to file a lawsuit against me,
and that email -- or excuse me -- the voice mail and that,
therefore, would constitute a conflict of interest and,
therefore, I wouldn't be able to serve as counsel anymore.
That was from Mr. Hill. There was some documents he wanted to
pass up to the Court to that effect.

What concerns me, though, is there's also in what he
wanted to pass up to the Court a document that says -- it
simply identifies itself as being from a friend that seems to
suggest that as a strategy for obtaining new counsel.

THE COURT: Well, I'll tell you what I'm inclined to
do at this point. I don't know if it's appropriate or not, but
I can't tell anymore whether or not Mr. Hill is being
improperly encouraged to press these positions without -- by
individuals and/or an attorney who have, at least as near as I
can tell, no familiarity with the specific facts of this case,
the forensic analysis, or the statements of Mr. Hill given as
reflected in the presentence report. We can talk about that in
detail, but in light of what I am considering, quite frankly,
I'm not interested in airing that out at this point for public
consumption.

So what I'm considering doing is, in light of the

current allegations, allowing Mr. Placke to withdraw from this case, appointing substitute counsel, and giving notice of the fact that I am considering whether or not I should withdraw Mr. Hill's acceptance of responsibility for falsely asserting in a very public manner his innocence of the case without ever presenting any facts that would address the specific facts of this case, setting that matter on for a hearing, and asking the Government to subpoena Ms. Basko, because Ms. Basko has submitted a declaration, given under penalty of perjury, that Mr. Hill is innocent of the charges. It would seem to me she has at this point injected herself into this proceeding.

And there's one of two ways to interpret Mr. Hill's actions. Either Mr. Hill is genuinely attempting to establish his innocence believing that he has been wrongfully prosecuted at this point; or, two, Mr. Hill is being encouraged by a person or persons as yet unidentified to assert positions that are inconsistent with the facts of the case as not publicly and widely known.

And quite honestly, in light of some of the -- in light of the investigative materials as I've had a chance to see in the presentence report, it would seem to me that even if -- even if there were some way to establish some of this with respect to these other individuals being set up that Mr. Hill still faces an uphill battle in light of the materials that were found and in light of his statements given to law

enforcement during the course of this investigation.

Now, this case could be unwinding toward a very difficult result because up to this point both the Government -- or the defendant had asserted -- counsel for the defendant had asserted that a departure was appropriate; and while I'm not sure I agreed under 5H1.4, I did agree under 5H1.3, in the absence of any objection from the Government, that a departure was appropriate, and I think the clear implication with respect to the sentence the Government was seeking in light of all these factors was one which could have resulted in a probationary sentence for Mr. Hill.

But at this point in time in light of what I see to be not only an individual defendant making statements that are unsupported by anything I see in the record, the defendant somehow has now assembled a group of individuals who are independently and on his behalf urging these alternate facts on the Court, and I don't see any -- I really, quite honestly, find this whole thing to be a very serious situation. It could be anything from -- you know, on the one hand if anything they say is true, then perhaps something should be done. But at this point, it begins to look more like a fraud on a United States District Court than anything else with a lawyer participating. I mean, you all may disagree with my assessment of this material, but I find it alarming, to say the least.

Mr. Ramaswamy, if we have such a hearing, I'm going

to want the Government to subpoena Ms. Basko because I want to

know what she knew and didn't know and at whose direction she

acted in sending this information.

MR. RAMASWAMY:  Yes, sir.

THE COURT:  Does that seem unreasonable to you?

MR. RAMASWAMY:  No, sir.

THE COURT:  Mr. Placke, does anything I've described

up to this point seem unreasonable or improper?

MR. PLACKE:  No, it doesn't, Your Honor.  It's hard

to tease out in situations like this who's influencing whom,

who has assembled whom.  I've had concerns about friends --

so-called friends on the internet and the influence that they

had on my client throughout the case.  Those concerns keep

growing instead of diminishing.

THE COURT:  And how is this contact continuing after

he's been arrested?  He's been in custody, hasn't he?

MR. PLACKE:  He's been in custody.  Of course, he has

access to mail; and based on statements made here today, I

understand that Ms. Basko has been in contact with his family

as well.  Of course, I can see that on the email that -- you

know, who received the email.

THE COURT:  Well, I don't want to impinge on anyone's

right to counsel.  I don't want to impinge on anyone's right to

free speech, but there's nothing about free speech that allows

anyone to come in to attempt to persuade a court to act in a

certain fashion without evidence to support that or without
authority to support such conclusory allegations.

Mr. Placke, I'm going to allow you to withdraw from
this case.  I'm going to order that the discovery that's been
previously provided by the United States to Mr. Placke on
behalf of the defendant be sealed.  It can only be viewed by
substitute counsel in the matter.  No discovery is to be
distributed or shared with anyone else at this particular point
until I find out who knew what when in this matter.  This
sentencing is continued -- what is my 30 to 45 days out,
Ms. Welch?  Probably going to need a pretty good gap of time.

All right.  I'm going to set it on for sentencing on
Friday, November 7, 2014, at 3:00 in the afternoon.  I'm going
to also appoint substitute counsel in this matter for Mr. Hill,
and I am going to, in light of my order in relation to
discovery on October the 15th -- that was a sentencing day,
Ms. Welch?

THE CLERK:  Yes.

THE COURT:  Okay.  On October the 15th at 2:00 in the
afternoon, we'll set a status conference in this thing to
revisit my order to the extent necessary as well as any other
procedural issues that need to be addressed in preparation for
proceeding with this hearing that's occurred here.

I don't know whether I'm looking at -- I hesitate to
use the word "fraud," but I don't know whether I'm looking at

careless and reckless conduct in relation to this court or
whether I'm looking at a tragedy or a travesty or what, but
I'll tell you, for an outside -- for an attorney -- a licensed
attorney to send a letter advising this Court of the innocence
of an individual who is not only addressing a criminal
prosecution but also clearly having to deal with other
significant matters, without more understanding of the actual
facts of this case than what are described in that declaration,
is, at least on the front face of it, about as irresponsible as
anything I have seen in terms of conduct in relation to a
criminal defendant.  But we'll get to the bottom of this one
way or another.

          Any questions, Mr. Placke?

          MR. PLACKE:  No questions, Your Honor, but perhaps it
would be beneficial for everyone in light of the Court's order
about the sealing the discovery for me to describe on the
record here what I've received from the Government and actually
return it at this point.

          THE COURT:  I'm fine with that.

          MR. PLACKE:  Your Honor, I received in terms of
discovery in this case from the Government two CDs, one of
which contained the audio recording of the interview of
Mr. Hill, the other of which contained law enforcement reports
in PDF format.  I've printed those out.  The reports are a
Mayodan Police Department report dated August 22, 2012, and a

North Carolina State Bureau of Investigation case file dated
October 23, 2013. And perhaps in light of everything else, I
should just return those to the Government at this point.

THE COURT: Mr. Ramaswamy, I'll note Mr. Placke is
returning the material to you. My sealing order does not
prohibit your disclosure of that same material to substitute
counsel in the case, but it can only be done with the
understanding of no further disclosure at this point to occur
until at least the time of the status conference on the 15th.

MR. RAMASWAMY: Yes, sir. May I ask as to that last
declaration from the attorney that the Government receive a
copy to assist us in preparing the subpoena?

THE COURT: I'll leave it with Ms. Welch. Unless
there's an objection, I think in light of what I've heard, I'm
going to have it filed on CM/ECF. Any objection, Mr. Placke?

MR. PLACKE: No, Your Honor.

THE COURT: I'll let Ms. Welch go ahead and give you
a copy of it. But she sent it in, we're going to file it on
CM/ECF.

Mr. Ramaswamy, I don't know what your reaction is to
my response to this, but I'll simply say it may be that I'm
stepping into the middle of something that in the modern Web
2.0 age is something that invites more trouble than can be
resolved, but the seriousness of this kind of conduct is -- I
don't know how you ignore it. If you want to be heard further,

1  I'll hear from you.

2          MR. RAMASWAMY:  I don't know that I should do it.

3  While it's not part of discovery and not part of his materials,

4  I think Mr. Placke and I both have seen a substantial amount of

5  online statements similar to this.  I don't believe the Court

6  can ignore this conduct, but I would say we're past that point.

7  But all in all, as to this individual and what is unique in

8  terms of plea offer as to this matter, I still believe it was

9  suited in this matter.

10          THE COURT:  I'm not criticizing the plea, and I'm not

11  criticizing the parties' respective positions in this matter in

12  any way.  As a matter of fact, at least from the indications I

13  had, I thought it was an entirely appropriate way to resolve

14  this matter.

15          MR. RAMASWAMY:  And please don't misinterpret that as

16  we thought the Court was.  I think at the outset at the Rule 11

17  hearing the Court indicated its inclination to accept.  But

18  it's that same third party involvement or what appears that

19  same third party involvement that may well cause the loss of

20  the benefit of the bargain.

21          THE COURT:  We'll investigate whether or not she

22  acted independently and what evidence she had to make those

23  representations to this Court or whether or not she acted at

24  the direction of Mr. Hill, in which case he's responsible for

25  the representations to the Court given under oath by a

US v. Hill - Hearing - September 30, 2014

1    practicing attorney.

2            All right.  If there's nothing further then, we'll

3    stand in recess until 2:00.

4            (At 11:49 a.m., proceedings concluded.)

5                          *  *  *  *  *

6                    C E R T I F I C A T E

7        I certify that the foregoing is a correct transcript
         from the proceedings in the above-entitled matter.

8

9                              _____
                               Joseph B. Armstrong, RMR, FCRR
10   Date: 06/24/2015          United States Court Reporter
                               324 W. Market Street
11                             Greensboro, NC  27401

12

13

14

15

16

17

18

19

20

21

22

23

24

25