IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Greensboro, North Carolina |
| | ) | October 15, 2014 |
| vs. | ) | 2:23 p.m. |
| | ) | |
| BRIAN DAVID HILL, | ) | |
| | ) | Case No. 1:13CR435-1 |
| Defendant. | ) | |
| _____ | ) | |

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE WILLIAM L. OSTEEN, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:     ANAND P. RAMASWAMY, AUSA
                        Office of the U.S. Attorney
                        101 S. Edgeworth Street, 4th Floor
                        Greensboro, North Carolina 27401


For the Defendant:      JOHN SCOTT COALTER, ESQUIRE
                        McKinney Perry & Coalter, PA
                        PO Box 1800
                        Greensboro, North Carolina 27401


Court Reporter:     Joseph B. Armstrong, RMR, FCRR
                    324 W. Market, Room 101
                    Greensboro, NC  27401

        Proceedings reported by stenotype reporter.
    Transcript produced by Computer-Aided Transcription.

P R O C E E D I N G S

1
2          (At 2:23 p.m., proceedings commenced.)

3          (Defendant present.)

4          THE COURT:  All right.  Mr. Ramaswamy, you may call
5    the next case.

6          MR. RAMASWAMY:  Thank you, Your Honor.  The
7    Government would call for status conference United States
8    versus Brian David Hill in 1:13CR435-1 represented by
9    Mr. Coalter, and Ms. Tapp is here from the Probation Office.

10         THE COURT:  Good afternoon, Mr. Coalter.

11         MR. COALTER:  Good afternoon, Your Honor.

12         THE COURT:  I suspect -- you may have a seat,
13   Mr. Hill.  I suspect at this point that you are probably fully
14   up to speed, but I'll give you at least a thumbnail sketch from
15   my perspective, and then we can see where we are and what needs
16   to happen next.

17         But Mr. Hill entered a plea of guilty in this matter
18   some time ago, and it was either comments at the time of the
19   plea hearing, the plea agreement or -- the plea agreement or
20   some later time, but somewhere along the line I learned or was
21   under the impression that because of a variety of issues that
22   this was a case -- well, the plea agreement says the Government
23   wouldn't oppose a couple of departure grounds, but I had the
24   impression that the Government ultimately would likely either
25   not be objecting to a sentence other than an active sentence or

was not seeking an active sentence in this particular case.

The presentence report was disclosed, and you know what the guideline range was in the report. After disclosure of the presentence report, Mr. Hill then went on a letter writing campaign proclaiming his -- first, his desire to withdraw his guilty plea, and then proclaiming his innocence, and then proclaiming a lot of different things.

I initially had a hearing on it -- hearing on the question of whether Mr. Placke should be permitted to withdraw and denied the motion and, quite candidly, even in light of some of the allegations that Mr. Hill had made, did not believe that in light of Mr. Hill's conditions that Mr. Hill's statements and proclamations should result in his losing acceptance of responsibility in this case. We then proceeded ahead. The letter writing continued, and the complaints about Mr. Placke continued.

Now, at some point in there -- I am going to add this as well. One of Mr. Hill's motions speaking to withdraw his plea claimed that he was unfairly pressured by both Mr. Placke and his family members to enter a plea.

The last hearing, some time before the hearing, a lawyer, I believed licensed in California and Illinois, took it upon herself initially to send Mr. Placke an affidavit proclaiming Mr. Hill's innocence and offering something in the nature of an explanation as to how a number of other

individuals had been set up with child pornography, and
apparently when nothing occurred in response to sending that
affidavit, she then took it upon herself to send it to me with
the request that I consider that affidavit, and Mr. Hill's
letter writing continued.  And at that last hearing, Mr. Hill's
grandparents when I inquired of them also proclaimed Mr. Hill's
innocence.

       To be completely candid, Mr. Coalter, it appeared to
me that this -- that there was some issues that existed in this
case following disclosure of the presentence report; but after
talking to the grandparents, it appeared to me there was now
some complications in this case arising from information that
this lawyer had been apparently been providing to and
discussing not only with Mr. Hill, this Court, and Mr. Placke,
but to the grandparents as well.  You might imagine that I am a
little disturbed by an attorney sending an affidavit to a Court
proclaiming the innocence of an individual.

       Having said all that, I let Mr. Placke out of the
case, set this case on for status conference, continued the
sentencing hearing at which time -- and also gave notice of my
consideration of withdrawing acceptance of responsibility from
Mr. Hill and having a hearing on that.  Any such hearing on
that, in my opinion, would necessarily involve testimony from
this attorney, wherever she may be --

       MR. COALTER:  Right.

1          THE COURT:  -- who has seen -- who has taken it upon
2   herself to argue Mr. Hill's innocence in this Court.
3          Now, you are counsel for Mr. Hill.  I don't know
4   where you wanted to proceed.  But before I go to the steps of
5   summonsing a lawyer from somewhere in the Midwest or the West
6   to a hearing, I want to make sure where things stand with you.
7   In other words, are you going to be ready to go and want to
8   proceed forward with a sentencing on a particular date, or do
9   you need additional time, or where do things stand with you?
10          MR. COALTER:  I believe I can have a position
11   paper -- well, first of all, Your Honor, I've reviewed the file
12   on Pacer and reviewed most of the documents, went down and met
13   with Mr. Hill in custody, discussed his options with him,
14   received discovery from Mr. Ramaswamy, reviewed the evidence
15   with Mr. Hill to determine, number one, were there grounds to
16   withdraw the guilty plea, number two, is that something that
17   would be in his best interest, and determined, along with
18   Mr. Hill, that the answer to both of those questions was that
19   there are no grounds, and he doesn't want to withdraw his
20   guilty plea.  I advised him that I'm his attorney and that any
21   filings with the Court should come through me and that I would
22   not be adopting any of his prior pro se filings.
23          I believe that -- I don't see any reason why I can't
24   be prepared by November 7 for sentencing in this matter.  I've
25   discussed the matter with Mr. Ramaswamy and am prepared to

proceed.  I've also met with both his grandparents and his
mother, gone over the discovery with them, explained the
situation, explained where Mr. Hill stands, and I think we're
prepared to proceed to sentencing.

I did have some conversation with the out-of-state
attorney and, to put it bluntly, don't put a lot of stock in
what she has to say.

THE COURT:  All right.  How much time do you need to
file sentencing pleadings?

MR. COALTER:  I think I can get something together by
the end of next week.

THE COURT:  Where does that put us?  Let's see.
Today is the 15th.

MR. COALTER:  I think by the 24th.

THE COURT:  The 24th?  Mr. Ramaswamy, I'm guessing
there won't be much of an objection, if anything, to the
filings from Mr. Coalter.

MR. RAMASWAMY:  That's correct, Your Honor.

THE COURT:  I'll give you, let's say -- 24th, 31st.
Mr. Coalter I'll just go ahead and give you until Monday
October 27, 2014, to file any pleadings that you wish to file,
and I'll give the Government until Tuesday, November 4, to file
any responses they desire to file, if any are necessary.
Sentencing is set for Friday.

All right.  Then thank you, Mr. Coalter, for that

update.  That now leaves me to discuss with both you and

Mr. Ramaswamy what I'm going to do about this lawyer that's

sending these -- this affidavit in.  Mr. Ramaswamy, let me hear

from you first.  Anything -- do you have any further thoughts

on it?  I think my direction was that the Government was to

subpoena, but that may or may not -- one of the reasons I set

this on for a status conference was to see where we could go

with that or if I needed to do something else.  So where do we

stand on that?

             MR. RAMASWAMY:  I believe, Your Honor, Mr. Barrett

and Ms. Hairston have -- may have stated to the Court

previously by policy we do not subpoena attorneys.  The

attorney herself, if I might state, called me after the hearing

last, and that was because the grandparents had contacted her.

It would be the Government's position that having her present

for the sentencing would not be necessary.  I can elaborate if

the Court wishes, but --

             THE COURT:  I sure do.

             MR. RAMASWAMY:  In what is ECF Document No. 45, that

is, the affidavits filed by the defendant's grandparents and

starting on page 7, they go into the offense conduct paragraph

by paragraph in the presentence report.  During the last

hearing, I know the Court inquired of them if they knew of the

evidence against the defendant and if they had seen the

evidence, and they said they hadn't, didn't wish to, but it

would appear as they go point by point that they do, in fact, have a copy of the presentence report based on -- but it does not appear to the Government that their efforts to reach out to Ms. Basko have given her anything of the offense conduct, that is, their side of maintaining his innocence being set up by someone else.

As to the defendant's sentencing, I don't know that it's helpful in any regard to have Ms. Basko here, having spoken with her once, having received a previous email from her, and based on some of the other things not only in her unsworn affidavit but her two websites.

THE COURT:  Didn't she sign the affidavit under penalty of perjury?

MR. RAMASWAMY:  Well, it is signed that way, but it is not -- there is no attestation.  It's not -- in contrast to the grandparents' affidavit, it's not in front of a notary, Your Honor.

THE COURT:  Is that the only way to submit a sworn statement to a court --

MR. RAMASWAMY:  Well, I think --

THE COURT:  -- signed by a notary?

MR. RAMASWAMY:  In terms of form itself, it's not the only irregularity, I think, in terms of the way its captioned. Both this affidavit from Ms. Basko and the ones from both grandparents appear to be items they wish to have appeared in

1    the presentence report.  They're attempting to rebut facts that

2    are in the presentence report and have it appear before the

3    Court that way.  I don't know -- I can't answer as to the form

4    in which it appears, how it's captioned, how it's addressed,

5    concluding the caption with any --

6              THE COURT:  If you, as an attorney, stood up in front

7    of me and say "Your Honor, I say, under penalty of perjury,

8    that Ms. Hairston is sitting right behind me," is that a sworn

9    statement to me or not?

10             MR. RAMASWAMY:  I think it's a different matter for

11   an attorney appearing before you, Your Honor.

12             THE COURT:  And how so?  That's what I'm trying to

13   get at.

14             MR. RAMASWAMY:  I mentioned this before at the last

15   hearing.  There are a number of people associated with

16   Mr. Hill, and this is not the only letter, the ones that come

17   into court --

18             THE COURT:  It's the only one I got.

19             MR. RAMASWAMY:  I understand, Your Honor, but they --

20             THE COURT:  Let me explain my problem and my concern.

21   I don't know where Mr. Hill came up with this idea that

22   claiming his innocence in these grandiose scheme set out in

23   here came from, but in this case the grandparents were

24   communicating with this attorney.  Mr. Hill appeared to be

25   communicating in some fashion with this attorney.  She did not

US v. Hill - Status Conference - October 15, 2014

say, "I don't think he didn't do it." She didn't qualify it.
She sent a letter to me -- when it was not acted upon by the
counsel of record, she sent it to me stating under penalty of
perjury that he was innocent of these charges -- of this
charge.

So I've got to decide, number one, what sentence to
impose and, number two, whether he gets acceptance of
responsibility or not, which is a big factor in the whole
analysis. And as I said last time, if he did this on his own,
then that says one thing. Perhaps it doesn't change anything
in light of his condition. But if he was somehow urged to do
this with the support of an out-of-state attorney, it doesn't
seem to me to make any difference whether she's standing here
in front of me and says that or takes it upon herself to send
that to me in this courtroom.

So you're right. There is a piece of this that may
or may -- may not be helpful in terms of evaluating acceptance
of responsibility, but an attorney who sends an af -- a claimed
affidavit signed -- or sends a document to a judge signed under
penalty of perjury the defendant's innocent, at a minimum -- I
mean, it's hard for me to see how she hasn't somehow tried to
subject herself to the jurisdiction of this court.

MR. RAMASWAMY: Just a couple of points. I know the
Court in previous hearings, one at a status conference and at
the last hearing, has dealt with the defendant's pro se

1   motions, and part of that is in relation to his condition.

2   There's been some attribution of those motions, I think rightly

3   so, in relation to his condition.

4           I don't know at what point -- according to

5   Ms. Basko's affidavit, she received materials from him prior to

6   his federal arrest.  So I don't know at what point, such as

7   today when he is not seeking to go forward with any of those

8   prior motions, that she was contacted, and she was given

9   information or if she's aware, as is the case today, and

10  doesn't wish to proceed upon those things.

11          And as to sentencing, it would appear to the

12  Government that it's a collateral matter.  I understand the

13  Court's concern, especially as it affected Mr. Placke's ability

14  to deal with Mr. Hill in this case.  But it would appear based

15  on the affidavit to the grandparents that this person was not

16  given a full picture of this case.  I'm not speaking in defense

17  of her, but I don't know that -- it wouldn't be helpful to the

18  Government to have her here as a witness.

19          THE COURT:  So the Government is not going to

20  subpoena her?

21          MR. RAMASWAMY:  No, Your Honor.

22          THE COURT:  Yes, sir, Mr. Coalter?

23          MR. COALTER:  Your Honor, at the risk of butting in

24  when I shouldn't, I also had a conversation with her.  Would

25  just indicate when I started questioning her about any

US v. Hill - Status Conference - October 15, 2014

1  experience in criminal law, criminal defense, she had none,

2  Your Honor.  She's apparently an entertainment lawyer --

3       THE COURT:  I mean, what she wrote borders on

4  entertainment.  Pardon my frivolity with respect to this, but

5  that's about what it amounts to.  But sending it to a judge --

6  if the Government's not going to subpoena her because they

7  don't think it helps their case, then --

8       MR. COALTER:  I understand.  I just thought that I

9  would add that, Your Honor.  I certainly, after speaking with

10  her for a brief period of time, came to the conclusion that I

11  would not put any stock in anything she had to say, especially

12  after --

13       THE COURT:  That's my -- that's my point, in part.

14  She may be crazy.  I don't know what she is.  But writing it

15  down and sending it to a judge in the midst of a sentencing

16  proceeding and urging on the defendant and his family?

17       MR. COALTER:  I understand.

18       THE COURT:  Not wanting to make an appearance?  I

19  mean, I'll consider whether I -- I mean, I'm sorry for her

20  sake, but I'm not finished with this.  If the Government is not

21  interested in subpoenaing her, then I'll consider whether I can

22  issue an order directing her appearance here on the 7th.

23       Anything further, Mr. Coalter?

24       MR. COALTER:  No, Your Honor.

25       THE COURT:  Mr. Ramaswamy?

1          MR. RAMASWAMY:  No, Your Honor.

2          THE COURT:  All right.  We'll be adjourned.

3          (At 2:43 p.m., proceedings concluded.)

4                      *  *  *  *  *

5                  C E R T I F I C A T E

6     I certify that the foregoing is a correct transcript
      from the proceedings in the above-entitled matter.

7

8                         _Joseph B. Armstrong_
                          _____
9     Date: 06/24/2015    Joseph B. Armstrong, RMR, FCRR
                          United States Court Reporter
10                        324 W. Market Street
                          Greensboro, NC  27401

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

US v. Hill - Status Conference - October 15, 2014