

| | | |
|---|---|---|
| **United States of America**<br>**Plaintiff(s)** | )<br>)<br>)<br>) | |
| | ) | |
| **v.** | )<br>) | **Criminal Action No.** |
| | ) | **1:13-cr-431-1** |
| **Brian David Hill**<br>**Defendant(s)** | )<br>)<br>) | |
| | )<br>)<br>) | |

## BRIEF / MEMORANDUM IN SUPPORT OF BRIAN DAVID HILL'S "MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY"

## DECLARATION, ATTACHED EXHIBITS, AND BRIEF IN SUPPORT OF THIS MOTION

1

# TABLE OF AUTHORITIES

## FEDERAL CASES

Brian David Hill v. Executive Office for United States Attorneys et al., case # 4:17-cv-00027, U.S. District Court for Western District of Virginia..................30

## U.S. CONSTITUTION

fourteenth Amendment. U.S. Constitution; Amendment XIV .................................20

## FEDERAL CASES IN SUPREME COURT

Giglio v. United States, 405 U.S. 150 (1972); John L. BRADY, Petitioner, v. STATE OF MARYLAND. No. 490. Argued: March 18 and 19, 1963.  Decided: May 13, 1963 ......................................................................8

## FEDERAL CASES IN THE FOURTH CIRCUIT

4th Circuit U.S. Court of Appeals, Case # 17-1866 ..................................................30

## FEDERAL CASES IN OTHER CIRCUITS

United States v. Schaefer, 501 F.3d 1197 (10th Cir. 2007).......................................28

## FEDERAL LAW

18 U.S.C § 3553(a) (2006) (held not mandatory by Booker, 543 U.S. 220). Section 3553(a) ......................................................................18
18 U.S.C. § 2252 ..........................................................................18
18 U.S.C. § 2252. Congress intended the mens rea term to help prevent the prosecution and conviction of inadvertent recipients of illicit materials. ............19
28 U.S.C. §1915 ...........................................................................6
28 U.S.C. Section 2255 ..............................................................4
Americans and Disabilities Act, under Title 42 U.S. Code §12101 (citing the Americans with Disabilities Act of 1990) ...................................................50
Sunshine Book Co. v. Summerfield, Postmaster General, 355 U.S. 372 ................40
Title 18, U.S.C. Section 2257 ...................................................... 39, 40, 52
Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2) ........................5, 26

## EXHIBITS

Exhibit 1 ...................................................................................7
Exhibit 10 ............................................................................ 24, 30

Exhibit 11 ........................................................................................................26
Exhibit 12 ......................................................................................................121
Exhibit 13 ........................................................................................................29
Exhibit 14 .................................................................................................. 50, 62
Exhibit 15 .............................................................................................. 37, 43, 63
Exhibit 16 ........................................................................................................65
Exhibit 17 .................................................................................................. 52, 69
Exhibit 18 ........................................................................................................94
Exhibit 19 ........................................................................................................81
Exhibit 2 .................................................................................................. 142, 143
Exhibit 20 ........................................................................................................60
Exhibit 21 .............................................................................................. 17, 18, 98
Exhibit 22 ........................................................................................................95
Exhibit 23 ......................................................................................................117
Exhibit 24 ........................................................................................................94
Exhibit 25 .................................................................................................. 96, 97
Exhibit 26 ........................................................................................................99
Exhibit 27 .............................................................................................. 100, 101
Exhibit 28 ......................................................................................................104
Exhibit 29 ........................................................................................................97
Exhibit 3 .................................................................................................. 10, 20
Exhibit 30 ......................................................................................................104
Exhibit 31 ......................................................................................................102
Exhibit 32 ......................................................................................................103
Exhibit 33 .............................................................................................. 119, 125, 126
Exhibit 34 ......................................................................................................127
Exhibit 35 ......................................................................................................101
Exhibit 36 ......................................................................................................117
Exhibit 37 .............................................................................................. 104, 105
Exhibit 38 ......................................................................................................115
Exhibit 39 ......................................................................................................115
Exhibit 4 ......................................................................................................111
Exhibit 40 ......................................................................................................116
Exhibit 41 ......................................................................................................116
Exhibit 42 ......................................................................................................111
Exhibit 43 ........................................................................................................39
Exhibit 44 ........................................................................................................94

Case 1:13-cr-00435-TDS   Document 128   Filed 11/14/17   Page 3 of 101

**Exhibit 45** ....................................................................... 26, 87, 120

**Exhibit 46** ...........................................................................97

**Exhibit 47** ...........................................................................95

**Exhibit 48** ...........................................................................48

**Exhibit 49** .........................................................................160

**Exhibit 5** ................................................................. 13, 18, 38

**Exhibit 50** .........................................................................159

**Exhibit 51** .........................................................................159

**Exhibit 52** .........................................................................159

**Exhibit 53** ...........................................................................34

**Exhibit 6** ...................................................................... 16, 111

**Exhibit 7** ...................................................................... 17, 112

**Exhibit 8** ...................................................................... 17, 113

**Exhibit 9** ...................................................................... 17, 113

**Note to the clerk: The Honorable U.S. District Court Judge William Lindsey Osteen Junior is disqualified from participating in presiding over this criminal case since the issued filed in both Document #95, Filed 05/29/15, all pages; and Document #105, Filed: 06/05/2015, all pages. One quote said "It makes me vomit that Judge Osteen is crooked enough to put me through all this. I am suffering in Jail right now." Under Title 28 U.S. Code § 455 "Disqualification of justice, judge, or magistrate judge", if a Judge cannot be impartial or that the impartiality can reasonably be questioned, then the Judge must recuse himself from the case. Since Hill was angry enough at Judge Osteen for defending Eric David Placke that is sheer ineffective Counsel under the Strickland v. Washington standard, and calling him out that he had acted partially towards Eric Placke, in favor of Mr. Placke beyond any logical reason. Because of this situation, Judge Osteen should be barred from proceeding over all future criminal case actions including Defendant's § 2255 motion and brief. Defendant requests with the Clerk that Judge Osteen be barred from proceeding over any decision-making in regards to the 2255 motion and brief. Application attached to proceed "In forma pauperis" is filed with the Clerk as a separate document. Defendant requests new Counsel to represent him at Government expense in this action. Thank You!**

4

Pursuant to this filing in support of Defendant's filing of the 28 U.S.C. Section 2255, the Defendant Brian David Hill [hereinafter "Hill"], representing himself (until Counsel is appointed by the Court), respectfully files a Brief in support of Hill's MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY" (the "2255 Motion") with the U.S. District Court for the Middle District of North Carolina. This is pursuant to 28 U.S.C. § 2255, giving a criminal Defendant the ability to collaterally attack the sentence and conviction on the grounds of (1) Actual Innocence, (2) Ineffective Assistance of Counsel[1] via the Sixth Amendment of the U.S. Constitution (newly discovered evidence in regards to court appointed attorney John Scott Coalter within the one year timeframe), (3) Due process deprivation[2] (Fourteenth Amendment of the U.S. Constitution), and (4) Prosecutorial misconduct (newly discovered evidence within the one-year time-frame). The Defendant is filing this Motion with newly discovered evidence, other/misc. collateral evidence relevant to the elements and facts of this criminal case, facts, and will explain herein as to why the Defendant Hill's sentence should be entirely vacated, as to why the Defendant's criminal conviction should be overturned via Judgment of Acquittal, as to why the Defendant should receive a "certificate of innocence" giving the Defendant the right to expunge his criminal

---

[1] (See Strickland v. Washington, 466 U.S. 668 (1984)) via the Sixth Amendment of the United States Constitution

[2] Giglio v. United States, 405 U.S. 150 (1972); John L. BRADY, Petitioner, v. STATE OF MARYLAND. No. 490. Argued: March 18 and 19, 1963. Decided: May 13, 1963. The American Bar Association Standards mandate the prosecutor to make the required disclosure even though not requested to do so by the defendant to disclose evidence "helpful" to the defense. Again, Brady v Maryland, 373 U.S. 83.83 S.Ct.1194, 10 L.Ed.2d 215 (1963) and Giles v Maryland, 386 U.S. 66. 87 S.Ct. 793, 17 L.Ed.2d 737 (1967).

5

history on the ground of actual innocence, since no crime had been committed by the Defendant in the first place. If the Court does not find enough evidence for factual innocence (actual innocence) then the Defendant requests that the evidence used in the 2255 proceedings and the motion and this brief be used for a new trial under the Speedy Trial Act.

## I. **Background**

1.  Defendant Hill was originally charged in the United States District Court for the Middle District of North Carolina. The charge against Hill was filed on November 25, 2013, and the Indictment was filed on November 26, 2013 as well as the Arrest Warrant (See Documents #1 and #2). According to the charge by the Grand Jury, it said in Doc. #1 that "***The Grand Jury charges***: *On or about **August 29, 2012, in the County of Rockingham**, in the Middle District of North Carolina, **BRIAN DAVID HILL did knowingly possess materials which contained child pornography**, as defined in Title 18, United States Code, Section 2256(8) (A), said child pornography containing an image that involved a prepubescent minor and a minor who had not yet attained 12 years of age, and **which materials had been shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer**, and that was **produced using materials that had been shipped and transported in and affecting interstate and foreign commerce, including by computer**; in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2)*." Hill was appointed the Assistant Federal Public Defender named Eric David Placke ("Mr. Placke") by the Court on December 23, 2013 (See Document #4). Hill also submitted a financial Affidavit that indicated that he wanted to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. §1915, and asked for a lawyer to be

6

appointed to him. Hill had proceeded IFP and had appeared before the "detention hearing" on January 2, 2014. At the detention hearing Mr. Placke presented no evidence at all in favor of the Defendant Hill, his client, therefore Hill had remained in the County Detention Centers throughout his entire criminal case. Mr. Placke presented no evidence at the detention hearing regarding Defendant's health including his brittle type 1 diabetes, Autism Spectrum Disorder, Obsessive Compulsive Disorder, and his talk about committing suicide which placed him on suicide watch. Mr. Placke was ineffective at the detention hearing. U.S. Magistrate Judge Joi Elizabeth Peake then ordered the granting of "Government's Oral Motion for Detention without prejudice to Defendant moving to reopen these proceedings if he able to present a potential release plan for consideration by the Court as to BRIAN DAVID HILL." Part of the reason this had happened was the unreasonable "release plan" conditions such as for example (1)The Defendant would be under home detention and electronic monitoring, (2)The Defendant would not be allowed any access to a computer even if such computer had no internet access, (3)The Defendant would not be allowed to use a telephone therefore the Defendant could not arrange doctors' appointments nor could the Defendant talk with his supervising officer during the pretrial phase to even get permission to see a doctor or even visit his lawyer. (4)The Defendant has Obsessive Compulsive Disorder and thus has a hand washing routine making it take longer than the average person, was subject to severe penalties just for being late or even missing one court hearing; Since the Defendant could not even use the telephone he could not dial 911, his family would not be allowed to call for an ambulance, and his family would be subject to unreasonable conditions that would also prohibit the Defendant from having any means or resources to prove his actual innocence. The pretrial release conditions by the Pretrial Services Officer was cruel and completely treated the Defendant Hill as if he were already guilty and was not even allowed to prove his own innocence. **Exhibit 1**, shall prove this

7

fact. According to this Exhibit, in one of the pages of a Affidavit filed by Hill's family, but the page order was mixed up due to the policy at the Jails of searching all inmate mail. Anyways, the Pretrial Services Office was going to make sure that Hill was on home detention and couldn't even phone call his supervising officer since he would not be allowed to use a telephone. That right there would make it nearly impossible for Hill to comply with the pretrial release conditions. He wouldn't even be able to fax his monthly required reports, he wouldn't even be allowed to visit the U.S. Post Office in even his own local area because of the home detention restrictions. Hill couldn't phone call his lawyer. He would essentially be under conditions far worse than the jails as even the Jails allow Hill to make a phone call using the PayTel phone system of the Jails. So the Pretrial Services Officer made cruel and unusual demands, demands that were unreasonable and would make it impossible for Hill to even fax in his monthly report and make it impossible for Hill to even make appointment with the Doctor, it would be far worse than Jail since even in a Jail he can make a medical request to see a doctor, but since Hill can't even use a telephone, he couldn't even call his Doctor's office to even make an appointment, he couldn't even be allowed to contact his supervising Pretrial Services Officer to even get permission on home detention to make Doctor appointments. Because his counsel, Eric David Placke, refused to present any evidence at the Arraignment and Detention Hearing which could have made the conditions of his pretrial release more reasonable had Placke offered any evidence which would have helped Hill present good reason as to why he needed to use a telephone, a fax machine to fax his monthly reports to the U.S. Probation Office to comply with the requirements of his pretrial release, and specify any facts from the discovery to which prove that Hill may actually be innocent to require the Court to have less harsh and less aggressive restrictions against him for pretrial release. Placke did none of that. According to the Minute Entry on the docket sheet in this case, in the proceeding of Courtroom No. 3 in front of U.S. Magistrate Judge Joi

8

Elizabeth Peake, at the hearing date that was scheduled around Thursday, January 2, 2014, at 2:30 P.M., it said and I quote from the excerpt of that Minute Entry that "***AFPD Eric Placke present with defendant***. ***Defendant(s) pleads NOT GUILTY to all charges***. ***No evidence presented***. *Defendant's Counsel stipulated to presentence report and ask detention order be entered until suitable conditions of release could be presented to the Court.*" Placke could have presented Hill's family as witnesses to testify in favor of Hill being given more lenient pretrial release plan conditions that is similar to the conditions of Hill's Supervised release which are reasonable and should have been Hill's release conditions prior to his false guilty plea. By being given ten times worse release conditions than the supervised release conditions that Hill is currently serving now, like home detention while not allowed to use a telephone to even be able to even call his Pretrial Services Officer to request permission to visit his Doctor or even visit his lawyer, or even to phone call his lawyer. The Pretrial Services Officer release conditions violate Hill's due process under the U.S. Constitution and makes it impossible for him to schedule an appointment with his Doctor or even an appointment at his Pharmacy to even pick up his legal prescriptions needed to manage his Type 1 Brittle Diabetes. His pretrial release conditions that Placke wouldn't even object to were unconstitutional in my opinion and would have made it impossible for Hill to get his prescriptions, to see his Doctor, to call his lawyer, to call his Pretrial Services Officer to even get permission to leave his residence while under home detention, and make it impossible to even get permission to visit his lawyer and to get something to eat before and/or after his lawyer appointment to take care of his low blood sugar. The pretrial release conditions were cruel and unusual, even murderers would be allowed to use the telephone. It would have been more acceptable for Hill to be allowed to use the telephone but that the telephone calls may be recorded and that phone call logs may be subpoenaed at will by the Pretrial Services Officer. Placke was ineffective and unconstitutionally deficient in the adversarial system

9

in regards to any objections to the Pretrial Services Officer's demand and presented absolutely no evidence at the arraignment and detention hearing.

2.  Mr. Placke instructed Hill that he and Mr. Placke would go over the discovery evidence together (See Paragraph 4 of Declaration of Plaintiff Brian David Hill in attachment to BRIEF / MEMORANDUM IN SUPPORT OF BRIAN DAVID HILL'S "MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY"), and that Hill would have an opportunity to review the discovery evidence in his presence. He prohibited third parties from having access to Hill's discovery packet including potential independent expert witnesses and Hill's own family was prohibited by Mr. Placke from even reviewing over the discovery. Mr. Hill pushed for a mental evaluation as he thought it would help to prove his innocence. Mr. Placke did indeed push for a "mental evaluation" as ordered by the Court as to Documents #12 (by Mr. Placke), #13 (Signed by Judge Catherine C. Eagles), and #14 (Signed by Judge Catherine C. Eagles). Mr. Placke was caught to have deleted various email attachments that Hill's family members had emailed him over the internet. (See **Exhibit 3**) Why would Mr. Placke be deleting email attachments from Hill's family then not presenting any evidence at all in his favor? Ineffective Counsel maybe? It has been revealed in a Federal lawsuit filed under the Freedom of Information Act ("FOIA") that Mr. Hill had never even gone over the entire discovery packet with Mr. Placke, but had only been permitted access to hear the Hill's confession audio that was created by Mayodan Police Department, and some pages of the entire discovery, but the rest of the discovery was a mystery to Hill (See Paragraph 4 of Declaration of Plaintiff Brian David Hill in attachment to BRIEF / MEMORANDUM IN

SUPPORT OF BRIAN DAVID HILL'S "MOTION UNDER 28 USC §
2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A
PERSON IN FEDERAL CUSTODY"). This may be a violation and/or
considered deprivation of Hill's Constitutional rights under the Fourteenth
Amendment of the U.S. Constitution supported by federal case law such as
Giglio v. United States, 405 U.S. 150 (1972); John L. BRADY, Petitioner,
v. STATE OF MARYLAND. No. 490. Argued: March 18 and 19, 1963.
Decided: May 13, 1963. Again, Brady v Maryland, 373 U.S. 83.83
S.Ct.1194, 10 L.Ed.2d 215 (1963) and Giles v Maryland, 386 U.S. 66. 87
S.Ct. 793, 17 L.Ed.2d 737 (1967). Not just the 14th Amendment under
Brady and Giglio, but also the Strickland v. Washington standard of
effective assistance of Counsel, that when Counsel is considered
constitutionally deficient in his/her performance, and when such
ineffectiveness creates a prejudice or even a miscarriage of Justice of an
innocent person being wrongfully convicted when that person could have
won the Jury trial or even be given a judgment of acquittal, that the
criminal Defendant is entitled to relief such as a new trial or even a
"change of plea" to prove factual innocence to acquit the Defendant, since
actual innocence would mean no need to waste judicial resources for a
Jury trial to which the outcome would already be destined for a finding of
"not guilty" due to any facts of actual innocence.

3.  Mr. Hill was transferred to the Federal Correctional Institution 1 ("FCI-1")
    at Butner, North Carolina to receive the court ordered mental evaluation.
    Mr. Placke still had found no evidence, presented no evidence, and Hill
    ended up having to persuade psychologist Dr. Dawn Graney ("Dr.
    Graney") of his innocence but had apparently failed to prove his innocence
    to Dr. Graney as Hill didn't even know what was in the SBI forensic report

11

and neither did Hill know that he could have proven to Dr. Graney that he had given false confession statements to Mayodan Police Department. Dr. Graney diagnosed him wrongfully as a "pedophile" under "pedophilic disorder: non-exclusive type: females". Dr. Keith Hersh had ruled out the earlier diagnosis of "pedophilic disorder", so this further proves that Hill is not a pedophile (See Document #23, filed 08/21/2014). Dr. Graney was not given any instructions by the Court to investigate and examine Hill's false confession statements and determine whether Hill had really given a "genuine confession" to law enforcement or a "false confession" which any weak minded person can be easily manipulated into doing. Mr. Placke was ineffective in requesting a psychiatric evaluation for Hill's false confession, and how he had let his computer's security deteriorate into such security issues to such as extent to where Hill's computer would be a target for computer hackers to download child pornography to Hill's computer which the SBI forensic report does have a statement about "454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013." Mr. Placke ignored the child pornography download dates which shows that 11 months of the download dates in question was while the "Black Toshiba Laptop Computer, Satellite C655D" was in the custody of the Mayodan Police Department and the North Carolina State Bureau of Investigation ("N.C. SBI"). Anyways Dr. Graney's evaluation didn't exactly help to prove Hill's innocence but was used against him and painted him in a false light because Mr. Placke didn't even show Hill all of the discovery packet of evidence that he was supposed to go over with "his client" which is Brian David Hill. Dr. Graney filed her Document #17 psychiatric report which was entered by Deputy Clerk Joy Daniel on May 8, 2014. Hill was able to get an envelope

12

through and two motions were filed. One was Document #15 "MOTION to Suppress Confession by BRIAN DAVID HILL." That was filed on April 21, 2014. The second motion was Document #16 "MOTION to Suppress Evidence by BRIAN DAVID HILL." That was filed on April 21, 2014. Both were filed from the same envelope from FCI-1, Butner, NC.

4.  Mr. Hill had appeared before District Court Judge N. Carlton Tilley Junior for the final "Pretrial Status Conference" before the Jury Trial was to be set and scheduled. The Minute entry entered stated that "*Minute Entry for proceedings held before JUDGE N. C. TILLEY, JR: AUSA Anand Ramaswamy appeared on behalf of the Government. FAFPD Eric Placke appeared as counsel for the defendant. Status Conference as to BRIAN DAVID HILL held on 6/4/2014. Defendant did not state a basis to support the Pro Se Motions to Suppress, therefore the court denied the Motions. The Court denies Pro Se Motion to Substitute Counsel. Jury Trial set for 6/9/2014 before Judge Osteen, Jr., Courtroom No. 1, Greensboro, NC. (Court Reporter Jane Calhoun.) (Winchester, Robin) (Entered: 06/04/2014)*". There was a conflict that was brought up at that hearing to which warranted a need for new Counsel. Such error by Judge Tilley Jr. led to the criminal Defendant having no choice but to falsely take the guilty plea or face prison time, and this brief will further explain herein as to why Mr. Placke made a statement to the Court that "*Your Honor, the matter was set by the Government, but I think that's appropriate for a couple of reasons. First, there was an evaluation done in this case, and that evaluation has been filed with the Court. It answered the questions related to competence and sanity at the time, indicating that in the evaluator's view, Mr. Hill is competent to proceed and that his conditions would not amount to a defense in the case.*" (See **Exhibit 5, a true and**

13

correct copy of Court Transcript of the Status Conference dated June 4, 2014). That right there further proves ineffective Counsel as to Mr. Placke. First of all, a false confession aka a confession that cannot be proven as fact, which can be impeached under cross examination and/or cross referencing the discovery evidence records by the Government, it would be subject to suppression and may not be admissible for a trial. When a confession is proven false when comparing Hill's statements to police detective Robert Bridge of Reidsville, NC Police Department and police detective Christopher Todd Brim of the Mayodan, NC Police Department, on August 29, 2012, then the confession holds no factual basis, no merit, no credibility as to whether the Defendant is guilty or innocent. It will be explained herein in this brief why and how this is so. Mr. Placke only was effective in having a psychiatric evaluation to determine competency and sanity of the Defendant at the time of the alleged offense element. However Mr. Placke did not ever fully investigate and acknowledge that the Defendant made false confession statements that can be proven simply on the Government's evidence alone, contradicting and conflicting. Statement (1) child porn in the ASUS Netbook when none was found by the N.C. SBI, (2) child porn download date claim in regards to eMule which would be either impossible or shows that the Laptop was hacked and/or tampered with, and (3) made an initial statement of innocence claiming about a "Trojan horse" but then was pressured into making a completely different statement which was that of guilt because the Detectives wanted to pin the allegations onto somebody and Hill had made enough false confession statements which looked convincing to the Grand Jury and the Court, but a real defense lawyer would have suppressed Hill's confession or kept the confession as admissible to raise

14

serious reasonable doubts to a petit Jury that would require that the Jury find the Defendant not guilty or that the Defendant could face a Judgment of Acquittal based upon raising at least "one reasonable doubt" which is needed for a Court to find the Defendant not guilty. Mr. Placke ignored and/or refused to even acknowledge or to do any investigation into Hill's confession to determine whether Hill had made a false confession which would have sounded genuine or appear convincing on its face until proven otherwise by a competent and effective defense counsel. Mr. Placke had failed his client, yet again. Mr. Placke also said in the official Transcript record that "*Second, Your Honor, Mr. Hill has filed two pro se motions. I have explained to Mr. Hill that if I thought there was a good faith basis for pursuing those issues, I would certainly do that, but I don't feel that I can, under the applicable rules.*" That was not the truth. Mr. Placke could have raised the issues of Hill's false confession and that there were witnesses which were presented when the Mayodan Chief of Police named Charles J. Caruso had threatened Hill to "fess up" or his mother would be held responsible. (See Document #37). Affidavits were filed, regardless of whether they were done properly from a professional lawyers' standpoint, and the intent was that Hill's family had witnessed a crucial incident which led to false confession statements being made by Hill at the time of the interrogation/interview on August 29, 2012, at the Mayodan Police Department. Even if Hill's family may be excluded from being allowed to testify under some kind of rule or technicality, Hill would still be able to raise his false confession statements from the discovery evidence. There would still be a reasonable doubt from that alone. If Hill's confession was to have been suppressed then the Government's case would have been weaker and would be difficult to prove whether the Defendant had

15

knowingly possessed child pornography by usage of foreign and interstate commerce by use of a computer. All the Defendant would have to do is request the assistance of a computer forensic expert to try to prove that his computer was hacked into prior to child porn download allegations, and that 454 files had been downloading between July 20, 2012, the same day that detective Robert Bridge claimed that Hill's IP Address 24.148.156.211 was flagged by the automated tools of NordicMule, and continued downloading until July 28, 2013, and that completely supersedes Hill's scope of access to the seized laptop. Hill lost his Black Toshiba Laptop Computer, Satellite C655D, Serial #2C276987Q ("C655D laptop computer") on August 28, 2012, which was confirmed by Search Warrant and Inventory. Not just that but two threatening emails (See **Exhibit 6, to see both threatening emails**) from tormail.org had been received by Hill at his admin@uswgo.com email, in April, 2013, while child porn had reportedly been continuing to download to Hill's C655D laptop computer according to Special Agent Rodney V. White's own testimony on page IV of his own report. The threatening emails that were received by Hill were around the same timeframe that "454 files had been downloaded with the eMule program". One statement in the threatening email message said that "we know some people in the SBI who will make sure that you are convicted", and claimed to have framed Hill and placed child porn on his multiple hard drives, and said that "this was only the beginning". The threat went as far as threatening to come after his friends, then some of Hill's friends did get child pornography set up attempt emails as stated by witness Attorney Susan Basko ("Ms. Basko") (See Document #46, Entered: 09/30/2014) which Mr. Placke also wanted to ignore. What Ms. Basko had said was relevant to Hill's case as Hill was accused of

16

acquiring child pornography by usage of a computer over the internet
which uses interstate and foreign commerce. Ms. Basko's testimony was
relevant and was in no-way any form of perjury, as her testimony
described correctly what had happened to political activists of the
alternative media such as Luke Rudkowski (See **Exhibit 7**, Video DVD
evidence), Stewart Rhodes (See **Exhibit 8**, Video DVD evidence), and
Melissa Melton as well as Aaron Dykes to name a few (See **Exhibit 9**,
Video DVD evidence), and all of them were connected to Mr. Hill, even
before the time of the alleged offense that Mayodan Police had described
in the Search Warrant Affidavit. A June 1, 2012 photograph (See **Exhibit
21**, Part 1: the photograph of Brian David Hill, Alex Jones, and Stewart Rhodes)
of Hill, Alexander Emerick Jones ("Alex Jones") of Infowars.com, and
Stewart Rhodes of Oath Keepers ("Mr. Rhodes") at the Hyatt Place Hotel
in Chantilly, VA, during the Occupy Bilderberg protest further proves that
Hill was involved in 2011 to 2012 with the very same people in his
political circle of friends and volunteer-co-workers in the field of
alternative media that may be getting child pornography set up attempts
from a tormail.org or similar provider. In fact Defendant Hill had his photo
taken with James P. Tucker of the American Free Press (now deceased)
also known as Jim Tucker, a news reporter that had reported multiple
times on the Bilderberg Group activities (See **Exhibit 21**, Part 2: the
photograph of Brian David Hill and Jim Tucker). Defendant Hill had his
photo taken with Virgil H. Goode, a former U.S. Congressman from the
Commonwealth of Virginia that had attempted to run for the office of
United States President under the Constitution Party (See **Exhibit 21**, Part
3: the photograph of Brian David Hill and Virgil H. Goode). Hill had his photo
taken with Mayodan town attorney and State Senator Philip Edward

17

Berger Senior at the town council chambers (See **Exhibit 21**, Part 4: the photograph of Brian David Hill and Philip Edward Berger Senior at the Mayodan town council). Last photograph that Defendant submits to the Habeas Court is the photograph of Brian appearing to be interviewing Gregory Lance of We Are Change NC (See **Exhibit 21**, Part 5: the photograph of Brian David Hill and Gregory Lance of We Are Change NC) at the Occupy Bilderberg protest on June 2, 2012. The photo of Brian interviewing or talking with Gregory Lance was taken by Caroline Gay. Mr. Placke had failed to do anything to thoroughly investigate Hill's claims, and did not do anything to prove any element of Hill's innocence. Again from the Court Transcripts (See **Exhibit 5**, pages 10 to 11, The Transcript) Hill had warned the Court that "THE DEFENDANT: *I do want to say something. Eric Placke had plenty of time to get a basis. He has not done that. He has not -- if I had the evidence, I would give it to you, but he's not doing it. He should have done that. If it had been the Rutherford Institute or the ACLU, they would have conducted a proper investigation with the FBI or DOJ or other private investigators. This man is not doing it. He's not doing what he is supposed to do to prove my innocence, and because of -- I mean, the evidence is clearly illegal, and it has to be proven. The only way it can be proven is with a proper investigation. There has not been a proper investigation. I have tried to get the FBI to help me out. The FBI -- I've never talked to a single FBI agent, not any government agent, for that matter, to be able to prove all of this to get an investigation, which would be able to supply evidence for this matter to have a basis for the suppression. That's why I wanted a new attorney, so the new attorney can get the evidence and supply it to the Court*." Hill had warned the Court and they ignored him, Judge Tilley Jr. had ignored him

18

which created a false sense that Hill's confession was genuine and was going to be used against him at the Jury Trial without any means to raise a reasonable doubt. Hill's attorney Mr. Placke had not submitted any suggestions to admit any exhibits as evidence before the Jury Trial. Mr. Placke had not submitted any list of witnesses. Mr. Placke had absolutely no criminal defense for his own client when facing a Jury Trial. If that is not ineffective assistance of counsel then I don't know what is. The Defendant became angry and frustrated with Judge Tilley Jr. that he started making rebellious statements which could have landed him in big trouble, all because of his ineffective Counsel not being forced to terminate services as Counsel of record and for new counsel to have been appointed. Mr. Hill said in the Transcript record that "*I will not register to be a sex offender, Your Honor.*" Then further berated the Court with a claim that "*This is a kangaroo court, Your Honor.*" Because of ineffective Counsel that was clearly lying to the Judge about having no good faith basis and was clearly working against his Client, Hill had every right to criticize the Court as being kangaroo as he clearly could have proven his confession to be false based upon what was in the discovery packet that Hill wasn't even given access to in its entirety while under Mr. Placke's watch. Hill clearly could have had his confession suppressed as a false confession caused by coercion or used it as a reasonable doubt at a Jury trial before verdict or a Judgment of Acquittal. Hill could have proven that his Attorney was ineffective, but Mr. Placke did not want his own client to be able to prove that his own confession contradicts the forensic report claims. False confession would be a landmark move in showing at least one reasonable doubt under the applicable rules. Mr. Placke lied to a Federal Judge on June 4, 2014, and he clearly got away with it.

19

5. The Defendant had originally plead guilty to the assumption that he was technically guilty of possessing child pornography, since law enforcement originally claimed that it was on his computer. The Defendant had plead guilty without ever reviewing over all of the discovery materials (Brady v. Maryland, Giglio v. United States). The Defendant had no criminal defense planned and no exhibit lists and no witness lists were ever presented before the final status conference to determine the admissibility of the evidence that Mr. Placke would need to give the Defendant a fighting chance at his Jury Trial that was to be scheduled on June 10, 2014. Instead Mr. Placke did nothing and gathered no evidence as all he did was delete evidence in email attachments that he had received (See **Exhibit 3**). If Mr. Placke deleted email attachments from Hill's family and never did any thorough investigation, then maybe he was telling Judge Tilley Jr. the truth that he had no evidence for a good faith basis under the applicable rules; however, the deception that Mr. Placke exhibited before the Court was that Mr. Placke destroyed any and all evidence via spoliation of evidence (deletion from IMAP and/or POP3 email server) and thus nothing would be presented before the Court except making the Defendant feel as though he were in a Kangaroo Court to which would openly carry out a miscarriage of justice, Placke style.

6. Mr. Placke had advised Hill, right after he deceptively dissolved the Defendant's only chance to suppress evidence or even raise serious reasonable doubts, he had no chance at winning the Jury Trial except to whine and bicker about the "Kangaroo Court", so Mr. Placke advised Hill to accept the Government's offer for a plea agreement (See Document #62, Filed 01/29/2015, Page 9 of 62). Hill had no other options and didn't even have any knowledge of what was in the entire discovery evidence, so

20

he had to make only one choice, which was to take the guilty plea for the crime that he is innocent of. The plea terms were emailed to Mr. Placke around 4:40PM on the same day that Mr. Placke lied to the Judge that there was no good faith basis for suppressing any evidence of the Government. Almost like Hill's downfall was engineered by his own legal Counsel only for this carefully crafted option of only the plea agreement and accepting responsibility, or face hefty prison time with no downward departure. To get a prison sentence of time already served, the Defendant had to falsely take the guilty plea. His health had also been deteriorating. So for multiple reasons, Defendant was forced to change his plea to "guilty" and find a way to overturn his conviction on newly discovered evidence or even by proving sheer deprivation of Hill's Sixth Amendment right under the U.S. Constitution to effective assistance of Counsel. Under Documents #19 and #20 the Defendant was forced into a decision of taking the guilty plea agreement on June 10, 2014. On August 11, 2014, a draft Presentence Investigation Report ("PSR") as to Brian David Hill was filed. On August 19, 2014, Government filed its response to Draft PSR. On August 21, 2014, the Psychiatric Report was received sealed and was dated August 5, 2014, in case as to Brian David Hill. On August 25, 2014, Mr. Placke filed a "Response to Draft PSR – NOTICE TO PROBATION AND OPPOSING COUNSEL ONLY". On August 27, 2014, Placke filed a "SEALED MOTION to Withdraw as Counsel of Record and to Extend Deadline for Filing Sentencing Position Papers" as Hill continued defying Mr. Placke and his agenda to fully convict him without

21

In support of this Brief/Memorandum, Defendant establishes the facts and elements in this Motion to state as follows:

## II. **Statutory Framework and Analysis**

7. Possession of Child Pornography is defined under 18 U.S.C. § 2252. Possession of child pornography is defined in relevant part as knowingly possessing images or videos that contain a minor engaging in sexually explicit conduct. The government must prove each element of the offense in order to obtain a conviction under § 2252.

8. Did this really happen in the middle district of North Carolina in the federal court system in Greensboro, NC? Did the government prove beyond a reasonable doubt that Defendant Hill had knowingly downloaded or attempted to possess child porn? Did they bring out anything at all about the history and characteristics of the defendant and whether the Defendant had given a false confession? Did the government prove that an actual minor's photo was on Hill's laptop computer?

9. For a list of factors courts are advised to consider during sentencing, see 18 U.S.C § 3553(a) (2006) (held not mandatory by Booker, 543 U.S. 220). Section 3553(a) lists the following factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Section 2252 offenses <u>require evidence that an actual minor was involved in the creation of a</u>

22

given visual depiction. Since its inception, the <u>federal child pornography act has</u> <u>included the mens rea term "knowingly" in defining each of the offenses</u> <u>prohibited by 18 U.S.C. § 2252.</u>[3] Congress intended the <u>mens rea term to help</u> <u>prevent the prosecution and conviction of inadvertent recipients of illicit</u> <u>materials</u>.  The <u>mens rea term "knowingly" is sufficiently flexible to</u> <u>accommodate this technological change and to continue to serve the purpose for</u> <u>which Congress intended it — distinguishing between innocent and culpable</u> <u>conduct</u>.  There are at least three new ways in which individuals might become unintentional recipients of child pornography in computer-based transactions: through unsolicited "spam" e-mails, pop-up advertisements during legal internet searches, computer hacking attempts, rootkits, adware, and viruses. Suppose an unintentional recipient acquires illegal material, notices its presence on the computer, and either does not know how to delete it or thinks he need not delete it so long as he does not view it. That recipient may "knowingly" possess the material, yet still be the type of "unwary" recipient that Congress intended to protect by including the knowledge standard in the statute.  Child pornography can easily be transferred among individuals in the form of electronic images sent as e-mail attachments. Although e-mails containing illicit images can be solicited by participating in certain online chat rooms or websites, a person could also receive e-mails that are entirely unsolicited.  Once an image is sent,

_____

[3] 18 U.S.C. § 2252 (2006); Protection of Children Against Child Exploitation Act of 1977.

the recipient's computer may be equipped with software that automatically downloads the e-mail's contents onto the computer's hard drive.

10. All parties in cases have the due process right of the U.S. Constitution as outlined in the fourteenth Amendment. U.S. Constitution; Amendment XIV states that "*Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without **due process of law**; **nor deny to any person within its jurisdiction the equal protection of the laws**.*"

11. **Computer Viruses and Malware (Analysis):** A 2009 investigative report by the Associated Press described several cases where innocent people were labeled as pedophiles or sexual perverts after family members or co-workers found porn on their computers. (See, **Exhibit 10** news article titled "Child Porn Investigations May Snare the Innocent | Prison Legal News"). Michael Fiola, a former employee of the Massachusetts Department of Industrial Accidents, was one of those innocent defendants. In 2007, Fiola's state-issued laptop was checked by his boss after someone noticed that he used four times more data than his co-workers. A technician discovered child pornography in a folder that stores images viewed online. Fiola was fired and charged with possession of child porn."... "However, an examination by Fiola's defense counsel found that

24

the laptop had a severe virus infection and was programmed to visit as many as 40 child porn sites per minute. "The overall forensics of the laptop suggest that it had been compromised by a virus," admitted Jake Wark, spokesman for the Suffolk District Attorney's office." The charge was eventually dropped, but not before Fiola and his wife had spent $250,000 fighting the case. They used up their savings, took out a second mortgage and sold their car. They also suffered stress-related health problems. "It ruined my life, my wife's life, and my family's life," Fiola said. Julie Amero, a 37-year-old substitute teacher in Norwich, Connecticut, suffered a similar fate. In 2004 she was charged with risk of injury to a minor after a classroom computer began displaying pornographic images after she left the class to go to the restroom. Amero tried to close the offending pop-up screens when she returned, but they kept reappearing and were seen by several children. She was convicted on four of the original ten counts in January 2007, but a bevy of computer experts following the case disagreed with the verdict. Following their outcry, prosecutors had the computer examined by the state police forensics lab, where the true culprit was discovered – a malicious spyware program that generated the pop-ups. Amero's conviction was dismissed, but for 18 months prosecutors considered retrying the case. Citing stress-related health concerns, Amero agreed to plead guilty to misdemeanor disorderly conduct in 2008 and the felony charges were dropped. "They got a pound of flesh," said Amero, who was fined $100 and effectively barred from teaching. "The doctors all agreed that I would not make it through another trial."

25

See: State v. Amero, Superior Court, New London Judicial District (CT), Case

No. CR-04-93292. Look at an article from the Daily Mail (See, **Exhibit 11**),

titled the "Latest WikiLeaks release shows how the CIA uses computer code to

hide the origins of its hacking attacks and 'disguise them as Russian or Chinese

activity'." It describes how even the United States Central Intelligence Agency

("CIA") can hack into computers, and forensically frame up another Country or

any of their political enemies with an online crime, a computer crime, and yes,

that can include possession and distribution of child pornography. The CIA is

capable of hacking into a modern computer while in law enforcement custody,

especially when a Laptop's circuit board still retains the Wifi card, and the

North Carolina State Bureau of Investigation has a history of manufacturing

evidence in serious felony cases such as for example the case of Dr. Kirk Turner

in Winston Salem or somewhere in Forsyth County, North Carolina (See

**Exhibit 45**, Part 1: "Judge dismisses lawsuit alleging SBI misconduct in

Clemmons dentist case", Part 2: "RALEIGH: Scathing SBI audit says 230 cases

tainted by shoddy investigations | Agents' Secrets: The Fallout |

NewsObserver.com"),. One of the Agents involved in Hill's case was none other

than Special Agent Gerald Thomas, and main Agent was Rodley V. White. That

very same Agent was involved in the Search Warrant that was executed on 413

North Second Avenue, Mayodan, NC, at the very beginning, with Detective

Robert Bridge. Just one paragraph reveals his involvement in Hill's criminal

case. Even the CIA is capable of targeting Brian D. Hill of USWGO Alternative

26

News for his political viewpoints and the very articles he was posting on his website. The threatening emails from tormail.org could have been from the U.S. CIA; it could have been from somebody in the Phil Berger family in Rockingham County, North Carolina; it could have been anybody just as Susan Basko had stated in her Affidavit (See **Document #46**). Hill does not need to prove who framed him with child porn, because all Hill has to prove was that he had no intent to knowingly possess child pornography files in violation of Federal law and State law. If Hill does manage to prove his confession to be false, that his guilty plea was false due to deteriorating health and ineffective assistance of Counsel who was openly working against him since no defense was mounted before the June 10, 2014 scheduled Jury trial. Hill would have lost the Jury trial by default since no evidence list and no witness list was presented by the final pretrial Status Conference. Hill did not commit perjury since his own Attorney refused to present any evidence that could have been admissible under the Federal Rules of Evidence. Mr. Placke didn't care about Hill's deteriorating health; otherwise, he would have done something about it like attorney Renorda Pryor did at Hill's supervised release revocation hearing on June 30, 2015. She actually fought to ensure that the U.S. Marshals give Hill the best health care they could possibly provide while Hill was jailed. Mr. Placke did none of that and didn't care that Hill had to fight to not die while in Jail. Hill is not capable of perjury for that circumstance and Hill should not be charged with perjury for the change of plea hearing. Anyways if Hill proves that his

27

confession and guilty plea were caused by his health, ineffective Counsel, and coercion, then the only evidence left to try to prove that Hill "knowingly possessed depictions of child pornography" is the Search Warrant, the N.C. State Bureau of Investigation, Mayodan Police Report, and the police photographs. If Hill didn't have a working Anti-Virus, since the U.S. CIA and other black-hat hackers are capable of planting evidence and fabricating intent, and the confession can be proven false and/or caused by coercion which proves that it wasn't voluntary and truthful/credible. The Federal Government has not proven Hill guilty beyond reasonable doubt due to the facts presented in this 2255 and based upon the Government's own evidence. Without the confession, the Government's case would be difficult to prove that Hill had knowingly possessed depictions of child pornography.

12. Let the Court re-examine the original charge that was against Brian David Hill (again, "Hill"). that "***The Grand Jury charges***: On or about ***August 29, 2012, in the County of Rockingham***, in the Middle District of North Carolina, ***BRIAN DAVID HILL did knowingly possess materials which contained child pornography,***" The date of which the Grand Jury found that Hill had violated the law was around August 29, 2012, coincidentally on the day that Hill gave a false confession at Mayodan Police Department on August 29, 2012. Hill has to prove that he was coerced to give the confession, and that his confession statements are not accurate, not truthful, and not credible, and may be impeachable on its face when cross referenced/cross examined with other

28

evidence. A confession that cannot stand as factual and truthful is not a fact of guilt but can be a fact of actual innocence since innocent people are known to falsely confess to crimes. An article from The Innocence Project (See, **Exhibit 13**), titled "False Confessions or Admissions - Innocence Project", describes about the various reasons on a case-by-case basis as to why innocent people falsely confess to crimes that they did not do. The Grand Jury had also charged that Hill had conducted the crime "which materials had been shipped and **transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer**, and that was produced using materials that had been shipped and transported in and affecting interstate and foreign commerce, including by computer". That area of Hill's charge says that use of a computer and that such material was acquired by interstates and foreign commerce. That would happen to be the "internet" which is a network of computers linked worldwide. The International Network aka the Internet facilitates foreign and interstate commerce by usage of a computer. So any evidence and/or witnesses that testify as to any fact of innocence in regards to Hill being charged with possessing material which contained child pornography should be admissible to establish any facts of evidence in this case, and demonstrate reasonable doubts to which Mr. Placke had lacked to reveal to the Court. The ineffective assistance of Counsel extends to his service as being Hill's trial counsel before any possible guilty pleas and plea negotiations. When Mr. Placke presented no

29

evidence at the final status conference on June 4, 2014, and openly admitted that he needed more time for plea negotiations, Mr. Placke had no intent to introduce any evidence or witnesses before the Jury. Facts that could have been established that weren't being established by the ineffective Counsel known as Mr. Placke.

13. *As defined in Title 18, United States Code, Section 2256(8) (A), said child pornography containing an image that involved a prepubescent minor and a minor who had not yet attained 12 years of age, and which materials had been shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was __produced using materials that had been shipped and transported in and affecting interstate and foreign commerce, including by computer__; in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2)."*

14. **Hackers and Trojans (Analysis):** Another complication in child porn prosecutions involves hackers using backdoor Trojans to gain remote access to personal and business computers. If so inclined, a hacker can use another person's computer to store illegal pornographic images or even plant child porn as an extortion tactic. Hackers can also pretend to be someone else online by "spoofing," or faking, another computer user's Internet Protocol (IP) address. (See, **Exhibit 10**). In October 2002, Julian Green was arrested in Devon, England after cops searched his home computer and found child porn. A

computer forensics expert hired by the defense found Trojans hidden on Green's PC. The Trojans – designed to piggyback his browser and log into porn sites – were probably downloaded as e-mail attachments, the expert concluded, and allowed hackers backdoor access to Green's computer. The charges were ultimately dismissed. In December 2003, companies worldwide began reporting a new breed of cyber extortion that had apparently been going on for about a year. The extortionists threatened to either wipe hard drives or plant child porn and then call the police if the companies didn't pay a nominal fee of $30. The threats were credible, considering the possibility of Trojans and the ease with which such attacks could be carried out, reported Mark Rasch, former head of the U.S. Department of Justice's computer crimes unit. Another concern with these types of cases, Rasch stated, is that <u>evidence consistent with guilt can be planted (such as in child pornography cases) and traces of manipulation hidden from even computer experts</u>, making it "<u>virtually impossible to determine that your target was not guilty.</u>" And with sentencing guidelines "becoming ever more draconian for computer-related offenses," Rasch wrote, "it is only a matter of time before not only cyber extortion but <u>cyber set-ups become a reality, if they aren't already.</u>

15. If a disabled person around the age range of earlier twenties is living off of one SSI check per month, how can they afford to pay an attorney over $300,000 to help fight this in court to prove his innocence? They have no choice but to rely on a court appointed attorney to prove their innocence to the court. For a first

31

time offender, a conviction for possession of child pornography carries a sentence of 0-10 years in Federal custody. The statutory maximum for this offense is 10 years. In Hill's case, he spent 11 months in various jails in NC then he was sentenced to 10 years of federal probation and to register as a sex offender. He kept telling his attorneys (Eric David Placke, John Scott Coalter), the prosecuting attorneys, and the federal judges that he is innocent. His family have told the courts that he is innocent and he had friends that are witnesses who told the court that he was innocent in September, 2014, one of them is Attorney Susan Basko who filed a declaration with this court (See Document #46).

16. Under the case of United States v. Schaefer, 501 F.3d 1197 (10th Cir. 2007) (Analysis and comparison to Hill's case):, "A child pornography prosecution requires proof that the image traveled in interstate commerce (including via a computer)." "In this case, *the only evidence was that the image arrived via the Internet, but no proof of any interstate nexus*. The *mere fact that the image arrived over the Internet does not ipso facto establish that the image traveled in interstate commerce*." OVERRULED in part by United States v. Sturm, 672 F.3d 891 (10th Cir. 2012). In Hill's case, there was no evidence how the suspected "files of interest" of the SBI claimed of what material constituted as child pornography got to his computer. Child Pornography images and/or videos do not just appear out-of-the-blue on somebody's computer and/or hard disks/drives. They would have had to come from (1) the internet, aka the international network of computers, (2) from a child pornography producer or

32

vender, or (3) was planted by law enforcement and/or a computer hacker that used Hill's computer to store the material which may constitute child pornography. In fact if the suspected material which may constitute child pornography was found in a temporary internet folder, cache, or hacked hard drive, then the computer user may not be held responsible for such material since the computer user could not have possibly known that such material was there. Citing United States v. Kuchinski, 469 F.3d 853 (9th Cir. 2006), "*A defendant may not be held responsible for images of child pornography that are contained in a computer's internet cache file, unless there is proof that the defendant endeavored to access the images in the cache file, or was knowingly in possession of the images in that compartment of the computer*." According to Hill's claim in an earlier pro se (not attorney filed or prior approval) filing with the Court, under Document #51, Hill had filed a non-notarized "GENERAL AFFIDAVIT FROM BRIAN DAVID HLLL REGARDING STATEMENT OF FACTS AND WITNESS TESTIMONY ON THE EMULE VIRUS, TROJAN HORSE, ROGUE PROGRAMS." Hill has also made a statement to law enforcement on August 29, 2012, about a "Trojan horse" prior to his false confession. Hill also had made a statement under Document #29, declaring under penalty of perjury regarding being a victim of computer hacking and admitted to "have received a number of viruses, trojan horses, spyware, and hacker attacks that has caused possible loss of data." Hill had made statements before the final sentencing, and prior to being arrested, about the "emule virus"

33

or about a "Trojan horse" all referring to a computer hacker attack which Hill believes had caused him to be framed or set up with the suspected child pornography allegations by the Government. Hill apparently has made the same claim over and over again, to Dr. Dawn Graney during the mental evaluation, to the Court in various pro se filings, and even in his federal lawsuit under the Freedom, of Information Act that he was framed/set up with child pornography and mentioned about a computer virus or being a victim of a hacking attempt. (Citing Brian David Hill v. Executive Office for United States Attorneys et al., case # 4:17-cv-00027, Document #4-7, Filed 05/01/17, also filed in 4th Circuit U.S. Court of Appeals, Case # 17-1866).

17. Defendant has Autism and Type 1 diabetes as exhibited in **Exhibit 53**, and is considered legally handicapped/disabled under the Virginia Department of Motor Vehicles. It has stated that a licensed physician has certified that the Defendant is permanently limited or impaired since 2016, which "has been diagnosed with a mental or developmental amentia or delay that impairs judgment including, but not limited to, an autism spectrum disorder." Not just that but Carilion Clinic has been seeing Defendant for his Type 1 diabetes, which can be considered brittle enough to require him to see an endocrinologist at Roanoke, VA. Not just the DMV record for a handicapped placard but also the letter from Dr. Balakrishnan which is supported by **Exhibit 53**.

18. The District Court has the authority to grant this 2255 Motion and Brief on the grounds of (1)actual innocence aka factual innocence, and (2)newly discovered

34

evidence within the 1-year deadline that is exercised under due diligence. First of all the Defendant requests with the Court that he change his plea back to "Not Guilty" as his actual innocence depends on changing his plea back to not guilty and ineffective assistance of Counsel is the sole reason as to why a false plea of guilty was entered, the second reason is health deterioration proven by medical records from multiple Detention Centers while Brian David Hill was a federal prisoner while under the U.S. Marshals custody, who had the authority over the Detention of federal prisoners. The second reason shows good cause as to why Hill should not be charged with perjury as Ineffective assistance of Counsel is also a good reason since all a poor Defendant has is his court appointed lawyer while sitting in Jail every day not being given enough diabetic insulin to think clearly and be healthy. When a lawyer refuses to do anything to prove actual innocence or even reasonable doubts for the Jury trial that the Defendant would have been convicted had he not falsely taken the guilty plea. Under those circumstances and the Defendant's deteriorating health, he would have been convicted had he not taken the guilty plea to get a prison sentence of time served, then once released, he could get access to his NovoLog Flexpen insulin instead of the mandatory 70/30 insulin that the Jails had provided Hill, and he can have access to his 24-hour glargine (Lantus) insulin which Hill's health is put into jeopardy when he is without his Lantus for even one day. When he is not getting his 24 hour insulin, his bladder overruns, the Novolog insulin is not as effective, and Hill's weight will start to drop and his body will begin

35

deteriorating overtime. This puts the Defendant at high risk of forced amputations, coma, nerve damage, kidney damage, eyesight damage, or even other undesired results or even death. Hill's request that he change his plea back to not-guilty is based upon case law by the U.S. Supreme Court and/or Appellate case law or the case law of the District Courts within the Fourth Circuit. It is well settled that *"[a] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [constitutionally insufficient]."* Hill v. Lockhart, 474 U.S. 52, 59 (1985) at 55. The record in that case contradicts Petitioner's allegation that his attorney rendered constitutionally insufficient advice regarding his guilty plea and subsequent sentence. Thus, in that case Petitioner had failed to establish by a preponderance of the evidence that his trial attorney rendered constitutionally deficient performance, and therefore, the Court will deny the motion on that basis. See Addy v. United States, 2014 WL 1088833, at *4 (E.D. Va. Mar. 19, 2014) (citing Jackson v. United States, 638 F. Supp. 2d 514, 530 (W.D.N.C. 2009) ("[A]llegations which are contradicted by the record do not warrant relief[.]") (citation omitted); Ecker v. United States, 2012 WL 6214356, at *7 (E.D. Va. Sept. 7, 2010) (rejecting petitioner's ineffective assistance claim on grounds that the record refuted his arguments). The ineffective assistance of Counsel in Hill's case has prevented Hill from having any means to proving any fact of actual innocence which include proving his confession to being false and not just a byproduct of

36

coercion. His confession originally could have been subject to suppression had

Eric David Placke, assistant Federal Public Defender of the Middle District of

North Carolina, proven to the Court that would have determined Hill's motion to

suppress his confession (See Document #15 and Document #16), and Hill's

motion to suppress the evidence. Hill did have evidence as a basis for

suppression of his confession, clear cut when experts such as Dennis Debbaudt

(See, **Exhibit 15**) could have been subpoenaed to testify on his expert opinion

on people with Autism giving potential false confessions and misleading

statements. The "III. Factual Basis for the August 29, 2012 Confession Being

False, Questionable as Fact, and/or should be Impeachable for Coercion" in this

brief shall further explain all different points of attack to which Hill's confession

can be picked apart and then factually known as false or non-credible. A non-

credible or false confession is not a legitimate means of admitting guilt to a

crime, especially when an initial statement was made by Hill proclaiming his

innocence, then the Detectives made him feel like he was guilty when they

proclaimed that they found child pornography files on his computer but didn't

even bother showing those alleged child pornography files to him to prove to

him that they knew what they were talking about and had him for possession.

They didn't show him any evidence, when any FBI Agent following proper

procedure would have clearly shown blurred photographs of what they would

have claimed could have been on his computer and asking Hill if he had ever

seen this particular photo or that particular photograph involving real children

37

with actual evidence. No evidence was ever shown to Hill, just two Detectives wanting him to admit to guilt whether he in fact was innocent or not. They were clearly out for blood. They spoke with Hill, according to what was heard in the confession audio, that they had been to his website (where he had articles that had mentioned about police chief booting him from the town council and his view on the town of Mayodan corruption) and saw his YouTube videos which were all political and a portion involving the town of Mayodan and a few in a negative light, the same police department claiming to be aiding in investigating Hill for child porn. Could this have been a conflict of interest? Placke ignored the false confession, Placke ignored the evidence of a potential conflict of interest which raises at least one or two reasonable doubts, maybe even facts that point towards his innocence. Placke could have suppressed his confession at the status conference on June 4, 2014, See the court transcript of that hearing (See **Exhibit 5**, The Transcript). Hill had a valid claim from the very beginning to even file a pro se motion for suppressing his confession. A confession being proven false and coercion are both well recognized grounds in federal court for suppressing an entire confession or at least the confession statements that were proven false. Even if Hill had decided to not file a motion to suppress his confession, which actually is better considering what is factual of his innocence, Placke could have used his false confession to help show facts of his innocence. The "IV. Factual Basis for the North Carolina State Bureau of Investigation ("N.C. SBI") Forensic Report by Special Agent ("SA") Rodney V. White

38

("Agent White") being Questionable and does Not Prove the Criminal

Defendant Guilty beyond Reasonable Doubt" shows the exact questionable

statements that Placke had also refused to use and refused to let Hill get any

access to prior to his guilty plea. The only time Hill had ever been given full

access to his discovery evidence material (in accordance with the legal

discovery requirements of case law, Brady v. Maryland and Giglio v. United

States) was on January 22, 2015, a few months after his sentencing hearing and

final judgment which had formally convicted Brian David Hill for possession of

child pornography. See **Exhibit 43**, excerpting the Declaration and other

evidence that was originally filed in \Hill's FOIA lawsuit in W.D.V.A. (U.S.

District Court) in support of this brief, of the circumstance surrounding Hill not

being given entire access to his own discovery evidence, not even in the

presence of Eric David Placke, his own lawyer. Hill was only given access to a

small portion of the discovery and the rest was walled away from Hill, Hill

couldn't just reach over and grab the papers to read the rest of them in Placke's

presence. Placke made Hill take a guilty plea falsely, placing him at risk of a

potential perjury allegation, without even letting him review over the entire

discovery packet of evidence. Hill took the guilty plea without ever reviewing

over all of the evidence which can show facts that may otherwise point towards

his factual innocence. Basically, Hill plead guilty to all facts of guilt in the

factual basis (See Document #19) that some may be empty facts or false facts.

When a fact isn't backed by the evidence, it isn't a fact, it is a theory and isn't a

39

factual argument. Hill plead guilty without ever reviewing over all of the discovery evidence material from the Government. Placke took advantage of Hill's health deterioration and defiance hoping that within time he will just give in, give up, not fight his criminal charge anymore, and just falsely take the guilty plea so that he is threatened with perjury if he ever has enough facts of actual innocence or just refuse to let him change his plea in the future. What a wonderful defense lawyer that Hill had! Placke is constitutionally deficit to the standard of Strickland v. Washington, 466 U.S. 668 (1984). To withdraw Hill's earlier plea agreement and allow the habeas court, under §2255 motion, to accept Hill's change of plea and then hold an evidentiary hearing over Hill's ground of actual innocence to determine if Hill's "MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY" and this supporting brief is enough for the habeas Court to grand this motion on the ground of actual innocence and/or on newly discovered evidence (prosecutorial misconduct as documented in case: Brian David Hill v. Executive Office for United States Attorneys et al, W.D.V.A. 2017), and/or on the ground of ineffective assistance of trial counsel. *"[F]or a claim to be viable through a § 2255 petition, it must [first] be raised on direct appeal."* Brooks v. United States, 2007 WL 2688228, at *2 (E.D. Va. Sept. 5, 2007) (citing United States v. Frady, 456 U.S. 152, 162, 165 (1982)). But Petitioner in that cited case did not raise this claim on direct appeal. Thus, he is barred from doing so via a collateral attack, United States v. Mikalajunas, 186

40

F.3d 490, 492-93 (4th Cir. 1999), unless he can demonstrate at least one of two possible exceptions, see, e.g., House v. Bell, 547 U.S. 518, 536-37 (2006) (establishing that a petitioner can overcome procedural default by asserting either: (1) actual innocence; or (2) cause and prejudice for failure to raise the issues on direct appeal). One of those exceptions—actual innocence—is particularly relevant here, as it provides both a potential excuse for Petitioner's default, as well as a freestanding justification to vacate his criminal sentence. In Hill's case, he had ineffective Counsel all the way till his sentencing. He was either forced to go along with the plea agreement, or he would never get out of jail for a very long time when either Counsel could have proven any of these issues raised in this entire brief in support of the 2255 motion. The prejudice was that Hill was treated as if he was guilty before being forced to falsely plead guilty while sitting in Jail every day in poor health. He wasn't allowed to present any evidence himself at any hearing by his own lawyer prior to his guilty plea on June 10, 2014. Placke presented enough evidence for a mental evaluation ONLY on Hill's competency to proceed to trial. A competency mental evaluation would not have helped him in the least since Hill is clearly smart enough to file pro se motions. Hill can explain why he is actually innocent, but Placke didn't request a mental evaluation for his false confession and didn't request an evaluation at all to aid Hill in proving actual innocence. Placke did inform Hill that he had a right to file pro se motions, but he knew that the strict rules of the Jails will prevent Hill from ever acquiring any evidence whatsoever

41

to prove any of his claims to the Court. In a sense, Hill could only file written Declarations if he knew what statute and words to say to make them valid under federal law. Hill's claims to the Court would be empty as he had no resources and no means to effectively fight his case without Placke while sitting in a high security Detention Center every day during his criminal case. The prejudice was that Hill was already treated as guilty, no evidence was reviewed by Placke prior to his guilty plea which could have devastated the Government's prosecution of this case. His own attorney made the assumption that Hill was guilty solely based on one belief that he thought child porn was on multiple hard drives that were seized and was analyzed at the N.C. SBI office. However N.C. SBI Special Agent Rodney V. White did not conduct his analysis in accordance with the usual North Carolina State Crime Laboratory basic procedures and rules for examining a seized computer for a child pornography case. SA White never looked for a computer virus, never investigated why 454 files had downloaded to Hill's seized Laptop all the way up till July 28, 2013, never took his false confession into account. Placke had prejudiced Hill in such a way as to deny Hill his absolute right to the adversarial system to proving his actual innocence. Hill's counsel was constitutionally deficient in every way except giving him a nice little plea bargain, but what good is a guilty plea bargain when an innocent man is forced to register as a "Sex Offender" for a crime that he keeps saying that he did not commit. Hill's trial counsel didn't do anything except make things worse when Dr. Dawn Graney wrongfully diagnosed Hill with

42

"pedophilic disorder: non-exclusive type: females" by misunderstanding his Autism Spectrum Disorder and did not follow any of the expert analysis by Dennis Debbaudt (See **Exhibit 15**, the white paper by Dennis Debbaudt) or any other expert that is concerned with the issues of Autistic people on the spectrum giving false confession statements to law enforcement officers when questioned or interrogated. Dr. Graney diagnosed him as a pedophile when she didn't even analyze his false confession statements and apparently did not even cross reference any evidence. She just took the evidence as factual guilt, over and done with, bye-bye. Dr. Graney conducted a flawed mental evaluation on the pedophilic disorder, and she shouldn't have ever submitted that information in her report as that diagnosis may have been fraudulent. She misconstrued his Autism behavior as a behavior of guilt. So yeah, Hill was prejudiced all the way till he was forced to plead guilty under Oath on false or questionable evidence by the Government and the questionable diagnosis and wrongful diagnosis of Dr. Dawn Graney which Placke never objected to when he clearly should have. Hill has made the appropriate arguments in this entire brief as to the deficiency of his Counsel, the prejudice, and that Hill would have been able to suppress his confession, maybe even suppress other evidence that was used against him, and Hill wouldn't of ever had to be put in such a position as to falsely pleading guilty under Oath, and this 2255 motion and brief never would have been filed today. Hill suffered a great constitutional deprivation, miscarriage of justice by the blatant and reckless ignorance of Counsel and willful defiance of Hill

43

wanting to prove actual innocence before a Jury. Placke deprived Hill of all

opportunity to prove his innocence and suppress any invalid evidence and is all

prior to his guilty plea. **The miscarriage of justice exception**, "our decisions

bear out, survived AEDPA's passage." In Calderon v. Thompson, 523 U. S. 538

(1998), "we applied the exception to hold that a federal court may, consistent

with AEDPA, recallits mandate in order to revisit the merits of a decision. Id., at

558 (*"The miscarriage of justice standard is altogether consistent . . . with*

*AEDPA's central concern that the merits of concluded criminal proceedings not*

*be revisited in the absence of a strong showing of actual innocence.*"). In

Bousley v. United States, 523 U. S. 614, 622 (1998), we held, in the context of

§2255, that *actual innocence may overcome a prisoner's failure to raise a*

*constitutional objection on direct review*. Most recently, in House, we reiterated

that a prisoner's proof of actual innocence may provide a gateway for federal

habeas review of a procedurally defaulted claim of constitutional error. 547 U.

S., at 537–538." "These decisions "see[k] to balance the societal interests in

finality, comity, and conservation of scarce judicial resources with the individual

interest in justice that arises in the extraordinary case." Schlup, 513 U. S., at

324. *Sensitivity to the injustice of incarcerating an innocent individual should*

*not abate when the impediment is AEDPA's statute of limitations.*" All of the

issues raised in this brief in support of and motion under §2255, are clear cut

with all evidence Exhibits and show clear and convincing evidence of any facts

that point towards actual innocence, reasonable doubt, and/or ineffective assistance of Counsel.

19. Now "Pursuant to the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "*counsel's representation fell below an objective standard of reasonableness*;" and (2) "*there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.*" Id. at 688, 694." Hill never would have said "this is a kangaroo court, your honor" for a starter. The second issue was that had Hill's counsel been effective then Placke would have noticed Hill's false confession statements, would have tried to get the evidence from Hill's family which he never used any evidence that Hill's family had emailed him, and Placke only wanted the plea agreement, the plea agreement or he would lose the Jury trial by Placke presenting no defense, no case, nothing. The evidence that he used was a few things for the mental evaluation to determine competency and whether Hill could have raised a defense of mental insanity. The prejudice was that Placke wanted the plea agreement and only the plea agreement.

20. To establish constitutionally deficient performance under the first prong, a petitioner must demonstrate that his lawyer "*made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment.*" Strickland, 466 U.S. at 687. *Such a showing must go beyond establishing that*

45

*counsel's performance was below average, since "effective representation is not synonymous with errorless representation."* Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see also Strickland, 466 U.S. at 687. *Moreover, given that it is all too easy to challenge an act, omission, or strategy once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."* Strickland, 466 U.S. at 689. *Finally, in assessing performance, a court must apply a "heavy measure of deference to counsel's judgments."* Strickland, 466 U.S. at 691. *"The second prong of the Strickland test requires a petitioner to "affirmatively prove prejudice," which necessitates a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."* Strickland, 466 U.S. at 694. *"A reasonable probability is a probability sufficient to undermine confidence in the outcome."* Id. The district court applies a slightly modified prejudice standard when a petitioner alleges ineffective assistance associated with the entry of a guilty plea, requiring the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."* Hill v. Lockhart, 474 U.S. 52, 59 (1985)."

21. **Supporting case law regarding colorable showing of actual innocence should be allowed in a Habeas Corpus petition despite AEDPA's one-year statute of limitations:** See, e.g., Holloway v. Jones, 166 F. Supp. 2d 1185, 1190

46

(E.D. Mich. 2001) (finding that while petitioner failed to establish colorable showing of innocence, "to utilize the one year statute of limitations contained in the AEDPA to preclude a petitioner who can demonstrate that he or she is factually innocent of the crimes that he or she was convicted of would violate the Suspension Clause ... as well as the Eighth Amendment's ban on cruel and unusual punishment"); Barbour v. Haley, 145 F. Supp. 2d 1280, 1288 (M.D. Ala. 2001) (following Wyzykowski and concluding that "**this court ... must give Barbour the opportunity to meet the standards for a showing of actual innocence before it can make any decision about this claim [of actual innocence] on the merits**"); United States ex rel. Thomas v. Welborn, No. 00-C-2601, 2000 WL 1831548, at 3 (N.D. Ill. Dec. 13, 2000) (finding that while petitioner failed to establish colorable showing of innocence, "to close the gateway of the miscarriage of justice exception to petitioners who fail to timely file their petitions under 2244(d) would raise "serious constitutional questions.'... Furthermore, it would create the possibility that an innocent person would remain incarcerated due to a constitutional violation, simply because he failed to overcome a procedural hurdle."); Neuendorf v. Graves, 110 F. Supp. 2d 1144, 1158 (N.D. Iowa 2000) (assuming, without deciding, that "sufficient showing of "actual innocence' would open the gateway to federal habeas corpus review, even if the petition in which the claim is asserted is otherwise untimely under the AEDPA"); United States v. Zuno-Arce, 25 F. Supp. 2d 1087, 1099-1102 (C.D. Cal. 1998) (finding that while petitioner failed to establish colorable

47

showing of innocence, the court nevertheless "extends the miscarriage of justice

gateway as a means of considering evidence and constitutional claims otherwise

procedurally barred by the AEDPA's statute of limitations" because

***"foreclosing a claim of constitutional violation where there has been a***

***colorable showing of factual innocence would likely constitute a due process***

***violation or an improper suspension of habeas corpus relief***"), aff'd, 209 F.3d

1095 (9th Cir. 2000), amended, 245 F.3d 1108 (9th Cir.), mandate stayed, 271

F.3d 953 (9th Cir. 2001); see also McLaughlin v. Moore, 152 F. Supp. 2d 123,

136 (D.N.H. 2001) (indicating that while it is likely that sufficient evidence of

actual innocence would provide a gateway through 2244(d)'s limitation period,

thereby permitting a successful petitioner to present untimely claims, "there is at

least some judicial authority suggesting that even if an actual innocence

exception to AEDPA's time limitation must necessarily be inferred, that

exception is not available to petitioners who fail to pursue their claims in a

diligent manner") (citing Workman v. Bell, 227 F.3d 331 (6th Cir. 2000) (en

banc), cert. denied, 531 U.S. 1193 (2001)).

22. Hill has appropriately argued as to why Hill has a valid reason/reasons to change

his plea back to not-guilty, to withdraw his guilty plea, and assert ineffective

assistance of Counsel that is overwhelming and compelling reasons as to why

Hill's 2255 motion should be granted by the Writ of Habeas Court.

23. Brian D. Hill presents three true and correct photocopies of Affidavits to the

Habeas Court in **Exhibit 48**. (#1) General Affidavit regarding innocence of

48

accused crime, General Affidavit by Brian David Hill (2 pages), (#2)

Declaration of Innocence for The White House - 01/22/2017 (2 pages), (#3) 2nd

Declaration of Innocence for The White House - 02/02/2017 (2 pages). All three

Affidavits from different time stamps, all serve as declarations of Defendant

Hill's innocence to which the Habeas Court shall accept for habeas review as

Hill declaring his actual innocence under Oath, thus giving the Habeas Court

further justification to warrant an evidentiary hearing, and consider granting

Hill's 2255 motion on the ground of actual innocence and/or even ineffective

assistance of counsel.


III. **Factual Basis for the August 29, 2012 Confession Being False, Questionable as Fact, and/or should be Impeachable for Coercion**


24.   The original confession that was made on August 29, 2012, was made to two

police detectives. (1) Detective Robert Bridge of the Reidsville, NC Police

Department, and (2) Detective Christopher Todd Brim of the Mayodan, NC

Police Department. The Confession was made by Brian David Hill aka the

criminal Defendant of this case. The confession was taped, modified to be

burned onto an Audio CD-ROM disc and then filed with the U.S. Attorney

Office for the Middle District of North Carolina on a date not known to the

Defendant, somewhere between the years of 2012 to 2013. Hill has not been

allowed by John Scott Coalter nor the Plaintiff of this case, to even get access to

49

the confession audio CD disc to re-listen to the confession. So the Defendant shall file as Exhibit 14 (See, **Exhibit 14**), two pages of the Mayodan Police Report, which contains a brief partial type-up of what all was said during the interview/interrogation of Brian David Hill on August 29, 2012, at the Mayodan Police Department.

25. One confession statement the Defendant made a clear and convincing false confession statement is in the police report. In pages 15 to 16 in the Case Supplemental report by Mayodan Police Department, located at 101 North 3rd Avenue, Mayodan, NC 27027, asked a question such as "Q. How long have you been downloading and viewing child pornography?" Defendant's answer was "A. About a year or so." That answer was wrong. According to what was in the N.C. SBI "Case File" (Case File # 2012-02146) that was from the U.S. Attorney's own discovery evidence, it had stated that child pornography had started downloading from eMule between July 20, 2012, and all the way till July 28, 2013. It does not match the Defendant's claim of "about a year or so."

26. Second confession statement the Defendant made a clear and convincing false confession statement is in the police report. In pages 15 to 16 in the Case Supplemental report by Mayodan Police Department, located at 101 North 3rd Avenue, Mayodan, NC 27027, asked a question such as "Q. Is there any other child pornography on any other computers?" Defendant's answer was "A. Yes. I have a Netbook at home that you didn't get." The "ASUS Netbook Computer Model Eee PC 1005PEB, Serial #9C0AA5155554" was the very Netbook that

50

Defendant said that he had child pornography on in his confession, and said that the Detectives didn't get that very Netbook. That answer was wrong. According to what was in the N.C. SBI "Case File" (Case File # 2012-02146) that was from the U.S. Attorney's own discovery evidence, it had stated that "no photos of interest were noted" on the Netbook, and "no videos of interest were noted" on the Netbook. The Netbook had apparently contained no suspected child pornography files and that item was returned back to Mayodan Police Department according to the claim by Special Agent White of the N.C. SBI. It does not match the Defendant's claim of child pornography being in his "Netbook at home that you didn't get." So Hill had reportedly made two false confession statements from the records of the Government. However **Mayodan Police, even till this day, has not even attempted to return the seized ASUS Eee PC Netbook** because it would be admitting defeat, that it would further document that no child pornography was found on the very Netbook that Hill had mentioned in his confession. Mayodan Police may have likely covered it up, destroyed the evidence, who knows. Shall I go on?

27. Third confession statement the Defendant made a clear and convincing false confession statement is the proof that there was witness contamination to which the police detectives may brag about something or tell a potential witness or suspect some details or information that can accumulate into statements that make the suspect to appear to look guilty when in fact the statements originated from a law enforcement source and not something that only the suspect would

51

know in a criminal investigation. In pages 15 to 16 in the Case Supplemental report by Mayodan Police Department, located at 101 North 3rd Avenue, Mayodan, NC 27027, asked a question such as "Q. Is there any other child pornography on any other computers?" Defendant's answer was "A. Yes. I have a Netbook at home that you didn't get." The "ASUS Netbook Computer Model Eee PC 1005PEB, Serial #9C0AA5155554" was the very Netbook that Defendant said that he had child pornography on in his confession, and said that the Detectives didn't get that very Netbook. Here is a photograph of the very Netbook that police had seized and no child porn was found on that exact Netbook computer. (See, **Exhibit 17, Part 2: photograph of the ASUS Eee PC netbook computer**) The very same netbook that was used when connected to a tripod and microphone to record either an interview or a Mayodan town council proceeding.

28.    Fourth confession statement the Defendant made a clear and convincing false confession statement is the fact that Hill made this statement but it does not match the forensic report and does not match his original charge and indictment. The police had asked the question "What age range do you like?" and Hill responded with the answer of "A. 12 to 13." Again the Grand Jury found that Hill "did knowingly possess materials which contained child pornography, as defined in Title 18, United States Code, Section 2256(8) (A), said *child pornography containing an image that involved a prepubescent minor* and a minor *who had not yet attained 12 years of age,*" which does not match Hill's

52

claim during his false confession that his age range was 12 to 13 year olds. So Hill claimed that he was attracted to 12 year olds to 13 year olds, but the child porn that the Grand Jury claimed that Hill had knowingly possessed, according to his own confession, are of prepubescent minors that had not even attained the age of 12 years old. The Grand Jury charge and Hill's confession claim does not match. In fact from Page IV of the SBI case file (SBI Case file # 2012-02146, delivered to Anand Prakash Ramaswamy on 10/23/2013) by Special Agent Rodney V. White, it had said that "*eMule Search Keywords: This records each string that has been recorded and an auto-completing is offered if a new search matches a previous one. From the analysis, this record showed 30 search terms: rapture lio, Friends "IV," Friends IV, asian lolitas friends, lolita rape hentai, asian lolita, "Hozomi Kurahashi," "rika nishimura," "rika nishimura" feiends, Rika Nishimura, 11yo, 12yo, purenudism password, 12yo peeing, 11yo peeing, 11yo bathroom, 10yo voyeur, 12yo pubic shower, pool shower, 11yo changing, changing room, gym shower, 6yo, ptsc, loli rape, toddler, pthc, 12yo making love, pthc making love, pthc forest.*" If any words were not typed correctly, my apologies as this came from my notes on the SBI case file. Those keywords came from the same page analysis that "this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013." So that means for eleven months from August 28, 2012, to July 28, 2013, eMule and "known.met" was operating whenever Hill's seized laptop was in the custody of Mayodan Police Department or the N.C. State Bureau of

53

Investigation. Also the search keywords did not mention about "13 year olds" and was not exclusive to just the term of 12 year olds. It has different ages such as 6 year old, 10 year old, 11 year old, and even toddlers. That does not match Hill's statement to law enforcement. Even one of the claimed suspected child porn download terms mentioned by Detective Robert Bridge in the Search Warrant affidavit (See Document #84-2, Filed 04/27/2015, Page 17 of 23), stated nasty and dirty and filthy child porn description and terms that Hill was exposed to during the police raid on August 28, 2012, prior to making his false confession statements. "*File Name: "(Pthc) Russia l0Yo-11yo Little Brother And Sister-2 - ZBoy&Girls Fucking_ Just Posing Or Naked 1.avi ". Detective Bridge has personally seen and knows the file with this digital signature to be a video that shows two preteen boys on a bed who get nude and have sex in various positions with a young teen girl.*" The claimed files that Detective Bridge claimed to have downloaded (either Detective Bridge shared it or NordicMule was tracking it or both) from suspected IP Address 24.148.156.211, do not even mention about 12 year olds and neither does it have anything to do with 13 year olds. It seems to be that the different child pornography claims in both the Mayodan Police report, Search Warrant, and SBI Case File have different ages and are not exclusive to the very ages that Hill had claimed in response to the Detective's question of "*What age range do you like?*". Even if there were a few keywords that did in fact mention 12 year olds, the different ages mentioned in the SBI case File and in the search warrant show a lack of familiarity between

54

Hill's confession statements and what a SBI Special Agent had stated what his forensic report had claimed was found on Hill's computer. Why would Hill say 12 to 13 year old girls then the claimed search terms say 10 yo, 11 yo, toddlers, Lolita rape? Either Hill is delusional in his entire confession or he does not even know what kind of or type of child porn that was even found on his computer. A false confession may make him look guilty, to appear guilty on the surface, but his confession is impeachable and cannot be proven factually truthful and not proven accurate when cross examined and cross referenced. His confession being picked apart and proven to be false and not based on familiarity, not even going into any details which could have proven whether he would have known what was found on his computer. It seems to me that Hill was giving random or pre-determined answers to which the Detectives had wanted to hear to get the "guilty admissions" to which do not have to be proven truthful but just simply to make him look guilty in a court of law. The appearance that Hill knew of what exact child porn was on his computer but in reality he gave short answers that cannot be proven 100% truthful, accurate, and factual by forensics. For 11 months, his Laptop was in law enforcement custody, according to Agent White's very own claims in his very own SBI case file report. Could Hill have really downloaded the files which constituted child pornography? Could his Laptop had been hacked to which gave the law enforcement the opportunity to look through his Laptop while somebody was continuing to download suspected child pornography to Hill's Laptop when he didn't even have it in his custody

55

anymore? Another statement Hill had made which contradicts with his age range claim was the prior answer to their question of "Q. Are you attracted to adults or just children?" Hill responded with the answer of "A. Both. But I prefer kids." So wait a minute??? Hill said that he was attracted to the ages of 12 to 13 year olds, but also likes adults? Either he likes kids, or he likes adults. If he is attracted to both adults and kids but prefers kids, then why is he attracted to adults but yet prefers the ages of 12 to 13 year olds, yet mentions no age range of 18 years or older. Doesn't mention anything about what kinds of adult ages he is attracted to. Both statements may be contradictory to each other.

29.  Fifth confession statement the Defendant made a clear and convincing contradictory false confession statement is the fact that Hill made this statement to the Detectives. First of all, he made an initial statement to the Detectives question of "Q. What is your computer usage and knowledge?" and his response was "A. I download movies, programs, and music." Wait a minute here, anybody with basic computer skills can download movies, music, and programs. Look at Grokster, Bearshare, Kazza, and other P2P file sharing programs to which many people in federal courts were caught committing civil acts of copyright infringement which violates the copyright act. Those people did not download child pornography, and Hill's claim of downloading "movies, programs, and music" do not incriminate him to the extent of his possession charge and shows that he had been admitting to something that many people worldwide have been doing, such as using P2P file-sharing programs to

56

download copyrighted material, which can make each user liable to a copyright infringement lawsuit, does not make any such admission to the same level as somebody admitting to downloading child pornography. So Hill made an initial statement that he was downloading copyright infringed material which was not child pornography, then he later changed his statement to what the Detectives wanted to hear. Let's get on to the next question by the Detective and Hill's answer to that question, "What type of download software do you use?" Hill had responded with "*A. I use bit torrent programs, like eMule. I only download. I don't share.*" Ah, wait a minute here, eMule is not a Bittorrent program but was part of the eDonkey network system back in the early 2000s during the whole Kazza and Bearshare controversy with the RIAA copyright infringement lawsuits. eMule is not a program that uses the bittorrent mechanism according to technical experts that understand the differences between eMule and Bittorrent. So Hill claimed that he had used eMule as a bittorrent program, since he did say the claim to the Detectives that "*I use bit torrent programs, like eMule.*" Hill could not explain to the Detectives that eMule and Bittorrent, at the time, were two separate P2P file sharing programs that use different methods to download and share computer DATA.

30. The District Court needs to look into the fact that Hill only knew of what child pornography terms 'PTHC' and 'PTSC' stood for because of law enforcement discussing those two terms which is backed by documentation, for what was clearly read from the search warrant served with Brian David Hill and Roberta

57

Hill, and people with Autism can exhibit a sophisticated form of echolalia that can cause a person to repeat things that make it appear that a criminal case suspect would have knowledge of a crime that was committed but the statements were not of actual knowledge of what had transpired, but was just repeating things which would make a suspect look guilty. First of all, again, even one of the claimed suspected child porn download terms mentioned by Detective Robert Bridge in the Search Warrant affidavit (See Document #84-2, Filed 04/27/2015, Page 17 of 23, and Pages 20 and 21 of 23), stated nasty and dirty and filthy child porn description and terms that Hill was exposed to during the police raid on August 28, 2012, prior to making his false confession statements. "File Name: "(Pthc) Russia l0Yo-11yo Little Brother And Sister-2 - ZBoy&Girls Fucking_ Just Posing Or Naked 1.avi ". Detective Bridge has personally seen and knows the file with this digital signature to be a video that shows two preteen boys on a bed who get nude and have sex in various positions with a young teen girl." A paragraph of that search warrant affidavit, number 43, said and I quote that "43. Entering search terms into an eDonkey client returns a list of files and descriptive information including, in some client software, the associated MD4 root hash values. Your affiant knows from training and personal experience, trial searches, and working undercover cases on the P2P networks that users can find images and movies of child pornography by using these search terms. Some examples of search terms that locate files **_containing child pornography are "PTHC" (which stands for "Pre-Teen Hard Core")_**,

58

"babyj", "pedo", "kiddie", "underage", and various terms relating to ages such as "l0yo", etc. These search terms typically results in the user being presented with a list of files that include movie and image files that when downloaded and viewed contain child pornography illegal in NC." This statement under affidavit by Reidsville, NC police detective Robert Bridge, in that search warrant affidavit, proves that the Detective had stated what PTHC stood for and is the exact same term that Defendant Hill repeated, a day later, in his false confession on August 29, 2012. Well, why not repeat the terms as it paints Hill as a guilty pedophile and it would make any Juror gasp for air wanting to convict his sorry butt? Rogue cops and wrongful convictions always use (false) confessions based upon contamination of witness statements and not letting the suspect and/or witness tell their side of the story but tell the narrative that the Detective or Detectives would have in mind to resolve the case quickly and get an easy criminal conviction without much to worry about. The contamination is always about injecting certain details of an ongoing criminal case investigation which can lead on a suspect to repeat or add to it with information that may or may not be of actual knowledge of what may have actually happened during the commission of a crime. When information is released to the criminal suspect before attempting to extract a criminal confession, it contaminates and discredits a suspect statement or witness statement as such statements could have been based upon what was told or read to the suspect or witness prior to making a statement to law enforcement.

59

According to **Exhibit 20** (See **Exhibit 20**, Pages 2 and 3 of Mayodan Police Report, Incident/Investigation Report, OCA: 2012-00287) which is the Mayodan Police Report concerning suspect Brian David Hill, the criminal defendant in this case, the Detective Christopher Todd Brim had fully mentioned what both child pornography terms which are PTHC and PTSC, the exact same terms, the only two terms, that Defendant Hill had used in the August 29, 2012 confession (See **Exhibit 20**, Pages 2 and 3 of Mayodan Police Report, Incident/Investigation Report, OCA: 2012-00287), Page 3 of the Mayodan Police Report). The police report stated on "page 3" that *"While in Detective Bridge's office, he showed me the webpages and downloaded files that were retrieved by the ICAC software. The videos downloaded by the Hill's IP address (24.148.156.211) were child pornography, commonly referred to as **Pre-Teen Soft Core (PTSC) and Pre-Teen Hard Core (PTHC)**. I personally viewed a five second segment of each video and confirmed that it was child pornography."* So when the criminal case had started and the police report was being typed up, all prior to the police raid, they admitted to and acknowledging the two very child pornography terms that were the exact same terms repeated by Defendant Hill on August 29, 2012. The documentation further proves that Hill would have learned and began having knowledge of what certain child pornographic terms had meant prior to his confession, all thanks to the very law enforcement officers that were hell bent on wrongfully convicting Hill for his political agenda and website at uswgo.com, referring to USWGO Alternative News, which was

60

the subject of a federal lawsuit by Righthaven, LLC, in the U.S. District Court for the District of Colorado (See case Righthaven LLC v. Brian D. Hill, civil case no. 1:11-cv-00211, U.S. District Court for the District of Colorado). That federal case is undeniable proof that Hill was involved in running/operating a political website to which may have gotten under peoples skin and cause online, or even real life, type conflicts that can eventually lead to physical and/or mental harm by an adversary that is contrary to Hill's First Amendment right to freedom of speech and freedom of press. Freedom of press is reporting the news and facts of current events, and the freedom of Speech refers to the right to have an opinion and speak on whatever viewpoints you wish to bring up, the ability to speak freely without legal consequences (criminal and civil) for speaking your mind. What is even more ironic and helps to show that this was a frame up operation was the fact that the police <u>Detective had checked that no computer was used by the "Offender" in the "incident/investigation report". In the "Offender" section below the "drugs" section of the police report, it was checked (X'ed out) that "Offender Used" Alcohol/Drugs was a NO and Computer was also checked as a NO.</u> It is quite clear that the whole child pornography investigation was surrounded by the claim that a computer or computers were used to download, access, and/or distribute material which constitutes child pornography. In both pages 2 and 3 of the police report, it talks about child pornography being downloaded by an IP Address and that ICAC software was used. So for the police to check a "NO" on the offender using a

61

computer for the incident is yet another indication that this was a set up/frame-up operation to which it further contradicts the statements by police. They knew that Brian David Hill was either mentally and/or physically disabled by adding the occupation of the suspect was disabled. Either the detective filling out the report was stupid which is doubtful, or the Detective knew that the Offender/Suspect did not use a computer to commit the crime because either the police had framed him or the possibility that it may be a computer hacker would have to cause the police to not state any facts of whether the "Offender" or suspect had even used a computer for the incident to which had been documented by Mayodan Police Department.

31. So why would Hill be making false confession statements that sound different from Brian David Hill's true character, and making statements such that cannot match the forensic claims correctly? Why would Hill be making statements to the Detectives that contradict the evidence and are contradictory to itself? Because Hill was questioned around lunch time. Back to Exhibit 14 (See, **Exhibit 14**), which shows on Page 15 of the Mayodan Police Report that Brian David Hill was interviewed on "08/29/2012 11:23:00, Wednesday". That would be around August, 29, 2012, at around 11:23AM, in the morning. Then CT Brim typed up on record that the interview time stopped around "12:21 PM" That would be almost an hour. Now Hill is a Type 1 brittle diabetic, and was interviewed around lunch time, and was free to leave after his false admissions of guilt. Hill was interviewed around lunch time, and that can make him more

easy to break down, more easy to manipulate into admitting to things that weren't true. Hill has Autism Spectrum Disorder, and can exhibit a sophisticated form of echolalia according to Dennis Debbault (See, **Exhibit 15**). With TV shows such as Law and Order (a show mainly about prosecuting sex offenses), and other law enforcement shows on Television, it would be easy for Brian Hill to pick up things and terms. He can be made to repeat things that are not truthful to his own situation and actions when coerced and/or threatened and/or manipulated to admit to a certain kind of conduct. When Hill gives a false confession, when he is exposed to descriptions of child pornography in the Search Warrant, and what if he was already exposed to adult pornography? (legal under Title 18, U.S.C. Section 2257, that *"no performers under the age of 18 are allowed to be employed by adult industry production companies"*) As he is over age 21, could have been confused between the Detectives mentioning anything about adult and child pornography when being bombarded with the out-of-the-blue child porn allegations by the Detectives, out of the blue, on August 28, 2012, being questioned over pornography. Hill could have made the false assumption, based upon what he heard from the police on the day of the police raid, making the mistake which can confuse him between what is child porn and what adult porn was/is and make statements that appear to make him look like he is into child porn but was really admitting that he may have viewed adult pornography material that is legal under Title 18, U.S.C. Section 2257. Even if not all providers of such depictions of photographs and/or videos contain

63

record-keepers due to the internet being an open place, any adult can take their

own photos and place them on the internet. So that means any of the "files of

interest" may not actually be of children but were adult amateur porn producers

that do not work for some corporation or company but just work for themselves.

It could be of just simply nudism material of adults which the U.S. Supreme

Court, the only issue that the Court could construe that angle is whether there

could be any children mixed in with the adult nudism material. However the

Supreme Court vacated a Court of Appeals finding that Sunshine & Health

magazine could be obscene (Sunshine Book Co. v. Summerfield, Postmaster

General, 355 U.S. 372). "The right to depict adults and children in innocent

nude poses has been upheld without a pause for 41 years. In case after case, the

Supreme Court and lower courts have always upheld the constitutionality of

"nudity without more," specifically referring to the nudist depiction as a fully

constitutional form of expression." So how many of those images are of adults

and how many are of just nudism material to which can have a mixture of

different ages? The State Bureau of Investigation could have found nudism

photos containing women and they could have marked that as a "file of interest".

There are also adults that look as young as teenagers, especially those in the

Asian community, that eat healthy, and not do snack on junk food. There are

legally defined adults, under the law and by birth certificate, which can look like

a teenager. So how many "files of interest" aka alleged child porn images are

really of confirmed children found on Brian D. Hill's Laptop? **Should any legal**

64

adult, amateur adult material (no record keeping since it isn't professional production level) which is still not child pornography as defined by statute, and nudism material be calculated as any "files of interest" to which constitutes another file count of material which depicts child pornography as defined by the federal child pornography statutes? Only materials which are obscene and constitute actual child pornography (as defined by statute and further defined by the U.S. Supreme Court) and are marketed as such unlawful material should fit the statute of which Defendant Hill was originally charged. Any files that were calculated based upon material completely legal (under the pornography statutes and U.S. Supreme Court case law precedent) should not be used to determine the guilt of Defendant Hill. The Detectives, whether they knew it or not, took advantage of Hill's Autism and brittle Diabetes to get a "convincing confession" to which would indict and charge Hill with the crime. Make Hill look guilty by giving Hill enough dirty and sick information to get him to admit to things that he did not do, and say things that are not true, and use that to make him appear guilty.

32. One of the beginning questions and Hill's responses to the Detective's questions, makes it appear that the Defendant said some very stupid things and did not even know the difference between eMule and Bittorrent (See, **Exhibit 16**). The Detective asked the question "Q. What type of download software do you use?" and Hill responded with "A. I use bit torrent programs, like eMule. I only download. I don't share." Right there, the criminal Defendant Brian David

Hill just admitted that eMule is a bit torrent program right? Yes both eMule, and Bittorrent are both P2P file sharing programs, but the way files download, how files can be accessed, and the mechanism of both P2P file sharing applications are completely different. Bittorrent and eMule/eDonkey are not based on the same protocols and file sharing mechanisms. When Hill made the statement to the Detectives that he had used "bit torrent programs, like eMule" he is sounding like he has forgotten what Bittorrent and eMule was, and just answered the question to the Detective in a stupid, not intellectual fashion. Of course, when a criminal suspect is questioned by police around his lunch time, after being threatened to confess or his mother would be held responsible, and with Hill's Autism and brittle Type 1 diabetes, he would be quite easy to wear down while in a non-custodial interview. So Brian, as tech savvy as the Detectives would claim that he is, didn't even say that he used P2P file sharing applications and that may include eMule and Bittorrent. Also the forensic report never mentioned anything about Hill using Bittorrent to which any suspected child pornography files may have been found. It was all focused on eMule and known.met to which "454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013." Bittorrent would be more difficult to fabricate child porn sharing, downloading, and hijacking because Bittorrent requires that a user download a .torrent file in order to execute a command to search for users over Distributed hash table ("DHT") or under torrent trackers which tell the Bittorrent client where the file pieces can be downloaded and which peers offer

66

such pieces via their IP Addresses and port numbers. Bittorrent does not have the option of bulk searching for files to download like eMule. With eMule, it is far easier to accidently access a child porn file being shared to which is tracked by law enforcement. If you bulk download, and you just happen to accidently add multiple child porn files in your bulk downloading crusade, then you will be targeted by NordicMule and law enforcement will begin operations to target your IP Address and raid your home. If a particular file shared on eMule happens to have a large string of keywords, it will be far more easier to accidently download and find suspected child porn files. Also, there are no moderators to which constantly check shared files to determine if the file name and keywords are truthful to each file's content. That means a bad actor could technically share child porn under legal adult porn keywords to evade detection, or could also be used to deceptively entrap an eMule user searching for adult porn to fall into child porn downloading to which would receive a visit from law enforcement officers. Somebody could also theoretically share legal adult porn under child porn keywords. Anything is possible with the internet. The difference between eMule and Bitorrent is that eMule is more easy to hack and hijack, and computer hackers could install eMule viruses to share and download child porn, and the end-users of hacked computers would be targets of child pornography investigations. Whether somebody knew that child porn was downloading on their computers or not, Detectives normally get the answers they want to hear, tell them you are guilty or your family member could end up

67

with the charge you're facing, or the Detective can wear you down until you tell them that you did it, that you feel that proving your innocence will be too time consuming and too much financial resources of which many poor folks have no resources for full child porn investigations and are easily coerced and pressured into admitting to the crime whether innocent or guilty. Detectives will not investigate your claim of innocence, more of the contrary. They will look through every nook and cranny until they make you look like "Adolf Hitler" or look like a "pedophile ringleader" even if you have never been a part of such pedophile rings. The goal of the police is to open a case, and shut the case. If you're innocent, well that's too darn bad, the Detective only wants to hear the words "I did it," "I downloaded child porn, "Yes!," and just any word that sounds good enough to convince a Jury that you knew how guilty you were, even if you are not guilty. When a person makes a false confession, when a person that is brittle diabetic is questioned around lunch time, the brain will not function as good as when the blood sugar is within the normal range. Brain function and intellectual thought slowly deteriorates when the blood sugar starts heading low without any treatment such as glucose, especially fast acting glucose. Any medical doctor will agree with this analysis, if the Court would like to have the expert testimony of a medical doctor in regards to obtaining a confession from a person around lunch time that is a brittle diabetic. Bittorrent requires you to get on your browser to websites like, for example of torrent websites in the past: The Pirate Bay, Mininova, Isohunt, and others. You have to

**68**

search publicly on the internet using your browser to even access and download a .torrent file or even access a magnet link which allows you to copy and paste the magnet link to your Bittorrent client (if it has magnet link support), then your requested files should download if there are any peers available that has complete files being shared known as "seeders" or Bittorrent "seeds". With eMule, you just search up a keyword, and tons of files can popup, 300, 600, 900, or more. You don't even have to know how illegal a particular keyword is to search it up and find it. If somebody suggested that you download files of a certain keyword, then you do it without being able to check the legality of each file in the list prior to downloading it. Just point, click, bulk download, and that is where some eMule users can be arrested, convicted, and are on the sex offender registry, even if some of the busts have convicts that have no sexual interest in children, thus people that are not interested in pedophilia can be convicted of pedophilia just because of what files come down the pipeline on eMule and similar type P2P file sharing clients. For Hill to have told the Detectives that "bit torrent programs, like eMule" is not realistic and makes Hill sound retarded, not trying to offend people with mental retardation. Bittorrent is an orange, and eMule is an apple which carries more higher risks. For Brian to say that he had used Bittorrent programs like eMule, makes it appear that Brian Hill's mental capacity started deteriorating, which is why I had used the word retarded. Hill was questioned around lunch time, the Detectives knew that he had insulin dependent diabetes ("Type 1 Diabetes") (See, **Exhibit 17**, **Part 1**:

69

**the Mayodan Police photograph showing an insulin pen on the desk, Part 2: photograph of the ASUS Eee PC netbook computer**) that required an insulin pen or syringe (photo of the NovaLog insulin pen taken by Mayodan Police on August 28, 2012, at the Hill residence, proves this), and him being questioned around lunch time deteriorates his competent ability to think clearly and intellectually. Essentially he is slowly becoming more incompetent the longer he is questioned without checking his blood sugar and while his body, that would normally eat lunch, is delayed and deprived from such opportunity until the end of the law enforcement questioning. Hill had claimed that he used eMule as it was a Bittorrent program, when eMule is night, and Bittorrent is day. Hill had made a statement that is not only a false statement to police when being pressured to tell the Detectives what they had wanted to hear, and wanted to know how smart he was. It doesn't matter how smart somebody is with Autism and/or diabetes. Smartness does not matter in a law enforcement interrogation/interview when being questioned around lunch time, when there are any signs of low blood sugar to which can impair the full functionality of the brain and motor skills. When Hill, that is normally smart under his Autism, makes a stupid statement during an interview or just agrees with a yes or no question asked by a Detective, then something is wrong. When Hill starts making agreements with the Detectives, when Hill was making statements that are not truthful and cannot be proven truthful by forensics, then it is a false confession, and part of it caused by a slowing or quickening impairment of full

70

brain function when dealing with low blood sugar. The ability to reason and assert your rights or defense or claims of innocence become more difficult as each minute goes on by. Even if the liver has glucose in reserve, the body and mind still acts in a state of low blood sugar. It slowly goes back up depending on body type and the body's ability to absorb glucose quickly or slowly. Even if Hill had glucose reserves in his liver, he would still have low blood sugar type behavior for at least 15 minutes to an hour from Hill's estimation. For being questioned, he may appear to sound drunk or that he will just nod his head or agree with whatever the Detectives had said in order to be done with the interview. For Hill to make a stupid and incorrect statement regarding eMule being a "bit torrent programs" that he uses further shows that Hill made false confession statements throughout the entire police interview. The Detective even gave Hill theoretical arguments such as about if he likes to look at little girls at Walmart, Detective Bridge stating that "Hey! She's a cute little girl" to try to get him to agree, like agreeing that a cat or dog type of animal is cute but NOT in a sexual way. Yeah, it makes the Defendant look guilty, but the Detective injected theoretical arguments of this sort to further make Hill sound guilty and agreeing with child porn claims. The Detectives also made the argument about wearing skimpy outfits, which of course if there are any kids wearing any outfits of the sort, it is another theoretical argument trap to which by simply getting Hill to agree with their opinions, can further make Hill appear to be guilty and agreeing with that analysis based on the argument of the claim by the Government of

71

whether Hill is perverted, when Hill may have agreed not in a perverted way.

**Like for example of theoretical argument:** if a kid is tired of doing homework after school, and starts checking yes to every question on the list without actually reading each question. Of course that test will likely get a failing grade, but some answers will be marked as correct, even though the kid marked each question as "yes", it will appear odd that the kid checked yes to almost every question, even if some of those "yes" questions turns out to be the correct answer. So technically the kid knew the answer on its face from a teacher reviewing over the quiz, but in reality the kid just did it to do his homework more quickly to eat a snack or play video games. Hill just agreed with what the Detectives had said, and then was allowed to sign some papers and get the heck out of the police department. Then Hill can finally go out and get some lunch, when he should have been eating lunch before the police interview or should have been allowed to eat lunch before continuing the interview. Because he was interviewed around lunch time and the Detectives did not offer to check his blood sugar, knowing that he was diabetic, he gave stupid answers and false confession statements, it all clarifies that his confession was coerced by his Autism, diabetes, and that he gave false confession statements that are not the truth and cannot be proven as fact.

33.   The fact that Hill had voluntarily given a confession on August 29, 2012, to the police Detectives, is a false fact. The fact is Brian David Hill had given a false confession, was threatened by Chief Caruso of Mayodan Police to "fess up", and

was questioned around lunch time when Hill would start making stupid statements because his brain function started deteriorating from lack of glucose. The police did not check his blood sugar and no record of such even exists. Hill gave a false confession and was coerced to falsely admit to guilt. Therefore there is NO fact of Hill's confession being genuine, and the confession could have been suppressed on June 4, 2014 at the pretrial status conference on the basis of what was just explained in the entire section of "III. **Factual Basis for the August 29, 2012 Confession Being False, Questionable as Fact, or should be Impeachable for Coercion**" of this brief/memorandum. It was well explained and can be partially proven with the expert testimony of an independent medical doctor and diabetic expert such as an endocrinologist. The rest is based on Hill's claims in his Affidavits/Declarations previously filed with this Court and based on the evidence from the prosecution. Hill's confession has been proven false and was subject to suppression, had Hill been given effective assistance of Counsel instead of Eric David Placke and John Scott Coalter. Even if the confession was admissible and not subject to suppression, the Jury would understand about the false confession with the defense of "false confession" with Hill's Autism and diabetes, being questioned around lunch time as the police knew he was diabetic. No diabetic blood sugar glucose meter was ever used to test his blood sugar before, during, or after the interview/interrogation. Hill gave false confession statements and made stupid statements which counters his own intellect: therefore, he was questioned the wrong way. Hill

73

gave a false confession and was coerced and threatened to confess to a crime that he did not do.

That further proves that since Hill's confession is not truthful and was created falsely as a byproduct of coercion and threat, his confession does not prove his guilt at all and no fact finding reasonable Juror would find the Defendant named Brian David Hill guilty beyond a reasonable doubt. Innocent people can give false confessions, truthful confessions that can be proven as such is pure evidence of guilt, but confessions that are proven false is evidence that there was no valid confession and that the confession does not prove that the Defendant had knowledge of the misconduct that he was accused of by the police. The Defendant already had confessed, so why would he make statements which appear to make him look guilty but are false? The confession element is false beyond reasonable doubt, and it was not voluntarily since his blood sugar aka his blood glucose may have been low, and the police did not bother to check his blood sugar before, during, or after the interview. All of this is in sheer violation of the federal Americans with Disabilities Act, under Title 42 U.S. Code §12101 (citing the Americans with Disabilities Act of 1990), ("ADA"). His confession was obtained in violation of his disability and civil rights, in violation of Title II of the ADA law since Mayodan Police Department is a local law enforcement entity, of the corporate municipality of the 'Town of Mayodan, which is registered by the State of North Carolina as an incorporated town. The police did not give him any reasonable accommodations for his brittle type 1 diabetes

74

which is insulin dependent before, during, and after the interview/interrogation. They did not understand his Autism, and that had caused him to give a false confession. His confession violates the ADA law, his confession can be proven a work of fiction aka a false confession with misleading statements and should have been subject to suppression to which Mr. Placke ignored that evidence in favor of guilty plea negotiations.

Therefore the **fact of "false confession by Brian David Hill"** has been established for the Defendant's 2255 Motion and supporting brief/memorandum, filed with the Court. One of the facts of actual innocence is that Hill gave a false confession.

## IV. Factual Basis for the North Carolina State Bureau of Investigation ("N.C. SBI") Forensic Report by Special Agent ("SA") Rodney V. White ("Agent White") being Questionable and does Not Prove the Criminal Defendant Guilty beyond Reasonable Doubt

34. The State Bureau of Investigation ("N.C. SBI") forensic report has many questions that were never answered and never addressed because of Defendant Hill's false guilty plea, again due to ineffective assistance of Counsel that failed and refused to thoroughly investigate and cross examine the N.C. SBI case file. The so-called forensic report by Special Agent ("SA") Rodney V. White ("Agent White"), of the SBI regional office located at 501 Industrial Avenue, Greensboro, North Carolina, is not the same as what would have come out from a United States Federal Bureau of Investigation ("U.S. FBI") sanctioned crime

laboratory. With some of the questionable statements/remarks from SA White (Agent White), if the Laptop was tampered with or even evidence being planted on the Black Toshiba Laptop Computer, Satellite C655D, Serial #2C276987Q, it may be evidence tampering with such an extent to which even the U.S. FBI would not consider creating a separate report. The N.C. SBI forensic report does not go into any details to confirm whether all materials to which there were images that were "files of interest" and videos that were "files of interest" even constitute unlawful child pornography as defined by the original statute to which Defendant Hill was charged. Were all materials that were claimed to have been found by SA White, for certainty, if it was even confirmed by the National Center for Missing and Exploited Children ("NCMEC") or not at all, to being all of sexual and obscene materials to which constitute the very definition of child pornography? Was there any material that could be legally valid under U.S. Supreme Court case law (Sunshine Book Co. v. Summerfield, Postmaster General, 355 U.S. 372), legal adult pornography materials as defined by legal under Title 18, U.S.C. Section 2257, that *"no performers under the age of 18 are allowed to be employed by adult industry production companies"*), or just simply adult photos that are not obscene and are just of nudity that were mistaken as children when the birth certificate can prove otherwise? Did the SBI case file really prove that all "files of interest", "images of interest", and "videos of interest" were all of explicit child pornography and considered actual child pornography as under the statute to which Brian David Hill was charged?

76

According to what was reviewed by Defendant Hill on January 22, 2015, at John Scott Coalter's law office, the Defendant found that there was no discovered list, no blurred out photographs, no proof at all that would confirm that the alleged SA White's claim of the images and videos were even of actual child pornography as defined by the statute to which Hill was charged. There was no virus scan and no virus logs in SA White's report as to what was on the Black Toshiba Laptop Computer, Satellite C655D, which was seized by Mayodan Police Department, the very "computer" which the claim of "emule" and the "files of interest" aka the alleged claim of child pornography was found. So there was no virus scan, there were no blurred photograph thumbnails of the so-called "files of interest" which the N.C. SBI SA White claimed in his report that may be child pornography or not. The North Carolina State Crime Laboratory (Triad Regional Laboratory, Guilford Building, "The Triad Regional Laboratory analyzes only Drugs, Toxicology, Latent and Digital Evidence."), which can specifically handle child pornography forensic analysis type investigations, located at the address of 2306 West Meadowview Road, Suite 110, Greensboro, North Carolina 27407. They could have done a better job at examining Hill's laptop. Instead, making blatant admissions and/or statements which affect the integrity and credibility of the entire SBI case file forensic report, which never would be acceptable by State Crime Lab policy and any federal/state standards regarding evidence contamination, evidence tampering, evidence planting, and evidence deletion. So no confirmable proof that all "files of interest" were of

77

actual child pornography beyond doubt, despite the "files of interest" being

counted each as child pornography images and/or videos by the U.S. Attorney

and the Federal Court. Even the Presentence Investigation Report ("PSR") had a

sentence in paragraph #13, (See Document #33, Filed 09/16/2014, Page 6 of 26)

stated that "*According to the government, **none of the children have been**

***identified as part of a known series*** *by the National Center for Missing and*

*Exploited Children (NCMEC).*" Wait a minute? This is key evidence too, even if

this were to go back to a trial or used in the actual innocence proceedings as a

part of the 2255 motion and usage as evidence for the final judgment of

acquittal, if granted by the Court. Detective Robert Bridge said that the IP

Address 24.148.156.211 had downloaded known child pornography videos that

"Detective Bridge" had "known personally" prior to investigating the case of

Brian David Hill and the alleged IP Address. The IP Address is akin to a street

address. The IP Address alone does not constitute that the actual owner of the IP

Address was responsible and had knowledge of what had transpired from that

particular IP Address. Computer hackers and script kiddy hackers that can set up

a vulnerable computer to running a proxy server or even run the illegal programs

to protect the true identity of the computer hacker who hacked such a computer,

possibly for illegal activities, and the blame would go on the computer end-user

but not the hacker that may have perpetuated the activities. Anyways, Detective

Robert Bridge, of the Reidsville Police Department, claimed in the search

warrant affidavit that the particular IP Address 24.148.156.211 had downloaded

child pornography videos that were known to him and possibly another officer

(as part of the Internet Crimes Against Children ("ICAC") task force), that

would also mean that the victims would also have been known, and they would

be able to easily point to whom the victims were according to the NCMEC. So

according to the U.S. Government, according to what was admitted in the PSR,

there were no victims essentially, only the "State of North Carolina" and "Town

of Mayodan" was the victim of Defendant Brian David Hill. How did Hill

victimize Mayodan and North Carolina? Well, his past political website that he

had operated from 2009 to late August, 2012, but whatever he says on his

political website does not commit a crime at all and is protected under the first

amendment of the United States Constitution and the Constitution of North

Carolina. There was not even a confirmation by N.C. SBI SA White as to

whether the so-called alleged child pornography videos that Detective Robert

Bridge claimed that somebody could have downloaded via IP Address

24.148.156.211, which Mayodan Police had pointed to Hill as the primary

suspect which is a little odd considering that two people had lived at "413 North

Second Avenue" in Mayodan, North Carolina, was actually on the seized

computer that was forensically examined by SA White. No confirmation, no

confirmed link as to whether the same files in the search warrant affidavit were

even found on Brian Hill's computer (Black Toshiba Laptop Computer, Satellite

C655D, Serial #2C276987Q) that was seized by the Mayodan Police

Department.

35. Page IV of the SBI case file said and I quote a statement by SA White that

"*eMule Known.met: The Known.met file saves all files eMule knows of whether they are shared files, files currently in the download list, or downloaded in the past. For every file, information like file size, file name, hash sets, hash values, and some statistics are saved. From the analysis, **this record showed that 454 files had been downloaded** with the **eMule program between July 20, 2012, and July 28, 2013**. This record also showed that files were shared with other users and the number of times each file was shared.*" Did I just hear that right, from the analysis of Hill's laptop that "***454 files had been downloaded** with the **eMule program between July 20, 2012, and July 28, 2013***"? That exact same Laptop was seized on August 28, 2012. That later was confirmed with the Detective making a claim that he allegedly found child pornography on Hill's computer, stated in the August 29, 2012, confession audio recording. He didn't show any proof to Hill, he never showed him the so-called child porn that the Detective believed was on his computer. The mere idea of, to make Hill believe that he did have those files on his computer, so that Hill would think he is guilty and that he better just falsely tell them that he was guilty in order to appease them, the authority figures. That is part of the controversial "Reid Technique" that is heavily defended as a good technique to extract and obtain criminal confessions in interrogations/interviews. Detectives and police are even allowed to lie that they found evidence in order to make the Defendant feel that his/her back is against the wall, and that by confessing, whether the person is guilty or

80

actually innocent, will make such admissions in hopes of getting less prison time by appearing to cooperate with law enforcement. However, what if the criminal confession can be proven partially or even entirely false? That is one of many reasons why the "Reid Technique" should not be used against people with Autism. Anyways, back to the relevant argument at hand. Why would suspected child pornography aka "files of interest" be downloaded via eMule P2P file-sharing program between the dates July 20, 2012, all the way to July 28, 2013, when that very Laptop was seized on August 28, 2012? Confirmed by both the statement made by one police Detective in the confession audio on August 29, 2012, and the inventory papers produced by Mayodan Police Department, and filed with the Clerk of the superior court of Rockingham County. There is no explanation from SA White, no explanation from the entire State Bureau of Investigation office and neither from its legal counsel Angel Gray as to why suspected child pornography files would download for 11 months while in the custody of the North Carolina State Bureau of Investigation and the Mayodan Police Department. Around that download timeframe as mentioned in Page IV of SA White's report, a tormail.org message (**Exhibit 19**) was received by Brian D. Hill, aka Defendant Hill, that made a claim that they framed him with child porn by planting it in his computer and hard drives and that "this is only the beginning", that "we know some people in the SBI that will make sure you are convicted". In fact why don't I just quote the whole threatening email, which stated from **Exhibit 19** that "*You better watch out Brian...**We are watching***

81

*you...Having **child porn planted on your hard drives and computer** was only the beginning and we will set you up for violent sex crimes if you don't watch your back...Have fun becoming a sex offender...Police won't believe you no matter how much evidence you have that you been set up **we know some people in the SBI who will make sure you are convicted**. You will be shut up by being a sex criminal. Your friends Alex Jones, Dan, James, Sean, Alex, and others are next...BeWare!"*. In addition to that the email sent out from the tormail.org anonymous email service provider was around the date of April 7, 2013. It is interesting that this email was sent by some anonymous assailant then received by Defendant Hill during the time that the "***454 files had been downloaded*** *with the **eMule program between July 20, 2012, and July 28, 2013.***" So three months after the threatening email was received by admin@uswgo.com, which was the Defendant Hill's email address, the downloading on eMule had stopped, according to the "Server.met" file. This definitely brings a bit more credibility to the claims in the threatening emails from tormail.org that Brian had received. Child porn planted in multiple hard drives, likely using some kind of hacking tool or remote control system type of software, for example: HackingTeam Remote Control System, or the CIA program known as Vault-7 that was leaked on WikiLeaks. So any hard drives connected to the internet, that were connected to the Black Toshiba Laptop Computer which was reported as compromised by Hill, were all vulnerable and any files can be planted, modified, or even removed without the end-user of the computer having any knowledge of such

82

activity. It is almost as if the computer was hacked specifically to download the "child pornography" to Brian D. Hill's computer, Mayodan shows up out of the blue to seize the compromised laptop computer, then it continues downloading while it is supposed to be under secure custody in some evidence room and should be backed by a valid chain of custody. For the laptop to continue to download suspected child pornography, while in law enforcement custody, may mean that the chain of custody had been broken before, during, or even after the forensic analysis by SA White. This doesn't just violate the forensic standards of analyzing evidence of a criminal or civil case, it may not even be valid under the Federal Rules of Evidence, and even if it was valid under the Federal Rules, it would point towards evidence tampering, evidence planting, and even may be evidence deletion if any tracks were covered. It would point towards actual innocence via affirmative defense of frame up or be a very convincing reasonable doubt which would convince any reasonable juror that Hill should be found not guilty of his charge. Again ineffective counsel by both of the court appointed lawyers named John Scott Coalter and Eric David Placke.

36. The very same page "IV" (See Document #71-4, Filed 04/03/2015, Pages 1 to 13 ) had another entry where it said "*On October 11, 2013, SA White conducted a forensic examination for image and video files on the following item of evidence: ITEM #2: ASUS Eee PC Laptop, Serial Number: 9COAAS155554,*" then "*The following hard drive was removed from "Item #2: Seagate HD 250GB, Serial Number: 6VCIL6G5,*" and then "*No images of interest were*

83

*noted. No videos of interest were noted.*" That very same Netbook was reported to the Detectives as to having child pornography on it according to the confession of Hill on August 29, 2012. It can be cross referenced with Document #84-3, Filed 04/27/2015, Page 8 of 9. It was a copy of the inventory attached to the very email that was emailed from admin@uswgo.com to J. Joy Strickland of the North Carolina Department of Justice (JStrickland@ncdoj.gov). Then according to Page 9 ("P9") in the police inventory, it stated that *"*All P9 items were voluntarily given as evidence by Brian Hill on 8/29/12 at 1220 hours* Added at 1320 to this inventory.*" Then on P9 is also has an entry for a *"ASUS Netbook Computer Model Eee PC I005PEB, Serial # 9C0AA5155554"*. That is proof for the Court that Placke and Coalter both ignored as lawyers. The ASUS Eee PC Netbook computer mentioned in the confession as to the Defendant Brian D. Hill claiming to have child pornography on it during his own confession, that very Netbook had no files of interest found, nothing noted, and another page (the Defendant does not have access to that page) mentioned about the Netbook being returned to the Mayodan Police Department. So the SBI case file actually proves that Brian falsely confessed about having child porn in the netbook that they didn't get the day before when they searched the Hill residence back then in 2012. That is a fact that Hill gave a false confession to the Detectives regarding child porn in his ASUS Eee PC Netbook.

84

37. It is also a fact that multiple people had received a copy of SA White's SBI case file on "Suspect/Subject: Brian David Hill", or they were supposed to have received a copy according to the report. Copies had been made, then had gone to "Special Agent in Charge L. D. Shank, District Attorney P. E. Berger Jr., United States Attorney R. E. Rand," as well as the "Case Records Management Section, and Case Agent". SBI case number is 2012-02146 (915). It is also a fact that Detective Robert Bridge did not submit the evidence to SA White, but the record shows that the original forensic analysis request came from "Todd Brim (Requester), Business: Detective Sergeant, Mayodan Police Department," then "101 North 3rd Avenue, Mayodan, North Carolina 27027, Telephone: 336-548-6038." So it went to multiple people, and it is odd that Detective Robert Bridge had not been the one to direct the forensic examination since he was the so-called undercover officer conducting a child pornography investigation by the Internet Crimes Against Children ("ICAC") task force. So where was Robert Bridge making the request? Why was it Christopher Todd Brim? Does Todd Brim have authorization from the ICAC task force to retain all of the evidence and ship it off to the State Bureau of Investigation office in Greensboro? Why did Detective Bridge bail out from the child pornography investigation completely after the false confession that Brian gave on August 29, 2012? Why was Detective Robert Bridge's sister Melanie Bridge working for the District Attorney named Philip Edward Berger Jr.? Those are very good questions that need to be answered for the evidentiary hearings in regards to the actual

85

innocence of Brian David Hill. The fact that multiple Agents and people received copies of SA White's report, nobody has raised any questions about the download date up till July 28, 2013, it further validates that claim in Page IV of that said report. None of them are making any claim as to whether it was some kind of mistake or not. It is not a mistake since nobody is denying that the dates are in SA White's report and did reveal that 454 files had downloaded between "July 20, 2012, and July 28, 2013."

38. In SA White's report, he had also stated that Defendant Hill's seized DVDs were encrypted, that they had attempted to crack the encrypted containers passwords but were unsuccessful. This can make Hill look guilty, but here is the fact of actual innocence on this one. Neither SA White nor the Mayodan Police have ever attempted to contact Hill to ask him if he would be willing to give up his encryption password which he was more than willing to do so. The problem is that they may have suspected that there were no child pornography files inside of the encrypted DVD discs that were seized from Brian David Hill. The reason he had used encryption is because of lawsuits from the Record Industry Association of America ("RIAA") and other corporations that didn't want people to use copyrighted materials without paying a permit. Hill did pay for licensed versions of Microsoft Windows, and every computer he has ever bought with Windows preinstalled was legally licensed. He had to use activation cracks, activators, and things like that because they kept badgering him to activate his computer over and over again, each and every time he gets a hacker

86

attack or viruses show up on his computer, which he cannot help. The internet is a dangerous place. He had to keep calling some guy in India in some call center that lectured him about activating his computer too many times, so he has justification for the use of an activator or programs like that. So anything he fears might lead to a wrongful lawsuit, just another way for Microsoft to control their customers, for the RIAA to control their customers and restrict what they can do with the very music that they paid for, and other greedy corporations, as he said during his initial statement to the police detectives. So Hill is willing to divulge his encryption password freely (not on public record where personal passwords aren't appropriate to post on public record) to his next attorney that the Court will appoint for his 2255 motion for the Habeas Court, and the attorney can demonstrate to the Court that NONE of his encrypted DVD discs have any child pornography in them. They may have copyrighted material but the civil statute of limitations for litigating copyright infringement has expired since the 2012 police raid, the search and seizure. Mayodan Police are not trustworthy to hold the encryption password as they could plant files or create new encrypted volumes with Hill's password then plant child porn and claim that it is his. Hill doesn't exactly trust Phil Berger, Mayodan Police, and the N.C. State Bureau of Investigation since the N.C. SBI were caught manufacturing evidence in a murder case of Dr. Kirk Turner (See **Exhibit 45**, Part 1: "Judge dismisses lawsuit alleging SBI misconduct in Clemmons dentist case", Part 2: "RALEIGH: Scathing SBI audit says 230 cases tainted by shoddy

87

investigations | Agents' Secrets: The Fallout | NewsObserver.com"). Hill is willing to divulge his encrypted DVD passwords to his lawyer or to an independent private investigator to enter them into the encryption software that should at least be on every encrypted DVD that was seized from Brian David Hill, and prove to the Court that absolutely no child pornography files is in every encrypted DVD disc, which was seized from Defendant Hill. Hill establishes the FACT that he has no child pornography files in any of his encrypted DVD discs. Once the Court recognizes this fact after careful analysis and examination by an evidentiary hearing, Hill requests that all of his encrypted DVD discs be returned to him undamaged, since it is impossible to plant child pornography files inside of DVD discs that have their sessions closed.

## V. **Requesting an Independent computer forensic expert to be appointed by the Court or in alternative that the Federal Court authorize CJA Voucher (CJA 21 Voucher form) payment for an independent computer forensic expert to examine the Black Toshiba Laptop Computer, Satellite C655D, Serial #2C276987Q to help prove factual innocence**

39. The defendant requests with the Court that there be the appointment of an independent computer forensic expert to examine the seized Black Toshiba Laptop Computer, Satellite C655D, Serial #2C276987Q, to confirm the 454 files that were downloaded between the dates July 20, 2012, and July 28, 2013, according to the SBI case file. Not just that but to confirm the existence of computer viruses, Trojan horses, which would include the suspected Win32/MoliVampire.A (or variant B) (See Document #84-5, Filed 04/27/2015

88

Pages 2 to 3 of 4) as outlined by the ESET anti-virus software program. There also may be other anti-virus software programs and services that have cataloged the emule.exe virus to which a remote computer hacker can operate emule.exe on an unsuspecting user's computer without their knowledge and without their consent. Since the N.C. SBI did not conduct any virus scans nor produce any virus logs, it is the job of the Defense aka the Defendant to request that the Court appoint and pay for the expert witness to examine the seized computer to determine what viruses, rootkits, malware, spyware, and any other unauthorized computer program which gives a computer hacker complete and total control of the Operating System which could have led to the criminal activity that was alleged by Detective Robert Bridge and/or Detective Christopher Todd Brim. Defendant Hill has also acquired the agreement that an independent computer forensic expert named Kevin Wetzel has initially agreed to conduct the independent computer forensic examination upon the fee being paid. SLC Security Services in North Carolina will conduct the examination once the Court has agreed to pay for such examination and as directed by the Court. If the U.S. Attorney has any objections to this expert, then a hearing needs to be scheduled for oral argument as to why the Defendant needs the computer forensic expert to conduct an independent forensic examination to resolve the issues in this 2255 Motion and the issues raised by all of Hill's pro se motions and pro se declarations. Hill can further organize efforts for the Habeas Court to authorize and pay for an independent computer forensic expert, as all of the issues

89

mentioned in this entire 2255 brief are good cause as to why an independent computer forensic expert is needed to resolve both of the factual and forensic issues in this criminal case.

## VI. Requesting an Independent Psychological Expert and Medical Doctor to provide expert witness testimony for the valid reason as to why there was a False Guilty Plea that was entered on June 10, 2014, as to Defendant giving a false confession on August 29, 2012, and how the Defendant's health plays a role in actual innocence

40. The defendant requests with the Court that there be the appointment of an independent forensic psychologist, to confirm whether Hill did give any signs of a false confession, and as to whether it was caused by his Autism Spectrum Disorder, Obsessive Compulsive Disorder, Generalized Anxiety Disorder, and Type 1 brittle diabetes. Defendant Hill also requests with the Court that there be an appointment of a medical doctor to act as an independent expert witness and examine the evidence and evaluate the Defendant as to whether the Defendant gave a false confession possibly from low blood sugar or even high blood sugar as what would be caused by Hill's type 1 brittle diabetes. Both experts would need to examine/analyze the suspect confession audio dated around August 29, 2012, from Mayodan Police Department, as well as reviewing over a copy of the North Carolina State Bureau of Investigation (N.C. SBI) case file concerning "Suspect/Subject: Brian David Hill". Both experts, or either expert, can conduct

90

a cross examination and cross-reference to determine whether Hill gave truthful, credible, and accurate confession and testimony to Mayodan Police Department on August 29, 2012. This is as to whether Hill was competent at the time in giving the criminal confession, and as to whether there was any coercion whether intended or unintended to which Hill's mental and physical conditions would affect the voluntariness, accuracy and credibility of such a confession. Defendant Hill has not found a forensic psychologist as of yet to agree to conduct an independent examination/evaluation. It is true that Hill was already evaluated by Dr. Dawn Graney (See Document #17, Filed 05/08/2014) for competency and Dr. Keith Hersh for the psychosexual evaluation (See Document #23, Filed 08/21/2014) that was conducted post-guilty-plea. However, there was never any psychological examination and evaluation directly dealing with the false confession statements by Hill. This perpetuates a false confession as a false fact of guilt upon the Court, that the means of justice are best met by resolving the issues of Hill's "false confession" are best raised by having another psychological evaluation by both a forensic psychologist and a medical doctor to raise the issues of fact in regards to Hill's confession being "false" and "involuntary". The best interest of justice for the public and the truth of facts, gravitate towards this request to the Court that two experts be appointed and/or paid for by CJA-21 voucher to pay for the expert witness fees to conduct an evaluation of Brian David Hill and examine the evidence to determine the issue of Hill's false confession and to determine if the issues raised concerning

91

the false confession can be held up as a fact or multiple facts that would meet the burden of proof for factual innocence.

## VII. Requesting an Audio Expert to provide expert testimony for proving that the Confession Audio may have been altered to which misrepresents the entire interview/interrogation, that the audio of the "confession" was not presented in its entirety making the evidence not an accurate representation of what happened on August 29, 2012, at the Mayodan Police Department

41. The defendant requests with the Court that there be the appointment of an independent audio forensic expert, to confirm whether the confession audio disc containing the confession of Brian David Hill, at Mayodan Police Department, on August 29, 2012, had contained any alterations and/or changes to the audio file which would fragment and make the audio not whole and not in its entirety, which would prove that the confession audio itself misrepresents the entire interrogation/interview and would cover up any pertinent details which would be beneficial to the Defense/Defendant, aka the evidence would have been favorable to the Defense/Defendant. Since Hill had listened to the confession audio with Mr. Eric David Placke, Hill had suggested that certain words may have been removed from the audio file of the audio disc containing the confession. The Defendant has wanted Mr. Placke to get somebody to analyze the audio but so far none of the court appointed attorneys had ever attempted to request the assistance of a forensic audio analysis expert to conduct an analysis and examination of the audio file containing the confession of Hill to determine

92

whether the audio was recorded in its entirety or whether the audio had been botched up, fragmented, to the extent where the Defendant is put in a position which words were not said the way they had sounded from the audio file. It would totally misrepresent the entire confession and misrepresent the entire evidence as a whole. That would put into jeopardy whether that confession audio would be in compliance with the Federal Rules of Evidence and help to determine whether the confession could have been suppressed as evidence before the Jury trial that had been set for the date of June 10, 2014, and whether the misrepresentation of such evidence could further prove that Defendant Hill was actually innocent of his charge and prove that he was framed via affirmative defense of frame up. Such misrepresentations do not happen for suspects that are clearly guilty of their crimes. They usually happen for the wrongfully convicted individuals that were convicted on crimes that were later found innocent by DNA evidence thanks to the Innocence Projects. Hill requests that the Court appoint an audio analysis expert or allow either party to file a CJA voucher for the prepayment of fees for the audio analysis expert to conduct the examination of the confession audio CD file.

## VIII. Timeline of Events that led up to Police raid, and up till arrest of Brian David Hill by U.S. Department of Homeland Security Special Agent Brian Dexter of Winston-Salem, North Carolina

93

42. On February 29, 2012, On March 12, 2012, 2:52 PM, Defendant Hill had emailed the Mayodan town clerk Melissa K. Hopper, (See **Exhibit 44**, the email subject: "Re: Public Comment Period Extension Request") Hill was ranting and raving to the town Clerk and Michael Brandt's email about not being allowed more than 3 minutes for a public comment period. That was the first of a long rocky relationship between Brian D. Hill of USWGO Alternative News and the town of Mayodan before he was framed with child porn.

43. On March 8, 2012, Defendant Hill had interviewed Dr. Michael Coffman (now deceased) over the issue of ICLEI/Agenda 21, to create material for the town of Mayodan to resist that issue. Hill was concerned that Agenda 21 would devastate that town. (See **Exhibit 24**, Part 2: video DVD evidence of USWGO Interview with Dr. Michael Coffman March 8, 2017).

44. On March 11, 2012, during the Sunday broadcast, Defendant Hill had called into a radio show called "The Alex Jones Show" which is located in Austin, Texas. Talked about the James A. Collins municipal building, to try to persuade other people to show up at the town council to speak out against Agenda 21. (See **Exhibit 24**, Part 1: video DVD evidence of the segment of Brian calling into the show as "Brian from North Carolina"). Alex Jones also operates the website known as "Infowars" and "Prison Planet".

45. On March 12, 2012, 4:11 PM, Defendant Hill had emailed the Mayodan town clerk Melissa K. Hopper, (See **Exhibit 18**, the email subject: "Copy of documentation that will be sent to the town council") the attachment does not

94

need to be included in this Exhibit as it is 59 pages long on entirely about Agenda 21 material prepared by Brian D. Hill of USWGO Alternative News to try to get the town of Mayodan to resist Agenda 21 in Rockingham County.

46. On March 12, 2012, Defendant Hill had attended the Mayodan town council meeting at the James A. Collins municipal building to speak during the public comment period in regards to the issue of Agenda 21 and ICLEI. See **Exhibit 22**, Part 1 video DVD evidence.

47. On April 9, 2012, Defendant Hill had attended the Mayodan town council meeting at the James A. Collins municipal building to speak during the public comment period in regards to the issue of the National Defense Authorization Act for the fiscal year of 2012 ("NDAA 2012"), that it allows law abiding American citizens to face being unlawfully abducted, tortured, and denied of Constitutional rights such as a right to an attorney and other rights. See **Exhibit 22**, Part 2, video DVD evidence.

48. On April 11, 2012, Defendant Hill had sent an email replying with a Thanks to Darrin McBreen, a news reporter of Infowars, who told Hill "Nice job!" referring to the original email regarding subject: "*I stood up against the NDAA at my Mayodan town council and recorded it even gave the chief of police documentation on the NDAA.*" (See **Exhibit 47**, the email between Hill and Darrin McBreen of Infowars) He can also be subpoenaed to testify before the Habeas Court to this fact. The Court can serve the subpoena with the Attorney-of-record or business agent of Infowars/Free Speech Systems, LLC, to subpoena

95

any viable witnesses working for Infowars. The original email didn't just involve Darrin McBreen but was sent to a group of people, such as ""Declan O'Shea" <declan@info-wars.org>, "Activist Post" <activistpost@gmail.com>, kurt@infowars.com, "kurt web" <kurt_web@infowars.com>, aaron@infowars.com, "watson web" <watson_web@infowars.com>, watson@infowars.com, watson@prisonplanet.com, darrin@infowars.com, producer@infowars.com".

49. On May 14, 2012, Defendant Hill had attended the Mayodan town council meeting at the James A. Collins municipal building to again speak during the public comment period in regards to the issue of the National Defense Authorization Act for the fiscal year of 2012 ("NDAA 2012"), that it allows law abiding American citizens to face being unlawfully abducted, tortured, and denied of Constitutional rights such as a right to an attorney and other rights. He had given documentation of the horrors of the NDAA 2012 unconstitutional federal law and then had given a copy of his Nullify-NDAA petition to town attorney who is also the President Pro Tempore of the North Carolina Senate, named Philip Edward Berger Senior. (See **Exhibit 25**, Part1, video DVD evidence)

50. On May 14, 2012, Defendant Hill had posted a video on YouTube about how none of the corporate Bilderberg-level controlled mainstream media was there to even cover the Nullify-NDAA petition, a copy that had been given to the town

96

attorney President Pro Tempore of the North Carolina Senate, named Philip Edward Berger Senior. (See **Exhibit 25**, Part2, video DVD evidence)

51.    On May 15, 2012, Defendant Hill had posted an online news article on his now-defunct website USWGO Alternative News, regarding him giving earlier documentation of the NDAA to Charles J. Caruso but he cowardly bolted out the back door of the Mayodan town office towards the police department. (See **Exhibit 46**, news article: "NC Senator Phil Berger receives the Nullify-NDAA Petition at the Mayodan Town Hall | USWGO Alternative News") It said from the news article that "*Of course after the town council meeting I was gonna ask the Mayodan Chief of Police Charles Caruso about what he thought about the NDAA Documentation I gave him around April 9th 2012 but he bolted through the back door which I discovered as I rushed over to the Mayodan Police Station right beside the towns municipal building. My friend named Michael Atkins and I tried to get to the chief of police, but when it failed we both gave up on perusing him so I can ask him that question.*" That means Michael Atkins is also a valuable witness which the Habeas Court can interview about Hill's involvement with the Mayodan Chief of Police prior to the entire child pornography investigation after the altercation between Hill and Chief Caruso on July 9, 2012.

52.    On June 1, 2012, Defendant Hill had arrived at Chantilly, VA to cover the Occupy-Bilderberg protest that was at the Westfields Marriott hotel. (See **Exhibit 29**, video DVD evidence). Because it was late, Hill and his mother were

97

looking for a hotel to stay at, then Brian was going to cover the protest the next day as USWGO Alternative News. Brian had walked into the Hyatt Place hotel in Chantilly, VA and saw Alex Jones and Stewart Rhodes. Hill was shocked with excitement and walked up to Alex and spoke with him. Alex said to Hill that he saw his documentary (America: From the Road of Freedom to the Streets of Fascism) and thought it was good. Hill asked his mother Roberta to take a photograph of him, Alex Jones, and Stewart Rhodes. Then Brian filmed the interview between Alex Jones and Stewart Rhodes. Most videos of that trip have disappeared and likely been destroyed because of the Mayodan Police Raid on August 29, 2012 since most of the videos, photographs, and interview audios were on the Black Toshiba Laptop Computer and some stuff may likely be on the Netbook, it may likely be gone forever. Only some videos and photos have survived as they were posted online, out of the reach of Mayodan Police so they could not be destroyed. So yes, Defendant Hill had met with Alexander Emerick Jones (also known as "Alex Jones" who ran the popular alternative media websites known as Infowars, Prison Planet, and the radio shown known as the Alex Jones Show on Genesis Communications Network (GCN). He also met with Stewart Rhodes who had started the organization known as "Oath Keepers" which they had asked all law enforcement and military officers to honor their oaths of office to "protect and defend the Constitution of the United States" and refuse to carry out any order which clearly violates the United States Constitution. See **Exhibit 21** Part 1: the photograph of Brian David Hill, Alex

98

Jones, and Stewart Rhodes) which depicts that photo for the Court to review and the photo was taken at the Hyatt Place hotel, located in Chantilly, Virginia, during the "Occupy Bilderberg" protest there.

53. On June 2, 2012, Defendant Hill had covered the event, but most of the videos were never uploaded to YouTube because they were seized by Mayodan Police from the Black Toshiba Laptop Computer, Satellite C655D.

54. On June 11, 2012, the town of Mayodan had considered the resolution by Brian David Hill, to pass a town resolution in support of N.C. House of Representatives, House Resolution 982, which was introduced by former N.C. House of Representatives member Glen Bradley. The town council took no action. However the Court does need to realize that this video is also of extreme importance as Hill was battling the town of Mayodan to shield its citizens from being abducted and tortured secretly if accused of terrorism whether it be true or false. Question is why would a man vowing to battle against Mayodan to stop the NDAA 2012 pro torture law want to view and possess images of children being sexually abused and tortured by pedophiles? Wouldn't that be the opposite of all the hard work that he was indeed pushing for? This resolution that Hill had lobbied to the town council to try to stop an unconstitutional pro torture law further proves that Hill was directly involved with the town of Mayodan and likely its police department to try to protect the Constitutional rights of American citizens prior to the criminal investigation. (See **Exhibit 26**, video DVD evidence). From what it appears in the video the usual town attorney

99

named Philip Edward Berger (State Senator) did not appear to be present but likely was Kevin Berger (another son of Phil Berger Sr.) of the Berger Law Firm.

55. On July 9, 2012, Defendant Hill had attended the Mayodan town council meeting at the James A. Collins municipal building to speak during the public comment period in regards to the issue of the National Defense Authorization Act for the fiscal year of 2012 ("NDAA 2012"), that it allows law abiding American citizens to face being unlawfully abducted, tortured, and denied of Constitutional rights such as a right to an attorney and other rights. In the video you will notice that the Chief of Police had kept his eye on Defendant Hill throughout the town council meeting. See **Exhibit 27**, Part 1, video DVD evidence.

56. On July 9, 2012, after the town council open session had ended, Defendant Hill had decided, as a member of the alternative press of USWGO Alternative News and We Are Change NC, to ask the State Senator of North Carolina hardball questions. He was only able to ask one before the Mayodan Chief of Police Charles J. Caruso had attempted to escort him from the town council chamber, then threatened him behind the scenes. The Senator that is/was also the town Attorney of Mayodan is Philip Edward Berger Senior. He is the NC Senate President Pro Tempore. This petition and asking hardball questions is in regards to the issue of the National Defense Authorization Act for the fiscal year of 2012 ("NDAA 2012"), that it allows law abiding American citizens to face being

100

unlawfully abducted, tortured, and denied of Constitutional rights such as a right

to an attorney and other rights. See **Exhibit 27**, Part 2, video DVD evidence.

The words and the method of Charles Caruso using those words as what was

described in Defendant Hill's USWGO news article, it sounds like Chief Caruso

was making threatening gestures towards Hill and threatened him not to engage

in lawful press activities because it may make their town attorney and egotistical

selfish State Senator Phil Berger look bad to the general public. Almost like

Chief Caruso was Berger's unofficial bodyguard. In fact I submit to this Court a

news article that Stella Forinash had located and thus was printed to a PDF file,

then printed as a physical paper exhibit for the Court to review for the record.

See **Exhibit 35**, for the news article on the 2010 appointment of the Mayodan

Chief of Police Charles J. Caruso, titled "Mayodan appoints new police chief |

News | newsadvance.com". When comparing this article photograph to the

Police Chief that approached Brian David Hill from behind, telling him "closed

session" then forcefully escorting him out before allowing Hill to come back in

the council chamber to get his stuff which includes his camera equipment and

the Netbook. The same ugly mug of that police detective at the end of the video

was the same corrupt cop that was appointed as the new Mayodan Chief of

Police in 2010 being sworn in by nobody other than Phil Berger Senior who

administered the Oath of Office. It does make sense that Caruso wants to protect

Phil Berger from any vile news reporter who simply wants to uncover the truth.

What is in Phil Berger's dirty closet?