

| United States of America | ) |
| Plaintiff(s) | ) |
| | ) |
| | ) |
| v. | ) |
| | ) Criminal Action No. |
| Brian David Hill | ) 1:13-cr-431-1 |
| Defendant(s) | ) |
| | ) |
| | ) |
| | ) |

## SECOND ADDITIONAL EVIDENCE DECLARATION IN SUPPORT OF, "BRIEF / MEMORANDUM IN SUPPORT OF BRIAN DAVID HILL'S "MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY""

## DECLARATION, ATTACHED EVIDENCE IN SUPPORT OF BRIAN DAVID HILL'S § 2255 MOTION

I, Brian David Hill, declare pursuant to Title 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

1. The 23-pages attached to this second additional evidence Declaration filing, are true and correct copies of The Town of Mayodan Council Meeting Minutes records of March 2012, April 2012, May 2012, June 2012, and July 2012. A true and correct copy of the letter from the Clerk is also included. Those records were received by Defendant Brian David Hill ("Hill", "Brian D. Hill") upon written request. This was a second written request that Defendant Hill had asked for the Town of Mayodan Meeting Minutes records in regards to Hill being involved with the Town of Mayodan for at least 5 months before being accused of possessing child pornography by the Mayodan Police Department and Police Detective Robert Bridge of Reidsville, NC Police



Department. Brian spoke at the public comment periods of March 2012, April 2012, May 2012, and July 2012. On June 2012, Brian had lobbied an Anti-NDAA (*unconstitutional feral law that can deprive American citizens of their Constitutional rights when accused of terrorism whether it be true or wrongful*) resolution to the town for the town of Mayodan. All of this can be verified from the Meeting Minutes Records. Brian's home address was listed in one page of the Meeting Minutes records. So Police Chief Charles J. Caruso had at-least one or more documented sources of information to which proves that Chief Caruso knew where Brian had lived before the child pornography claim or claims had ever begun. Police Chief and the Town of Mayodan had prior knowledge of Hill's living address and political activities in advance before the whole case was even started. A letter from the Town of Mayodan Clerk is also included in this additional evidence filing for the Court.

2. Hill had formally requested a copy of the Meeting Minutes records before the June 10, 2014, Jury trial was to have been commenced, while he was incarcerated at Orange County Detention Center ("Orange Co. Jail"). Hill did receive it but the Jail Guards had failed to give it to him personally per their stupid policy but had placed it in his property box for when discharged from incarcerated from their facility. The Town of Mayodan is a Governmental entity, a municipality, a public-corporation and body politic, yet at the time the Jail Guards did not consider the Mayodan Meeting Minutes records to be "legal mail". Another violation of Hill's constitutional rights before his false guilty plea. The Jail blocked potential evidence from getting to Hill personally while he was sitting in Jail. The U.S. Marshals started throwing some Hill's property in the trash and Brian started getting angry and verbally asking the U.S. Marshals not to throw away his legal papers, and started trying to break his handcuffs which had almost started to injure his hands thinking that the Marshals were going to destroy his evidence. The Deputy Marshal assured him that his legal papers would not be thrown away. Brian got to read over the Minutes records while in the holding cell for Guilford Co. Detention Center, which was the night before (June 9) the Jury Trial would have been started on June 10, 2014. Then he met Placke that night and he told Placke that he was going to get Disability Rights of NC involved to get Placke out of his case, and told him that God was on his side while he lashed out verbally at Placke for forcing

2

him to take the guilty plea or he wouldn't get a sentence of time served for his acceptance of responsibility which meant Placke wouldn't of fought to make sure that Hill would have had a good chance at being found not-guilty. Brian knew what had been contained in the Mayodan Meeting Minutes records prior to the false guilty plea so Hill had further personal knowledge of ineffective Counsel that Placke refused to investigate anything that would be in favor of Hill's defense. Hill noticed that Placke didn't react to Hill's "God" comment and had wondered if Placke didn't even feel remorse or even had a belief in a higher power such as God. After Hill's false guilty plea, Hill almost felt like giving up and asked the U.S. Marshals to give his legal papers to Eric David Placke, even though Hill remembers that one deputy Marshal had suggested that Hill give his packet of legal papers (that had contained the Town of Mayodan Meeting Minutes records) to his family. Maybe that Marshal knew that Placke may destroy or mishandle the legal papers from what Hill suspects. After Placke received the entire envelope of papers, they were never seen again. Placke may have destroyed, shredded, or concealed the entire envelope of legal papers of Hill. Thus explains Hill's second request for the Town of Mayodan Meeting Minutes records. Normally the town of Mayodan would charge for making any copies of their records, which would make sense. Somehow, maybe the town Clerk knows something that went on at Mayodan, maybe somehow she knows some dirty and underhanded crooked activities going on in the town of Mayodan concerning Brian David Hill but she isn't allowed to talk about it as she would lose her job by biting the hand that feeds her.

Hill recommends to the Habeas Court, that Town Clerk Melissa K. Hopper be subpoenaed to testify before the Habeas Court to explain her knowledge of Hill's political activities and ask her if she personally had witnessed any dirty, underhanded, or possibly criminal activities that may have taken place which was part of Hill being framed with child pornography. Clerks usually may have more knowledge of any corruption going on than any other employee. Melissa K. Hopper should be a person of interest to a court appointed or approved private investigator (under CJA 21 voucher), or even to the U.S. District Court as to her personal knowledge of Hill being deprived of his Constitutional right to the Audio CD (discovery) of his false confession on August 29, 2012. She may be aware of any

corrupt activities within the Town of Mayodan. She must be compelled to testify in Court, and bring the Town Attorney Philip Edward Berger Senior with her to both be questioned as well, as to whether he or his former District Attorney son Phil Berger Jr. knew that child pornography had downloaded to Hill's computer from July 20, 2012 to July 28, 2013 according to the N.C. State Bureau of Investigation (SBI) report.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:                          Respectfully submitted,

**November 11, 2017**                 *Brian D. Hill*
                                           *Signed*                **Signed**
                                      **Brian D. Hill (Pro Se)**
                                      **310 Forest Street, Apartment 2**
                                      **Martinsville, VA 24112**
                                      **Phone #: (276) 790-3505**

**U.S.W.G.O.**

This DECLARACTION respectfully filed with the Court, this the 13th day of November, 2017. Defendant couldn't file this on November 11, 2017 due to the federal holiday of "Veterans Day" so all of the filings in regards to and in any relation to Defendant's the § 2255, will have to be filed by Priority Mail of the United States Postal Service on November 13, 2017. Defendant would have filed this evidence on November 11, 2017, so the dates are still valid and truthful as the documentation had been prepared on November 11, 2017. At the time the papers were ready to have been filed, Hill couldn't file anything via Postal Service due to the federal holiday.

Defendant also requests with the Court that a copy of this Brief and Defendant's § 2255 Motion be served upon the Government as stated in **28 U.S.C. §1915(d)**, that "The **officers of the court shall issue and serve all process, and perform all duties** in such cases. **Witnesses shall attend as in other cases**, and the **same remedies shall be available as are provided for by law in other cases**. Plaintiff requests that copies be served with the U.S. Attorney office of Greensboro, NC and AUSA Anand Prakash Ramaswamy via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

*4*



# TOWN OF MAYODAN

210 W. MAIN STREET • MAYODAN, N.C. 27027 • (336) 427-0241
FAX (336) 427-7592

I, Melessa K. Hopper, CMC, Town Clerk of the Town of Mayodan, North Carolina, do hereby certify that the attached are true and correct copies of **The Town of Mayodan Council Meeting Minutes of March 2012, April 2012, May 2012, June 2012, and July 2012.**

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the official Seal of the Town of Mayodan, North Carolina, this the 17th day of October 2014.

Any further questions may be addressed at the above listed address or phone number.

Melessa K. Hopper, CMC
Town Clerk

(seal)

# Mayodan Town Council
## Regular Meeting
### March 12, 2012 - 7:00 p.m.
### James A. Collins Municipal Building

Present:
Mayor James "Bud" Cardwell
Council: Darrell Allred, Lewis Bottoms, Glenn Chatman, Andrew "Buddy" Martin, Tim Simpson

Absent:

Staff Present:
Town Attorney: Phil Berger
Town Manager: Michael Brandt
Town Clerk: Melessa Hopper

Others Present:
Steve Lawson, The Messenger
Roy Sawyers, RCENO

The Mayodan Town Council met at 7:00 p.m., March 12, 2012, in the council room of the James A. Collins Municipal Building, and with a quorum present Mayor Cardwell called the meeting to order.

**Public Comments:**
Mr. Brian Hill, 413 N. 2nd Avenue, addressed the Council regarding his concerns on the United Nations Agenda 21 plan. Mr. Hill stated that Agenda 21 will create high-density urban areas where the needs of the community will be determined by a governing body. He feels that Agenda 21 will mean that small towns like Mayodan will become "ghost towns in favor of a sustainable super-city type of environment for humans." Mr. Hill asked the Council to consider enacting laws to block the U.N. Agenda 21 plan.

**Approval of Minutes**
Item 2A-C:
**MOTION** by Councilman Simpson, seconded by Councilman Martin, to approve the agenda and regular minutes of February 9 and 13, and continued meeting minutes of February 27, 2012 as presented. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**Old Business**
Item 3A:
Mayor Cardwell asked Town Manager Michael Brandt to give further information regarding a complaint and request for an amendment to the Town's ordinance regarding unnecessary noises. Mr. Brandt stated that he and the police chief were working on recommendations for ordinance amendments pertaining to the noise violation ordinances. He stated he hopes to have information prepared for the April regular Council meeting.

**New Business**
Item 4A:
Mayor Cardwell proclaimed March 12-18, 2012 as Multiple Sclerosis Awareness Week in Mayodan.

Multiple Sclerosis Awareness Week
March 12-18, 2012

WHEREAS, MS is a chronic and disabling disease of the central nervous system in which the progression, severity and specific symptoms cannot be foreseen; and

WHEREAS, every hour of every day someone new is diagnosed with MS, a disease that can erode a person's abilities and hopes, halt a career and unravel the fabric of families; and

WHEREAS, the North Carolina Chapters of the National Multiple Sclerosis Society reports that in our state more than 10,000 people are affected by this devastating disease, and multiple sclerosis generally strikes young adults aged 20 through 40, attacking them in the prime of their lives; and

WHEREAS, the North Carolina Chapters of the National Multiple Sclerosis Society have been committed throughout the years to heightening public knowledge and insight about this devastating and disabling disease, and raising millions of dollars to find the cure for MS and develop effective treatments for the disease, as well as provide a wide range of client programs; and

WHEREAS, research advances have brought us closer to finding the cure, much remains to be done, and services must continue to be provided to those who live with the disease; and

WHEREAS, finding the cause and developing a method of prevention for multiple sclerosis is an important task that all Americans and North Carolinians should support;

NOW, THEREFORE, I, James Cardwell, Mayor of Mayodan, do hereby proclaim MARCH 12-18, 2012, as "MULTIPLE SCLEROSIS AWARENESS WEEK" in Mayodan and commend this observance to all our citizens.

ATTEST:
s/_____          s/_____
Melessa K. Hopper, CMC                      James Cardwell, Mayor
Town Clerk


Item 4B:
Mayor Cardwell asked Council to consider a project budget ordinance for the 2011 Raw Water Intake Improvements – FY08/09 Clean Water Partners, Supplemental Grant project. Mr. Brandt informed Council the North Carolina Rural Center awarded a grant in the amount of $300,000 for the project to improve the raw water intake site. Total cost estimates for the project are $600,000. In accepting the award the Town must pass a budget ordinance with anticipated revenues and expenses.

**MOTION** by Councilman Martin, seconded by Councilman Bottoms, to approve the Project Budget Ordinance – 2011 Raw Water Intake Improvements Award FY08/09 Clean Water Partners, Supplemental grant. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

PROJECT BUDGET ORDINANCE
FY 08/09 CLEAN WATER PARTNERS, SUPPLEMENTAL GRANT
2011 Raw Water Intake Improvements

BE IT ORDAINED, by the Mayodan Town Council, that pursuant to Section 13.2 of Chapter 159 of the General Statutes of North Carolina, the following grant ordinance is hereby adopted:

Section 1:    The project authorized is the NC Rural Center FY 08/09 Clean Waters Partners, Supplemental Grant project described in the work statement contained in the contract between this unit and the North Carolina Rural Center. This project is more familiarly known as the "2011 Raw Water Intake Improvements for the Town of Mayodan".

Section 2:    The officers of this unit are hereby directed to proceed with the grant project within the terms of the grant documents, the rules and regulations of the North Carolina Rural Center and the budget contained herein.

Section 3:    The following revenues are anticipated to be available to complete this project.

Project Costs:

| | |
|---|---|
| NC Rural Center – Clean Water Partners, Supplemental (Grant) | $300,000 |
| Local Funds (Town of Mayodan) | $300,000 |
| **Total Project Revenues** | **$600,000** |

Section 4:     The following amounts are appropriated for the project:

| | NCRC Grant | Local | Total |
|---|---|---|---|
| Remove Existing Intake | $65,000 | | $65,000 |
| New Piping and Screen | $175,000 | | $175,000 |
| New Support Structure | $34,000 | $91,000 | $125,000 |
| Air Burst Piping for Screen | $26,000 | | $26,000 |
| Coordinate Access to Site -- Norfolk Southern | | $75,000 | $75,000 |
| | | | |
| Engineering Design | | $42,500 | $42,500 |
| Construction Administration | | $23,500 | $23,500 |
| Grant Administration | | $19,000 | $19,000 |
| Contingency | | $49,000 | $49,000 |
| | | | |
| **Total** | **$300,000** | **$300,000** | **$600,000** |

Section 5:     The Town Manager is hereby directed to maintain within the Grant Project Fund sufficient specific detailed accounting records to provide the accounting to the grantor agency required by the grant agreement state regulations.

Section 6:     Requests for funds should be made to the grantor agency in an orderly and timely manner as funds are obligated and expenses incurred.

Section 7:     The Town Manager is directed to report quarterly on the financial status of each project element in Section 4 and on the total grant revenues received or claimed.

Section 8:     The Town Manager is directed to include a detailed analysis of past and future costs and revenues on this grant project in every budget submission made to this Council.

Section 9:     Copies of this grant project ordinance shall be made available to the Town Manager for direction in carrying out this project.

ADOPTED, this the ___12th day of March_____, 2012.


s/_____               s/_____

Mayor – Town of Mayodan                                              Clerk – Town of Mayodan


Item 4C:
Mayor Cardwell asked for a nomination to fill a vacancy on the Town of Mayodan Planning and Zoning Board/Board of Adjustment for a term of three years.

**MOTION** by Councilman Simpson, seconded by Councilman Allred, to appoint Mr. David Holland as an Inside Member to the Town of Mayodan Planning and Zoning Board/Board of Adjustment for a term of three years. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**MOTION** by Councilman Simpson, seconded by Councilman Allred, to recommend re-appointment by the Rockingham County Board of Commissioners of Mr. Tommy Watford and Mr. Phil Harger as Outside Members to the Town of Mayodan Planning and Zoning Board/Board of Adjustment for a term of three years. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**MOTION** by Councilman Martin, seconded by Councilman Chatman, to re-appoint Ms. Michelle Casto to a three-year term on the Madison-Mayodan Recreation Commission. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**MOTION** by Councilman Simpson, seconded by Councilman Allred, to appoint Councilman Bottoms, Councilman Chatman, and Town Manager Michael Brandt; and to re-appoint Mr. Tom Barksdale, and Mr. Keith Atkins to the Farris Memorial Park Commission for a one-year term. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**MOTION** by Councilman Allred, seconded by Councilman Martin, to appoint Councilman Bottoms and re-appoint Councilman Simpson to the Firemen's Relief Fund for a one-year term. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**MOTION** by Councilman Bottoms, seconded by Councilman Simpson, to re-appoint Councilman Martin to the Fire Department Appeals Board for a one-year term. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Mayor Cardwell stated he will re-appoint Dickie Wray as the citizen appointment to the Fire Department Appeals Board for a one-year term.

**Manager's Comments/Announcements**

Mr. Brandt informed Council that the Mayodan Antique Festival would be held at Farris Memorial Park April 20 and 21, 2012.

Mr. Brandt informed Council that the Western Rockingham Chamber of Commerce would hold its annual membership dinner and awards program on March 29, 2012, in which several members of the Council will attend.

**Mayor/Council Comments/Announcements**

Mayor Cardwell welcomed the Mayodan Boy Scout troop to the meeting. The troop members are working toward a merit badge and attended the meeting to satisfy part of the requirements.

Councilman Martin asked if any of the citizens in attendance had comments regarding the Washington Mills/Tultex building property and any ideas the group had discussed. Mr. Mike Atkins addressed Council regarding his desire to see a part of the mill buildings remain and used for a purpose that would benefit the town. He asked if members of the Town government could discuss with the owner any possibility of the property being sold or leased for ideas such as a water bottling plant or distillery. He stated the Town missed a good opportunity when the building sold for demolition. Councilman Bottoms stated he felt the ball was dropped several years ago because previous owners tried to make a go of the property, but was unable to secure the financial backing or funds to create the use they intended. Town Manager Michael Brandt related that he had met with Mr. Nelson and Rockingham County Economic Development director Graham Previer. The three

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 9 of 27

discussed possible grant ideas for study work. Mr. Brandt stated he and Mr. Previer and the owners are looking into information for possible uses of materials or any potential buildings that are able to be salvaged. Mr. Brandt informed Council and citizens that the RV park Mr. Nelson has discussed is not an allowable use under the Mayodan's Zoning Ordinances. He stated Mr. Nelson would have to come before the Council to apply for any ordinance changes to pursue an RV park. Nothing will occur in the short term because it will take two to three years for the demolition.

**MOTION** by Councilman Bottoms, seconded by Councilman Martin, to enter a closed session for the purposes of discussing attorney/client privilege pursuant to N.C. G.S. 143-318.11(a)3. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Council entered closed session at 7:31 p.m.

**MOTION** by Councilman Martin, seconded by Councilman Simpson, to return to open session. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Council returned to open session at 7:55 p.m.

Town Attorney Phil Berger informed Council members that the emergency water connection between Mayodan and Madison may require the Town to use eminent domain to construct the pump station. Mr. Berger recommended the Council adopt a resolution granting the town manager and town attorney the authority to institute condemnation proceedings for various projects.

**MOTION** by Councilman Bottoms, seconded by Councilman Allred, to approve a resolution granting the town manager and town attorney the authority to institute condemnation proceedings. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

RESOLUTION GRANTING THE TOWN MANAGER
AND TOWN ATTORNEY AUTHORITY TO
INSTITUTE CONDEMNATION PROCEEDINGS

WHEREAS, the Town of Mayodan undertakes various street improvement projects, water system improvement projects, sewer system improvement projects and drainage system improvement projects which may necessitate the acquisition of additional easements and rights-of-way; and

WHEREAS, in such cases, it is the intent of the Mayor and the Town Council of the Town of Mayodan to undertake said projects, said intentions being demonstrated by approval of funding for said projects;

NOW, THEREFORE, BE IT RESOLVED, by the Mayor and Town Council of the Town of Mayodan that the authority to institute condemnation proceedings in order to acquire easements and rights-of-way necessary for projects including street improvements, water system improvements, wastewater system improvements, and drainage improvements is hereby granted to the Town Manager through the Town Attorney on any projects for which the Town Council has already approved funding.

This the 12th day of March, 2012

s/_____
Mayor

ATTEST:
s/_____
Town Clerk

March 12, 2012
Page 5

**MOTION** by Councilman Simpson, seconded by Councilman Martin, to adjourn the meeting. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Council adjourned at 7:58 p.m.

ATTEST:

Melessa K. Hopper, CMC, Town Clerk                    James Cardwell, Mayor

# Mayodan Town Council
# Regular Meeting
# April 9, 2012 - 7:00 p.m.
# James A. Collins Municipal Building

Present:
Mayor Pro Tem: Glenn Chatman
Council: Darrell Allred, Lewis Bottoms, Andrew "Buddy" Martin, Tim Simpson

Absent: Mayor James "Bud" Cardwell

Staff Present:
Town Attorney: Phil Berger
Town Manager: Michael Brandt
Town Clerk: Melessa Hopper

Others Present:
Roy Sawyers, RCENO

The Mayodan Town Council met at 7:00 p.m., April 9, 2012, in the council room of the
James A. Collins Municipal Building, and with a quorum present Mayor Pro Tem Chatman
called the meeting to order.

**Public Comments:**
Mr. Brian Hill, 413 N. 2nd Avenue, addressed the Council regarding his concerns on the National
Defense Authorization Act. He presented documentation that supports his concerns regarding
the Act. Mr. Hill believes the Act is unconstitutional and implores the Mayodan Police Department
not to use their police powers to act upon the N.D.A.A.

**Approval of Minutes**
Item 2A-C:
**MOTION** by Councilman Bottoms, seconded by Councilman Martin, to approve the agenda
and regular minutes of March 8 and 12, and closed session minutes of March 12, 2012 as
presented. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays:
None. Motion carried unanimously.

**Old Business**
No items of old business were discussed.

**New Business**
Item 4A:
Town Manager Michael Brandt related to Council that The Rural Center contacted him to say
that the Center received an application from Mayodan and from Madison. The Rural Center
representative suggested that the two towns submit a joint application to have a better chance
of being approved for grant money. Mr. Brandt and Bob Scott, Madison Town Manager,
discussed the possibility of applying jointly for one grant award, which would be split between
the two municipalities. Mr. Brandt stated he would need a formal vote at the regular Council
meeting to move forward with a joint application. Chances of being approved for a single

application would be less likely should the Council not want to move forward with a joint application.

**MOTION** by Councilman Martin, seconded by Councilman Bottoms, to approve the joint application with the Town of Madison for the Rural Center N.C. S.T.E.P. grant. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Item 4B:
Mayor Pro Tem Chatman asked Mr. Brandt to give information regarding proposed amendments to the Town's personnel policy as it pertains to employee leave. Mr. Brandt provided a draft policy for consideration and asked Council members to call him with any questions regarding the draft policy. He asked Council to place the item on the May Council meeting agenda for consideration of approval at that time.

Item 4C:
Mayor Pro Tem Chatman called upon Mr. Brandt to give information regarding a request for bulk water purchase on an emergency basis for The Crest of Clemmons, a nursing facility in Forsyth County. The Crest of Clemmons had approached the Town to consider a contract for bulk water purchase on an emergency basis to satisfy a state mandate for their operation as a nursing facility. Town Attorney Phil Berger drafted a contract. The contract is written such that the Crest of Clemmons may make a request for a purchase, but does not bind the Town of Mayodan into the sale at the time of request. This gives the Town the ability to make the sale based upon the availability of water and provides the Town an avenue to decline the sale based upon current conditions. The contract will be sent to the Crest of Clemmons for their approval. If they agree and sign the contract, the contract will then be submitted to Council for their approval.

**MOTION** by Councilman Simpson, seconded by Councilman Allred, to appoint Mr. David Holland as an Inside Member to the Town of Mayodan Planning and Zoning Board/Board of Adjustment for a term of three years. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**Manager's Comments/Announcements**

Mr. Brandt informed Council the Town of Mayodan will experience a seven-hour power outage mostly in the central and northern parts of the town beginning at midnight April 14, 2012. Duke Energy will be working on a substation at that time.

**MOTION** by Councilman Bottoms, seconded by Councilman Allred, to adjourn the meeting. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Council adjourned at 7:158 p.m.
ATTEST:

Melessa K. Hopper, CMC, Town Clerk                James Cardwell, Mayor

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 13 of 27

# Mayodan Town Council
## Regular Meeting
## May 14, 2012 - 7:00 p.m.
## James A. Collins Municipal Building

Present:
Mayor: James "Bud" Cardwell
Council: Darrell Allred, Lewis Bottoms, Glenn Chatman, Andrew "Buddy" Martin, Tim Simpson

Staff Present:
Town Attorney: Phil Berger
Town Manager: Michael Brandt
Town Clerk: Melessa Hopper

Others Present:
Steve Lawson, The Messenger

The Mayodan Town Council met at 7:00 p.m., May 14, 2012, in the council room of the James A. Collins Municipal Building, and with a quorum present Mayor Cardwell called the meeting to order.

**Public Hearings:**
Item 1A:
Mayor Cardwell opened the public hearing to hear public comment regarding the application for the 2012-2013 Taxi Franchise filed by Annette and Michael Lilly.

As no one wished to speak, Mayor Cardwell closed the public hearing at 7:02 p.m.

**MOTION** by Councilman Martin, seconded by Councilman Allred, to approve the application by Annette and Michael Lilly for the 2012-2013 Taxi Franchise. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

First of two hearings and votes regarding the Taxi Franchise. Second hearing will be held at the regular council meeting in June, 2012.

**Public Comments:**
Mr. Brian Hill, 413 N. 2nd Avenue, addressed the Council with a petition asking the state and federal governments nullify the NDAA. He presented Town Attorney Phil Berger with a package of information and copy of the petition.

Mr. Steven Priddy, 202 E. Jefferson St., addressed the Council regarding the proposed noise ordinance. He stated there is a large amount of noise coming from 1st and 2nd Avenues. He is particularly bothered by the noises from ATVs, dirt bikes, and modified lawnmowers. He feels the noise is excessive for a residential area and the noise ordinance, no matter how written, should be enforced. He stated the participants are also exceeding the safe speed limit and not obeying traffic laws and regulations.

**Approval of Minutes**

Item 3A-B:
**MOTION** by Councilman Bottoms, seconded by Councilman Martin, to approve the agenda and regular minutes of April 5 and 9, 2012 as presented. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**Old Business**

Item 4A:
Mayor Cardwell informed the public and council that on Thursday night at the agenda meeting Rockingham County Manager Lance Metzler and Rockingham County Finance Director Pat Galloway presented information regarding the merged library construction costs and loans. An interlocal agreement between Mayodan and Rockingham County was presented for consideration and approval. Ms. Galloway related to Council that bids were opened for the construction of the library. The apparent low bid was a base bid of $1,928,300. Additional aspects of the library that were bid separate would bring the bid to a total cost of $2.4 million. Rockingham County committed to $625,000 while the towns of Madison and Mayodan committed $312,500 each for a total of $1.25 million in committed funds to the project. The County has received $350,000 in grant funds. She stated that the Friends of the Library have raised $336,000 and $167,000 in preliminary work has already been spent. The total funds in grant, donation, and commitment are $2.1 million. This leaves a shortfall of approximately $300,000 for the total cost of the project to be covered. Ms. Galloway indicated that although the county had originally thought they would fund portions of the contribution through their general fund, but now had decided to take a loan for the cost of the construction. The loan requires Local Government Commission approval for the County and for each town of Mayodan and Madison. The application to the LGC for loan approval will cost the Town $1,250. A loan has been secured at 2.35% for 15 years. The County and the Town would sign an Interlocal Agreement which calls for the Town to pay the County back approximately $28,000 each year for 15 years in semi-annual installments. The two lowest bids will be held until mid-July to allow for financing to be approved through the LGC. The closing of the loan is anticipated to occur in July and a notice to proceed would be issued shortly afterward. The completion of the project is anticipated to be April to May of 2013. Fabco of Kernersville had the lowest bid.

Town Manager Michael Brandt informed Council had received information from Rockingham County that the City of Reidsville contributed $35,000 towards the construction costs of the Reidsville library in the early '70s and donated the property upon which the library was built. The Reidsville Jaycees contributed $144,000 towards the construction. The City of Eden contributed $100,000 towards the construction of the Eden library and the lot was donated by the Fieldcrest Foundation. The community in Eden raised an additional $100,000 in funds and the County contributed $100,000 towards the construction. Mr. Brandt also reported that the Town of Madison Board of Aldermen approved the interlocal agreement presented to them at their May regular meeting. Mr. Brandt also stated the minutes of the 2008 meeting reflect that Mayor Lake stated the cost to the Town of Mayodan would be approximately $25,000 for 20 years. The total in that scenario would be a $500,000 cost to the Town and would include interest. Councilman Simpson asked if the $28,000 would essentially mean a two cent tax increase to the town's tax payers. Mr. Brandt stated to raise $28,000 in additional revenue would equate to a two cent tax appropriation. Mr. Brandt further stated that the citizens have not participated in discussions of funding the construction costs. He

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 15 of 27

reported to Council that the minutes also stated the motion was that "no more than $312,500" was approved. Councilman Simpson stated he would like to hear from the citizens. Councilman Bottoms stated he felt the citizens should have a say in whether the interlocal agreement should be signed. He is concerned about the shortfall and funding not being secured before awarding the construction contract.

**MOTION** by Councilman Bottoms, seconded by Councilman Simpson, to call for a public hearing to be held on Tuesday, May 29th, 2012 at 7:00 p.m. to hear public comment regarding the proposed interlocal agreement and loan for construction of the new library. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Item 4B:
Mayor Cardwell called upon Town Manager Michael Brandt to give information regarding the proposed amendments to the personnel policy involving leaves of absences. Mr. Brandt stated the amendments would allow sick leave be granted to an employee to care for a spouse, child, or parent, an amendment to Article VII, Section 12. Also included in the proposed amendments would be a new section, (Section 13), which addresses the voluntary shared leave to allow employees to donate sick and vacation time in order to provide assistance to fellow employees during a prolonged serious medical condition. Mr. Brandt drafted a proposed Section 32 (new section) giving the Council authority to grant additional sick leave on recommendation by the Town Manager in cases of employees with catastrophic medical leave needs.

Councilman Simpson stated he was in favor of Section 12 of the proposed amendments which allows for an employee to use sick time to care for a spouse, child, or parent. He further stated that in Section 31 he would prefer the amendment to be a donation of sick or vacation leave on an hour-for-hour basis versus a calculation based on pay. Councilman Simpson feels that if Section 31 is approved, there would be no need for Section 32.

Discussion ensued regarding Councilman Simpson's suggestions.

**MOTION** by Councilman Simpson, seconded by Councilman Bottoms, to approve the amendments to the Town's Personnel Policy under Article VII, Leaves of Absences as presented with the following corrections: Section 31 would be a donation of hour-for-hour rather than calculated by hourly pay, and Section 32 of the draft is deleted. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

\*\*Town of Mayodan Personnel Policy Article VII is hereby by reference made a part of these minutes and a copy is on file in the Town Clerk's office for public inspection.

Item 4C:
Mayor Cardwell called upon Town Manager Michael Brandt and Police Captain Donnie Barker to give information regarding the proposed changes to the Town of Mayodan Code of Ordinances, Chapter 11, Article 2, Unnecessary Noises. Town Attorney Phil Berger stated the District Attorney's office had not yet had the opportunity to consider the ordinance as drafted. He felt the District Attorney's office should review and give their opinion of prosecuting cases based on the ordinance.

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 16 of 27

**MOTION** by Councilman Martin, seconded by Councilman Allred, to table the consideration of amending Chapter 11 of the Town of Mayodan Cope of Ordinances until the May 29th continued meeting. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Item 4D:
Mayor Cardwell called upon Town Manager Michael Brandt to give information regarding the clock in front of Town Hall. Mr. Brandt stated he contacted the Old Town Clock Shop in Winston-Salem regarding repairs to the clock. The shop suggested going to a batter pack method. The clock can be converted to the battery pack operation for $3,000.

**New Business**
Item 5A:
Police Captain Donnie Barker was called upon to give information regarding a grant application to the Governor's Highway Safety Commission that is fully funded 100% for the first year. The grant is to improve traffic safety county wide and would involve all law enforcement agencies in Rockingham County. The grant would provide a new uniformed officer position be created, but can not supplement an existing position. The traffic safety team will focus on increasing seat belt use, child safety seat use, speeding, and DWI arrests in an effort to make streets and highways safer. The team will work all areas of the county including inside all city limits. Mayodan police will move an experienced officer that is at a higher pay rate to the grant positon and we will hire a new officer at a lower pay rate, saving the town money. The amount the Town will receive during the 4 year grant is $203,621. and the matching funds paid by the Town amounts to $44,640. The Town will keep the vehicle and all equipment at the end of the grant. Town funding would begin in the second year of the four-year grant. The second year of the grant the Town's participation is 15%, third year is 25% participation, and fourth year is a 50% participation. The fifth year of the grant requires 100% participation.

**MOTION** by Councilman Bottoms, seconded by Councilman Martin, to approve the joint application with all law enforcement agencies of Rockingham County for the Governor's Traffic Safety Commission grant. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Item 5B:
Mayor Cardwell asked Captain Barker to address another multiple agency Governor's Crime Commission grant for the police department. Captain Barker stated the grant would include the towns of Madison and Stoneville and provides for four in-car data terminals, two air cards, and two printers, and would require matching funds of 25% from the Town of Mayodan.

**MOTION** by Councilman Allred, seconded by Councilman Chatman, to approve the Governor's Crime Commission grant submission for in-car mobile data terminals in the police department. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Item 5C:
Mayor Cardwell asked for consideration by Council of Budget Amendments for year end 2011-2012.

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 17 of 27

**MOTION** by Councilman Simpson, seconded by Councilman Allred, to approve the budget amendments as presented. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**Budget Amendments are hereby by reference made a part of these minutes and a copy is on file in the Town Clerk's office for public inspection.

Item 5D:
Mayor Cardwell announced to Council that the N.C. STEP grant meeting will be in Raleigh on June 6th and 7th and this will conflict with the scheduled Agenda meeting on June 7th. He asked for consideration in rescheduling the agenda meeting to Monday, June 4th, 2012 at 7:00 p.m.

**MOTION** by Councilman Martin, seconded by Councilman Bottoms, to reschedule the agenda meeting from June 7th to June 4th at 7:00 p.m. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**MOTION** by Councilman Martin, seconded by Councilman Simpson, to recess the meeting to Tuesday, May 29, 2012, at 7:00 p.m. at the M-M Recreation Department, 300 S. 2nd Avenue. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Council recessed at 7:59 p.m.


ATTEST:

Melessa K. Hopper, CMC, Town Clerk

James Cardwell, Mayor

# Mayodan Town Council
# Regular Meeting
# June 11, 2012 - 7:00 p.m.
# James A. Collins Municipal Building

Present:
Mayor: James "Bud" Cardwell
Council: Darrell Allred, Lewis Bottoms, Glenn Chatman, Andrew "Buddy" Martin, Tim Simpson

Staff Present:
Town Manager: Michael Brandt
Town Clerk: Melessa Hopper
Assistant Town Attorney: Kevin Berger

Others Present:
Steve Lawson, The Messenger
Roy Sawyers, RCENO

The Mayodan Town Council met at 7:00 p.m., June 11, 2012, in the council room of the James A. Collins Municipal Building, and with a quorum present Mayor Cardwell called the meeting to order.

**Public Hearings:**
Item 1A:
Mayor Cardwell opened the public hearing at 7:01 p.m. to hear public comment regarding the application for the 2012-2013 Taxi Franchise filed by Annette and Michael Lilly.

As no one wished to speak, Mayor Cardwell closed the public hearing at 7:02 p.m.

**MOTION** by Councilman Martin, seconded by Councilman Allred, to approve the application by Annette and Michael Lilly for the 2012-2013 Taxi Franchise. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Item 1B:
Mayor Cardwell opened the public hearing at 7:03 p.m. to hear public comment regarding the proposed 2012-2013 budget ordinance.

Mayor Cardwell called upon Town Manager Michael Brandt to give information on the updated version of a draft budget ordinance.

As no one wished to speak, Mayor Cardwell closed the public hearing at 7:04 p.m.

**Public Comments:**
There were no public comments.

**Approval of Minutes**
Item 3A-D:
**MOTION** by Councilman Bottoms, seconded by Councilman Chatman, to approve the agenda and regular minutes of May 10 and 14, 2012 and the continued meeting minutes of May 29 and 31, 2012 as presented. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**Old Business**
Item 4A:
Mayor Cardwell requested Council give consideration to an amendment of Ordinance 11, Article 2, Section 11.11, Unnecessary Noises. Police Chief Caruso stated the District Attorney's office had reviewed the ordinance and felt it would be applicable and they would move to prosecute upon charges.

**MOTION** by Councilman Martin, seconded by Councilman Allred, to approve the amendments to Ordinance 11, Article 2, Section 11.11, Unnecessary Noises. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Ordinance 2012-02

**TOWN OF MAYODAN**
**AMENDMENT TO MAYODAN TOWN CODE OF ORDINANCES**
**CHAPTER 11, DISORDERLY CONDUCT AND PUBLIC NUISANCES,**
**ARTICLE 2, GENERAL NUISANCES**
**WITHIN THE**
**TOWN OF MAYODAN, NORTH CAROLINA**

**WHEREAS,** the Town Council of the Town of Mayodan finds it necessary and desirable to amend the Mayodan Code of Ordinances, Chapter 11, Disorderly Conduct and Public Nuisances, Article 2, General Nuisances 11.11 and 11.12; and

**WHEREAS,** said ordinances was adopted previously by the Town of Mayodan , and

**NOW, THEREFORE BE IT HEREBY ORDAINED** by the Town Council of the Town of Mayodan, State of North Carolina amendments be made as follows:

**ARTICLE 2**

**General nuisances**

**Section 11.11        Unnecessary noises prohibited.**

It shall be unlawful for any person, firm or corporation to create or assist in creating, permit, continue, or permit the continuance of any unreasonably loud, disturbing and unnecessary noise in the Town. Noise of such character, intensity and duration as to be detrimental to the life or health of any individual is prohibited.

Standards

The standards which shall be considered in determining whether a violation of this article exists shall include, but shall not be limited to the following:

1.        The volume of the noise.
2.        The intensity of the noise.
3.        Whether the nature of the noise is usual or unusual.
4.        Whether the origin of the noise is natural or unnatural.
5.        The volume and intensity of the background noise, if any.
6.        The proximity of the noise to residential sleeping facilities.
7.        The nature and zoning of the area from which the noise emanates.
8.        The density of inhabitation of the area from which the noise emanates.
9.        The time of the day or night the noise occurs.
10.       The duration of the noise.
11.       Whether the noise is recurrent, intermittent, or constant.

June 11, 2012
Page 2

12.       Whether the noise is produced by a commercial or noncommercial activity.
13.       Whether the noise is of impulsive character (hammering, etc.)
14.       Whether the noise is of periodic character (hum, screech, etc.)

**Section 11.12      Same; noises expressly prohibited.**

The following acts, among others, are declared to be loud, disturbing and unnecessary noises in violation of this Section, but said enumeration shall not be deemed to be exclusive, namely:

(a) The sounding of any horn or signal device on any automobile, motorcycle, bus or other vehicle while not in motion, except as a danger signal if another vehicle is approaching apparently out of control, or if in motion only as a danger signal after or as brakes are being applied and deceleration of the vehicle is intended; the creation by means of any such signal device of any unreasonably loud or harsh sound; and the sounding of such device for an unnecessary and unreasonably period of time.

(b) The use of any gong or siren upon any vehicle, other than police, fire or other emergency vehicle.

(c) The use or operation of any piano, manual or automatic, phonograph, radio, loud speaker, or any other instrument, or sound amplifying devices so loudly as to disturb persons in the vicinity thereof, or in such a manner as renders the same a public nuisance; provided, however, that upon application to the Mayor, permits may be granted to responsible organizations to produce programs in music, speeches or general entertainment.

(d) The keeping of any animal or bird which by causing frequent or loud continued noises (more than 30 minutes) between the hours of 9:00 p.m. and 7:00 a.m. that shall disturb the comfort and repose of any person in the vicinity.

(e) The use of any automobile, motorcycle or other vehicle so out of repair, so loaded or in such manner as to create loud or unnecessary grating, grinding, rattling, or other noise.

(f) The blowing of any steam whistle attached to any stationary boiler except to give notice of the time to begin or stop work or as a warning of danger.

(g) The discharge into the open air of the exhaust of any steam engine, stationary internal combustion engine, or motor vehicle except through a muffler or other device which will effectively prevent loud or explosive noises therefrom.

(h) The use of any mechanical device operated by compressed air unless the noise created thereby is effectively muffled and reduced.

(i) The erection (including excavation), demolition, alteration or repair of any building in a residential or business district other than between the hours of 7 a.m. and 6 p.m. on weekdays except in the case of urgent necessity in the interest of public safety and then only with a permit from the Town Clerk, which permit may be renewed for a period of three days or less while the emergency continues.

(j) The creation of any excessive noise on any street adjacent to any school, institution of learning, or court while the same is in session, or within one hundred and fifty (150) feet of any hospital, which unreasonably interferes with the working of such institution, provided conspicuous signs are displayed in such streets indicating that the same is a school, court or hospital street.

(k) The creation of any excessive noise on Sundays on any street adjacent to any church, provided, conspicuous signs are displayed in such streets adjacent to churches indicating that the same is a church street.

(l) The creation of loud and excessive noise in connection with loading or unloading any vehicle, of the opening and destruction of bales, boxes, crates and containers.

(m) The sounding of any bell or gong, attached to any building or premises which disturbs the quiet or repose of persons in the vicinity thereof.

(n) The shouting and crying of peddlers, barkers, hawkers and vendors which disturbs the quiet and peace of the neighborhood.

(o) The use of any drum, loud speaker or other instrument or device for the purpose of attracting attention by creation of noise to any performance, show or sale or display of merchandise.

(p) the use of any mechanical loud speakers or amplifiers on trucks or other moving vehicles for advertising purposes except where specific license is received from the Council.

(q) The conducting, operating or maintaining of any garage or filling station in any residential district so as to cause loud or offensive noises to be emitted therefrom between the hours of 11 p.m. and 7 a.m.

(r) The firing or discharging of squibs, crackers, gunpowder or other combustible substance in the streets or elsewhere for the purpose of making noise or disturbance except by permit from the Council.

(s) The operation on any tax parcel of any recreational vehicles, including, but not limited to, dirt bikes, motor-cross bikes, motorcycles, all terrain vehicles, and modified lawnmowers shall be limited to no more than one (1) hour per day between the hours of 9:00 a.m. and 7:00 p.m. The operation of said above vehicles shall be prohibited at other times of day except for the loading or unloading of the said vehicles. Any operator of such vehicle outside of the scope allowed by this ordinance shall be subject to punishment under this section.

Item 4B:
**MOTION** by Councilman Bottoms, seconded by Councilman Chatman to appoint Chloe Lester and re-appoint Landon Biggs, Rachel Early, Megan Elmore, Ellie Jenkins, and Kristen Martin to a one-year term on the M-M Recreation Department Youth Council. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**New Business**
Item 5A:
Mayor Cardwell moved Item 5A to the end of the New Business Agenda.

Item 5B:
Mayor Cardwell asked Council to consider the Rockingham County Solid Waste Plan, Three-Year Update.

**MOTION** by Councilman Simpson, seconded by Councilman Martin, to approve the update to the Rockingham County Solid Waste Plan. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**The Rockingham County Solid Waste Plan is hereby by reference made a part of these minutes and a copy is on file in the Town Clerk's office for public viewing.

Item 5C:
**MOTION** by Councilman Allred, seconded by Councilman Bottoms, to approve the 2012-2013 annual audit contract with Rouse, Rouse, Penn and Rouse. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

**The Audit Contract is hereby by reference made a part of these minutes and a copy is on file in the Town Clerk's office for public inspection.

Item 5D:
Mayor Cardwell reported to Council that Mr. Brian Hill had submitted a resolution in support of House Resolution 982 for consideration by Council.

No action was taken by Council.

Mayor Cardwell called for a short recess at 7:11 p.m.
Mayor Cardwell called the meeting back to order at 7:17 p.m.

Item 5A:
Mayor Cardwell opened the discussion regarding the 2012-2013 budget ordinance. Mr. Brandt discussed the budget presented, which allows for the $140,000 shortfall from utility franchise taxes the town will experience due to the discovery of a power supply change at the Unifi facility on Island Drive dating back to 2006. Mr. Brandt recommended an increase in the solid waste collection fee resulting in a 100% increase in fees. No tax increase is proposed.

**MOTION** by Councilman Allred, seconded by Councilman Bottoms, to approve the 2012-2013 budget ordinance as presented. Ayes: Councilmen Allred, Bottoms, Chatman, and Martin. Nays: Councilman Simpson. Motion carried.

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 22 of 27

**The 2012-2013 Budget Ordinance is hereby by reference made a part of these minutes and a copy is on file in the Town Clerk's office for public viewing.

**MOTION** by Martin, seconded by Councilman Allred, to set the 2012-2013 tax rate at 58 cents per $100 of valuation. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None.

**Mayor/Council Comments/Announcements**
Mayor Cardwell discussed the presentation of the N.C. STEP Grant award and plaque given by Governor Beverly Perdue at a ceremony in Raleigh.

**MOTION** by Councilman Bottoms, seconded by Councilman Allred, to adjourn the meeting. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Council adjourned at 7:59 p.m.


ATTEST:

Melessa K. Hopper, CMC, Town Clerk                 James Cardwell, Mayor

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 23 of 27

# Mayodan Town Council
# Regular Meeting
# July 9, 2012 - 7:00 p.m.
# James A. Collins Municipal Building

Present:
Mayor: James "Bud" Cardwell
Council: Darrell Allred, Lewis Bottoms, Glenn Chatman, Andrew "Buddy" Martin, Tim
Simpson

Staff Present:
Town Attorney Phil Berger
Town Manager: Michael Brandt
Town Clerk: Melessa Hopper

Others Present:
Roy Sawyers, RCENO

The Mayodan Town Council met at 7:00 p.m., July 9, 2012, in the council room of the
James A. Collins Municipal Building, and with a quorum present Mayor Cardwell called the
meeting to order.


## Public Comments
Mr. Brian Hill discussed the National Defense Authorization Act. Mr. Hill states the NDAA is
unconstitutional and wants a resolution approved by Council stating their opposition to NDAA
and can't understand why the Town Council can not use their power to approve this regulation to
protect its citizens.


## Citizen Concerns
### Item 2A:
Mayor Cardwell called upon Ms. Denise Lowe to give information regarding her water billing to
the Council. Ms. Lowe lives at 114 Taft Street. She stated her bill was $118 and is normally
around $40. Town employees came to her residence to check for a leak. While there the town
public works staff replaced the meter at that location. Staff indicated there was no leak showing
at the meter. The new meter was installed to have a better opportunity to discover a slow leak,
should one exist. A plumber was called and he checked the residence for leaks and none were
found. Discussion involved the possibility of a toilet leak that has corrected itself. Town Manager
Michael Brandt assured Ms. Lowe that the public works staff would check the meter for the next
few weeks every day to see if something is happening with the meter that can be noted.

### Item 2B:
Mayor Cardwell called upon Mr. Bill Scheib to give information regarding the community garden
established at the corner of Madison Street and N. 4th Avenue. Mr. Scheib informed Council and
citizens that the drip irrigation was set up and a pump donated to the cause. Lowe's Home
Improvement awarded a tiller to the project through its Hero Day program. Mr. Scheib stated this
is very much a community garden and that 92 people have worked the garden. Vegetables are
harvested on Mondays and 400 lbs of vegetables were harvested today. Vegetables are available

for the needs of the community on Tuesdays from 4 to 5 p.m. The group has harvested a total of 3,220 lbs so far. Mr. Scheib stated the garden would be spotlighted on WFMY TV 2 News on Wednesday at 6 p.m. Mr. Scheib asked that the town deliver leaves to the site in the winter for mulching.

## Approval of Minutes
Item 3A&B:
MOTION by Councilman Martin, seconded by Councilman Bottoms, to approve the agenda and regular minutes of June 4 and 11, 2012 as presented. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

## Old Business
There were no items of old business discussed.

## New Business
Item 5A:
Mayor Cardwell asked Council members to nominate a council member for membership on a steering committee for the N.C. D.O.T.'s Transportation Comprehensive Plan Update. Council member Darrell Allred volunteered to serve on the committee.

Item 5B:
Mayor Cardwell asked Council to consider a resolution to purchase a new police vehicle. Mr. Brandt stated the vehicle would be financed through BB&T for $25,000 at a rate of 2.69% for five years.

MOTION by Councilman Allred, seconded by Councilman Martin, to approve the resolution approving financing terms for an amount not to exceed $25,000 for a police vehicle. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

### RESOLUTION APPROVING FINANCING TERMS

WHEREAS the Town of Mayodan ("Town") has previously determined to undertake a project for the financing of vehicles (the "Project"), and the Finance Officer has no presented a proposal for the financing of such Project;
BE IT THEREFORE RESOLVED, as follows:
1. The Town hereby determines to finance the Project through Branch Banking and Trust Company ("BB&T"), in accordance with the proposal dated June 29, 2012, and amended July 3, 2012. The amount financed shall not exceed $25,000.00, the annual interest rate (in the absence of default or change in tax status) shall not exceed 2.69%, and the financing term shall not exceed five years from closing.
2. All financing contracts and all related documents for the closing of the financing (the "Financing Documents") shall be consistent with the foregoing terms. All officers and employees of the Town are hereby authorized and directed to execute and deliver any Financing Documents, and to take all such further action as they may consider necessary or desirable, to carry out the financing of the Project as contemplated by the proposal and this resolution. The Financing Documents shall include a Financing Agreement and Deed of Trust and a Project Fund Agreement as BB&T may request.
3. The Finance Officer is hereby authorized and directed to hold executed copies of the Financing Documents until the conditions for the delivery of the Financing Documents have been completed to such officer's satisfaction. The finance Officer is authorized to approve changes to any Financing Documents previously signed by the Town officers or employees, provided that such changes shall not substantially alter the intent of such documents or certificates from the intent expressed in the forms executed by such officers. The Financing Documents shall be in such final forms as the Finance Officer shall approve, with the Finance Officer's release of any Financing Document for delivery constituting the conclusive evidence of such officer's final approval of the Document's final form.
4. The Town shall not take or omit to take any action the taking or omission of which shall cause its interest payments on this financing to be includable in the gross income for federal income tax purposes of the registered owners of the interest payment

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 25 of 27

obligations. The Town hereby designates its obligations to make principal and interest payments under the Financing Documents as "qualified tax-exempt obligations" for the purpose of Internal Revenue Code Section 265 (b)(3).

5. The Town intends that the adoption of this resolution will be a declaration of the Town's official intent to reimburse expenditures for the Project that is to be financed from the proceeds of the BB&T financing described above. The Town intends that funds that have been advanced, or that may be advanced, from the Town's general fund, or any other Town fund related to the Project, for Project costs may be reimbursed from the financing proceeds.

6. All prior actions of Town officers in furtherance of the purposes of this resolution are hereby ratified, approved and confirmed. All other resolutions (or parts thereof) in conflict with this resolution are hereby repealed, to the extent of the conflict. This resolution shall take effect immediately.

Approved this 9th day of July, 2012.

By:_____          By:          _____

Melessa K. Hopper, CMC, Town Clerk                James "Bud" Cardwell, Mayor

SEAL

## Item 5C:

Mr. Brandt reported to Council that he had researched the issue of above ground crypts at the Mayodan Municipal Cemetery. Mr. Brandt stated the Town ordinances allow the Council to approve a section for crypts. Council asked staff members to draft a text change to the ordinance to bring forward for approval from council that determines the size and section for the crypts and possible for half graves for cremains. The matter will be discussed again at the August regular meeting.

**Manager Comments and Announcements**

Mr. Brandt reminded Council that the N.C. STEP grant meeting would be held on Thursday, July 19th from 5:30 to 7:30 p.m. at the Mayodan Fire Department.

Mr. Brandt informed Council that the work had been started to replace the front doors. The clock in the front garden at Town Hall had been repaired and is now working. He also stated the Preservation League had agreed to purchase new U.S. flags for display on the Town's main street.

**MOTION** by Councilman Martin, seconded by Councilman Chatman to enter closed session for the purposes of N.C. G.S. 143-318.11(a)6, personnel matters. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Council entered closed session at 7:59 p.m.

**MOTION** by Councilman Simpson, seconded by Councilman Bottoms to return to open session. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Council returned to open session at 8:56 p.m.

**MOTION** by Councilman Simpson, seconded by Councilman Martin, to award Town Manager Michael Brandt a 2 percent increase to his annual salary effective July 1, 2012. Ayes: Councilman Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 26 of 27

**MOTION** by Councilman Allred, seconded by Councilman Chatman, to adjourn the meeting. Ayes: Councilmen Allred, Bottoms, Chatman, Martin, and Simpson. Nays: None. Motion carried unanimously.

Council adjourned at 9:0 p.m.

ATTEST:

Melessa K. Hopper, CMC, Town Clerk

James Cardwell, Mayor

Case 1:13-cr-00435-TDS   Document 130   Filed 11/14/17   Page 27 of 27