

In the United States District Court

For the Middle District of North Carolina

Brian David Hill
Petitioner,

v.

United States of America
Respondent.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:17-CV-1036
Criminal Case No. 1:13-cr-435-1

## PETITIONER'S BRIEF / MEMORANDUM IN OPPOSITION TO "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE" (Document #141)

### OPPOSING BRIEF IN OPPOSITION TO THE GOVERNMENT'S/MOVANT'S MOTION UNDER DOCUMENT #141

NOW COMES the Petitioner, through Brian David Hill ("Brian D. Hill", "Plaintiff", or "Hill"), that is acting pro se and is proceeding pro se before this Honorable Court, is filing his opposing Brief/Memorandum in opposition to the Respondent's "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE," (See Document #141). The United States Attorney Office is abbreviated as "USAO" and the Middle District of North Carolina shall be abbreviated as "MDNC".

The facts will be presented herein. The Petitioner will explain which paragraphs within Doc. #141, that the Plaintiff objects to, may be erroneous and contrary to law, and the very paragraphs that the Plaintiff opposes, as well as explain factually and/or legally

1

(case law, federal law, Constitutional law) as to why it is warranted that the Court should move to deny the Movant's Motion to Dismiss:

On January 10, 2018, Respondent's Attorney Anand Prakash Ramaswamy (*NCSB #24991, Assistant U.S. Attorney, 101 S. Edgeworth St., 4th Floor, Greensboro, NC 27401*) filed the Document #141 "*MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE*".

## PETITIONER'S OBJECTIONS TO THE CLAIMS IN THE "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE"

1. **Plaintiff's Objection #1 to Document #141, Page 1 of 14: Paragraph 1.** "*NOW COMES the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and moves the Court to dismiss the Motion to Vacate, Set Aside, or Correct Sentence filed herein on **June 10, 2016**, on the ground that the Petitioner's motion is <u>barred by the one-year limitation period imposed by amendments to ' 2255</u> in the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 (AEDPA).*" How ironic that the Government is using an "anti-terrorism" law to try to deprive an innocent person from proving actual innocence, even though a child pornography charge has nothing to do with terrorism. It shows how many Constitutional rights have been wrongfully eviscerated since the September 11, 2001 attacks. Anyways, the Respondent has incorrectly put "***June 10, 2016***" as either the date of their Motion

2

to Dismiss or they have incorrectly stated that as the date of Petitioner's filing of his 2255 Motion (Document #125) on November 14, 2017, and the brief / memorandum in support of Petitioner's 2255 motion on Document #128 filed on November 14, 2017. So they are wrong about the date of filing whether they were referring to their "Motion" themselves or referring to the date of filing of Petitioner's Motion. Then of course evidence Exhibits 1-53 (Documents #131, #132, #133, and #134) were in attachment to Petitioner's memorandum / brief in support of the 2255 motion and were filed on November 14, 2017 and was fully entered a day later by the Clerk. Petitioner had also filed the DECLARATION by Petitioner under Doc. #129 on Nov. 14, SECOND DECLARATION by Petitioner under Doc. #130 on Nov. 14, "Third Additional Evidence Declaration" Doc. #136 on Dec. 04, "fifth Additional Evidence Declaration" Doc. #137 on Dec. 04, and "Sealed Fourth Additional Evidence Declaration" Doc. #136 on Dec. 04 and unsealed redacted copy under Doc. #138. Assistant United States Attorney (A.U.S.A.) Anand Prakash Ramaswamy aka the Respondent did not even object to all issues within the memorandum / brief and the issues laid out in the Petitioner's motion prior to filing their motion to dismiss. On that alone does not make their motion credible and ignoring the entire case law giving Petitioner the right under the United States Supreme Court and Appellate case law to not being time barred by the statute of limitations were also ignored by A.U.S.A. Ramaswamy. I will explain furthermore as to why the Respondent's motion should be denied and that

3

an evidentiary hearing should be scheduled to address all issues regarding any and all facts of Petitioner's actual innocence.

1. **Plaintiff's Objection #2 to Document #141, Pages 1 to 2 of 14: Paragraph 2.**

*"As Petitioner concedes,[1] his one-year time limitation for filing a petition under 28 U.S.C. § 2255 has passed. The date of the judgment plus one year would have allowed timely filing by November 11, 2015. The appellate mandate (which affirmed the judgment and denied Petitioner's motion to extend the appellate filing deadline) plus an additional ninety days might have allowed timely filing by July 7, 2015, except that an untimely appeal does not serve to enlarge the one-year time limitation under § 2255.[2]"* The Respondent through A.U.S.A. Ramaswamy has ignored "paragraph 18." of Petitioner's 2255 motion (Document #128, Pages 34 to 36) which has already brought up the exceptions to the one-year statute of limitations. Paragraph 18 said and I quote that *""[F]or a claim to be viable through a § 2255 petition, it must [first] be raised on direct appeal." Brooks v. United States, 2007 WL 2688228, at *2 (E.D. Va. Sept. 5, 2007) (citing United States v. Frady, 456 U.S. 152, 162, 165 (1982)). But Petitioner in that cited case did not raise this claim on direct appeal. Thus, he is*

---

[1] From Government's filing: DE #125, 10; DE #128, 46-47.

[2] See, e.g., United States v. Pascencia, 537 F.3d 385 (5th Cir. 2008)(citing Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005); Sanchez-Castellano v. United States, 358 F.3d 424, 428 (6th Cir. 2004); Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999)("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired."). See also Ervin v. United States, No. 1:08CR128-7, 2011 WL 5075651.

4

*barred from doing so via a collateral attack, United States v. Mikalajunas, 186*

*F.3d 490, 492-93 (4th Cir. 1999)*, **_unless he can demonstrate at least one of two_**

**_possible exceptions_**, *see, e.g., House v. Bell, 547 U.S. 518, 536-37 (2006)*

*(establishing that a petitioner can overcome procedural default by asserting*

*either: (1) actual innocence; or (2) cause and prejudice for failure to raise the*

*issues on direct appeal). One of those exceptions—actual innocence—is*

*particularly relevant here, as it provides both a potential excuse for Petitioner's*

*default, as well as a freestanding justification to vacate his criminal sentence.*"

Then rest of that paragraph explained that Petitioner's ex-Counsel Eric David

Placke refused to have a Defense, refused to present any evidence of Petitioner's

innocence, and thus the Petitioner had a choice of falsely pleading guilty or face

prison time for not accepting responsibility. **Paragraph 18.** further reveals that

"**_The miscarriage of justice exception_**, *"our decisions bear out, survived*

*AEDPA's passage." In Calderon v. Thompson, 523 U. S. 538 (1998), "we*

*applied the exception to hold that a federal court may, consistent with AEDPA,*

*recalls mandate in order to revisit the merits of a decision. Id., at 558 ("The*

*miscarriage of justice standard is altogether consistent . . . with AEDPA's*

*central concern that the merits of concluded criminal proceedings not be*

*revisited in the absence of a strong showing of actual innocence."). In Bousley*

*v. United States, 523 U. S. 614, 622 (1998), we held, in the context of §2255,*

*that* **_actual innocence may overcome a prisoner's failure to raise a_**

**_constitutional objection on direct review_**. *Most recently, in House, we reiterated*

5

that a prisoner's proof of actual innocence may provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error. 547 U. S., at 537–538." "These decisions "see[k] to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." Schlup, 513 U. S., at 324. Sensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations." All of the issues raised in both of Petitioner's 2255 brief and the brief in support of Petitioner's 2255 motion, and motion under §2255, are clear cut with all evidence Exhibits and show clear and convincing evidence of any facts that point towards actual innocence, reasonable doubt, and/or ineffective assistance of Counsel. **Paragraph 21.** says that "*Supporting case law regarding colorable showing of actual innocence should be allowed in a Habeas Corpus petition despite AEDPA's one-year statute of limitations: See, e.g., Holloway v. Jones, 166 F. Supp. 2d 1185, 1190 (E.D. Mich. 2001) (finding that while petitioner failed to establish colorable showing of innocence, "to utilize the one year statute of limitations contained in the AEDPA to preclude a petitioner who can demonstrate that he or she is <u>factually innocent of the crimes that he or she was convicted of would violate the Suspension Clause</u> ... as well as the <u>Eighth Amendment's ban on cruel and unusual punishment</u>"); Barbour v. Haley, 145 F. Supp. 2d 1280, 1288 (M.D. Ala. 2001) (following Wyzykowski and concluding that "<u>this court ... must give Barbour the opportunity to meet the standards for</u>*

6

***a showing of actual innocence before it can make any decision about this***
***claim [of actual innocence] on the merits***"); *United States ex rel. Thomas v.*
*Welborn, No. 00-C-2601, 2000 WL 1831548, at 3 (N.D. Ill. Dec. 13, 2000)*
*(finding that while petitioner failed to establish colorable showing of innocence,*
*"to close the gateway of the miscarriage of justice exception to petitioners who*
*fail to timely file their petitions under 2244(d) would raise "serious*
*constitutional questions.'... Furthermore, it would create the possibility that an*
*innocent person would remain incarcerated due to a constitutional violation,*
*simply because he failed to overcome a procedural hurdle."); Neuendorf v.*
*Graves, 110 F. Supp. 2d 1144, 1158 (N.D. Iowa 2000) (assuming, without*
*deciding, that "sufficient showing of "actual innocence' would open the gateway*
*to federal habeas corpus review, even if the petition in which the claim is*
*asserted is otherwise untimely under the AEDPA"); United States v. Zuno-Arce,*
*25 F. Supp. 2d 1087, 1099-1102 (C.D. Cal. 1998) (finding that while petitioner*
*failed to establish colorable showing of innocence, the court nevertheless*
*"extends the miscarriage of justice gateway as a means of considering evidence*
*and constitutional claims otherwise procedurally barred by the AEDPA's statute*
*of limitations" because **"foreclosing a claim of constitutional violation where***
***there has been a colorable showing of factual innocence would likely***
***constitute a due process violation or an improper suspension of habeas corpus***
***relief***"), *aff'd, 209 F.3d 1095 (9th Cir. 2000), amended, 245 F.3d 1108 (9th*
*Cir.), mandate stayed, 271 F.3d 953 (9th Cir. 2001); see also McLaughlin v.*

7

*Moore, 152 F. Supp. 2d 123, 136 (D.N.H. 2001) (indicating that while it is likely that sufficient evidence of actual innocence would provide a gateway through 2244(d)'s limitation period, thereby permitting a successful petitioner to present untimely claims, "there is at least some judicial authority suggesting that even if an actual innocence exception to AEDPA's time limitation must necessarily be inferred, that exception is not available to petitioners who fail to pursue their claims in a diligent manner") (citing Workman v. Bell, 227 F.3d 331 (6th Cir. 2000) (en banc), cert. denied, 531 U.S. 1193 (2001))."* Since that case law was already asserted under Petitioner's #Doc. #128 brief in support of his 2255 motion under Document #125, the Petitioner has demonstrated case law as to why Petitioner is entitled to prove actual innocence. The newly discovered evidence has been entirely brought up in Petitioner's FOIA lawsuit and will further explain herein as to how that also applies as at least a fact for actual innocence.

3.  **Plaintiff's Objection #3 to Document #141, Pages 1 to 2 of 14: Paragraph 2.**
    *"Petitioner seeks to avoid the one-year deadline for one of his four grounds in his § 2255 petition by citing what he characterizes as newly discovered evidence showing his actual innocence. [DE #125, 4]. However, <u>Petitioner does not cite any newly discovered evidence showing actual innocence</u>."* That doesn't make sense what A.U.S.A. Ramaswamy has just said. Ground 4. If that is what Respondent has referred to is *"Prosecutorial misconduct - Based upon new evidence that has surfaced in a 2017 Freedom of Information Act ("FOIA")*

8

*lawsuit and FOIA Appeal case, in the Western Dist. of Virginia.*" Under

paragraph (b)(2) of "Ground four" Petitioner has already stated that the "*Newly*

*discovered evidence filed in Federal civil case "Brian David Hill v. Executive*

*Office for United States Attorneys (EOUSA) et al," case no. 4:17-cv-00027, U.S.*

*Dist. Court for Western District of Virginia.*" Since that particular FOIA lawsuit

and arguments, evidence, Exhibits, and all newly discovered evidence may be

anywhere between almost 1,000 pages to 1,000 pages or more, Audio CD,

DVDs, it would overburden the Clerk's office to file the newly discovered

evidence again in the Middle District of North Carolina which will cause the

Court unnecessary delay and resources. So citing the other FOIA case is the

newly discovered evidence and should be reviewed over by the Habeas Court. If

the Habeas Court wishes the FOIA case evidence to be transmitted and filed in

this case, then the Court may request the Clerk in the Danville Federal

Courthouse to transmit the entire docket sheet and filings to the Middle District

of North Carolina for this case if the Court so requires. The Petitioner also had

put an entry in "Ground Four" to "See "BRIEF / MEMORANDUM IN

SUPPORT OF BRIAN DAVID HILL'S "MOTION UNDER 28 USC § 2255

TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN

FEDERAL CUSTODY"""DECLARATION, ATTACHED EXHIBITS, AND

BRIEF IN SUPPORT OF THIS MOTION"". Respondent doesn't want the

Court to understand that the newly discovered evidence was indeed cited

correctly. The case number and the case name of Petitioner's FOIA case which

9

has the newly discovered evidence, and shows the region of what U.S. District Court, the Docket Sheet and newly discovered evidence is located is all cited in the "Ground Four" section of Petitioner's 2255 motion. The newly discovered evidence, to make the explanation brief, is that in earlier 2017, Plaintiff (Petitioner of this 2255 civil case) of that FOIA lawsuit had received a FOIA response packet of evidence that the Executive Office for United States Attorneys ("EOUSA") had sent to Brian which had copies of documentation concerning the criminal case discovery material of the criminal case being challenged in Petitioner's 2255 claims. Some pages were released in full and some released in part. However the paralegal that received such documentation from "Anand Prakash Ramaswamy" had omissions of the "State Bureau of Investigation" forensic case file and the [false] confession Audio disc. Plaintiff of that case had stated that A.U.S.A. Ramaswamy may have covered up or concealed the existence of that portion of the criminal case discovery material to prevent Plaintiff/Petitioner from proving actual innocence. John Scott Coalter, court appointed lawyer who has the discovery material has also threatened to destroy the discovery materials which were mentioned in the FOIA lawsuit filings according to the Declaration of Kenneth R. Forinash. (See U.S. District Court, Western District of Virginia, Case #: 4:17-cv-00027-JLK, Document 2-8, Filed 04/25/2017, Page 2 of 2 Pageid#: 135). A.U.S.A. Ramaswamy does not want Petitioner to prove his actual innocence and will do everything under the

10

sun to prevent him from ever being removed from the Sex offender registry and be found innocent.

4. **Plaintiff's Objection #4 to Document #141, Pages 1 to 2 of 14: Paragraph 2.**

"*While the undersigned does not easily apprehend the exact nature of Petitioner's claims following repeated readings of the hundreds of pages filed in the instant case, it would appear that Petitioner makes a <u>multifaceted claim to include false confession, challenges to the sufficiency of the evidence, prosecutorial misconduct, ineffective assistance of counsel, judicial misconduct, and being the victim of a computer virus and/or hacking by unknown parties likely affiliated with the government.</u> [DE #125]. However, as more fully discussed below, Petitioner fails to satisfy the gatekeeping provision for fact-based claims which allows exception to the one-year time-limit otherwise applicable in § 2255 motions; for that reason, Petitioner's motion is time-barred, and should be dismissed.*" First of all, John Scott Coalter has threatened to destroy the discovery materials so that Petitioner is blocked from the very discovery that would help in proving actual innocence while A.U.S.A. Ramaswamy is refusing to give the Petitioner a copy of the "State Bureau of Investigation" forensic case file and the [false] confession Audio disc as specifically requested in both Petitioner's Freedom of Information Act ("FOIA") requested dated August 29, 2016, and in Petitioner's FOIA lawsuit in the Western District of Virginia (See U.S. District Court, Western District of Virginia, Case #: 4:17-cv-00027-JLK, Brian David Hill v. Executive Office for

11

United States Attorneys et al). The very same discovery material that both sides will not allow the Plaintiff/Petitioner to review entirely prior to his false guilty plea. Petitioner was deprived of being allowed to prove actual innocence under the adversarial system so he was given two choices, (1) guilty plea, (2) or face heavy prison sentence, "take your pick everybody" - (sarcasm). Despite Ramaswamy and Mr. Eric David Placke both trying to prevent Petitioner from getting complete and unfettered access to the entire discovery material to come up with an effective actual innocence defense, Petitioner has come up with this much as to the factual claim of actual innocence:

i. **FACT 1:** The **"III. Factual Basis for the August 29, 2012 Confession Being False, Questionable as Fact, and/or should be Impeachable for Coercion"** in Petitioner's brief demonstrates false confession based upon the factors that **(1)** Petitioner had made an initial statement of innocence and then it changed after the Detective had asserted that they "had found child pornography" (*without showing the Petitioner that there was any on his Laptop while being interrogated*) on his computer and that pressured Petitioner to just admit to crime, as well as Chief Caruso the day before telling Petitioner to "Fess Up" or else his mother would be held responsible. The same tactics were used in the interrogation of Michael Crowe, an innocent boy who was interrogated by police to falsely confess to a crime that did happen but Michael Crowe did not commit the

12

crime that he had confessed to. Citing (CROWE v. Michael Crowe; Stephen Crowe; Cheryl A. Crowe, Plaintiffs-Appellants, (9th Circuit U.S. Court of Appeals, January 14, 2010, Nos. 05-55467, 05-55542, 05-56311, 05-56364)[3] *"At this point **Detective Claytor took over the interview**. __Claytor told Michael they found blood in his room__, __lifted fingerprints off the blood stains__, and that the __police now knew who killed Stephanie__. Then he told Michael: We can't bring her back. I'll tell you what we can do. What we can do is the right thing by Stephanie's name and by yourself and by your parents. Okay. Now, there is a couple of things that we need your help with . that only you're going to be able to help us with . What I'd like you to do right off the bat, rather than put our team through any more, __can you tell me what you did with the knife__?"* Doesn't that sound similar to Detective Christopher Todd Brim and/or Detective Robert Bridge telling Petitioner that they found child porn on his computer and that "you better just tell us. . .we are going to find more". Petitioner told them that he was into adult porn and they said they were finding

---

[3] Michael CROWE; Stephen Crowe; Cheryl A. Crowe; Judith Ann Kennedy; Shannon Crowe, a minor, through guardian ad litem Stephan Crowe; Zachary Treadway; Joshua David Treadway; Michael Lee Treadway; Tammy Treadway; Janet Haskell; Margaret Susan Houser; Christine Huff; Gregg Houser; Aaron Houser, Plaintiffs-Appellees, v. COUNTY OF SAN DIEGO; The City of Oceanside; Chris McDonough; Gary Hoover; Summer Stephan; Lawrence Blum; City of Escondido; National Institute for Truth Verification; Rick Bass, Defendants, Mark Wrisley; Barry Sweeney; Ralph Claytor; Phil Anderson, Defendants-Appellants. Michael Crowe; Stephen Crowe; Cheryl A. Crowe, Plaintiffs-Appellants

child porn as if no adult porn existed on his Laptop which is a load of nonsense. Those Detectives interrogated Petitioner Brian David Hill the similar style as with Michael Crowe in the 9th Circuit U.S. Court of Appeals case documenting his acquittal of innocence due to proving his false confession. Petitioner made an initial statement saying that he was downloading pirated software (Citing: "A. I download movies, programs and music.") from the interview before it was turned into an interrogation, See Document #132, Pages 7 to 8 of 103. So a statement that Petitioner did not download child pornography but was put through the allegations of "finding evidence" on Petitioner's computer to make him feel that proclaiming his innocence would not matter to Detectives that are hungry for a confession even if such confession is false, using the flawed Reid Technique. Just like what they did in the false confession of Michael Crowe in California. Petitioner may not have been a kid at the time of his interrogation like with Michael Crowe, people with Autism can have childlike behavior and thus can easily be bullied and manipulated to easily believe things or say things that may not be true aka the false confession element of Petitioner's 2255 motion and brief. **(2)** That Petitioner had exhibited an article from The Innocence Project, a well-recognized legal organization that has brought up FACTS concerning innocent people confessing to crimes

14

that they did not do. The Innocence Project said in Petitioner's Exhibit 13 (See Document #132, Pages 2 of 103) that

"*Astonishingly, more than 1 out of 4 people wrongfully convicted but later exonerated by DNA evidence made a false confession or Incriminating statement*". Petitioner filed an Exhibit 15, citing: Document #132, Pages 9 to 12 of 103, in regards to the fact that law enforcement trainer and expert Dennis Debbaudt had typed up a whitepaper that explains how people with Autism can give false confessions and misleading statements. Petitioner has Autism and has given statements that do not match the forensic case file report by the N.C. State Bureau of Investigation ("SBI") Special Agent ("SA") Rodney V. White. Therefore Petitioner is capable of giving a false confession and has IN FACT falsely confessed. **(3)** According to "paragraph 26." of Petitioner's 2255 brief, Brian Hill told the police Detectives that he had child porn in his Netbook that they didn't get and of course the SBI report said no files of interest are noted. According to "paragraph 25." the Petition had stated that he had downloaded child porn for "*about a year or so*" while the N.C. SBI case forensic report stated that "*454 files had been downloading with the eMule program between July 20, 2012, and July 28, 2013.*" I can go on and on for many pages but A.U.S.A. Ramaswamy has not addressed that Petitioner has made a factual claim of false

15

confession when proving that the forensic report does not match the Petitioner's statements as what would happen with a guilty person. Innocent people do confess to the police and to crimes they did not commit because of the controversial Reid Technique. The Innocence Project knows about innocent people falsely confessing as a fact and it is a fact in Petitioner Brian David Hill's case that he did falsely confess on August 29, 2012. A.U.S.A. Ramswamy did not want to acknowledge the hundreds of pages that he had read arguing that there are facts of actual innocence.

ii.  **FACT 2:** The claim that Petitioner's computer was hacked is also a fact. All Desktop computers are capable of being hacked into, even computers that use firewalls, Anti-viruses, Anti-Spyware, and rootkit hunters. Even the Government has been hacked by hacker groups such as Anonymous. Computers are not secure and even the Government computers will never be 100% secure. Petitioner's computer was open to malware and viruses prior to being framed with child pornography. The fact that all Anti-Virus companies have to consistently provide virus database (aka virus definition database) updates in paid or even free subscriptions to use an Anti-Virus proves that a computer hacker can hack into a computer, even a computer with fully functional Anti-Virus programs. Petitioner has revealed that because he uses pirated software and circumvention

16

tools for the Windows "Product Activation" scheme for the Windows Operating System that he paid for since his computer kept getting attacks and he had to keep calling some Microsoft call center in India, and being annoyed by some call center guy saying "You activated too many times" and being treated like a criminal for the Operating System he paid for, which is good reason for him to use tools to circumvent the product activation schemes (See Document #128-1, Page 5 through 7 of 71). Anyways the Petitioner has admitted in brief that he did not have a working Anti-Virus software and may have permanently disabled it or that it wasn't functioning properly prior to the police raid on Petitioner and his mother at Mayodan. Thus it does make it a FACT that Petition's laptop may have been hacked. The only way to totally prove this fact beyond reasonable doubt is for the Respondent's "Motion to Dismiss" to be denied and allow Petitioner to proceed in his 2255 motion to file a CJA 21 voucher asking for the Court to fund an independent computer forensic expert to examine Petitioner's seized Black Toshiba Laptop Computer, Satellite C655D, to prove that child pornography had downloaded on Petitioner's computer up until July 28, 2013, while his Laptop was seized on August 28, 2012, proving that Petitioner's computer was hacked into and was either tampered with by law enforcement or they grossly neglected to protect his

17

seized computer from hacking attacks which caused the 454 files to have been downloaded with the eMule program.

iii. **FACT 3:** The Petitioner was involved with the alternative media prior to being framed with child pornography. Luke Rudkowski, Stewart Rhodes, and others that all received tormail.org email messages with child pornography set up attempts, similar to the stunts being pulled against the Petitioner who also received terrifying messages from tormail.org. A witness named Susan Basko also pointed that out in Document #46 in this case which Eric Placke and A.U.S.A. Ramaswamy both ignored which they admitted on September 30, 2014 hearing before the Honorable Judge Osteen Junior. Ramaswamy and Placke don't want her to reveal what the Government wants to conceal.

iv. **Other facts that need to be examined by what is in the brief.**
There are other issues the 2255 brief had stated but the mainly important ones concerning facts of innocence, enough to substantiate an evidentiary hearing and give Petitioner a chance to fully show that he does have enough facts of actual innocence warranting vacatur of his conviction and sentence.

5. **Plaintiff's Objection #5 to Document #141, Page 3 of 14: Paragraph 3.** "*As of the date of filing for this response, one hundred forty ECF documents have been filed under the criminal file number above. Most of those ECF filings are*

18

*pro se ones, that Petitioner now admits many of which were baseless.[4]"* Well what would he have done if he was given ineffective Counsel so severe that he was totally misrepresented in Court for a crime that he did not commit and forced into a guilty plea for a crime that he did not do? In respect to the Honorable Judge Thomas D. Schroeder's claim at the June 30, 2015 Supervised Release Revocation ("SRV") hearing that Petitioner had been directed not to file any more pro se motions unless they were well grounded in law, and that was why Petitioner had admitted to such in the 2255 brief, in respect to the Judge. However all filings of Petitioner's 2255 motion, brief, 5 additional Declarations, and 53 evidence Exhibits all are within the confines of the 2255 motion and are used to well-ground Petitioner's 2255 motion and brief to support his claim of innocence warranting an evidentiary hearing. The pro se filings made before Petitioner's 2255 motion may not have "had any statutory basis" but Petitioner want to prove to the Court beyond reasonable doubt that both Eric David Placke, the assistant federal Public Defender, and John Scott Coalter, both court appointed lawyers, did not ever support Petitioner's actual innocence claims. That there was a ton of evidence and arguments all throughout Petitioner's pro se motions and evidence filings, though not backed by any statutory basis" would collide and work together as a whole to prove that Petitioner's Counsel

---

[4] See, e.g., DE#25 at 6: "Was not given full access to criminal case discovery materials until January 22. 2015, at John Scott Coalter's office, a few months after I was convicted upon final Judgment. That was why I was furious and filed a bunch of pro se motions with evidence, even though none of those had any statutory basis."

19

was so deficient that Petitioner would not have been found innocent by a Jury due to such deficiency. Had Petitioner been given effective assistance of Counsel, Petitioner would have been found not guilty. So his entire guilty plea is not valid as it is based entirely on ineffective Counsel so severe that he (Mr. Placke) offered no criminal defense when he (Mr. Placke) clearly could have raised any or all issues that was raised in Petitioner's 2255 brief, 53 Exhibits, and 5 additional evidence Declarations. Proving false confession is a fact of innocence and would have automatically been one reasonable doubt needed to not being forced into a guilty plea agreement with the Government. If Placke had told the Jury that "454 files been downloaded with the eMule program" between the dates of July 20, 2012, and July 28, 2013," and has shown that Petitioner had received a threatening email from tormail.org around the same time that the "454 files" were downloading to petitioner's seized Laptop computer while in law enforcement custody. Then the threatening email had stated that "we know some people in the SBI that will make sure you are convicted" and claimed to be the party responsible for setting Petitioner up with child porn. Yet that is another reasonable doubt. Petitioner had legal Counsel so severely deficient that Petitioner would not have been found innocent and was forced to take the guilty plea for a crime that he did not commit. The pro se filings that A.U.S.A. Ramaswamy mentions as if Petitioner had no good reason to have ever filed those tons of pro se motions and evidence, when in reality that kind of conduct proves ineffective Counsel, especially with the facts of

20

innocence and the reasonable doubts that Mr. Placke could have raised at the Jury trial. Proving false confession would be the strongest reasonable doubt and would make the Jury feel that Petitioner may be innocent. Had Mr. Placke decided to provide an independent computer forensic expert to examine Petitioner's computer and prove SBI Agent Rodney White's statement that "*454 files had been downloading with the eMule program between July 20, 2012, and July 28, 2013*", would prove that the tormail.org connection does match the evidence tampering, evidence planting, and/or mishandling of sensitive evidence while in the custody of law enforcement would have been immediate grounds for acquittal. A Jury would gasp in horror and shock, and would move to find Petitioner not guilty. Guilty people don't get their evidence tampered with by law enforcement because they are guilty and there is no need to make them look guilty because they are guilty. Evidence tampering and evidence planting, especially tampering with computer equipment type evidence is yet another fact of actual innocence. People are always found innocent when a crime laboratory is found to have tampered with a blood sample or that a police officer was caught tampering with the crime scene. That is a very good reason for any reasonable Juror to find Petitioner innocent of his charge. Actual innocence under the affirmative defense of "frame up" is recognized by the U.S. Supreme Court.

6.  **Plaintiff's Objection #6 to Document #141, Page 4 of 14: Paragraph 5.**
    "*Petitioner was ordered to **participate in a cognitive behavioral treatment***

21

***program*** *and location monitoring home detention program without the district court revoking Petitioner's supervised release*." However what was revealed in Document #124 was that "*According to Senior U.S. Probation Officer McMurray on August 11, 2015, he was notified by Dr. Keith Fender, certified sex offender treatment counselor at Radford Counseling that Mr. Hill was being removed from counseling after two sessions. Mr. Hill's final session took place on August 8, 2015. Mr. Hill was <u>deemed by the counselor as "not amenable to treatment."</u> Dr. Fender noted that Mr. Hill's contributions to group counseling have <u>solely focused on his impression that he was wrongfully convicted for the instant offense</u>, thus making it impossible for him to adjust and eventually complete sex offender counseling. Additionally, Dr. Fender advised that Mr. Hill was removed from the group so as not to hinder the progress of other members of the counseling group*" That was because Petitioner was not going to falsely admit guilt to child pornography after being framed with such material. Petitioner only falsely confessed to protect his mother who is also innocent, because the Police alleged to him that they had found child pornography on his computer, that he was questioned around lunch time and is a type 1 brittle diabetic with Autism. Petitioner only falsely confessed under the guilty plea agreement because of ineffective assistance of Counsel so severe that he had no criminal defense when he clearly could have suppressed his false confession or could have used his false confession to have as one of the facts of innocence which a Jury would have used as at least one reasonable doubt to find the

22

criminal Defendant aka Petitioner not guilty of his charge. There were other issues that could have also been brought up in regards to factual innocence by Mr. Placke. Petitioner only accepted responsibility for the possession of child porn out of fear of getting a worse prison sentence as the Honorable Judge Osteen hinted that he may have to take away Petitioner's acceptance of responsibility for his pro se filings challenging his guilty plea. Other than that, Petitioner has made no other claim of guilt.

7. **Plaintiff's Objection #7 to Document #141, Pages 5 of 14: Paragraph 7.**

"*Petitioner's conviction became final for § 2255 purposes on or about November 25, 2015. 28 U.S.C. § 2255(f)(1). This is the day following the one-year period after the Judgment in Petitioner's case was docketed (DE #54) plus an additional fourteen days under Fed. R. Crim. P. 4(b)(1)(A). As such, Petitioner's one-year limitations period expired on or about November 25, 2016.*" According to **<u>Exhibit 1</u>**, even in the event that Appellate court case law and U.S. Supreme Court case law doesn't apply to the facts of Petitioner's innocence which it does (*aka colorable showing of innocence*), Petitioner gives good excusable reasons why the Petitioner's 2255 motion and brief were filed late. The good excusable reasons are:

    i. (1) Attorney Cynthia Everson, even though a private attorney that decided to get involved in Petitioner's case in 2015, being ineffective Counsel and didn't file a notice of appearance and didn't even do anything to file a 2255 motion timely and didn't file a CJA

Voucher asking the Court to approve of legal funds to be spent on an independent computer forensic expert. She got upset with Petitioner over wanting her to endorse a legal fundraiser since the Petitioner isn't allowed to use the internet so Attorney Cynthia or his family were the only ones that could have started an online fundraiser. She wanted Petitioner's family to pay piles of money for no guarantee and money that Petitioner doesn't have and his family would have to go into debt just to pay for the forensic expert, funding that his family may never get in return after the proven actual innocence of Petitioner. Attorney Cynthia Everson was mentioned at the June 30, 2014, Supervised Release Revocation ("SRV") hearing (See Document #123, Transcript of SRV hearing dated June 30, 2015, Page 78 of 84) with the quote "*All I wanted to do was prove my innocence, but that's for another matter, for a matter that's going to be with Attorney Cynthia Everson, Attorney-at-law*." So the U.S. Attorney and the Court was made verbally aware that Attorney Cynthia was supposed to work on the 2255 matter before the Court but ignored the deadline and led the Petitioner to believe that she was going to find a computer forensic expert to cheaply examine the Petitioner's computer and prove actual innocence to be able to file the 2255 untimely upon the valid excuse of discovering new evidence. However Petitioner realized at a later time after speaking

24

with Eric Clark of Kansas that a computer forensic expert examining Petitioner's computer may not be considered newly discovered since Placke could have had the computer examined or even John Scott Coalter. Attorney Cynthia had either lied to the Petitioner or gave him a false belief that she would have been able to pursue a 2255 motion untimely after the computer forensic expert then later on stated that there was no guarantee of victory. Cynthia didn't even understand that the case law (note: referenced in Petitioner's 2255 motion) stated that all Petitioner would have to do is demonstrate a colorable showing of innocence to overcome the procedural hurdle of the statute of limitations for 2255 motions. She also didn't understand that Petitioner would also have to prove ineffective assistance of Counsel to change his plea from guilty back to not-guilty in order to overcome Petitioner's false guilty plea and allow the Petitioner to prove actual innocence to fully overturn his conviction and Judgment on November 12, 2014.

ii. (2) Petitioner had suffered under six months home detention and GPS ankle monitoring bracelet which forced the Petitioner into a legal tangent where the Petitioner was forced to entirely focus on proving United States Probation Officer ("USPO") Kristy L. Burton to have lied on the stand (Perjury) and lied through Supervisory USPO Edward R. Cameron (Subornation of Perjury) to wrongfully

punish and mentally torment the Petitioner who had only wanted to prove his actual innocence since he was originally charged in November, 2013. No, actually he had wanted to prove his innocence after he had given the false confession to the Mayodan Police Department. See the Fifth Additional Evidence Declaration under Document #137 and all attached evidence. The Petitioner had tried to contact the FBI and they did nothing about Kristy Burton, the Court did nothing about Kristy Burton due to Renorda Pryor did not raise the issue for reconsideration after Petitioner was released to be placed on home detention. Asst. Anand Prakash Ramaswamy had blatantly committed Subornation of Perjury and allowed his witness to lie on the stand in open court which is PERJURY. Since they seemed to be getting away with committing crimes, they can say anything they wanted to Attorney Renorda Pryor so Petitioner doesn't blame her for showing restraint on any attempt for a motion to reconsider against the criminals inside of the United States Attorney Office while under the direction of Ripley Rand. The Administrative Office of the U.S. Courts did not reverse the false statements of USPO Burton and did not even bother to correct USPO Burton's false statements on court record and neither did anybody admonish her for her crime. Could this have been a violation of the 8th Amendment of the United States Constitution banning "cruel and

26

unusual punishment"? The six months of home detention wasted away Petitioner's chance to prove actual innocence prior to the statute of limitations running out in November 2015. Petitioner couldn't use the internet while he was forced to be a prisoner in his own apartment. Petitioner couldn't visit a law library as the closest one was in Danville, Virginia which may not conform to the home detention restriction. That is OUTRAGIOUS, and is a very good excusable reason to go beyond the statute of limitations for an innocent man that has been punished over and over again for the crime that he did not commit and was framed on.

iii. (3) Petitioner had relied upon the Innocence and Justice Clinic ("I & J" or "I & J Clinic") of Wake Forest University School of Law to try to find a way to prove enough of the actual innocence of Petitioner to ensure that the 2255 motion would be successful despite the opposing party the Government wanting to keep Brian David Hill convicted forever until he decides to commit suicide or die of constant stress, fear, and health deterioration. Later on his family discovered that Wake Forest University School of Law was tied to one or more of the members of the Phil Berger family. Petitioner had already revealed through various pro se filings that Petitioner had made a direct political enemy of Mayodan town lawyer Phil Berger Senior, that his son was District Attorney of Rockingham County,

27

tied to Reidsville Police Detective Robert Bridge through Asst. District Attorney Melanie Bridge which is a real or perceived conflict of interest, and Kevin Berger had ran for the seat of the Rockingham County Commissioners. The Phil Berger family has political ties and connections, and one such connection was Wake Forest School of law. Appellate Counsel (See Document #69, *USCA Order appointing Mark Jones as Appellate Counsel of record.*) Mark Jones attended the same school around the time that Phil Berger Junior had attended that very same law school. Attorney Mark Jones betrayed Petitioner like some kind of Judas. Wake Forest I & J Clinic at a later time decided not to help the Petitioner prove his actual innocence after the time wasted waiting on the Wake Forest I & J Clinic to try to build a strong case of factual innocence. After all of the time wasted, Petitioner had an opportunity to show newly discovered evidence and that was the Freedom of Information Act lawsuit. Petitioner had not been given all discovery in response to Petitioner's FOIA request dated August 29, 2016. That is the newly discovered evidence that Petitioner could not have received at an earlier time due to dealing with the ineffectiveness of Attorney Cynthia Everson, the six months of home detention, the wasted time of the Innocence and Justice Clinic of Wake Forest School of Law, the Judas behavior of Attorney Mark Jones, the bad Counseling by

28

Kristen Patterson politically forced fed down petitioner's throat by USPO Kristy L. Burton, and the emotional anguish that had resulted out of it all.

Petitioner has stated good excusable reasons why the 2255 motion was filed untimely from the statute of limitations. Petitioner is actually innocence and should not be time barred from proving his actual innocence. Petitioner has given good facts of actual innocence such as (1) false confession caused by coercion. (2) evidence that computer was hacked into and/or evidence tampering by the State Bureau of Investigation as admitted by the paragraph "*454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013*" when laptop was actually seized on August 28, 2012 according to the search warrant and police inventory. There was not any blurred image thumbnails cataloged that means that there were no actual images reported and no documentation proving that actual child porn was found and verified as such by the forensic evidence. Even the Presentence Investigation ("PSI") Report stated that the Government had acknowledged that the suspected alleged child pornography were not of a known series while Detective Robert Bridge claimed that the IP Address 24.148.156.211 had downloaded video material of child pornography that were of a known series of child pornography since it was known to him (according to his own Affidavit) as part of the Internet Crimes Against Children ("ICAC") task force. That statement contradicts the Government's claim that no images/videos were of a known series according to

29

the National Center for Missing and Exploited Children ("NCMEC"). It is ironic that had the Petitioner not falsely plead guilty, the Government never would have admitted that no suspected images/videos were of a known series contradicting Detective Robert Bridge as what was explained in the PSI. Once Petitioner's guilty plea is to be withdrawn at the change of plea hearing on the ground of ineffective assistance of counsel, the statement from the PSI regarding no known series should be brought up in support of Petitioner's actual innocence. The contradictory statements doesn't make sense as all claimed child pornography investigations by the ICAC task force is that they track and identify suspected child pornography. So for there to be no known series of the suspected child porn according to the Government, that would mean that there were no victims and that Detective Bridge's claim cannot be substantiated as to what they claim may have been found on Petitioner's seized computer. Therefore an effective lawyer could have had very good grounds to cause a petit Jury to find Petitioner innocent. (3) That Petitioner had used encrypted DVD discs that couldn't be password cracked by the SBI and yet they have done nothing to ask the Petitioner for the password to prove that no child pornography files are even in the encrypted DVDs which would create a paradox, a contradiction to the Government's evidence that Petitioner had possessed child porn in unencrypted and in an open disk medium that was accessible to the internet that any capable computer hacker can use to plant evidence or change file metadata and yet Petitioner used encryption but has no child porn inside of those encrypted

30

DVDs. Petitioner used encryption but no child pornography is in such encryption within the seized encrypted DVD discs. That doesn't make the Petitioner look guilty but goes towards the opposite since it clearly demonstrates that a real guilty person WOULD HAVE used the encryption to hide the child pornography but the Petitioner did NOT use the encrypted DVD discs for the alleged suspected child pornography that the police claim were on his computer. (4) Petitioner had been a political activist since 2009 and had made a lot of online statements from his old website at uswgo.com which would have made political enemies. They would have had an incentive to hack into his computer and plant child pornography or even run eMule since the software program known as eMule is an open source P2P application that is open to tinkering by any computer programmer or hacker worth their salt. Petitioner had made enemies with the Phil Berger family prior to all of this happening. Phil Berger is a suspect and he should have been investigated by the FBI. The FBI did nothing about Phil Berger, did nothing about U.S. Congressman Mark Walker's claims during the campaign for Phil Berger running for Congress in 2014. Petitioner has good reason to suspect Phil Berger regardless of whether he is guilty or not, regardless of whether it could be a hacker or anybody around the world due to the bazaar claim by Special Agent Rodney V. White in his own SBI case file forensic report.

8. **Plaintiff's Objection #8 to Document #141, Pages 1 to 2 of 14: Paragraph 8.**

*"Petitioner's conviction became final for ' 2255 purposes 10 days after the entry*

*of his judgment, because he did not file notice of appeal within the applicable time period. 4 Clay v. United States, 537 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003); Fed. R. App. P. 26(a). Thus, combining the fourteen-day notice of appeal period and the one-year limitation period under ' 2255, the Petitioner had until December 8, 2015 to file his ' 2255 motion. Id. Because Petitioner's conviction was final after the AEDPA was enacted and because facts supporting his present claim could have been discovered through the exercise of due diligence, the limitation period lapsed on his ' 2255 claim.*" Petitioner did not have effective Counsel, and the ineffective assistance of counsel prevented the Petitioner from filing a timely Appeal of the final Judgment on November 12, 2015. Had the Petitioner filed the timely appeal and even filed a Writ of Certiorari, the time would have been greatly extended to the point where the Court would have likely considered that he would have had due diligence. Petitioner had an ineffective private lawyer, Petitioner didn't have the money to pursue a quick computer forensic investigation to meet due diligence. Attorney Cynthia Everson could have filed the 2255 motion based on all that Petitioner had raised in this 2255 motion but she wanted to take the time to find the computer expert which took a lot of time (about a year), then told Petitioner's family that it would be $5,000 or more for such expert. The Petitioner didn't have the money to afford such expert at that time and it would take months to possibly years to save up enough money to do a full computer forensic investigation of Petitioner's seized computer. How can due diligence apply to a

32

Petitioner who is poor, living off of Social Security disability income, and unable to afford a forensic expert? Even in the event that the Petitioner wasn't disabled and makes money then the Probation Office could just take it as part of the restitution. The Petitioner's family could raise money but not enough to fully exhaust the resources needed to prove factual innocence. That is why Petitioner is asking for a computer forensic expert, to ask for the Court to consider a CJA Voucher to pay for the expert, so that the Petitioner has a due diligence opportunity to prove factual innocence despite being unable to afford such forensic examination needed to prove innocence to the fullest extent. See United States v. Zuno-Arce, 25 F. Supp. 2d 1087, 1099-1102 (C.D. Cal. 1998) "(*finding that while petitioner failed to establish colorable showing of innocence, the court nevertheless "extends the miscarriage of justice gateway as a means of considering evidence and constitutional claims otherwise procedurally barred by the AEDPA's statute of limitations" because "foreclosing a claim of constitutional violation where there has been a colorable showing of factual innocence would likely constitute a due process violation or an improper suspension of habeas corpus relief"), aff'd, 209 F.3d 1095 (9th Cir. 2000), amended, 245 F.3d 1108 (9th Cir.), mandate stayed, 271 F.3d 953 (9th Cir. 2001)*". **Petitioner again has demonstrated a colorable showing of factual innocence.** For Petitioner to have given an (1) <u>false confession.</u> (2) That Petitioner's <u>false guilty plea was caused by ineffective counsel</u> so severe that he would have faced up to 20 years in federal prison had he not taken the guilty

33

plea thus the Petitioner had good reason to falsely plead guilty. (3) That there was no proven child pornography to have been found and verified. The PSI report contradicts the claims of Detective Robert Bridge. They didn't actually prove that child pornography had existed to have warranted the criminal charge. They had mainly relied on Petitioner's false confession and shown random keyword names but didn't specify which file, directory, or registry it may have been found in. The entire forensic report is shoddy and does not show the existence of computer viruses and malware or even rootkits when the claims of Petitioner says otherwise. Anybody with P2P file sharing software had viruses and spyware. Anybody using the internet period or even using pirated software has computer viruses and malware. Computers that do not have security software updated have a higher risk of getting computer viruses and hacker attacks than those that do have totally updated security settings. "Files of interest" are not verified to being of actual child pornography. If there is no actual child pornography then there is no guilt at all. When Petitioner's confession statements do not match the shoddy forensics and are contradictory then the confession is false due to Petitioner's Autism Spectrum Disorder and Type 1 Brittle Diabetes. Being questioned around lunch time is not the right step to take under the Americans with Disabilities Act, Title II. Petitioner has clearly demonstrated enough facts of innocence to warrant an evidentiary hearing to compel the Government under the Criminal Justice Act ("CJA") 21 Voucher to pay for expert witnesses to demonstrate that Petitioner is factually innocent. For

34

arguments sake, guilty people can usually put child pornography in encrypted containers, but for the Petitioner to have no child pornography in his encrypted DVD discs and is willing to disclose the password to an independent expert to open up the encrypted DVD discs seized by Mayodan Police Department, the Petitioner is willing to prove before the Habeas Court that his encrypted DVD discs contain no child pornography. For the Petitioner to have prior encrypted discs and encryption software prior to being framed with child porn, for the encrypted DVD discs to be totally clean of child pornography demonstrates that all of the alleged material seems to stem from non-encrypted locations thus any files can easily be hacked, planted, deleted, tampered with, modified, and rewritten. It doesn't make sense for a guilty criminal Defendant that has encryption to not use it for illegal activities. For an innocent person there is a different story. For the alleged child pornography to have been claimed to have been found in non-encrypted locations where a password is not needed to modify, access, delete, or add computer data, it was as if the alleged suspected child pornography was meant to be found by the law enforcement, as the whole story is too convenient which normally happens in frame up cases. When somebody is set up with a murder, drugs, or child porn, or anything for that matter, the story will sound too perfect and there will usually be contradictions by the law enforcement officers. That is when activities which are normally performed by the law enforcement officers may not usually be in those instances of frame ups. Petitioner has demonstrated enough factual reasons and excusable

35

circumstances to warrant tolling of the statute of limitations to let Petitioner demonstrate factual innocence at the evidentiary hearing.

9. **Plaintiff's Objection #9 to Document #141, Pages 6 to 7 of 14: Paragraph 9.**

*"Petitioner attempts to avoid the one-year limitation by making one of his claims under 28 U.S.C. § 2255(f)(4), claiming actual innocence and newly discovered evidence. [DE #125, 4]. However, Petitioner never cites what his newly discovered evidence is, and what he does cite is either not newly discovered or not evidence, as further discussed below. What Petitioner claims is newly discovered evidence is at most merely new to him: the contents of his criminal discovery file previously provided by the government and more recently obtained by Petitioner through a FOIA request. Petitioner states this as follows: "Also new evidence has been discovered since then. I had filed a Freedom of Information Act ("FOIA") request with the Executive Office for U.S. Attorneys ("EOUSA") concerning my criminal case discovery evidence since Mr. Coalter refused to give me my discovery, has threatened to possibly destroy the evidence, and Mr. Coalter has admitted to being in conflict of interest of me wanting to prove my actual innocence so he is working against me." DE # 125, 10."* Again, the Government along with Mr. Coalter, regardless of whether there may be some sort of conspiracy or not, have both blocked the Petitioner from the very discovery evidence that would prove Petitioner's innocence by showing the contradictions, the false confession, the fact that there were no thumbnails (meaning no thumbnails at all, not even blurred thumbnails) when thumbnails

36

would have proved that there was actual child pornography. Mr. Coalter did allow the entire discovery (*except for hearing the confession Audio CD*) to be looked at only on January 22, 2015 after the conviction, pursuant to Petitioner's legal request in writing. In child pornography cases, usually the Government has to show that the criminal Defendant did have child pornography, that he/she did put it there, and that the images and/or videos were confirmed to be of actual child pornography in violation of the statute. When there is a fraudulent criminal case against an innocent man, it isn't just that the evidence wasn't sufficient, it was that the entire criminal indictment was based upon a falsehood, that there was actually no confirmed child pornography found on Petitioner's computer. No child porn, no guilt. What Detective Robert Bridge stated in his Search Warrant Affidavit (See Document #84-2) of alleged child pornography files he claimed were downloaded from Petitioner's IP Address 24.148.156.211 was never verified to have been found on Petitioner's desktop computer, and nobody at the SBI and neither of the State Crime Laboratory wants to even confirm that? Why? Is it that Detective Bridge may have lied and that they cannot confirm Bridge's claim of the very eMule downloaded videos that his Affidavit stated that he suspected Petitioner may have downloaded to the computer in question? That is what a frame up looks like. They only wanted to get that indictment as the excuse to force the Petitioner into a false guilty plea. Why is the U.S. Attorney Office refusing to even disclose a copy of the State Bureau of Investigation report and the [false] confession audio recording to the Petitioner

37

upon his FOIA request dated August 29, 2016 and the response from the EOUSA was on February 16, 2017? The fact of innocence and that it was newly discovery evidence, that it is prosecutorial misconduct, is the fact that the Government does not want the Petitioner to prove actual innocence. They have a lust for power to keep the Petitioner on the sex offender registry and ruin his life, as they do with all the other wrongful convictions that may have happened in the Middle District of North Carolina. They don't want Petitioner to be found innocent, they do not want the Petitioner to get access to the very discovery evidence material that would show that the Petitioner is innocent, that no actual child pornography was ever confirmed to being on Petitioner's computer and there is no information regarding which directory the files were found in. The SBI Case file report shows "images of interest", "videos of interest", "files of interests" and random keywords that they claim were found. The FBI would have done everything they could to professionally prove each criminal defendant to being guilty. The SBI did not do anything to actually prove child pornography files, and verify that each image and video was of actual children being sexually abused or having any kind of sexual behavior and/or posing nude in lewd acts as what would be correctly construed as child pornography. It was all concocted by a corrupt Police Department and the questionable State Bureau of Investigation that has a history of manufacturing evidence such as for example: *in the case of Dr. Kirk Turner which his Attorney claimed the case file was changed secretly without going through the proper channels thus he was found innocent.* If they

38

are not willing to prove and verify that every claimed "image of interest", "video of interest", "file of interests" is of actual child pornography then the Petitioner is not guilty at all and the entire Court and the Grand Jury may have accepted false evidence or manufactured evidence to ruin the life of USWGO Alternative News founder Brian D. Hill aka the Petitioner. The FOIA request was meant to get access to the entire discovery to prove actual innocence. The Justice Department knew that Petitioner's FOIA request was specifically meant to get the entire criminal case discovery material to prove actual innocence, especially since John Scott Coalter threatened that he may destroy the discovery evidence material. It is newly discovered evidence because the INTENT of the Government is to forever prevent the Petitioner from proving actual innocence, to cover up, destroy, or conceal any evidence that even remotely points towards Petitioner's actual innocence. Normally corrupt and vicious federal or state prosecutors will cover up or conceal any discovery evidence material in criminal cases if they fear that such evidence may prove their case to be fraudulent and may convict an innocent man or woman. The whole purpose of a District Attorney, a U.S. Attorney is to win their cases at any or all costs. Their job is to WIN, their job is to convict every single person that they charge. If a prosecutor decides to destroy, conceal, or cover up any such material that points to the actual innocence of a criminal defendant, then that is newly discovered evidence depending on when the potential cover up, concealment, or destruction of certain specific discovery material was known.

39

10. **Plaintiff's Objection #10 to Document #141, Page 7 of 14: Paragraph 9.**

*"Petitioner further expounds on this, that his FOIA request does not contain evidence of innocence, but rather demonstrates an absence of evidence Petitioner believes the government possessed and withheld: "I feel that the U.S. Attorney knew of any facts of possible factual innocence but they have either ignored it, lied about it, or got rid of any evidence records, papers, or things that can help to prove any facts of my actual innocence. If the U.S. Attorney perpetuated a fraud among the Court, then I have a right to investigate if that is indeed the case, and as to why." DE #125, 11."* It is all about INTENT. The job of the Prosecutor in criminal cases is to WIN every single case, regardless of whether the person is innocent or guilty. They do not want to look weak in their position in a particular criminal case because of the "tough on crime" political campaigns to bust those that may be committing crimes to be tough on crime to scare law breakers into not breaking the law. However hundreds to possibly thousands of innocent people were found innocent thanks to the Innocence Project. Prosecutors convicted those innocent people even though they were innocent. The Prosecutor's job is to win every case they try in Court. If evidence does not point to guilt but points towards innocence then usually the Prosecutor would like to cover up, destroy, or conceal such evidence because it would counter their productivity in convicting people. The FBI does not seem to want to investigate this withholding of evidence, not even the Office of the Inspector General. They are letting the Government destroy, conceal, or cover up evidence

40

thus creating a miscarriage of justice forcing an innocent man to register and reregister as a sexual offender on the Sex Offender Registry for a crime that he did not commit because he isn't allowed full access to the very evidence that would prove his innocence. A.U.S.A. Anand Prakash Ramaswamy knows that Petitioner had filed multiple complaints against him due to his past pro se filings, and of course he would be biased and may retaliate against the Petitioner because of the anger and frustration towards the idea of the Petitioner wanting a counter investigation into the U.S. Attorney, the SBI, and the Mayodan Police. Petitioner's whole family (According to **Exhibit 2 attached thereto**) had seen the discovery material and it could have been used to have the Petitioner found innocent by a Jury. Placke and Coalter were such ineffective lawyers that none of them noticed the dates, none of them noticed Petitioner's false confession, and that neither one of them let the Petitioner review over the entire discovery material of the criminal case prior to the final conviction. That itself is a miscarriage of justice not letting an innocent man prove his own innocence.

11. **Plaintiff's Objection #11 to Document #141, Pages 7 to 8 of 14: Paragraph 9.** "*The contents of Petitioner's 2013 criminal discovery file cannot said to be newly discovered evidence, having previously been provided to the attorneys who represented Petitioner*, as he admits ("The Defendant *didn't get to review over the rest of all of the discovery material for the criminal case until January 22, 2015* at the office of John Scott Coalter (court appointed lawyer)." DE #125, 10)." ". . .Further, Petitioner's characterization of potential items he believes

41

*may show his evidence, now missing, does not constitute newly discovered evidence, but is a mere conclusory claim unsupported by the record.*" Then A.U.S.A. Ramaswamy just acknowledged Petitioner's claim to not being able to review over the entire criminal case discovery material prior to his false guilty plea. Placke is such a liar when he said that Petitioner and Mr. Placke would go over the discovery together. A false guilty plea manufactured by ineffective counsel. Anyways, the "newly discovery evidence" is about the INTENT of the U.S. Attorney office. Yes, the discovery material itself is not newly discovered evidence, but the Government was trying to lie or deceive the Federal Court in Danville, Virginia, that there is no other FOIA requested discovery material withheld in full, so therefore it is newly discovered. It is the fact that a portion of all material received pursuant to Petitioner's FOIA request was of the discovery material that the Federal Prosecutor had originally used in the prosecution of Brian David Hill. The fact that the U.S. Attorney Office does not wish to allow the Petitioner to review over all discovery material again since January 22, 2015, is their oppressive and tyrannical means to prevent their victim of malicious prosecution from proving actual innocence. The secret withholding of discovery material and not simply explain at the beginning to the Executive Office for U.S. Attorneys ("EOUSA") that the SBI case file and confession audio was either destroyed or transferred back to the local law enforcement agencies while they retain the Mayodan Police Report which is not destroyed and neither returned back to Mayodan, it is the INTENT that the U.S. Attorney Office is blocking the

42

Petitioner in 2016 from access to the very evidence to prove factual innocence. Intent, Intent, it is all about the intent as to why the EOUSA did not disclose any information as to why the Petitioner did not receive a copy of the SBI case file and [false] confession audio CD disc as per his FOIA request. Again, the U.S. Attorney office has no interest of justice when they only care about winning their cases and convicting innocent people in the process. The reason his claims are "unsupported by the record" is because he didn't file over 1,000 pages and evidence DVD discs that were originally used in the Petition's FOIA lawsuit in Virginia. Does A.U.S.A. Ramaswamy want the Petitioner to file over 1,000 pages of the very evidence used in his FOIA lawsuit filings to satisfy the record? Petitioner doesn't have the money and resources to file over 1,000 pages with the Clerk to support his claim of the FOIA lawsuit on the criminal court case record and neither would the Judges want the Petitioner to refile over 1,000 pages and all of the discs of evidence material used originally in the FOIA lawsuit in a Federal Court in the Western District of Virginia. The Petitioner correctly cited the civil case number, where the documents and records can be located. What A.U.S.A. Ramaswamy is stating is madness, like he expects the Petitioner to file over 1,000 pages and all of the original discs from the Western District of Virginia to support Petitioner's claim on the record in this case. As long as Petitioner gives the correct document number, case number, which U.S. District Court the record is located in, and the case name, the Judge of the Habeas Court can access the record of Petitioner's FOIA case without the

43

Petitioner having to refile all of the evidence in the Middle District of North Carolina to substantiate Petitioner's claims on the record.

12. **Plaintiff's Objection #12 to Document #141, Page 8 of 14: Paragraph 10.**

"*Moreover, Petitioner's assertion of actual innocence is in direct contradiction to his admissions to the offense conduct as documented on two separate occasions: One is seen in his interview related to the Presentence Report. [DE #33 (PSR) ¶ 15, dated June 17, 2014].*" That guilty plea was entirely caused by ineffective assistance of Counsel. If Counsel had brought up Petitioner's false confession and proven his confession to be false thus is a false admission of guilt then Petitioner would not have plead guilty as the end result would be different, since innocent people do confess to crimes that they did not do as exhibited by the Innocence Project. There are even innocent people that falsely plead guilty, usually due to the promise of a lenient prison sentence in exchange for the plea when given ineffective assistance of Counsel so severe that the Counsel does not wish to prove innocence but only make a plea bargain with the Government. Anybody with deteriorating health when the jails are not taking good care of a criminal Defendant's own health, anybody with severe ineffective counsel would have just taken the guilty plea because fighting without a lawyer is usually a guilty verdict as a lawyer would be a better debater and have the evidence to back it up to compel a Jury to find a criminal defendant not guilty. See case law of *Brennon Kyle Holley v. United States, 11th Circuit U.S. Court of Appeals, No. 16-17390, Decided: December 20, 2017, citing that "Accordingly,*

44

we conclude that the _district court violated Clisby when it did not address_ _Holley's claim that plea counsel provided ineffective assistance by unreasonably_ _advising him that he would likely be sentenced to at least 25 years in prison if he_ _went to trial. We therefore vacate the district court's judgment without prejudice_ _and remand for consideration of this claim. See Rhode, 583 F.3d 1292; Clisby,_ _960 F.2d at 938._ We decline to consider the other arguments Holley presents on appeal and instead leave these matters to be addressed, as appropriate, following the district court's disposition of Holley's remaining claim. See Clisby, 960 F.2d at 936 _("Policy considerations clearly favor the contemporaneous_ _consideration of allegations of constitutional violations grounded in the same_ _factual basis . ")._ That Appellate case also said that _"An evidentiary hearing_ _was held on May 11, 2016. Plea counsel was the only witness to testify. Counsel_ _testified that he discussed with Holley the evidence, the elements of the offense,_ _and any potential defenses, but that he advised Holley to plead guilty because he_ _believed that Holley was likely to lose at trial."_ Because Mr. Placke never let Petitioner review over the entire discovery evidence and never let the Petitioner review over the SBI forensic case file, this left a major deficiency in the Petitioner pleading guilty without even understanding all of the evidence that the Government may use at trial against the Petitioner. Mr. Placke never held a defense strategy meeting, and never discussed any potential defenses when the entire 2255 had demonstrated that Petitioner could have had a very good chance at being found not guilty under the affirmative defense of frame up. There was

45

sufficient evidence on the record proving that Counsel was deficient before the "guilty plea" at the change of plea hearing. The Transcript of pretrial status conference hearing on June 4, 2014, on the record in this criminal case, shows that Counsel was deficient six (6) days prior to Petitioner's false guilty plea. Petitioner said at that hearing, citing Document #131, Pages 65 and 66 of 101, which would normally be pages 10 and 11 of the June 4, 2014 transcript from the court reporter, Petitioner said in open court in a cry for help that "***I do want to say something. Eric Placke had plenty of time to get a basis. He has not done that. He has not -- if I had the evidence, I would give it to you, but he's not doing it.*** *He should have done that. If it had been the Rutherford Institute or the ACLU, they would have conducted a proper investigation with the FBI or DOJ or other private investigators. This man is not doing it. He's not doing what he is supposed to do to prove my innocence, and because of -- I mean, the evidence is clearly illegal, and it has to be proven. The only way it can be proven is with a proper investigation. There has not been a proper investigation.*" The record itself from that one hearing, six (6) days before the change of plea to guilty, Counsel was allowed to stay in Petitioner's case because Mr. Placke had deceived and misled Judge N. Carlton Tilley Jr. that Petitioner had no basis to suppress his false confession and had no basis to suppress anything. The 2255 brief, Affidavits/Declarations from family, and all other evidence that is part of the entire 2255 motion is the basis that Mr. Placke refused to present. Mr. Placke misled the Court into believing that Petitioner had

46

no basis which caused him enough anger to say "this is a kangaroo court, your honor". It wasn't the court that was kangaroo all due respect, it was MR. PLACKE that was kangaroo because he lied to the Judges and made all Judges believe that Petitioner was guilty, that his confession was somehow genuine, and that Petitioner had no evidential basis to suppress any evidence. The false confession could have been suppressed or used as a reasonable doubt alone. A computer forensic expert and the bazaar claim by Special Agent Rodney V. White would be a second reasonable doubt. All it takes is at least one reasonable doubt to compel a Jury to find the Petitioner not guilty and thus would not have been put in the situation to take the guilty plea agreement. That was why Petitioner had raised ineffective assistance of Counsel on "GROUND TWO" because the Petitioner would also need that as well to demonstrate actual innocence by showing that Counsel was constitutionally deficient prior to Petitioner's false guilty plea. Petitioner had already explained in paragraph ¶ 5 of Petitioner's Document #125, "2255 motion", that "*I falsely plead guilty because of ineffective Counsel and deteriorating health. See Brief/Memorandum in attachment to this Motion for more information.*" Petitioner has given good reason for his false guilty plea, that Jail was not a good place for Petitioner's type one (1) brittle diabetes, had included medical records as proof in one of the Exhibits included as part of Petitioner's 2255 brief. Petitioner had no means to prove his innocence other than relying on only his ineffective counsel to do anything for the Petitioner. His counsel failed him in proving his false

47

confession. His Counsel failed him in presenting any other appropriate evidence that would have led to a non-guilty acquittal verdict. It was new evidence that the family discovered in 2017 regarding Mr. Placke deleting email attachments sent from his family concerning evidence.

13. **Plaintiff's Objection #13 to Document #141, Page 8 of 14: Paragraph 10.** *". . .The second would not ordinarily be before this Court, but Petitioner has taken the unusual steps of obtaining his criminal discovery file and then publicly filing some of those documents, without seeking to have them under seal as Petitioner did for other documents. The following appears in DE #132 on pages 7-8, which is a scanned image of a North Carolina State Bureau of Investigation file identical to that provided by the government in discovery with the exception of two redactions apparently made by Petitioner. . ."* Whoa! Whoa! Whoa! Wait a minute. The Respondent A.U.S.A. Ramaswamy had cited the wrong name of the law enforcement document. Again he said that ". . .The following appears in <u>DE #132 on pages 7-8</u>, which is a <u>scanned image of a North Carolina State Bureau of Investigation</u> file identical to that provided by the government in discovery. . ." Is Ramaswamy in the wrong or did he just label the Mayodan Police investigation case supplemental report as a "State Bureau of Investigation file"? A.U.S.A. Ramaswamy's aka Respondent's claim as to "DE #132 on pages 7-8" is of 2 pages concerning the "CASE SUPPLEMENTAL REPORT" of the Mayodan Police Department is not of the State Bureau of Investigation but is of the [false] confession of Brian David Hill. The document proves that Petitioner

48

was questioned around "08/29/2012 11:23:00, Wednesday" in the morning that is around Petitioner's lunch time and the interview that became an interrogation was concluded at around "12:21 PM". So Petitioner was not given lunch or any meals, even though he is brittle type 1 diabetic, until after he was interviewed then interrogated to falsely admit to guilt. Petitioner was in the right for filing the 2 pages with the appropriate redactions as it proves that Petitioner was questioned around lunch time and was questioned alone which contradicts the Americans with Disabilities Act ("ADA") Title II legal protections regarding people with disabilities. They wanted a false confession and they had got it. It is interesting that Ramaswamy would admit to the ". . .scanned image of a North Carolina State Bureau of Investigation file identical to that provided by the government in discovery. . ." when Cheryl Thornton Sloan had two witnesses claimed under Oath with a Declaration from Princina Stone and Carolyn Loye in Petitioner's FOIA case in their "brief / memorandum in support" for Government's "motion for summary judgment" (See Document #49 of case: Hill v. Executive Office for U.S. Attorneys et al, Western District of Virginia, case no. 4:17-cv-27, 2017-2018 ongoing) that the prosecution case files that were copied and released to Petitioner by EOUSA in response to Petitioner's FOIA request which did not include the State Bureau of Investigation" case file, and said under Oath that what they had received was all there was which satisfied their obligations under the Freedom of Information Act by finding responsive records. If he means the ". . .scanned image of a North Carolina State

49

Bureau of Investigation file. . ." I believe he may be referring to two photographs leaked by the hacker group named collectively as "Anonymous" of the State Bureau of Investigation case file (See Document #2-5 of case: Hill v. Executive Office for U.S. Attorneys et al, Western District of Virginia, case no. 4:17-cv-27, 2017-2018 ongoing) that was previously used in the federal prosecution by A.U.S.A. Ramaswamy in the prosecution against Petitioner. Document #2-5 of the FOIA lawsuit and complaint may be of a black and white image instead of it being filed in color, it does show a "SBI case file" and that the name on the document happens to say "AUSA A. Ramaswamy" or "AUSA P. Ramaswamy". Either way, the hackers didn't actually leak a "scanned" document of the State Bureau of Investigation but it appears to be grainy photographs, but nonetheless reveals the download dates between July 20, 2012, and July 28, 2013". Nice slip up A.U.S.A. Ramaswamy, now I understand one of the reasons why Ramaswamy seems so frustrated with trying to dismiss Petitioner's 2255.

14. **Plaintiff's Objection #14 to Document #141, Page 10 of 14: Paragraph 10.**

*"Petitioner attempts to explain this exchange as follows: "Defendant exhibited a sophisticated form of echolalia which means he repeated what was already described to him by Police." [DE #125, 4]. A sealed report of forensic evaluation contains a single mention of Petitioner and echolalia, from a much-earlier evaluation. [DE #17 at 7, "Collateral Sources Account"]. Echolalia is "[t]he pathological, parrotlike, and apparently senseless repetition (echoing) of*

*a word or phrase just spoken by another person." Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV-TR) (Glossary). The dialogue quoted above demonstrates a series of questions and cogent answers, and in no way demonstrates echolalia.*" That is not true, as A.U.S.A Ramaswamy is not a forensic psychologist, he is not an expert in Autism Spectrum Disorder, and neither does he have a degree to make such claims without objection. So Petitioner objects to this claim. Petitioner forgot to mention that his echolalia was "delayed echolalia" and apologizes to the Court for not mentioning that he had exhibited a form of "delayed echolalia." So Petitioner did exhibit a sophisticated form of echolalia but what Petitioner had meant and what Dennis Debbaudt had meant was "delayed echolalia". There are two types of echolalia which is, immediate echolalia and delayed echolalia. There are government and non-government research reports and studies on Autistic people repeating things under delayed echolalia. Citing research and scholarly reports: **(1)** ANALYSIS OF FUNCTIONS OF DELAYED ECHOLALIA IN AUTISTIC CHILDREN, Journal of Speech and Hearing Research, Volume 27, 183-192, June 1984, by Barry Prizant and Patrick Rydell, that "*This study was a preliminary attempt to determine how autistic children used delayed echolalia in naturalistic interactions with familiar people. Fourteen functional categories of delayed echolalia were derived based on videotape analyses of linguistic, extralinguistic, and paralinguistic features. Individual differences in functional usage were apparent across the three*

51

*subjects. Delayed echolalia was found to vary along the dimensions of interactiveness, comprehension of the utterance produced, and relevance to linguistic or situational context. The diversity of delayed echolalic be behavior is discussed in reference to its conventionality, the presence or absence of communicative intent, and its status as symbolic communicative activity.*" Furthermore this study back in 1984, which such research material further backs the statements of expert witness Dennis Debbaudt (See Document #132, Pages 9 to 12 of 103) stated in the 1984 report that "*Delayed echolalia refers to utterances repeated at a significantly later time. Problems concerning definitional criteria for echolalic behaviors are abundant. Such problems are most apparent when considering the dimensions of exactness of repetition, degree of comprehension of the utterance repeated, and the presence or absence of communicative intent underlying the production of echoic utterances.*" The Petitioner agrees to submit a copy of that full research report document to the Court (**Exhibit 3**) to validate this research. That report is also indexed by the U.S. National Library of Medicine, National Institutes of Health, PMID: 6738028, J Speech Hear Res. 1984 Jun;27(2):183-92. **(2)** Also citing the "Indiana Resource Center for Autism" (The Trustees of Indiana University, 1905 North Range Road, Bloomington, IN 47408-9801, Phone #: (812) 855-6508, Fax #: (812) 855-9630) research article titled the "Functional Categories of Delayed Echolalia" Contributed by Beverly Vicker, stated in their research report that "<u>*Delayed echolalia is the repetition of verbal messages that were*</u>

52

*previously heard and which are repeated after a time delay of a few minutes,*
*hours, days, weeks, months, or years.* *It is sometimes more difficult to recognize*
*delayed echolalia since the listener (the one to whom an interactive delayed*
*echolalic message is directed) may not have been present when the original*
*utterance or model message was uttered or, if present, the person may have*
*forgotten. Unless the echoed message is significantly different in vocabulary,*
*syntax, and message sophistication than the echolalic speaker's creative*
*spontaneous speech, the naive listener may not recognize an utterance as*
*echolalic. This may be particularly true of situations when the echoed message*
*is dialogue that seems to fit a current moment or situation. The dialogue,*
*however, may reflect experienced or overheard conversations or may represent*
*dialogue heard from TV shows, videos, or read books. Not all repetitions fit a*
*situation. Many utterances are clearly recognized as possible echolalia since the*
*comment or phrase **would never be uttered by a person familiar with that***
***social/language culture**. Other more clearly marked examples of delayed*
*echolalia include the use of commercials and song lyrics within what may*
*initially appear to be bizarre usage*." If the Habeas Court also wants this
research further exhibited into underlined(expanding the record), then the Court may request
that either party file such report in its entirety as evidence to support such claims
on the record. Respondent has also failed to demonstrate their claim that
Petitioner did not exhibit echolalia which would sink Petitioner's claim that he
exhibited a sophisticated form of echolalia that helped to create Petitioner's false

confession. Petitioner did exhibit echolalia in regards to his false confession but forgot to mention that it was "delayed echolalia". Maybe A.U.S.A. Ramaswamy had meant immediate echolalia but misunderstood that there are two forms of echolalia.

15. **Plaintiff's Objection #15 to Document #141, Page 11 of 14: Paragraph 12.**

*"Here, Petitioner has failed to meet that burden.* <u>*Petitioner's admissions to the offense conduct cited above, as well as his plea of guilty to the offense,*</u> *are* <u>*strong evidence contradicting his subsequent claims of actual innocence.*</u> *He has not presented evidence of actual innocence, but rather provided voluminous irrelevant and disparate documents that in no way constitute newly discovered evidence of actual innocence. That, coupled with his prior detailed admissions to the offense conduct, wholly contradict his belated claims of actual innocence."* This shows that Respondent has ignored or fails to object to all evidence filed concerning Petitioner's actual innocence. The Respondent cannot just simply dismiss all 53 Exhibits, the brief / memorandum in support of Petitioner's 2255 motion, all five (5) Additional Evidence Declarations, other evidence as *"voluminous irrelevant and disparate documents that in no way constitute newly discovered evidence of actual innocence"*. They are relevant to actual innocence. The Respondent needs to object to all of Petitioner's facts of actual innocence before the Petitioner's actual innocence claims can be considered meritless, irrelevant and even considered worthy of being dismissed as time barred. As long as Petitioner has given good excusable reasons why such

2255 motion was filed untimely and demonstrates a colorable showing of actual innocence, the Petitioner must be allowed an evidentiary hearing to demonstrate to the Habeas Court that Petitioner is factually innocent as what was claimed throughout this entire criminal case and based upon what was claimed in the Petitioner's 2255 Motion, brief / memorandum in support of Petitioner's 2255 motion, the five Additional Evidence declarations filed by Petitioner, and based upon all 53 Exhibits attached to Petitioner's 2255 brief. Demonstrating: (1) false confession. (2) That the guilty plea was false and entirely caused by ineffective assistance of counsel and deteriorating health (*Unconstitutional under 8th Amendment's ban on cruel and unusual punishment*) which is unconstitutional under the sixth (6th) Amendment right to effective assistance of Counsel thus making Petitioner's false guilty plea as unconstitutional as being deprived an evidentiary hearing due to the statute of limitations according to AEDPA which would be a miscarriage of justice to deny an innocent person a right to demonstrate actual innocence to warrant vacating Petitioner's entire criminal conviction and sentence. (3) That the Government has not proven that a single alleged child pornography image/video was confirmed to as being such and has not shown that any such confirmed images/videos was verified as to have been found on Petitioner's computer other than simply stating that it was a "file of interest" or "video of interest" or "image of interest". That the Government had not demonstrated in which file directory and file date/time stamp of each such material which constitutes child pornography. The Government has to show that

55

Petitioner did indeed possess confirmed child pornography and that the Petitioner had placed such material on his computer or property to constitute that he intended to knowingly possess such material in violation of federal law. That his computer was hacked into and/or the evidence was tampered with due to the blatant admission by Special Agent Rodney V. White of the North Carolina State Bureau of Investigation that "*From this analysis, 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013*". That laptop was seized on August 28, 2012. So Petitioner's laptop must have been hacked to provoke the response from law enforcement to raid the home of Petitioner and his mother Roberta Hill, then the files continue to download while in the custody of Mayodan police Department and the State Bureau of Investigation for eleven (11) months all the way up until July 28, 2013, which matches the statement from the threatening email from tormail.org (See Document #30, Page 3 of 5, the threatening email from tormail.org from johnsnatchz@tormail.org, dated April 7, 2013). All Petitioner needs at this point is a computer forensic expert to be paid for by a CJA 21 voucher and he can finally show enough of factual innocence to warrant vacatur of the Judgment against the Petitioner and fully vacate Petitioner's sentence. By proving Petitioner's confession to being false and caused by delayed echolalia caused by Petitioner's Autism Spectrum Disorder, that "guilty admission" is not "strong evidence" contradicting Petitioner's claim of actual innocence. Because Petitioner's false guilty plea was caused by both ineffective assistance of

56

Counsel and health deterioration while in imprisonment, that Counsel was severely deficient that: (1) Placke had no defense prepared. (2) Placke lied to the Federal Judge at the status conference on June 4, 2014, that the Petitioner had no evidential basis to suppress any evidence at all. (3) Placke could have shown the Jury that Petitioner had given a false confession on August 29, 2012, contributed in part due to "delayed echolalia" caused by Petitioner's Autism Spectrum Disorder and by coercion and threat by Chief of Police Charles J. Caruso. (4) Placke could have shown the Jury the download date claim by Special Agent Rodney V. White. (5) Placke could have shown the threatening emails from tormail.org. (6) Placke could have compelled Luke Rudkowski, Susan Basko, Stewart Rhodes, Alex Jones, and Aaron Dykes plus Melissa Melton (now Melissa Dykes) to all testify as to the tormail.org child porn set up scheme and how any or all of them were connected to the Petitioner. (7) Placke could have caused a petit Jury to find the Petitioner not guilty and thus a plea agreement never would have been necessary to the extent which is being used against him by the Respondent.

16. **Plaintiff's Objection #16 to Document #141, Page 11 to 12 of 14: Paragraph 13.** *"Petitioner's additional grounds for relief -- Petitioner cites three additional grounds for relief: ineffective assistance of counsel; deprivation of due process rights by denial of access to discovery; and prosecutorial misconduct. [DE #125]. Petitioner's claims here are simply time-barred, and not subject to the potential exception of 18 U.S.C. § 2255(f)(4), for claims of newly discovered*

*evidence. On Form AO 243 ¶ 18, asking for explanation of why the one-year bar on § 2255 does not bar Petitioner's motion, Petitioner answers as follows: "Because actual innocence and my Constitutional rights should not be barred by statute....Since ineffective Counsel can arubly (sic) be raised, then why not all Constitutional grounds since I have been deprived of all Constitutional rights that an Article III Court is supposed to guarantee all criminal Defendants accused of serious crimes." DE #125, 10. . ."* and *"This reply rejects statutory limitations altogether, and Petitioner offers no legal basis why his three remaining claims are not time-barred. As with the first grounds claimed by Petitioner, the three other grounds are baseless and his Petition should be dismissed."* Constitutional claims can be reviewed upon by the showing of actual innocence otherwise denying such review of the evidence would be a miscarriage of justice. The "GROUND TWO: Ineffective Assistance of Counsel" claim isn't time barred for a reason, because it allows the Petitioner to further demonstrate "Actual Innocence" (GROUND ONE) by changing the plea back to not-guilty and Constitutionally invalidates Petitioner's guilty plea as his guilty plea was false due to ineffective assistance of Counsel and deteriorating health while imprisoned in Federal Custody prior to being placed on Supervised Release. So the time bar aka the statute of limitations does not prohibit bringing up "ineffective assistance of counsel" as a gateway claim for actual innocence by proving that the false guilty plea of Petitioner would not have taken place had Counsel been effective and not Constitutionally deficient to the extent where

58

Petitioner had no choice but to falsely take the guilty plea or face harsh imprisonment of up to twenty (20) years. Even if Respondent is correct that ineffective assistance of counsel is time barred as a ground itself from the 2255 when statutes such as AEDPA and its statute of limitations CANNOT and SHOULD NOT override the Constitution of the United States, ineffective assistance of counsel ground is needed for actual innocence to prove that the guilty plea is not legally valid and not Constitutionally valid as such guilty plea violates the Sixth Amendment of the U.S. Constitution. See <u>United States v.</u> <u>Gonzalez, U.S. Court of Appeals for the First Circuit, No. 99-1179, Decided:</u> <u>January 24, 2000</u>, citing case text covering "Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *In the plea context, a defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial*." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); see also Isom, 85 F.3d at 837 (same); Knight v. United States, 37 F.3d 769, 774 (1st Cir.1994)." Prosecutorial misconduct is newly discovered evidence because such prosecutorial misconduct in response to Petitioner's FOIA request could not have been previously discovered at an earlier time. Actions speak louder than words. The INTENT of the U.S. Attorney Office and fighting the Petitioner tooth and nail in his FOIA lawsuit in Danville, Virginia, further characterizes that the U.S. Attorney will never let the Petitioner prove his actual innocence. Then of course the "GROUND THREE: Deprivation of due process rights as

59

guaranteed by the Fourteenth Amendment. Deprivation of due process discovery rights" should also not be time barred as innocent man Brian David Hill aka the Petitioner in his 2255 case falsely plead guilty because of not being allowed to review over all of the discovery material of what the Government had planned to use in the Jury Trial. Placke failed to review over all of the discovery material with the Petitioner prior to his change of plea to guilty. See Giglio v. United States, 405 U.S. 150 (1972); Napue v. Illinois, 360 U. S. 264 (1959), and Brady v. Maryland, 373 U. S. 83 (1963). Petitioner's right to review over all discovery material of his criminal case as guaranteed by the Fourteenth (14th) Amendment of the United States Constitution and the Sixth (6th) Amendment of the United States Constitution, but Placke and Coalter did not give the Petitioner the right to review over all discovery material prior to the guilty plea and final Judgment (Document #54) on November 12, 2014. Petitioner not being allowed to review over all discovery material with Mr. Placke prior to Petitioner's false guilty plea and not being allowed to review over all discovery material with Mr. Coalter (two defense Attorneys) prior to the sentencing constitutes a violation of due process and prevented a criminal defendant from being able to prove actual innocence and be found not guilty by a Jury over the affirmative defense of frame up.

## ADDITIONAL LEGAL ARGUMENTS
## AND CASE LAW IN FAVOR OF PETITIONER

17. See, e.g., Keeney v. Tamayo-Reyes, 504 U.S. 1, 12 (1992) ("Failure to develop a claim in state-court proceedings will be excused and a hearing mandated if [the petitioner] can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing."); McCleskey v. Zant, 499 U.S. 467, 495 (1991) (discussing the miscarriage of justice exception to the abuse-of-the-writ doctrine, and stating that the exception "serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty'" (quoting Stone v. Powell, 428 U.S. 465, 492-93 n.31 (1976))); Murray v. Carrier, 477 U.S. 478, 496 (1986) (even where the showing to excuse a procedural default cannot be made, the writ may be granted "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"); Kuhlmann, 477 U.S. at 454 (holding that the "ends of justice" exception to the general bar against successive petitions "requires federal courts to entertain such petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence"); see also Calderon v. Thompson, 523 U.S. 538 (1998) (holding that when a court of appeals recalls its mandate to revisit the merits of its earlier decision denying habeas corpus relief in a case not involving clerical error in judgment, fraud on the court, or a stay pending disposition of suggestion

61

for rehearing en banc, absent a <u>strong showing of actual innocence</u>, the state's interests in finality are all but paramount and outweigh the <u>prisoner's interest in obtaining another opportunity for review</u>).

18. Nickerson, slip op. at 12. See generally Coleman v. Thompson, 501 U.S. 722, 748-50 (1991) (holding that procedurally defaulted petitioner must show cause for the default and prej-udice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)); McCleskey v. Zant, 499 U.S. 467, 494-95 (1991) (holding that petitioner may be excepted from abuse-of-writ bar by establishing cause and prejudice, or by making a colorable claim of innocence).

19. **In support of Petitioner's withdrawal of guilty plea:** See United States v. Gonzalez, U.S. Court of Appeals for the First Circuit, No. 99-1179, Decided: January 24, 2000, citing case text covering "Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   <u>In the plea context, a defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."</u>  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985);  see also Isom, 85 F.3d at 837 (same);  Knight v. United States, 37 F.3d 769, 774 (1st Cir.1994)."

20. **In support of Petitioner's § 2255 motion ability to show actual innocence despite the statute of limitations:** In the Eleventh Circuit, a <u>showing of actual</u>

innocence "serves . . . to lift the procedural bar caused by [the movant's] failure timely to file his § 2255 motion." United States v. Montano, 398 F.3d 1276, 1284 (11th Cir. 2005).

21. Citing "BRIEF FOR RESPONDENT IN OPPOSITION": "DAN CARMICHAEL MCCARTHAN, PETITIONER v. JOSEPH C. COLLINS, CHIEF UNITED STATES PROBATION OFFICER FOR THE MIDDLE DISTRICT OF FLORIDA": In the Supreme Court of the United States, No. 17-85. The Supreme "*Court has recognized a narrow set of statutory claims based on intervening changes of judicial interpretation that are cognizable on collateral review in order to redress "a fundamental defect which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346 (citation omitted). In those "rare cases in which the Supreme Court has found postconviction 'miscarriages of justice' to have occurred, it has relied on the actual innocence of the petitioner." United States v. Foote, 784 F.3d 931, 940 (4th Cir.), cert. denied, 135 S. Ct. 2850 (2015); see Davis, 417 U.S. at 346 (" 'miscarriage of justice' " occurs where prisoner's "conviction and punishment are for an act that the law does not make criminal") (citation omitted). The courts of appeals that permit a prisoner to seek habeas relief based on an intervening statutory-interpretation decision have similarly allowed such relief under the theory that the prisoner was actually innocent of the underlying offense. See Hill, 836 F.3d at 594 ("[A] petitioner may test the legality of his detention under § 2241 through the § 2255(e) savings clause by showing that he*

63

is 'actually innocent.' ") (quoting *Wooten*, 677 F.3d at 307); see, e.g., *Stephens*, 464 F.3d at 898; *Jones*, 226 F.3d at 333 n.3, 334; *Barrett*, 178 F.3d at 48."

22. "The court observed that <u>"allowing a prisoner to use the saving clause to bring a statutory claim in a habeas petition circumvents the bar on successive"</u> motions under Section 2255, which must be premised on **claims of factual innocence** or particular new rules of constitutional law, id. at 25a (citing 28 U.S.C. 2255(h)); <u>"does away with the one-year statute of limitations"</u> for Section 2255 motions, id. at 25a-26a (citing 28 U.S.C. 2255(f )); and <u>"renders the process for obtaining permission to file a second or successive motion, and that for obtaining a certificate of appealability, a nullity,"</u> ibid. (citing 28 U.S.C. 2253(b) and (c)(1))."

23. Cited from somewhere: "*The Government is "not required to answer the motion unless a judge so orders." Rule 5(a), Rules Governing Section 2255 Proceedings. It is the judge who determines the date on which the answer is due. Rule 4(b), Rules Governing Section 2255 Proceedings. <u>Rule 5 of the Rules Governing Section 2255 Proceedings controls the answer's contents</u>, <u>and requires that the answer "address the allegations in the motion."</u> Rule 5(b), Rules Governing Section 2255 Proceedings. The answer must also state whether the movant "has used any other federal remedies, including any prior post-conviction motions," and whether the movant "received an evidentiary hearing." Id. Neither Rule 5, nor the Advisory Committee Notes, set out any further restrictions on the answer's contents. If the answer refers to "briefs or*

*transcripts of the prior proceedings that are not available in the court's records," the court "must order" the Government "to furnish them within a reasonable time that will not unduly delay the proceedings." Rule 5(c), Rules Governing Section 2255 Proceedings.*" <u>The Respondent did not address all allegations regarding the factual claim that Petitioner's confession is proven false due to the</u> **(#1)** [delayed] echolalia caused the Petitioner to repeat the terms "PTHC" and "PTSC" and those exact keyword terms was also mentioned in the search warrant Affidavit of Robert Bridge and those full terms were also mentioned in the Mayodan Police Report dated August 22, 2012, when the case originally started showing that they already knew those terms and what they had meant. Petitioner repeated what was mentioned in the search warrant and may also have overheard those same terms at the scene of the police raid since Petitioner was brought into the home alone to answer Detective Bridge's inquiry when he claimed "*. . .Brian, you have a lot of computers and CD's down here. You don't have to say anything, but you know what we are looking for. I don't want to take all this stuff if I don't have to. <u>I also don't want to damage it in the process</u>. So do you want to tell me what I should be focusing on, or do we just need to take everything we see?. . .*" which meant that Petitioner was also questioned on August 28, 2012, without any audio recording to show what the conversation had detailed. So the Petitioner also could have been told the same terms uttered by the Police Detectives as evident in the August 22, 2012 beginning the Police Report criminal investigation into the Hill residence. That

also would be construed as coercion as well saying by hinting that they may damage his stuff in the process if he doesn't tell them what they wanted to know. That is very coercive to a man with Autism Spectrum Disorder and Obsessive Compulsive Disorder that has a very strict protocol in hand washing and using GermX on his stuff and himself because of a severe Germ problem which becomes excessive and obsessive beyond rational thinking. For total strangers to touch his stuff and threaten that "*I also don't want to damage it in the process*" is very coercive to the least. So Petitioner was in such a position to where he can overhear any officer in close proximity to repeat those same terms used by the officers, and the Police Report mentioned both terms and was the exact same terms repeated by the Petitioner on August 29, 2012, no more and no less. He totally repeated those two terms and only those two terms. **(#2)** Petitioner did not go much into detail at all which would warrant a true familiarity with the alleged crime that Petitioner was accused of. He says "about a year or so" which doesn't even match the State Bureau of Investigation case file with the exception that the eMule download date was 11 months of that "year or so" while his seized Laptop was in the custody of law enforcement. The search warrant and police report does not mention of suspected alleged child porn download more than 7 or 8 days. Petitioner gave the password and username to his IRC chat and email account but none of those proved the Detective's claims. Yes, Petitioner had received multiple tormail.org messages at his admin@uswgo.com email account in 2013; it did not prove the Detectives

66

claims or allegations as to whether Petitioner knew that child pornography had ever existed on his computer prior to the police raid. Petitioner did not give the details necessary to prove that his confession was indeed genuine and proved that he knew what was on his computer and that he gave his confession as honestly and accurately as he could to show that his confession proved his guilt. The 12 to 13 year old confession statement argument doesn't even match the charge itself said that *". . .child pornography containing an image that <u>involved a prepubescent minor and a minor who had not yet attained 12 years of age</u>. . ."* which contradicts that confession statement. The SBI case file shows keywords of different age numbers and doesn't conform itself to only the age bracket mentioned in Petitioner's confession. Petitioner's confession doesn't sound reliable because it was all to make it appear that Petitioner gave a genuine confession at the surface but would not survive a cross examination and would not be proven credible as guilty admissions. Petitioner gave a false confession because of threat and coercion. Petitioner had demonstrated very well and in detailed explanation in the 2255 brief/memorandum and again in this "opposing brief" that Petitioner did give a false confession and is factually proven as a false confession. **(#3)** Petitioner gave an initial statement of innocence regarding a ". . .Trojan horse. . ." placed in the recycle bin according to what Petitioner remembers from the confession Audio disc that the A.U.S.A. Ramaswamy are refusing to give a copy of in response to Petitioner's FOIA request asking for the confession audio needed to further demonstrate factual innocence. Petitioner had

67

stated that he did not download child pornography, that it was software, music, and movies. He didn't say yes to the question of downloading child pornography off of the bat. He said an initial statement concerning innocence; the Detectives didn't want to accept that so they pressured him to give a false confession which is not reliable when showing that he made statements that contradict the forensic report. The Government's own evidence shows that Petitioner's confession contradicts the forensic report by SA Rodney V. White of the NC SBI. Ramaswamy doesn't want the Court to understand and acknowledge this as fact when it clearly is a fact.  The Respondent did not clearly address all issues in Petitioner's 2255 motion, brief, 53 Exhibits, and 5 Additional Evidence Declarations. Respondent just threw a blanket term as if that somehow remotely and clearly demonstrates that all of the factual claims of innocence by Petitioner is somehow without basis, and does not establish innocence. Respondent did not sink all of Petitioner's claimed facts as unfounded. Respondent in his Motion to Dismiss did not object to and address each and every piece of evidence and claim of innocence as unfounded. Throwing a blanket term that "*He has not presented evidence of actual innocence, but rather provided voluminous irrelevant and disparate documents that in no way constitute newly discovered evidence of actual innocence*" is wrong and does not sink any of Petitioner's claims of factual innocence. Respondent cannot just throw a blanket term as if it sticks and applies to every piece of evidence, every claim as to why and how Petitioner's confession on August 29, 2012, is false and unfounded. Every fact

68

of innocence that Petitioner has established in his 2255 Motion, 2255 brief, 53 exhibits of evidence attached to the 2255 brief, and 5 additional evidence Declarations cannot be sunk and considered unfounded just by the blanket sentence that "*He has not presented evidence of actual innocence, but rather provided voluminous irrelevant and disparate documents that in no way constitute newly discovered evidence of actual innocence*". Respondent has made a grave error that is very good reason for the Habeas Court to deny Respondent's motion to dismiss as the Respondent did not clearly establish any basis that Petitioner has given no decent claim of factual innocence enough to grant Respondent's motion to dismiss.

24. Even in the event that Petitioner did not fully demonstrate fact of false confession, even though he has given plenty of good reason to show confession is false, the Petitioner is entitled to the hearing to fully demonstrate to the Habeas Court that both his confession and his guilty plea was false due to ineffective counsel and deteriorating health (in violation of the cruel and unusual punishment clause of U.S. Constitution, Eighth (8th) Amendment), the Petitioner should have an evidentiary hearing. Under Townsend, a hearing is required where the facts alleged, if true, would entitle the movant to relief, and the facts have not yet been reliably found after a full and fair hearing. Id., 372 U.S. at 312-313, 83 S. Ct. at 757. "*Actual proof of those facts alleged in the motion is not required in order to demonstrate entitlement to a hearing. "The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only*

69

*allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief.""* Aron v. United States, 291 F.3d 708, 715 n.6 (11th Cir. 2002) (emphasis in original). False confession is a FACT of innocence. Computer being hacked into and/or computer being tampered with is a FACT of innocence. Petitioner being a victim of a child pornography set up campaign with other victims all connected by multitudes of tormail.org or similar TOR-Network-based anonymous email providers is another FACT of innocence. Petitioner using encrypted DVD discs that contain no child pornography and is willing to disclose the password to the independent expert that the Habeas Court can appoint will prove that Petitioner knew how to use disk encryption and encryption software and yet no child pornography is found on those encrypted discs when theoretically/arguably any guilty person who would collect child porn would prefer using encryption to hide their stash. So that is another FACT that Petitioner does not have encryption for the possible alleged claim regarding usage of child pornography when all of the claims of alleged files which may constitute child pornography was claimed to have been found on non-encrypted drives that are connected to the internet which is vulnerable to hacker attacks. No "files of interest", no "images of interest" and no "videos of interest" are confirmed to being actual child pornography thus NO child pornography exists that was confirmed as such on Petitioner's computer. The National Center for Missing and Exploited Children ("NCMEC") had 4-5 years (since 2012) to correct the mistake and try to confirm all "files of interest" on Petitioner's seized

70

computer to being of actual child pornography as defined by the statute. Special Agent Rodney V. White and the Internal Affairs of the N.C. State Bureau of Investigation had plenty of warning and opportunity about the download dates that "*454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013*", and none of them have ever denied those allegations by the Petitioner and none of them have ever done anything to correct those claims. Their silence is consent, they have consented to their claims that they had used against Petitioner when 11 months of such download dates from server.met file were downloaded while in law enforcement custody. That is evidence tampering, evidence contamination, evidence planting, or even evidence deletion if any files or settings were deleted. Even if hackers were the ones downloading potentially illegal files to Petitioner's laptop while in law enforcement custody and while in Petitioner's custody, it was still a frame up job with a gross negligence on the part of law enforcement by somehow not securing the evidence in a secure fashion thus the evidence can be freely tampered with by outside forces using hacking technology and techniques. Petitioner has given enough facts to demonstrate such a need for an evidentiary hearing.

25. Thus, if the record of the case does not "'*conclusively show' that under no circumstances could the [movant] establish facts warranting relief under § 2255,*" the movant must be afforded a hearing in the district court. Fontaine v. United States, 411 U.S. 213, 215, 93 S. Ct. 1461, 1463, 36 L.Ed. 2d 169 (1973).

71

*As a result, a hearing is generally required if the motion presents a colorable claim that arises from matters outside the record.* See United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992); Shah v. United States, 878 F.2d 1156, 1158 (9th Cir. 1989). *Indeed, evidentiary hearings are more likely to be granted in section 2255 cases to resolve those types of claims – such as the ineffectiveness of counsel or the prosecutor's failure to disclose exculpatory evidence – which generally involve factual disputes regarding matters outside the record.*"

26. If the court determines a hearing is warranted, it must appoint counsel if the movant qualifies for appointment of counsel under the Criminal Justice Act. Rule 8(c), Rules Governing Section 2255 Proceedings. The hearing is to be conducted "as soon as practicable after giving the attorneys adequate time to investigate and prepare." Id. In setting the date for the hearing, the court must consider "the complexity of the case, the availability of important materials, the workload of [counsel for the government], and the time required by appointed counsel to prepare." Advisory Committee Notes to Rule 8, Rules Governing Section 2255 Proceedings (incorporating by reference Advisory Committee Notes to Rule 8, Rules Governing Section 2254 Cases).

27. "The hearing will be governed by the Federal Rules of Evidence. See Fed. R. Evid. 1101(e); Rule 12, Rules Governing Section 2255 Proceedings. Moreover, Rule 8(d) of the Rules Governing Section 2255 Proceedings explicitly authorizes the court to order the production of the prior statements of any witness who testifies at an evidentiary hearing by extending the scope of Federal

Rules of Criminal Procedure 26.2(a)-(d) and (f) to apply to section 2255 proceedings. Rule 8(d), Rules Governing Section 2255 Proceedings. If the court orders production of a prior witness statement and a party refuses to comply, "the court must not consider that witness's testimony." Id."

28. *"Under ¶ 6(2) of section 2255, a motion is timely if filed within one year of "the date on which the <u>impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed</u>, if the <u>movant was prevented from making a motion by such governmental action</u>." Because the word "impediment" implies that an <u>obstacle, obstruction, or hindrance</u> is required, ¶ 6(2) is available only if <u>the government's actions prevented the motion from being filed</u>. See Minter v. Beck, 230 F.3d 663, 666 (4th Cir. 2000); United States v. Cottage, 307 F.3d 494, 500 (6th Cir. 2002). The government's actions must also be either unconstitutional or unlawful in order to trigger a new limitation period under ¶ 6(2). See Akins v. United States, 204 F.3d 1086, 1090 (11th Cir. 2000); United States v. Cicero, 214 F.3d 199, 204 (D.C. Cir. 2000). For example, an "unconstitutional impediment" may be found if the government, in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), withheld exculpatory evidence that forms the basis for a claim. See Cottage, 307 F.3d at 499-500."* Well the wrongful modification of his Supervised Release conditions of the added six (6) months of home detention of Petitioner until December 30, 2015 because of USPO Kristy L. Burton lying (See Document #137, all attachments) in the Petition for

Warrant or Summons for Offender Under Supervision", the key witness wasn't considered discredited for lying on the stand and the six months home detention with no right to use the internet made it nearly impossible to conduct any research and made it impossible to gather any new evidence worthy of extending the one (1) year statute of limitations. The home detention confines the Petitioner to his own apartment and makes it nearly impossible for Petitioner to be allowed to go to the family member's apartment to have them conduct research to prepare for Petitioner's 2255 motion. Petitioner being emotionally upset during the period of home detention, being required to get group counseling at Radford Counseling sex offender treatment for an innocent man trying to prove innocence, and the OCD hand washing routine getting worse and worse every month, it was virtually impossible as the Government impeded his efforts to prove factual innocence within the one (1) year statute of limitations. Because court appointed Attorney Renorda Pryor (as great as she was on June 30, 2014, and the other hearing) was ineffective in trying to secure a Motion to Reconsider the home detention on good behavior and proving that the Government's key witness USPO Kristy Burton lied on the stand to try to get her way with the Petitioner who disrespected him for simply trying to prove his actual innocence. Because Attorney Renorda Pryor did not secure the "Motion to reconsider", it was Petitioner who was trying to find a way to stop the home detention and he did whatever he could try to legally put a stop to the home detention but failed. So then the next year he finally is more emotionally back

74

together once off of home detention so he files a Freedom of Information Act ("FOIA") request asking for the entire discovery packet of evidence from the U.S. Attorney Office which refused to deliver a copy of all discovery evidence material to Petitioner/Plaintiff in 2017, after John Scott Coalter had threatened to destroy the discovery evidence after manipulating Attorney Emily Gladden to not pursue actual innocence after telling her things. John Scott Coalter has conducted malpractice to prevent his own ex-client from proving that Mr. Coalter was ineffective Counsel and has behaved very badly by threatening to destroy the discovery evidence. Coalter knew that Petitioner was trying to prove his innocence. All of this was filed as evidence for Petitioner's FOIA lawsuit in the Western District of Virginia Federal Courthouse in Danville. Petitioner thought the FOIA lawsuit would be easy and that he could subpoena Coalter to compel the discovery material but failed due to A.U.S.A. Cheryl Thornton Sloan's "motion to quash". The Government has impeded Petitioner's every effort to prove actual innocence. Thus Petitioner should have equitable tolling or an extension of time due to the Government impeding the Petitioner's every effort under due diligence to prove actual innocence and making him suffer under six (6) months of home detention which further punishes a Petitioner only trying to prove factual innocence and this impediment screws up his statute of limitations. The Government has used a liar (perjurer) named Kristy L. Burton of the Danville, Virginia U.S. Probation Office to try to systematically revoke Petitioner's Supervised Release which would have ruined his opportunity to

75

prove actual innocence outside of jail/prison. USPO Burton did not fear for her life and her lie or lies (perjury or multiple counts of perjury) of material fact impeded Petitioner's ability to timely file the 2255 motion. Attorney Renorda had somehow been persuaded to let the Government get away with Kristy Burton committing perjury and not filing a "motion to reconsider" with the Court, thus Petitioner was still stuck on home detention which impeded his ability to correctly and competently file a well-grounded 2255 Motion and brief. Petitioner can freely ask his family to conduct research and look things up for him without the restriction of home detention. However the home detention was impeding his ability to visit family to ask for their research as the research conducted right now for Petitioner's 2255 brief. The Government impeded Petitioner's ability to file a well-grounded 2255 motion and brief due to the malicious prosecution and usage of perjurer Kristy L. Burton to try to revoke Petitioner's supervised release. The Government also lied or misled about the zero "0" documents being withheld in full in response to Petitioner's FOIA request asking for all criminal case discovery material for the purpose of proving actual innocence. Concealing, covering up, or destroying records of a Federal agency may be obstruction of justice under Title 18 U.S.C. § 1519 (obstruction of justice). By already being warned that USPO Burton was lying about one or more material facts, A.U.S.A. Ramaswamy may also have violated Title 18 U.S.C. § 1622 subornation of perjury, and the intent was to impede and prevent the Petitioner from being able to prove actual innocence. The Government has

76

impeded the Petitioner from being able to prove actual innocence at an earlier time and may have committed crimes when doing such. Therefore equitable tolling should be permissible for Petitioner to fully prove actual innocence.

29. *"Where applicable, equitable tolling can extend a limitation period. The Supreme Court has not yet decided whether the statute of limitations in ¶ 6 not yet decided whether the statute of limitations in ¶ 6 of section 2255 is subject to equitable tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8, 125 S. Ct. 1807, 1814 n.8, 161 L.Ed.2d 669 (2005). Nonetheless, every circuit to decide the question has held that it is. See United States v. Martin, 408 F.3d 1089, 1092 (8th Cir. 2005) (collecting cases). Equitable tolling MAY be available if the motion was not timely filed due to: (1) judicial error, including reliance on then-binding circuit precedent, see, e.g., Harris v. Carter, ___ F.3d ___, 2008 WL 341712 (9th Cir. Feb. 8, 2008); United States v. Patterson, 211 F.3d 927, 931-32 (5th Cir. 2000); cf. Pliler v. Ford, 542 U.S. 225, 235, 124 S. Ct. 2441, 2448, 159 F.3d 338 (2004) (O'Connor, J., concurring); (2) government misconduct or interference, see Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 458, 112 L.Ed.2d 435 (1990); cf. Pliler, 542 U.S. at 235, 124 S. Ct. at 2448 (O'Connor, J., concurring); Solomon v. United States, 467 F.3d 928, 934 (6th Cir. 2006); (3) counsel's serious errors or misconduct, see, e.g., Martin, 408 F.3d at 1093 (collecting cases); (4) the movant's mental incompetence, see, e.g., Laws v. LeMarque, 351 F.3d 919, 923 (9th Cir. 2003); or (5) the movant's timely filing of a defective pleading, see, e.g., Irwin, 498 U.S. at 96, 111 S. Ct. at*

*457-58; De Aza-Paez v. United States, 343 F.3d 552, 553 (1st Cir. 2003).*
*Equitable tolling may also be available where the movant has made a showing*
*of actual innocence, see Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000);*
*cf. Montano, 398 F.3d at 1284."*

30.  There is also a chance that the Court may consider that Petitioner had timely
filed a defective pleading (exception: *(4) the movant's timely filing of a defective*
*pleading*) which could have been construed as a 2255 motion but did not contain
all of the facts and evidence that was filed since Documents #125 on up incl. the
5 Additional Evidence Declarations, 2255 Motion, 2255 Brief and 53 Exhibits
attached thereto. Petitioner did attempt to have filed a "NEW EVIDENCE FOR
A NEW TRIAL, HABEAS CORPUS PETITION(§ 2255 MOTION),
JUDGMENT OF ACQUITTAL, TO OVERTURN THE CONVICTION, OR
ANY OTHER PURPOSE" (See Document #71, Filed 04/03/2015 Pages 1 to
15). Petitioner's new trial and Habeas Corpus evidence could be construed as a
motion or brief but was defective in the required evidence, case law, and
appropriate statutory information to not be defective. So that pleading was filed
timely and is in regards to 2255 Motion or even a new trial. Even the (See
Document #76, Filed 04/22/2015, Pages 1 to 4) "MOTION FOR REQUESTING
COMPUTER FORENSIC EXAMINATION IN PREPERATION FOR THE
WRIT OF HABEAS CORPUS under a Section 2255 Motion" was asking for a
computer forensic expert to gather enough evidence of actual innocence in a due
diligence manner six (6) months before the statute of limitations ran out. That is

78

also considered a defective 2255 pleading that was timely filed since it wasn't well-grounded in any statute but mentioned that the purpose for that defective motion for the Petitioner filing a timely 2255 motion. Because of the home detention and all motions being denied prior to the 2255 motion, the defective pleadings were never corrected. Those two 2255 type pleadings were defective and did not have any statutory basis but was nonetheless filed before the one year statute of limitations. The next defective pleading which concerns the Petitioner filing a 2255 motion is the (See Document #81 Filed 04/27/15 Pages 1 to 6) "MOTION FOR REQUESTING AUTISM EXPERT TESTIMONY IN PREPERATION FOR WRIT OF HABEAS CORPUS". This pleading partially says and I note that *"Comes NOW, the Defendant Brian D. Hill with a REQUEST to the Honorable Court that they Grant this MOTION FOR REQUESTING AUTISM EXPERT TESTIMONY IN PREPERATION FOR THE WRIT OF HABEAS CORPUS under a Section 2255 Motion. . ."* That was also deficient in the proper argument, case law, and authorities for filing a successful 2255 motion, thus was also a defective pleading, was also timely filed prior to the statute of limitations running out. Even though none of those motions are considered as 2255 motions, they are defective pleadings that mention that they are for the Petitioner filing a 2255 motion and the stated purpose of granting any of those defective motions was for the Petitioner's 2255 motion. Defective pleadings are a good excuse for equitable tolling. The Petitioner has filed multiple defective 2255 pleadings timely. Thus Petitioner meets yet another

standard for equitable tolling for Petitioner's actual innocence claims to not be time barred.

31. The Petitioner had filed an Internal Affairs complaint with the N.C. State Bureau of Investigation ("SBI") via facsimile on March 21, 2015. Received a response on April 15, 2015 from Kanawha Perry, Special Agent in Charge, Special Investigations Unit, and acknowledging receipt of the Internal Affairs complaint of Petitioner to the N.C. State Bureau of Investigation. Complaint is against N.C. SBI Agent Rodney V. White. The Government just blindly used the SBI case file evidence against Petitioner without ever conducting a full and thorough independent investigation into whether Petitioner was actually guilty or actually innocent. **See Document #136 and all attached documents, "THIRD ADDITIONAL EVIDENCE DECLARATION IN SUPPORT OF DOCUMENT #128, #128-1, AND 128-2 "BRIEF / MEMORANDUM".**

32. The Petitioner had proven that United States Probation Officer ("USPO") Kristy L. Burton had committed an act of perjury on June 30, 2015, and lied through Edward R. Cameron (Supervisory USPO) which may be subornation of perjury, and that the U.S. Attorney Assistant Anand Prakash Ramaswamy and the Court had been warned prior to her lying in open court that she had already lied of one or more material facts. This proves that Assistant U.S. Attorney Anand Prakash Ramaswamy has committed subornation of perjury by persuading her to still testify to lie on the stand. The Prosecutor can submit a witness to the Court to lie on the stand which is proven with this Declaration and any other applicable

evidence. He broke the law likely with an intent to criminally impede and obstruct Petitioner's ability to timely file his 2255 Motion. <u>Special Counsel needs to be appointed by the U.S. Attorney General Jeff Sessions to investigate the criminal misconduct of A.U.S.A. Ramaswamy, new Counsel should be appointed as Respondent if possible</u>. **See Document #137 and all attached documents, "FIFTH ADDITIONAL EVIDENCE DECLARATION IN SUPPORT OF DOCUMENT #128, #128-1, AND 128-2 "BRIEF I MEMORANDUM"**.

33. The Petitioner had collected political petition signatures as part of his Nullify-NDAA Petition. That operation was part of USWGO Alternative News and with any assistance and/or advice from We Are Change NC, to try to get the State of North Carolina in earlier 2012 to nullify the unconstitutional provisions of the National Defense Authorization Act ("NDAA") for the fiscal year of 2012. This was done prior to the Petitioner being framed with child pornography and this piece of evidence contains the handwritten signatures, phone numbers, and addresses of potential witnesses that can testify in favor of Petitioner's actual innocence and/or reasonable doubts for a Jury trial if necessary. Petitioner did give a copy of such petition to Philip Edward Berger Senior at the town of Mayodan in May, 2012, and copies to other representatives such as former N.C. State Representative Bryan R. Holloway and N.C. Representative Bert Jones in 2012. **See Document #138 (redacted) and Document #139 (sealed but unredacted) and all attached documents, "FIFTH ADDITIONAL**

**EVIDENCE DECLARATION IN SUPPORT OF DOCUMENT #128, #128-1, AND 128-2 "BRIEF I MEMORANDUM".**

**EXHIBITS**

34. **EXHIBIT 1**. Is the Affidavit/Declaration of Petitioner Brian David Hill in support of Petitioner's 2255 Motion, 2255 Brief, and in opposition to Respondent's "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE" (Document #141). **Total of 18 pages.**

35. **EXHIBIT 2**. Is the group Affidavit/Declaration of witnesses Roberta Hill, Stella Forinash, and Kenneth Forinash in support of Petitioner's 2255 Motion, 2255 Brief, and in opposition to Respondent's "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE" (Document #141). **Total of 21 pages.**

36. **EXHIBIT 3**. Is a copy of the report of ANALYSIS OF FUNCTIONS OF DELAYED ECHOLALIA IN AUTISTIC CHILDREN, Journal of Speech and Hearing Research, Volume 27, 183-192, June 1984, by Barry Prizant and Patrick Rydell. This is in support of Petitioner's 2255 Motion, 2255 Brief, and in opposition to Respondent's "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE" (Document #141). Proves that Petitioner does exhibit a form of echolalia but not immediate echolalia but was

82

delayed echolalia that is partially responsible for Petitioner's false confession.
**Total of 10 pages.**

## CONCLUSION

37. Because the Petitioner has demonstrated enough facts of showing a colorable claim of actual innocence (*false confession, shoddy forensics including possible evidence tampering and/or evidence of computer hacking, encrypted DVD discs containing no child pornography, being involved with politics and making enemies with the very people that are connected to the Detectives and District Attorney which is a real or perceived conflict of interest, and any other applicable facts*), the Petitioner requests an evidentiary hearing to determine all of the facts demonstrated by the Petitioner in all of his filings from Documents #125 "2255", #128 "brief", #129 (Declaration), #130 (Declaration), #131 (Exhibits), #132 (Exhibits), #133 (Exhibits), #134 (Exhibits), #136 (Declaration), #137 (Declaration), both #138 and #139 (Declaration), and #140 (Motion to seal), has demonstrated Constitutional reasons and excusable reasons as to why the Court should grant Petitioner's § 2255 motion or grant an evidentiary hearing to sort through all of the facts. Everything stated in the Petitioner's 2255 brief supports actual innocence, even though Petitioner did not explain things the way a regular lawyer would expect, Petitioner asks the Court to collaterally review all evidence filings Documents #125 "2255", #128 "brief",

#129 (Declaration), #130 (Declaration), #131 (Exhibits), #132 (Exhibits), #133 (Exhibits), #134 (Exhibits), #136 (Declaration), #137 (Declaration), both #138 and #139 (Declaration), and #140 (Motion to seal) prior to making a final decision on Petitioner's 2255 Motion and Brief. Petitioner requests an evidentiary hearing to determine whether Petitioner is actually innocent enough and was unconstitutionally convicted for vacatur of Judgment and vacatur of sentence.

Petitioner respectfully files this PETITIONER'S BRIEF / MEMORANDUM IN OPPOSITION TO "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE" (Document #141) -- OPPOSING BRIEF IN OPPOSITION TO THE GOVERNMENT'S/MOVANT'S MOTION UNDER DOCUMENT #141 with the Court.

Petitioner requests with the Court that a copy of this PETITIONER'S BRIEF / MEMORANDUM IN OPPOSITION TO "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE" (Document #141) -- OPPOSING BRIEF IN OPPOSITION TO THE GOVERNMENT'S/MOVANT'S MOTION UNDER DOCUMENT #141 be served upon the Government as stated in **28 U.S.C. §1915(d)**, that "The **officers of the court shall issue and serve all process, and perform all duties** in such cases. **Witnesses shall attend as in other cases,** and the **same remedies shall be available as are provided for by law in other cases**. Plaintiff requests that copies be served with the Respondent which is the U.S. Attorney office of Greensboro, NC and AUSA Anand Prakash Ramaswamy via CM/ECF Notice of Electronic Filing ("NEF") email. Thank You!

This PETITIONER'S BRIEF / MEMORANDUM IN OPPOSITION TO "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE" (Document #141) -- OPPOSING BRIEF IN OPPOSITION TO THE GOVERNMENT'S/MOVANT'S MOTION UNDER DOCUMENT #141 is respectfully filed with the Court, this the 24th day of January, 2018

| Date of signing:<br><br>January 24, 2018 | Respectfully submitted,<br><br>*Brian D. Hill*<br>Signed<br>Brian D. Hill (Pro Se)<br>310 Forest Street, Apartment 2<br>Martinsville, VA 24112<br>Phone #: (276) 790-3505<br>**U.S.W.G.O.** |

## CERTIFICATE OF SERVICE

Petitioner hereby certifies that on January 24, 2018, service was made by mailing the original of the foregoing

PETITIONER'S BRIEF / MEMORANDUM IN OPPOSITION TO "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE" (Document #141) -- OPPOSING BRIEF IN OPPOSITION TO THE GOVERNMENT'S/MOVANT'S MOTION UNDER DOCUMENT #141

by deposit in the United States Post Office, Postage prepaid under certified mail tracking no. 7017-1070-0000-3531-7369, on January 24, 2018 addressed to the Clerk of the Court in the U.S. District Court, for the Middle District of North Carolina, Greensboro division. Then Petitioner requests that the Clerk of the Court shall have electronically filed the foregoing PETITIONER'S BRIEF / MEMORANDUM IN OPPOSITION TO "MOTION TO DISMISS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE" (Document #141) -- OPPOSING BRIEF IN OPPOSITION TO THE GOVERNMENT'S/MOVANT'S MOTION UNDER

85

**DOCUMENT #141 using the CM/ECF system which will send notification of such filing to the following parties:**

| Anand Prakash Ramaswamy<br>U.S. Attorney Office<br>Civil Case # 1:17-cv-1036<br>101 South Edgeworth Street, 4th Floor<br>Greensboro, NC 27401<br>anand.ramaswamy@usdoj.gov | Angela Hewlett Miller<br>U.S. Attorney Office<br>Civil Case # 1:17-cv-1036<br>101 South Edgeworth Street, 4th Floor<br>Greensboro, NC 27401<br>angela.miller@usdoj.gov |
|---|---|

This is pursuant to Petitioner's "In forma Pauperis" ("IFP") status, 28 U.S.C. §1915(d) that "The officers of the court shall issue and serve all process, and perform all duties in such cases..."the Clerk shall serve process via CM/ECF to serve process with all parties.

| Date of signing:<br><br>*January 24, 2018* | Respectfully submitted,<br><br>*Brian D. Hill*<br>*Signed*    Signed<br>Brian D. Hill (Pro Se)<br>310 Forest Street, Apartment 2<br>Martinsville, VA 24112<br>Phone #: (276) 790-3505<br>U.S.W.G.O. |
|---|---|