In the United States District Court

For the Middle District of North Carolina



Brian David Hill
Petitioner,

v.

United States of America
Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Criminal Action No. 1:13-CR-431-1

Civil Action No. 1:17-CV-1036

### PETITIONER'S RESPONSE BRIEF IN OPPOSITION TO "GOVERNMENT'S RESPONSE TO "MOTION AND BRIEF FOR LEAVE TO FILE ADDITIONAL EVIDENCE" AND GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #148) AND "MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #149)

NOW COMES the Petitioner, by and through Brian David Hill ("Brian D. Hill",

"Plaintiff" or "Hill"), that is acting pro se and is proceeding pro se before this Honorable

Court in the Middle District of North Carolina, is filing this brief in opposition to the

Respondent's "GOVERNMENT'S RESPONSE TO "MOTION AND BRIEF FOR

LEAVE TO FILE ADDITIONAL EVIDENCE" AND GOVERNMENT'S MOTION

FOR PRE-FILING INJUNCTION" under Document #148 and MEMORANDUM IN

SUPPORT OF GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION under

Document #149. The Petitioner has major objections to this and also provides good legal

arguments as to why the Respondent's/Government's motion for a pre-filing injunction

1

should be denied and that the newly submitted evidence under Document #145 under the motion for leave to file the additional evidence under Document #144 should be granted.

**ADDITIONAL REQUEST TO THE COURT: Since the Petitioner has Autism Spectrum Disorder which can negatively affect his ability to appropriately communicate with the Court, Brian asks that if a hearing is ordered by the Court that Petitioner be appointed Counsel under the Criminal Justice Act and under 28 U.S.C. § 1915. It is essential since some of the allegations by the Government regarding the claim that they believe Petitioner may be using the internet may affect his supervised release and may affect everything in his criminal case in a negative or positive manner. For the interest of justice, Counsel needs to be appointed under the Criminal Justice Act (CJA) to protect the Petitioner's due process and sixth amendment Constitutional rights in this case. Further explanation is close to the end of this document.**

The objections the Petitioner will raise will address issues raised in the Government's motion and brief / memorandum as to why the motion for injunction should be denied.

The objections stem from the paragraph: "*Since the filing of his § 2255 Motion, Petitioner has filed eleven documents in addition to the § 2255 Memorandum and reply. The contents of documents and materials filed by Petitioner in his § 2255 Motion include:*"

2

1. **Objection #1 to Document #149, Page 3 of 20, List entry #1:** "*Copies of a complaint Petitioner filed against the case agent with that agent's law enforcement agency (DE #136-1, -2, -4)*". Petitioner respectfully objects to the way the Respondent has catalogued this filing. Petitioner had filed this Internal Affairs complaint regarding the N.C. State Bureau of Investigation ("N.C. SBI") forensic report because of the threatening email mentioning that they know some people in the SBI that will make sure that Petitioner was wrongfully convicted (See Document #30, Filed 09/10/14, Page 3 of 5, and Document #131, Filed 11/14/17, Page 70 of 101, Exhibit 6 in attachment to 2255 Brief). The claim from N.C. SBI Agent Rodney V. White (*who created the forensic report used against Petitioner in this criminal case*) made the claim in his own report that "*From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013*". His laptop was seized on August 28, 2012. That would mean a blatant admission that suspected alleged child pornography had reportedly downloaded on the Black Toshiba Laptop Computer of Petitioner even after it was transferred into law enforcement custody. Petitioner clearly has the legal right to file a complaint with a law enforcement agency. However the N.C. SBI agency did not appear to have done anything about Petitioner's complaint and was thus a dereliction of duty by not investigating the bazaar claim by Rodney White. Because of the time span being over two (2) or about two (2) years since that initial complaint was filed with Internal Affairs, Petitioner thought it

3

was appropriate to have filed such evidence as proof of dereliction of duty where law enforcement fails or refuses to investigate a criminal tip. Like for example if you reported a prostitute openly breaking the law and that crime is never investigated. Another example of dereliction of duty is if you caught a drug dealer but because he may have some kind of rogue law enforcement (aka 'dirty cops') or government connections theoretically, the drug dealer will never be investigated no matter how much evidence or witness testimony is submitted to a law enforcement agency, evidence is ignored. Those two examples are perfect examples of dereliction of duty and not discharging the duties of office regarding what law enforcement officers are supposed to be doing. They are supposed to investigate serious crimes including felonies including threatening emails and they conducted no such investigations or interviews to the best of Petitioner's knowledge. Petitioner was never interviewed by the N.C. SBI and neither of the U.S. Federal Bureau of Investigation ("FBI") agencies. Nobody has interviewed him and nobody seems to want to investigate what is really going on in Petitioner's criminal case, that is failure to discharge the duties of office and thus warrants Petitioner filing a copy of his Internal Affairs complaint as evidence to the court that nothing is being done to investigate who may have framed Petitioner with child pornography and why.

2. **Objection #2 to Document #149, Page 3 of 20, List entry #2:** "*Petitioner's complaint against his supervising probation officer and a letter from an*

4

*official with the Administrative Office of the Courts responding to that*
*complaint (DE # 137-2, -6)*". Petitioner respectfully objects to the way the
Respondent has catalogued this filing. Petitioner has filed such evidence
because it proves that the Respondent had used a liar, a proven perjurer (*lying*
*multiple times or making false statements multiple times while being*
*questioned under oath is perjury, open and shut evidence, open and shut case*)
against Petitioner on June 30, 2015 during the Supervised Release Revocation
("SRV") hearing against Petitioner. The proof of perjury involving United
States Probation Officer ("USPO") Kristy L. Burton ("Burton" or "Kristy") in
the Western District of Virginia involves her lying that the Clerk spoke to her
when the evidence points to the Honorable Judge William Lindsey Osteen Jr.
contacting her instead of the Clerk thus is a false statement, and another false
statement given by USPO Burton and proven by family (Document #145-1)
was that she had made statements in her electronic message ("email") to
Petitioner's family regarding the hard drive being destroyed after Petitioner
had informed family that child porn was found on it and was deeply disturbed
about it, then faxed the U.S. FBI regarding the destroyed hard drive and told
them what he had remembered (See Document #71-2.) was on it as he took
some notes of some of the folder names that has dirty language hinting around
that the hard drive from Mayodan Police Department may have contained
actual child pornography. The Petitioner promptly and in good faith reported
the matter to a law enforcement agency and destroyed each such image (*in*

5

*compliance with 18 U.S.C. 2252A(d) "Affirmative Defense")* to ensure that the Petitioner does not possess child pornography to comply with his conditions of supervised release. USPO Burton lied about multiple things on the stand in open court which is a proven allegation of perjury. The court should have been informed in 2015 regarding this evidence of perjury but nobody seems to want to investigate any evidence submitted by Petitioner via faxes or even by mailings, again dereliction of duty. Disclosing to the Court of evidence being invalid, is part of the Prosecutors' requirements to disclose evidence of being innocent of an allegation pursuant to Rule 3.8 "Special Responsibilities of a Prosecutor" (N.C. State Bar, Ethics and Rules of Professional Conduct, Rules of Professional Conduct). Petitioner has every right under the Constitution, upon good evidence, solid evidence which may include Affidavits, Declarations, email records, text message records, etc. etc., to file evidence regarding the other party aka the Respondent using a witness that had bared false witness in Federal Court in 2015 to achieve an objective of criminally punishing the Petitioner under false or misled pretenses. That does further show actual innocence as it is the Respondent's duty to present a case against whoever they criminally charge with a crime. If the Respondent has been caught putting a liar on the stand in open court under oath, that tears apart the integrity of the original criminal case that the Respondent likely would have used ,a liar, like Kristy Burton for example. To file an injunction against the Petitioner for simply revealing what is true and factual, Affidavits,

6

Declarations, complaint filings, email records, photos, text message filings, and any other misc. evidence. None of that warrants a justification for labeling Petitioner's filings as vexatious and harassing, as it was filed validly with the Court with the intent of showing that the Government's case of guilt was not solid and caused the wrongful conviction of Petitioner. If Petitioner has proof that the other party presented a false witness, that sets a precedent where a false witness could have been presented at the jury trial against Petitioner and would have led to the jury verdict of guilty against Petitioner leaving him little to no recourse in a federal prison of being able to order transcripts of the jury trial to overturn the conviction on one of the Government's witnesses committing an act of perjury. That is one of many good valid reasons for proving facts of actual innocence because the Government's case was supposed to be solid and that every law enforcement officer that may testify in Petitioner's case must tell the whole truth and nothing but the truth, so help me God. When a law enforcement officer including but not limited to USPO Burton had been caught committing multiple false statements in court record at a later time, this proves that the other party may use a false witness at the jury trial or at any stage of Petitioner's criminal case and that they may have been willing to allow usage of witnesses that bare false witness and lie in the courtroom. Lying in the courtroom is not acceptable under the Federal Rules of Evidence and is supposed to be disqualified or impeachable on its face when a statement under oath is proven factually false. Whether or not Respondent was

7

aware of USPO Burton lying or not, the Government still didn't conduct any research proving Petitioner's claims and didn't apologize to Petitioner for having a liar on the stand to lie in open court. If Respondent can get away with USPO Burton lying on June 30, 2015, at an open federal hearing, then any liar can be presented without any consequences including at the planned jury trial that was set for the date of June 10, 2014. Petitioner cannot prove that a witness had lied in federal court off the bat, and usually is more effective at proving a liar in a federal court proceeding by ordering a transcript (*or having a family member order a transcript*) of the proceeding to review and show what lies have been made by the witness that the Government had initially used against Petitioner. It is not only the Petitioner's right to file a claim when evidence has surfaced proving that a Government's key witness had lied under oath in federal court, it is Petitioner's civic duty under the law to report a criminal act aka report a crime. An permanent injunction based on proving that USPO Burton had lied multiple times under oath on June 30, 2015, deprives the Petitioner of his Due Process rights under the Fourteenth Amendment of the U.S. Constitution as well as the First Amendment of the U.S. Constitution, as the Government's key witness in the SRV hearing is relevant to the actual innocence as it proves the Government's witness or witnesses were not truthful or may not be truthful in making statements before a Federal Judge. The Court should not tolerate liars, especially when such liar is not under duress at the time the perjury was made. In Petitioner's case of his false guilty plea, he had

8

deteriorating health problems and the ineffective counsel was so severe that the court appointed counsel did not find better detention accommodations that would protect his health from deteriorating due to lack of proper medical attention necessary for the proper and critical thinking of a criminal defendant facing a criminal jury trial. Petitioner had counsel that did not truly represent Petitioner's interest in proving his false confession, in questioning the questionable N.C. SBI forensic report, and did not present any witnesses including Attorney Susan Basko (Document #46). False confession is a fact of actual innocence and is not vexatious and is a valid fact alone along with any other applicable facts of actual innocence. Petitioner had deteriorating health and ineffective counsel so severe that he would have lost the criminal jury trial set for June 10, 2014 had he not taken the guilty plea. When counsel has no plans to raise any defense including an affirmative defense of frame up, when counsel has not shown all of the discovery material of his criminal case but only shows a small portion including the confession tape, it proves to this court that Petitioner had no choice but to falsely plead guilty when promised that he would get out of jail to get better medical care and get access to evidence that was unavailable to him in jail due to ineffective counsel. Petitioner's false guilty plea situation differs from USPO Burton's perjury because she doesn't suffer from type 1 diabetes and she does not have ineffective counsel to rely on while sitting in jail like the Petitioner was while his weight was dropping. USPO Burton does not have Autism Spectrum Disorder and wasn't being

9

given a portion of needed diabetic insulin that was needed for critical thinking and to be healthy while incarcerated. The jails have failed Petitioner's disability rights under the Americans with Disabilities Act ("ADA"), Title II, before, during, and after Petitioner's false guilty plea. USPO Burton doesn't have any ADA recognized health problems to the best of Petitioner's knowledge and was not in jail at the time of her giving false statements to the federal court SRV hearing. Petitioner gave a false guilty plea and should not be held liable for perjury but USPO Burton in her official capacity as a law enforcement officer has made false statements under Oath in the Government's prosecution against Petitioner. All of that itself as evidence provided by Petitioner is not with intent to harass, not with intent to be vexatious, and was meant to tell the court the absolute truth, the whole truth, and nothing but the truth so help me God. Usually to get any case before a Federal Court, you must exhaust all administrative remedies. Petitioner had tried to get an investigation into USPO Burton on lying in court record but again dereliction of duty. Nobody wants to take down people in the Government for misconduct because it makes the Government look bad in Public Relations. That is why there are offices of Special Counsel because a separate office needs to investigate government employees of misconduct because of the risk that people will look out for each other in close-knit Government agencies. That is the swamp which Donald Trump our United States President had warned about. The swamp is the collusion and protectionism of criminal behaviors and activities within the

10

Government. Trump was elected to help "drain the swamp" and replace Government employees to fix the corruption issues the American people are well made aware of in the 2016 election. It is appropriate to file the Administrative Office of the U.S. Courts complaint response letter since it proves to the Court that all administrative remedies have been exhausted to free the Petitioner from the wrongful home detention for six months which is the unlawful impediment preventing the Petitioner from filing an effective 2255 Motion since he couldn't use the internet and couldn't just walk to the Post Office to mail out his 2255 Motion. The home detention made it nearly impossible to get anything done to mount any successful non-frivolous ground in his 2255 Motion in a timely manner. Petitioner wants to provide evidence and Declarations to prove his case and to prove what he says to be true and not just conclusory. Petitioner was barred from being effective and was barred from any kind of means to conduct the legal research necessary to file a 2255 Motion that would have any standing. Petitioner did not want to abuse the Writ just to file a 2255 Motion timely. Should the Petitioner had abused the Writ timely by filing meaningless claims with no evidence if he even managed to get together a 2255 Motion at all while under home detention? Petitioner had to take a lot of time for his actual innocence claims and building his actual innocence case, and have his family conduct research and constantly download or print PDF files, creating local HTML files which can be accessed without the internet, and be able to provide the Petitioner with what he had needed to

11

make such viable arguments without abusing the Writ. The home detention did unlawfully impede him and forced him to fight his home detention rather than focus on the 2255 Motion was the Government was well aware that he is repetitive in a task with his Obsessive Compulsive Disorder ("OCD"). They were well aware that this home detention would bother him. The way it was done against Petitioner did unlawfully impede his ability to file a 2255 Motion, especially an effective 2255 Motion.

3. **Objection #3 to Document #149, Page 3 of 20, List entry #3:** "*Allegations of the former chief judge being "crooked" and having engaged in improper communications in his case (DE # 137-20)*". Well in accordance with the policies that have been set by the Administrative Office of the United States Courts and/or any other authorized offices of the judicial branch of the United States, The Code of Conduct for United States Judges was initially adopted by the Judicial Conference on April 5, 1973, and was known as the "Code of Judicial Conduct for United States Judges." See: JCUS-APR 73, pp. 9-11.

   a. Canon 3: A Judge Should Perform the Duties of the Office Fairly, Impartially and Diligently: The duties of judicial office take precedence over all other activities. In performing the duties prescribed by law, the judge should adhere to the following standards: (4) <u>A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law</u>. Except as set out below, **a judge should not initiate, permit, or consider ex**

12

**parte communications or consider other communications**
**concerning a pending or impending matter that are made outside**
**the presence of the parties or their lawyers**. If a judge receives an
unauthorized ex parte communication bearing on the substance of a
matter, the judge should promptly notify the parties of the subject matter
of the communication and allow the parties an opportunity to respond, if
requested.

It is the law that Judges should not be engaging in ex parte communications
without notifying both parties of such matter. USPO Burton had engaged in ex
parte communications with Judge William Lindsey Osteen Junior or the Judge
engaged in ex parte communications with USPO Burton (See Document #137-
3, Document #137-5, Stella Forinash typed up statement regarding USPO
Burton mentioning about Judge contacting her ex parte, Document #137-6, and
Document #137-1) which led to the confrontation (Document #88 and #87)
that led up to the arrest of Petitioner. Petitioner should have been summoned to
appear before the Judge to explain that the methods of his pro se filings are
inappropriate and have his Probation Officer present to explain to Petitioner
that he had to file things properly under statute or federal rules, that way the ex
parte communications is not conducted in secrecy, and the Probation Officer
does not lie about such ex parte communications. Petitioner had good faith to
believe that invalid ex parte communications have been made between Judge

13

Osteen and USPO Burton which led up to those comments. Petitioner has respect for the law, the rules, the court, and the Judges that faithfully execute their duties of office. What happened between Judge Osteen and USPO Burton was wrong and such ex parte communications led to the confrontation where Petitioner couldn't do his insulin shot for his high blood sugar and USPO Burton made unreasonable demands after Petitioner had initially agreed to comply with not filing documents with the Court via MMS type text messages. Petitioner apologizes for calling Osteen a crooked Judge and only wants to follow and ask for enforcement of our laws and codes. Petitioner is held to follow the law or face imprisonment, so why not the U.S. Attorney staff and the Probation Officers? Violation of Canon 3 of the Judicial Code of misconduct would cause good reason for Petitioner to feel that Judge Osteen was not acting appropriate which led to the wrongful arrest and six months of home detention. The Petitioner again apologizes and understands that it is not proper conduct to call Judge Osteen words like "crooked" but was only highlighting the potential violation of Canon 3 of the Judicial Code of misconduct. Petitioner is all about obeying the laws and hopes there is enforcement of all laws as necessary under the Equal Protection of the Laws under the U.S. Constitution. Petitioner only seeks justice in this case.

4. **Objection #4 to Document #149, Page 3 of 20, List entry #4:** "*A petition in an unrelated matter, gathered by Petitioner, bearing the names of persons*

*signing it (DE # 138)*". Petitioner had properly redacted the street addresses, signatures (*or writings that Petitioner had believed to be signatures instead of the names in print*) and phone numbers for the privacy of such petition filers. The Nullify-NDAA petition is related to the instant offense allegations of Petitioner's criminal case as Brian's NDAA activism was briefly mentioned during the interview between the police detectives Robert Bridge of Reidsville Police Department, Christopher Todd Brim of Mayodan Police Department, and Brian D. Hill the suspect. His politics was mentioned by the police. His Nullify-NDAA petition was part of persuading Chief Charles J. Caruso to not enforce the provisions regarding secretive abductions and torture of American citizens under the National Defense Authorization Act ("NDAA") for the fiscal year of 2012 under the allegations of terrorism, whether it would be true or false. American citizens suspected of terrorism should be afforded the right to a trial and the right to an effective lawyer. Petitioner had pushed way too hard on lobbying the town of Mayodan to fight the NDAA federal law as part of the Tenth Amendment (*powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectfully, or to the people*). Petitioner had typed up articles (Document #62, Pages 18 to 32 of 62) regarding the Nullify-NDAA Petition not being followed by Mayodan Town Attorney Philip Edward Berger. They were all negative articles and calling the Town of Mayodan "corrupt!" prior to the allegations of the instant offense. The Nullify-NDAA Petition is relevant and the witnesses

15

who had signed such petition knows that Petitioner is not a pedophile and have witnessed the Petitioner, as part of watching the neighborhood, for over seven (7) years while living there and has never been in trouble with the law. Pedophiles that are also child pornographers usually want to molest children and groom their victims according to Detective Robert Bridge's search warrant affidavit (See Document #84-2). Petitioner's witnesses listed in the Nullify-NDAA Petition can demonstrate to this court at an evidentiary hearing that Petitioner was not grooming children and was only interested in protecting the American people's rights including children from ever having to worry about being secretly abducted by our Federal Government under any allegations of terrorism without a right to a trial and without a right to face your accusers in open court. This petition is relevant to Petitioner's actual innocence claims.

5. **Objection #5 to Document #149, Page 3 of 20, List entry #5:** "*Accusations of professional misconduct, including criminal misconduct, made against the undersigned, the First Assistant Federal Public Defender, a CJA panel attorney, and others (DE # 143)*". Petitioner had to prove in a court of law that counsel was deficient and that such deficiency led to the Petitioner falsely taking the guilty plea agreement putting him at risk of perjury. CJA Panel Attorney Renorda E. Pryor did a better job at arguing that the Petitioner's health problems were serious at the SRV hearing and at the hearing in front of the U.S. Magistrate Judge in 2015. She was effective in ways and ineffective in other ways. Mr. Eric David Placke, the First Assistant Federal Public

Defender, did nothing about Petitioner receiving only half of his needed diabetic insulin and had not been given his prescribed twenty-four (24) hour Lantus insulin by the Detention Centers while Petitioner was under the incarceration by the custody of the United States Marshals. Petitioner had suffered deteriorating health as proven by the medical records released by Petitioner regarding the improper medical treatment conducted by the jails aka the County Detention Centers while incarcerated. So Placke had conducted misconduct on not providing adequate counsel to ask the Court to give Petitioner better detention medical accommodations/conditions which would not had threaten or jeopardize the Petitioner's health during the criminal case proceedings prior to the change of plea hearing and prior to sentencing. One of the different reasons Petitioner had accused Placke of misconduct is because he wouldn't defend Petitioner and wouldn't present any evidence to the extent where Petitioner can be held liable for a perjury charge for changing his plea back to not-guilty, that Eric David Placke was not in jail, and did not suffer any medical health issues serious enough to lead to a diabetic seizure, coma, or death as Attorney Renorda Pryor had pointed out. Since Petitioner was under medical duress and extreme forms of ineffective counsel, Petitioner should not be held liable for perjury but the blame rests on the shoulders of Eric David Placke the CJA panel attorney. Eric David Placke ("Placke") may be liable for subornation of perjury (Title 18 U.S.C. §1622) for not allowing an innocent man to prove his innocence at all prior to the guilty plea being entered. When

17

counsel is so ineffective that he would not permit the Petitioner the ability to review over all discovery materials (subject to the legal protections of Brady v. Maryland and Giglio v. United States) but only a portion of discovery materials prior to falsely pleading guilty. Petitioner has every right in court to have accused his Assistant Federal Public Defender of misconduct because that opens up a gateway to withdraw Petitioner's guilty plea which further demonstrates actual innocence since the guilty plea was not constitutionally valid, not voluntary, and that Petitioner should be allowed and directed by this Honorable Court to fully prove every single fact of his actual innocence. The Petitioner has case law supporting that his counsel's misconduct and unprofessional errors of misrepresenting the Petitioner caused the false guilty plea of Petitioner which is blocking his ability to prove his actual innocence in his 2255 Motion. The ground for withdrawal of a guilty plea is to prevail on a claim of ineffective assistance of counsel under Strickland v. Washington (1984). The criminal defendant must show that the plea was motivated by advice received from counsel which fell short of the range of competence demanded of attorneys in criminal cases. See, Hill v. Lockhart, 474 U.S. 52, 88 L.Ed.2d 203, 106 S.Ct 366 (1985) (defendant must show deficient performance and prejudice). *Where defense counsel's incorrect legal advice rose to level of ineffective assistance of counsel and induced defendant's plea of guilty, the plea is involuntary and unintelligent.* "*A criminal defendant's plea of guilty may be attacked: on the ground that the defendant's counsel did not provide*

18

*the defendant with reasonably competent advice*." Cuyler v. Sullivan, 446 U.S. 335, 64 L.Ed.2d 333, 100 S.Ct. 1708 (1980). *A defendant who moves to withdraw his guilty plea before sentencing on the ground that his attorney gave him bad advice is not required by Fed.R.Crim.P. 11 to prove that he would not have pleaded guilty had counsel advised him appropriately.*" United States v. Davis, 410 F.3d 1122 (9th Cir. 2005)(amending 410 F.3d 1122). Mr. Placke did not show all of the discovery evidence to Petitioner prior to his false guilty plea, Petitioner did not know what the Government was fully going to use against him, he was only aware of his confession that he wasn't able to prove as a false confession until after getting out of jail. Petitioner had every right to point out how ineffective his counsel was. Those claims are not intended to be vexatious and not intended to harass the Government. As for the allegations against Ramaswamy aka the undersigned of that motion, it is perfectly logical in our legal society to accuse somebody of a crime if there is a substantial amount of an evidential basis to accuse somebody of such crime, which is probable cause that warrants the need to conduct a search warrant to further investigate. When nobody investigates such crime where there lies probable cause of a crime, then it is dereliction of duty and violates their Oaths of office when each government and law enforcement official says "I swear, I will faithfully execute. . . discharge my duties" of the office of which they have been appointed or elected to serve. Refusing to investigate a criminal complaint or ignoring such criminal complaint is negligence and has falsely

19

painted the Petitioner as vexatious and harassing. The Petitioner wants to know the truth but the truth keeps being hidden from him. Petitioner can prove that Anand Prakash Ramaswamy had committed subornation of perjury. The first factor was that Petitioner had warned the Court (*which copies of all CM/ECF filings are served electronically upon the email addresses of any and all parties with a PACER.GOV account*) that USPO Burton had lied. Petitioner has no need to repeat the whole allegation since it was already supplied to the Court under Document #137 and all attachments. Second factor is that since one or more Declarations were submitted prior to the Supervised Release Revocation ("SRV") hearing and they were properly filed as legal declarations under Title 28 U.S.C. § 1746 which is admissible under the Federal Rules of Evidence, it is the obligation of the Respondent aka Anand Prakash Ramaswamy under Rule 3.8 of the "Rules of Professional Conduct" to investigate Petitioner's claims of USPO Burton lying but however did not conduct any investigation and still allowed her to make false statements along with truthful statements in open court. Petitioner is not defaming Kristy L. Burton as him and his family had proven that she had made false and contradictory statements. Like for example, she stated that Petitioner was a danger to the community and should not be released prior to the SRV hearing under Document #88 even though she had approved of a "Request to Travel"

emailing Petitioner's family approving of a trip out-of-state where he could be dangerous to anybody and hurt whoever he wanted as he must be such a danger to the community that he might hurt somebody, yet he shall be approved to travel out-of-state where he can be dangerous down in North Carolina. Does the Court get how many false statements and contradictions Kristy L. Burton had made and Document #88 was under penalty of perjury and her statements on June 30, 2015 were also under penalty of perjury? Such allegations are not conclusory when the evidence proves that Petitioner has a darn good standing for such allegations. Third factor is that the Court can request the activities of Anand Prakash Ramaswamy's PACER account and CM/ECF account activity to confirm whether he had exhausted his "free view" on all documents regarding Petitioner stating under Oath that USPO Burton had lied in 2015. If he had exhausted his free view on the documents served with him by the Notice of Electronic Filing ("NEF") on the Declarations Petitioner had filed while in Forsyth County Detention Center prior to the SRV hearing on June 30, 2015, then Ramswamy was well aware of USPO Burton making one or more false statements but yet did nothing about it, and allowed her to testify on the stand when the Court, as well as Ramaswamy was already made well aware of Petitioner's statements under penalty of perjury that she had lied. Even from the record in this case, the Clerk's Office had stated that Petitioner could still file documents with the Court but only through hand delivery and mailings. When USPO Burton said that the Clerk's office told her to tell Petitioner that

21

he was to cease filing documents with the Court. That is a misrepresentation of that Clerk's letter and a misrepresentation of Petitioner's compliance. The copy of his last text message, and I mean the LAST text message, Document #137-4, stated that Petitioner will comply with the Clerk's Office and file properly. Thus USPO Burton had no need to show up, and even then the Petitioner had agreed to comply and then USPO Burton made unreasonable demands. That is not a conclusory allegation as a lot of evidence weighs heavily against USPO Burton. She is free to respond and can file anything she wants if she wishes to respond. Since Ramaswamy had already been made aware of USPO Burton lying about a particular matter of which he had prosecuted, it was either incompetence, negligence, or that he knowingly put her in the stand even though he knew she had already lied about something. By allowing her to testify knowing that Petitioner had made an earlier claim that USPO Burton had already lied about something under Oath (Doc. #88), that is the probable cause basis for Petitioner's allegations of subornation of perjury. It doesn't seem defamatory when there is a lot of evidence proving it true. That is not vexatious and harassing. Rule 3.8 of the Rules of Professional Conduct by the North Carolina State Bar, which covers all Attorneys including those who practice in Federal Courts.

6. **Objection #6 to Document #149, Page 3 of 20, List entry #6:** "*A website's news story dated March 22, 2016, regarding a child pornography investigation (unrelated to that of Petitioner, by an agency other than the one involved in*

22

*Petitioner's case) (DE # 145-2)*". Petitioner's family printed that article because Petitioner was informed by text message from a woman named Laurie who revealed that Ian Freeman had been raided by the FBI on allegations of receiving child pornography through The Onion Routing ("TOR") Network and may have possessed child pornography, and it was also considered a sting operation which is similar to the sting operation claims by Detective Robert Bridge in his search warrant Affidavit. Both Petitioner and Ian Freeman had both received threatening emails (See Document #145-3) from a Tormail (Tor mail) type email provider which allows an assailant to send an email anonymously to anybody with an email address on the internet. Petitioner receiving multiple threatening emails in 2013 telling him to shut up or he is going to get it, is the exact same method-of-operation and similar typing style to that of the threatening message that Ian Freeman had received in 2016. Both claimed innocence, both received threatening email messages, similar method of operation and typing styles, and the only difference between the two are that Petitioner had given a false confession and that Ian Freeman didn't make an political enemy with his town/city chief of police like Petitioner had done in 2012. It is probable that the threatening emails are all tied together as Attorney Susan Basko had tried to explain to the court in her Declaration under Document #46. Attorney Susan Basko should be asked questions about whether she believes the threatening email that Ian Freeman had received is the same style as what had happened to Luke Rudkowski, Stewart Rhodes, Dan

23

Johnson, and others. It is related to the Petitioner via the tormail connection aka the threatening email connection. All who received such set up attempts and tor-mail type messages have all claimed innocence and were set up victims. Petitioner is connected to Ian Freeman through his situation and through the threatening emails both victims have received. It shows a pattern.

7. **Objection #7 to Document #149, Page 4 of 20, List entry #7:** "*Photographs of Petitioner with various other persons (with no explanation of the relevance of these photographs to the § 2255 Petition) (DE # 132 at 48-53)*". That is not true as Petitioner had fully explained in the 2255 Brief / Memorandum as to the relevance of those photographs to the § 2255 Petition (See Document #128, Filed 11/14/17, Pages 17 to 18 and Pages 81 to 82 and Page 94)(See Document #128-2, Filed 11/14/17, Pages 40 and 41 of 58). Even the threatening email had mentioned Alex Jones as one of the names listed in the threatening tormail.org email message before saying "and others are next". Petitioner with the various people in the photographs are significant because all photographs were taken before or close to the time of the alleged instant offense claim and Stewart Rhodes was one of the tormail.org victims that Susan Basko had warned about briefly in her Document #46 filing with the court. Stewart Rhodes is named directly, she mentions about "*. . .Stewart Rhodes of Oathkeepers, and several others. These men were aware that Brian David Hill had also had child porn downloaded onto his computer. They were all friends or associates of Brian David Hill.*" The photographs are relevant to Petitioner's 2255 claims in both

24

his 2255 Motion and accompanying brief / memorandum and evidence Exhibits in attachment to the accompanying brief / memorandum. It was all explained and can be factually shown from the record.

8. **Objection #8 to Document #149, Page 4 of 20, List entry #8:** *"Excerpts of medical records of Petitioner which include his date of birth, partial Social Security number, and other personal information (DE 131 at 3-21)"*. Petitioner had voluntarily released his date of birth as his date of birth is already publicly listed as part of his arrest records as kept by the jails. Petitioner's family had seen his mugshots at a public mugshot website which already publicly lists his date of birth. Petitioner did redact part of his own social security numbers in compliance with the U.S. Privacy Act and the Federal Rules. Petitioner had given implied consent in regards to the release of his medical records and has the partial social security number to be compliant with the Federal Rules.

9. **Objection #9 to Document #149, Page 4 of 20, List entry #9:** *"A purported transcript of a phone call Petitioner made to a deputy clerk in this District (DE # 137-1)"*. There was also the phone call recording of such conversation which is also in writing via the transcript. The Audio CD contains the whole conversation between the Deputy Clerk and the Petitioner in his investigation to determine if USPO Burton had been contacted by the Clerk and as to whether the Petitioner had complied with the Clerk's letter requesting that filings be done in paper form by mailing or in person, and the Deputy Clerk informed Petitioner that the order came from the Judge which backs witness

25

statements regarding USPO Burton mentioning about Judge Osteen contacting her. It is relevant to proving that USPO Burton had made a false statement regarding only the Clerk's office and the U.S. Marshals informing Kristy Burton about Petitioner's inappropriate filings via MultiMedia Messaging Service ("MMS").

10. **Objection #10 to Document #149, Page 4 of 20, List entry #10:** *"Color copies of Facebook pages for two persons: a former assistant district attorney (who had no association to Petitioner's criminal case) and of her brother, a police officer; this material includes photographs of those persons, of their children, and of their friends (DE # 132 at 56-68)"*. With all due respect to this Honorable Court, Petitioner could have made the mistake of not redacting the names of any possible children on both Facebook pages as those Facebook pages were printed in 2013 when Petitioner could use the internet at that time. However as to the Facebook pages themselves, they are of public figures, politicians, and those that have sworn a duty to hold and serve public office. Petitioner is willing to resubmit that single Exhibit with the proper redactions, if children's full names could have been released, as to the names and photographs of the people who post their children's photos on their own Facebook display photos, the Petitioner will agree to redact any names found to be proven to be of actual children to comply with the redaction requirements under the Federal Rules. However adults full names do not have such redaction requirement as the friends of such public officials may be involved directly or

26

indirectly in the criminal investigation against Petitioner Brian D. Hill. If the photo is of the public official and that official is with kids, then that is a public photo meant for good Public Relations (PR). The Facebook pages of the police Detective Robert Bridge and his sister Melanie Bridge proves the "Phil Berger Jr." connection. It shows that the police Detective Robert was connected biologically and family close knitted to the Assistant District Attorney Melanie Bridge who was under the payroll of Phil Berger Junior the District Attorney at that time in 2012 through 2014. The Facebook pages open the door to showing that there was connections which show a real or perceived conflict of interest. Petitioner had written online USWGO.com news articles calling the town Attorney Philip Edward Berger Senior a corrupt State Senator of North Carolina. Senators do not like being called words like "corrupt". Petitioner had written unsavory articles painting the Senator in a negative light prior to the alleged allegations that Petitioner had engaged in the instant offense in July 2012. With Phil Berger Junior being the Rockingham County District Attorney over the same county with Mayodan Police conducting the investigation along with Detective Robert Bridge, all located in Rockingham County. Phil Berger Jr.'s name was listed in the N.C. SBI forensic case file by Special Agent Rodney V. White as well as the U.S. Attorney Ripley Rand. That means that the Rockingham County District Attorney was involved in Petitioner's criminal case, Melanie Bridge is one of his employees who has a brother who was the very Detective who initiated the alleged child pornography

27

investigation against Petitioner and brought such investigation to the Town of Mayodan. Mayodan was already angry about Petitioner's articles calling the town of Mayodan corrupt and calling its town Attorney just as corrupt. He uses the term "corrupt" and writes negative articles and his son is the District Attorney of that very same county. The petitioner has a right to use the Facebook pages as evidence proving possible collusion and/or that there is a real or perceived conflict of interest involving the criminal investigation against Petitioner. Criminal investigations professionally have to be impartial and unbiased and not motivated by hate, and not to retaliate against somebody. The town of Mayodan had dealt with its fair share of negative online article postings by the Petitioner using his USWGO Alternative News website in 2012. The Petitioner agrees that he should redact the names of any possible children that are listed on Document #132 at pages 56 through 68 which is Exhibit 23 in attachment to Petitioner's 2255 brief / memorandum. Petitioner agrees that the Court should move to ask the Clerk to redact any confirmed full names of actual children and request that the Petitioner re-file Exhibit 23 if that is the case. The Petitioner didn't understand about the redaction requirements fully until his social security numbers were accidently published by the Government in his FOIA lawsuit. If that is indeed the case, Petitioner again apologizes for not redacting the names of children from the Facebook print outs as Petitioner didn't understand about the redaction requirements concerning that. However the names of adults on the Facebook pages do not

28

have the redaction requirement and may be of evidential use so it needs to remain without redaction. The first thumbnail for family is the Facebook page of Detective Robert Bridge which is identified as the brother of her. That is one of the Phil Berger Jr. connections which may constitute a real or perceived conflict of interest and Petitioner asks that Robert Bridge's Facebook picture and profile remains as part of the record since the display photograph shows a police hat further proving that Facebook page is of the police Detective and proves that the Detective is connected indirectly through Phil Berger Jr. through Assistant District Attorney Melanie Bridge. Phil Berger would be in conflict of interest due to the negative publicity news articles typed up by Petitioner in 2012 against Phil Berger Senior, and thus is a good reason to file the Facebook pages on record of both the Detective and his sister, when Melanie had worked under the payroll of Phil Berger Junior at that time in 2012. Detective Bridge's Facebook friends may also have some type of connection to Phil Berger Jr. or Senior that Petitioner had made an enemy of with his online news articles back in 2012, so they are relevant to be kept as evidence as part of the record. The time stamp of the Facebook page was reported to have been on "6/26/2013 1:02:18 AM." Both Facebook pages were printed in 2013 as part of Petitioner's investigation in 2013 into proving that the Detectives may have been in collusion or at least in conflict of interest by having any involvement or connection with Phil Berger Jr. or his father State Senator Philip Edward Berger Senior. Petitioner was allowed to use the

29

internet at that time so both print outs were legally acquired as part of his own private investigation. Petitioner had meant no harm if children's names were indeed confirmed to have been found in that Exhibit, and didn't realize that children's names should be fully redacted at that time by the redaction requirement and will happily redact those then re-file, if that is the case here, after the order to strike Exhibit 23 (Document #132 at pages 56 through 68) to comply with the redaction requirement and comply with the court on filing evidence that does not contain the full names of minors. If that was the case, this was unintentional and Petitioner apologizes for such error. Petitioner again has shown this Honorable court that he is trying to make sure that he follows the rules as best as he can, even though he is not a licensed attorney, and will work to make corrections to mistakes he had made if proven. His intention was not vexatious and not intending to harass the Government.

11. **Objection #11 to Document #149, Page 4 of 20, List entry #11:**

""*[Probation Officer] is [a] horrible person that didn't care that I had always wanted to prove my innocence and that at one time I had almost cut my neck with a kitchen knife on December, 2013, all because of this horrible crap." (DE # 137 at 9)*". Petitioner had been the subject of an emotional trauma which of course is part of Post-Traumatic Stress Disorder ("PTSD"). He had been raided by Mayodan Police after he had written negative and unsavory news articles about the town of Mayodan prior to the police raid. Guns were pointed at Petitioner from his statements recollecting what had happened on August 28,

30

2012. Petitioner was accused of desiring to have sex with children who can be little boys or little girls. If anybody who was innocent was accused falsely of wanting to have photographs or even videos concerning any possible sexual intercourse with children, anybody would be suicidal or fight to the death to prove innocence like you see in the usual Hollywood movies about a guy accused of a crime he did not do and had to fight for his life to prove his innocence before turning himself in. Child Pornography and people having sex with children and forcing them to have sex with adults are crimes worse than murder and shoplifting. Anybody even remotely accused of child pornography or child molestation are the subject of vicious bullying, verbal insults, vigilante attacks, skepticism, losing friends and/or family over such allegations, and their name is posted on a public list that anybody can access calling you a pedophile or sexual predator. Anybody accused of sex crimes involving children that are innocent may want to commit suicide and is a natural response for somebody who was set up with child porn. Even Luke Rudkowski said in his YouTube video back in 2013 (Document #131, Filed 11/14/17, Page 73 of 101) said that if he not realized that he was being set up with child porn and would have gone through customs, which may have decided to search his Laptop computer forensically, he would have been arrested and would have waited for months to even plead his case, his reputation would have gone through the mud and also stated that "it would have destroyed my life" while his face was pale. Petitioner's face was more than pale, he was panicking when

31

he realized that he was being set up which was why he put his face down saying "I cannot believe. . ." because Petitioner didn't think somebody would run around to frame him with child pornography when he overheard the conversation where Caruso told Petitioner's mother at the door what they were there for and explained that it was a search for "child pornography". Petitioner went through 100x more hardship and legal terrorism than what happened to Luke Rudkowski of We Are Change. Anybody emotionally going through a child pornography case that is innocent would think of suicide. It is not a threat and was not intended to be any kind of threat. Again, the Government had misconstrued his behaviors of Autism Spectrum Disorder as some kind of threatening gesture. The Government and the Court does not fully understand Autism and the federal laws need to be changed giving more legal rights and protections to people under Autism Spectrum Disorder so that Courts do not misconstrue people with Autism as making threatening or inappropriate type of comments or gestures when that is not the intent of somebody on the Autism spectrum. What would any reasonable person do if you are told you like to have sex with little girls or little boys when you never done such a thing or even be accused of possessing such material constituting depictions of adults having sex with little girls or little boys when you never done such a thing and were set up. Infowars and Darrin McBreen turned their backs on Petitioner and Darrin McBreen of Infowars had blocked Petitioner from calling their cell phone numbers. The level of stigmatization surrounding child sex, child

32

pornography, pedophilia, child molesters, rapists, and any of you in this Court will believe that no sane person will think of suicide when accused of an allegation of wanting to have sex with little boys and girls and being labeled as a pedophile. How many accused pedophiles almost get murdered in prisons, being raped or abused by other inmates, get scorn from the community and from the general public of society. People accused of pedophilia related sex crimes have a very difficult time finding a good relationship because nobody decent wants to date a "Pedophile!" even when you're not a pedophile. Now this Honorable Court understands why Petitioner has talked about suicide because he is blocked from proving his innocence while inmates have tried to kill him or wanted to rape him because of the subject matter of his charge. When he doesn't tell prison inmates what his criminal charge was, they call family members to find out for them. Then they tell other inmates that "*hey, Brian Hill is in here for possession of child pornography*" and inmates are ready to want to kill him. Petitioner being harassed by the Virginia State Police on a three (3) month home visit over the Sex Offender Registration and it makes him want to commit suicide. That is the emotions of somebody who is innocent and is being harassed and threatened with death over simply being wrongfully charged and convicted, while being blocked by all and any means from being able to prove his innocence. What if the Court was blocked from proving its innocence when accused wrongfully of a sex crime it did not do? How would the Court feel? It is the argument of empathy. Petitioner is

33

showing the Court that how he feels; others feel the same way with deteriorating health and depression, suicidal thoughts, all stemming from being accused falsely of pedophilia or child molestation. People get wrongfully raped over false sex allegations. Inmates and vigilantes are ready to beat up or kill anybody accused of pedophilia which is sexual crimes involving children. Petitioner didn't intend to threaten suicide and had only mentioned it briefly to explain the horrors and emotional anguish felt over not being allowed to prove actual innocence when accused of a sex crime involving children. The worst thing to be accused of is sex crimes involving children. I am sure we all can agree on that as to why Petitioner had suffered such despair and emotional anguish. If you were in Petitioner's shoes, you would feel the exact same way as Petitioner and anybody would fight almost day and night to prove innocence to something they didn't do.

12. **Objection #12 to Document #149, Page 5 of 20, List entry #12:** "*If I had been entirely blocked from proving my innocence, I would have committed suicide without hesitation.*" (DE # 137 at 9)(six suicide references appear in this document alone)". Petitioner has already been blocked entirely from proving his innocence but he is still got that hope that U.S. President Donald John Trump will pardon him to save him from this nightmare created by the Respondent. Petitioner is still trying to prove his innocence. Petitioner apologizes for talking about suicide but again, as explained in the last paragraph, Petitioner is accused of wanting to possess photos of children being

34

sexually abused. The Petitioner doesn't even want child porn and is against child pornography. This charge has turned his life upside down and has worsened his health problems to the extent where he takes hours to wash his hands and hours to take a shower. His mental health has taken a deep toll and his mental and physical health is slowly deteriorating the longer this case drags out. The Respondent doesn't seem to care that he had convicted an innocent man; he doesn't care about the emotional trauma caused by Respondent trying to railroad an innocent man into the sex offender registry. The Petitioner had only stated his emotions and how he felt as to why he feels the need to prove his innocence, to keep himself sane since he is not into having sex with children. If Ramaswamy were in Petitioner's shoes, would he had agreed with Petitioner's own arguments and the feelings and emotions that he had typed into his filings?

13. **Objection #13 to Document #149, Page 5 of 20, List entry #13:** ""*The Petitioner had long ago decided to either prove his innocence or commit suicide because he cannot stand being called a sex offender when he [is] a virgin and has never had sex with anybody and he was framed with possession of child pornography." (DE # 147 at 4)*". The Government, again, has misconstrued Petitioner's emotional trauma and hardships caused by his wrongful conviction because the entire criminal case has been one-sided because of ineffective counsel. It was his lawyer's JOB to represent the Petitioner and do everything in his sole power and resources to prove his

35

client's innocence so that the jury would have found Petitioner not guilty of the offense. Petitioner is a virgin and has not have sex with anybody. He has no Sexually Transmitted Diseases as he was tested clean while in jail. Petitioner has never sexually abused anybody in his life. The Petitioner has never knowingly downloaded child pornography and never will because he had never offended in the first place. For him to be forced to register as a sex offender, as a virgin, as a set up victim, the emotions and anguish run high and it hurts him more than what can be explained in words. Petitioner may not have expressed his despair and trauma in an appropriate manner by talking about "suicide" but his intentions are pure that all he wants in his life now is proving his actual innocence. He doesn't care about money and doesn't care about getting with the hottest girl on the block. He wants a good relationship with a beautiful woman and he wants a good life. He wants to prove his innocence and get his life back. He only desires to prove his innocence and lift that cross off of his back, to get that huge burden off of him. The State Police of Virginia are one of the ones harassing him with the three months visits and driving him towards talking about suicide, as well as the mandatory polygraph tests when they are proven to be inaccurate. Petitioner is being harassed by law enforcement when he is innocent and shouldn't suffer under any sentence.

## STANDARD OF REVIEW

36

The All Writs Act, 28 U.S.C. § 1651, grants federal courts authority to issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law. Federal courts have inherent authority "to impose prefiling injunctions to limit access to the courts by vexatious and repetitive litigants." Cromer v. Kraft Foods N.A. Inc., 390 F.3d 812, 817 (4th Cir. 2004). A party's access may be restricted by the district court based on that party's repeated filing of frivolous litigation. In re Burnley, 988 F.2d 1, 3-4 (4th Cir. 1992); Abdul-Akbar v. Watson, 901 F.2d 329, 332 (3d Cir. 1990); In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.") The rules provide no exception to pro se litigants such as Hill. See Mallon v. Padova, 806 F. Supp. 1189 (E.D. Pa. 1992).

Pre-filing injunctions should be imposed "sparingly," but are warranted under "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." Cromer, 390 F.3d at 818. The Court of Appeals for the Fourth Circuit has enumerated the factors a district court must consider when determining whether to impose a pre-filing injunction. In Cromer, the Fourth Circuit directed district courts to evaluate the following four factors: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party files his cases on a good faith basis, or only to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the

37

adequacy of alternative sanctions. Cromer, 390 F.3d at 818. In Cromer, the court noted that an injunction should be "narrowly tailored to fit the particular circumstances of the case." Cromer, 390 F.3d at 819 (quoting Brow v. Farrelly, 994 F.2d 1027, 1038 (3d Cir. 1993)).

The Petitioner has improved on his pro se filings since 2015 and is not meant to be vexatious. If Petitioner is filing the same evidence over and over again, then it would be construed as vexatious, harassing, or duplicative lawsuits.

First of all, The Freedom of Information Act (FOIA") lawsuit, civil case number 4:17-cv-00027-JLK-RSB, filed in the Western District of Virginia (Danville), is not vexatious, harassing, or duplicative as it fully pertains to the Petitioner receiving records from the Government pertaining to his criminal case discovery material that the Petitioner had stated that such evidence was necessary to proving actual innocence. The Petitioner had stated under Oath in his FOIA lawsuit, prior to filing the 2255 Motion in November, 2017, that he had not been allowed to review over all of the discovery evidence material prior to falsely pleading guilty. The FOIA lawsuit is new and that information was not provided to the U.S. District Court for the Middle District of North Carolina until after the lawsuit was fully established as Petitioner thought it would be one of the legal grounds for his 2255 Motion, that the U.S. Attorney Office has failed or refused to provide a copy of all discovery material to the Petitioner that the Petitioner claimed was necessary to proving actual innocence. The FOIA lawsuit was only meant to get access to, and to get the full and unfettered access to the discovery material of his criminal case

38

to fully establish enough actual innocence fact claims to overcome the procedural hurdles of the one (1) year statute of limitations concerning 2255 Motions. The Freedom of Information Act lawsuit is not vexatious, harassing, or duplicative, as John Scott Coalter had threatened to destroy the discovery evidence material (See Document #2-8, Complaint Attachment, case # 4:17-cv-27, Western District of Virginia, U.S. District Court, Hill v. Executive Office for U.S. Attorneys et al.) and without such evidence the Petitioner couldn't determine any further facts of actual innocence other than what he had claimed in all of Petitioner's pleadings filed after the 2255 Motion had been granted (Documents #126, #127, #128, #128-1, #128-2, #129, #130, #131, #132, #133, #134, #136, #137 #138 and #139 (*that particular filing had the same evidence in the public version but one is not redacted*), #143, #144 and #145). Petitioner's FOIA lawsuit is not frivolous and is not over yet as it is still awaiting the Appellate Court's decision of the Fourth Circuit U.S. Court of Appeals.

In order to obtain more facts of innocence other than being able to show good cause and a good factual basis that:

- (1) Petitioner gave a false confession a first fact of actual innocence

- (2) Petitioner can attack his guilty plea in the 2255 Motion on the basis of ineffective counsel Eric David Placke so severe that Petitioner would have lost the Jury trial because Placke was going to have no defense prepared and never met with the Petitioner to discuss a defense plan for the Jury trial but only to have begged the Petitioner to falsely plead guilty. Placke never showed Petitioner his

39

entire discovery packet of evidence, the discovery material was not entirely reviewed and Placke never gave the Petitioner a chance to go over the SBI forensic report and not be able to prove that his confession was indeed false which would attack the main factual basis of guilt. Giving a false confession proves that the factual basis of guilt is false and those certain facts are not facts. Proving false confession isn't just a reasonable doubt at a Jury Trial but is a fact of innocence since the guilt evidence used against Petitioner was the forensic case file, his confession, the Mayodan Police Report, and the Search Warrant Affidavit by Detective Robert Bridge. Since the confession was false and Petitioner had repeated the same story since his charge in multiple filings since 2014 that he was threatened to confess falsely and never changed his story as liars would change their stories. Petitioner has stuck with what he knew at the time and he knew that he gave a false confession which was later proven after Petitioner secured a copy of the Mayodan Police Report outside of the secretive discovery agreement between Mr. Placke and the U.S. Attorney Office that Petitioner was never able to review as to why he was told by Attorney John Scott Coalter that he was never allowed to make photocopies of the discovery material even though there was no child porn thumbnails and no blurred thumbnails either even though blurred thumbnails of suspected images would comply with the Adam Walsh Act restrictions on child porn photos. However no child porn photos were confirmed and none were to the knowledge of Petitioner, Roberta Hill, Stella Forinash, and Kenneth Forinash at the time of January 22, 2015, when Petitioner and those three

40

witnesses had reviewed over the discovery material. It was only words and the forensic report never even confirmed that the alleged child pornography files by Detective Robert Bridge (Document #84-2) were even found on the seized Black Toshiba Laptop Computer and no confirmations on any computer. No confirmations by the National Center for Missing and Exploited Children ("NCMEC"). That would have appeared to look like it could be proof of guilt with exception to the Petitioner furnishing evidence proving forensically that his Laptop was hacked and thus caused eMule to even download such files. However for the forensic report to not have confirmed the very child pornography files that Robert Bridge claimed had downloaded from Brian's/Roberta's IP Address 24.145.156.211, does not make the story appear credible. It is the forensic expert's job to confirm the very child porn that Detective Bridge claimed was downloaded by Brian's/Roberta's IP Address was found and confirmed to have been found on Petitioner's computer, that is was confirmed to be of actual child pornography as dictated by federal/state statute, and the method used to even obtain such child pornography files. None of that was proven. Mr. Placke could have argued the contradictories and the issues throughout the whole case, raised facts of innocence along with reasonable doubts and Petitioner would have been found not-guilty. The result would have been different if Placke were effective counsel. John Scott Coalter was just as ineffective as he too didn't raise any facts of innocence to try to get Petitioner a low bond for bail to be allowed out of jail to not lose his social security benefits and move to withdraw his guilty plea while protecting his

41

diabetic health from further deterioration. Therefore the guilty plea is not and was not an informed and voluntary guilty plea since the entire discovery was not reviewed. The Court can review over the past hearing transcripts in 2014 and discover that Petitioner did not mention anything about the State Bureau of Investigation forensic report. Only Mr. Placke mentioned briefly about that forensic report on September 30, 2014, when witness Susan Basko filed Document #46, when he stated that he had given the discovery materials back to the Respondent. However Petitioner never mentioned anything about the SBI case file in any of his pro se filings in 2014, never mentioned that he was aware of forensic evidence proving that there was no child porn in the very ASUS Eee PC netbook that he told the Detectives that there was child porn on it and that they didn't get it during the search and seizure on August 28, 2012. Had Petitioner been given access to the entire discovery papers before June 10, 2014 which was the date set for Jury Trial or even before the Status Conference set on June 4, 2014, Petitioner would have attempted to proven his false confession for his motions to suppress and would have severely weakened the Government's case, then Petitioner would have had a better position for the Jury Trial. The download dates also would have been argued at the Suppression hearing on June 4, 2014, causing the Court to set another hearing to question N.C. SBI Special Agent Rodney V. White to determine if his report is credible, valid, and is admissible under the Federal Rules of Evidence, or if any of his report would support Petitioner's claim of innocence. However Placke wouldn't have it because he never showed the N.C. SBI case file

42

to Petitioner as Petitioner would have made a big deal out of the download dates and other issues. Petitioner had no access to any evidence at the Status Conference and Placke never showed him the whole discovery leading to the decision of Judge Tilley Jr. denying his motions to suppress. Petitioner was blindsided into that guilty plea agreement by not being given access to his entire discovery. Whether Placke intended this with ill will or not, it still deprives him of his Constitutional rights secured by Giglio v. United States, 405 U.S. 150 (1972); John L. Brady, Petitioner, v. STATE OF MARYLAND. No. 490. Argued: March 18 and 19, 1963. Decided: May 13, 1963. Court appointed counsel isn't just supposed to offer advice and visit their clients in jail throughout the course of a criminal case, but they are also supposed to protect the rights of their clients including the right to review over all discovery evidence material, to compel the witnesses under compulsory clause to testify and allow the criminal defendant to confront the witnesses in open court and ask them questions to test their credibility and truthfulness, and to provide as much evidence as necessary in their defense of a criminal allegation. Petitioner's guilty plea was uninformed, the Petitioner did not know what he was pleading guilty to except by the limited access to the portion of the entire discovery evidence. Respondent is wrong about Petitioner's admission of guilt in 2014 and Petitioner's guilty plea was not valid[1] and thus should not be used against Petitioner claiming actual innocence in his 2255 Motion.

---

[1] To determine whether a defendant's guilty plea is "a voluntary and intelligent choice among the alternative courses of action, a trial court must follow the guidelines set forth in Boykin v.

- (3) The fact that Petitioner is willing to give up his encryption password to an independent computer forensic expert (requesting that the CJA voucher can pay for such expert if the court so requires) to prove that there are no child pornography files in his encrypted containers on his DVD discs which are read-only media. Hard disk drives are read/write media and the alleged child pornography claims seems to be on read/write hard disk drives that anybody can add, delete, or modify computer files on a vulnerable computer that was hacked into easily since it had no working Anti-Virus and has no working security protections since the computer in question did not use automatic updates. That fact as well is another fact of innocence, because if a real child pornographer understands how to use encryption software then a smart criminal may highly likely store such child pornography only in encrypted disks or encrypted containers to prevent law enforcement from building a case. Encryption can protect a criminal from having evidence used against him/her in court and thus a charge would be difficult to mount without cracking the encryption password. When the Petitioner is willing to disclose his encryption password to an

---

Alabama, 395 U.S. 238, 242-43, 23 L.Ed.2d 274, 89 S.Ct. 1709 (1969); North Carolina v. Alford, 400 U.S. 25, 31, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970); See, Moran v. Godinez, 57 F.3d 690 (9th Cir. 1994). Guilty plea made involuntarily or under threat, duress, coercion or confusion may be challenged by collateral attack on direct appeal or by motion under section 2255. Strickland v. Washington, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) " applies to challenges to guilty pleas based on ineffective assistance of counsel." Jurisdictional defects and claims are not waived. United States v. Caperell, 938 F.Zd 975, 977 (9th Cir. 1991). A guilty plea does not bar appeal based on a claim the applicable statute is unconstitutional or the indictment fails to state an offense. United States v. Mantilla, 870 F.2d 549 (9th Cir. 1989), amended, 907 F.2d 115 (9th Cir. 1990).

independent expert to examine his seized encrypted DVD discs and no child

pornography is found on them confirming Petitioner's assertions, then it is obvious

that Petitioner knows how to use encryption software as a child pornography

suspect but yet such encrypted mediums seized by police do not contain a single

child pornography image.

Second of all, the 2255 Motion has to bring up about the issues raised in Petitioner's

FOIA lawsuit. Petitioner has not filed any other lawsuits and it is only the FOIA and the

2255 Motion. Both cases are not meant to be vexatious, harassing, or duplicative.

**Objection #14 to Document #149, Page 7 of 20, Paragraph 2 of IV. ARGUMENT:**

"*In the above-captioned matter, Petitioner's filings are vexatious and harassing, and in

particular, in his leveling of conclusory allegations against nearly every party involved in

his criminal case (judiciary, probation officers, assigned counsel, investigators, and

prosecutors) as demonstrated in the excerpts in Section II (Statement of Facts) above.

Moreover, Petitioner's frequent repetition of such conclusory allegations in items filed

with the Court arguably constitute a means of publishing to the world, through the ECF

system, accusations damaging to the reputation of various individuals in a forum in

which they have no recourse to respond*". Assigned Counsel is supposed to be accused of

being ineffective as assistance of Counsel. The U.S. Supreme Court and all Appellate

Courts give all Petitioners and criminal defendants the Constitutional right to prove

ineffective assistance of counsel and be able to challenge such deficiency to either get a

new trial or even to withdraw a guilty plea in a 2255 Motion via collateral attack. It is not

45

"conclusory allegations" to demonstrate that Counsel was ineffective and didn't explain the importance of reviewing over, ALL discovery material, and prior to making a decision on taking the guilty plea. If the Petitioner had been allowed to review over all discovery material prior to the Jury Trial, then Petitioner would have refused to take the guilty plea and wouldn't have listened to his families advice on "take the plea agreement, take the plea agreement" due to the bad advice of ineffective counsel. Petitioner's family had bared ear-witness to Eric David Placke admitting that he was going to present no defense for Petitioner and Petitioner would have faced twenty years in prison if he had not taken the guilty plea. That is NOT a conclusory allegation. Even in the Transcript of the June 4, 2014 federal hearing which was a status conference, Petitioner had stated in open court that "This man is not doing it. This man is not doing what he is supposed to do to prove my innocence". The fact that Petitioner didn't know about the download dates in the N.C. SBI report until after he was convicted is unprofessional and in sheer violation of Petitioner's constitutional rights under Brady v. Maryland and Giglio v. United States. He didn't know that his confession could have been proven false had he been given entire access to the discovery material, instead he goes to get a mental evaluation at Butner, NC, to learn some more about the case against him and even at that interval he still didn't have the knowledge of what was in the entire discovery evidence.

Respondent is free to subpoena or voluntarily request that all persons who I have brought forth allegations against should respond to what I am accusing them of since I had no right to response until after my false guilty plea. Respondent is wrong to say that I

am not giving them an opportunity to respond as they have the right to respond by asking the Government to submit any of their verbal or testimonial statements in a written Affidavit or Declaration to respond to Petitioner's allegations.

How is the Petitioner damaging the reputations of those that he specifies in his Affidavits/Declarations which are under penalty of perjury including his personal belief that U.S. Probation Officer Kristy L. Burton lied about one or multiple things on the stand in open court? How are Kenneth R. Forinash, Stella Forinash, and Roberta Hill damaging the reputations of those that Petitioner accuses of wrongdoing without giving them an opportunity to respond when they can ask the U.S. Attorney to file a document for them to respond against Petitioner? How is just simply stating that Phil Berger Jr. is in conflict of interest damaging the reputation of Phil Berger Jr. when showing a conflict of interest is a legitimate question of fact and professional conduct? If Detective Robert Bridge is connected with Melanie Bridge who had worked for District Attorney Phil Berger at the time and was on his payroll in 2012-2013, on record, how is simply bringing up that conflict of interest a damaging factor of reputation?

One of the Cromer factors was in regards to "(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits". Only two lawsuits were ever filed by Petitioner. This 2255 Motion type lawsuit and other is the FOIA lawsuit which was not filed in the Middle District of North Carolina but was filed against the Executive Office for United States Attorneys ("EOUSA") and the U.S. Department of Justice ("U.S. DOJ"). The U.S. Attorney Office of Greensboro making the

47

claims in Document #149 and Document #148 of vexatious, harassing, and duplicative lawsuits forgot to mention that it was supposed to be the jurisdiction of Rick Mountcastle the acting U.S. Attorney for the Western District of Virginia, in Roanoke. It was not the jurisdiction of the Greensboro U.S. Attorney Office, but they injected themselves into Petitioner's FOIA lawsuit and denied every allegation in their answer, even when such denials can be proven false such as collectively denying that they were aware of Petitioner's health conditions which had contradicted their knowledge of the Presentence Investigation Report and two mental evaluations in his criminal case. So Petitioner didn't even file a lawsuit against Anand Prakash Ramaswamy but more of a lawsuit against EOUSA and U.S. DOJ to try to get access to his criminal case discovery packet since Attorney John Scott Coalter had threatened to destroy such material. That was why Petitioner had attempted to subpoena Attorney Coalter was to prove that he wasn't given a copy of all discovery material pursuant to his FOIA requests but it was rejected because Petitioner had to financially reimburse the witness to produce such records as per his attempted subpoena and was considered premature. Petitioner couldn't successfully appeal that decision due to the legal restrictions in regards to barring interlocutory appeals and that only a final decision could be appealed. If that kind of lawsuit is considered vexatious, harassing, or duplicative, then we might as well shut down all FOIA Requests and lawsuit and consider all of them to be vexatious, harassing, or duplicative. When Petitioner's FOIA lawsuit wasn't getting anywhere, Petitioner had decided to file the 2255 Motion in November, 2017 since Petitioner wasn't given access to all of the discovery evidence material he needs to further prove even more possible

48

facts of actual innocence. Petitioner had to explain why the U.S. District Court should have moved to either rule that the Government in the FOIA case had inappropriately covered up or concealed the existence of and improperly withheld critical criminal case discovery records pursuant to the FOIA or compel them to release all of the discovery material needed for Petitioner to fully prove the Government's evidence and witnesses to being untruthful and thus would prove Petitioner innocent. Petitioner's FOIA lawsuit is not vexatious, harassing, or duplicative. Since the appeal is still ongoing (*Appeal Opening Brief and in compliance with the 13,000 word limit and thus is valid*) Judge Kiser's decision (See Document #149-2) regarding the allegations of Petitioner making a threat towards counsel in regards to "asking" for an investigation into Cheryl Thornton Sloan and Anand Prakash Ramaswamy. Asking for an investigation and for an independent criminal investigation is not a threat towards any counsel but is a matter of civic duty when Petitioner has good reason to believe that a federal law may have been violated. If asking for a criminal investigation into a party is considered to be threatening which would land me in contempt of court, then maybe this Court needs to charge and arrest 45th United States President Donald John Trump with contempt for threatening Hillary Rodham Clinton (his Presidential campaign rival) when repeatedly asking for an criminal investigation into former Secretary of State since the simple act of asking for an investigation is threatening the Government's counsel. Hillary Clinton was a lawyer and so she would qualify as Government counsel, so Trump would be considered a violator of criminal contempt of court since he had dared to ask for an investigation into Hillary Clinton and asking to "lock her up!". That means Donald John Trump is a vexatious and

49

harassing if Judge Kiser's opinion applies to Petitioner's words of asking for an investigation into the other party for any criminal misconduct.

It is also a fact that while U.S. Attorney Office counsel Cheryl Thornton Sloan could have made any claim (like Respondent is accusing Petitioner of!) of accused the Petitioner of being vexatious and harassing and could have had the right to do so, but she did not accuse the Petitioner of engaging in vexatious and harassing behavior in Petitioner's FOIA case. Respondent cannot just speak words for her and use Judge Kiser's claim that asking for an investigation is threatening the Government's counsel to justify that in Petitioner's 2255 that it may be vexatious and harassing.

**Objection #15 to Document #149, Page 7 and 8 of 20, Paragraph 2 of IV.**

**ARGUMENT:** "*Similarly, Petitioner's inclusion of letters of complaint that Petitioner made against persons involved in his criminal case have no relevance to his § 2255 Motion, but appear to be included only to tarnish the individuals' professional reputations. While the § 2255 Petition is not the proper forum for publicizing his complaints, Petitioner includes only his accusations within these complaints, and never states whether any were substantiated. This serves no apparent purpose other than to disseminate his complaints through the ECF system and deny recourse to those he accuses of misconduct; it is a form of harassment, as further described below under the second Cromer factor*".

Normally before the Court will even consider certain types of civil cases, the Court usually expects you to go through all possible and available administrative remedies. In Petitioner's FOIA case, Petitioner was expected to file a FOIA Appeal complaint with the Office of Information Policy, as by law, before the Petitioner could even lodge a FOIA lawsuit.

The reason why Petitioner had filed copies of complaints is to prove to the Court that the Petitioner was willing to work with the various Government agencies to investigate into Petitioner's allegations as well as the fact that he has faxed and mailed any important evidence pertinent to such complaints. They were all ignored and nobody took action except to protect the Government by ignoring it or sending a formal letter back to the Petitioner refusing to take action or affirming the action (like in Petitioner's FOIA Appeal). All complaints are in relevance to Petitioner's 2255 case as it pertains to Petitioner trying to exhaust every available remedy to attempt to prove actual innocence. Petitioner tried every single day to remove the unlawful Government impediment of the six months of home detention before working on his 2255 Motion and evidence to attach to such motion and provide a memorandum / brief as well in support thereof but was unsuccessful because nobody wanted to admit that U.S. Probation Officer Kristy L. Burton was making false statements in Federal Court which is technical perjury. If I lied about one or two things while under Oath in Federal Court, had no ineffective counsel, had no deteriorating health problems, and was not under any kind of duress, then that is perjury and I should be criminally charged for it. Same logic applies to Kristy L. Burton.

51

For example the SBI Internal Affairs complaint on Document #136 plus all attachments prove that Petitioner had tried to exhaust the remedy of attacking his wrongful conviction and proving his actual innocence by asking the SBI Internal Affairs to investigate into Special Agent Rodney V. White, the same man who had written the forensic report and gave to Anand Prakash Ramaswamy aka the Respondent in October, 2013. He wanted an investigation based on the child pornography download date claim and to look into the claim made in the whistleblower text messages (Document #71-4 and #71-6 ) that Petitioner had received in 2015. Petitioner thought that was very relevant to the Habeas Court to review such filings since it directly pertains to the guilt or innocence of Petitioner. It had bazaar claims of the SBI Agent working to wrongfully convict an innocent man. Respondent was wrong to say that such complaint bares no relevance to the 2255 Motion, and accompanying Brief and additional evidence declarations that had also accompanied the 2255 Motion and Brief. It was filed under penalty of perjury so it is admissible under the Federal Rules of Evidence. Respondent has made no attempts to deny the admissibility of such evidence. Petitioner had heard no word from the State Bureau of Investigation ("SBI") regarding the investigation and was never interviewed. This further proves to this court that there lays a dereliction of duty when their Public Relations (PR) image may look bad to convict an innocent man with child pornography.

**Objection #16 to Document #149, Page 7 of 20, Paragraph 1 of IV. ARGUMENT:**
"*The first Cromer factor for determining whether the court should enter a pre-filing injunction is the extent to which a Plaintiff has filed "vexatious, harassing, or*

*duplicative" lawsuits. Cromer, 390 F.3d at 818. This factor weighs heavily in favor of the entry of a pre-filing injunction against the Plaintiff."*

By explaining why and how all filings are relevant, that the evidence is properly filed under the Federal Rules of Evidence, especially Declarations filed and properly executed under Title 28 U.S.C. § 1746, and explaining why and how all evidence applies to the claims made by Petitioner, even if such claims may not be agreed upon by the Court, it is not intended to be vexatious and harassing, and should not be construed as such otherwise it puts all criminal defendants into jeopardy. Petitioners can file evidence that the Court may agree with or disagree with, but as long as the Petitioner has good intentions and is doing this to prove a point to the Judge or Judges, it is not an intention of vexatious and harassing behavior.

**Objection #17 to Document #149, Page 8 of 20, Paragraph 3 of IV. ARGUMENT:**
*"While there has been no judicial finding in the above-captioned matter that Petitioner's prior filings were 'frivolous', a full reading of the record shows that they have been treated as baseless and routinely dismissed. For example, on November 10, 2014, the district court dismissed sixteen of Petitioner's pro se motions by oral order (see docket entry for 11/10/2014; see also docket entry for 07/01/2015). Petitioner's mental condition has been found to be related to the content and volume of his court filings (DE # 23; # 33 (PSR) at 14-15; see also Petitioner's rejection of this: "I do not recognize the wrongful diagnosis of "delusional disorder" by Dr. Keith Hersh..." (DE # 137 at 3 (not filed under seal)(emphasis added)); see also Tr. of Mot. Hr'g, Sept. 3, 2014 (DE # 114 at 19-*

20)(colloquy between counsel for Petitioner and the Court). *Because the report and PSR are under seal, the government will not quote directly from those here, but would instead ask that this Court consider the content those referenced items vis-à-vis Petitioner's numerous motions.*"

In response to Respondent's statement regarding "*a full reading of the record shows that they have been treated as baseless and routinely dismissed. For example, on November 10, 2014, the district court dismissed sixteen of Petitioner's pro se motions by oral order (see docket entry for 11/10/2014; see also docket entry for 07/01/2015*" The Petitioner's past filings were at a time when Petitioner was in jail, didn't have as much legal knowledge and didn't understand the rules as good as he did during the 2255 Motion. Petitioner has improved on the content of his filings since then and follows the rules better than when he was in jail. His filings while he was incarcerated, while he was rarely given access to a law library the entire incarceration, and that issue stands that his filings while in jail should not count against Petitioner considering how his filings look more professional and proper. When he had filed evidence, he made sure to have stated that it was in support of such 2255 Motion and 2255 Brief. He didn't file things as good back in 2014 because he was in jail. It is premature to compare his 2014 baseless pro se filings to his 2017 filings and act as though that those baseless filings may apply somehow to connection with his FOIA lawsuit since the pre-filing injunction also retroactively applies to his FOIA lawsuit as well. In fact the Hon. Judge Jackson Kiser stated that Petitioner's filings were demonstrating a command of civil procedure beyond that of an ordinary pro

54

se filer. See Document #16, Western Dist. Of Virginia, Hill v. EOUSA, Case # 4:17-cv-00027-JLK-RSB, Pageid#: 308 and 309: "*Despite these self-described limitations, Plaintiff has already filed multiple motions and demonstrated a command of civil procedure beyond that of an average plaintiff appearing pro se.*"

In regards to the "*Petitioner's mental condition has been found to be related to the content and volume of his court filings (DE # 23; # 33 (PSR) at 14-15; see also Petitioner's rejection of this: "I do not recognize the wrongful diagnosis of "delusional disorder" by Dr. Keith Hersh…" (DE # 137 at 3 (not filed under seal)(emphasis added))*)" Docket Entry of #137 at paragraph 3 or page 3 does not have to be filed under seal, what does the Respondent mean by "not filed under seal" before "emphasis added"? If he means Document #137-3 then all that letter contains is a fax letter to Kristy L. Burton proving that Petitioner had made an effort to peacefully reconcile with his Probation Officer not knowing that there was to be a "Petition for Warrant or Summons. . ." and not knowing that she was still pursuing the warrant for his arrest while lying and not withdrawing her Petition for warrant or summons while ignoring his Autism and not giving any special consideration to his situation and to his Autism even though that was part of his Presentence Investigation Report as further brought up by Attorney Renorda Pryor.

Now as for the claim of "*Petitioner's rejection of this: "I do not recognize the wrongful diagnosis of "delusional disorder" by Dr. Keith Hersh…"* " I think Respondent could have cited the incorrect document as it may not have been Document #137 but he may be

referring to Document #80. If he is referring to rejection of "delusional disorder", well again, This Honorable Court needs to reevaluate him to determine if "delusional disorder" needs to be ruled out. Petitioner does change his opinions and beliefs with new evidence that comes in and doesn't stick with a delusional belief. Petitioner believes he is actually innocent because he is actually innocent and there is a lot of evidence pointing to that. It is not delusional to personally believe in your innocence when you're accused of a crime that you believe you did not do. It is up to you to find the evidence to prove your actual innocence for the crime that you did not do. That is not a delusional disorder. Dr. Keith Hersh didn't get all of the facts from First Assistant Federal Public Defender, Eric David Placke. Placke was so ineffective that he didn't show Dr. Keith Hersh the threatening emails; he didn't show Susan Basko's emailing attempts to Placke to Dr. Keith Hersh regarding the set up on others as briefly mentioned in her Declaration (Document #46). He didn't show Dr. Keith Hersh any evidence that would have caused Dr. Hersh to not diagnose the Petitioner with "delusional disorder" That is why Petitioner asks this court under the authority of the 2255 statute and the Court's inherit power in criminal cases to mentally reevaluate Brian David Hill by a new psychologist and conduct the mental evaluation based on his false confession, based on whether Dr. Keith Hersh was right or wrong with diagnosing Petitioner with "delusional disorder", and whether Brian had a good reason to make allegations against the Town of Mayodan and against Philip Edward Berger for the various things found in his personal investigation back in 2012 to 2013. He is not wrong and shouldn't be punished in Court for wanting to resist his diagnosis of delusional disorder. He was given ineffective counsel that wouldn't

56

investigate anything for him to prove his innocence. Petitioner and his family and friends did 100x times better job than Mr. Placke. The Court should move for a new mental evaluation under the Criminal Justice Act ("CJA") 21 Voucher for appointment of or payment for another independent psychologist to test his claims of innocence by evaluating his false confession and determine why and how he gave such false confession, and then determine whether Petitioner was really delusional or not. Petitioner believes it needs to be ruled out and hopes that the Court will push for an independent expert to test whether he was delusional or not just for stating that he was framed with child porn and had suspected it, even though he wasn't able to review over all discovery materials. If he had been allowed to review over his entire discovery materials, he would have told Dr. Keith Hersh that that *From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013.*" (Cited from the SBI forensic case file on Brian David Hill that was given over to the U.S. Attorney Office in October, 2013) Then of course Dr. Hersh could argue that the dates could have been a small error. Then Petitioner could reveal later on that he had filed the Internal Affairs complaint with those download dates and they have not refuted that claim till this very day, and still haven't refuted those download date claims. It is logical for Petitioner to believe at this point that somebody had downloaded alleged child pornography to his seized laptop for 11 months while in the custody of the Mayodan Police Department and the N.C. State Bureau of Investigation. Petitioner is trying to make sure that his claims are fact based and based on evidence by either Affidavit or older email record when he was allowed to use the internet, his families email records,

57

and any other tangible evidence that can be cross examined, authenticated, and validated as facts. Petitioner also cited from the Government's own evidence in this case in regards to his innocence. Petitioner is not delusional for wanting to bring out the truth to this Honorable Court. Dr. Keith Hersh had never evaluated Petitioner before he had entered a false plea of guilty. If Petitioner was able to demonstrate to Dr. Hersh his reasons of innocence after fully reviewing over every page of the entire discovery evidence material obtained first by Mr. Placke, Dr. Hersh never would have diagnosed him in the first place with "delusional disorder".

### Objection #17 to Document #149, Page 9 of 20, Paragraph 9 of IV. ARGUMENT:

"*Petitioner's litigiousness is not limited to the above-captioned matter. The government is including as an attachment the docket sheet in civil case number 4:17-cv-00027-JLK-RSB, filed in the Western District of Virginia (Danville). There, Petitioner as Plaintiff sought to subpoena one of the attorneys in his criminal case, the case agent from his criminal case, the local police, and the undersigned, whom he named in the following excerpts:*"

The Petitioner will respond to each allegation after each excerpt that the Respondent had cited.

"*[The undersigned] is acting as evil as he can get, making an innocent man register as a Sex Offender under his malicious prosecution knowing that he had a weak case and always had a weak case against an innocent man that only wanted to prove his innocence so that he wouldn't lose his sanity to the extent of ending his life forever. [The undersigned] is the worst kind of District Attorney at any level of Government.*"

58

Document 53 at 14, in WDVA case 4:17-cv-00027-JLK-RSB, 01/03/18.
Well it is evil to make an innocent man register as a Sex Offender. It is malicious prosecution when he fails or refuses to investigate any of Petitioner's claims and evidence of his actual innocence. When discovery of any evidence from the Government involving innocence is revealed, under Rule 3.8 of the Rules of Professional Conduct under the North Carolina State Bar ethics rules, it is Respondent's duty to disclose any evidence of Petitioner's factual innocence. His false confession is a fact of innocence as other people that have been exonerated by the Innocence Project; they were found innocent even though they said they were guilty (Document #132, Pages 2 through Page 5 of 103) when the facts were that they were innocent by DNA evidence or other applicable evidence. Respondent doesn't want to acknowledge that Petitioner had given a false confession which is one (1) fact of actual innocence. It doesn't entirely prove innocence alone but that is at least one fact of innocence. Petitioner stated about the weak case argument because that it what Attorney Emily Gladden of Raleigh, North Carolina, told Petitioner in front of his whole family. She said from her own legal opinion that the Government had a weak case and she thought that was why Petitioner had gotten a prison sentence of time served for something as serious as child pornography. The download dates of alleged child pornography according to the SBI case agent should also draw a fact that the forensic report was not done properly or there was a blatant admission of misconduct that he would allow alleged suspected child pornography to download on Petitioner's Black Toshiba Laptop Computer until July 28, 2013. That is evil when Petitioner is supposed to be harassed by state police by getting home visits every three

59

months asking him questions like a criminal, had faced mandatory polygraph tests (United States v. Scheffer, 523 U.S. 303 (1998), U.S. Supreme Court) when such tests are not reliable and are factually found to not prove factual innocence and cannot be proven as factual guilt either. Those tests are as accurate as a coin toss which isn't acceptable as factual proof of lying. So it is yet another form of harassment that Petitioner has to go through as a result of being wrongfully convicted. Petitioner was kicked off of Sex Offender Treatment (Document #124) because he kept asserting his innocence and didn't want to be surrounded with child/women abductors, child molesters, and rapists. If that isn't evil to make an innocent man suffer with no recourse but to fight on his own with pro se filings because he cannot afford a lawyer and nobody wants to help him due to the stigmatization/stigmata surrounding child porn charges, it is evil and does not protect the children from real sex offenders.

"How disgusting! [The civil AUSA] and [the undersigned] should both be sitting in FEDERAL PRISON RIGHT NOW. They both should be in prison and whoever else they are involved with who victimized Brian David Hill so that those corrupt federal attorneys can ruin lives for their perfect criminal conviction record which they can polish on their walls like a trophy."

Id. at 11 (emphasis in the original).

*"Nor are petitioner's statements in his civil suit confined to the government attorneys:"*

*"[Name of CJA panel attorney] is a corrupt lawyer that needs to have his Criminal Justice Act funding revoked and his Attorney license revoked and needs to be disciplined by the State Bar, and just as corrupt as [name of First Assistant Federal Public Defender] who has committed Subornation of Perjury by forcing an innocent man to falsely plead guilty under Oath..."*

Well it depends on what the intent was on why Anand Prakash Ramaswamy would not transfer a copy of the State Bureau of Investigation forensic case file and the confession audio CD to the EOUSA as per Petitioner's FOIA request. Petitioner believes that there was a cover up or concealment of the existence of the forensic case file and the Confession Audio CD in response to Petition's FOIA requests since the EOUSA gave Petitioner part of the entire criminal case discovery but the rest of the discovery material was not provided by the FOIA/Privacy-Act Office of the Executive Office for U.S. Attorneys ("EOUSA"). Then a believed false statement was made saying "0 records were withheld in full" when the release of records was from the prosecution case file concerning this case but not all records were released, so Petitioner has good reasons to make such accusations. Petitioner had asked his family to look up laws regarding cover up or concealment of Government agency records and they found the Obstruction of Justice clause pertaining to the cover up, destruction, concealment, or alteration of any agency records may be in violation of Title 18 U.S.C. § 1519. ("*Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter of case*", as mentioned in Document #2-3 at page 8, in WDVA case 4:17-cv-00027-JLK, 04/25/17.) Even if the Petitioner doesn't understand the internal policies and internal politics of the United States Attorney Office, the Petitioner had good enough reason to believe that Anand Prakash Ramaswamy may

61

have concealed or covered up the existence of the State Bureau of Investigation forensic case file and the confession audio CD from the Town of Mayodan Police Department. Even if it is their local policy to destroy the case files from older cases, Ramaswamy was made well aware of the fact that on June 30, 2015, at the SRV hearing that Petitioner was going to file a 2255 and to work with Attorney Cynthia Everson on the matter to help him prove his innocence. For the SBI case file to have disappeared and even the Respondent isn't explaining under Oath whether it had truly been destroyed or somehow still retained somewhere at the U.S. Attorney Office, there is a good enough reason for the Petitioner to feel that somebody there had obstructed justice. Not to mention, Placke admitted that the police report and the State Bureau of Investigation case file were in PDF format from the U.S. Attorney Office. See Transcript for September 30, 2014, Document #115, Page 18 of 21: "*Mr. Placke: Your Honor, I received in terms of discovery in this case from the Government two CDs, one of which contained the audio recording of the interview of Mr. Hill, the other which contained law enforcement reports in PDF format. I've printed those out. . .*". Petitioner has also scanned a copy of the Mayodan Police Report aka a law enforcement report separate from the discovery agreement due to an outside request (*request made via FAX not through any lawyer*) asking the Town Clerk Melissa K. Hopper for a copy of such police report for his investigation to prove his innocence. When Petitioner had scanned such report and created a PDF file on his computer, the size was relatively small depending on the Resolution size and quality of the document image pages and if OCR text scans capability was added to such PDF document. If the Government had already created CD-ROM discs with the PDF files of law enforcement

62

reports, it wouldn't take much space for the U.S. Attorney Office to store such PDF files with such a small size for the usual reports, in like a digital record keeping system since we know the FBI and other Government agencies have digital record keeping systems. Petitioner has plenty of good reason to believe that Ramaswamy had covered up or concealed the existence of the State Bureau of Investigation forensic case file and the confession audio CD from the Town of Mayodan Police Department. Even if the U.S. Attorney Office had a record destruction policy as Cheryl Thornton Sloan had stated, it is bazaar that the law enforcement reports originated in PDF format during the discovery process, but yet the Government cannot just simply turn that PDF over to the EOUSA as part of the Petitioner's FOIA request. So if the document is mainly just words and no pictures, then it shouldn't be that much in megabytes and thus the Government wouldn't have difficulty retaining the PDF files of such law enforcement reports. The Petitioner has good reason to believe that Ramaswamy is hiding that evidence to prevent the Petitioner from proving his innocence, he has good reason to feel as though Respondent may have violated Title 18 U.S.C. § 1519. The reason he had included Cheryl Thornton Sloan the "[The civil AUSA]" in such allegations is because he felt that she was going along with the cover up or concealment of such discovery material records to prevent Petitioner from getting full and unfettered access to the very document that contained the statement that "454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013". Petitioner believes that those download dates are damaging to the Government trying to make the Petitioner look guilty since the download dates cross into the time period when his Laptop was already seized by Mayodan Police and it makes

63

a blatant admission that alleged and suspected child pornography had downloaded after the Laptop was seized. It is logical that any forensic statements damaging to the Government's case, may cause some Prosecuting lawyers to consider covering up or concealing the records to protect their stances on guilty verdicts. Prosecutors don't like it when they realize that certain evidence is damaging to their cases. It is plausible for Petitioner to accuse both Assistant United States Attorneys of possible Obstructing Justice and that was why he had made the comment regarding that they "*should both be sitting in FEDERAL PRISON RIGHT NOW. They both should be in prison and whoever else they are involved with who victimized Brian David Hill. . .*" If Petitioner had lied in Federal Court, not referring to the deteriorating health and ineffective counsel type of duress which caused Petitioner's false guilty plea, then he would be found guilty and carted off to prison for perjury. If Petitioner were caught concealing or covering up Government agency records then he would have the book thrown at him. However it seems like the U.S. Attorney Office has a different set of rules, a different standard then the rest of the American people have to follow. Is such double standard Constitutional under the equal protections of the laws clause of our U.S. Constitution?

As for Ramaswamy's comment regarding [Name of CJA panel attorney] John Scott Coalter and [name of First Assistant Federal Public Defender] which is Eric David Placke, Petitioner shouldn't face a perjury charge for his false guilty plea because he was sitting in jail and his health deteriorated more and more as proven by medical records submitted as an Exhibit in his 2255 Brief. He had an insulin reaction where the Orange

64

County Detention Center jail guards refused to treat his low blood sugar leading to a violent confrontation until the nurse from Southern Health Partners vouched for him having his blood sugar tested and that he should get something to treat his low blood sugar. He would have died if he had not snuck sugar packets into his jail cell which caused the violent confrontation for his revival at stake. When his health was falling apart while in jail, while he was receiving ineffective assistance of counsel that was so severe, that it was so bad, well it shows that he had no viable means to prove his innocence. Of course he shouldn't ever be charged with perjury for his guilty plea agreement due to the circumstances and medical history while incarcerated. The blame should rest on Eric David Placke if somebody has to be charged for Petitioner's false guilty plea, as Mr. Placke was not in jail at the time of Brian's false guilty plea on June 10, 2014, and Mr. Placke does not have Type 1 brittle diabetes and was not being put in almost death type of situations where the jail guards almost can kill him by not giving him diabetic glucose or enough diabetic insulin for Brian to remain healthy. Mr. Placke was not under duress like Petitioner was. If the Court will ever consider Brian's false guilty plea as an act of perjury despite the deteriorating health and severe ineffective counsel, Placke was at fault for the false guilty plea, was aware of Petitioner's bad medical condition, and therefore should be charged with subornation of perjury since Placke created the fraud among the Court by forcing Petitioner to take the guilty plea or risk facing up to twenty years in federal prison.

65

Id. at 18. "*The excerpts above appear in a civil action under the Freedom of Information Act in another federal district, but Petitioner's pattern of using the court filing system as a sort of personal blog for baseless defamation is repeated therein.*"

Petitioner had never used the court filing system as a sort of "personal blog" for baseless defamation. Petitioner has done nothing but filed a pile of evidence Exhibits, Declarations under Oath, had witnesses file Declarations under Oath, submit evidence and arguments in his 2255 Brief that he did give a false confession and explained why each confession statement was false. Petitioner never had intended to use the court system as a blog. He had only wanted to get the truth out to the Court hoping that Justice would have come but that time of hope was far gone and never happened until Petitioner had filed the 2255 Motion. He has fought so hard to prove his innocence and dealing with resistance to his efforts every step of the way.

**Objection #18 to Document #149, Page 10 of 20, Paragraph 9 of IV. ARGUMENT:**
"*The government contends that Petitioner then, directly or indirectly, uploads his ECF filings to other websites in order to further disseminate his conclusory allegations in an attempt to gain public support (see website at https://archive.org/details/HillvEOUSA , uploaded 04/26/2017). The court in Petitioner's civil case cited above admonished Hill for the content of his filings, warning him regarding contempt of court for "threatening the government's counsel". (Doc. 59 in WDVA case 4:17-cv-00027-JLK-RSB, 01/05/18 (included as Attach. B herein)).*"

Now that is a defamatory conclusory allegation against the Petitioner. To state that *"Petitioner then, directly or indirectly, uploads his ECF filings to other websites in order to further disseminate his conclusory allegations"* is a complete lie, a complete fib. The Respondent does not show any proof of that claim.

Respondent's family member Roberta Hill has a registered PACER.GOV account. To say Petitioner uploads his ECF filings isn't accurate either. Petitioner files his pleadings with the Clerk's office which files them on ECF and uploads them to the server. Petitioner had been aware of PACER.GOV in 2013 before he was arrested by Special Agent Brian Dexter of Dept. of Homeland Security. His grandparents also own a PACER.GOV account which gives both his mother and grandparents separate access to the records stored in the Court's CM/ECF system. His family is also aware of and using a tool called "RECAP" which is a tool that can be used with the browsers Firefox and Google Chrome from what his family understands. His family doesn't have to upload manually and neither do they need technical knowledge to use such program when his family tested that tool. All they have to do is install the add-on/plug-in and then surf to the document entries and then they are automatically uploaded to some archive that contains all CM/ECF documents which were public at the time and not sealed. However he was aware of the software in 2013 but didn't have a PACER account and his family had no need for a PACER account until Attorney Susan Basko had informed Petitioner of him facing arrest due to her looking up Petitioner's case. Once his family accesses any document on PACER.GOV and the CM/ECF documents area for the Middle District of

67

North Carolina and even the Western District of Virginia, the RECAP tool automatically uploads to Archive.org or even CourtListsner. Petitioner has family and friends that are allowed to use the internet and can post blog entries about his case. What Ramaswamy is accusing Petitioner of is unfounded. He is likely taking a RECAP archive page or a page with RECAP archived documents and trying to frame Petitioner with another claim/allegation of violating his terms of supervised release. Petitioner does not use the internet and Ramaswamy is accusing him of using the internet without showing any proof except proving a link that Petitioner cannot even access himself. His family looked at that page and noticed that it was not Brian D. Hill uploading such material. Petitioner is angry that anybody who discusses his case on the internet, Ramaswamy is ready to jump at any blog, website, or forum posting and falsely claim that it is Brian the Petitioner so that Petitioner risks another revocation of his supervised release like in 2015. He is disgusted and the U.S. Attorney should be investigated and sanctioned for defamation. Petitioner provides evidence, Declarations, Affidavit of innocence, email records, news article records, photograph records, DVD video disc evidence, Audio CD evidence, witnesses' declarations and other important evidence in both this 2255 case and his FOIA lawsuit. The Declarations by members of Petitioner's family are being ignored. The Respondent Anand Ramaswamy supplies no affidavit to the court while Petitioner bends over backwards filing one Declaration after another, declaring his evidence under penalty of perjury for admissibility under the Federal Rules of Evidence. Petitioner has more than provided enough evidence to justify his claims and permit them to be entirely tested at the evidentiary hearing if necessary for resolution and disposition of this Section 2255

68

case. Respondent has not provided one affidavit against Petitioner and yet is ready to accuse the Petitioner of making conclusory allegations and Petitioner being accused of uploading documents to the internet without providing any proof except to use his own emotional statements against him.

*"The court in Petitioner's civil case cited above admonished Hill for the content of his filings, warning him regarding contempt of court for "threatening the government's counsel". (Doc. 59 in WDVA case 4:17-cv-00027-JLK-RSB, 01/05/18 (included as Attach. B herein))"*

Actually, asking for a criminal investigation against Ramaswamy and Cheryl Thornton Sloan for possible violation of Title 18 U.S.C. § 1519 is not criminally threatening the Government's counsel. It doesn't make sense that simply asking for a criminal investigation into the other party would constitute as threatening the Government's counsel in any criminal way. Any party can ask for any kind of sanctions as permitted by the Court. However, Petitioner has an active appeal that Judge Kiser allowed through his court and it is not considered frivolous otherwise it would have been dismissed quickly. Petitioner is grateful that the Honorable Judge Jackson L. Kiser has allowed his appeal without trying to stop it, and thus challenges Judge Kiser's "warning" to Petitioner in regards to what he stated as a personal opinion that Petitioner was "threatening the Government's counsel" over asking for a criminal investigation into a Government lawyer. In that case, as a good example: this court needs to rule that U.S. President Donald John Trump also had threatened the Government's counsel including Hillary

69

Rodham Clinton, and others since all he was doing was asking for an investigation into their criminal conduct over various evidence and things that almost made it where Donald Trump would not have been our 45th President of the United States. So if Judge Kiser is right, then we must also accuse Donald Trump from the White House of "threatening government counsel", we must remove him and everyone else who has ever called for a criminal investigation on anybody working for the Government. We must charge them all with criminal contempt of court and harassment since asking for an investigation is threatening the Government. Thank You!

**Objection #19 to Document #149, Page 10 to 11 of 20, Paragraph 10 of IV.**

**ARGUMENT:** *"The second Cromer factor is whether the party files his cases on a good faith basis, or only to harass. Cromer, 390 F.3d at 818. Here, the content of Petitioner's supporting documents demonstrates the extent to which he lacks a good faith basis for filing, but instead uses 28 U.S.C. § 2255 in order to harass and besmirch his perceived oppressors, consistent with the diagnosis that Petitioner denies he suffers from. This is seen most clearly in his inclusion of wholly irrelevant and personal Facebook pages of two individuals as described above."*

Wait a minute, they both are Government officials, aka politicians, they work for public office and anybody can go on their Facebook pages. Yet Petitioner in 2013 are not supposed to show any evidence that the police Detective's own sister works for the District Attorney Phil Berger Jr. at the time that is in favor of the questionable torture facility at Guantanamo Bay, Cuba, that tortures suspected terrorists without giving them

70

the same due process that is supposed to be afforded to every American citizen.

Petitioner's Nullify-NDAA Petition was bad Public Relations (PR) for Phil Berger Senior which could agitate Phil Berger Junior as he is close to his father. Petitioner was writing article after article against Phil Berger Senior, calling him corrupt, telling people that he will take no action on Nullify-NDAA, and Petitioner had called the town of Mayodan corrupt in one of his USWGO Alternative News articles at uswgo.com in 2012. He was doing investigative reporting and listed the campaign contributions of the Senator in one of his articles, which are public records, to make a political point. Petitioner's claims against Melanie Bridge and Robert Bridge are clearly in the context of "conflict of interest". They shouldn't be involved in the investigation when there is a real or perceived conflict of interest or personal bias. It should have been somebody that has absolutely no paycheck from anybody in the Phil Berger family, even in a professional capacity as financial incentives or getting paid at all by a District Attorney Office that a criminal suspect had made an enemy of could lead to corruption and a biased investigation that may have a real or perceived conflict of interest. A good theoretical argument example is, what if I written a negative news article against my Ex Wife and then her boyfriend or brother am the Judge in the divorce case, then the Judge will rule against me no matter what evidence I had ever provided, I would lose the case point blank. Criminal investigations are supposed to be impartial and free from any conflict of interest, professional or private because of the emotions and sticking with your own people and coworkers. Even Cynthia Everson, as ineffective as she was as a private lawyer, even admitted that Petitioner can use the political connections in his 2255

71

Motion. So Respondent is accusing not only just the Petitioner of harassment but also this could apply to accusing Cynthia Everson as well, a licensed attorney, of the same misconduct that Petitioner has been accused of.

**Objection #20 to Document #149, Page 11 of 20, Paragraph 10 of IV. ARGUMENT:**

"*This is merely Petitioner's attempt to glean personal information from the Internet which he sees fit to publish in the context of his allegations of wrongdoing. Even in the context of alleged wrongdoing, there is no relevance in including personal information and color photographs of persons, their children, and their friends. Petitioner in fact demanded that those Facebook pages be filed in color, as he does for various documents (DE # 127 at 3). Even if Petitioner maintains he has a good faith basis to challenge his conviction, this material has no relation to any such challenge.*"

That is not true. Either the conflict of interest regarding the political and/or personal connections between police Detective Robert Bridge who conducted the investigation against Petitioner and District Attorney ("DA") Assistant Melanie Bridge while on the payroll of DA Phil Berger Junior in the professional capacity does contribute to the collateral attack on proving factual innocence or is at least one good darn reasonable doubt that should have been shown to a Jury by Mr. Placke but he failed to address any issues at all except for Petitioner's guilt which was a one sided case.

Even licensed Attorney Cynthia Everson, State Bar ID #40697, Concord, NC, said to Petitioner and his family, either verbally or by email message to Petitioner's family, that

the political connections and his news articles can be used in his 2255 Motion. So AUSA Ramaswamy is accusing Petitioner of following bad advice from licensed counsel causing his alleged vexatious behavior in Court. If a licensed Attorney believes that Petitioner can use the Robert Bridge to Melanie Bridge connection, the Phil Berger connections, the negative news articles, or any political connection for that matter, as not the entire actual innocence claim but only on a portion of his actual innocence claim, then Petitioner has done nothing wrong upon the advice of competent counsel. She was ineffective in certain ways, but effective in others. Then of course Emily Gladden, State BAR ID #49224, Tin Fulton Walker & Owen, Raleigh, NC, had also given the legal advice that Petitioner should get the assistance of a computer forensic expert when filing the 2255 Motion on the ground of actual innocence. She had also stated, after Petitioner and his family gave a brief description of his legal situation, she gave her personal legal opinion that the Government had a weak case. That was why Petitioner had decided to prove that USPO Burton had lied because it further shows not only a weak case but that the Respondent was willing to use one liar or more than one liar against Petitioner in Federal Court to achieve a case victory. That is fraud, and fraud is supposed to be non-acceptable by the Court and should warrant sanctions. Providing a witness that had knowingly made false statements and is misrepresenting what had really happened is not only perjury but is an act of documented fraud, the evidence of fraud, evidence or witness fraud. When the other party perpetuates a fraud on the Court under any circumstances, it is the right and the duty of the Court to sanction the other party. Even catching a witness committing an act of perjury justifies a need to inform the court of such matters in hopes

73

that justice can be served. Just as Rule 3.8 of the Rules of Professional Conduct and the N.C. State Bar ethics have stated as a matter of regulation/law.

Petitioner doesn't wish to make this document hundreds of pages to explain how all evidence Exhibits was relevant all over again, instead Petitioner asks the Court to please revisit the 2255 Brief / Memorandum supported by Petitioner explaining the relevance of each Exhibit to Petitioner's claims of factual innocence (See Document #128, #128-1, and #128-2). Why should Petitioner have to re-explain why all Evidence Exhibits and Additional Evidence Declarations are relevant when Petitioner had already stated their relevance in those filings? Every Declaration is relevant and is unique. If Petitioner was intending to file vexatious litigation then he wouldn't file mainly unique evidence and would file the same thing over and over again. Document #129 proves that Petitioner had caused American Live Wire to post an article warning the public that the Government may be setting up innocent people with child pornography since that article mentions about a "USWGO Virus Report" when USWGO was the organization founded by Petitioner Brian D. Hill, and talks about people framing other people with child porn due to his own personal experienced of being victimized, with allegations that it can be rogue Government employees or anybody with a lot of power that could do such a thing. It is relevant to this case. Document #130 is relevant to this 2255 action as it proves that the Petitioner was heavily involved in the town of Mayodan politics in such a small town with roughly 2,000 people (not the exact population number). It was the Mayodan Police that had raided Petitioner after Petitioner had written/typed negative news articles calling

74

the town of Mayodan corrupt (See Document #62, Filed 01/29/15, Page 26 to 29 of 62, and Pages 22 to 25 of 62). Petitioner had actively been involved in the town of Mayodan which was also discussed in the "confession Audio CD" disc containing the [false] confession of Brian David Hill. A portion of his activity within the Town of Mayodan municipality was discussed or mentioned during the interview before the Petitioner had confessed falsely to the crime that he did not do on August 28, 2012. So that evidence is also relevant to this 2255 action, relevant evidence to the Court. Again, the Nullify-NDAA Petition signatures are also relevant as the witnesses would have been witnesses to whether Petitioner had ever attempted to bring children into his home which of course is heavily in Petitioner's favor as the neighbors of his Mayodan home address in 2012 all knew that Petitioner was not into children because the Petitioner is not around children and was never around children at his residence. If Petitioner had been such a sexual predator, then he should have at least groomed one child, at least one child. However that is not the case as he has groomed absolutely no children in his 27 years since being born. Petitioner is clean in regards to his criminal records with exception to the alleged allegations by Detective Bridge and Mayodan Police Department.

Petitioner also objects to the claim that "Petitioner is essentially engaged in "Doxxing" or "doxing", or "searching on the Internet for, and publishing, private identifying information about an individual, typically with malicious intent." Brennan v. Stevenson, No. CV JKB-15-2931, 2015 WL 7454109, at *1 (D. Md. Nov. 24, 2015)". The Petitioner did not publish the personal home addresses and not of any personal phone numbers on

the docket sheet regarding Detective Robert Bridge and former Assistant District Attorney Melanie Bridge. Petitioner's only intention was to prove that there was a real or perceived conflict of interest. That is not malicious intent. The only mistake Petitioner has will admit to if proven as the case if any full names of children were ever found to be on the Facebook pages, and is willing to correct that mistake for this Honorable Court as to redact any full names of children which of course are under the age of 18. Adults are not subject to the redaction requirement and must be kept on public record as they are public officials and engaging in public duties. Some of their friends are also public officials engaged in public office. Their names can be found in public Phonebooks and news reporters usually have their information for news stories. Public officials are set to a different standard in regards to what personal/private information should be shared on public record in the course of their duties of public office. Doxxing reveals personal home addresses, fax numbers (not public office fax numbers), cell phone numbers, dates of birth, and home phone numbers. The filing of the Facebook pages of public figures (*involvement with public office, involvement with Government in their official capacities*) do not contain the dates of birth, do not contain home addresses, and do not contain any information on how to personally contact them. So those Facebook page filings are compliant with the Federal Rules of Civil/Criminal Procedure and the redaction policies. Phil Berger Jr. and Melanie Bridge are no longer working for the Rockingham County District Attorney Office in North Carolina. Posting their Government employment information, as public figures, as the public faces that were part of public office, and District Attorneys are elected by the people of their respective district. Posting

information of public figures are part of politics, absolute power corrupts absolutely. Holding Government officials accountable is part of our republic, part of our democratic republic which some call a democracy. We are a republic regarding the rights of each and every American citizen as long as they don't harm another. Melanie Bridge being connected to Phil Berger Jr., and Melanie Bridge connected as a family member to Detective Robert Bridge in area with small towns and a few cities in one county is a conflict of interest and is a bad idea for a criminal investigation. All Government branches and offices can only act constitutionally under the "separation of powers" clause of the U.S. Constitution. It is un-constitutional for Robert Bridge to be connected to Melanie Bridge as close siblings, for Phil Berger Senior to be close with his son Phil Berger Jr. (*according to a newspaper article Petitioner's family had read*) when at the time was District Attorney of Rockingham County and had some involvement with the Petitioner's criminal case which was mirrored with "P. E. Berger Jr." cited in the SBI forensic report by Special Agent Rodney V. White. It isn't constitutional for a criminal investigation to have bias and a conflict of interest because of the potential for emotional prejudice which may lead to a situation of falsifying evidence, lying, tainting evidence, tainting an investigation, manipulating an investigation, swaying an investigation, or interfering with an investigation in any way, shape, or form. There is a reason why both Federal and State Courts have statutes and clauses against real or perceived conflicts of interest. The Respondent cannot just simply treat the political connections as if they don't matter. They take part in the collateral evidence that had built up for years which makes it more and more likely that Petitioner was set up with child porn. Even if the conflicts of

77

interest were not the ones that framed Petitioner with child pornography, they will be opt to try to railroad Petitioner rather than let the evidence lead to the culprit of the crime. It is unprofessional, it is unconstitutional and is in violation of "separation of powers" for anybody in the Government in different offices to have any personal connections, family connections, or even professional business connections because anybody who has worked together with different Government officials may back each other up and protect each other by whatever means necessary inside places like small towns or counties. All criminal investigations are supposed to be professional, based on the evidence, and impartial, and free of a conflict of interest. There is supposed to be no discrimination as such criminal investigations that are discriminative against people of race, color, disability, nationality, political, gender, or even sexual orientation, may violate federal and/or state laws. In Petitioner's case, Mayodan Police Department had discriminated against Petitioner's Autism Spectrum Disorder and Type 1 Brittle Diabetes in order to win their case, in violation of Title II of the Americans with Disabilities Act ("ADA"). Without understanding Autism, when as Detectives they are supposed to have somebody who understands such mental neurological health issues, will get false criminal confessions and false admissions of guilt or misleading statements. Petitioner has every right to bring all of this evidence up and explain how it applies to Petitioner's actual innocence, and other claims in his 2255 Motion and 2255 Brief / Memorandum. Police and the Feds have used peoples Facebook pages and posts against them in State and/or Federal Courts. Facebook posts are evidence and public Facebook pages are evidence. If police can use your Facebook pages and posts against you in a criminal case then why

78

can't a criminal defendant use a public Facebook post or pages against the adversary's case as evidence? None of that is vexatious and harassing.

From Petitioner's analysis of Document #132, Filed 11/14/17, Page 57 to 61 of 103, Petitioner has reviewed the document to determine whether any sensitive personal/private information was filed with the Court in violation of the redaction requirements. First of all, her Facebook page is public as it mentions about "*To see what she shares with friend, send her a friend request.*" That meant that her Facebook page open publicly when it was printed out by somebody who did not send her a friend request, and therefore her page is more safeguarded against sharing personal information as her Facebook page is public and anybody can access it online at the time. It mentions about her "Work and Education" which is relevant to this case as it mentions about her being employed as the Assistant District Attorney of Rockingham County District Attorney's Office from "October 2005 to present" at the time it was printed. The DA office was under Phil Berger Junior. Petitioner did examine the Facebook page of Melanie Bridge filing and Petitioner believes to the best of his knowledge that it does not contain Facebook pages and names of minors which are under the age of 18 and thus are not subject to the redaction requirements and is of public interest in this case. It does show one kid under the Facebook page of Robert Bridge, but Robert Bridge is not a child, but is actually the very police Detective that had started the whole child pornography investigation against Petitioner and had used a photo of a child with his police had for his public profile picture. Her Facebook page was public, Petitioner did not send her a friend request, and

79

so anybody can access her Facebook page at that time to look at her connections to other important political people in power or even the powers that be. Her date of birth is not mentioned in her Facebook profile. It doesn't appear to be doxxing.

From Petitioner's analysis of Document #132, Filed 11/14/17, Page 62 to 68 of 103, Robert Bridge's Facebook page, that Facebook page doesn't even contain the address of where he lives, doesn't even say where he lives, doesn't contain even the city of which he resides, but the police hat in the profile photo shows that it was of a police officer which would be that of Detective Robert Bridge. A portion of his Facebook friends listed in the filing are all police officers and are holding a title of public office. It proves that his sister is Melanie Bridge of the other Facebook page. Petitioner is not friends with that Detective on Facebook as he had printed those pages when he was on Facebook under the identity of "Uswgo Brian Hill" while he was on Facebook in 2012 and 2013. The Petitioner could have cut the pages in half or cut most of them as some friends may not be relevant, but the Federal Rules of Evidence may require that evidence be submitted in whole. If a Petitioner is only filing a few pages of a whole printout, then he may be omitting evidence that the Court may consider to be inadmissible under the Federal Rules of Evidence. So Petitioner had to submit the filing in the whole pages to demonstrate that no potential relevant evidence was omitted when filed. There are no minors' Facebook pages from what was analyzed. Petitioner believes that it has survived the redaction requirements and thus is not doxxing and is not even revealing the date of birth. Thus the argument is invalid or conclusory that Petitioner was engaging in "Doxxing" or "doxing",

or "searching on the Internet for, and publishing, private identifying information about an individual, typically with malicious intent." Public officials have to be examined to keep them honest. Private Investigators are often used by those who hold public office or even those in political campaigns that are campaigning for public office. Whether appointed or elected, those that hold public office are held to a different privacy standard than regular American citizens. Thus Petitioner didn't act with intent to be vexatious or harassing.

Petitioner has made good cause shown and thus disagrees with Respondent's claim that "This second *Cromer* factor also weighs heavily in favor of the entry of pre-filing injunction against Petitioner."

## Objection #21 to Document #149, Page 11 of 20, Paragraph 10 of IV. ARGUMENT:

"*The third Cromer factor requires the court to examine "the extent of the burden on the courts and other parties resulting from the party's filings." Cromer, 390 F.3d at 818. This factor also weighs heavily in favor of the entry of a pre-filing injunction order against the Petitioner. The sheer volume of Petitioner's filings, the relative incomprehensibility of the content, and Petitioner's utter disregard for filing time limits, has placed a heavy burden on the government in the instant case. Petitioner's filings in his § 2255 Motion alone exceed one thousand pages, and just as with his attempt at a*

direct appeal,[2] Petitioner's § 2255 motion was untimely-made.[3] These out-of-time challenges are especially burdensome, given the interest of the criminal justice system in the finality of convictions."

The Supreme Court had a case law that actual innocence, if proven in a 2255 Motion, can be filed after the one year statute of limitations as if it were timely filed. The sheer volume of evidence regarding actual innocence and not duplicating such evidence repetitively does not fit the Cromer factor. When such evidence, collaterally, is used to prove facts of actual innocence, when arguments are made demonstrating factual innocence, then it is not burdensome to the extent of which the Cromer factor shall apply, and yes the Cromer factor should be based on a case-by-case basis as each case is different and unique. Does the Cromer case have clear and convincing evidence of actual innocence or is it just a private lawsuit that has nothing to do with deprivation of Constitutional rights?

On September 30, 2016, John Scott Coalter, even though fully against Petitioner's intent on filing a 2255 on the ground of actual innocence and did everything he could to talk Petitioner and his family out of his actual innocence plan, he did advise that he would be

---

[2] Government's Footnote "*See United States v. Hill, 599 F. App'x 104, 105 (4th Cir. 2015)(unpublished)("Hill filed a notice of appeal on January 29, 2015, well beyond the expiration of the appeal and excusable neglect periods. We therefore grant the Government's motion to dismiss this portion of the appeal as untimely because Hill failed to file a timely notice of appeal or obtain an extension of the appeal period.")*."

[3] Government's Footnote: "*Petitioner as much admits this in his last filing to date: "Yeah technically Ramaswamy may be right about this brief being filed untimely..." (DE # 147 at 14)*."

forced to testify against Petitioner on the ground of ineffective assistance of counsel as that would be the way to withdraw a guilty plea. Not just ineffective assistance of counsel but proving that the factual basis under Document #19 for Petitioner's guilt is not correct and one factual basis of Petitioner's guilt have already been proven false with Petitioner's false confession on August 29, 2012. Petitioner had stated in multiple filings under Oath, without ever changing his story which further validates his claims, that he was threatened by Mayodan Chief of Police, Charles J. Caruso, with saying "fess up" or else his "mother would be held responsible." Another point of coercion was where Petitioner had stated at the beginning of the taped audio of Petitioner's confession that Petitioner recalls from memory, even though fading a little every year, knows that he made an initial statement and then changed it to guilt admissions after the Detective said that "We found child porn on your computer. . ." which is similar to the statements made to Michael Crowe whom falsely confessed and was later exonerated which, again, was mirrored in the U.S. Court of Appeals for the Ninth Circuit which was already mentioned in Petitioner's Document #143 at Pages 12 through Page 16, under "FACT 1: The "III. Factual Basis for August 29, 2012 Confession Being False, Questionable as Fact, and/or should be Impeachable for Coercion"". The large number of pages was only meant to demonstrate the absolute proven facts of actual innocence. Just proving at least one (1) fact of guilt on its face to being a false basis, not even a proven theory but is a proven fact of false confession, that along with ineffective assistance of Counsel is enough to overturn the Petitioner's guilty plea agreement and allows Petitioner to show factual innocence in his 2255 motion which isn't barred by the statute of limitations.

The 2255 Brief explains in detail, with enough information, to show factual basis of factual innocence. That is enough for the Court to consider an evidentiary hearing to test all claims and evidence at one or more hearings. None of that was meant to be vexatious and none of it was meant to be frivolous as everything was backed by evidence.

Judge should reexamine the following paragraphs and pages of Petitioner's 2255 brief on the actual innocence merits before considering all evidence and claims to be vexatious and harassing which would determine whether the Cromer factor does not meet the standard of Petitioner's filings since his original 2255 Motion and accompanying brief / memorandum with evidence exhibits attached to the brief / memorandum:

## 2255 Brief / Memorandum:

**FACT of False confession is an actual innocence fact thus isn't frivolous, isn't baseless, isn't vexatious, and isn't harassing:** Document #128, Page 49 through Page 75, "III. **Factual Basis for the August 29, 2012 Confession Being False, Questionable as Fact, and/or should be Impeachable for Coercion"**

**FACT of forensic report being questionable and does not confirm actual verified child pornography to the letter of the law was even found on Petitioner's computer is an actual innocence fact thus isn't frivolous, isn't baseless, isn't vexatious, and isn't harassing:** Document #128, Page 75 through Page 88, "IV. **Factual Basis for the North Carolina State Bureau of Investigation ("N.C. SBI") Forensic Report by**

84

Special Agent ("SA") Rodney V. White ("Agent White") being Questionable and does Not Prove the Criminal Defendant Guilty beyond Reasonable Doubt"

"Images of interest", "Files of Interest" and "Videos of Interest" does not confirm that actual child pornography has been found on Petitioner's seized computer equipment. Files of interest does not have verification from the National Center for Missing and Exploited Children ("NCMEC") (See Document #33, Filed 09/16/2014, Page 6 of 26, *Paragraph 16 of the report, also mentioned in the 2255 Brief*) that any are of a known series of child pornography which contradicts the claims of Police Detective Robert Bridge that Petitioner through the IP Address 24.148.156.211 had downloaded child pornography known to the Detective and the Internet Crimes Against Children ("ICAC") task force. They don't know who the so-called victims are, they don't know the ages of each victim (if it's even a child) in each supposedly alleged child pornography file, they haven't confirmed whether it does qualify as child pornography or if it was an adult model or even a nudism photo which is recognized by the U.S. Supreme Court that it does not constitute child pornography, and there are no lists of file names and no blurred thumbnail photographs in the discovery material witnessed by Petitioner's family when they reviewed over the discovery material fully for the first time since his wrongful conviction, and the entire forensic report is a joke and does not prove the Petitioner guilty. Yeah it does mention that "*From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013.*" Petitioner and his entire family in his FOIA lawsuit in the Western District of

85

Virginia swore in Declarations as to the forensic report's claim regarding the 454 files download dates as being true from the discovery evidence from the Respondent in his criminal case as eye witnesses. It doesn't really confirm whether the 454 files were all entirely of actual child pornography and Petitioner and his whole family had assumed that the North Carolina State Bureau of Investigation was talking of actual child pornography. Then it lists some kind of keywords that the SBI Agent believes was located on Petitioner's computer through the server.met file which can easily be hacked into by a computer hacker and the download dates throw serious doubt into who may have searched up such keywords. Petitioner also had filed in an Exhibit for the 2255 Brief, information articles regarding what eMule and Bittorrent is. The eMule program is an open-source software program meaning the programming language of that file-sharing software can easily be modified and altered to the computer programmer's desire. Anybody who knows computer programming can modify eMule or even attach such programming to computer viruses, it is not just possible but probable. Searching up keywords doesn't guarantee that files would show up on a Peer-To-Peer ("P2P") file sharing application. There is no proof that any files may have been found attributing to such keyword claims. Then the report of SBI Agent Rodney V. White mentions about seizure of his encrypted DVD discs that had used an encryption software thus protecting the DATA from being opened. SBI Agent White stated that attempts to crack open the encrypted files were a negative. Petitioner agrees that he will voluntarily disclose his encrypted DVD passwords to an independent computer forensic expert appointed by the Court or paid for by a CJA 21 Voucher, to prove to the Court that none of his encrypted

86

DVD discs contain child pornography, even though smart criminals that know how to use encryption software would have immediately placed child pornography inside of encryption containers and refuse to disclose the password under the Fifth Amendment. Petitioner will not even refuse to disclose his encryption passwords for his encrypted DVDs from his memory as long as they are given to an independent expert as he doesn't trust the Government and fears they may tamper with any evidence which includes the possibility or probability that child porn can be planted on his encryption containers. Thus Petitioner believes it'd be best to have the independent expert open up his encrypted DVDS that were seized from his Mayodan residence to prove to the Court, prove to the U.S. Attorney Office, and prove to the N.C. State Bureau of Investigation that his encrypted DVDs that were never successfully cracked by law enforcement do not contain any child pornography. That further shows that SBI Agent Rodney V. White conducted an inadequate investigation as he didn't even contact the Petitioner asking if he would mind giving up his password, and Mr. Placke never intended to investigate into the non-credible and laughable forensic report that does not prove the Petitioner guilty.

Petitioner's 2255 Brief / Memorandum and attached Exhibits (Documents #128, #128-1, #128-2, #129, #130, #131, #132, #133, #134, #136, #137, and #138/139) is as valid of filing as Petitioner's 2255 Motion, since the United States District Court's "Pro Se Guidebook for Motions filed under 28 U.S.C. § 2255" specifically advices after the question of "Can I file a Memorandum of law with my motion?" and the answer states that "Yes. You should not make legal arguments or cite cases in your motion, but you

87

may do so by filing a memorandum of law with your motion. A memorandum of law, sometimes called a brief, is a document where you provide legal support for whatever you are requesting that the Court do by citing laws and/or cases that support your position." You can also attach Exhibits to such motions. Petitioner thought that the brief / memorandum were more appropriate to attach the Exhibits to argue how it applies to Petitioner's actual innocence. The brief / memorandum are not frivolous, not vexatious, and not intending to harass the Government.

Respondent has not validly admitted or denied the correctness of all Exhibits and arguments in the Petitioner's 2255 Motion, 2255 Brief, and the Additional Evidence Declarations (See Rule 7(c), Rules governing § 2255 proceedings).

Instead Respondent has pushed for the pre-filing injunction (at issue in this response brief) and Motion to Dismiss Petitioner's 2255 Motion (Document #141) without directly addressing each piece of evidence Exhibit and without fully addressing how Petitioner's false confession evidence may be incorrect and never addressed any facts of Petitioner's actual innocence as incorrect but simply made a blanket statement without addressing each claim of Petitioner's actual innocence. Respondent has ignored all of the witnesses Declarations including Attorney Susan Basko, Roberta Hill, Stella Forinash, and Kenneth Forinash.

Petitioner's actual innocence claim still stands and the Respondent has not successfully attacked every piece of evidence and argument as invalid. Thus the procedural time-bar

88

which is the statute of limitations for filing 2255 Motions cannot be used to prohibit an actual innocence claim and Constitutional errors regarding actual innocence claims.

Citing SUPREME COURT OF THE UNITED STATES,

Case: MCQUIGGIN, WARDEN v. PERKINS

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 12–126. Argued February 25, 2013—Decided May 28, 2013

"*1. Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup v. Delo, 513 U. S. 298, and House v. Bell, 547 U. S. 518, or expiration of the AEDPA statute of limitations, as in this case. Pp. 7–14.*"

"*2. A federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown. A petitioner invoking the miscarriage of justice exception "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U. S., at 327. Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing. Taking account of the delay in the context of the merits of a petitioner's actual-innocence claim, rather than treating timeliness as a threshold inquiry, is tuned to the exception's underlying rationale of ensuring "that federal constitutional errors do not result in the incarceration of innocent persons." Herrera, 506 U. S., at 404. Pp. 14–16.*"

"3. Here, the District Court's appraisal of Perkins' petition as insufficient to meet Schlup's actual-innocence standard should be dispositive, absent cause, which this Court does not currently see, for the Sixth Circuit to upset that evaluation. Under Schlup's demanding standard, the gateway should open only when a petition presents "evidence of

*innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."* 513 U. S., at 316. Pp. 16–17."

"*We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case,* __*expiration of the statute of limitations*__*. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U. S., at 329; see House, 547 U. S., at 538 (emphasizing that the Schlup standard is "demanding" and seldom met). And in making an assessment of the kind Schlup envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. Schlup, 513 U. S., at 332.*"

"*The Sixth Circuit reversed. Acknowledging that Perkins' petition was untimely and that he had not diligently pursued his rights, the court held that Perkins'* __*actual-innocence claim allowed him to present his ineffective-assistance-of-counsel claim as if it had been filed on time*__*. In so ruling, the court apparently considered Perkins' delay irrelevant to appraisal of his actual-innocence claim.*"

"*In other words, a credible showing of actual-innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief.*"

Petitioner has to introduce the hundreds of pages of evidence, hundreds of pages of argument, including any responses that the Petitioner was forced to make to Government motions, that a portion of the Declarations are by witnesses, and explanation why Petitioner is actually innocent as declared under penalty of perjury when he has filed his 2255 Motion and accompanying Brief / memorandum. Petitioner has further declared his innocence under an Affidavit of actual innocence and a Declaration of innocence.

Petitioner's actual innocence claim should have been treated as if it were timely filed; therefore the Respondent's Motion to dismiss is frivolous as long as Petitioner can demonstrate factual innocence.

90

See 2255 Brief / Memorandum (Doc. #128): "*23. Brian D. Hill presents three true and correct photocopies of Affidavits to the Habeas Court in Exhibit 48. (#1) General Affidavit regarding innocence of accused crime, General Affidavit by Brian David Hill (2 pages), (#2) Declaration of Innocence for The White House - 01/22/2017 (2 pages), (#3) 2nd Declaration of Innocence for The White House - 02/02/2017 (2 pages).*" Exhibit 48 is under Document #134 Pages 16 to 22 of 99.

Attorney John Scott Coalter in September, 2016 had even admitted to Petitioner that his criminal case is complex. Petitioner couldn't file lesser pages due to the complexity of Petitioner's child pornography case. Other Federal criminal cases such as murder or even bank robbery do not necessary need a high number of evidence Exhibits for an actual innocence § 2255 challenge since the complexity of the issues is different in federal criminal cases and differ from case-to-case. Respondent was incorrect to argue that the high volume of pages constitute vexatious or harassing behavior unless the high number of pages was caused by duplicate evidence being filed repetitively The only reason why the Petitioner is having to make the same arguments in the response filing towards Respondent's motion to dismiss, is because the Respondent is not acknowledging any case law, not acknowledging any evidence except things to pick apart to create a false campaign that none of the Declarations and filed evidence matters and is ignored, but instead the Respondent picks on the words such as "suicide" or "crooked" rather than address the claims regarding Kristy L. Burton lying about multiple facts in Petitioner's revocation hearing and other issues. Respondent inappropriately claims his evidence

91

backed allegations as baseless while attacking the voluminous number of pages necessary to prove Petitioner's claims and allegations to at least have some form of merit before the Habeas Court. Petitioner has given good reasons for his actual innocence claim to be valid, but Respondent doesn't seem to address these issues at all except for one valid exception, that Petitioner forgot to include the entire term of "delayed echolalia" to his 2255 Brief and resolved the issue in Petitioner's response in objection (Document #143 and all attachments) to Respondent's Motion to dismiss.

Petitioner's untimely filing doesn't matter for an actual-innocence gateway claim. Petitioner's evidence supports his claims in his 2255 Motion and accompanying brief / memorandum.

As for the case cited of Cromer v. Kraft Foods N.A. Inc., 390 F.3d 812, 817 (4th Cir. 2004), the arguments in opposition are as follows:

1. Kraft Foods North America Incorporated ("Kraft Foods") is a private corporation, not a party of the Government. Kraft Foods is a private party and cannot deprive the freedom and liberty of Cromer. Kraft Foods is not a Government party. Kraft Foods cannot arrest Cromer unless evidence was provided to the Government and the evidence was sufficient to arrest Cromer. Kraft Foods has nothing to do with a Writ of Habeas Corpus petition and a 2255 Motion cannot be filed against Kraft Foods. Therefore that case does not

apply to this 2255 case and the situation which caused the multiple filings including Declarations, arguments, and evidence.

2. Kraft Foods cannot file criminal cases. Kraft Foods cannot imprison anybody. It is the Government that engages in arrests through arrest warrants after indictments. Kraft Foods cannot be subject to any Habeas Corpus review and 2255 Motions cannot be legally filed against Kraft Foods.

As for the case cited of United States v. Falice, 1:04CV878, 2006 WL 2488391, at *6 (M.D.N.C. Aug. 25, 2006) (copy attached by Government on Document #149-3), the arguments in opposition are as follows:

1. *"On July 20, 2004 Reginald Falice filed a paper writing with the Durham County (N.C.) Register of Deeds asserting a lien for $42,000,000,000.00 against the property of approximately 192 persons including judges, court personnel, federal prison employees and others who had in some way come into contact with his case."* Petitioner did not sue many people in regards to his FOIA claims and 2255 claims. All he sued were the parties that were directly involved. Assistant U.S. Attorney Cheryl Thornton Sloan never once accused Petitioner of being vexatious and harassing. Even though Petitioner disagrees with her position for the Government in that case, it's still on appeal and is awaiting a decision from the Fourth Circuit U.S. Court of Appeals on valid arguments. He only sued the EOUSA and the U.S. Department of Justice, no more and no less, explained why each party was involved. Petitioner's other

93

lawsuit is the 2255 Habeas civil action, he is only suing for vacatur of his conviction and vacatur of his sentence. He didn't sue 192 people and didn't assert a lien with the Register of Deeds. That lawsuit in particular, proves that Falice was being excessive in his lawsuits and "made a series of "far-fetched allegations" with regard to his criminal prosecution." Petitioner's family, by usage of PACER.GOV account, decided to review over one of Falice's Affidavits under Document #24 of U.S.A. v. Falice (2006), and that Affidavit is not the same as Petitioner's Declarations and Affidavit and makes a better explanation about the various things that back his claims compared to Falice's filed Affidavit. The Affidavit by Reginald Falice was poorly written and did not specifically state how certain individuals were in conflict of interest; he just made his allegations without really attempting such allegations. That was why Petitioner had included the Facebook pages of two public officials, because it shows the family connections and the fact that Detective Robert Bridge's sister Melanie Bridge works directly for former District Attorney Phil Berger at the time in 2012. Phil Berger Jr.'s name was also found in the SBI forensic case file, his name was directly mentioned and thus proves his involvement in Petitioner's criminal case but what is not known is how much involved he was. Petitioner has done a better job proving his case than Reginald Falice. Petitioner had never ever faced a "Motion to Strike unlike Reginald Falice. Under Falice's Affidavit (DE #24), it doesn't go into detail (total opposite of Petitioner's Declarations) and explain the names of who is involved with the

94

specific activity, supply Exhibits with evidence certifying that it is true and correct copies, and doesn't explain how it relates to Falice. His Affidavits aren't details and don't really explain why it proves Falice's point and the specific authority to ask for financial relief.

2. Falice is filing and asserting monetary liens against "192 individuals named in the Financing Statement are the following: (1) thirty-two current and former employees of the Federal Judiciary, fourteen of whom are judges of the United States District Courts and United States Courts of Appeals; (2) three North Carolina State Court judges located in Charlotte, North Carolina; (3) sixty-eight current and former employees of the Federal Bureau of Prisons, fifty six of whom are employed at USP-Lee in Jonesville, Virginia; (4) three court reporters located in Charlotte, North Carolina; (5) Roy Cooper, the North Carolina Attorney General; (6) two employees of the United States Department of Justice in Washington, DC; (7) an employee of the District Attorney's office in Charlotte, North Carolina; (8) Elaine Marshall, the North Carolina Secretary of State, and Franklin Scott Templeton, a former employee of the North Carolina Department of the Secretary of State; (9) one current and one former employee of the United States Probation Office, located in Charlotte, North Carolina; (10) two employees of the Federal Public Defender's Office, including the attorney who represented Mr. Falice during his criminal trial; (11) Orrin Hatch. . ." He didn't file a separate lawsuit against any of those individuals properly, he didn't explain how any of those parties had unlawfully

95

and/or unconstitutionally injured him and explained what sections of law and/or the sections and clauses of the U.S. Constitution that were alleged violated, and he didn't assert his actual innocence and didn't show any actual evidence of misconduct. Petitioner has filed Declarations w/Exhibits showing especially how it applies to his claims and arguments. Petitioner's filing statements after his 2255 Motion was filed and the contents of such filings are in a completely different league than Falice. Falice's liens assertion was against Court Reporters that were only doing their job and he didn't really file any evidence as to explain why the liens were necessary to the extent where they could legally be applied. The methods of Falice were meant to be annoying and attempt to financially destroy 192 parties with false liens which is fraud, filing fraudulent or false liens. Essentially, he didn't even sue but simply filed frivolous and fraudulent liens against a bunch of people without showing cause as to why they should be allowed to even proceed. Therefore Falice's case completely does not match the content and nature of Petitioner's filings. For God's sake, he filed liens against Appellate Court Judges just because they didn't rule the way he wanted them to rule and he wasn't even asserting his actual innocence, like Petitioner has in this case. Falice is irrelevant to Petitioner's filing behavior.

As for the case cited of Ward v. Maloney, 1:08CV54, 2008 WL 7346920, at *1 (M.D.N.C. Sept. 29, 2008) (copy attached by Government on Document #149-4), the arguments in opposition are as follows:

1. Petitioner's family had decided to access a few case files on PACER.GOV and give the PDF files to Petitioner to examine the merits of this case and whether it even applies to Petitioner's filing history and whether it is even a case law relevant to Petitioner's case.

2. In Ward v. Maloney, it is well known that Mark Ward was legally harassing them for decades ("...frivolous and harassing filing which Mr. Ward has been directing at the Defendants and related parties for the last fifteen years.", Case #1:08-cv-00054-WO-PTS, Document #28, Ward v. Maloney, Page 1) and Ward had filed multiple cases against the Defendants' repetitively, meaning that he had filed multiple Federal lawsuits in different jurisdictions which would conflict with the jurisdiction of where such claims can be filed (Case #1:08-cv-00054-WO-PTS, Document #22, Ward v. Maloney). Under the Freedom of Information Act, Petitioner Brian D. Hill was legally allowed to set personal jurisdiction in the Western District of Virginia, and wanted to do so, as legally acceptable, to file his FOIA lawsuit in the district hoping that the U.S. Attorney Office in Roanoke, Virginia, would defend in the case and thus there wouldn't be a conflict of interest since Petitioner and Anand Prakash Ramaswamy have had heated arguments against each other since the

Supervised Release Revocation ("SRV") hearing where Petitioner had repeatedly begged from Ramaswamy to be removed from the case and had filed complaints against Ramaswamy from the beginning of 2015. It is clear that with such a conflict of interest, that somebody else from the U.S. Attorney Office or Special Counsel be appointed to keep things professional and prevent further heated arguments between both parties. Angle Hewlett Miller was added as Counsel for the Respondent since the 2255 case was filed, yet she has not filed anything as part of Respondent, but has mainly been Ramaswamy. It would better for this case if new Counsel represents Respondent's side so that there is no conflicts of interest and that the remainder of the proceedings of this case remain impartial and neutral.

3. Mr. Ward's ". . .current lawsuit is an attempt to "re-litigate" his previous ERISA claim against Mr. Maloney." (Case #1:08-cv-00054-WO-PTS, Document #22, Ward v. Maloney, Page 2 of 6) So multiple lawsuits to re-litigate the same exact case under different districts. That is litigation abuse. There is a major difference between Petitioner's actions and Ward's actions. Petitioner has filed a lot of evidence under Oath to substantiate his claims. The only reason Petitioner has lost the FOIA lawsuit is because of different things as ruled by the Hon. Judge Jackson L. Kiser. However it is CURRENTLY being appealed in the Fourth Circuit U.S. Court of Appeals, Case # 18-1160, Brian Hill v. EOUSA, and Petitioner's INFORMAL OPENING BRIEF by Appellant Brian David Hill, Appellate Document #7. Cheryl T. Sloan, the

AUSA Counsel for that case did not object and did not defend its position in this ongoing appeal. The ongoing Appeal is to determine the Constitutionality of Judge Kiser's decision and to possibly set new case law precedent regarding the Government's right to deny giving access of the criminal case discovery to a criminal Defendant seeking such discovery records for attempting to prove factual innocence for a technically untimely filed 2255 Motion.

4. In my final argument for Ward v. Maloney, (Case #1:08-cv-00054-WO-PTS, Document #22-2, Ward v. Maloney, Page 2 of 6) Ward filed fourteen (14) frivolous cases in regards to Maloney, which all were DISMISSED. In Petitioner's FOIA lawsuit case, it is still being directly appealed and was timely appealed, and the appeal is still ongoing and is being raised on Constitutional grounds and Constitutional nature regarding a criminal defendant's right to access and make photocopies of criminal case discovery material for the purpose and need to prove actual innocence.

As for the "suicide" statements, Petitioner will no longer bring that up as it is emotional banter that has happened as part of his emotional trauma of being mistreated in the County jails by not being given proper medical care (Document #131, Exhibit 2, Filed 11/14/17, Pages 3 through 21 of 101) causing the false guilty plea and forceful Sex Offender registration of Petitioner. Not just that but the slander, the stigmatization surrounding those accused of such crimes even if not guilty. In Page 12 of Document #132 in particular, suicide was not originally mentioned on court record and was never a

threat against the court and not a threat to anybody in the Government. To force an innocent man to hear words like "pedophile", "child pornographer", and "sex offender" and being thrown in jail and given no opportunity to make their side of the story and only the Government's side of the story appears in court record prior to Petitioner's false guilty plea, then his Sex Offender registration photograph published nationwide for the world to see and constantly tracked and monitored by the U.S. Department of Justice's Sex Offender Program (Citing the U.S. DOJ's SMART: "Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering and Tracking") makes it seem that the Government is continuing to harass, track, and monitor the Petitioner without giving him a right for him to prove his actual innocence and without showing what is untrue in the Government's facts or theories against him. The 3-month state police visits under Commonwealth of Virginia law, it is all harassment when the Petitioner is actually innocent and wants to prove all of it to the Habeas Court as promptly and as accurate as possible. Petitioner agrees to stop mentioning about suicide, however the past statements all relate to what was on Page 12 of Doc. #131 detailing that Petitioner was suicidal on December 20, 2013, and was placed on Suicide Watch in Forsyth County Detention Center. Part of that abrupt statement of suicide was because Petitioner had been conditioned by the alternative media and the mainstream media to believe that the U.S. Department of Homeland Security only apprehends, abducts, and targets suspected terrorists and throws them into Guantanamo Bay, Cuba, or some other CIA sanctioned black site. In Document #7 of this case, reveals that Special Agent Brian Dexter of the U.S. Department of Homeland Security had arrested Brian David Hill and returned the

100

warrant on December 23, 2013, three days after being placed on suicide watch. The reason why was because Forsyth County Detention Center has SRTs, the Special Response Team, law enforcement officers that are trained in special hand-to-hand combat to deal with unruly inmates in a detention facility. The ones in the Forsyth County Detention Center in Winston-Salem, North Carolina, wore what appeared to be military type outfits. Petitioner agrees to clarify these statements under Oath if asked by the Court. Petitioner assumed he was placed in a CIA detention site or black site and wanted to kill himself before the possibility being water boarded, sexually mutilated or having electrodes tied to his genitals, or being chained to the ceiling. Petitioner knew he was innocent and knew he was being character assassinated but being arrested by DHS Special Agent made him believe at the beginning of this case they weren't just going to make him look like a sexual predator when he is virgin and was framed with child porn, but he thought they were getting ready to torture him as a member of the alternative media as repercussions for his website USWGO Alternative News. Later on he realized that it wasn't a black site and it was not run by the Central Intelligence Agency ("CIA"), but the mere fact of being arrested by the DHS intimidated Petitioner and made him afraid that he would have faced things far worse than death such as mutilation and torture. So Petitioner apologizes for how he had presented his emotional trauma and apologizes for how "suicide" was brought up. Hopes that the Government and the Court understand the fear, intimidation, and emotional trauma for what had happened to him.

Brian D. Hill was a civil defendant in the case of Righthaven, LLC v. Brian D. Hill, 2011, U.S. District Court case for the District of Colorado. Petitioner had won that case and was dismissed in his favor. Yeah, the Respondent was not involved in that particular case but the Petitioner had won the case and was not frivolous in his claims that Righthaven, LLC had pursued their claims against Mr. Hill in bad faith on the technical ground that they did not have the proper standing to legally sue the Petitioner, and Petitioner had won. Other than a copyright infringement lawsuit, Petitioner had only been the Plaintiff/Petitioner in two (2) lawsuits which includes this civil action and Petitioner's FOIA lawsuit. Petitioner's FOIA lawsuit had not been dismissed yet due to the ongoing appeal, and Petitioner plans to not file a "Petition for rehearing" if it could be considered frivolous but instead will appeal directly to the U.S. Supreme Court through a Writ of Certiorari. This 2255 civil action is not dismissed and cannot legally be dismissed due to the case law of WARDEN v. PERKINS. Petitioner has made a competent and credible claim of actual-innocence which warrants an evidentiary hearing to determine if Petitioner can fully show factual innocence and for the appointment of counsel under the Criminal Justice Act ("CJA"). In the Righthaven case, Petitioner may have lost his bid for Attorney's fees to be paid for due to some technical statute or local rule, but he respects the Judge John Kane's decision for the District of Colorado, Denver Division, because Petitioner had prevailed due to the impartial and rightful actions of Judge John Kane. Petitioner does respect Judges and respects the Courts that are under Article III Constitutional status.

## MOTION THAT THE COURT REQUEST COUNSEL TO REPRESENT THE PETITIONER FOR THE PRE-FILING HEARING DUE TO SPECIAL CIRCUMSTANCES REGARDING PETITIONER'S AUTISM SPRECTRUM DISORDER AND THE RISKS OF CONTEMPT FOR HIS AUTISTIC BEHAVIOR

If there is to be a hearing on Respondent's Motion for pre-filing injunction, due to the seriousness of the allegations against Petitioner, disregarding Petitioner's Autism Spectrum Disorder and misconstruing his Autistic behaviors as possibly abusive or criminal including the allegations of Petitioner's meltdown (Document #88) by perjurer Kristy L. Burton being misconstrued as a threatening gesture over the stressful legal orders, it is of great special circumstance for legal counsel to be appointed to represent the Petitioner for the legal proceedings of the motion hearings in regards to the pre-filing injunction. Therefore Petitioner requests that the Court request that Counsel represent the Petitioner for the pre-filing injunction hearing in regards to IFP statute Title 28 U.S.C. § 1915(e)(1) *"The Court may request an attorney to represent any person unable to afford counsel."* Since the pre-filing injunction may lead to the arrest of Petitioner upon any risk of contempt of court, it is pertinent that Counsel be appointed or requested to represent the Petitioner to protect the Petitioner's Constitutional rights and protect the Petitioner's disability rights such as his Autism Spectrum Disorder from leading to his disability behaviors being misconstrued as contempt, disrespectful, or a false waiver of Constitutional and legal rights in a courtroom proceeding. Because of Petitioner's Autism, anything that may upset the Petitioner can affect his Judgment and lead to making verbal or written statements that may further cause issues which could lead to contempt. Petitioner is already upset by the false and malicious allegations being lodged

103

against Petitioner from the Pre-filing injunction motion. Petitioner has already been invited via text message to become a guest into two radio shows on persuading people to research his case before it may all be covered up by mass filing sealing order that could come and thus causing all innocence evidence to become censored by the request to seal all court filings which would prohibit Petitioner from talking to the media about his actual innocence. So Petitioner has already acted rashly and started planning on calling different members of the media and may start mass mailing out his court filings to the members of the media quickly in response to the Respondent's motion. Petitioner cannot think straight with how upset he was by the Respondent's motion and feels that he is being not-literally assaulted by the Government and them making the demand that he shut up or else he faces contempt of court. It is stirring up a lot of angry and depressing emotions which of course warrants that he needs a buffer between him, the Court, and the Respondent to help him deal with the emotional issues caused by the Respondent's pre-filing injunction motion. He cannot think straight and will likely exhibit behaviors of Autism that may be considered a false waiver of his rights (Document #132, Exhibit 15, Filed 11/14/17, Pages 10 to 12 of 103) or may even be misconstrued as contempt. He faces the loss of his filing rights and it may end up causing him to also risk facing contempt. Because of the significant issues that may affect more than just his filing rights, the appointment or request of legal counsel is necessary and thus provides special circumstances for this matter. Petitioner's family had attempted to look for legal counsel and none would represent him pro bono for his 2255 proceedings due to the stigmatization of his wrongful conviction. Petitioner cannot afford counsel and does not

104

want to risk contempt over things that could be resolved in the papers prior to granting an evidentiary hearing which may warrant the appointment of Counsel under the Criminal Justice Act. Therefore Petitioner also requests Counsel or a qualifying advocate (incl. a law school, University of law or law student that qualifies) to represent him in the pre-filing injunction if a hearing is necessary on this matter. Petitioner's mental health Counselor, as one of his required conditions by his terms of supervised release that he receive mental health counseling, Preston Page also had written a letter stating that his expert opinion says that Petitioner cannot do well verbally compared to Petitioner making competent legal arguments in paper, thus supports Petitioner's request for legal counsel to represent him for the hearings/proceedings (See Document #61-1, *Preston Page LCSW, LSATP, Licensed Clinical Social Worker and Counselor letter*, case # 4:17-cv-27, Western District of Virginia, U.S. District Court, Hill v. Executive Office for U.S. Attorneys et al.) See Mallard v. United States Dist. Court, 490 U.S. 296, 309 (1989) (holding that Section 1915(e)(1) "*does not authorize coercive appointments of counsel*"). Moreover, requests under Section 1915(e)(1) *should generally be granted under exceptional circumstances*. See Whisenant v. Yuam, 739 F.3d 160, 163(4th Cir. 1984), abrogated on other grounds by Mallard, 490 U.S. at 300, n.3. ("*[I]t is an abuse of discretion to decline to appoint counsel where the case of an indigent plaintiff presents exceptional circumstances.*").

**PETITIONER ALSO REQUESTS THAT THE HABEAS COURT ADMIT THE ADDITIONAL EVIDENCE AND GRANT THE DOCUMENT #144 MOTION AND ADMIT ALL OF THE DOCUMENT #145 EVIDENCE FOR THE FOLLOWING REASONS AND REQUESTS A HEARING FOR THE MATTER IF**

105

## THE GOVERNMENT'S MOTION FOR INJUNCTION ALSO REQUIRES A HEARING

Here are the following reasons why such evidence (Doc. #145 and all attachments) should be admitted as evidence for the decision on Petitioner's 2255 Motion despite it being filed outside of the timely response parameters of the "Government's Motion to dismiss" Petitioner's 2255 Motion.

1. Petitioner had not known about the Probation Officer email prior to the response time "Response to Motion due by 2/5/2018" to the Government's Motion to Dismiss. Petitioner didn't know and neither did the witnesses Roberta Hill, Stella Forinash, and Kenneth Forinash about the Kristy Burton email further proving that the Respondent's witness Kristy L. Burton had committed more than one false statement which proves that Respondent falsified evidence by producing a witness that had perjured herself on June 30, 2015. If Petitioner and the witnesses had known about the additional evidence, they would have submitted it in Document #143 and additional Exhibits. That is why Petitioner had filed the motion asking for permission (Document #144) to admit the additional evidence as all is important in regards to the facts concerning the Petitioner's actual innocence. It isn't untimely to file additional evidence when the Petitioner is asking for the Court's permission in a separate motion, if the Court grants such permission.

2. The Additional Evidence (Doc. #145 and all attachments) further proves that the Respondent has perpetuated a "FRAUD on the Court" by falsification of evidence upon the Court.

3. See case: 501 U.S. at 56–57; see also Synanon Found., Inc. v. Bernstein, 517 A.2d 28, 43 (D.C. 1986) (*once a party embarks on a "pattern of fraud," and "[r]egardless of the relevance of these [fraudulent] materials to the substantive legal issue in the case," this is enough to "completely taint [the party's] entire litigation strategy from the date on which the abuse actually began"*).

4. Citing: 2 J. WIGMORE, EVIDENCES § 278, at 133 (Chadbourn ed. 1979). "*It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause.*"

5. Respondent had plenty of opportunity after Motion under Document #144 and the additional evidence under Document #145, and Document #137, to correct his mistakes and apologize to the Court for allowing U.S. Probation ("USPO") Officer Kristy L. Burton to have perjured herself on June 30, 2015, thus the Home

107

Detention never should have occurred. It was Respondent's duty to arrest USPO Burton for perjury and apologize to the Court for falsification of evidence on June 30, 2015. USPO Burton may have also produced false statements for the Probable Cause hearing, thus Petitioner would like to request transcript of the Probable Cause hearing in June 11, 2015 ("*Minute Entry for proceedings held before MAG/JUDGE JOI ELIZABETH PEAKE:PRELIMINARY REVOCATION AND DETENTION HEARING as to BRIAN DAVID HILL held on 6/11/2015. AUSA Drew Cochran. Attorney Renorda Pryor present with defendant. Evidence presented. Probable cause found. Defendant detained. Written order forthcoming. Proceedings recorded. (Garrett, Kim) (Entered: 06/11/2015)*"). Petitioner requests that the Court conduct a full inquiry on AUSA Ramaswamy and AUSA Drew Cochran on why they allowed for USPO Burton to have committed perjury herself on June 30, 2015, and that perjury may have also occurred on June 11, 2015. Petitioner doesn't have the transcript but would also like to see if the Court Reporter will allow ordering of such transcript for that hearing as well to determine if perjury had also occurred on that date.

6. This perjury evidence is very important because it does apply to the actual innocence claim of Petitioner. The reason why perjury is yet another fact of Petitioner's actual innocence is because the Prosecutor of Petitioner's criminal case is supposed to be honest in Court and presents his indictment and conviction of Petitioner in a fair, honest, and impartial manner before the Court. The Respondent aka the Prosecutor is not supposed to present perjurers, liars, before

108

the Court under any circumstance. If the Respondent did not know that his key-witness for the Government had committed perjury, then he should have notified the Court as soon as the perjury is discovered.

7. The Respondent berated the Petitioner with false allegations of only making "conclusory allegations in his memorandum in support of Respondent's Motion for pre-filing injunction (Document #149). The Petitioner had proved the perjury of USPO Burton by supplying evidence to the Court (Document #137 and all attachments thereto), and the witnesses provided evidence that is newly discovered to the Petitioner and his family when they checked their email records and discovered further lies of USPO Burton (Document #145). Petitioner had no other choice but to ask the Court for permission (Document #144) to admit the additional perjury evidence along with a threatening email and news article in regards to Ian Freeman further showing the pattern and credibility of such threatening email messages that have started with Petitioner first receiving threatening tormail.org messages which a pattern had emerged and has escalated to the point where the Federal Bureau of Investigation ("FBI") had raided Ian Freeman on suspicion of downloading and possessing child pornography then receiving a taunting threatening email similar to what Petitioner had received in 2013. Petitioner cannot use the internet and doesn't have access to the witnesses email accounts. They discovered the additional evidence of perjury regarding USPO Burton and Petitioner had acted quickly/diligently, and in good faith,

promptly, to file the additional evidence with the Court accompanying a Motion asking for permission to admit this additional evidence.

8. This Honorable Court should grant the admission of this additional evidence (Document #145) and conduct an inquiry into why Respondent Attorney Anand Prakash Ramaswamy would permit the perjury of United States Probation Officer Kristy L. Burton, on June 30, 2015, and berates the Petitioner with false claims of being vexatious, harassing, and making "conclusory allegations" against his former Probation Officer when he has filed a Declaration under Oath along with Roberta Hill, Kenneth Forinash, and Stella Forinash, all providing testimony and evidence to the Court in regards to USPO Burton to have committed perjury on June 30, 2015. Four witnesses testifying under Oath and proving evidence is not a "conclusory allegation" and thus Respondent through Anand Prakash Ramaswamy has justified his behavior of protecting the perjurer USPO Burton which is "subornation of perjury" and proves Petitioner's claims altogether against Ramaswamy. Thus Ramaswamy has committed the fraud of "falsification of evidence" and thus the Petitioner may consult with an Attorney on whether he should file a separate Motion under Rule 11 to sanction the Assistant U.S. Attorney Anand Prakash Ramaswamy for aiding and abetting and protecting USPO Burton to have committed perjury on June 30, 2015, and his only response is by attacking Petitioner with only making a "conclusory allegation" and is asking for a pre-filing injunction as punishment for Petitioner only exposing Respondent's "fraud on the court" which warrants sanctions and penalties.

110

9. Respondent's position on the entire criminal case may need to be entirely questioned for that single allowance of perjury and justifying that perjury by attacking the Petitioner with baseless and vexatious allegations, including accusing the Petitioner of uploading court documents to the internet without any proof except showing an internet URL link (See Document #149, Page 10, quote "(see website at https://archive.org/details/HillvEOUSA , uploaded 04/26/2017).") which the Petitioner himself cannot access to defend against as Petitioner cannot use the internet without permission from the U.S. Probation Office. Petitioner cannot even access that link to even see what he is being accused of and yet is being accused or operating that link without any proof other than citing an online link. Petitioner is forced to ask his family to access that link but even then, that online archive link is not operated by the Petitioner. That is a "conclusory allegation" and that is Respondent's response to Petitioner's perjury allegations against USPO Burton when three witnesses had signed a Declaration under penalty of perjury and Petitioner signs a witness statement with evidence under penalty of perjury regarding the false statements made by the Government's key witness USPO Burton which is wanton perjury, a criminal act that was committed by USPO Burton.

10. Respondent has used extreme cases concerning vexatious, harassing, and frivolous behavior and are comparing it to the filings of Petitioner. Petitioner has not engaged in duplicative lawsuits as the FOIA is a separate matter and only for requesting the discovery material while the 2255 is for overturning a wrongful

111

conviction. The FOIA case is currently on Appeal in the Fourth Circuit. The 2255 Motion has not been denied yet and it is not been dismissed. Those are the only lawsuits Petitioner has ever filed in his entire life. Respondent used one case dealing with a serial liens filer that had frivolously filed liens with 192 Government officials including Judges and Court Reporters and he didn't assert his actual innocence and was rightfully convicted of murder or whatever his conviction counts were. Cromer v. Kraft Foods is not a Habeas Corpus case. The Respondent had attempted to divert attention away from Petitioner's evidence of actual innocence, evidence that the Respondent had perpetuated a fraud on this Honorable Court since June 30, 2015, and has refused to accept such perjury as fact and Respondent even rejects any case law he has filed with the Court if it doesn't fit the Respondent's narrative.

11. Petitioner has done nothing but provide Declarations/Affidavits explaining in detail what his claims are, how they may apply to the statutes or rules, and why his claims may be valid. Petitioner had filed physical paper evidence documented under penalty of perjury which may be admissible under the Federal Rules of Evidence or is admissible if the Government doesn't deny nor object to such evidence depending on what the Judge decides as an impartial intermediary. Actual innocence is very difficult to prove, thus it is a complex case requiring a lot of evidence to even persuade the Court for an evidentiary hearing. Yet the Respondent is upset in regards to the voluminous amount of pages filed, while a high bar of evidence is necessary for an actual innocence pleading/proceeding to

112

overcome the one (1) year statute of limitations hurdle. A lot of evidence, relevant case law, arguments, and well backed motions are necessary for winning an actual innocence proceeding for a Habeas case.

12. Whatever Federal Rule or law, Petitioner asks that this Honorable Court order to conduct an inquiry on Anand Prakash Ramaswamy and Kristy L. Burton for misconduct and for knowingly perpetuating a "fraud on the court" on June 30, 2015, and ignoring the evidence and/or permitting the perjury by attempting a pre-filing injunction and to seal all criminal case evidence pertaining the USPO Burton's perjury and other innocence evidence thus the Petitioner would not be allowed to discuss any of those filings with any Federal law enforcement agency without obtaining permission to unseal such records. Respondent is protecting his perjuring witness and thus an inquiry may be necessary to consider sanctioning and ceasing any further fraud on the court at its sole discretion.

Petitioner adds a three (3) supplements of evidence in attachment to this response and in support of such response:

1. Supplement 1: "Declaration of witnesses Stella Forinash, Kenneth Forinash and Roberta Hill in support of "MOTION to Vacate, Set Aside or Correct Sentence (Pursuant to 28 U.S.C. 2255) by BRIAN DAVID HILL (Document #141) and in support of Petitioner's Response to Government's motion for injunction and in our own "Memorandum in OBJECTION of Government's Motion for pre-filing injunction: Pursuant to 28 U.S. Code 1746 and subject to the penalties of perjury,

113

we therefore submit this statement to the U.S. District Court as follows:" – **Total of 28 pages**.

2. Supplement 2: "A Mother's Commentary" –Explains the injustices that have happened to Petitioner as a result of his Autism Spectrum Disorder from the perspective of witness Roberta Hill and she speaks out regarding the horrors of how Petitioner had been treated throughout his case. **Total of 7 pages**.

3. Supplement 3: "INVESTIGATION:" Created by Petitioner's family stating why this case needs to be investigated instead of the evidence being ignored. **Total of 7 pages**.

All evidence in attachment is submitted in good faith.

The request by the Respondent to requesting an "Order that Petitioner's filings in his § 2255 Motion be placed under seal, with the exception of DE # 125 (the § 2255 Petition)" is frivolous and no applicable Rule or statute is cited as to why there should be a mass sealing of filings. One Exhibit contains the Court Transcript (Document #131, Filed 11/14/17, Page 56 through 68 of 101) from the Court Reporter which is a public record. Other records of evidence are all compliant with the redaction rules. The evidence is filed under Declaration which is under penalty of perjury. None of that should be sealed and only under certain rules that only certain kinds of information can be sealed by court order. The Respondent has no right to simply seal away all evidence in a 2255 case. Therefore the Petitioner requests that the "request to seal" all 2255 filings except only the 2255 Motion be rejected and denied by the Honorable Court.

114

Therefore for all of the foregoing reasons as stated above, I recommend to the Habeas Court that Respondent's Motion for Pre-filing Injunction under Document #148 be denied or that Petitioner be given the appointment or request for Counsel to represent the Petitioner for the hearing in regards to the pre-filing injunction. The Petitioner also asks that the Court grant his Motion for leave of court to file additional evidence under Document #144. The Court needs to review the potential witnesses of that Nullify-NDAA Petition as well as the witnesses Roberta Hill, Stella Forinash, Kenneth Forinash, and Susan Basko. The Petitioner also asks for an inquiry into the misconduct of Anand Prakash Ramaswamy and sanctions him for any findings of "fraud on the court" and violation of Rule 3.8 of the Professional Rules of Conduct regarding the Special Responsibilities for Prosecuting Attorneys.

Respectfully submitted,

*Brian D. Hill*
*Signed* **Signed**
**Brian D. Hill (Pro Se)**
**310 Forest Street, Apartment 2**
**Martinsville, VA 24112**
**Phone #: (276) 790-3505**
**U.S.W.G.O.**

Signed on:

*April 4, 2018*

*President Trump, Please drain the Swamp inside Department of [In]Justice.*

This RESPONSE is respectfully filed with the Court, this the 4th day of April, 2018.

Petitioner also requests with the Court that a copy of this "PETITIONER'S RESPONSE BRIEF IN OPPOSITION TO "GOVERNMENT'S RESPONSE TO "MOTION AND BRIEF FOR LEAVE TO FILE ADDITIONAL EVIDENCE" AND GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #148) AND "MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #149)" be served upon the Government as stated in **28 U.S.C. §1915(d)**, that "The **officers of the court shall issue and serve all process, and perform all duties** in such cases. **Witnesses shall attend as in other cases**, and the **same remedies shall be available as are provided for by law in other cases.** Plaintiff requests that copies be served with the U.S. Attorney office of Greensboro, NC and AUSA Anand Prakash Ramaswamy and

115

AUSA Angela Hewlett Miller via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

## CERTIFICATE OF SERVICE

**Petitioner hereby certifies that on April 4, 2018, service was made by mailing the original of the foregoing:**

### PETITIONER'S RESPONSE BRIEF IN OPPOSITION TO "GOVERNMENT'S RESPONSE TO "MOTION AND BRIEF FOR LEAVE TO FILE ADDITIONAL EVIDENCE" AND GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #148) AND "MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #149)

**by deposit in the United States Post Office, in an envelope, Priority Mail Express, Postage prepaid under certified mail tracking no. EM 008804511 US, on April 4, 2018 addressed to the Clerk of the Court in the U.S. District Court, for the Middle District of North Carolina, 324 West Market Street, Suite 1, Greensboro, NC 27401. Then pursuant to 28 U.S.C. §1915(d), Petitioner requests that the Clerk of the Court move to electronically file the foregoing using the CM/ECF system which will send notification of such filing to the following parties to be served in this action:**

| Anand Prakash Ramaswamy<br>U.S. Attorney Office<br>Civil Case # 1:17-cv-1036<br>101 South Edgeworth Street, 4th Floor, Greensboro, NC 27401<br>Anand.Ramaswamy@usdoj.gov | Angela Hewlett Miller<br>U.S. Attorney Office<br>Civil Case # 1:17-cv-1036<br>101 South Edgeworth Street, 4th Floor, Greensboro, NC 27401<br>angela.miller@usdoj.gov |
|---|---|

116

This is pursuant to Defendant's "In forma Pauperis" ("IFP") status, 28 U.S.C. §1915(d) that "The officers of the court shall issue and serve all process, and perform all duties in such cases..."the Clerk shall serve process via CM/ECF to serve process with all parties.

| Date of signing: | Respectfully submitted, |
|---|---|
| April 4, 2018 | Brian D. Hill |
| | Signed |
| | Signed |
| | Brian D. Hill (Pro Se) |
| | 310 Forest Street, Apartment 2 |
| | Martinsville, VA 24112 |
| | Phone #: (276) 790-3505 |
| | U.S.W.G.O. |

Brian David Hill v. United States of America | Criminal Action No. 1:13-cr-435-1

Civil Action No. 1:17-cv-01036

Trump, Please drain the swamp before the DOinJ hurts me and my family some more. Please free me from the legal abuse and corruption.

I am being bullied and discriminated against because of My Autism. This is a cry for help. Help me Trump and Pardon me off/my conviction. Help free me from the Feds.

Save me Trump!
The Feds Keep trying to hurt me.

# SUPPLEMENT 1

**For Federal criminal/civil case filing -- PETITIONER'S RESPONSE BRIEF IN OPPOSITION TO "GOVERNMENT'S RESPONSE TO "MOTION AND BRIEF FOR LEAVE TO FILE ADDITIONAL EVIDENCE" AND GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #148) AND "MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #149) --**

**Brian David Hill (Petitioner) v. United States of America (Respondent)**

**Criminal Case Number 1:13-cr-435-1**
**Civil Case Number 1:17-CV-1036**



USWGO Alternative News (USWGO.COM, DEFUNCT)
WE ARE CHANGE (WEARECHANGE.ORG)
INFOWARS.COM (THERE IS A WAR ON FOR YOUR MIND)
Oath Keepers (oathkeepers.org)
FederalJack (FederalJack.com)
Alternative Media/Truth Movement brigade

# SUPPLEMENT 2

**For Federal criminal/civil case filing -- PETITIONER'S RESPONSE BRIEF IN OPPOSITION TO "GOVERNMENT'S RESPONSE TO "MOTION AND BRIEF FOR LEAVE TO FILE ADDITIONAL EVIDENCE" AND GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #148) AND "MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR PRE-FILING INJUNCTION" (DOCUMENT #149) –**

**Brian David Hill (Petitioner) v. United States of America (Respondent)**

**Criminal Case Number 1:13-cr-435-1**
**Civil Case Number 1:17-CV-1036**



USWGO Alternative News (USWGO.COM, DEFUNCT)
WE ARE CHANGE (WEARECHANGE.ORG)
INFOWARS.COM (THERE IS A WAR ON FOR YOUR MIND)
Oath Keepers (oathkeepers.org)

# SUPPLEMENT 3

**For Federal criminal/civil case filing
-- PETITIONER'S RESPONSE BRIEF IN
OPPOSITION TO "GOVERNMENT'S RESPONSE
TO "MOTION AND BRIEF FOR LEAVE TO FILE
ADDITIONAL EVIDENCE" AND
GOVERNMENT'S MOTION FOR PRE-FILING
INJUNCTION" (DOCUMENT #148) AND
"MEMORANDUM IN SUPPORT OF
GOVERNMENT'S MOTION FOR PRE-FILING
INJUNCTION" (DOCUMENT #149) –**

**Brian David Hill (Petitioner) v. United States of
America (Respondent)**

**Criminal Case Number  1:13-cr-435-1
Civil Case Number 1:17-CV-1036**



USWGO Alternative News (USWGO.COM, DEFUNCT)
WE ARE CHANGE (WEARECHANGE.ORG)
INFOWARS.COM (THERE IS A WAR ON FOR YOUR MIND)
Oath Keepers (oathkeepers.org)