FILED
JUN 25 2018
Clerk U.S. District Court
Greensboro, NC
BY

In the United States District Court
For the Middle District of North Carolina

**Brian David Hill**
**Petitioner,**

**v.**

**United States of America**
**Respondent.**

**Criminal Action No. 1:13-CR-431-1**

**Civil Action No. 1:17-CV-1036**

# PETITIONER'S MOTION FOR REQUESTING PSYCHOLOGICAL/PSYCHIATRIC EVALUATION TO DETERMINE ACTUAL INNOCENCE FACTOR UNDER FALSE CONFESSION ELEMENT AND TO RESOLVE THE CONTROVERSY/CONFLICT BETWEEN GOVERNMENT AND PETITIONER OVER "DELUSIONAL DISORDER"

## MOTION AND BRIEF IN SUPPORT OF THIS REQUEST

NOW COMES the Petitioner, by and through Brian David Hill ("Brian D. Hill", "Plaintiff" or "Hill"), that is acting pro se and is proceeding pro se before this Honorable Court in the Middle District of North Carolina, and hereby respectfully moves to request that this Court is to order a mental evaluation in support of proving Petitioner's actual innocence claims of (1) false confession and (2) for resolving a controversy/conflict/dispute over the wrongful diagnosis of "delusional disorder". The Petitioner has good legal arguments, evidence, and reasons as to why the

Respondent's/Government's arguments against Petitioner regarding his actual innocence fact of false confession and in regards to "delusional disorder" are wrong and are in the case of controversy. The only way to resolve the case of controversy and disputes between the Government/Respondent and Petitioner is for the Court to order an independent mental examination/evaluation to conduct a "Forensic Psychology" evaluation of Petitioner to write a psychiatric/mental evaluation report in regards to the issues of controversy raised in this case.

**Legal Authority:** This motion and brief in support of such motion are pursuant to Rule 12: "Applicability of the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure" of the "Rules Governing Section 2254 and 2255 cases", Rule 12.2: "Notice of an Insanity Defense; Mental Examination" of the Federal Rules of Criminal Procedure, and Rule 35: "Physical and Mental Examinations" of the Federal Rules of Civil Procedure, Petitioner in this case **respectfully requests that this Honorable Court order an mental evaluation in this case** prior to the Judge making a final decision on the Petitioner's 2255 Motion (See Document #125) and 2255 Brief (See Documents #128, #128-1, #128-2, #131, #132, #133, #134), the Government's Motion to dismiss Petitioner's 2255 Motion (See Document #141), Petitioner's Motion for Leave to submit additional evidence (See Document #144 and #145), and Government's Motion for pre-filing injunction (See Document #148 and #149).

**ADDITIONAL REQUEST TO THE COURT: There is another important issue that is pertinent to whether the Court will grant this motion, so another motion will be added to this motion pleading. Petitioner requests that the second motion inside of this first motion also be considered, asking that the Court rules on this Motion as two Motions as the Court of Appeals has set that Courts can rule on motions liberally from pro se filers. Thank You!**

The facts and circumstances which support such a request to the Court are as follows:

1. Petitioner has documented mental health conditions such as Autism Spectrum Disorder ("ASD"), Obsessive Compulsive Disorder ("OCD"), Generalized Anxiety Disorder ("GAD"), and a serious physical disability that is life-threatening without diabetic insulin which is Type 1 Brittle Diabetes: Mellitus.
2. Petitioner had originally been evaluated by Dr. Dawn Graney (See Document #17, "Psychiatric Report") over competency, and was evaluated by Dr. Keith Hersh (See Document #23, "Psychiatric Report") over the psycho-sexual evaluation and risk assessment.
3. The Respondent has made claims as to Petitioner's mental health and neurological mental health issue (Autism Spectrum Disorder) in their Motion to dismiss Petitioner's 2255 Motion (See Document #141, Page

10 of 14) in opposition to Petitioner's actual innocence claims. Stating that "*Petitioner attempts to explain this exchange as follows: "Defendant exhibited a sophisticated form of echolalia which means he repeated what was already described to him by Police." [DE #125, 4]. A sealed report of forensic evaluation contains a single mention of Petitioner and echolalia, from a much-earlier evaluation. [DE #17 at 7, "Collateral Sources Account"]*" and "*The dialogue quoted above demonstrates a series of questions and cogent answers, and in no way demonstrates echolalia*." Petitioner objected to the Government's argument in Document #143, Filed 01/26/18, Pages 50 to Page 54 of 86. That essentially shows that the Respondent either contends to, rejects to, or agrees to a certain extent that Petitioner has injected his documented mental health condition into the case as a basis for the actual innocence claim for § 2255 relief.

4. Respondent has further argued Petitioner's mental health controversies in their Motion (Document #148) and/or their Memorandum for Pre-filing Injunction (Document #149) stating that "*Petitioner's mental condition has been found to be related to the content and volume of his court filings (DE # 23; # 33 (PSR) at 14-15; see also Petitioner's rejection of this: "I do not recognize the wrongful diagnosis of "delusional disorder" by Dr.*

*Keith Hersh..." (DE # 137 at 3 (not filed under seal)(emphasis added)); see also Tr. of Mot. Hr'g, Sept. 3, 2014 (DE # 114 at 19-20)(colloquy between counsel for Petitioner and the Court)*" (Document #149, Page 8 of 20) and ". . .*besmirch his perceived oppressors, consistent with the diagnosis that Petitioner denies he suffers from*." (Document #149, Page 10 of 20).

5. Petitioner had filed another pro se pleading in 2015 also challenging the diagnosis of "delusional disorder" titled the Document #80 "*MOTION by BRIAN DAVID HILL to Strike and Rule out Psychiatric Diagnosis. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D, # (5) Exhibit E, # (6) Envelope)(Daniel, J) (Exhibit E replaced with correct image on 4/28/2015) (Daniel, J). (# (7) Exhibit F) (Daniel, J)*" however Petitioner at the time didn't filed it under an active statutory remedy to authorize such action. However it further proves that for years Petitioner has still till this day did not recognize the diagnosis of "delusional disorder".

6. Both court appointed lawyers John Scott Coalter and Eric David Placke ("Mr. Placke") <u>did not request a mental evaluation to make a determination on the actual innocence factor of "false confession"</u> and how Autism Spectrum Disorder ("ASD" or "Autism"), Obsessive

Compulsive Disorder ("OCD"), and Type 1 Brittle Diabetes applies to Petitioner's affirmative defense of frame up or just simply ap0plies to the facts of actual innocence. Mr. Placke the First Assistant Federal Public Defender for the Middle District of North Carolina only requested a mental evaluation on competency which is ineffective as Petitioner had owned and operated USWGO Alternative News which the intellectual buildup of such website proves competency, and a mental evaluation of psycho-sexual behavior and risk assessment. No mental evaluator has addressed the concerns regarding the wrongful diagnosis of "delusional disorder" and whether it may have been correctly applied at the time such diagnosis was made. No mental evaluator in this whole criminal and civil case has addressed the psychological factors of "false confession" and misleading statements, "false guilty plea" and the relevance of how Autism and OCD applies to it.

7. In Petitioner's 2255 Brief (See Documents #128-1, #128-2, and #128) as a memorandum that is part of Petitioner's 2255 Motion (See Document #125), Petitioner stated in Document #128, Pages 90 through 92 that "*VI. Requesting an Independent Psychological Expert and Medical Doctor to provide expert witness testimony for the valid reason as to why there was a False Guilty Plea that was entered on June 10, 2014, as to Defendant*

*giving a false confession on August 29, 2012, and how the Defendant's health plays a role in actual innocence*". So this is one of the actual innocence issues that haven't been acknowledged by the Government in their motion to dismiss Petitioner's 2255. The case should not be dismissed yet until the actual innocence issues of false confession and false guilty plea should be addressed. Since that is part of Petitioner's original 2255 Motion and Brief, it shouldn't be treated as though it doesn't apply to Petitioner's actual innocence claim that is not subject to the one (1) year statute of limitations.

8. Petitioner had decided that since the Respondent's/Government's Motion to Dismiss and the claims of Petitioner's filing behavior being "*consistent with the diagnosis that Petitioner denies he suffers from*" which would point to "delusional disorder", and since the Respondent is ignoring the false confession of Petitioner being a factual innocence claim, that Petitioner started contacting by faxing "Forensic Psychologists" around the Durham area of North Carolina. Petitioner wants to finds a forensic psychologist that is within the city or near the city of the Federal Courthouse which the evaluator can testify as cheaply as possible (car gas, travel distance expenses) in conducting an independent mental evaluation to make a determination on the wrongful diagnosis of

"delusional disorder" and false confession as caused by ASD and OCD. Petitioner has sought on his own merits, a psychological expert that can conduct a forensic mental health evaluation on factors that have never been presented to the U.S. District Court since Petitioner's criminal charge by the Grand Jury (Document #1).

9. Petitioner's claim of false confession is a FACT of actual innocence, because according to the Grand Jury Indictment (See Document #1) "*On or about August 29, 2012, in the County of Rockingham, in the Middle District of North Carolina, BRIAN DAVID HILL did knowingly possess materials which contained child pornography. . .*" That was the day that Petitioner gave his false confession. That means a large portion of the whole basis of the criminal charge against Petitioner is the "false confession" element. Document #19 further shows that the Respondent's claimed FACT of guilt was shown in the factual basis of guilt regarding Petitioner, the document stating that "*In a consensual, non-custodial interview the following day, HILL admitted knowingly seeking and possession child pornography*". Petitioner proving false confession also proves that FACTUAL BASIS of guilt is incorrect and fraudulent, which is the Government/Respondent committing "fraud on the court" since the Respondent's own discovery materials given to Mr. Placke, which

Petitioner wasn't able to entirely review and inspect until January 22, 2015 after final conviction on November 12, 2014 (See Supplement #4). It is fraudulent because it was already explained that Petitioner made claims during the interview/interrogation that did not match the questionable forensic report by the North Carolina ("N.C.") State Bureau of Investigation ("SBI") as already highlighted in the Petitioner's 2255 Brief and Memorandum. A few examples are how Petitioner was charged with child pornography of a prepubescent minor that had not attained the age of twelve (12) years of age and the keyword age numbers varying which shows that the Petitioner's statement of "12 to 13 year olds" was contradictory and is false or did not match the forensic report claims. The Petitioner's claim of downloading child porn for "About a year or so" when the download dates of the N.C. SBI report show that that analysis of server.met revealed that it was between the dates of "*July 20, 2012, and July 28, 2013*." Since the computer equipment was seized on August 28, 2012, it proves that for eleven (11) months "files of interest" which may be or not be actual child pornography had downloaded while in the custody of the N.C. SBI and Town of Mayodan ("Mayodan") Police Department. If for whatever reason the download year may have been mistyped, then 454 files had only downloaded for 8 days in July of 2012,

and then a month went by without any "files of interest" that may or may not be actual child pornography before Mayodan Police Department showed up for the police raid which does not match a pedophile but more of matches an unusual activity for a so-called predator that Detective Robert Bridge talked about in hit Affidavit in the Search Warrant. So that confession statement was false. The statements of "PTSC" and "PTHC" being repeated by the police detectives in both their police report and search warrant Affidavit by Detective Bridge, the Petitioner had been exposed to such words describing sexual conduct and description of what child pornography was prior to giving the false confession a day later. Delayed echolalia as part of Petitioner's Autism explained why Petitioner had uttered the words of "PTSC" and "PTHC". As the entire confession is cross examined, the confession has holes thrown into it like Swiss cheese. It is not a solid genuine confession but a confession that was making statements that didn't even match the forensic claims. False confessions and misleading statements as caused by Autism according to Dennis Debbaudt. When a confession does not match the forensic claims like in the 9th Circuit U.S. Court of Appeals review of the false confession of Michael Crowe, even his confession was coerced out of false claims by Detectives that his sister's blood was found in Michael

Crowe's room, then he gave false confession statements which were later thrown out of court as false confession statements. When Petitioner's false confession statements do not match the forensic case facts, then it is a proven "false confession" and is a FACT of actual innocence, since the "confession" is one of the major elements of Petitioner's guilt and criminal charge by the Grand Jury.

10. Petitioner has received a proposed contract (See Supplement #1) of a forensic psychologist business that has agreed to appoint a "mental evaluator" for Petitioner's actual innocence case of his 2255 Motion with a full-battery fee that is to pay for the evaluation that was requested in the original letter (See Supplement #2) asking for an Independent Forensic Psychologist for the elements of "false confession" and whether "delusional disorder" was a validly given diagnosis.

11. Petitioner cannot afford the fees that could exceed over $2,550 since they would not offer this service under that price as a flat fee. However the full-battery fee should cover all details of the original request for an evaluation on false confession which the issue was covered by Petitioner's 2255 brief, false guilty plea which the issue was covered by Petitioner's 2255 brief, and to make a determination on whether "delusional disorder" shall be ruled out as a invalidly given diagnosis

based on mental heal.th factors and the situation at the time such diagnosis was given. Petitioner cannot afford the costs of proving innocence but such mental evaluation is necessary for proving the factual element of "false confession" which is a FACT of actual innocence since a portion of the basis regarding Petitioner's guilt was based on his false confession and charge that he "*knowingly possessed materials which contained child pornography*". Proving false confession and showing good psychological factors why his guilty plea is false as well as ineffective counsel is a FACT of actual innocence. It means that the Government no longer has a basis for a conviction since the Petitioner did not admit to anything involving illegal child pornography with a proven "false confession" and did not admit to knowingly possessing such materials. Petitioner is going to ask this Honorable Habeas Court to consider a CJA 21 Voucher asking the Court to compel the Government to pay for a mental health expert to conduct a psychological evaluation to write a report for the Court to consider prior to making a final determination on dismissing or not dismissing the Petitioner's 2255 Motion. Petitioner had attempted to persuade a third party to agree to pay a fixed amount for the mental evaluation but the proposed contract does not seem to agree to a flat rate but instead is of a full-battery which

means additional fees can be applied and enforced which the Petitioner doesn't have the ability to pay under his Social Security Disability income. This would make the Petitioner be held liable for additional fees that cannot be paid for. If the Respondent/Government demands cross examination or deposition, then the Petitioner can be held to be billed for those costs that cannot be paid for by Petitioner due to his limited-income as reported in the application for In Forma Pauperis status, which his IFP status is still accepted by the Court. Therefore the Criminal Justice Act vouchers can apply in this case. It is a very complex case and Petitioner cannot afford the fees in Lepage Psychological and Psychiatric Services Contract and Fee Agreement for the mental examination. Full Battery does not have a limit or cap, and thus additional fees can be charged in the complexity of this Habeas Corpus case, especially with the audio file of the 1-hour long interview/interrogation of Petitioner at Mayodan Police Department, N.C. State Bureau of Investigation case file (forensic report), Mayodan Police Department report, Search Warrant Affidavit, police photographs, Pre-sentence Investigation Report, and all of the other relevant discovery records in this case.

12. The Petitioner's mental health plays a very important role in determining the Petitioner's FACTS of ACTUAL INNOCENCE, plays a very

important role in what led up the Government's Motion for Pre-Filing Injunction, and misinterpretation of Petitioner's Autism Spectrum Disorder as abusive or caused behaviors that are unexpected from a Pro Se Plaintiff/Petitioner. Behaviors that would normally have been protected under the Americans with Disabilities Act ("ADA") if the ADA had ever applied to the Federal Buildings, had Congress ever amended the ADA to have been applied to Federal Courts. Before the Government's Pre-Filing Injunction motion should even be considered, this mental evaluation can cover the FACT of actual innocence regarding the (1) false confession element which contradicts the Government's FACT of guilt regarding the August 29, 2012 confession, (2) that the conflict and controversy regarding "delusional disorder" be resolved while the 2255 Motion and case is still pending, and (3) that the mental evaluation also help the Court to better understand why the Petitioner had filed a large number of pages and pro se filings and the mental/neurological health issues that should be taken into account before just simply deciding or granting or denying the Government's/Respondent's Motion for Pre-Filing Injunction.

## STANDARD OF REVIEW/ STANDARDS FOR MENTAL EXAMINATIONS

The "Rule 35. Physical and Mental Examinations" of the Federal Rules of Civil Procedure, as approved by the Judiciary Committee, grants federal courts authority to issue orders for mental evaluations FRCP Rule 35(a)(1) excerpt: ". . .where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control." It also states that FRCP Rule 35(a)(2) excerpt: "Motion and Notice; Contents of the Order. The order: (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Since the Petitioner is filing this motion, supplements, and all relevant information and documentation with the Clerk who files it via CM/ECF, the Notice of Electronic Filings ("NEF") should be sufficient for NOTICE to the other party in this case. The time and place has not yet been determined as the evaluation cannot be started without an order from the Court approving of the use of such evaluation for this case. The scope of the examination has already been brought up in this pleading and in the supplements supplied in attachment to this pleading. The conditions of this examination can be determined by the Court.

In the case law of ANGELA JOHNSON v. UNITED STATES, even though in a different Circuit, has established that mental examinations are accepted for § 2255 cases where such mental examination is necessary in regards to addressing an issue raised in a 2255 Motion. Since in Petitioner's case, such mental evaluation is necessary for demonstrating actual innocence in regards to the psychological factors of (#1) false confession and the delayed echolalia as cause for repeating the terms PTHC and PTSC during the interview/interrogation on August 29, 2012, (#2) that the Petitioner has repeatedly rejected the diagnosis of "delusional disorder" which the Respondent/Government raises as a case of controversy, (#3) that the issue of mental health in regards to actual innocence must be addressed prior to deciding whether to dismiss the 2255 Motion, and (#4) that mental health issues are also at issue in regards to the Pre-Filing Injunction and that Autism Spectrum Disorder and Obsessive Compulsive Disorder are misinterpreted as vexatious and harassing thus also mental health at issue in regards to whether the Court should grant or deny the Motion for Pre-Filing Injunction.

**Johnson v. United States (N.D. Iowa Mar. 18, 2010):** ". . .*The court finds that the procedural rule that is applicable here, via § 2255 Rule 6(a), is Rule 35 of the Federal Rules of Civil Procedure. Federal courts entertaining habeas proceedings have recognized Rule 35 as the authority for mental health discovery, both in habeas cases by state prisoners subject to § 2254 Rule 6, which only authorizes*

*discovery pursuant to the Federal Rules of Civil Procedure, see, e.g., Pizzuto v. Hardison, 2010 WL 672754, *1 (D. Idaho Feb. 20, 2010) (finding that Rule 35 of the Federal Rules of Civil Procedure applied, via § 2254 Rule 6(a), to the respondent's request for mental examinations in the federal habeas proceedings of a state prisoner); Wagner v. Jess, 2009 WL 4755281, *2 (E.D. Wis. Dec. 4, 2009) (finding that Rule 35 of the Federal Rules of Civil Procedure applied to the request of a habeas petitioner for physical and mental examinations, via § 2254 Rule 6(a), but finding that the petitioner had not shown that his mental or physical condition was "in controversy"); Holt v. Ayers, 2006 WL 2506773 (E.D. Cal. Aug. 29, 2006) (denying the respondent's motion for mental examinations of a § 2254 petitioner pursuant to Rule 35 of the Federal Rules of Civil Procedure without prejudice to a renewal of the request addressing the requirements of Rule 35(a) in light of the order and deposition testimony of treating doctors), and in cases by federal prisoners subject to § 2255 Rule 6, which authorizes discovery pursuant to both the Federal Rules of Criminal Procedure and the Federal Rules of Civil Procedure. See, e.g., United States v. Kerr, 2005 WL 1640343, *1 (E.D. Mich. July 8, 2005) (finding that the § 2255 petitioner properly sought his own mental examination by invoking Rule 35(a) of the Federal Rules of Civil Procedure, but finding such an examination was "unnecessary"); United States v. Johnson, 2003 WL 1193257, *11-*12 (N.D. Ill. March 12, 2003) (although neither party cited any*

*legal basis for the § 2255 petitioner's request to conduct psychiatric or psychological testing, Rule 35(a) of the Federal Rules of Civil Procedure was applicable, and the petitioner's request did not comply with the requirements of that rule); see also Smith v. United States, 174 F. Supp. 828, 832-33 (S.D. Cal. 1959) (in a case decided before § 2255 Rule 6 was adopted (in 1976), holding that it was clear that § 2255 proceedings were "civil" proceedings, and that there was no doubt that the court could require a mental examination pursuant to Rule 35 of the Federal Rules of Civil Procedure). Thus, the court turns to the standards for mental examinations under Rule 35 of the Federal Rules of Civil Procedure.*"

That rule provides, in pertinent part, as follows:

1. **(a) Order for an Examination.**
    a. (1) In General. The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.
    b. Motion and Notice; Contents of the Order. The order:

i. (A) May be made only on motion for good cause and on notice to all parties and the person to be examined; and

ii. (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

FED. R. CIV. P. 35(a) (emphasis added).

More than four decades ago, the United States Supreme Court considered the validity and construction of Rule 35 in Schlagenhauf v. Holder, 379 U.S. 104 (1964). As the Court explained,

> The courts of appeals in other cases have also recognized that Rule 34's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule. This is obviously true as to the 'in controversy' and 'good cause' requirements of Rule 35. They are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.
>
> Rule 35 . . . requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of

> 'in controversy' and 'good cause,' which requirements, as the Court of Appeals in this case itself recognized, are necessarily related. 321 F.2d, at 51. This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.

Schlagenhauf, 379 U.S. at 118-19 (emphasis added; footnote omitted).

"*In Schlagenhauf, the Court suggested that there are circumstances in which the pleadings alone are sufficient to meet the "in controversy" and "good cause" requirements, such as a case in which the plaintiff in a negligence action asserts mental or physical injury and, thus, "places the mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Id. at 119. The Court found that the same would be true of a defendant who asserts his mental or physical condition as a defense to a claim. Id. On the other hand, the Court found that, where a party did not assert his mental or physical condition, either in support of or in defense to a claim, and his condition was only placed in issue by other parties, Rule 35 required those parties to "make an affirmative showing that . . . mental or physical condition [of the party to be examined] was in controversy and that there was good cause for the examinations requested." Id. (finding that*

*the movants had failed to make that showing in the case before the Court). Moreover, the Court rejected an order authorizing one examination in each of four specialities (internal medicine, ophthalmology, neurology, and psychiatry), because "[n]othing in the pleadings or affidavit would afford a basis for a belief that Schlagenhauf was suffering from a mental or neurological illness warranting wide-ranging psychiatric or neurological examinations." Id. at 120. The Court looked at the "specific allegations" made in support of the examinations to determine whether or not the examinations should be ordered. Id. at 121. In short, "[m]ental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." Id. Only slightly more recently, the Eighth Circuit Court of Appeals recognized that "[t]he manner and conditions of a court-ordered medical examination [pursuant to Rule 35(a)], as well as the designation of the person or persons to conduct such an examination, are vested in the sound discretion of the trial court." Sanden v. Mayo Clinic, 495 F.2d 221, 225 (8th Cir. 1974)[1].*"

---

[1] The Sanden decision relied on a former version of Rule 35(a) that, nevertheless, was the same in essential content. At that time, Rule 35(a) provided as follows: (a) Order for examination. When the mental or physical condition * * * of a party * * * is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician * * *. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

"*This court also notes that the requirements of Rule 35 must be viewed, in this habeas case, through the prism of Habeas Rule 6. "'A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'" Newton v. Kemna, 354 F.3d 776, 783 (8th Cir. 2004) (quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)). Rather, Habeas Rule 6 "provides that "[a petitioner] shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.'" Id. (quoting former language of Habeas Rule 6(a))*[2]*. Habeas Rule 6, like Rule 35 of the Federal Rules of Civil Procedure, imposes a "good cause" requirement on discovery. See 6(a) R. § 2255 Pro. ("A judge may, for good cause, authorize a party to conduct discovery. . . ."); 6(a) R. § 2254 Pro. (same). The Eighth Circuit Court of Appeals has explained that, at least from the perspective of the habeas petitioner, "The 'good cause' that authorizes discovery under Rule 6(a) requires a showing 'that the petitioner may, if the facts are fully developed, be able*

---

Sanden, 495 F.2d at 225 n.6.

[2] Habeas Rule 6 was reworded "as part of a general restyling of the rules to make them more easily understood" in 2004, but "no substantive change [wa]s intended." 6 R. § 2255 Pro., Advisory Committee Notes, 2004 Amendments. As noted, supra, § 2254 Rule 6(a) only authorizes discovery pursuant to the Federal Rules of Civil Procedure, but § 2255 Rule 6(a) authorizes discovery pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure.

*to demonstrate that he is . . . entitled to [habeas] relief.'" Rucker v. Norris, 563 F.3d 766, 771 (8th Cir. 2009) (quoting Bracy, 520 U.S. at 909, with internal quotation omitted); Newton, 354 F.3d at 783 (also quoting Bracy). Thus, the court concluded that a state court's determination that the petitioner failed to show "more than a slight chance" that additional testing would yield a favorable result was not "'based on an unreasonable determination of the facts.'" Id. (quoting 28 U.S.C. § 2254(d)(2)).*"

"*There is no reason to suppose that a more lenient standard was intended for discovery by the respondent in habeas cases, which is what is at issue here, where the rule applies to authorizations for discovery by "a party." R. § 22554 P. 6(a). Thus, translating the requirements of Habeas Rule 6, as set out in Rucker, 563 F.3d at 771, to a discovery request by a respondent, the court believes that the respondent must also show "good cause" for the requested discovery, and that "good cause" requires a showing that, if the facts are fully developed, there is more than a "slight chance" that the respondent may be able to demonstrate that the petitioner is not entitled to relief.*"

The Petitioner asserts deprivation of his Sixth Amendment of the United States Constitution regarding the right to "effective assistance of counsel" under the two-prong test of Strickland v. Washington (1984, U.S. Supreme Court). Counsel did

not request a specific mental evaluation to review over the discovery evidence and interview the Petitioner over Petitioner's false confession statements as the FACT is that the confession statements obtained on August 29, 2012, are not matching the claims made by Special Agent Rodney V. White of the N.C. SBI. In his forensic case file report on suspect Petitioner. The confession statements were obtained through coercion. Dennis Debbaudt had stated in his expert whitepaper that those on the Autism Spectrum (See Document #132, Pages 9 through 12, Exhibit 15) can give misleading indications of guilt and false confessions. People with Autism can hear words mentioned at the crime scene and repeat them during an interview or interrogation which would mislead investigators into believing that the suspect had familiarity in regards to a criminal activity when such familiarity may not be based on actual criminal behavior or witnesses that saw or heard of criminal behavior but based upon what was overheard at the crime scene such as a police raid. Petitioner was brought inside of the home multiple times during the police raid and was exposed to words describing sexual content in an Affidavit by the Search Warrant which the copy was served with Petitioner and his mother Roberta Hill during the police raid on August 28, 2012. The false confession FACT can be further determined by a psychological forensic examination. It will solidify the FACT of false confession which is a FACT of innocence since the indictment and Government's/Respondent's FACTUAL BASIS of guilt concern a genuine and

honest criminal confession. If a confession is proven entirely false then the FACT of confessing to the crime is false and instead flips to the FACT of actual innocence since the confession was false. Any FACTS of innocence may be entitled to relief for a § 2255 Motion beyond the one (1) year statute of limitations. Counsel was ineffective because of only requesting a mental examination for competency and a psycho-sexual evaluation but no mental examination in regards to any FACTS of actual innocence. Counsel did fail to investigate and present evidence for the Jury Trial that was planned for June 10, 2014. Had Petitioner not plead guilty under such ineffectiveness, Petitioner would have lost the Jury Trial. Counsel did not meet with Petitioner with an intent to discuss a possible defense for trial, and Counsel did not had anything planned for the Jury Trial except the guilty plea agreement. Counsel failed to investigate the false confession caused by mental ailments or mental illnesses during the time of the alleged offense. That Counsel failed to show the Court prior to Jury Trial how his mental problems would have made him particularly susceptible to the manipulations of the police detectives Robert Bridge and Christopher Todd Brim, thus warrants the white paper of Dennis Debbaudt explaining false confessions and misleading statements by those diagnosed with Autism Spectrum Disorder. Petitioner could have won the Jury Trial by either having Counsel to suppress the false confession which would dramatically weaken the Government's case, or allow the false confession and use

it as a FACT of innocence which will create a reasonable doubt into the charge of "*knowingly possessing materials which constitute child pornography*". Any fact of innocence is far stronger than simply raising a reasonable doubt because any fact of innocence would compel any reasonable Juror to find a criminal defendant not guilty beyond a reasonable doubt.

Petitioner and the Respondent both accepted that Petitioner suffers from Autism Spectrum Disorder ("ASD"), Obsessive Compulsive Disorder ("OCD"), Generalized Anxiety Disorder ("GAD"), and Type 1 Brittle Diabetes. Petitioner disagrees with Respondent on the "delusional disorder" due to very good reasons why (Supplement #4). Since Autism is a neurological disorder and not just in the class of mental health, it could also be labeled as a neuro-psychiatric condition. Since both the Respondent and Petitioner are raising a controversy issue in regards to echolalia, false confessions, and delusional disorder, it may be a case of controversy to what is satisfied under Cf. Schlagenhauf, 379 U.S. at 119-120.

The Petitioner asserts deprivation of his Fifth Amendment of the United States Constitution regarding the right to remain silent and to "not be compelled to be a witness against himself", also known as the right against self-incrimination, as well as the voluntary confession rule as established by the U.S. Supreme Court,

confessions have to be voluntary and without coercion or threats which would eliminate the voluntariness of a confession given to a law enforcement agency.

This mental examination also can highlight the Fifth Amendment aspects to Petitioner's false confession in regards to coercion. Petitioner had stated multiple times throughout this case in one or more pro se filings that "*Fess Up! We know you did it, you better fess up or else your mother will be held responsible*" and claimed that the threat came from Mayodan Police Department, Chief of Police Charles J. Caruso on August 28, 2012. That itself is a form of coercion outside of the interview/interrogation, and the false confession statements were caused by coercion and the Petitioner's mental health issues. That deprives the Petitioner of his Fifth Amendment right to remain silent. That also proves the FACTUAL BASIS of GUILT to be incorrect on the claim of the confession being voluntary even though non-custodial. When Petitioner is threatened with the fear that his mother would be charged with possession of child porn if he doesn't admit to guilt and thus made claims that cannot even match the forensic report by the N.C. SBI, then the Fifth Amendment of the United States Constitution as well as actual innocence both applies in this Habeas Corpus case.

So this mental evaluation is also in consideration of not just the confession being false but also a byproduct of coercion therefore the U.S. Constitutional right to

remain silent and right to not incriminate oneself is also at issue, both Constitutionally and in the FACT of actual innocence which isn't subject to the one (1) year statute of limitations for § 2255 cases.

The conditions which the mental evaluation is to test is in Supplement #2, the letter faxed to Lepage Psychological and Psychiatric Services, the conditions tested is Autism Spectrum Disorder, Obsessive Compulsive Disorder, and the delusional disorder to make a determination on the false confession and whether delusional disorder was appropriately applied or whether it should be ruled out.

**Petitioner adds four (4) supplements of evidence in attachment to this motion and in support of such motion:**

1. Supplement 1: Proposed Contract and Fee Agreement by Tina Lepage – **Total of 8 pages**.
2. Supplement 2: Original letter that was faxed to Tina Lepage regarding a request for a mental evaluation. FAX Transmission Ticket included. **Total of 5 pages**.
3. Supplement 3: Proposed CJA 21 Voucher asking to pay for Expert Witness for 2255. **Total of 1 page**.
4. Supplement 4: Declaration of Brian David Hill in support of this Motion. **Total of 32 pages**.

All evidence in attachment is submitted in good faith. If the Court requests that the Supplements be declared under penalty of perjury then Petitioner can file a declaration to declare the supplement or supplements under Oath.

WHEREFORE, the Petitioner respectfully requests that the Court:

(1.) Grant this Motion for the Court to issue an order for a Mental Examination of Petitioner Brian David Hill;

(2.) Enter an Order granting a mental examination/evaluation, to make a determination on Petitioner's claimed false confession which supports a fact of innocence in regards to Petitioner's basis of guilt concerning the confession, thus any facts of innocence solidified warrants relief for Petitioner's § 2255 motion and that the evaluator make a determination on whether Dr. Keith Hersh's diagnosis of "delusional disorder" was invalid, incorrect, or was not applied correctly due to the circumstances at the time of such diagnosis being made. Then the evaluator should also determine whether that "delusional disorder" diagnosis should be ruled out.

(3.) Order that the Petitioner submit to the mental examination by an independent evaluator that is to be picked by Lepage Associates

Forensic Evaluation Services (forensic psychology) or by any other mental evaluator approved by the Court and allowed by a Criminal Justice Act ("CJA") 21 Voucher to pay for expert any expert witnesses under § 2255 cases. That in the event that the Court doesn't agree with the fee agreement, then the Court can make a suggestion on what fee the CJA Voucher can be covered by the Criminal Justice Act voucher.

(4.) Order that the suggested mental evaluation service be paid for by a CJA 21 Voucher and that such evaluation be conducted for the purposes set out in this pleading and any or all attached supplements.

(5.) Order that the previous mental examination reports by Dr. Dawn Graney (See Document #17, "Psychiatric Report") and Dr. Keith Hersh (See Document #23, "Psychiatric Report") which are sealed be released and disseminated to the evaluator for conducting the court approved mental examination as per this motion.

(6.) Order that the Pre-Sentence Investigation Report also under seal be allowed to be released and disseminated to the evaluator for conducting the court approved mental examination as per this motion.

(7.) Order any other action, thing or matter that the Court deems appropriate in the matter of this motion.

(8.) That such mental examination is to determine whether any psychological factors do demonstrate that Petitioner gave a false confession which is a FACT of Innocence.

(9.) That such mental examination is to determine whether Petitioner had really suffered from the diagnosis of "delusional disorder" and whether that diagnosis should be ruled out as NON-FACTUAL.

(10.) Order that the mental examination/evaluation report be filed under SEAL to comply with the rules and laws of this Court, once the evaluation has reached its final conclusion.

## MOTION THAT THE COURT COMPEL ATTORNEY JOHN SCOTT COALTER TO RELEASE THE CRIMINAL CASE DISCOVERY MATERIAL TO THE MENTAL EVALUATOR AS FOR THE PURPOSE OF THE MENTAL EXAMINATION

## MOTION AND BRIEF IN SUPPORT OF THIS REQUEST

If the first motion in this pleading is granted, then Petitioner asks that this second Motion also be considered and granted within this pleading.

NOW COMES the Petitioner, by and through Brian David Hill ("Brian D. Hill", "Plaintiff" or "Hill"), that is acting pro se and is proceeding pro se before this Honorable Court in the Middle District of North Carolina, and hereby respectfully moves to request that this Court is to compel Attorney John Scott Coalter ("Mr. Coalter"), the counsel of record prior to the final sentencing, to disclose and disseminate a copy of the criminal case discovery material in his possession over to the mental evaluator that is to conduct the mental examination that the Court approves of for the § 2255 case.

The reasons why such request to compel is necessary is because the FACTS that **(#1)** John Scott Coalter admitted to being in conflict of interest (See case Brian David Hill v. Executive Office for United States Attorneys et al, Western District of Virginia, case # 4:17-cv-00027, Documents #12-5 (Filed 06/12/17), Pages 1 to 4 and #4-1 (Filed: 05/01/17), all pages).; **(#2)** John Scott Coalter had inappropriately and unethically attempted to turn away counsel that had agreed to represent the Petitioner in his bid to prove actual innocence after admitting that he was in conflict of interest on September 30, 2016 (See case Brian David Hill v. Executive Office for United States Attorneys et al, Western District of Virginia, case # 4:17-cv-00027, Documents #12 and #12-1, Filed 06/12/17, all pages); and **(#3)** because John Scott Coalter had threatened to destroy the discovery evidence by saying it may be destroyed after talking Attorney Emily Gladden out of representing Petitioner for his actual innocence claim (See case Brian David Hill v. Executive Office for United States Attorneys et al, Western District of Virginia, case # 4:17-cv-00027, Documents #2-8, Filed 04/25/17, all pages).

Mr. Coalter admitted as outlined in the group Declaration that "*Then as we were talking, Mr. Coalter told us that he could not represent Brian. "It would be a conflict of interest"*." Even without such admission or Declaration, Mr. Coalter would be in conflict of interest due to the fact that he advised Petitioner of and led to not withdrawing the guilty plea. Thus Mr. Coalter would have to testify against Petitioner to overcome his false guilty plea by proving ineffective assistance of counsel. Thus it paints Mr. Coalter in a negative light to overcome the procedural hurdles for both actual innocence and ineffective assistance of counsel necessary to withdraw a guilty plea as involuntary and/or unintelligent.

The FACTS presented in this SECOND MOTION demonstrate under good faith that Mr. Coalter has stated that the discovery files may be destroyed (*essentially what the Petitioner assumes is that Mr. Coalter had threatened to destroy the discovery materials*) after unethically giving his opinions or advice to make Attorney Emily Gladden not want to take the case after he admitted on September 30, 2016, that he was in conflict of interest for Petitioner filing his 2255 motion. He tried to assert Petitioner's guilt even though he admitted that he is not a computer expert and has no education in computers. Mr. Coalter is not a computer expert but yet asserts his belief in Petitioner's guilt despite not being an expert and no blurred thumbnails of any child pornography mare in the discovery. Nothing confirmed as to each file of interest being of such material.

In Petitioner's and his families dealings with Mr. Coalter, Petitioner doesn't feel confident that he will permit turning over a copy of the discovery materials to the mental evaluator to conduct a mental examination without a court order.

Under the Local Rules of Criminal Practice, the Local Rules for the Middle District of North Carolina concerning criminal cases which would also apply for § 2255 cases, it stated that discovery material is limited to who it can be disseminated to but such limitations do not apply to retained experts.

Under this Court's Local Rules of Criminal Practice, "LCrR16.2 LIMITATIONS CONCERNING CRIMINAL DISCOVERY" is stated the following:

> (a) Any discovery materials (defined as all information contained within discovery, regardless of whether such materials are defined as discovery under Rule 16) that are provided by the United States to the defendant shall not be further disseminated by the defendant or his or her counsel to any individuals, organizations, or other entities, except to the following degree:
>
> (1.) To members of the defense team (the defendant, counsel, paralegals, investigators, litigation support personnel, and legal support staff);
>
> (2.) To any experts or consultants retained to assist in the preparation of the defense; and
>
> (3.) To the Court.

(b) Discovery materials are to be used by the defendant and his or her counsel solely for the purpose of allowing the defendant to prepare the defense. The defendant, his or her counsel, and other members of the defense team shall not disseminate, disclose or provide such discovery materials to anyone who is not necessary to the preparation of the defense. In the event the defense team desires to disseminate, disclose or provide such discovery materials to a party not permitted by this local rule, the United States must first be so advised and the parties must seek to reach an agreement on the matter. If an agreement cannot be reached, defense counsel shall apply to the Court for relief.

(c) The defense team may display copies of discovery materials to non-expert witnesses if it is determined that such is necessary for the purpose of preparing the defense, and the defense team may do so without notice to the United States. However, the defense team may display copies of discovery materials to such witnesses only in the presence of the defense team and only if such witnesses agree to the confidentiality requirements set out in this rule. Further, witnesses shall not be permitted to maintain copies of discovery materials after inspection.

This Local rules however does not have a provision in regards to the circumstance where a Counsel of record is in "conflict of interest" where an expert witness can review over the discovery evidence materials necessary for preparing for a defense.

The defense is the affirmative defense of frame up or actual innocence.

If the expert witness has to be in any form of contact with Mr. Coalter to simply be allowed to review over the discovery materials to prepare a mental examination report, then Mr. Coalter must have minimal contact with the evaluator or be gag ordered to not discuss the case and not to give any opinions about the case to the expert evaluator to prevent the conflict of interest and at the same time comply with the Local Criminal Rule in regards to discovery. Mr. Coalter could tamper with the evaluator while the evaluation is being conducted or could fetter with the evaluator doing his/her job which impedes the ability to conduct a mental examination needed for the 2255.

WHEREFORE, the Petitioner respectfully request that the Court:

(1.) Grant this Second "MOTION THAT THE COURT COMPEL ATTORNEY JOHN SCOTT COALTER TO RELEASE THE CRIMINAL CASE DISCOVERY MATERIAL TO THE MENTAL EVALUATOR AS FOR THE PURPOSE OF THE MENTAL EXAMINATION";

(2.) Enter a gag order or protective order on John Scott Coalter to not give his opinions on Petitioner's criminal case, not discuss the criminal case, other than simply to give the evaluator access to the discovery material necessary for such mental examination. That since he is in conflict of interest but the Local Rules of Criminal Practice also have be followed, the only solution is for Mr. Coalter

to not be allowed to verbally discuss the case in any way with the evaluator that needs to gain access to such discovery materials to prevent potential influence, witness tampering, or any other unethical behavior that would jeopardize the evaluation being independent, fair, impartial, and unbiased. Mr. Coalter is only to provide the discovery material, inform the evaluator of the Local Rule and any other confidentiality information as required by law or rule, but not discuss the case and not talk about the case. That he be enjoined from giving personal opinions, advice, and discussion about the case that would influence and/or unethically talk the mental examination evaluator out of conducting the evaluation;

(3.) Order that Mr. Coalter allow the evaluator be given full access to the discovery material necessary for preparing a psychiatric/mental examination report for the purpose as set out in the first MOTION of this pleading. That Mr. Coalter under no circumstances should the block the evaluator from access to the discovery material without seeking a court order to do so. That Mr. Coalter not impede, interfere with, manipulate, tamper with, or take any other action that is unethical in regards to the mental examination requested by Petitioner. That the full access to the

discovery materials include the North Carolina State Bureau of Investigation case file report on suspect: Brian David Hill, and the Mayodan Police audio recording containing the confession of Brian David Hill on August 29, 2012.

WHEREFORE, the Petitioner respectfully requests that the Court grant both motions in this pleading, and, after affording the Government time to respond or file any extensions for more time to review over this pleading and make a response, to make a decision as soon as possible on the issue of mental examination. To enjoin Mr. Coalter from engaging in any unethical behavior in regards to the evaluator and mental examination if authorized by this Court, including that he not be allowed to discuss the case and give opinions which may influence the evaluator in Mr. Coalter's favor. That the evaluation remain neutral, independent, and impartial. That the Government have an opportunity to cross examine the expert witness as allowed by the U.S. Constitution and due process unless Government waives their right to cross examine the mental examination expert. Petitioner only wants to ensure that the mental examination, if granted by this Court, is conducted as impartial, as credible, and as fair as possible.

**Therefore for all of the foregoing reasons as stated above, I recommend to the Habeas Court that "PETITIONER'S MOTION FOR REQUESTING PSYCHOLOGICAL/PSYCHIATRIC EVALUATION TO DETERMINE ACTUAL INNOCENCE FACTOR UNDER FALSE CONFESSION ELEMENT AND TO RESOLVE THE CONTROVERSY/CONFLICT BETWEEN GOVERNMENT AND PETITIONER OVER "DELUSIONAL DISORDER"" be granted and that the**

**Petitioner's "MOTION THAT THE COURT COMPEL ATTORNEY JOHN SCOTT COALTER TO RELEASE THE CRIMINAL CASE DISCOVERY MATERIAL TO THE MENTAL EVALUATOR AS FOR THE PURPOSE OF THE MENTAL EXAMINATION" also be granted.**

**Respectfully submitted,**

**Signed on:**

June 22, 2018

Brian D. Hill
Signed **Signed**

**Brian D. Hill (Pro Se)**
**310 Forest Street, Apartment 2**
**Martinsville, VA 24112**
**Phone #: (276) 790-3505**
U.S.W.G.O.

This RESPONSE is respectfully filed with the Court, This the 23rd day of June, 2018.

Petitioner also requests with the Court that a copy of this "PETITIONER'S MOTION FOR REQUESTING PSYCHOLOGICAL/PSYCHIATRIC EVALUATION TO DETERMINE ACTUAL INNOCENCE FACTOR UNDER FALSE CONFESSION ELEMENT AND TO RESOLVE THE CONTROVERSY/CONFLICT BETWEEN GOVERNMENT AND PETITIONER OVER "DELUSIONAL DISORDER"" and "MOTION THAT THE COURT COMPEL ATTORNEY JOHN SCOTT COALTER TO RELEASE THE CRIMINAL CASE DISCOVERY MATERIAL TO THE MENTAL EVALUATOR AS FOR THE PURPOSE OF THE MENTAL EXAMINATION" be served upon the Government as stated in **28 U.S.C. §1915(d)**, that "The **officers of the court shall issue and serve all process, and perform all duties** in such cases. **Witnesses shall attend as in other cases**, and the **same remedies shall be available as are provided for by law in other cases**. Plaintiff requests that copies be served with the U.S. Attorney office of Greensboro, NC and AUSA Anand Prakash Ramaswamy and AUSA Angela Hewlett Miller via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

## CERTIFICATE OF SERVICE

**Petitioner hereby certifies that on June 23, 2018, service was made by mailing the original of the foregoing:**

**"PETITIONER'S MOTION FOR REQUESTING PSYCHOLOGICAL/PSYCHIATRIC EVALUATION TO DETERMINE ACTUAL INNOCENCE FACTOR UNDER FALSE CONFESSION ELEMENT AND TO RESOLVE THE CONTROVERSY/CONFLICT BETWEEN GOVERNMENT AND PETITIONER OVER "DELUSIONAL DISORDER""**

**And**

**"MOTION THAT THE COURT COMPEL ATTORNEY JOHN SCOTT COALTER TO RELEASE THE CRIMINAL CASE DISCOVERY MATERIAL TO THE MENTAL EVALUATOR AS FOR THE PURPOSE OF THE MENTAL EXAMINATION"**

**by deposit in the United States Post Office, in an envelope, Priority Mail, Postage prepaid under certified mail tracking no. 7016-0600-0000-8319-9213, on June 23, 2018 addressed to the Clerk of the Court in the U.S. District Court, for the Middle District of North Carolina, 324 West Market Street, Suite 1, Greensboro, NC 27401. Then pursuant to 28 U.S.C. §1915(d), Petitioner requests that the Clerk of the Court move to electronically file the foregoing using the CM/ECF system which will send notification of such filing to the following parties to be served in this action:**

| | |
|---|---|
| **Anand Prakash Ramaswamy**<br>**U.S. Attorney Office**<br>**Civil Case # 1:17-cv-1036**<br>**101 South Edgeworth Street, 4th Floor, Greensboro, NC 27401**<br>**Anand.Ramaswamy@usdoj.gov** | **Angela Hewlett Miller**<br>**U.S. Attorney Office**<br>**Civil Case # 1:17-cv-1036**<br>**101 South Edgeworth Street, 4th Floor, Greensboro, NC 27401**<br>**angela.miller@usdoj.gov** |

**This is pursuant to Defendant's "In forma Pauperis" ("IFP") status, 28 U.S.C. §1915(d) that "The officers of the court shall issue and serve all process, and perform all duties in such cases..."the Clerk shall serve process via CM/ECF to serve process with all parties.**

| Date of signing: | Respectfully submitted, |
| --- | --- |
| June 23, 2018 | Brian D. Hill |
| | Signed Signed |
| | Brian D. Hill (Pro Se) |
| | 310 Forest Street, Apartment 2 |
| | Martinsville, VA 24112 |
| | Phone #: (276) 790-3505 |
| | U.S.W.G.O. |

Brian David Hill v. United States of America | Criminal Action No. 1:13-cr-435-1

Civil Action No. 1:17-cv-01036