# Supplement 2

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Supplement in attachment to "MOTION FOR SANCTIONS AND TO VACATE JUDGMENT IN PLAINTIFF'S/RESPONDENT'S FAVOR -- MOTION AND BRIEF / MEMORANDUM OF LAW IN SUPPORT OF REQUESTING THE HONORABLE COURT IN THIS CASE VACATE FRAUDULENT BEGOTTEN JUDGMENT OR JUDGMENTS"

# Responding to Falsification of Evidence

*By Jonathan K. Tycko*

Courts often describe the litigation process as having a truth-seeking function. Under duress, however, most lawyers experienced in litigation will concede that the litigation process serves that function only imperfectly. Although trials are intended to recreate for the judge and jury the historical events at issue in the case, numerous very serious obstacles to achieving that goal exist. Some of those obstacles are the result of the passage of time: memories fade, witnesses die, evidence is lost or discarded. Some of those obstacles are the result of rules or procedures intended to serve competing interests: relevant information is hidden behind privileges and other evidentiary rules, witnesses are beyond the subpoena power of the court, only finite amounts of evidence can be presented in the time allotted for the trial. And some of those obstacles are a function of the human condition: lawyers are possessed of unequal persuasive skills, perceptions of judges and juries are influenced by events outside the courtroom, people make mistakes. These obstacles to truth seeking are all, more or less, tolerated by our legal system. Indeed, addressing these various categories of obstacles is an important part of the day-to-day work of judges, juries, and lawyers.

But another, more pernicious, obstacle to truth seeking sometimes rears its ugly head. Parties lie under oath, forge documents or create other types of deceptive evidence, and destroy or hide relevant evidence. This conduct is intentional and designed to subvert the truth-seeking function of the judicial process. This type of intentional creation, alteration, or destruction of evidence—which I will refer to generally as falsification—is the narrow subject of this article.[1] This article will begin with a brief discussion of the nature and extent of the problem. Then, the article will list and discuss various available responses when an opposing party engages in falsification in the context of civil litigation.

## The Problem of Falsification

Falsification is a serious problem, for two reasons. First, when it occurs, it can have an enormously detrimental impact on the litigation process. Most obviously, undetected falsification can lead directly to incorrect results. In criminal cases, innocent people can be imprisoned or criminals can go unpunished. And in civil cases, large sums of money or important legal rights can be undeservedly lost or won.

But falsification has other deleterious effects. Where one side of a dispute suspects the other of engaging in falsification, it can result in litigation that is much more expensive and time-consuming, for both the parties and the courts, because falsification often adds a fact-intensive issue (e.g., if the documents are forgeries) that can require additional discovery, expenses for various types of forensic experts, and increased trial time. In addition, falsification erodes public respect for the judicial system: to the extent that the public believes falsification is common, it will distrust the results reached by the judicial system and will lose faith in courts as reliable sources of justice.

The seriousness of falsification is reflected both by the numerous remedies that courts have developed to address it (many of which will be discussed below) and also by the legislative response. Falsification is a serious crime in most, if not all, jurisdictions.[2] And falsification can result in more severe punishment for otherwise-criminal conduct. For example, under the federal sentencing guidelines, a sentence is subject to significant "enhancement" if "the offense (A) involved the destruction, alteration, or fabrication of a substantial number of records, documents, or tangible objects; (B) involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter; or (C) was otherwise extensive in scope, planning, or preparation."[3]

Second, falsification occurs with alarming frequency. No good statistics on falsification exist, and indeed, it is hard to imagine how accurate statistics could be compiled, given the diverse ways falsification occurs and the lack of any comprehensive reporting system. But as one appellate judge accurately noted, "[i]n the centuries that have elapsed since Adam took that first bite of the apple in the Garden of Eden, a great many people, some of them powerful and famous, have been found to have lied under oath or to have otherwise done their best to conceal the truth and to subvert judicial proceedings."[4] In 1995, the *ABA Journal* conducted a survey of 50 federal and state judges and reported that most "agree[d] that perjury in some form permeates civil and criminal courts."[5] Numerous reported cases reflect instances of falsification and the legal system's attempts to grapple with it. And this author's own personal experience is that falsification occurs in a significant portion of civil cases; I have personally been involved in a number of significant cases in which I came to believe that one of the parties had intentionally forged or altered documents, and I often encounter trial and deposition testimony that I believe to be intentionally false or misleading. My discussions with other lawyers lead me to conclude that my perceptions are not unique but rather are very common among experienced litigators.

## Responding to Falsification by an Opposing Party

Falsification is often a crime, but it rarely is prosecuted. So, a litigant faced with falsification by an opposing party is left to seek remedies directly from the courts. Numerous responses to falsification are available. The most common of these potential responses will now be

"Responding to Falsification of Evidences" by Jonathan K. Tycko, published in Committee on Corporate Counsel Newsletter, Volume 20, No.2, Winter 2006 © 2006 by the American Bar Association. Reproduced by permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

addressed. They are presented briefly and primarily as a guide to what should at least be considered by a lawyer faced with the problem. The law in each jurisdiction may differ on these issues; therefore, local law research may be required before deciding on appropriate steps. The responses discussed below are presented in no particular order.

*Seek Dismissal or Default*
If an opposing party has engaged in falsification, one potential response is to ask the court to throw the party out of court. Courts have long recognized their own inherent power to protect themselves and other parties from various forms of bad faith litigation, including the falsification of evidence. As the Supreme Court emphasized in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, this inherent power is a crucial mechanism for protecting the integrity of the judicial process:

> [T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. . . . The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.[6]

The inherent power to "fashion appropriate sanction[s] for conduct which abuses the judicial process" was reaffirmed by the Supreme Court in *Chambers v. NASCO, Inc.*[7]

Where falsification occurs in the midst of ongoing judicial proceedings, and is specifically directed at affecting those proceedings, it often is termed "fraud on the court." A court, as an exercise of this inherent authority, may sanction fraud on the court through dismissal (if the falsifier is the plaintiff) or default (if the falsifier is the defendant).[8] But because dismissal or default is a severe sanction that deprives a litigant entirely of the right to pursue or defend a claim, courts have adopted various standards to ensure that it is imposed sparingly and that "the need to maintain institutional integrity and the desirability of deterring future misconduct" is balanced appropriately against "the policy favoring adjudication on the merits."[9]

Courts have adopted three primary safeguards to ensure that the sanction of dismissal or default is imposed only in appropriate cases. First, most courts that have considered the issue have concluded that fraud on the court must be proved by clear and convincing evidence—a standard of proof higher than the preponderance of the evidence standard that normally applies in civil cases—before it can be punished through an exercise of inherent power.[10] Second, the party accused of falsification must be given notice of the potential sanctions and an opportunity to respond; however, whether to conduct a full evidentiary hearing is a matter generally left to the discretion of the court.[11] And third, as a general matter, a court must

> To hold a party or witness in contempt, the court must have judicial knowledge of the perjury.

consider lesser sanctions before imposing the sanction of dismissal or default. Some of those lesser sanctions—such as awards of attorney fees or adverse findings on particular issues—are discussed below. But some courts also have recognized that falsification can be so serious an affront to the judicial system that a court can impose the sanction of dismissal or default even *without* first considering or imposing lesser sanctions. For example, in *Oliver v. Gramley*, the Seventh Circuit upheld a sanction of dismissal where the plaintiff had submitted a false affidavit relating to the filing and service of a habeas petition, even though the district court had not explicitly considered less severe sanctions. Judge Posner, writing for the court, concluded that this falsification was "so egregious, inexcusable, and destructive that no lesser sanction than dismissal with prejudice could be adequate."[12]

In addition to inherent powers, courts may also have authority to impose the sanction of dismissal or default under various procedural rules. For example, Rule 37 of the Federal Rules of Civil Procedure provides an alternative basis for a court's authority to impose the sanction of dismissal or default, where the falsification amounts to a "fail[ure] to comply with the rules of discovery or with court orders enforcing those rules."[13] And Rule 11 of the Federal Rules of Civil Procedure provides similar authority where a party's falsification manifests itself as false allegations or denials in the party's pleadings.[14] Accordingly, when faced with falsification in ongoing civil litigation—particularly in the pretrial phases of the case—a lawyer should carefully consider whether any of the rules of the court before which the case is pending provide an alternative basis for sanctions.

*Seek Recovery of Monetary Sanctions*
All of the various sources of a court's authority to impose the sanction of dismissal or default also permit a court to impose monetary sanctions. The most common form of monetary sanction is an award of the attorney fees and expenses incurred by the other side of the case. The fees and expenses awarded do *not* need to bear a direct causal connection to particular acts of falsification. Rather, as the Supreme Court recognized in *Chambers*, once a party sets out on a course of bad faith litigation, it taints the entire litigation, and the court may vindicate itself by requiring the bad faith litigator to pay *all* of its opponent's attorney fees and expenses.[15] A court also may impose additional monetary sanctions—in the form of fines or punitive damages—above and beyond the specific amount of the innocent party's fees and expenses.[16]

*Seek an Adverse Inference Instruction or Issue Preclusion*
Where falsification takes the form of intentional destruction or alteration of evidence—an act often termed "spoliation" of evidence—then a court may decide to punish the wrongdoer and pro-

"Responding to Falsification of Evidences" by Jonathan K. Tycko, published in Committee on Corporate Counsel Newsletter, Volume 20, No.2, Winter 2006 © 2006 by the American Bar Association. Reproduced by permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

vide a remedy for the opposing party by altering the way in which the trial will be conducted. Two common methods are adverse inference instructions and issue preclusion.

An adverse inference instruction is an instruction to the jury that it may infer something specific about the wrongdoer's claims or defenses as a result of the spoliation. For example, if a doctor-defendant in a medical malpractice action is found to have intentionally discarded portions of the patient-plaintiff's medical records, a court might instruct the jury that it is permitted to infer that the records would have contained evidence of malpractice. The adverse inference instruction merely tells the jury that it is permitted to make a particular factual inference. While this may seem a relatively mild sanction for spoliation, it actually is fairly powerful medicine because the instruction "directs the jury's attention to the inference the court instructs on and can give the impression that the court thinks the jury ought to draw the inference."[17]

Generally, a party seeking an adverse inference instruction must show some degree of culpability on the part of the spoliator. Some courts have ruled that only intentional spoliation warrants an adverse inference instruction.[18] Others have held that gross negligence or recklessness is sufficient if the spoliated evidence would otherwise have been sufficiently important to the case.[19]

Issue preclusion is a somewhat stronger remedy. Issue preclusion typically takes the form of a pretrial ruling precluding the wrongdoer from pursuing a particular claim or defense (or some particular element of a claim or defense) or of a ruling designating particular facts that will be taken as established for purposes of the action. So, for example, if the plaintiff in a medical malpractice suit is found to have intentionally destroyed a personal diary that the plaintiff kept in the period following the alleged malpractice, the court might preclude the plaintiff from pursuing claims for emotional distress damages but still permit the plaintiff to pursue claims for medical expenses. Issue preclusion is a type of sanction specifically contemplated by Rule 37 of the Federal Rules of Civil Procedure; therefore, where the falsification also amounts to a violation of a party's discovery obligations, this rule (or equivalent state court rules) permits issue preclusion. Courts also have recognized that the sanction of issue preclusion can be imposed as an exercise of inherent power, making that sanction available even where the falsification does not fall within the scope of Rule 37.[20]

*Seek Judgment of Criminal Contempt*
In many jurisdictions, a trial court has the authority to summarily punish perjury through a criminal contempt proceeding against the lying witness. In federal courts, false or evasive testimony can constitute criminal contempt under 18 U.S.C. § 401. But the power to punish perjury by way of contempt proceedings is a very limited one. As the U.S. Supreme Court recognized in the 1919 case of *Ex parte Hudgings*, not all perjury is contempt of court.

> [I]t would follow that when a court entertained the opinion that a witness was testifying untruthfully the power would result to impose a punishment for contempt with the object or purpose of exacting from the witness a character of testimony which the court would deem to be truthful; and thus it would come to pass that a potentiality of oppression and wrong would result and the freedom of the citizen when called as a witness in a court would be gravely imperiled.[21]

Thus, to constitute criminal contempt, perjury must also be "[a]n obstruction to the performance of judicial duty resulting from an act done in the presence of the court."[22]

One of the most difficult barriers to obtaining a judgment of contempt is the requirement that, to hold a party or witness in contempt, the court must have what is described in the cases as judicial knowledge of the perjury. This is a very high standard that appears to require the court to know—in an almost metaphysical sense—that it has just witnessed false testimony. Thus, many cases have held that where the court must weigh conflicting testimony or evidence in order to determine if the witness has committed perjury, then the court cannot punish that perjury by way of a contempt proceeding. Rather, as one court recently put it, the perjury must be "apparent without reference to extrinsic evidence in the record."[23] For example, if a witness were asked for his or her whereabouts on a particular night, to answer "on Venus" would be contempt, whereas "in California" might not be, even if the witness had been photographed in New York on the night in question.[24] The judge knows the witness was not on Venus without reference to any other evidence. But, without resort to the extrinsic evidence of the photograph, the judge does not know that the witness was not in California.

Because of this judicial knowledge requirement, seeking a judgment of contempt is a step that is likely to succeed in only a fairly limited class of cases. Generally, it will not be enough that you can *demonstrate* that the witness has lied under oath. Rather, the testimony of the witness must be intended to obstruct the court's proceedings, and this must be apparent from the testimony itself.

*Seek Relief from Prior Judgment*
Where an opposing party's falsification comes to light after a final judgment or order, the falsification may provide a basis for reopening the case. In the federal courts, and in states with similar rules, the usual procedure is to file a motion for relief from judgment. Rule 60(b) of the Federal Rules of Civil Procedure explicitly recognizes that fraud, misrepresentation, or "other misconduct of an adverse party" may provide a basis for relief from a prior judgment or order.

*Assert Claim for Tort of Spoliation*
The tort of spoliation has been described as "intentional interference with prospective or actual civil litigation."[25] Although

3 • Committee on Corporate Counsel Newsletter • American Bar Association • Winter 2006 • Volume 20 • Number 2
"Responding to Falsification of Evidences" by Jonathan K. Tycko, published in Committee on Corporate Counsel Newsletter, Volume 20, No.2, Winter 2006 © 2006 by the American Bar Association. Reproduced by permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

Case 1:13-cr-00435-TDS   Document 199-2   Filed 10/04/19   Page 4 of 6

altered evidence with the specific "purpose of depriving an opposing party of its use."[28] Claims for spoliation can lie, in some jurisdictions, against both "first-party" defendants (namely, parties to the underlying civil litigation) and "third-party" defendants (namely, those who are *not* parties to the underlying civil litigation).[29] A party asserting a tort claim for spoliation must meet other elements typical to tort claims, such as causation and damages. Accordingly, whether pursuit of a tort claim for spoliation is advisable may depend both upon the state of local law in the relevant jurisdiction and also upon whether causation and damages can be proven.

*Assert Other Common Law Claims*
Falsification can expose the wrongdoer to a claim for malicious prosecution. A claim for malicious prosecution lies only where the malicious prosecution plaintiff establishes that a prior action terminated in his or her favor and that the defendant brought the prior action without probable cause and with malicious intent.[30] A party has "probable cause" to initiate a civil lawsuit if, among other things, that party has a reasonable belief in the existence of the facts that warrant the lawsuit.[31] Thus, if it could be shown that the defendant instituted the prior action with knowledge that his or her claims could only be supported with fabricated evidence, then this would tend to show a lack of probable cause and would also be evidence in support of the malice element. In addition, courts have recognized that the favorable termination element of a malicious prosecution claim can be satisfied—even where the malicious prosecution plaintiff lost the prior case—where "the original judgment was obtained through fraud."[32] Thus, where the evidence of falsification comes to light after the falsifying party has already won the prior lawsuit, a malicious prosecution action may still be viable.

In some unusual circumstances—where one party is forced to give up a claim because of another party's falsification—fraud or other related deception-based claims also may be available. An example is *Morgan v. Graham*.[33]

Graham was injured in an automobile accident and obtained a default judgment against the negligent driver, Godfrey W. Cochran. Graham learned that an insurance adjuster for the (as it turned out) inaptly-named Moral Insurance Company had investigated the accident. So Graham brought an action against that insurer on the theory that the insurer had issued a liability policy to Godfrey W. Cochran and that the insurer should pay proceeds of that policy to Graham to satisfy the default judgment. In response, Moral submitted an answer, verified by its president,

> If you catch the other side engaged in falsification, you can use it to argue that its entire position lacks merit.

Max T. Morgan, stating that there was no such policy in its files. Faced with that verified answer—and with no direct evidence to rebut it—Graham voluntarily dismissed the case.

Moral subsequently went into receivership. Graham then brought an action against Morgan, the president. In that action, Graham alleged that Moral had indeed issued a policy to a "G. W. Cockran," that this person and Godfrey W. Cochran were the same person, and that Morgan knew this when he signed the verified answer in the prior action against Moral. Graham's case against Morgan went to trial on a claim of fraud, and evidence was presented that Morgan knew that "G. W. Cockran" and Godfrey W. Cochran were the same person. The trial court found for Graham and awarded both compensatory and punitive damages.

On appeal, the Tenth Circuit affirmed. The court noted that the victim of perjury normally does not have a cause of action against the person who committed the perjury.[34] But the court reasoned that perjury can provide a predicate for other tort claims if the elements of those torts can otherwise be proven.[35] The court then considered whether Graham had proved reliance upon Morgan's false statements. Although Graham testified that he did not believe Morgan's statements in the earlier case, the court reasoned that Graham "was nonetheless forced to act to his detriment and do what he would not have done had the statement not been made," and thereby "was forced to rely on the misrepresentations."[36] The court upheld both the compensatory and punitive damages.

*Use the Other Side's Falsification to Undermine Its Position*
The last potential response I will address is also the most common and can often be the most powerful. If a lawyer believes that it is possible to catch the other side in a lie, the lawyer can simply do just that, and thereby destroy the other side's credibility. An oft-quoted passage from one of the leading evidence treatises explains:

> It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause.[37]

In other words, if you catch the other side engaged in falsification, you can use that catch to argue that the other side's entire position lacks merit. And even more fundamentally, judges and juries do not like being tricked. If a judge or jury agrees that your opponent has engaged in falsification—even falsification relating only to one of several issues in the case—it will hold this

"Responding to Falsification of Evidences" by Jonathan K. Tycko, published in Committee on Corporate Counsel Newsletter, Volume 20, No.2, Winter 2006 © 2006 by the American Bar Association. Reproduced by permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

quite strongly against your opponent and will come to doubt the validity of everything your opponent says and claims.

## Conclusion

Falsification is a serious and common problem in civil litigation. The courts have developed numerous responses to falsification, including various types of sanctions that can be imposed in the case in which the falsification occurs and various potential claims that can arise out of falsification. When faced with falsification by an opposing party, a lawyer should consider all of these various responses. Responding vigorously to falsification not only serves your client's interests in the particular dispute but also serves to deter falsification in other cases, and helps to preserve the integrity and fairness of the judicial system as a whole. ∞

> Responding vigorously to falsification helps to preserve the integrity and fairness of the judicial system as a whole.

*Jonathan K. Tycko is a partner with Tycko Zavareei & Spiva LLP in Washington, D.C. He can be reached at (202) 973-0900 or by email at jtycko@tzslaw.com.*

## Endnotes

1. Thus, this article does not address the related, but distinct, topic of unintentional—but still potentially culpable—destruction or loss of documents. That topic, and the related issue of preventive document retention policies, has been the subject of many articles. Replowing of that ground will be avoided here.

2. Various specific types of falsification violate federal criminal laws. *See, e.g.*, 18 U.S.C. § 1621 (perjury punishable by up to five years' imprisonment); 18 U.S.C. § 1519 (knowing falsification or destruction of documents or other tangible objects punishable by up to 20 years' imprisonment); 18 U.S.C. § 1520 (destruction of certain corporate audit records punishable by up to 10 years of imprisonment). And knowing destruction or falsification of documents in an attempt to influence the outcome of a judicial proceeding also violates the general "obstruction of justice" law. 18 U.S.C. § 1503. *See, e.g.*, U.S. v. Craft, 105 F.3d 1123, 1128 (6th Cir.1997) ("Acts that distort the evidence to be presented or otherwise impede the administration of justice are violations of 18 U.S.C. § 1503. The act of altering or fabricating documents used or to be used in a judicial proceeding would fall within the obstruction of justice statute if the intent is to deceive the court."). All states have similar laws.

3. USSG, § 2J1.2.

4. Breezevale Ltd. v. Dickinson, 759 A.2d 627, 641 (D.C. 2000) (Schwelb, J., concurring).

5. Mark Curriden, *The Lies Have It*, ABA J., May 1995, at 69.

6. 322 U.S. 238, 246 (1944).

7. 501 U.S. 32, 44 (1991).

8. Some examples are: Breezevale Ltd. v. Dickinson, 879 A.2d 957, 964 (D.C. 2005) (affirming sanction of dismissal where top executives of plaintiff company engaged in scheme to forge documents and subsequently denied the forgery in pleadings and sworn testimony); Synanon Found., Inc. v. Bernstein, 503 A.2d 1254, 1263 (D.C. 1986) (affirming sanction of dismissal where plaintiff, inter alia, destroyed audiotapes and made false statements to the court "that no responsive documents could be found" in order "to deceive the court, and to improperly influence the court in its decision on the defendants' motions to compel, with the ultimate aim of preventing the judicial process from operating in an impartial fashion"); Cox v. Burke, 706 So. 2d 43 (Fla. Dist. Ct. App. 1998) (affirming sanction of dismissal where plaintiff gave false answers to interrogatories and deceptive deposition testimony); Pope v. Fed. Express Corp., 974 F.2d 982, 984 (8th Cir. 1992) (affirming sanction of dismissal for plaintiff's forgery of, and reliance on, a single document); Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989) (affirming dismissal where plaintiff concocted a single document); Tramel v. Bass, 672 So. 2d 78, 82 (Fla. Dist. Ct. App. 1996) (affirming default judgment against defendant who excised damaging six-second portion of videotape before producing it during discovery).

9. Shepherd v. Am. Broad. Cos., 62 F.3d 1469, 1478 (D.C. Cir. 1995) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)).

10. *See, e.g.*, Nichols v. Klein Tools, Inc., 949 F.2d 1047, 1048 (8th Cir. 1991).

11. *See, e.g.*, Breezevale Ltd v. Dickinson, 879 A.2d 957, 964 (D.C. 2005); Paladin Assocs., Inc. v. Montana Power Co., 328 F.3d 1145, 1164–65 (9th Cir. 2003).

12. 200 F.3d 465, 466 (7th Cir. 1999).

13. Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983).

14. *See, e.g.*, Jimenez v. Madison Area Technical Coll., 321 F.3d 652 (7th Cir. 2003).

15. 501 U.S. at 56–57; *see also* Synanon Found., Inc. v. Bernstein, 517 A.2d 28, 43 (D.C. 1986) (once a party embarks on a "pattern of fraud," and "[r]egardless of the relevance of these [fraudulent] materials to the substantive legal issue in the case," this is enough to "completely taint [the party's] entire litigation strategy from the date on which the abuse actually began").

16. Jemison v. Nat'l Baptist Convention, 720 A.2d 275, 285 (D.C. 1998) (punitive damages may be imposed if court finds that bad faith litigator acted with malice).

17. Klezmer v. Buynak, 227 F.R.D. 43, 52 (E.D.N.Y. 2005).

18. *See, e.g.*, Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746–47 (8th Cir. 2004).

19. *See, e.g.*, Reilly v. NatWest Markets Group Inc., 181 F.3d 253, 267–68 (2d Cir. 1999).

20. *See, e.g.*, Monsanto Co. v. Ralph, 382 F.2d 1374, 1382 (Fed. Cir. 2004).

21. 249 U.S. 378, 384 (1919).

22. *Id.*; *see also In re* Michael, 326 U.S. 224, 227–28 (1945).

23. U.S. v. Arredondo, 349 F.3d 310, 320 (6th Cir. 2003); *see also* D.V. v. State, 817 So. 2d 1098, 1099 (Fla. Ct. App. 2002) (discussing "judicial knowledge").

24. For discussion of "on Venus," *see* U.S. v. Arredondo, 349 F.3d 310, 320 at 319 n.9 (6th Cir. 2003).

25. J.S. Sweet Co. v. Sika Chem. Corp., 400 F.3d 1028, 1032 (7th Cir. 2005) (applying Indiana law).

26. *See* Gribben v. Wal-Mart Stores, Inc., 824 N.E.2d 349, 353 (Ind. 2005), for a recent listing of cases from different states that have either adopted or rejected an independent tort of spoliation.

27. *Id.*; *see also* Hannah v. Heeter, 584 S.E.2d 560, 568 (W. Va. 2003); Holmes v. Amerex Rent-A-Car, 710 A.2d 846, 854 (D.C. 1998).

28. Burge v. St. Tammany Parish, 336 F.3d 363, 374 (5th Cir. 2003) (discussion of Louisiana law).

29. *See, e.g.*, Smith v. Howard Johnson Co., 615 N.E.2d 1037, 1038 (Ohio 1993).

30. *See generally* 52 AM. JUR. 2d, "Malicious Prosecution."

31. *See, e.g.*, Norse Sys. v. Tingley Sys., 715 A.2d 807, 815–16 (Conn. App. 1998).

32. Tyler v. Central Charge Serv., Inc.,

33. 228 F.2d 625 (10th Cir. 1956).

34. *Id.* at 627.

35. *Id.*

36. *Id.* at 628.

37. 2 J. WIGMORE, EVIDENCES § 278, at 133 (Chadbourn ed. 1979).

5 • Committee on Corporate Counsel Newsletter • American Bar Association • Winter 2006 • Volume 20 • Number 2
"Responding to Falsification of Evidences" by Jonathan K. Tycko, published in Committee on Corporate Counsel Newsletter, Volume 20, No.2, Winter 2006 © 2006 by the American Bar Association. Reproduced by permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.