# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRIAN DAVID HILL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **1:17CV1036** |
| v. | ) | **1:13CR435-1** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Petitioner Brian David Hill has brought a motion (Docket Entry 125) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, which he supports with over 1500 pages of pleadings, declarations, and exhibits. In 2014, Petitioner was charged with, and pled guilty to, possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). (Docket Entries 1, 19, 20; Minute Entry 6/10/2014.) On November 12, 2014, he was sentenced to ten months and twenty days of imprisonment, but not less than time served; ten years of supervised release; and a $100.00 special assessment. (Docket Entry 54; Minute Entry 11/10/2014.) Petitioner appealed on January 29, 2015, but it was dismissed as untimely on April 7, 2015. (Docket Entries 62, 74-75.)

Petitioner filed the instant motion on November 14, 2017 along with numerous supporting pleadings and exhibits (Docket Entries 125-134, 136-139) and a motion to seal (Docket Entry 140). The Government filed a motion to dismiss. (Docket Entry 141.) Petitioner, in turn, filed a response (Docket Entry 143), a motion for leave to file additional evidence (Docket Entry 144), and an additional brief (Docket Entry 145). The Government

responded to Petitioner's motion to file additional evidence and also filed a supporting memorandum (Docket Entries 148-49), to which Petitioner filed an additional response (Docket Entry 150). Petitioner also filed a motion entitled "Motion for Requesting Psychological/Psychiatric Evaluation" (Docket Entry 151), motion to appoint counsel (Docket Entry 153), a motion entitled "Petitioner Asks Court to Continue Supervised Release" (Docket Entry 154), a motion for "Summary Judgement or Case Dismissal of Supervised Release Violation" (Docket Entry 165), a motion seeking certified copies of certain pleadings previously filed (Docket Entry 168), a motion for a hearing and for the appointment of counsel (Docket Entry 169), and a request for transcripts (Docket Entry 194). The matter is now ripe for a ruling. *See* Rule 8, Rules Governing Section 2255 Proceedings.

## Background

To best understand the legal analysis below, additional background of the proceedings in Petitioner's criminal case is relevant.

### A. The Rule 11 Hearing

Petitioner pled guilty in this Court to possession of child pornography on June 10, 2014. (Minute Entry 6/10/2014.) Prior to his Rule 11 hearing, Petitioner had filed a number of letters with the Court, despite having been appointed counsel. (Docket Entries 15 and 16.)

At Petitioner's Rule 11 hearing, he was placed under oath and indicated that there was nothing about his mild autism or diabetes that prevented him from understanding the proceedings. (Docket Entry 113 at 4-8.) Petitioner stated that if his blood sugar were to drop during the hearing, he would notify the Court and it would stop the proceedings. (*Id.* at 8.)

2

Roughly mid-way through Petitioner's guilty plea, the Court stopped and asked him if he was "doing all right" and Petitioner, under oath, stated "Yeah. Yes, sir." (*Id.* at 17.) The Court further addressed Petitioner's pro se letters. (*Id.* at 9.) The Court informed Petitioner that a guilty plea would result in their being no further inquiry into those pleadings and they would be moot. (*Id.*) Petitioner indicated that he understood. (*Id.* at 10.)

Petitioner admitted he had read the indictment and discussed the charge and any possible defenses with his counsel, whose services with which he was satisfied. (*Id.* at 8-9.) The Court summarized the plea agreement and Petitioner agreed with that summary. (*Id.* at 10-11.) Petitioner indicated that he understood the plea agreement, had been presented with sufficient time to review the plea agreement and discuss it with counsel, and that it was the entire plea agreement. (*Id.* at 11.) Petitioner stated that no one had made any threats or promises other than those in the plea agreement to get him to plead guilty. (*Id.* at 14.) Petitioner indicated that he understood that he faced a statutory maximum sentence of ten years of imprisonment. (*Id.* at 15.)

The Court then explained to Petitioner his constitutional rights, which Petitioner stated he understood. (*Id.* at 19-20.) The Court then went over the elements of the crime of possession of child pornography, including the element of knowing possession. (*Id.* at 21.) Petitioner indicated that he understood these elements and that he was "admitting to the elements of the offense as those facts are described in the indictment." (*Id.*) Petitioner indicated he had no questions and was pleading guilty because he was, in fact, guilty. (*Id.* at

3

22.) The Court found Petitioner "fully competent and capable of entering an informed plea"[1] and found further that Petitioner was "aware of the nature of the charges and the consequences of his plea, and his plea of guilty [was] a knowing and voluntary plea." (*Id.*)

Petitioner next indicated that he had reviewed the factual basis with his attorney, had no objections to it, and "generally agree[d] with the facts described in the factual basis[.]" (*Id.* at 22-23.)  That factual basis provides that:

> Detective Robert Bridge of the Reidsville Police Department conducted an investigation into online sharing of child pornography on peer-to-peer networks, finding an IP address logged as having previously identified files of child pornography available for sharing.  Detective Bridge partially downloaded two of those files, finding the contents to constitute child pornography as defined in 18 U.S.C. § 2256(8).  The subject IP address was found to be assigned to a residence in Mayodan, N.C. A state search warrant was obtained and executed on August 28, 2012, with defendant, BRIAN DAVID HILL, being found to reside at that location.  In a consensual, non-custodial interview the following day, HILL admitted knowingly seeking and possess[ing] child pornography.   A forensic examination of computer media possessed by HILL showed it contained child pornography as defined in 18 U.S.C. § 2256(8).

(Docket Entry 19.)

The Court then found that Petitioner's plea was supported by an independent factual basis containing each of the elements of the offense, and the Court, therefore, accepted Petitioner's plea and adjudged him guilty.  (Docket Entry 113 at 23.)  The Court also ordered

---

[1] When the Court determined that Petitioner was competent, it had before it a recently conducted psychiatric report supporting that finding. (Docket Entry 17.)

the preparation of a presentence report ("PSR") and further ordered Petitioner to participate

in a psychosexual evaluation. (*Id.* at 23-25.)

The Court then left Petitioner with "one other thought":

> It seems to me after talking to you today and hearing your responses that for the most part some of your concerns have -- and fears have been allayed with respect to both the process as well as counsel in the case. I don't mind telling you that you are represented by very experienced and capable counsel in this court in a wide variety of matters, so in many respects you're very -- we'd expect that out of all lawyers with the public defender and Criminal Justice Act panel attorneys, but you've got a good one.
>
> Now, you need to give some thought about mailing items directly to the Court because they can hurt you – they can hurt this -- they can hurt you in this process in very unexpected ways. For example, I understand completely your concerns about various pieces of the process and, most notably, registration as a sex offender and various other things. But if you say the wrong thing, and that gets communicated to me, it becomes a factor I have to take into consideration in fashioning a sentence later.
>
> So let me strongly urge you that to the extent you want to send letters, give them to [counsel] for his review first rather than sending them directly to the Court, and I can assure you -- as a matter of fact, I'll direct [counsel] to do it if that makes you feel better. But to the extent the information needs to be conveyed to the Court, [counsel] will convey that information to me. . . .
>
> Part of what a lawyer does, and I'm sure you understand this, is stand as a buffer between client's statements that may be made without fully realizing the import of those statements and -- between the client and the Court in those circumstances. So I want to encourage you going forward to the extent frustrations may develop to send that communication to [counsel] first, and then you all decide together whether or not that's the kind of thing that should come to the Court.

5

(*Id.* at 25-27.)

**B.  The September 3, 2014 Hearing**

Soon after Petitioner's guilty plea, he filed a pro se motion seeking to withdraw that plea, and the Court held a hearing.  (Minute Entry 9/3/2014; Docket Entry 114 at 2.)  During this hearing, Petitioner protested his innocence of possessing child pornography. (*Id.* at 5.) The Court found that Petitioner's allegations did not "rise anywhere near a level expressing . . . actual innocence . . . allowing [him] to withdraw his plea and proceed to trial in this case." (*Id.* at 18.)  The Court noted that the letters Petitioner had submitted on his behalf, "ultimately present nothing more than a series of conclusory allegations unsupported by any evidence with respect to his innocence[.]" (*Id.*)  The Court acknowledged further that, in addition to his mild autism, obsessive-compulsive disorder, and anxiety disorder, Petitioner had also been diagnosed as having a "delusional disorder, persecutory type." (*Id.* at 8, 19.)  The Court observed that Petitioner's allegations seemed "entirely consistent with [that] disorder[.]" (*Id.* at 20.)  The Court did not permit Petitioner to withdraw his guilty plea.  (*Id.* at 2-24.)

**C.  The September 30, 2014 Hearing**

After Petitioner's September 3, 2014 hearing, but prior to his September 30, 2014 scheduled sentencing hearing, Petitioner filed roughly a dozen new pro se pleadings and motions which essentially asserted his innocence of the crime to which he had pled guilty. (Docket Entries 29-32, 34-46.)  Some of these pleadings contained statements by Petitioner and by third parties—apparently Petitioner's acquaintances through the internet—asserting that Petitioner had essentially been framed.  By way of example, in one such pleading,

6

Petitioner asserted that "I have a lot of enemies through my political work with U.S.W.G.O. Alternative News" (Docket Entry 29 at 3) and indicated that one of these enemies planted child pornography on his computer (*id.* at 1-9). Another one of these pleadings contains a statement by a purported out-of-state entertainment attorney and blogger who stated that Petitioner was "most likely" "set-up" as has happened to "a solid number of the media activists who are more or less in [Petitioner's] circle." (Docket Entry 32 at 2; *see also* Docket Entry 46.)

At the ensuing September 30 hearing, the Court observed that "much of this motions practice by [Petitioner] is promoted by psychological factors that are more thoroughly described in the" PSR. (Docket Entry 115 at 2.) The Court then denied Petitioner's outstanding pro se motions. (*Id.* at 3.) Counsel was also permitted to withdraw, in part because Petitioner intended to file a lawsuit against him. (*Id.* at 13-17.)

The Court also addressed Petitioner's declarations of innocence and the declarations of third parties as to Petitioner's purported innocence. (*Id.* at 14.) The Court noted that it saw "not only an individual defendant making statements that are unsupported by anything I see in the record, [but] the defendant somehow has now assembled a group of individuals who are independently and on his behalf urging these alternate facts on the Court[.]" (*Id.* at 15.) The Court noted further that the statement by the purported attorney was "irresponsible" because "she nowhere in this declaration describes any familiarity with the statements that [Petitioner] made at the time of the arrest, with the forensic analysis of [Petitioner's] computer, nor, frankly . . . does she fully describe a connection between [Petitioner] and these other individuals." (*Id.* at 8.) The Court further noted that Petitioner's internet acquaintances

7

appeared to have "no familiarity with the specific facts of this case, the forensic analysis, or the statements of [Petitioner] given as reflected in the" PSR. (*Id.* at 13.)

**D. The October 14, 2014 Status Conference**

After the September 30, 2014 hearing and prior to an October 15, 2014 status conference, Petitioner filed four additional motions which sought to gather and place additional evidence of his purported innocence before the Court. (Docket Entries 48-51.) At the October 15, 2014 hearing, Petitioner's new counsel indicated that he had familiarized himself with Petitioner's criminal matter. (Docket Entry 116 at 5.) Counsel indicated that there were no grounds to withdraw the guilty plea and that, after speaking with Petitioner, Petitioner did not want to withdraw his guilty plea. (*Id.*) Counsel did not adopt any of Petitioner's pro se filings. (*Id.*) Counsel indicated that he had spoken to the purported out-of-state entertainment attorney and "to put it bluntly, don't put a lot of stock in what she has to say." (*Id.* at 6, 12.)

**E. Sentencing**

Petitioner was sentenced on November 10, 2014. (Docket Entry 117.) At the outset of sentencing, counsel indicated that he had spoken to Petitioner, who said he felt "okay." (*Id.* at 2.) Petitioner indicated that he had reviewed the PSR and that he generally agreed with it. (*Id.* at 2-3.) In pertinent part, the PSR states that when interviewed by law enforcement, Petitioner "admitted that he had been downloading and viewing child pornography for approximately one year." (Docket Entry 33, ¶ 8.) It further indicated that Petitioner had submitted a signed statement admitting his guilt of possessing child pornography. (*Id.*, ¶ 15.) The PSR further

8

indicated that Petitioner was diagnosed with, in pertinent part, insulin dependent diabetes, autism spectrum disorder, delusional disorder ("persecutory type), obsessive compulsive disorder ("OCD"), and generalized anxiety disorder. (*Id.*, ¶¶ 42, 45.) He was described as "fully oriented" and "extremely intelligent regarding some information and very child-like with other information." (*Id.*, ¶ 43.) The PSR notes too that Petitioner's voluminous filings relate to his OCD and "[i]n many ways" were an attempt to "manage his anxiety" "because producing documents briefly reduces his anxiety."[2] (Docket Entry 33, ¶ 45.)

The Court ultimately granted a motion to depart downward from the 97 to 121 month advisory guidelines calculation in light of Petitioner's "several mental health issues and conditions." (Docket Entry 117 at 5-7.) He was sentenced instead to ten months and twenty days of imprisonment, which was essentially time served, along with ten years of supervised release. (*Id.* at 8, 10.) Petitioner did not speak at sentencing. (*Id.* at 7.) The Court noted that Petitioner had been represented by "two very capable attorneys" and that this was only the "second time" the sentencing judge had "imposed a probationary type sentence in a case involving" child pornography. (*Id.* at 14-15.)

### F. **The First Supervised Release Hearing**

On June 30, 2015, the Court had a hearing to address whether Petitioner's supervised release should be revoked for verbally abusing his probation officer and failing to follow her directions. (Docket Entry 88; Docket Entry 123.) The Court found Petitioner to have been

---

[2] The PSR is under seal and the Court quotes it sparingly. Limited and selective reference to the PSR seems appropriate here, however, because Petitioner has put these parts of the PSR at issue and also because Petitioner freely mentions most or all of these facts in his many public filings. (Docket Entry 33.)

insolent and aggressive towards his probation officer. (Docket Entry 123 at 79-80.) Rather than revoke Petitioner's supervised release, however, the Court, in pertinent part, ordered six months of home incarceration. (*Id.* at 81.) The Court noted Petitioner's age and mental health in support of this decision. (*Id.* at 80.) At this hearing, the Court also remarked upon the large number of pro se pleadings Petitioner continued to file, which the Court observed "have a somewhat near delusional approach to his whole situation[.]" (*Id.* at 80.)

At this hearing, while it was not listed as a ground for which probation sought revocation of Petitioner's supervised release, it also became apparent that an image of child pornography had been found on a pre-purchased cell phone Petitioner was using. (*Id.* at 7.) Petitioner voluntarily brought this to the attention of his probation officer. (*Id.*) He said he "accidentally opened the document" which was "sent from an anonymous account." (*Id.* at 15.) The Court observed that it "sounds highly unlikely that somebody who has a prepaid cell phone would anonymously receive unsolicited child pornography." (*Id.* at 61.)

### G. The Second Supervised Release Hearing

Petitioner was subsequently arrested in September of 2018 for exposing himself in public throughout his hometown in Martinsville, Virginia, in the early morning hours, proof of which was provided by photographs Petitioner took of himself on his camera at the time. (Docket Entry 198 at 1.) Petitioner initially claimed that he did so under duress related to threats from an unnamed man in a "hoodie" who insisted that he would harm Petitioner's mother unless he got "naked in public [and took] photos" of himself and then "placed them at the drop off point[.]" (Docket Entry 164 at 2.) Petitioner later asserted that he exposed

10

himself because he was suffering from carbon monoxide poisoning. (Docket Entry 181 at 2.) Petitioner was convicted in state court in Virginia in 2018, and his federal revocation proceeding followed. (Docket Entry 198 at 1.) The Court revoked Petitioner's supervised release on October 7, 2019 and he was sentenced to nine months of imprisonment. (Docket Entry 200.) He was ordered to self-report by noon on December 6, 2019. (*Id.*)

## Grounds for Relief

Petitioner raises four grounds for relief. Petitioner's first ground for relief is one of "[a]ctual innocence" to the crime of possession of child pornography. (Docket Entry 125, Ground One.) Next, Petitioner asserts ineffective assistance of counsel. (*Id.*, Ground Two.) Third, Petitioner asserts due process violations during the pre-trial process of his criminal case. (*Id.*, Ground Three.) Last, Petitioner asserts prosecutorial misconduct. (*Id.*, Ground Four.) As explained below, these issues are all time-barred and also lack merit.[3]

## Discussion

Respondent requests dismissal on the ground that Petitioner's motion was filed outside of the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA"). (Docket Entry 141.) 28 U.S.C. § 2255(f). The AEDPA amendments apply to all motions filed under § 2255 after their effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Interpretations of 28 U.S.C. §§

---

[3] Petitioner's pleadings are voluminous. The pleadings, at times, are also difficult to follow. The undersigned has attempted to respond to all of the many variations of Petitioner's grounds and sub-grounds for relief. To the extent that any have not been specifically discussed, they should still be dismissed as time-barred and/or denied on the merits for essentially the reasons set out herein.

11

2244(d)(1) and 2255 have equal applicability to one another.  *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).

### a. Subsection 2255(f)(1)

Under § 2255(f)(1), the limitation period runs from the date when the judgment of conviction became final.  Upon the entry of judgment on November 12, 2014 (Docket Entry 54), Petitioner had fourteen days to file a notice of appeal, that is, until late-November of 2014, which he did not do.  *United States v. Diallo*, 581 F. App'x 226, 227 (4th Cir. 2014) (citing *Clay v. United States*, 537 U.S. 522, 525 (2003), and Fed. R.App. P. 4(b)(1)(A)(i), (b)(6)); *see also United States v. Plascencia*, 537 F.3d 385, 387 (5th Cir. 2008) ("[The petitioner's] conviction became final when the time expired to file a timely notice of appeal on direct review . . . .").  Petitioner's one-year deadline began in late-November 2014 and ended a year later in late-November 2015.  Petitioner did not file the instant motion pursuant to § 2255 until November of 2017.  It is approximately two years late.  Only if another subsection gives Petitioner more time to file will his motion be timely.[4]

---

[4] Petitioner's belated appeal has no impact on the analysis of the statute of limitations.  *See, e.g.*, *United States v. Pascencia*, 537 F.3d 385 (5th Cir. 2008) (citing *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005)); *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004); *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired.").  *See also Ervin v. United States*, No. 1:08CR128-7, 2011 WL 5075651, at *3 (W.D.N.C. Oct. 25, 2011) ("The fact that the Petitioner filed the § 2255 motion within one year after the Fourth Circuit granted the Government's motion to dismiss his appeal is of no benefit to him.").

### b. Subsection 2255(f)(2)

Subsection 2255(f)(2) requires an unlawful governmental action preventing Petitioner from filing a motion pursuant to § 2255. Petitioner invokes this provision. (Docket Entry 143 at 73-74; Docket Entry 145 at 9.) He asserts that the modification of his term of supervised release to include six months of house arrest was wrongful because it was based upon falsehoods told by his probation officer. (*Id.*) He asserts he could not perform legal research or gather additional evidence during this time. (*Id.*)

Petitioner's assertions do not render his motion timely. First, Petitioner has failed to demonstrate any unlawful governmental action here.[5] Second, home detention would not be a sufficient impediment to the filing of a motion pursuant to § 2255. Third, even assuming Petitioner's assertions were true, and there was a six-month impediment attributable to governmental action, which is not the case, his motion would still be time-barred. Petitioner states he was subject to home detention until December 30, 2015 and his motion was not filed until November of 2017, almost two years later. Six months would make no difference. Beyond this, nothing in any of Petitioner's filings meaningfully supports a finding of unlawful governmental action preventing him from filing. Any such assertions are vague, conclusory and unsupported and fail for those reasons alone. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999).

---

[5] Any effort to recast this argument as a request for equitable tolling fails for the same reasons set forth above.

### c.  Subsection 2255(f)(3)

Subsection 2255(f)(3) allows the limitation period to run from the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized and made retroactively applicable to cases on collateral review.  Petitioner does not allege that he is relying upon such a right, and the Court is unaware of any reason why this subsection might be applicable.  This subsection does not apply.

### d.  Subsection 2255(f)(4)

Subsection 2255(f)(4) allows the limitation period to run from the date on which the facts supporting the claims presented could have been discovered through due diligence.  Petitioner invokes this provision by asserting that he was not given full access to the discovery in this case.  (Docket Entry 125, Ground Three.)  However, Petitioner admits he had full access to his criminal case discovery material on January 22, 2015.  (*Id.*)  Even assuming January 22, 2015 triggered the onset of his one-year deadline, Petitioner's instant motion is still time-barred, because he did not file it until November of 2017.  To the extent Petitioner makes any additional efforts to acquire a later starting date of the limitations period under this subsection, his efforts are equally unsuccessful.  This is because the purported facts in question could have been discovered with due diligence, or because they are irrelevant, vague, conclusory, unsupported, and/or speculative in nature.  (*Id.*)  *See Nickerson*, 971 F.2d at 1136.

### e.  Equitable Tolling

Petitioner also seeks equitable tolling.  The Supreme Court has determined that the one-year limitation period is subject to equitable tolling.  *Holland v. Florida*, 130 S.Ct. 2549,

2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

First, to the extent Petitioner pleads ignorance of the one-year deadline because of his pro se status, this is not a basis for equitable tolling. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Second, the potential merits of a claim do not impact the timeliness analysis, so any argument along these lines must also fail. *See Rouse v. Lee*, 339 F.3d 238, 251-52 (4th Cir. 2003). Third, courts have been reluctant to consider a mistake of counsel grounds for equitable tolling and so any argument along these lines also fails. *See, e.g.*, *Gladden v. Washintgon*, No. 1:15CV207, 2015 WL 9025937, at *5 (M.D.N.C. Dec. 15, 2015).

Fourth, in asserting the existence of unlawful governmental action that purportedly impeded him from filing a motion under § 2255, Petitioner asserts that he was "emotionally upset" during his home detention, states that his OCD was worsening, and also seems to be implying that the purported unlawful governmental action damaged his health and made it impossible to file a timely motion. (Docket Entry 143 at 74.) However, equitable tolling due to a petitioner's mental capacity is available "only in cases of profound mental incapacity." *Sosa*, 364 F.3d at 513. Petitioner's assertion of a mental illness does not demonstrate the sort of extraordinary case of "profound mental incapacity" that would justify equitable tolling. Nothing on the record suggests that Petitioner's mental or physical health prevented him from filing a motion pursuant to § 2255 in a timely fashion.

15

Fifth, as demonstrated throughout this Recommendation, Petitioner has filed many pro se pleadings. Petitioner has failed to demonstrate why he was able to file all those pleadings diligently, but was unable to file a timely motion pursuant to § 2255.

Sixth, Petitioner also appears to assert that he is entitled to equitable tolling because he filed pleadings in 2015, which state they were filed in anticipation of later filing an actual motion pursuant to § 2255. (Docket Entry 143 at 78-79 referencing Docket Entries 71, 76, 81.) He states "[t]here is also a chance that the Court may consider that Petitioner had timely filed a defective pleading . . . which could have been construed as a § 2255 motion[.]" (*Id.* at 78.) Although couched in terms of a request for equitable tolling, this is instead an argument that Petitioner filed his motion under § 2255 in 2015, when it would have been timely, rather than in 2017, when it was not.

In any event, none of the documents Petitioner references are motions brought pursuant to § 2255. None were filed on the proper forms that would indicate they were § 2255 motions, and, more importantly, each of these documents indicates they were *not* motions brought pursuant to section § 2255 and were, at most, filed in anticipation of Petitioner perhaps later filing *either* a motion for a new trial *or* a motion pursuant to section § 2255. (*See* Docket Entry 71 at 1 ("Defendant plans to file a Motion for a New Trial or Petition for a Writ of Habeas Corpus to overturn his federal criminal conviction."); Docket Entry 76 at 1 ("This is NOT a Habeas Corpus Petition . . . . ."); Docket Entry 81 at 1 (same); *see also* Docket Entry 79 ("I am seeking for [sic] enough evidence for Writ of Habeas Corpus relief . . . .").) None of these documents change the Court's timeliness analysis.

16

Last, Petitioner sprinkles his pleadings with what may be considered additional equitable tolling arguments. (*See, e.g.*, Docket Entry 145 at 18 ("Petitioner thought it was safer to file the 2255 Motion after the election of Donald John Trump . . . .").) The Court will not address each such argument individually. Petitioner's arguments are some combination of irrelevant, vague, conclusory, unsupported, and speculative in nature. *See Nickerson*, 971 F.2d at 1136. Petitioner is not entitled to equitable tolling, much less the roughly two years of equitable tolling he would need to render his motion timely.

### f. Actual Innocence

Petitioner spends the bulk of his pleadings contending in one way or another that he is innocent. (Docket Entry 125, § 18.) In other words, he contends that he is actually innocent of possessing child pornography, despite the fact that he confessed to the crime and pled guilty to it under oath in federal court, and then reaffirmed this at sentencing. (*Id.*)

The essence of Petitioner's actual innocence claim appears to be that someone put child pornography on his computer in retaliation for his independent reporting, which involved writing blog posts, making and posting YouTube videos, and employing other forms of social media. (*See, e.g.*, Docket Entry 128.) According to Petitioner, he reported on local corruption in his home town and reported about the unconstitutional nature of the Department of Defense's 2012 budget authorization, which he asserts permitted the abduction and torture of United States citizens. (*See, e.g.*, Docket Entry 130.) According to Petitioner, his confession and guilty plea to the possession of child pornography were, respectively, false and involuntary, and were motivated by (1) his poor health, including symptoms he suffers

17

attendant to his mild autism, diabetes, and other issues, (2) threats from one or more third parties against either him or against his family members, and (3) incompetent legal representation. (*See, e.g.*, Docket Entry 128.)

Petitioner is correct that there is an actual innocence exception to the one-year time limitation. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). However, to establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see McQuiggin*, 133 S.Ct. at 1935. "[S]uch a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has not met this high burden.

Petitioner references his criminal discovery file in this case, which he apparently sought through a Freedom of Information Act ("FOIA") request. (Docket Entry 125, § 18.) However, Petitioner has done no more than assert in a conclusory manner that there might be evidence supporting a claim of actual innocence, which is insufficient to warrant a later starting date. *See Nickerson*, 971 F.2d at 1136.

Beyond this, Petitioner has repeatedly admitted to possession of child pornography. First, after a comprehensive Rule 11 hearing, he voluntarily and knowingly plead guilty to the charge (Docket Entry 113) and agreed that the factual basis was accurate (*id.* at 23). The factual basis stated that Petitioner knowingly sought and possessed child pornography. (Docket Entry 19.) Second, during his pre-sentence interview in preparation of his PSR, Petitioner again

18

admitted his guilt. (Docket Entry 33, ¶ 15.) Third, Petitioner also filed a transcript of an interview with law enforcement in which he admits downloading and viewing child pornography.[6] (Docket Entry 132 at 7-8.) Fourth, Petitioner had no objections to the PSR at sentencing and that PSR, as noted, indicated that Petitioner knowingly possessed child pornography. (Docket Entry 117 at 2-3; Docket Entry 33, ¶¶ 8, 15.) None of this suggests that Petitioner is innocent. Petitioner does assert many additional reasons as to why he is actually innocent. (*See, e.g.*, Docket Entry 128.) However, none of them has merit. Petitioner's arguments are some combination of irrelevant, vague, conclusory, unsupported, and speculative in nature. (*Id.*) *See Nickerson*, 971 F.2d at 1136.

### g. The Merits

As explained above, all of Petitioner's grounds are time-barred. However, if the Court were to reach the merits of Petitioner's grounds for relief, it would deny them.

## Ground One

As noted, Petitioner's first ground for relief is that he is actually innocent of the crime of possession of child pornography. (Docket Entry 125, Ground One.) As explained above, he has not demonstrated any meaningful likelihood of his actual innocence.[7]

---

[6] Petitioner's assertion that he suffers from echolalia and simply repeated what the officers said to him when he confessed to possessing child pornography is unpersuasive and not borne out by the record. (Docket Entry 125 at 4.) And, beyond this, Petitioner also admitted in a signed statement that he was guilty of intentionally possessing child pornography. (Docket Entry 33, ¶ 15.)

[7] Any effort by Petitioner to amend his motion brought pursuant to § 2255 to raise an additional ground for relief attacking his guilty plea as involuntary would both be time barred and fail as a matter of law. *See United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) (concluding that absent "extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss

19

## **Ground Two**

Next, Petitioner asserts a myriad of ineffective assistance of counsel claims. (Docket Entry 125, Ground Two.) To prove ineffective assistance, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Here, Petitioner has failed to demonstrate that any of his attorneys at any point in the proceedings acted in an objectively unreasonable manner, nor has he demonstrated any prejudice from any of the errors he attributes to counsel. At sentencing, the Court granted counsel's motion to depart downward from the 97 to 121-month advisory guidelines calculation. (Docket Entry 117 at 5-7.) Petitioner was sentenced to ten months and twenty days of imprisonment, which was essentially time served. (*Id.* at 8.) But for council's effective advocacy, Petitioner likely would have spent up to ten years in federal prison. Petitioner satisfies neither *Strickland* element here.

---

any § 2255 motion that necessarily relies on allegations that contradict the sworn statements"). To the extent Petitioner is seeking to raise this additional ground for relief, his request to amend is denied.

20

## **Ground Three**

Third, Petitioner asserts due process violations during the pre-trial process of his criminal case. (Docket Entry 125, Ground Three.) For example, Petitioner asserts that he was not given full access to his discovery materials until January 22, 2015, which was after final judgment was entered in this case. (*Id.*) Petitioner asserts that he was "angry" and "furious" by this "swindle[ ]" and so he "filed a bunch of pro se motions with evidence, even though none of those had any statutory basis." (*Id.*)

It is unclear whether this is a claim for prosecutorial misconduct, ineffective assistance of counsel, or both. Regardless, this ground fails. "When asserting a prosecutorial misconduct claim, a defendant bears the burden of showing (1) that the prosecutors engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." *United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005).

Petitioner has satisfied neither element here. Beyond this, to the extent this is another assertion of ineffective assistance of counsel, it fails for want of prejudice. Petitioner pled guilty after a comprehensive Rule 11 hearing where he knowingly and voluntarily admitted that he was, in fact, guilty. Nothing Petitioner has pointed to meaningfully undermines his guilty plea. Petitioner has failed to demonstrate that he received ineffective assistance of counsel, or that he was deprived of due process, or that any of the errors he asserts somehow deprived him of fair criminal proceedings or prejudiced him.

21

## Ground Four

Finally, Petitioner asserts prosecutorial misconduct. (*Id.*, Ground Four.) In making this argument he references *Brady v. Maryland.* (*Id.*) In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citation omitted); *see also Giglio v. United States*, 405 U.S. 150, 154-55 (1972). As such, a *Brady* violation occurs if evidence is (1) favorable to the accused (either exculpatory or impeaching), (2) suppressed by the prosecution (willfully or inadvertently), and (3) material (prejudicial). *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *see also Monroe v. Angelone*, 323 F.3d 286, 299-300 (4th Cir. 2003) (citation omitted).

Here, Petitioner again mentions the criminal discovery he apparently tried to gather in a FOIA request. (Docket Entry 125, Ground Four.) Nothing about this information appears favorable to him. Nor does it appear to have been suppressed by the Government. Nor does it appear material in any way that might aid his efforts. Beyond this, Petitioner has failed to prove that the prosecution acted improperly, nor has he demonstrated that the errors he attributes to the prosecution somehow prejudiced him. *See Alerre*, 430 F.3d at 689. This claim is also without merit. All of Petitioner's grounds for relief are without merit. They should all be dismissed as time-barred or denied.

## Motion to Seal

Petitioner has filed a motion to seal. (Docket Entry 140.) He seeks to seal a document which has already been sealed. (Docket Entry 139.) This motion will be denied as moot.

## Motion to File Additional Evidence

Petitioner has filed a motion for leave to file a brief and to file additional evidence in support of his claims. (Docket Entry 144.) The Court will grant this motion. The Court has considered all of Petitioner's many pleadings and exhibits. None of them have merit.

## "Motion for Requesting Psychological/Psychiatric Evaluation"

Petitioner has filed a motion seeking a psychological or psychiatric evaluation to establish his innocence of his criminal conviction. (Docket Entry 151.) Petitioner was recently deemed competent. (Docket Entry 176, Attach. 1.) Petitioner has failed to provide good cause as to why an additional exam is warranted. This motion should be denied.

## Motions to Appoint Counsel

Petitioner seeks the appointment of counsel as well as an evidentiary hearing. (Docket Entries 153 and 169.) He has failed to set forth good cause for why counsel should be appointed here or why a hearing is warranted. These motions will be denied.

## "Petitioner Asks Court to Continue Supervised Release"

Petitioner seeks leave to remain on supervised release. (Docket Entry 154.) After this motion was filed, Petitioner's supervised release was revoked. (Docket Entry 200.) This motion should be denied as moot.

23

## "Motion for Summary Judgement or Case Dismissal"

Petitioner has also filed a motion requesting dismissal of proceedings related to his violation of supervised release. (Docket Entry 165.) As noted, these proceedings are over (at least in this Court) and Petitioner's supervised release was revoked. This motion should also be denied as moot.

## Motion for Certified Copies

In this motion, Petitioner seeks copies of documents previously filed in his criminal proceedings to help aid him in defending against the charge that he violated the terms of his supervised release. (Docket Entry 168.) Again, that proceeding, in which Petitioner was represented by counsel, is over. This motion is also moot.

## Request for Transcript

In this motion, Petitioner seeks the transcript of his recent hearing involving his supervised release so that he may challenge its revocation on appeal. (Docket Entry 194.) Petitioner has counsel for this appeal who may secure that transcript. (Docket Entry 208.) This motion should be denied as unnecessary. *See United States v. Trent,* No. 3:08 CR 202, 2009 WL 2105717, at *1 (W.D.N.C. July 13, 2009) ("[T]he Defendant's pro se request is unnecessary, as the Defendant is represented by appointed counsel. Pursuant to the Criminal Justice Act, Defendant's counsel is entitled to request a copy of the trial transcript to be prepared at the Government's expense.").

24

## Motion for Pre-Filing Injunction

In its response to Petitioner's request to file additional evidence, the Government requested a pre-filing injunction. (Docket Entry 148.) More specifically, the Government requests "a permanent pre-filing injunction barring [Petitioner] from filing any future motions, however captioned, that are directly or indirectly related to the above-captioned matters in any court, whether state or federal, without leave of this Court." (Docket Entry 149 at 2.) Although entitled a motion, this pleading is not docketed as such. Regardless, the undersigned recommends that it be denied.[8]

The All Writs Act, 28 U.S.C. § 1651, authorizes district courts to issue pre-filing injunctions to restrict access to the courts by "vexatious and repetitive litigants." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). "In determining whether a pre-filing injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Cromer,*

---

[8] The Government also requests that all of Petitioner's pleadings in this § 2255 proceeding, except for the initial motion, be sealed. (Docket Entry 149 at 17 ("[B]ecause Petitioner demonstrates repeated misuse of the ECF system to malign others rather than to support his actions, the government respectfully requests that Petitioner's filings as outlined below be placed under seal, or alternatively, that references to the parties against whom he makes conclusory allegations of misconduct or discloses personal information be redacted.").) However, the Government does not cite the standard for sealing or redacting documents, reference the relevant local rules, or specify exactly what it wants sealed or redacted. For example, the Government mentions sealing or redacting the "filings outlined below" but then cites no filings. (*Id.*) This request should be denied without prejudice to renew in the form of a proper application to seal or redact.

390 F.3d at 818. Such a drastic remedy should be used "sparingly." *Id.* at 817. "[E]ven if a judge, after weighing the relevant factors, properly determines that a litigant's abusive conduct merits a pre-filing injunction, the judge must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." *Id.*

The undersigned has considered the four *Cromer* factors above and concludes that, at present, they do not tip in favor of an injunction, especially where the Government itself admits that "there has been no judicial finding in the above-captioned matter that Petitioner's prior filings were 'frivolous.'" (Docket Entry 149 at 8.) In reaching this conclusion, the Court has considered the totality of the circumstances, including (but not limited to) Plaintiff's mental health. Nevertheless, a lesser remedy here does seem in order.

More specifically, Petitioner's pleadings are unnecessarily voluminous, at times uncivil and, beyond this, Petitioner himself has admitted that he has previously filed baseless pleadings in a fit of anger. (Docket Entry 125, Ground Three.) In light of this, instead of the drastic remedy of a permanent injunction, the undersigned recommends warning Petitioner that his pro se status does not entitle him to avoid the Rules Governing Section 2255 Proceedings and the Local Rules of this Court, which will be enforced. All filings and matters before the Court must be well grounded in fact and law and must also be presented in a civil manner. Pleadings should also be succinct. Failure to abide by these requirements will result in more drastic measures.

## Conclusion

For all of these reasons, Petitioner's motion is time-barred and without merit. Neither the appointment of counsel, nor discovery, nor a medical evaluation, nor the appointment of a computer forensic expert, nor an evidentiary hearing, nor any other form of relief is warranted in this matter.

**IT IS THEFORE ORDERED** that Petitioner's motion to file additional evidence (Docket Entry 144) is granted.

**IT IS RECOMMENDED** that the Government's motion to dismiss (Docket Entry 141) be granted, that Petitioner's motion to vacate, set aside or correct sentence (Docket Entry 125) be dismissed, or in the alternative denied, and that this action be dismissed.

**IT IS FURTHER RECOMMENDED** that Petitioner's motion to file under seal (Docket Entry 140), motion for a psychological/psychiatric evaluation (Docket Entry 151), motions for the appointment of counsel (Docket Entries 153 and 169), motion to continue supervised release (Docket Entry 154), motion to dismiss (Docket Entry 165), motion for copies (Docket Entry 168), and request for transcript (Docket Entry 194) all be denied.

_____
Joe L. Webster
United States Magistrate Judge

October 21, 2019
Durham, North Carolina

27