In the United States District Court
For the Middle District of North Carolina

FILED
NOV 0 1 2019
Clerk U.S. District Court
Greensboro, NC

)
**Brian David Hill,** )
**Petitioner/Defendant** )
)                    **Criminal Action No. 1:13-CR-435-1**
**v.** )
)                    **Civil Action No. 1:17-CV-1036**
**United States of America,** )
**Respondent/Plaintiff** )
)
)

## PETITIONER'S OBJECTIONS TO "ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE" (Dkt. #210)

NOTICE: Due to the Motion to "Disqualify/Recuse Judge — Document #195" in regards to the Hon. Judge Thomas D. Schroeder, this motion should not be decided by that Judge but should be tried by another Judge of the bench.

Pursuant to Fed. R. Civ. P. 72(b), 6(a), and 6(d), the Petitioner Brian David Hill ("Brian D. Hill", "Hill", "Brian", "Defendant", "Petitioner"), proceeding Pro Se in this action, respectfully files these objections to the Hon. U.S. Magistrate Judge's order and recommendation under Document #210, filed: October 21, 2019.

These objections are on the basis of law, what was already on the record prior to the U.S. Magistrate's order and recommendation, and will raise substantial constitutional issues.

1

**Table of Contents**

Contents

Petitioner's #1 objection to Pages 2, 3, and portion of 4 (as noted below ) for "A. The Rule 11 Hearing":.................................................................5

Petitioner's #2 objection to Page 4 (as noted below) for "A. The Rule 11 Hearing": ................................................................................9

Petitioner's #3 objection to Page 4 and portion of Page 5 (as noted below) for "A. The Rule 11 Hearing":................................................................13

Petitioner's #4 objection to Page 5 (as noted below) for "A. The Rule 11 Hearing": ................................................................................14

Petitioner's #5 objection to Page 8 (as noted below) for "D. The October 14, 2014 Status Conference": ...................................................................16

Petitioner's #6 objection to Page 8 (as noted below) for "F. The First Supervised Release Hearing": ................................................................18

Petitioner's #7 objection to Pages 10 to 11 (as noted below) for "G. The Second Supervised Release Hearing": ................................................................24

Petitioner's #8 objection to Pages 11 (as noted below) for "Grounds for Relief": ................................................................................29

Petitioner's #9 objection to Page 11 (as noted below) for "Discussion": ..........35

Petitioner's #10 objection to Page 13 (as noted below) for "b. Subsection 2255(f)(2)":................................................................................40

Petitioner's #11 objection to Page 14 (as noted below) for "d. Subsection 2255(f)(4)":................................................................................41

Petitioner's #12 objection to Page 17 (as noted below) for "f. Actual Innocence": ................................................................................42

Petitioner's #13 objection to Pages 17 through 18 (as noted below) for "f. Actual Innocence":................................................................................44

Petitioner's #14 objection to Pages 17 through 18 (as noted below) for "f. Actual Innocence":................................................................................46

Petitioner's #15 objection to Pages 18 through 19 (as noted below) for "f. Actual Innocence":................................................................................47

**Petitioner's #15 objection to Page 19 (as noted below) for "f. Actual Innocence":** ........................................................................53

**Petitioner's #16 objection to Page 19 (as noted below) for "g. The Merits":** ...55

**Petitioner's #17 objection to Page 20 (as noted below) for "g. The Merits":** ...60

**Petitioner's #18 objection to Page 21 (as noted below) for "g. The Merits":** ...61

**Petitioner's #19 objection to Page 21 (as noted below) for "g. The Merits":** ...64

**Petitioner's #20 objection to Page 23 (as noted below) for "Motion for Requesting Psychological/Psychiatric Evaluation":** ..........................................66

**Petitioner's #21 objection to Page 23 (as noted below) for "Motions to Appoint Counsel":** ...............................................................................................69

**Petitioner's #22 objection to Page 23 (as noted below) for "Petitioner Asks Court to Continue Supervised Release":** .............................................70

**Petitioner's #23 objection to Page 25 (as noted below) for "Motion for Pre-Filing Injunction":** ........................................................................71

**Petitioner's #24 objection to the final conclusion:** ...........................................74

**Attached evidence** .................................................................................80

**END OF OBJECTIONS** ........................................................................80

Before I raise such objections, one of the issues that may not be subject to time bar is fraud upon the court, especially a repeated pattern of fraud upon the court. The final judgment is not a final judgment under #54, because the facts that led up to that final judgment was based on fraudulent facts, facts that cannot be sustained as facts and cannot be proven as facts. When the facts of guilt are based on false pretenses, it is all actual innocence, because a moral federal prosecutor who is subject to the North Carolina State Bar rules of ethical conduct (Supplement 1, NC State Bar rules, "Rule 3.8 Special Responsibilities of a Prosecutor", Adopted by the Supreme Court: July 24, 1997) is not supposed to be prosecuting a case on a fraudulent evidential factual basis. A fact is not a fact when grounded in fraud or

misrepresentation. If this court decides to dismiss Brian's 2255 case and allow the repeated pattern of frauds by the Respondent, and then use those frauds against the Petitioner to increase his imprisonment and punishment, then this court no longer holds integrity and no longer is to be trustworthy. Any judgments rendered by this court when they allow frauds, ignore evidence, and ignore Supreme Court case law is void judgments. It no longer is a legitimate Article III court and should be held to scrutiny by either the U.S. Congress in impeachment proceedings or the U.S. Military for possibly high treason. Legitimate Article III courts must provide due process and must provide relief to victims of frauds upon the court and must correct such frauds in order to maintain trust and integrity.

The one year statute of limitations should not matter when the Respondent has engaged in a repeated pattern of frauds upon the court, Petitioner has been repeatedly punished and injured by these frauds. The frauds had begun with the original evidence and facts of guilt, and have continued all the way to the two Supervised Release Violation decisions. Petitioner will prove all of such, then ask a higher court for prohibition or writ of mandamus for the collective unconstitutional abuses of discretion, frauds, and ignoring evidence by this court. Petitioner plans to file a copy of this with The White House (aka the President of the United States) with an emergency request for a full pardon of actual innocence to negate these abuses by the judicial system and relieve Petitioner of further frauds and abuses by the Respondent. Courts are supposed to be about telling the truth and presenting facts, not making and rendering official decisions based on conclusory claims that are considered as facts based upon shaky or fraudulent evidence by the Respondent or even the U.S. Probation Office. Such lies should not be tolerated by the U.S. District Court if it even holds any integrity left. These lies don't just hurt Petitioner and make him feel hopeless, but have harmed his

4

family and have put even his current U.S. Probation Officer Jason McMurray through hell and torment. Such disrespect by the Middle District of North Carolina towards the Western District of Virginia judicial systems. These abuses continue on and on without any relief or exoneration.

## Petitioner's #1 objection to Pages 2, 3, and portion of 4 (as noted below ) for "A. The Rule 11 Hearing":

*"A. The Rule 11 Hearing Petitioner pled guilty in this Court to possession of child pornography on June 10, 2014. (Minute Entry 6/10/2014.) Prior to his Rule 11 hearing, Petitioner had filed a number of letters with the Court, despite having been appointed counsel. (Docket Entries 15 and 16.)...", "At Petitioner's Rule 11hearing,hewas placed under oath and indicated that there was nothing about his mild autism or diabetes that prevented him from understanding the proceedings. (Docket Entry 113at 4-8.)Petitioner stated that if his blood sugar were to drop during the hearing, he would notify the Court and it would stop the proceedings. (Id.at 8.)", "Roughly mid-way through Petitioner's guilty plea, the Court stopped and asked him if he was "doing all right" and Petitioner, under oath, stated "Yeah. Yes, sir." (Id.at 17.) The Court further addressed Petitioner's pro se letters. (Id.at 9.) The Court informed Petitioner that a guilty plea would result in their being no further inquiry into those pleadings and they would be moot. (Id.) Petitioner indicated that he understood. (Id.at 10.)Petitioner admitted he had read the indictment and discussed the charge and any possible defenses with his counsel, whose services with which he was satisfied. (Id.at 8-9.) The Court summarized the plea agreement and Petitioner agreed with that summary. (Id.at 10-11.) Petitioner indicated that he understood the plea agreement, had been presented with sufficient time to review the plea agreement and discuss it with counsel, and that it was the entire plea agreement. (Id.at 11.) Petitioner stated that no one had made any threats or promises other than those in the plea agreement to get him to plead guilty. (Id.at 14.)Petitioner indicated that he understood that he faced a statutory maximum sentence of ten years of imprisonment. (Id. at 15"*

*"The Court then explained to Petitioner his constitutional rights, which Petitioner stated he understood. (Id.at 19-20.) The Court then went over the elements of the crime of possession of child pornography, including the element of knowing possession. (Id.at 21.)Petitioner indicated that he understood these elements and that he was "admitting to the elements of the offense as those facts*

5

*are described in the indictment." (Id.)   Petitioner indicated he had no questions and was pleading guilty because he was, in fact, guilty. (Id.at 422.) The Court found Petitioner "fully competent and capable of entering an informed plea" land found further that Petitioner was "aware of the nature of the charges and the consequences of his plea, and his plea of guilty [was] a knowing and voluntary plea." (Id.)"*

That same Court had protected and defended Petitioner's ineffective counsel, known as "Eric David Placke", See Transcript under Exhibit 5, Document #131, and Pages 55 to 68. Placke wouldn't even attempt to prove that Petitioner's confession was false, wouldn't ask for a court ordered psychiatric evaluation to examine Petitioner's false confession statements and how his Autism (a communications disorder), Type 1 brittle diabetes, and Obsessive Compulsive Disorder may apply to the false confession. The jury would have heard his false confession not knowing that it was false because his counsel wouldn't do anything to come up with any defense. This was Petitioner's first time being accused of a federal offense, the cards were stacked against him, and he had no knowledge of how to fight to prove his innocence and neither did he know the ways he could have come up with any affirmative defenses like what Attorney Susan Basko had mentioned in Document #46. No witnesses were ever to be presented before the jury trial. It was all one-sided and none of the judges wanted to make sure that Brian's jury trial would not be one sided. It is unfair to have his lawyer force him into a position where he can be taken advantage of by his Autism and the lawyer doesn't have to fight for him. Petitioner was taken advantage of, knowing that Petitioner had no knowledge of the federal legal system and how it works and the proper way of filling motions and Writs. By the time, each year Petitioner getting better and better at filing pro se motions (while not incarcerated) then Petitioner is left in a bad position because he now understands that he was misled by not just Eric David Placke ("Mr. Placke"), but that he was a victim of a fraud upon the

6

court by Anand Prakash Ramaswamy and United States Attorney Ripley Rand who had allowed all of these injustices to have happened while under his watch during the Obama Administration. None of that is fair. Petitioner should have been given a better lawyer who clearly should have prepared a defense. When you're forced to rely on your lawyer as your only means of justice and you don't know how to properly file pro se motions, your only option is falsely pleading guilty as was brought up by the Innocence Project.

See Innocence Project article under Exhibit 13, Document #131, Pages 1 to 5.

The Innocence Project is a highly credible legal advocacy organization who have legally exonerated prisoners as legally innocent and were wrongfully convicted.

See two examples of cases prior to 2019, of Innocence Project exonerations:

1. State of North Carolina v. Joseph Lamont Abbitt, convicted of sex crime of rape but conviction was vacated, Forsyth County, Dockets #91019187, #91019188, #91019190, #91019189, and #91019186. The convictions in the dockets of those cases were vacated, convictions overturned.
2. Christopher Abernathy, victim of wrongful conviction caused by the fact that "...The evidence used to convict ABERNATHY of Hickey's murder was his false confession..."; U.S. District Court, Northern District of Illinois, Eastern Division, Case: 1:16-cv-02128, Document #: 1, Filed: 02/11/16.

Exhibit 13, Document #131, Pages 1 to 5, should have clearly been taken into consideration considering the fact that innocent people do give false confessions and false guilty pleas which lead to wrongful convictions. Compelling criminal defendants to falsely plead guilty under oath does not erase that people do give false confessions when given ineffective counsel, risk of a higher prison sentences,

7

and when there is lack of knowledge of the discovery evidence material that was to be used against the criminal defendant.

**Case 1:13-cr-00435-WO Document 18 Filed 06/04/14 Page 1 of 4   By Brian's court appointed attorney reads**:  The Defendant was arraigned on January 2. 2014, pled not guilty and the case was assigned to the February 2014 Criminal Term. On motion of undersigned counsel, the Court ordered an examination under 18 U.S.C. §§ 4241(b) and 4242(a). The report of that examination was filed with the Court on May 8, 2014. The Defendant actually returned to the Middle District of North Carolina on May 14, 2014. At a status conference earlier today, the Court denied the Defendant's pro se motions to suppress, denied the Defendant's request for new counsel, and set the matter for trial on Monday, June 9, 2014. "Due Process is that which comports with the deepest notions of what is fair and right and just."

This was the reason Brian took the guilty plea as recorded in a supplement in his 2255. See **Document 134 Filed 11/14/17 Page 50 of 99**.  This attorney did use the benefit or a threat of harm the night before on the phone to Brian's family when he told Brian's family to tell Brian to plea guilty:   (get out of jail so you will be able to go home & get all of your insulin to feel better – time served in exchange for pleading guilty OR twenty years in prison due to ineffective attorney if you continue saying you are innocent & continue just getting enough insulin to keep you alive while suffering from high glucose for years in jail – cruel and unusual punishment).   There is a common law rule in the **Fifth Amendment of our Constitution;** the rationale was the **unreliability of the confession's contents when induced by a promise of benefit or a threat of harm.** He had an attorney who was not working for Brian, was working more for the prosecution, and when Brian tried to inform this court of that fact, all of his motions were denied. Due to

8

Brian's disabilities he has always done better writing or reading (as long as his blood glucose is not high) than he does when someone is verbally asking him questions.

**Autism spectrum disorder (ASD) is a developmental disorder that affects communication and behavior.** To have a fair trial under our constitution, Brian needed a medical professional to explain to the court why they always got "Yes answers" to every question even though facts prove that there should have been "No answers instead of yes answers" to some of the questions the court asked Brian. This proves that this disabled citizen was not given his constitution right to "Due process".

<u>**Petitioner's #2 objection to Page 4 (as noted below) for "A. The Rule 11 Hearing":**</u>

*"Petitioner next indicated that he had reviewed the factual basis with his attorney, had no objections to it, and "generally agree[d] with the facts described in the factual basis[.]" (Id.at 22-23.)That factual basis provides that: Detective Robert Bridge of the Reidsville Police Department conducted an investigation into online sharing of child pornography on peer-to-peer networks, finding an IP address logged as having previously identified files of child pornography available for sharing. Detective Bridge partially downloaded two of those files, finding the contents to constitute child pornography as defined in 18 U.S.C. § 2256(8). The subject IP address was found to be assigned to a residence in Mayodan, N.C. A state search warrant was obtained and executed on August 28, 2012, with defendant, BRIAN DAVID HILL, being found to reside at that location. Ina consensual, non-custodial interview the following day, HILL admitted knowingly seeking and possess[ing] child pornography. A forensic examination of computer media possessed by HILL showed it contained child pornography as defined in 18 U.S.C. § 2256(8).(Docket Entry 19.)"*

The facts in the brief (Document #128 and all attachments contain the entire brief) showing a clear and convincing contradiction of Petitioner's statements to the State

9

Bureau of Investigation report, show that the confession could not hold up if that had been brought up by Brian's ineffective counsel Mr. Placke. Mr. Placke was such ineffective counsel that he deleted email attachments that he had received from Petitioner's family while Petitioner was incarcerated (See Western District of Virginia Case 4:17-cv-00027, Document #24-3, Filed 07/03/17, Pages 1 to 20). Mr. Placke had no intent to receive any evidence from Petitioner's family when he deletes email attachments. Mr. Placke clearly had no intent to defend Petitioner.

Brian's false confession should have been part of the original mental evaluation by Dr. Dawn Graney (See Document #17). However Placke never pushed for a mental evaluation over the false confession and how any of petitioner's mental defects would apply to Petitioner giving a false confession. What petitioner was able to prove without ever getting personal access to the audio of his own false confession, he was still able to show evidence that he had given a false confession to the police detectives on August 29, 2012. That right there proves the "confession" element of his guilt was false, fraudulent, and a fraud upon the court. Competent counsel clearly would have moved to prove Petitioner's false confession, instead of Petitioner having to prove such in his "brief / memorandum of law" under Document #128 and all attachments as brief was split into several attachments for that document. That would have weakened the Government's case but Mr. Placke clearly did not want to represent the interests of petitioner's actual innocence. Without the false confession, all the Government would have against Petitioner for the jury trial would have been the forensic report. It had stated that "*From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013.*" (See Document #136-1). That should have been brought up by Mr. Placke and that wasn't brought up either. Mr. Placke clearly was not going to defend Petitioner under any of the contradictions of

10

petitioner's [false] confession and none of the suspicious download date range where alleged [child porn] files were downloading between "*July 20, 2012, and July 28, 2013*" from the N.C. SBI report that was in the discovery material of Anand Prakash Ramaswamy in this very case. Search warrant was executed on August 28, 2012, a day before Petitioner's false confession.

Petitioner was clearly new to the federal criminal justice system, did not know anything at the beginning about how it had worked, and had not known of the importance of his Brady rights under Brady v. Maryland, and had not known of his rights until it was too late and he was forced by circumstances to falsely plead guilty.

See Document #171 "BRIEF/MEMORANDUM entitled "Brief/Memorandum of Law on Rule 11 Plea in support of 2255 Motion (Doc. #[125]) and 2255 Brief (Doc. #[128])" filed by BRIAN DAVID HILL to [128] Memorandum, [125] Motion to Vacate/Set Aside/Correct Sentence (2255) filed by BRIAN DAVID HILL. (Attachments: # (1) Supplement 1, # (2) Supplement 2, # (3) Supplement 3, # (4) Supplement 4, # (5) Envelope - Front and Back) (Civil Case number: 17CV1036) (Garland, Leah)", filing dated March 13, 2019.

See: Supplement 3 — Document #171, Attachment #3

"*Petitioner's claim, however, differs significantly from that advanced in Waley. He is not arguing that his guilty plea was involuntary because it was coerced, but rather that it was not intelligent because the information provided him by the District Court at his plea colloquy was erroneous. This type of claim can be fully and completely addressed on direct review based on the record created at the plea colloquy.*"

See: Supplement 2 — Document #171, Attachment #2

11

*"Defendant had shown that there was a reasonable probability that he would not have plead guilty, had he known of the impermissible government conduct. OUTCOME: The order denying the 28 U.S.C.S. § 2255 motion was reversed."*

Had Petitioner known that alleged claim from North Carolina State Bureau of Investigation Special Agent Rodney V. White that *"From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013."* (See Document #136-1), Petitioner never would have plead guilty.

Had Petitioner known that his confession could have been proven to show that it was false and did not match the claims in the forensic report (like no alleged child porn in the netbook (autism can make it easier to give a false confession, and misleading statements), it would show that the confession did not make any factual statements when compared to the forensic report, and that itwould show that such confession was not based on fruitful merits. A confession that cannot match the forensic report is a false confession. A confession that cannot be proven truthful during a cross examination may be impeachable. Had Petitioner known that he would be able to make a factual showing of his false confession on August 29, 2012, then Petitioner would not have plead guilty. With such questionable evidence, the jurors clearly would have had reasonable doubts already on those two issues alone.

The Common Law Rule: By the latter part of the eigh-teenth century English and early American courts had developed a rule that coerced confessions were potentially excludable from admission at trial because they were testimonially untrustworthy. ("3 J. WIGMORE, A TREATISE ON THE ANGLO-AMERICAN SYSTEM OF EVIDENCE § 823 (3d ed. 1940); Developments in the Law—Confessions, 79 HARV. L. REV. 935, 954–59 (1966).") The Supreme Court at

12

times continued to ground exclusion of involuntary confessions on this common law foundation of unreliability without any mention of the constitutional bar against self-incrimination. Consider this dictum from an 1884 opinion: "[V]oluntary confession of guilt is among the most effectual proofs in the law, . . . [b]ut the presumption upon which weight is given to such evidence, namely, that one who is innocent will not imperil his safety or prejudice his interests by an untrue statement, ceases when the confession appears to have been made either in consequence of inducements of a temporal nature, held out by one in authority, touching the charge preferred, or because of a threat or promise by or in the presence of such person, which, operating upon the fears or hopes of the accused, in reference to the charge, deprives him of that freedom of will or self-control essential to make his confession voluntary within the meaning of the law."("Hopt v. Utah, 110 U.S. 574, 584–85 (1884). Utah at this time was a territory and subject to direct federal judicial supervision.") Subsequent cases followed essentially the same line of thought. ("

Pierce v. United States, 160 U.S. 335 (1896); Sparf and Hansen v. United States, 156 U.S. 51 (1895). In Wilson v. United States, 162 U.S. 613 (1896), failure to provide counsel or to warn the suspect of his right to remain silent was held to have no effect on the admissibility of a confession but was only to be considered in assessing its credibility"). Petitioner had been given the choice of a lengthy prison sentence or a sentence of time served and more reasonable supervised release conditions upon pleading guilty versus the more unreasonable bond conditions when presumed innocent.

**Petitioner's #3 objection to Page 4 and portion of Page 5 (as noted below) for "A. The Rule 11 Hearing":**

*"The Court then found that Petitioner's plea was supported by an independent factual basis containing each of the elements of the offense, and the Court, therefore, accepted Petitioner's plea and adjudged him guilty. (Docket Entry 113 at 23.) The Court also ordered the preparation of a presentence report ("PSR") and further ordered Petitioner to participate in a psychosexual evaluation. (Id.at 23-25.)"*

That evaluation did not ever look into Petitioner's false confession or how Autism is tied into the false confession. There clearly should have been an evaluation to mentally look into Petitioner's false confession statements which would have aided the court in making a factual determination that Petitioner had given a false confession on August 29, 2012.

**Petitioner's #4 objection to Page 5 (as noted below) for "A. The Rule 11 Hearing":**

*"The Court then left Petitioner with "one other thought": It seems to me after talking to you today and hearing your responses that for the most part some of your concerns have --and fears have been allayed with respect to both the process as well as counsel in the case. I don't mind telling you that you are represented by very experienced and capable counsel in this court in a wide variety of matters, so in many respects you're very --we'd expect that out of all lawyers with the public defender and Criminal Justice Act panel attorneys, but you've got a good one."*

Mr. Placke was considered a good one? Really now, he ignored Petitioner's false confession and said that Petitioner admitted to possessing and viewing child pornography like a prosecuting attorney would say. Mr. Placke is not supposed to play prosecutor, but is supposed to come up with a defense. I can see why the Court favors Mr. Placke so much because he saves the Court time and money by getting every criminal defendant to take a guilty plea or they lose the jury trials. Mr. Placke had a horrible legal track record for defending his clients and getting them found guilty. Petitioner is aware when he was at FCI-1 Butner, he had well researched this attorney and his track-record of winning cases was hardly anything

to nothing from the Lexis Nexis system back in 2014. Petitioner is willing to bring this up under oath. When counsel had a horrible track-record of guilty plea or losing the jury trials, he clearly is not effective. Mr. Placke deleted evidence, (See Western District of Virginia Case 4:17-cv-00027, Document #24-3, Filed 07/03/17, Pages 1 to 20). Placke's reply email to Petitioner's family had shown that all attachments that his family had emailed him were all deleted. Mr. Placke ignored witnesses like Attorney Susan Basko under Document #46. Mr. Placke never questioned SBI Agent Rodney V. White the so-called forensic examiner. Mr. Placke never pushed for good bond conditions for Petitioner. Mr. Placke is not a fighter but a sell-out to the Federal Prosecution, in Petitioner's humble opinion on the basis of his research and evidence from him and his family.

For Mr. Placke to be considered good-counsel is like selling a broken down car at a used car lot. Maybe Mr. Placke had experience, but Mr. Placke did not use his experience to push for proving false confession, proving that alleged [child porn] files had downloaded between July 20, 2012, and July 28, 2013" when Petitioner did not even have the computer after August 28, 2012. Mr. Placke didn't show any contradictions, contradictions between the Mayodan Police Report and the SBI forensic report, didn't show that there was no victims identifiable according to the Pre-Sentence Investigation Report. Mr. Placke didn't show the threatening email messages that Petitioner had received and had reported to J. Joy Strickland to forward to the North Carolina SBI Agent Rodney White ("White") because Brian didn't have White's email address at the time. Mr. Placke didn't show any evidence which would show any facts of innocence and neither any of reasonable doubt.

Mr. Placke was not a good attorney for Petitioner and had demonstrated a failure to do his job.

**Petitioner's #5 objection to Page 8 (as noted below) for "D. The October 14, 2014 Status Conference":**

"*After the September 30, 2014 hearing and prior to an October 15, 2014 status conference, Petitioner filed four additional motions which sought to gather and place additional evidence of his purported innocence before the Court. (Docket Entries 48-51.) At the October 15, 2014 hearing, Petitioner's new counsel indicated that he had familiarized himself with Petitioner's criminal matter. (Docket Entry 116 at 5.) Counsel indicated that there were no grounds to withdraw the guilty plea and that, after speaking with Petitioner, Petitioner did not want to withdraw his guilty plea. (Id.) Counsel did not adopt any of Petitioner's pro se filings. (Id.) Counsel indicated that he had spoken to the purported out-of-state entertainment attorney and "to put it bluntly, don't put a lot of stock in what she has to say." (Id. at 6, 12.)*"

However John Scott Coalter, Petitioner's second appointed defense counsel, also did not know that Petitioner had given a false confession which could have been proven on its merits as was outlined in the brief under Dkt. #128. John Scott Coalter may have or may not have known about the download dates either and never informed the Court of that concern.

"*From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013.*" (See Document #136-1)

Petitioner's only source of income was his Supplemental Security Income ("SSI"), his Social Security disability benefits. Petitioner was incarcerated on December 20, 2013. Had Petitioner continued to fight without being released on bond conditions, Petitioner was at absolute risk of losing his SSI benefits and would have to reapply for benefits all-over-again which would be deadly to a man with Type 1 brittle diabetes. Insulin is expensive and cannot be afforded by Petitioner without Medicaid. Petitioner would have lost his SSI, likely even his Medicaid, had he not decided to go along with the guilty plea and be sentenced without further protest. John Scott Coalter had failed to thoroughly investigate the discovery evidence

16

material to show the factual elements by the Government may have been false at the time, a fraud upon the court. Petitioner had been misled and misinformed when he never got to review over all discovery materials obtained by Mr. Placke. John Scott Coalter did not even work with Petitioner to determine the contradictions, and evidence of Brian's false confession statements which would have made a good actual innocence defense. Innocent people DO INDEED falsely confess to crimes that they did not commit. Petitioner had to get an expedited final judgment of conviction to be released out of imprisonment on time served to prevent him from 100% losing his SSI benefits and would have to again hire an attorney to fight for reapplying for his benefits and at risk of the attorney receiving a portion of his SSI money to pay for the attorney had Petitioner not been released on Supervised Release on a sentence of time served.

His Social Security benefits was used as leverage against Petitioner in not fighting any further to withdraw his guilty plea, him not getting good and reasonable bond conditions in 2014 were used as leverage against Petitioner in not being able to effectively fight to show facts of innocence. Petitioner's Autism Spectrum Disorder and Brittle Type 1 Diabetes was used as leverage against Petitioner in assuring that Petitioner would not survive incarceration without major health complications had Petitioner not falsely plead guilty and was forced to stick with it. How was he supposed to get a fair trial with ineffective counsel; and his own deteriorating health was used against him in ensuring that Petitioner would not get a fair outcome. Petitioner had no nurses or doctors present at any of the court hearings in 2014. Petitioner has brittle diabetes, and it requires around the clock care. The Court had failed Petitioner and it caused him to falsely plead guilty.

See Exhibit 1 of Document 131, Pages 1 to 2

See Exhibit 2 of Document 131, Pages 3 to 21

Petitioner's health was used against him and made it favorable for the Government to be able to get Petitioner to give up on proving his innocence and just take the guilty plea to get out of jail. The worst of Petitioner's potential bond conditions was that Petitioner would not be allowed to use a telephone. How can Petitioner comply with his bond conditions and request permission to go to any legal appointments or even Doctor's appointments if he was not allowed to use a telephone while out on bond for his federal charge? Mr. Placke and John Scott Coalter failed to push for reasonable bond conditions where Petitioner could fax his Pretrial Services Officer his monthly supervision reports and make phone calls to request permission to leave the residence to attend legal appointments and medical appointments. Petitioner's bond conditions was impossible to be able to follow and would set Brian up for high risk of violation because Petitioner would have violated his conditions just by simply making a telephone call to his supervising officer had he been released on bond in 2014. Petitioner's counsel should have fought for reasonable bond conditions and that would have given Petitioner a good chance to not have been forced to falsely plead guilty.

**Petitioner's #6 objection to Page 8 (as noted below) for "F. The First Supervised Release Hearing":**

*"On June 30, 2015, the Court had a hearing to address whether Petitioner's supervised release should be revoked for verbally abusing his probation officer and failing to follow her directions. (Docket Entry 88; Docket Entry 123.)The Court found Petitioner to have been insolent and aggressive towards his probation officer. (Docket Entry 123 at 79-80.) Rather than revoke Petitioner's supervised release, however, the Court, in pertinent part, ordered six months of home incarceration. (Id.at 81.) The Court noted Petitioner's age and mental health in support of this decision. (Id.at 80.)At this hearing, the Court also remarked upon the large number of pro se pleadings Petitioner continued to file, which the Court observed "have a somewhat near delusional approach to his whole situation[.]" (Id.at 80.)At this hearing, while it was not listed as a ground for which*

18

*probation sought revocation of Petitioner's supervised release, it also became apparent that an image of child pornography had been found on a pre-purchased cell phone Petitioner was using. (Id.at 7.) Petitioner voluntarily brought this to the attention of his probation officer. (Id.)He said he "accidentally opened the document" which was "sent from an anonymous account." (Id.at 15.) The Court observed that it "sounds highly unlikely that somebody who has a prepaid cell phone would anonymously receive unsolicited child pornography." (Id.at 61.)"*

This Court and the U.S. Probation office both had failed to follow through with any mandate of a forensic examination of the seized *"prepaid cell phone"* from Petitioner when he voluntarily turned it over to her. Both entities have failed to investigate how many contacts Petitioner had on his cell phone prior to receiving the *"unsolicited child pornography"*. It was the Court's job to investigate how many people Petitioner had been in contact with, by what means, and determine whether or not Petitioner had ever even asked for the *"unsolicited child pornography"*. There is no evidence whatsoever and that the only evidence offered was that Petitioner had reported that he had received *"unsolicited child pornography"* on his grandmother's cell phone that he was using at the time and that he had voluntarily reported the matter and had turned the phone over. Petitioner was never charged with "child pornography" over this alleged claim of a *"prepaid cell phone"* because Petitioner's conduct was an affirmative defense under federal child pornography law according to Attorney witness Susan Basko under Document #46. Petitioner clearly had not violated any laws, and that the Hon. Judge Schroeder had made assumptions and conclusions not based on the merits but based on assumptions. He didn't ask more questions and there was a failure to forensically investigate the cell phone which Petitioner had informed Attorney Renorda Pryor that he would also voluntarily consent to examination of that cell phone back in June 30, 2015. The court had failed to investigate the matter any further before assuming that it "sounds highly unlikely that somebody who has a prepaid cell phone would anonymously receive unsolicited child pornography."

19

The Court and the U.S. Probation Office had failed to thoroughly investigate this matter which deprived Petitioner of his constitutional right to due process, made assumptions of Petitioner's conduct without solid and convincing evidence that would have demonstrated the very facts that the Court had relied upon for its assumptions and conclusory claims. Ineffective counsel on top of that.

Also Petitioner had filed a "MOTION entitled "Motion for Sanctions and to Vacate Judgment in Plaintiff's/Respondent's Favor" "Motion and Brief/Memorandum of Law in Support of Requesting the Honorable Court in this case Vacate Fraudulent Begotten Judgment or Judgments" filed by BRIAN DAVID HILL. Response to Motion due by 10/25/2019. (Attachments: # (1) Supplement 1, # (2) Supplement 2, # (3) Exhibit 1, # (4) Exhibit 2, # (5) Envelope - Front and Back) (Civil Case number: 17CV1036) (Garland, Leah)", "Document #199". That concerns the issues of fraud upon the court for the noted "F. The First Supervised Release Hearing" Page 9 to 10 of Document #210.

Also it should be noted that this Tracfone phone was NOT a burner phone, a "burner phone" meaning a phone that is meant to be purchased and then disposed of after usage. It was prepaid by an account set up by Brian's grandparents and that cell phone was also included in that plan, a plan connected to a real address and bank account or credit card. It had used the same phone number for months to even a year or more. Many contacts on that phone. Brian did have enemies from his days of USWGO Alternative News.

Petitioner believes it was erroneous for the Hon. U.S. Magistrate Judge to make such claims without addressing the "fraud upon the court" issues as asserted in the 2255 pleading under Document #199.

"Supplement 1 — Document #199, Attachment #1"

*"Courts § 225.1; Equity § 47 - power to vacate fraudulent judgment"*

*"8. A federal court has the inherent power to vacate its own judgment upon proof that a fraud has been perpetrated upon the court; this historic power of equity to set aside fraudulently begotten judgments is necessary to the integrity of the courts; moreover, a federal court has the power to conduct an independent investigation in order to determine whether the court has been the victim of fraud."*

Unfortunately Document #199 was not addressed in the "ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE signed by MAG/JUDGE JOE L. WEBSTER on 10/21/2019" Document #210. It is an error of law and an error of the Court's inherit power and responsibility to not first address the "fraud upon the court" concerning the "F. The First Supervised Release Hearing". That means that the Court may be willing to dismiss and deny the 2255 Motion without addressing the frauds upon the court which would reveal that the fraudulent begotten judgments are not final and not subject to the statute of limitations as any relief from any discovered "frauds" upon the court had no statutory time limit since it is the Court's inherit power.

When facts are in jeopardy as a result of Petitioner exposing in Document #199 that a past judgment used against Petitioner was caused by any frauds upon the court, it is premature to make a final decision on the merits of such facts of a fraudulent begotten judgment.

It is an error of law and it is premature to make a decision for Petitioner's 2255 motion (Dkt. #125, #128) on any facts or judgments that are put into jeopardy as a result of any frauds upon the court by the adverse party. That further fuels the frauds upon the court and reflects the frauds in future judgments and creates a cascading case of frauds which would make this entire criminal case illegitimate

21

and not based on integrity or truth. Illegitimate case that Petitioner may be forced to find any means necessary to get in contact with President Donald John Trump to give him a full pardon of innocence to undo the damage of the frauds upon the court by having to ask for relief by Executive Order. It is legally illegitimate, factually illegitimate, and erodes the very foundations of law and order.

(This is a note from Stella Forinash) "The Court observed that it "sounds highly unlikely that somebody who has a prepaid cell phone would anonymously receive unsolicited child pornography." (Id.at 61.)" This was what the judge said – his opinion – not based on fact. My husband & I were in the court room. This judge could have asked us about the phone just like at the end, he told Brian's family to respect the probation officer", again he is jumping to his own opinion – not based on fact. We do respect the probation officer but can't respect someone whose job is to find ways to help her client, not to on purpose provoke an autism meltdown and have this person arrested admitting in court that she had no training in autism. Brian was punished for something he can't help due to his autism by spending one month in jail with half of his insulin (Cruel and unusual punishment) and forced home confinement for 6 months wearing a monitor. The court is turning autism into a criminal act without providing an expert medical person to explain to the court about an autistic meltdown. Is it like a temper tantrum, or is it part of his brain that he can't control and shouldn't be punished at all as no one was hurt? We have caught this probation officer in other lies. It was proven that Brian felt bad afterwards when he was back to himself and apologized to her 3 times for calling her names and getting upset when she told him he couldn't use his phone to text, not even to text his attorney. Now about the phone. It was my phone. It had no internet service as I don't like to use phones with internet. I prefer internet on computers, not phones. The phone we bought to replace that one had no internet

service.  My phone number remained the same for years.  Minutes and text prepaid were building up, and the reason I loaned the phone to Brian was so the minutes & text could be used.  I only use my phone for emergencies.  Brian called the Rockingham County, NC sheriff's department.  They apparently had access to my phone number, told Brian they were going to notify the Mayodan, NC police department.  After that the Mayodan police number showed up twice on my phone.  After that there was a threat by an anonymous phone number and after this threat later there was child porn sent to my cell phone.  We no longer wanted this phone.  Brian quickly notified his probation officer about it and gave it to her to have it examined.   We did not have Internet service on my phone.  We only paid for phone time and text messaging.  Minutes & text not used in one month would roll over to the next month or next year.  We paid a flat fee of $10.00 a month for this service per phone, and this fee is automatically taken out of our checking account and recorded in our email account.  We got another phone to replace this one with the same phone number and no internet service.  This tracfone website  answers the judge's question:  https://www.tracfone.com/how-it-works (This is a note from Stella Forinash)

Connect with your family and friends with the comfort of a dependable prepaid plan.  With our no-frills plans, you get the data, texts and minutes you need — without the commitment.  •No contracts  •No bills  •No overages  •No activation or cancellation fees, ever.  AUTO-REFILL MAKES IT EASY.  Auto-Refill is available on most plans.  Just enroll and relax. Auto-Refill will keep your service going.  If you ever run out of Airtime you can add more anytime.  Block any unwanted phone calls immediately with **Call Detector**. It's free to download!  With Unlimited Carryover®, your unused data, text and minutes never expire with active service* – you get to keep what you pay for.   We make switching easy and saving simple. You can choose to keep any of the following when you make the move to Tracfone: Keep your smartphone.   Keep your phone number (or get a new one).  Keep your network. Bringing your own phone is easy. You just need to check if your phone is

compatible. Then, buy an Activation Kit and choose the best plan for your needs. (This is a note from Stella Forinash)

## Petitioner's #7 objection to Pages 10 to 11 (as noted below) for "G. The Second Supervised Release Hearing":

"*Petitioner was subsequently arrested in September of 2018 for exposing himself in public throughout his hometown in Martinsville, Virginia, in the early morning hours, proof of which was provided by photographs Petitioner took of himself on his camera at the time. (Docket Entry 198 at 1.) Petitioner initially claimed that he did so under duress related to threats from an unnamed man in a "hoodie" who insisted that he would harm Petitioner's mother unless he got "naked in public [and took]photos" of himself and then "placed them at the drop off point[.]"(Docket Entry 164 at 2.) Petitioner later asserted that he exposed himself because he was suffering from carbon monoxide poisoning. (Docket Entry 181 at 2.) Petitioner was convicted in state court in Virginia in 2018, and his federal revocation proceeding followed. (Docket Entry 198 at 1.)The Court revoked Petitioner's supervised release on October 7, 2019 and he was sentenced to nine months of imprisonment. (Docket Entry 200.) He was ordered to self-report by noon on December 6, 2019. (Id.)*"

Using "The Second Supervised Release Hearing" against Petitioner, is also an error of law and is violating Petitioner's due process rights. Docket Entry 200 is currently under a timely appeal under Document #190 and an Amended Notice of Appeal under Document #205 to include the final written judgment order. To use that as part of the basis for recommending denial of Petitioner's 2255 Motion is an error of law, and is using a possibly invalid judgment if the judgment is vacated by the U.S. Court of Appeals for the Fourth Circuit.

"*Petitioner was convicted in state court in Virginia in 2018, and his federal revocation proceeding followed.*" That is a lie and is an error of the record. It is an error of law. If the Court is asserting Petitioner's conviction in the Municipal Court, also known as a police court, on the date of December 21, 2018? The Martinsville General District Court is not an Article III sanctioned state court of

24

record. Any convictions appealed from the General District Court level is reversed and treated as if the conviction had never occurred, which is Trial De Novo. Petitioner had timely filed his appeal to the Martinsville Circuit Court, and evidence of such is on the record in the Virginia court system under the following case nos. C18-3138 for the General District Court of Martinsville, and CR19000009-00 for the Circuit Court of Martinsville. A new trial had been ordered for December 2, 2019, as is his due process right to Trial De Novo in the state court.

The revocation charge under Document #157 was filed before the trial in the General District Court (the "police court"), set for December 21, 2018, but was filed in November 13, 2018. An arrest alone is not sufficient evidence constituting a violation of the condition of his Supervised Release that *defendant shall not commit another federal, state or local crime.*" Being arrested for a charge does not constitute evidence alone of violating a law because the Defendant of such charge is presumed innocent and would have to be proven guilty of all elements of such charge in order to be convicted of the charge.

That "...Second Supervised Release Hearing" being cited in the order and recommendation of the U.S. Magistrate Judge should not have been cited at this time as it is premature, since a timely filed Notice of Appeal was filed on September 12, 2019 (Document #190) the same day as the oral judgment and an Amended Notice of Appeal of Document #190 was filed under Document #205 to include the written judgment which was not available at the time the first Notice of Appeal was filed timely. The Amended Notice of Appeal was filed four (4) days after the final written judgment for that Supervised Release Hearing. It is premature and an error of law to use the determination of that "...Second Supervised Release Hearing" cited by the Magistrate Judge, when a timely Notice

25

of Appeal had been filed challenging the judgment (which may be vacated) and the original state charge was also appealed to Trial De Novo in an official Article III compliant state court of record, and Brian had not been convicted in the state court of record.

"*A violation of a conditions of probation should be detailed enough to provide a demarcation line to afford a criminal defendant fair notice. In this case, that demarcation line is very detailed and clear when the condition is that the defendant is not to commit a "crime" because a "crime" is defined by elements which, when each element has been met, can serve as basis for a conviction of a "crime". Contrariwise, when any element of a defined crime has not been met with sufficient evidence, then there is insufficient evidence that the condition (i.e., not commit a crime) has been violated. In the case at hand, the alleged condition violation is based on committing the "crime" defined by Virginia Criminal Code § 18.2-387 which has been addressed by the courts of Virginia (See e.g., Kimberly F. Neice v. Commonwealth of Virginia, Record No. 1477-09-3 in the Circuit Court of Giles County; see also A. M. v. Commonwealth of Virginia, Record No. 1150-12-4 in the Circuit Court of Shenandoah County; see also Kenneth Samuel Moses v. Commonwealth of Virginia, Record No. 0985-03-3 in the Circuit Court of Richmond. Note: these cases were also referenced by Brian in earlier filing with the Court in ECF No. 179 at page 10). These courts have found, concerning meeting all of the elements of the crime, that mere nudity is not a sufficient basis for a finding of obscene or indecent as would be required for Brian David Hill to have committed that crime. Based on the evidence in the District Court, Hill's conduct was not a crime because his actions did "not rise to the level of obscenity required under Code § 18.2-387, as defined in Code § 18.2-372.*"" Dkt. 206, pg. 11-12

*"To support a finding that a crime was committed as defined by Virginia Criminal Code § 18.2-387, the District Court must have found, at least, by a preponderance of the evidence that Hill's "actions had as their dominant purpose an appeal to the prurient interest in sex" with "purient interest in sex" meaning "a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value." Such a finding has no support in the record of the District Court."* Dkt. 206, pg. 12

*"Parole and supervised release are both conditional liberty but revocation of either is subject to the requirements of due process which includes "a written statement by the factfinders as to the evidence relied on and reason for revoking". See Morrissey v. Brewer, 408 U.S. 471, 489-90 (1972)."* Dkt. 206, pg. 12

*"There is no factual basis that Brian David Hill had been "in violation of Virginia Criminal Code § 18.2-37, a Class 1 Misdemeanor." (ECF No. 157, Pg. 2)"*
*"The Probation Office assumed that Brian David Hill was already guilty and had violated Criminal Code § 18.2-387, there was no fact of such as the petition was filed one month before the General District Court trial that was set for December 21, 2018. The petition was flawed and should not have been executed until Brian was convicted of the state charge and had exhausted all appeals and had failed. However Officer Robert Jones had admitted at the hearing on September 12, 2019, that Brian had not been obscene. There is no evidence of obscenity against Brian as to the violation and the evidence of his state charge."* Dkt. 206, pg. 12-13

Again, see Document #206, "MOTION entitled "Petitioner's Second Motion for Sanctions and to Vacate Judgment that was in Plaintiff's/Respondent's Favor; Motion and Brief/Memorandum of Law in support of Requesting the Honorable Court in this case Vacate Fraudulent begotten Judgment or Judgments" filed by BRIAN DAVID HILL. Response to Motion due by 11/5/2019. (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Supplement 1, # (4) Supplement 2, # (5) Supplement 3, # (6) Supplement 4, # (7) Envelope - Front and Back) (Garland, Leah)".

*"It is a fraud upon the court for the U.S. Probation Office to assert that Brian had violated Virginia law when his own lawyer, an assistant public defender none the less, had stated that Brian never violated Virginia law. Then well-established case law precedents stating that simply being naked is not obscene. Which that of course is the same as nudism (nudism is non-sexual nudity), a nudist out of place for example. Whether or not Brian can prove that carbon monoxide had caused his bazaar behavior on September 21, 2018, is irrelevant when the conduct of Brian did not rise to the level of obscenity for him to be guilty of indecent exposure. It is clear that Brian had violated no law and engaged in no commission of a crime."* Dkt. 206, pg. 14

The Magistrate Judge had erred on the fact that he did not address the fraud upon the court issues raised in Document #206. He did not wait for the Transcript for the timely filed Direct Appeal, and he did not wait for Petitioner's third motion to request default judgment in his favor and sanctions for his 2255 case based on evidence of a repeated pattern of a fraud upon the court (perjury, false facts, lies, etc. etc.) by the Respondent. Petitioner should at least be entitled an opportunity to request sanctions as far as default judgment on the basis of a repeated pattern of fraud upon the court from the date of which the abuse had begun. False confession

28

and questionable download dates in the state computer forensic report by the N.C. SBI, as well as the admission in the Pre-Sentence Report that no victims could be identified and there is no actual verification whether the files of interest were actually of pornographic and obscene material of minors. Since the fraud had begun in Petitioner's criminal case of United States v. Brian David Hill, then the second fraud began with the 2015 Revocation Hearing, and the third fraud for the Second Revocation Hearing. Petitioner is entitled to relief under the 2255 Motion after Brian had discovered the intrinsic and/or extrinsic frauds upon the court and Petitioner had reported such frauds to the Court in his 2255 case.

See Motion for Hearing — Document #169 *"the Court has an inherent power to investigate a fraud upon the court and to vacate an earlier judgment upon proof of such fraud. The fraud upon the Court is caused by both ineffective assistance of Counsel forcing me to falsely plead guilty under Oath, and a fraud upon the Court by a false factual basis of guilt in this criminal case."* Letter addressed to U.S. Magistrate Judge on January 30, 2019, no responses filed by the U.S. Attorney Office.

See Exhibit — Document #170 – Evidence directed to U.S. Magistrate concerning letter to U.S. Attorney Assistant Anand Prakash Ramaswamy concerning the "fraud upon the court". Filed March 1, 2019.

It is clear that the Magistrate Judge erred on using the second Supervised Release Violation hearing and judgment against Petitioner for his 2255 case without allowing the Fourth Circuit U.S. Court of Appeals and even the U.S. Supreme Court to make a decision on such judgment, based on a timely filed appeal.

**Petitioner's #8 objection to Pages 11 (as noted below) for "Grounds for Relief":**

*"Petitioner raises four grounds for relief. Petitioner's first ground for relief is one of "[a]ctual innocence" to the crime of possession of child pornography. (Docket Entry 125, Ground One.) Next, Petitioner asserts ineffective assistance of counsel. (Id., Ground Two.) Third, Petitioner asserts due process violations during the pre-trial process of his criminal case. (Id., Ground Three.) Last, Petitioner asserts prosecutorial misconduct. (Id., Ground Four.) As explained below, these issues are all time-barred and also lack merit. 3."*

*"3. Petitioner's pleadings are voluminous. The pleadings, at times, are also difficult to follow. The undersigned has attempted to respond to all of the many variations of Petitioner's grounds and sub-grounds for relief. To the extent that any have not been specifically discussed, they should still be dismissed as time-barred and/or denied on the merits for essentially the reasons set out herein."*

That doesn't make any sense that Petitioner had made no demonstration of actual innocence. The purpose of the "MEMORANDUM by BRIAN DAVID HILL re [125] Motion to Vacate/Set Aside/Correct Sentence (2255) filed by BRIAN DAVID HILL" was to explain that Petitioner had given a false confession, and other issues as to how and why Petitioner is actually innocent. When the elements of the "factual basis" of guilt under Document #19 are proven false, then it opens the door to the issues of fraud upon the court by the Respondent. Petitioner should not even be charged with perjury for any findings that his guilty plea was false on June 10, 2014 (Document #20), because the original evidence they had used in Brian Hill's indictment (Document #1), and Arrest (Document #2), and had planned to use against Petitioner for the jury trial set for Jun 10, 2014, had a fraudulent basis. The fraudulent basis was that Petitioner's confession on August 29, 2012, is impeachable and attacked as a false confession

See *"III. Factual Basis for the August 29, 2012 Confession Being False, Questionable as Fact, and/or should be Impeachable for Coercion"* under Document #128, Pages 49 through 75, Paragraphs 24 through 33. See all Exhibits referenced in those paragraphs in Exhibits Documents #131, #132, #133, and #134, which are all part of Document #128 brief. Petitioner had made a colorable

30

showing that his confession can be proven false and is contradictory to what was in the North Carolina State Bureau of Investigation report. To argue that Petitioner has lacked merit for proving his actual innocence isn't accurate and doesn't resolve the frauds upon the court by the Respondent by permitting Petitioner's false confession and compelling him to falsely plead guilty to a plea agreement asserting that his [false] confession is a factual statement of guilt and admissions of guilt.

See "IV. Factual Basis for the North Carolina State Bureau of Investigation ("N.C. SBI") Forensic Report by Special Agent ("SA") Rodney V. White ("Agent White") being Questionable and does Not Prove the Criminal Defendant Guilty beyond Reasonable Doubt" under Document #128, Pages 75 through 88, Paragraphs 34 through 38. See all Exhibits referenced in those paragraphs in Exhibits Documents #131, #132, #133, and #134, which are all part of Document #128 brief. Petitioner had made a colorable showing that the North Carolina State Bureau of Investigation report did not prove each and every "file of interest", "image of interest" or any file or files of interest was child pornography and did not verify each file as such. The Respondent had not even attempted to prove such throughout the 2255 case from when they had the time to respond to the Petitioner's 2255 Motion (Dkt. 125) when it was first filed on November 14, 2017. Then it was also established that in the SBI forensic report, Page IV, it said that *"From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013."* (See Document #136-1). That date was never disputed from the North Carolina State Bureau of Investigation when it was brought up earlier on in this case.

See the Declaration which had stated that "...*then told them for about a year or so even though it doesn't even match the forensic finding except for the dates July 20, 2012 and July 28, 2013 but I didn't know any of this until after my conviction was*

31

*made final when it would be too late to file an Appeal...*" See Document #77, pg. 3, Filed 04/22/2015.

The same download dates were brought up under Document #71-4, Filed 04/03/2015, Page 10 of 13, even though page was rotated making it harder to read, it still shows the paragraph that "*From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013.*" The Respondent aka the United States had never made any valid objections to that paragraph being in the N.C. State Bureau of Investigation report, and did not make any valid objection to the fact that the very same computer was seized on August 28, 2012. For eleven (11) months it had been downloading to Brian's seized computer while under the custody of law enforcement, undisputed all of these years, files of interests aka the allegedly claimed "child pornography" files by the United States of America. Why was that happening huh? Why were files allegedly being downloaded while under the custody of law enforcement? Is that not an admission of planting evidence or even tampering with the so-called secured evidence at the N.C. State Bureau of Investigation office in Greensboro, North Carolina, which was all used in the factual elements of guilt in Petitioner's case? Why was none of that brought up by Mr. Placke and John Scott Coalter?

It is wrong to simply state that "*Petitioner's pleadings are voluminous. The pleadings, at times, are also difficult to follow*" as if Petitioner had done something wrong here or somehow deserves scrutiny. Petitioner isn't allowed to use the internet and isn't registered to file his pleadings through the CM/ECF system and Notice of Electronic Filings. If Brian were allowed to have filed his 2255 through CM/ECF, his PDF files would have been easier to search, easier to locate the following text and exhibits, and it would have been easier to follow the voluminous pleadings. PDF files, if electronically filed, can have bookmarks, and

32

is easier to create a table of contents and areas to click in a document leading to another document. Petitioner is limited in making his voluminous filings easier for the Court to sift through, because the Petitioner does not have access to CM/ECF unlike the adversary party the Respondent. This Court does not seem to use a document-to-text OCR system and so the Court has to read through each page and make notes just to go back and find certain areas. The disadvantages of the Petitioner not being able to upload the PDF filings of his pleadings to the Court and instead has to print them and physically mail them off, makes the filings more difficult to follow. Petitioner asks the Court not to use this against him just because he is treated like a second class citizen by not having the same filing privileges of using the internet like Respondent can using the CM/ECF filing system. Petitioner does not deserve scrutiny from the Court for not being able to file PDF files electronically.

Petitioner had raised merits. Petition had raised persuasive case law and facts in the brief. See these cited paragraphs in the quotes below.

*"Supporting case law regarding colorable showing of actual innocence should be allowed in a Habeas Corpus petition despite AEDPA's one-year statute of limitations: See, e.g., Holloway v. Jones, 166 F. Supp. 2d 1185, 1190 (E.D. Mich. 2001) (finding that while petitioner failed to establish colorable showing of innocence, "to utilize the one year statute of limitations contained in the AEDPA to preclude a petitioner who can demonstrate that he or she is factually innocent of the crimes that he or she was convicted of would violate the Suspension Clause ... as well as the Eighth Amendment's ban on cruel and unusual punishment"); Barbour v. Haley, 145 F. Supp. 2d 1280, 1288 (M.D. Ala. 2001) (following Wyzykowski and concluding that "this court ... must give Barbour the opportunity to meet the standards for a showing of actual innocence before it can make any*

*decision about this claim (of actual innocence) on the merits"); United States ex*
*rel. Thomas v. Welborn, No. 00-C-2601, 2000 WL 1831548, at 3 (N.D. Ill. Dec. 13,*
*2000) (finding that while petitioner failed to establish colorable showing of*
*innocence, "to close the gateway of the miscarriage of justice exception to*
*petitioners who fail to timely file their petitions under 2244(d) would raise "serious*
*constitutional questions.' ... Furthermore, it would create the possibility that an*
*innocent person would remain incarcerated due to a constitutional violation,*
*simply because he failed to overcome a procedural hurdle."); Neuendorfv. Graves,*
*110 F. Supp. 2d 1144, 1158 (N.D. Iowa 2000) (assuming, without deciding, that*
*"sufficient showing of" actual innocence' would open the gateway to federal*
*habeas corpus review, even if the petition in which the claim is asserted is*
*otherwise untimely under the AEDPA"); United States v. Zuno-Arce, 25 F. Supp.*
*2d 1087, 1099-1102 (C.D. Cal. 1998) (finding that while petitioner failed to*
*establish colorable showing of innocence, the court nevertheless "extends the*
*miscarriage of justice gateway as a means of considering evidence and*
*constitutional claims otherwise procedurally barred by the AEDPA's statute of*
*limitations" because "foreclosing a claim of constitutional violation where there*
*has been a colorable showing of actual innocence would likely constitute a due*
*process violation or an improper suspension of habeas corpus relief'), affd, 209 F*
*.3d 1095 (9th Cir. 2000), amended, 245 F.3d 1108 (9th Cir.}, mandate stayed, 271*
*F.3d 953 (9th Cir. 2001); see also McLaughlin v. Moore, 152 F. Supp. 2d 123, 136*
*(D.N.H. 2001) (indicating that while it is likely that sufficient evidence of actual*
*innocence would provide a gateway through 2244( d)'s limitation period, thereby*
*permitting a successful petitioner to present untimely claims, "there is at least*
*some judicial authority suggesting that even if an actual innocence exception to*
*AEDP A's time limitation must necessarily be inferred, that exception is not*
*available to petitioners who fail to pursue their claims in a diligent manner")*

34

*(citing Workman v. Bell, 227 F.3d 331 (6th Cir. 2000) (en banc), cert. denied, 531 U.S. 1193 (2001))."* – Dkt. 128, pages 46-48, paragraph 21.

Petitioner's pleadings are voluminous because 2255 Motions grounded on actual innocence requires a lot of evidence to get it to have a good chance of not being time barred. A lot of evidence is necessary in a complex computer-crime case to explain why Petitioner is actually innocent of the crime of possession of child pornography. Petitioner cannot prove his innocence in a small number of filings and pages. The elements of actual innocence require a lot of exhibits, affidavits, case law, and arguments.

The only ground Petitioner had not thought of asserting in the Document #125 Motion was the issue of a "fraud upon the court" but that also shows factual innocence, because when the United States of America is engaging in a pattern of fraud upon the court against Petitioner and those frauds concern any facts that was used against Petitioner to win favorable judgments against the Petitioner. Then Petitioner never should have been convicted and be forced into a plea agreement if the evidence could have been attacked all along as fraudulent but council was ineffective.

**Petitioner's #9 objection to Page 11 (as noted below) for "Discussion":**

*"Respondent requests dismissal on the ground that Petitioner's motion was filed outside of the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA"). (Docket Entry 141.)"*

The fraud upon the court by an officer of the court, aka "Anand Prakash Ramaswamy" and any counsel of the United States of America not correcting such

35

frauds makes the final judgment subject to collateral attack and not subject to the statute of limitations.

Citing: "PATRICIA J. HERRING, INDIVIDUALLY; JUDITHPALYA LOETHER, INDIVIDUALLY AND AS A LIVINGHEIR OF ELIZABETH PALYA (DECEASED); WILLIAMPALYA, INDIVIDUALLY AND AS A LIVING HEIR OFELIZABETH PALYA (DECEASED); ROBERT PALYA, INDIVIDUALLY AND AS A LIVING HEIR OFELIZABETH PALYA (DECEASED); SUSAN BRAUNER,INDIVIDUALLY AND AS A LIVING HEIR OF PHYLLISBRAUNER (DECEASED); CATHERINE BRAUNER,INDIVIDUALLY AND AS A LIVING HEIR OF PHYLLISBRAUNER (DECEASED), Appellants  v. UNITED STATES OF AMERICA; Appeal from the United States District Court for the Eastern District of Pennsylvania (District Court No. 03-CV-5500) District Court Judge: Honorable Legrome D. Davis."

"In order to meet the necessarily demanding standard for proof of fraud upon the court we conclude that there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and(4) in fact deceives the court. The United States Court of Appeals for the Sixth Circuit has set forth five elements of fraud upon the court which consist of conduct: "1. On the part of an officer of the court; 2. That is directed to the 'judicial machinery' itself;  3. That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth;  4. That is a positive averment or is concealment when one is under a duty to disclose; 5. That deceives the court." Demjanjuk v.Petrovsky, 10 F.3d 338, 348(6th Cir. 1993). Although other United States Courts of Appeals have not articulated express elements of fraud upon the court as the Sixth Circuit did, the doctrine has been characterized" as a scheme to interfere with the judicial

machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense. "In re Coordinated Pretrial Proceedings in Antibiotic AntitrustActions,538 F.2d 180, 195(8th Cir. 1976) (citations omitted); see also Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5thCir. 1978) (holding "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court"). Additionally, fraud upon the court differs from fraud on an adverse party in that it "is limited to fraud which seriously affects the integrity of the normal process of adjudication. "Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1998).Other United States Courts of Appeals expressly require that fraud upon the court must involve an officer of the court. See Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 48".

Any judgments grounded upon frauds by an officer of the Court, which includes any and all counsel for the United States of America (Respondent) are VOID and are not valid and cannot be permanently declared final judgments.

A Party Affected by VOID Judicial Action Need Not APPEAL. State ex rel. Latty, 907 S.W.2d at 486. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring). If an appeal is taken, however, the appellate court may declare void any orders the trial court signed after it lost plenary power over the case, because a void judgment is a nullity from the beginning and is attended by none of the consequences of a valid judgment.

A Void Judgment is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Seidel, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001). "Since the trial court's dismissal "with prejudice" was void, it may be

attacked either by direct appeal or collateral attack" Ex parte Williams, No. 73,845 (Tex. Cnm. App. 04/11/2001). "A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring). A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. A void judgment which includes judgment entered by a court which lacks jurisdiction over the parties or the subject matter, or lacks inherent power to enter the particular judgment, or an order procured by fraud, can be attacked at any time, in any court, either directly or collaterally, provided that the party is properly before the court. See Long v. Shorebank Development Corp., 182 F.3d 548 (C.A. 7 Ill. 1999).

**Black's Law Dictionary, Sixth Edition, P. 1574:** Void judgment. One which has had no legal force or effect, invalidity of which may be asserted by any person whose rights are affected at any time and at any place directly or collaterally. Reynolds v. Volunteer State Life Ins. Co., Tex. Civ. App., 80 S.W.2d 1087, 1092. One which from its inception is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind parties or support a right, of no legal force and effect whatsoever, and incapable of confirmation, ratification, or enforcement in any manner or to any degree. Judgment is a "void judgment" if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process. Kiugh v. U.S., D.C.S.C., 610 F. Supp. 892, 901. See also Voidable judgment. Black's Law Dictionary, Sixth Edition, p. 1574.

Judgments grounded in false facts, conclusory claims not backed by evidence or that the evidence is insufficient to establish the conclusory claims as fact, and judgments based upon matters during valid direct appeals are VOID judgments.

38

Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted.

Further, there is no statute of limitations for a fraud on the court claim and a court may consider such a claim even if no adversarial parties are before the court. In re Roussos, 541 B.R. at 729.

Courts must balance the finality of judgments against the possibility that the judgment was obtained by defrauding the court. In re Met-L-Wood Corp., 861 F.2d at1016 (balancing a possible fraud on the court claim with the policy of protecting a 21-year-old final sale order). Fraud directed at the "judicial machinery" can mean conduct that fraudulently coerces or influences the court itself or a member of the court, such that the impartial nature of the court has been compromised. Bulloch v. United States, 721 F.2d 713, 718 (10th Cir.1983). The court in "In re: Levander" held that perjury, by a single non-party witness, can rise to the level of fraud on the court.38However, the perjury must be so detrimental to the entire bankruptcy proceeding that it defiles the court itself. 180 F.3d 1114, 1120. See In re: Levander, 180 F.3d at 1120; In re Clinton Street Foods Corp., 254 B.R. 523;In re: Cardwell, No. 09-43121, 2017 WL 2304220, at *5-*6.

However, where a litigant can prove that an officer of the court fraudulently coerced or improperly influenced the impartial nature of the court, fraud on the court can be established. Bulloch, 721 F.2d at 718.

39

**Petitioner's #10 objection to Page 13 (as noted below) for "b. Subsection 2255(f)(2)":**

"*Subsection 2255(f)(2) requires an unlawful governmental action preventing Petitioner from filing a motion pursuant to § 2255. Petitioner invokes this provision. (Docket Entry 143 at 73-74; Docket Entry 145 at 9.) He asserts that the modification of his term of supervised release to include six months of house arrest was wrongful because it was based upon falsehoods told by his probation officer. (Id.) He asserts he could not perform legal research or gather additional evidence during this time. (Id.)*"

"*Petitioner's assertions do not render his motion timely. First, Petitioner has failed to demonstrate any unlawful governmental action here.5Second, home detention would not be a sufficient impediment to the filing of a motion pursuant to § 2255. Third, even assuming Petitioner's assertions were true, and there was a six-month impediment attributable to governmental action, which is not the case, his motion would still be time-barred. Petitioner states he was subject to home detention until December 30, 2015 and his motion was not filed until November of 2017, almost two years later. Six months would make no difference. Beyond this, nothing in any of Petitioner's filings meaningfully supports a finding of unlawful governmental action preventing him from filing. Any such assertions are vague, conclusory and unsupported and fail for those reasons alone.*"

Again the falsehoods told by U.S. Probation Officer Kristy L. Burton at the revocation hearing on June 30, 2015, is perjury and Respondent permitted such perjury on its face and continued permitting the perjury after it was brought up in the 2255 case. Petitioner had suffered wrongful home detention and an illegal order due to the fraud upon the court by Respondent and the witness in favor of Respondent. Respondent didn't correct any of the lies on the record for the first Supervised Release Violation hearing. Respondent knew that it could be used against the Petitioner not just in his 2255 Motion but would also escalate to any future charges of a Supervised Release Violation, snowballing the frauds into pushing for as large punishment of imprisonment. Home Detention and not being allowed internet access and not being able to visit any law libraries with federal

40

case laws, does indeed impede the Petitioner from being able to successfully file a 2255 Motion. It deprives Petitioner of the ability to be able to successfully conduct the research necessary for a better outcome. Plus the fraud upon the Court on June 30, 2015, and the lies in the Petition for Warrant or Summons for Offender Under Supervision, had to be battled while Petitioner was under home detention. Petitioner had attempted to do everything he could but to no avail because the U.S. Probation Office in Greensboro permitted the lies and perjury. Petitioner had suffered under possibly an illegal sentence and VOID judgment which does not require an appeal to attack collaterally. Even Counsel Renorda Pryor, ineffective or not, could not attack the frauds upon the court because the transcript has to be produced at a later time in order to investigate the potential frauds and then address them at a later time. Appeals wouldn't be a 100% clear cut way to reverse a fraudulent judgment because appeals can only reverse judgments based upon what was on the record at the time before the appealed judgment was rendered. If any evidence is to be submitted, an appeal court cannot reverse a judgment based upon new evidence as that was not on the record before the judgment was made. Appeal courts have limited discretion, and any frauds upon the court must be brought up at a later time. There is no statute of limitations for fraud upon the court because the risk of a Court entertaining opinions and judgments based on known frauds, can cause the Court to lose integrity, lose respect, and lose credibility to the scholarly community.

**Petitioner's #11 objection to Page 14 (as noted below) for "d. Subsection 2255(f)(4)":**

*"Subsection 2255(f)(4) allows the limitation period to run from the date on which the facts supporting the claims presented could have been discovered through due diligence. Petitioner invokes this provision by asserting that he was not given*

41

*full access to the discovery in this case. (Docket Entry 125, Ground Three.) However, Petitioner admits he had full access to his criminal case discovery material on January 22, 2015. (Id.) Even assuming January 22, 2015 triggered the onset of his one-year deadline, Petitioner's instant motion is still time-barred, because he did not file it until November of 2017. To the extent Petitioner makes any additional efforts to acquire a later starting date of the limitations period under this subsection, his efforts are equally unsuccessful. This is because the purported facts in question could have been discovered with due diligence, or because they are irrelevant, vague, conclusory, unsupported, and/or speculative in nature."*

The lack of being able to review over all discovery materials proves that Petitioner did not make an informed guilty plea and was not a valid guilty plea. Petitioner did not understand what defenses he could have had because Mr. Placke never showed all of it to him. If counsel like that was good, experienced, and was effective counsel, he would have let the Petitioner review over the entire N.C. SBI report to find the contradictions and make notes of them, and it would have made quite the difference in Petitioner having a good chance of being found not guilty at the jury trial. Not having access to all of the discovery material acquired by defense counsel is an ERROR on counsel's part, and is unprofessional and prevents Petitioner from having due process and prevents Petitioner from entering a valid guilty plea. If Petitioner had seen all of the discovery evidence material, then Petitioner never would have plead guilty.

**Petitioner's #12 objection to Page 17 (as noted below) for "f. Actual Innocence":**

*"Petitioner spends the bulk of his pleadings contending in one way or another that he is innocent. (Docket Entry 125, § 18.) In other words, he contends that he is actually innocent of possessing child pornography, despite the fact that he confessed to the crime and pled guilty to it under oath in federal court, and then reaffirmed this at sentencing. (Id.)"*

Because of the fact that Petitioner never got to review over all discovery materials until January 22, 2015, after his wrongful conviction, Petitioner did not make an informed guilty plea and was not a valid guilty plea. Petitioner did not understand what defenses he could have had because Mr. Placke never showed all of it to him. If counsel like that was good, experienced, and was effective counsel, he would have let the Petitioner review over the entire N.C. SBI report to find the contradictions and make notes of them, and it would have made quite the difference in Petitioner having a good chance of being found not guilty at the jury trial. Not having access to all of the discovery material acquired by defense counsel is an ERROR on counsel's part, and is unprofessional and prevents Petitioner from having due process and prevents Petitioner from entering a valid guilty plea. If Petitioner had seen all of the discovery evidence material, then Petitioner never would have plead guilty. Even though Petitioner had reaffirmed his guilty plea and admission at sentencing, Petitioner still did not review over all discovery materials of the criminal case and did not know that he could have proven a false confession and the bazaar download dates reported in the N.C. State Bureau of Investigation forensic report. Petitioner could have raised a false confession fact against the element of confessing to the crime. That in itself is a defense to the element of the crime that Petitioner had confessed to the crime. That makes the Government's/Respondent's factual basis of Petitioner's confession to being false and is not a factual basis. The evidence of Petitioner's confession being valid is insufficient when proven to be a false confession. The confession on August 29, 2012, cannot be proven factually true and is impeachable, and is meritless. Petitioner could not get out on bond because Counsel did not argue bond conditions where he would be allowed to use the telephone to contact his Pretrial Services Officer to request permission to go to important legal appointments and Medical appointments. He would have been on home detention, electronic

43

monitoring, and not even be allowed to use a telephone and his family would not be allowed to use one either. THAT CONDITION IS UNREASONABLE and could make it very easy for Petitioner to violate his bond conditions, as if it were set up for Petitioner to fail, so Petitioner had stayed incarcerated until he had falsely plead guilty and was sentenced to get timed served to finally be out of jail and on reasonable conditions under Supervised Release. Why was Brian's Supervised Release conditions that were imposed upon his false guilty plea less restrictive than his bond conditions would have been back in 2014 when Petitioner was supposed to have been presumed innocent until proven guilty of the crime? That makes it sound like Petitioner was rewarded with less restrictive conditions of supervision by selling himself out to a false guilty plea agreement. It was designed as if Petitioner was never going to receive due process, never was going to get full access to his Brady materials, was never going to get reasonable bond conditions because Counsel did not fight for any reasonable bond conditions, and then forces Petitioner to have a choice between time served by pleading guilty or face 20 years of imprisonment hard time. Petitioner was never treated as if he was presumed innocent until proven guilty. He was treated as guilty until he is proven innocent, and the Court wonders over and over again why Petitioner had plead guilty and reaffirmed his guilt at sentencing.

**Petitioner's #13 objection to Pages 17 through 18 (as noted below) for "f. Actual Innocence":**

*"The essence of Petitioner's actual innocence claim appears to be that someone put child pornography on his computer in retaliation for his independent reporting, which involved writing blog posts, making and posting YouTube videos, and employing other forms of social media. (See, e.g., Docket Entry 128.) According to Petitioner, he reported on local corruption in his home town and reported about the unconstitutional nature of the Department of*

44

*Defense's 2012 budget authorization, which he asserts permitted the abduction and torture of United States citizens. (See, e.g., Docket Entry 130.) According to Petitioner, his confession and guilty plea to the possession of child pornography were, respectively, false and involuntary, and were motivated by (1) his poor health, including symptoms he suffers attendant to his mild autism, diabetes, and other issues, (2) threats from one or more third parties against either him or against his family members, and (3) incompetent legal representation. (See, e.g., Docket Entry 128.)"*

*"Petitioner is correct that there is an actual innocence exception to the one-year time limitation. McQuiggin v. Perkins, 133 S.Ct. 1924, 1928 (2013). However, to establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995); see McQuiggin, 133 S.Ct. at 1935. "[S]uch a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Petitioner has not met this high burden."*

Even though his false confession would not be considered "new evidence", it is a fraud upon the Court by Respondent, and that fraud was that they had pushed for grand jury indictment and a factual basis of guilt based upon a false confession. So what the Magistrate is arguing is that it doesn't matter about any facts Petitioner establishes of his actual innocence, because it is not considered "new evidence". It is new evidence and is not time barred in the matter of a fraud upon the court. The fraud element was the Government's purported fact that Petitioner had factually confessed to the crime, but that fact was false. Petitioner was never allowed to prove that it was false until after Petitioner was released from jail, and he had to falsely plead guilty to get out of jail on reasonable Supervised Release conditions unlike what the bond conditions would have been under Mr. Placke, as Mr. Placke never even attempted to push for reasonable bond conditions to ensure that Petitioner would be able to make phone calls to his counsel of record and be able to fax materials to his counsel of record, and to assist his counsel of record, instead

45

of having to find means to acquire stamps from other prison/jail inmates and then mailing things without ever knowing what was entirely within the discovery evidence material acquired by Mr. Placke. Frauds upon the court is not time barred, and can be brought up in a 2255 Motion. Frauds upon the court cannot be established during the trial but can only be established after the final judgment, whether it be a VOID judgment or what appears to be a legitimate judgment but based upon frauds by the other party. Petitioner had lacked the knowledge of the words "fraud upon the court" when the 2255 Motion and brief was filed, and had only discovered, thanks to his family, in 2018 that there is such a thing as arguing a "fraud upon the court" to vacate a fraudulently begotten judgment.

Counsel was incompetent when he never saw or acknowledged what Page IV of the SBI forensic report had to say in its claim that *"From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013."* (See Document #136-1)

Counsel could have proven a false confession and could have requested a mental evaluation back in 2014 to address the issues of false confession and the mental disabilities having anything to do with false confessions and any influencing factors during the interrogation which can trigger false confessions.

**Petitioner's #14 objection to Pages 17 through 18 (as noted below) for "f. Actual Innocence":**

*"Petitioner references his criminal discovery file in this case, which he apparently sought through a Freedom of Information Act ("FOIA") request. (Docket Entry 125, § 18.)However, Petitioner has done no more than assert in a conclusory manner that there might be evidence supporting a claim of actual innocence, which is insufficient to warrant a later starting date. See Nickerson, 971 F.2d at 1136."*

46

It is not conclusory for the Petitioner to be requesting access to his discovery material that he was supposed to have been entitled to after being indicted on his charge. It is not conclusory for Petitioner to be referencing facts of what the U.S. Attorney Office had provided to counsel of record, and then asking for a copy of such material for the purpose of proving actual innocence. This Court should not set a very bad unconstitutional/illegal precedent where all criminal defendants do not have to be given full access to the discovery materials by court appointed counsel prior to being pressured into falsely pleading guilty. It is critical that for proving that any of the Government's elements of the crime are false which would amount to a successful defense, that all discovery materials be reviewed in its entirety and that the defendant be able to cross reference the material to find contradictions and holes in the Government's claims and thus would be able to fairly have a good chance of being found factually innocent or not guilty at a jury trial.

It IS Actual Innocence when alleged files which may or may not be child pornography was downloaded for 11 months when Brian David Hill didn't even have his computer according to the statement in Page IV of the SBI forensic report from the discovery material: *"From the analysis, this record showed that 454 files had been downloaded with the eMule program between July 20, 2012, and July 28, 2013."* (See Document #136-1)

It IS Actual Innocence when a confession or any admissions of guilt can be proven false at a later time.

**Petitioner's #15 objection to Pages 18 through 19 (as noted below) for "f. Actual Innocence":**

*"Beyond this, Petitioner has repeatedly admitted to possession of child pornography. First, after a comprehensive Rule 11 hearing, he voluntarily and knowingly plead guilty to the charge (Docket Entry 113) and agreed that the factual basis was accurate (id.at 23). The factual basis stated that Petitioner knowingly sought and possessed child pornography.(Docket Entry 19.) Second, during his pre-sentence interview in preparation of his PSR, Petitioner again admitted his guilt. (Docket Entry 33, ¶15.) Third, Petitioner also filed a transcript of an interview with law enforcement in which he admits downloading and viewing child pornography. 6. (Docket Entry 132 at 7-8.)"*

*"6. Petitioner's assertion that he suffers from echolalia and simply repeated what the officers said to him when he confessed to possessing child pornography is unpersuasive and not borne out by the record. (Docket Entry 125 at 4.) And, beyond this, Petitioner also admitted in a signed statement that he was guilty of intentionally possessing child pornography. (Docket Entry 33, ¶ 15.)"*

That is not true. Again I will analyze the sentence below:

*"First, after a comprehensive Rule 11 hearing, he voluntarily and knowingly plead guilty to the charge (Docket Entry 113) and agreed that the factual basis was accurate (id.at 23)."*

That is not what was said in "BRIEF/MEMORANDUM entitled

"Brief/Memorandum of Law on Rule 11 Plea in support of 2255 Motion (Doc. #[125]) and 2255 Brief (Doc. #[128])" filed by BRIAN DAVID HILL to [128] Memorandum, [125] Motion to Vacate/Set Aside/Correct Sentence (2255) filed by BRIAN DAVID HILL" under Document #171.

Memorandum — Document #171, Pages 2 to 3: *"According to Supplement 3 case law of Bousley v. United States, 523 U.S. 614, 140 L Ed 2d 828, 118 S Ct 1604 (1998), "Convicted person held entitled to hearing on merits of collateral claim contesting validity of his guilty plea..." and that "Petitioner's claim may still be reviewed in this collateral proceeding if he can establish that the constitutional error in his plea colloguy "has probably resulted in the conviction of one who is actually innocent."" Murray v. Carrier, supra, at 496, 91 L Ed 2d 397, 106 S Ct 2639."*

48

The affidavit (Declaration) under "Supplement 4 — Document #171, Attachment #4" demonstrates in this 2255 case that Petitioner's guilty plea may not even be constitutionally valid and should not be used against Petitioner in denying his 2255 Motion and giving a conclusion of opinion that Brian David Hill did not establish any merits of his actual innocence.

**Document #171-4, Pages 2 to 3:** *"My false guilty plea is the same as my false confession at Mayodan Police Department, caused by my Autism Spectrum Disorder and me being manipulated into saying things about myself that wasn't true. Misinformation and ineffective assistance of counsel led to my false guilty plea. My former counsel of record Eric David Placke failed to show me all pages of the discovery evidence prior to my false guilty plea on 6/10/2014. I didn't know I had a chance to prove a false confession before my guilty plea. A act of me giving a false confession, that my disability of Autism helped with causing me to falsely confess and may be able to be affirmed by mental health experts or even certified Medical Doctors would cause any reasonable juror to find me not guilty. Thus had counsel been effective in my case, I never would have been placed in a situation where I had falsely plead guilty. Because Mr. Placke never showed me all pages of the Brady material/discovery material prior to my guilty plea, I never knew that I could have proved false confession; and the download dates (July 20, 2012 to July 28, 2013) in the North Carolina State Bureau of Investigation report would prove that alleged computer activities had occurred during the date/time period when my computer was in law enforcement custody."*

**Document #171-4, Pages 2 to 3:** *"I had plead guilty without being informed as to all pieces of evidence that the Government was using against me. I was misinformed by Mr. Placke. I feel that such guilty plea was unintelligent and was a fraud upon the court by my defense counsel and the Government. Had me and my family reviewed over all discovery material pages prior to the jury trial set in 2014, I never would have plead guilty. That violated my due process right and such deprivation of my due process led to my false guilty plea. Counsel failed to make any arguments in favor of proving any facts of my innocence prior to begging me to plead guilty in 2014. Failed to come up with case strategy for trial, had no defense planned, yet my 2255 brief provides credible arguments and evidence in my favor. My guilty plea was false and was unintelligent with lack of information as I was mislead by Counsel Mr. Placke and misinformed by Counsel. I declare under penalty of perjury that the foregoing is true and correct. Executed on March 7, 2019."*

**Cited from Magistrate's opinion:** *"Third, Petitioner also filed a transcript of an interview with law enforcement in which he admits downloading and viewing child pornography. 6. (Docket Entry 132 at 7-8.)"*

That is NOT TRUE on the record in this case. That statement is also based on a fraud upon the court. That page is not a transcript of the entire interview/interrogation. Even Mr. Placke admitted that Brian made statements of innocence during the interview/interrogation, but they were not even typed down in that document in docket Entry 132 at 7-8. It is NOT a transcript of the entire interview/interrogation. The audio is not even being brought up by the Magistrate Judge, even though it was mentioned on the record in the entire criminal case.

**Transcript — Document #114:**

Page 8: "THE COURT: And so is it fair -- do those -- and I'm not trying to embarrass you. I just need to get to the bottom of this issue that you have raised. You mentioned OCD, obsessive compulsive disorder. When you were originally debriefed in this case -- or when you were originally arrested and confronted by law enforcement, you told those officers that someone else must have downloaded those images to your computer, is that correct?"

Page 8: "THE DEFENDANT: Yes, sir."

Page 8: "THE COURT: Am I remembering correctly, Mr. Placke?"

Page 8 to 9: "MR. PLACKE: In part, Your Honor. There was a noncustodial interview conducted the day after the search warrant. It was recorded, and I've listened to it several times, played it with Mr. Hill. That was said initially. Later, the course of the interview changed, and Mr. Hill told the officers that he had downloaded child pornography."

Page 9: "THE COURT: That's right. There was an initial statement, and then later that changed."

**– END OF CITATION of Transcript**

That proves that what the Magistrate referred to as a "transcript" did not cite all words spoken during the interview/interrogation, and the Magistrate did not cite that the other transcript shows on the record that Brian had made an initial statement of innocence but then something caused it to change and create a contradiction of statements, one of innocence and the other one of guilt.

The Magistrate made another error in asserting from Petitioner's filing on "Docket Entry 132 at 7-8." Concludes Petitioner's guilt and that it is a transcript of the "interview" but did not cite that Brian had said at the beginning of the interview that "…someone else must have downloaded those images to your computer…" according to the statements by the Honorable Judge William Lindsey Osteen Junior. Brian made statements of innocence and statements of guilt during that same interview as it had become an interrogation where the detectives told Petitioner that they allegedly found "child pornography" on Brian's computer (without showing Brian any of the alleged images they claimed they had found) and Brian was questioned around his lunchtime and he has Type 1 brittle diabetes. Diabetes plays an important role when being interrogated or interviewed. The Magistrate erred by not taking any of it into account.

**"Read Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 79-87 of 99. This is Brian's mom (Roberta Hill)'s eye witness account as she is Brian's only caregiver who trained in autism, was a nurses aid in NC and was at the Mayodan police station when Brian confessed falsely to downloading it and was at the June & September, 2014 hearings. She also read the discovery (police report & NC SBI report)".**

51

**Cited from Magistrate's opinion:** *"6. Petitioner's assertion that he suffers from echolalia and simply repeated what the officers said to him when he confessed to possessing child pornography is unpersuasive and not borne out by the record. "*

That was why Petitioner had filed the Document #151 *"MOTION entitled "Petitioner's Motion for requesting Psychological/Psychiatric Evaluation to Determine actual Innocence factor under False Confession element and to resolve the controversy/conflict between Government and Petitioner over "Delusional Disorder" filed by BRIAN DAVID HILL"*, because an expert witness can further show that the "echolalia" claim is persuasive and would prove that Petitioner's mental/neurological disorder of Autism Spectrum Disorder can and had played a role in Brian's [false] confession on August 29, 2012, and may had also played a role in Brian's false admissions of guilt such as his guilty plea and acceptance of responsibility. The medical study document of Exhibit 3 — Document #143, Attachment #3, entitled "Journal of Speech and Hearing Research, Volume 27, 183-192, June 1984", "ANALYSIS OF FUNCTIONS OF DELAYED ECHOLALIA IN AUTISTIC CHILDREN". Document #143-3 proves that studies conducted on those with Autism (Autism can never entirely be outgrown and can affect an individual for life since Autism is a BRAIN DISORDER) show that they can exhibit echolalia and can cause them to repeat words they had heard before and may not personally have understood the very words that they are repeating.

"**Document 134 Filed 11/14/17 Page 94-99 of 99** This is a record dated 10-19-1994 from the Division for Treatment and Education of Autistic and Related Communication Handicapped Children; Department of Psychiatry University of North Carolina. "Currently Brian exhibits immediate and delayed echolalia, and repeats some phrases he has heard over and over". He understands and follows simple routine commands but cannot use or answer "Wh" questions. It clearly

52

states that "Brian is prone to small episodes of temper tantrums". This is now called "autistic meltdowns". **"When he became upset, his language consisted largely of echolalia"**. Brian usually responded to his name by repeating it. Brian used language and gestures to communicate. At the start of testing, Brian's language consisted mostly of delayed and immediate echolalia. He would ask questions. However, Brian had much more difficulty answering questions". At times, his language was difficult to understand. Brian's IEP should reflect the acknowledgement that he is a child diagnosed with autism". Signed by a Child Therapist, Parent Consultant and a Licensed Practicing Psychologist.

The Magistrate has erred on making that assumption that Petitioner's autism and "echolalia" are unpersuasive.

Is the Magistrate even an expert in communicative disorders such as Autism? Does the Magistrate have a college degree in psychology? Is the Magistrate an expert in mental disorders? Shouldn't a Magistrate Judge at least on its own motion ask for an expert witness to look into this "echolalia"?

**Petitioner's #15 objection to Page 19 (as noted below) for "f. Actual Innocence":**

*"None of this suggests that Petitioner is innocent. Petitioner does assert many additional reasons as to why he is actually innocent. (See, e.g., Docket Entry 128.) However, none of them has merit. Petitioner's arguments are some combination of irrelevant, vague, conclusory, unsupported, and speculative in nature. (Id.) See Nickerson, 971 F.2d at 1136."*

So showing proof of a false confession, and the fact that Petitioner had made an initial statement of innocence but then it had changed after the Detectives said some things to Petitioner and it was around his lunch time and he is a type 1 brittle diabetic, and none of it is considered innocence? False confession is not a fact of

53

actual innocence? When the confession was used as evidence of Brian's guilt but proving the confession as false is not actual innocence as it disproves the elements of guilt?

Showing the download dates that were discovered in the forensic report used by the United States of America, by AUSA Ramaswamy, none of that has merit? None of that proves possible evidence tampering? None of that requires an evidentiary hearing or even further investigation into the matter?

The Exhibits directly are explained within Document #128 as to how it is relevant, explains Petitioner's innocence, and attempts to try to make sense of a very complex criminal case here involving an allegation of a computer crime. You have to get technical here in a case like Brian's.

Does this magistrate judge actually address proof documents Brian has displayed in his 2255 Motion? Does the magistrate judge reference the notarized declaration that Brian's grandmother (Stella Forinash) wrote in **Case 1:13-cr-00435-TDS, Document 134, Filed 11/14/17, Page 34-72 of 99.** Does he acknowledge the notarized declaration that Brian's grandfather (Kenneth R. Forinash, TSgt, USAF, Ret) wrote in **Document 134, Filed 11/14/17, Page 73-75 of 99.** Does he acknowledge the notarized declaration that Brian's mom (Roberta Hill) wrote in **Document 134, Filed 11/14/17, Page 76-87 of 99?** Does he acknowledge Attorney Susan Basko's Declaration **Case 1:13-cr-00435-TDS Document 46, Filed 09/30/14, Page 1-3 of 3.** Sue Basko is a lawyer for independent media and Attorney and Counsellor of the Supreme Court of the United States of America whom Brian contacted in 2013. Is this magistrate judge ignoring Brian's proof of innocence and Brian's witnesses and Brian's constitutional and disability rights? Is this judge not shown bias, ignoring Brian's

actual proof documents that are part of his 2255 Motion submitted to this court in November and December, 2017?

This is further proof of additional fraud upon the court and further proof of more of Brian's constitutional rights being violated in the Middle District of North Carolina. According to our US Constitution, Sixth Amendment - Rights of Accused in Criminal Prosecutions a defendant has a right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; **to have compulsory process for obtaining witnesses in his favor,** and to have the Assistance of Counsel for his defense.

**Cited from Magistrate's opinion:** *"Petitioner's arguments are some combination of irrelevant, vague, conclusory, unsupported, and speculative in nature"*

False confession is not conclusory and is not speculative. False confession is a supporting factor of actual innocence. Download dates that do not match Petitioner's claim of "about a year or so" in his confession to child pornography on August 29, 2012, should draw both the forensic report and the confession into serious question for fraud upon the court and as to whether the original evidence that was used to indict and convict Brian David Hill had ever been supported by any merits. Maybe the Government's evidence is speculative, conclusory, contradictory, and unsupported to sustain a genuine conviction.

**Petitioner's #16 objection to Page 19 (as noted below) for "g. The Merits":**

*"As explained above, all of Petitioner's grounds are time-barred. However, if the Court were to reach the merits of Petitioner's grounds for relief, it would deny them."*

"Ground One:"

*"As noted, Petitioner's first ground for relief is that he is actually innocent of the crime of possession of child pornography. (Docket Entry 125, Ground One.) As explained above, he has not demonstrated any meaningful likelihood of his actual innocence."*

1. False confession is a FACT of actual innocence and that the Factual Basis of "guilt" concerning Brian's confession on August 29, 2012, is a Fraud Upon the Court.

2. Download dates at times when Brian David Hill is verified to not having the seized computer by law enforcement shows possible evidence tampering, evidence planting, and/or even incompetence. The forensic report didn't even have a sworn affidavit as may have been required by North Carolina General Statute in regards to forensic analysis reports and would not have been legally admissible as an expert witness report in the North Carolina courts. See Note (1.). The forensic report didn't even verify whether each such file of interest was even proven as child pornography. In the world of internet, anybody can name any file name or folder name under any keyword. Unless the forensic report has proven that each alleged file was indeed confirmed as child pornography and is of obscene material (*For example citing Virginia's legal definition of obscene: "The word "obscene" . . . shall mean that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor"*). Nudity itself is not obscene and is not an intent to be sexual in nature. Unless every file of interest in the state forensic report was proven to be of obscene sexual material and was not protected under the U.S. Supreme Court as "nudism" materials, the N.C. State Bureau of Investigation forensic report does not prove Petitioner guilty of possessing child pornography as it is a Fraud Upon the Court to create a fact based on a forensic report that is highly questionable and does not verify the elements of guilt. A forensic report is meant to be evidence to verify/certify that evidence was scientifically found beyond all reasonable doubt proving the elements of guilt necessary to prove

the arguments of guilt by the party prosecuting a case. Like if a forensic report said that they had matched the files of interest to known child pornography and known series of child pornography, then that burden would have been met to prove beyond a reasonable doubt that Petitioner does indeed have child pornography on his computer, absent that showing that a computer virus or Trojan planted such child pornography would be a fact of innocence if strong enough or just simply another reasonable doubt to the elements of guilt attempting to be established by the prosecutor in a case. The state forensic report does not confirm every file of interest to being verified as child pornography and is obscene material not subject to protection by the Supreme Court case law ruling that nudity without more is not considered pornography and is not subject to the child pornography statutes. Obscenity, again, is a requirement to establish that an image is indeed child pornography and is unlawful. None of the forensic report verified that each file found was of the material necessary to even charge Petitioner with "possession of child pornography". It is entirely a fraud upon the court, because they cannot just assert factual elements of guilt with empty evidence or evidence that falls short of proving the alleged factual claims. The United States had defrauded the Court by establishing facts that Brian had thousands of child pornography images, as was stated in the Pre-Sentence Investigation Report (Document #33), when the source of that information came from a State Bureau of Investigation report that apparently didn't even follow the usual forensic procedures and didn't even confirm whether each "image", "video" or "file" of interest was even of child pornography. All of that was argued and established in the Petitioner's brief / memorandum of law under Document #128, Pages 75 through 88, and Paragraphs 34 through 38. It is not even conclusory when the Petitioner on January 22, 2015, had finally got to read over the forensic report and had taken notes on what was in the report. It is not unsupported when the source was from the Government's own discovery material in this case.

3. Petitioner was defrauded into falsely pleading guilty and was forced to do so under Oath. He was given two choices: (1) Falsely plead guilty and get out of jail on time served prison sentence, or (2) face up to the maximum imprisonment of 20 years according to what Eric David Placke told Brian's family members Stella Forinash, Keneth Forinash, and Roberta Hill. Petitioner's counsel failed Brian and was misled, misinformed, and defrauded into a false guilty plea under oath.

57

*Note (1.): Citing statute: 2011 North Carolina General Statutes, Chapter 8
Evidence. Article 7C - Admissibility of Forensic Evidence. 8-58.20. Forensic
analysis admissible as evidence; (c) The analyst who analyzes the forensic sample
and signs the report shall complete an affidavit on a form developed by the State
Bureau of Investigation. In the affidavit, the analyst shall state (i) that the person is
qualified by education, training, and experience to perform the analysis, (ii) the
name and location of the laboratory where the analysis was performed, and (iii)
that performing the analysis is part of that person's regular duties. The analyst
shall also aver in the affidavit that the tests were performed pursuant to the
accrediting body's standards for that discipline and that the evidence was handled
in accordance with established and accepted procedures while in the custody of
the laboratory.*

That argument by the Magistrate violates due process that merits don't matter and
any merits would be denied. The statement about reaching the merits would still
warrant denial, shows that it does not care about the actual innocence, does not
care about due process of our Constitution, and does not care about the frauds upon
the court. That goes along with the threatening emails from tormail.org (See
Documents ???????????) in 2013 and 2015.

Simply refusing to allow an evidentiary hearing and the Court refusing to allow
Petitioner to have any ability nor chance to prove his actual innocence violates
Petitioner's right to be given the opportunity to meet the standards for a showing of
actual innocence before it can make any decision about this claim of actual
innocence on its merits. This Court must allow Brian to be given a full opportunity
to demonstrate actual innocence which includes evidentiary hearings, any new
mental evaluations/examinations, and to be given full access to the discovery
materials which Petitioner had failed during his FOIA lawsuit. Petitioner should be
given an opportunity to fully prove factual innocence before closing the 2255
Motion otherwise Petitioner is a victim of a continuous miscarriage of justice.

*"Supporting case law regarding colorable showing of actual innocence should be
allowed in a Habeas Corpus petition despite AEDPA's one-year statute of*

*limitations: See, e.g., Holloway v. Jones, 166 F. Supp. 2d 1185, 1190 (E.D. Mich. 2001) (finding that while petitioner failed to establish colorable showing of innocence, "to utilize the one year statute of limitations contained in the AEDPA to preclude a petitioner who can demonstrate that he or she is factually innocent of the crimes that he or she was convicted of would violate the Suspension Clause ... as well as the Eighth Amendment's ban on cruel and unusual punishment"); Barbour v. Haley, 145 F. Supp. 2d 1280, 1288 (M.D. Ala. 2001) (following Wyzykowski and concluding that "this court ... must give Barbour the opportunity to meet the standards for a showing of actual innocence before it can make any decision about this claim (of actual innocence) on the merits"); United States ex rel. Thomas v. Welborn, No. 00-C-2601, 2000 WL 1831548, at 3 (N.D. Ill. Dec. 13, 2000) (finding that while petitioner failed to establish colorable showing of innocence, "to close the gateway of the miscarriage of justice exception to petitioners who fail to timely file their petitions under 2244(d) would raise "serious constitutional questions.' ... Furthermore, it would create the possibility that an innocent person would remain incarcerated due to a constitutional violation, simply because he failed to overcome a procedural hurdle."); Neuendorfv. Graves, 110 F. Supp. 2d 1144, 1158 (N.D. Iowa 2000) (assuming, without deciding, that "sufficient showing of" actual innocence' would open the gateway to federal habeas corpus review, even if the petition in which the claim is asserted is otherwise untimely under the AEDPA"); United States v. Zuno-Arce, 25 F. Supp. 2d 1087, 1099-1102 (C.D. Cal. 1998) (finding that while petitioner failed to establish colorable showing of innocence, the court nevertheless "extends the miscarriage of justice gateway as a means of considering evidence and constitutional claims otherwise procedurally barred by the AEDPA's statute of limitations" because "foreclosing a claim of constitutional violation where there has been a colorable showing of actual innocence would likely constitute a due*

*process violation or an improper suspension of habeas corpus relief), affd, 209 F*
*.3d 1095 (9th Cir. 2000), amended, 245 F.3d 1108 (9th Cir.}, mandate stayed, 271*
*F.3d 953 (9th Cir. 2001); see also McLaughlin v. Moore, 152 F. Supp. 2d 123, 136*
*(D.N.H. 2001) (indicating that while it is likely that sufficient evidence of actual*
*innocence would provide a gateway through 2244( d)'s limitation period, thereby*
*permitting a successful petitioner to present untimely claims, "there is at least*
*some judicial authority suggesting that even if an actual innocence exception to*
*AEDP A's time limitation must necessarily be inferred, that exception is not*
*available to petitioners who fail to pursue their claims in a diligent manner")*
*(citing Workman v. Bell, 227 F.3d 331 (6th Cir. 2000) (en banc), cert. denied, 531*
*U.S. 1193 (2001)).*" – Dkt. 128, pages 46-48, paragraph 21.

**Petitioner's #17 objection to Page 20 (as noted below) for "g. The Merits":**

"Ground Two"

*"Next, Petitioner asserts a myriad of ineffective assistance of counsel claims.*
*(Docket Entry 125, Ground Two.) To prove ineffective assistance, a petitioner*
*must establish, first, that his attorney's performance fell below a reasonable*
*standard for defense attorneys and, second, that he was prejudiced as a result.*
*See Strickland v. Washington, 466 U.S. 668, 688, 691-92 (1984). A petitioner*
*bears the burden of affirmatively showing deficient performance. See Spencer v.*
*Murray, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, a petitioner*
*must show that there is a reasonable probability that, but for counsel's*
*unprofessional errors, the result of the proceeding would have been different.*
*Strickland, 466 U.S. at 694.Here, Petitioner has failed to demonstrate that any of*
*his attorneys at any point in the proceedings acted in an objectively*
*unreasonable manner, nor has he demonstrated any prejudice from any of the*
*errors he attributes to counsel. At sentencing, the Court granted counsel's motion*
*to depart downward from the 97 to 121-month advisory guidelines*
*calculation. (Docket Entry 117 at 5-7.) Petitioner was sentenced to ten months*
*and twenty days of imprisonment, which was essentially time served. (Id.at 8.) But*

60

*for council's effective advocacy, Petitioner likely would have spent up to ten years in federal prison. Petitioner satisfies neither Strickland element here."*

Has the Magistrate even read thoroughly through all of the pleadings?????????

The whole pro se filings in this case was riddled with claims that (1) Mr. Placke was ineffective, (2) Mr. Placke wouldn't fight to prove false confession, (3) Mr. Placke wouldn't bring up the download dates in the SBI report and neither would Mr. Placke verify whether each file of interest was indeed child pornography and was obscene material, (4) Mr. Placke didn't ask for a mental examination to investigate and evaluate Brian's false confession and how his Autism and OCD relates to it but only asked for a competency evaluation which was meaningless for his defense alone, (5) Mr. Placke wouldn't ask the Court to hire an private investigator or any investigator under the CJA Voucher process and no attempts were ever made on the record, (6) Mr. Placke never fought for reasonable bond conditions and so Brian had stayed in jail until after he had falsely plead guilty and accepted responsibility like a good slave, like a good boy for the Globalists, (7) Mr. Placke never fought to demonstrate to the Court that his health was deteriorating and that having reasonable bond conditions and being allowed to use the telephone would protect his health, (8) and Mr. Placke never asked for a computer forensic examination to create a defense for Brian. Mr. Placke was ineffective and Brian had clearly demonstrated how ineffective Mr. Placke was. Why does the Federal Judges in the Federal Courts in Greensboro, Winston-Salem, and Durham all want to defend Eric David Placke so much??????????????? What makes Mr. Placke so special that it warrants defending Mr. Placke as if he were god and everything Mr. Placke does is correct, presumed constitutional and is free of any error?

**Petitioner's #18 objection to Page 21 (as noted below) for "g. The Merits":**

"Ground Three"

*"Third, Petitioner asserts due process violations during the pre-trial process of his criminal case. (Docket Entry 125, Ground Three.) For example, Petitioner asserts that he was not given full access to his discovery materials until January 22, 2015, which was after final judgment was entered in this case. (Id.) Petitioner asserts that he was "angry" and "furious" by this "swindle[ ]"and so he" filed a bunch of pro se motions with evidence, even though none of those had any statutory basis."(Id.) It is unclear whether this is a claim for prosecutorial misconduct, ineffective assistance of counsel, or both. Regardless, this ground fails. "When asserting a prosecutorial misconduct claim, a defendant bears the burden of showing (1) that the prosecutors engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." United States v. Alerre, 430 F.3d 681, 689 (4th Cir. 2005). Petitioner has satisfied neither element here. Beyond this, to the extent this is another assertion of ineffective assistance of counsel, it fails for want of prejudice. Petitioner pled guilty after a comprehensive Rule 11 hearing where he knowingly and voluntarily admitted that he was, in fact, guilty. Nothing Petitioner has pointed to meaningfully undermines his guilty plea. Petitioner has failed to demonstrate that he received ineffective assistance of counsel, or that he was deprived of due process, or that any of the errors he asserts somehow deprived him of fair criminal proceedings or prejudiced him."*

Petitioner "asserts that he was not given full access to his discovery materials until January 22, 2015, which was after final judgment was entered in this case..." and that is not a due process violation?????????

These rights were secured by the U.S. Supreme Court under Brady v. Maryland, 373 U.S. 83 (1963) ("Brady"), and Giglio v. United States, 405 U.S. 150 (1972) ("Giglio").

What is the point of having counsel if counsel will not allow the client to review over all discovery material to see if the client may have any ideas as to help aiding in a good defense?

When prosecutors fail to disclose Brady Material they are depriving a criminal defendant of due process. So when the defense attorney does not review over all

discovery material with the client then does that even constitute ineffective counsel and deprivation of Brady rights?

There is no reason for the United States courts to even have due process warranted Brady rights and rights under Giglio, when defense attorneys do not legally have to go over all such material with their clients. It is ineffective counsel and deprives a criminal defendant of due process. It deprives a criminal defendant of fair and impartial access to the adversarial system, as the criminal defendant will not know of what could be brought up at the jury trial or bench trial. It allows frauds upon the court to be freely, secretly, and openly be brought up against the target of the fraud as they do not have the means to be able to make a valid defense or fight back. It creates a trial by ambush by a traitor in the defense legal team, a Benedict Arnold of the legal system. Historically Benedict Arnold *"was an American military officer who served as a general during the American Revolutionary War, fighting for the American Continental Army before defecting to the British in 1780. George Washington had given him his fullest trust and placed him in command of the fortifications at West Point, New York."* Benedict Arnold served both sides at Saratoga. Benedict Arnold was a traitor and ally to President George Washington. So it allows defense attorneys to play as Benedict Arnolds in our legal system, and that defense attorneys do not have to protect the constitutional rights of their clients, and do not have to exercise the rights of their clients. What point is there to even have a court appointed lawyer if they will not fight for you? What is the point of the adversarial system if the court appointed lawyer helps the Government win every case by depriving their clients of due process rights and equal access to due process?

63

Petitioner has no need to explain over and over again how his guilty plea is not valid, that was explained in the objections: Petitioner's #8 objection, Petitioner's #2 objection, and in Petitioner's #15 objection.

Petitioner is supposed to be represented by these court appointed lawyers, it doesn't matter whether they are paid by the Government or by private fundraising. A lawyer, constitutionally, is supposed to represent their clients to the best of their abilities. Brian's many pro se filings are signs of ineffective counsel. No independent computer forensic report, No psychological evaluation into the matter of false confession, No private investigator, no defense at all when there clearly could have been. It sounds like ineffective counsel was already demonstrated long ago.

**Petitioner's #19 objection to Page 21 (as noted below) for "g. The Merits":**

"Ground Four"

*"Finally, Petitioner asserts prosecutorial misconduct. (Id., Ground Four.) In making this argument he references Brady v. Maryland. (Id.) In Brady v. Maryland, 373 U.S. 83, 87 (1963), and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Kyles v. Whitley, 514 U.S. 419, 432 (1995) (citation omitted); see also Giglio v. United States, 405 U.S. 150, 154-55 (1972). As such, a Brady violation occurs if evidence is (1) favorable to the accused (either exculpatory or impeaching), (2) suppressed by the prosecution (willfully or inadvertently), and (3) material (prejudicial). Banks v. Dretke, 540 U.S. 668, 691 (2004); see also Monroe v. Angel one, 323 F.3d 286, 299-300 (4th Cir. 2003) (citation omitted).Here, Petitioner again mentions the criminal discovery he apparently tried to gather in a FOIA request. (Docket Entry 125, Ground Four.) Nothing about this information appears favorable to him. Nor does it appear to have been suppressed by the Government. Nor does it appear material in any way that might aid his efforts. Beyond this, Petitioner has failed to prove that the prosecution acted improperly, nor has he demonstrated that the errors he attributes to the prosecution somehow*

64

*prejudiced him. See Alerre, 430 F.3d at689. This claim is also without merit. All of Petitioner's grounds for relief are without merit. They should all be dismissed as time-barred or denied."*

So the Court expects Brian to have access to his discovery evidence material and all evidence in his case to even attempt to make a valid defense or claim of innocence but then considers it okay that the prosecution does not have to turn over copies of the material that is necessary to prove Petitioner's actual innocence.

 Prosecutorial misconduct is proven, that he had violated N.C. State Bar Rule 3.8 (Supplement 1, NC State Bar rules, "Rule 3.8 Special Responsibilities of a Prosecutor", Adopted by the Supreme Court: July 24, 1997), however Petitioner has no legal means to sanction Anand Prakash Ramaswamy through the state bar because it has to be done through the Office of Professional Responsibility of the United States Department of Justice, and they all protect their own people, they look out for their own which is wrong for our democratic and republican form of government. However if N.C. State Bar Rule 3.8 was enforced against AUSA Ramaswamy and a bar investigation was conducted through an impartial process, they would find that AUSA Ramaswamy had violated Rule 3.8 because he doesn't want to turn over copies of any evidence that is favorable to Petitioner Brian David Hill in proving his actual innocence. At the time back in 2013 to 2016, the U.S. Department of Justice was filled with corruption and protectionism of that corruption. Thanks to the President Donald John Trump and his appointment of Attorney General William Barr, they have cleaned out a good portion of that corruption inside the Department of Justice, and soon will actually be a legitimate Department of Justice again making sure that laws are followed as it should be. Now the Department of Justice may be able to start holding people accountable in the Federal Government, when it wasn't able to previously because of that

corruption and protectionism within that agency that protected Anand Prakash Ramaswamy and his law-breaking and rule-breaking conduct.

**Petitioner's #20 objection to Page 23 (as noted below) for "Motion for Requesting Psychological/Psychiatric Evaluation":**

"*Petitioner has filed a motion seeking a psychological or psychiatric evaluation to establish his innocence of his criminal conviction. (Docket Entry 151.) Petitioner was recently deemed competent. (Docket Entry 176, Attach. 1.) Petitioner has failed to provide good cause as to why an additional exam is warranted. This motion should be denied.*"

Does actual innocence actually require that the only mental evaluations to establish actual innocence is a competency evaluation?

Petitioner had stated in that motion that the mental examination was needed for the element of Brian's "confession" and to determine whether Brian was really delusional or not. If Brian wasn't given a valid diagnosis, then that is a fraud upon the court. A mental examination would be beneficial in providing an expert opinion to the court as to Brian's false confession. Since Brian was never able to have entire access to the discovery material, he could not demonstrate in both mental evaluations previously that he gave confession statements that can be proven not truthful, not factual, and not based on fact. False confession statements is proof of innocence, because it is not a credible and not a competent admission of guilt. Innocent people do falsely confess to crimes they did not do, that is human nature. However those with mental defects are at greater risk of giving false confessions. It seems wrong for Federal Courts to be severely limiting mental evaluations/examinations ONLY to the context of competency and sanity. It would make more sense for Federal Courts to consider mental/psychological issues in regards to statements made during an interview or interrogation or both. The

psychological examination request was documented as Brian was upfront and honest with what he had wanted the psychological examination for.

**See Supplement 2 — Document #151, Attachment #2:**

For example Factor 1, Page 4: *"Psychological factors of False confession, misleading statements, and false guilty plea. That Petitioner will file motion requesting that the "discovery material" of the criminal case be used in the evaluation to determine the psychological reasoning behind giving false confession statements which include but not limited to giving statements that do not match the forensic report by the N.C. State Bureau of Investigation. Psychological factors such as whether there was any coercion that lead up to the false confession whether the false confession is determined by the evaluator and whether Autism Spectrum Disorder ("ASD") and Obsessive Compulsive Disorder ("OCD") played any role in such false confession Then the evaluator can also make a determination on Petitioner's unintellectual and involuntariness of making a false guilty plea on the day of the jury trial Whether such guilty plea was made correctly due to the circumstances and the psychological elements of Petitioner's ASD and OCD."*

This evaluation would have an impact on Petitioner's false guilty plea under Rule 11, and make an impact on Petitioner's [false] confession. It would have an impact on Petitioner's facts of actual innocence and ensure that Petitioner's claims may actually have merit after all.

Denying this motion will be a mistake and will further deprive Petitioner of proving his actual innocence. Good cause had been shown and the evaluation request was specifically over matters concerning Petitioner's actual innocence, his false confession, and false guilty plea. A mental examination will be beneficial to the court in determining Petitioner's actual innocence. To deprive Petitioner of this examination is to permanently label the Petitioner as to having "delusional disorder" and to permanently bar him from ever proving a false confession from

the mental expert standpoint, and would make it more difficult the Petitioner from being able to establish any facts of false guilty plea and false confession.

As brought up in case law authorities under Dkt. 128, pages 46-48, paragraph 21, Petitioner clearly has a right to such mental examination/evaluation to demonstrate any facts of showing actual innocence, and that the Court foreclosing on giving Petitioner any opportunity to demonstrate his actual innocence would create a miscarriage of justice and make it highly likely that the District Court would convict an innocent person once again. Petitioner is entitled to the Criminal Justice Act vouchers and is entitled to a mental evaluation/examination to examine an issue not previously examined/evaluated by either past evaluations under Document #17 and Document #23. No past mental examination had ever been conducted into Petitioner's actual innocence and neither of a defense of false confession. A false confession is an affirmative defense to an allegation that Brian David Hill had confessed to knowingly possessing child pornography. When a confession is false and the Petitioner is not given an opportunity bv the Court to demonstrate by expert witness testimony that he did give a false confession and that his mental illnesses and defects had played a role in the false confession and unreliable confession on its merits, then Petitioner is deprived of all opportunity to demonstrate his actual innocence before foreclosing the gateway on the miscarriage of justice and wrongfully/illegally suspending his Writ of Habeas Corpus. He is at least entitled to have all resources and means afforded by this Court under the Criminal Justice Act to prove his actual innocence. He is entitled to both an evidentiary hearing and a mental examination to help aid in proving the fact of false confession. The mental examination would also help explain psychological factors in Brian's false guilty plea as well. It would create a good evidential barrier against the stigmatization that Brian David Hill had wrongfully

68

suffered with that created an inherit prejudice against him. It would explain why Brian should not be held culpable for his false guilty plea entered on June 10, 2015. Expert witnesses help in a lot of ways to establish facts and aid in Petitioner's actual innocence claims. To deny this motion for a new mental examination to address an issue not previously and fully addressed by the last two mental examinations (Document #17 and Document #23) would deprive Petitioner of his opportunity to meet the standard of the merits of actual innocence. Petitioner should have a right under due process and under the Constitution to demonstrate his merits of actual innocence. Since Petitioner cannot get access to all of his discovery material prior to filing his 2255 Motion, Petitioner should again be entitled to an evidentiary hearing to again get access to all discovery materials, the very same discovery materials once obtained by Eric David Placke back in 2014, and use that material to demonstrate that he can establish the facts of actual innocence and can be shown that it does indeed have merit.

**Petitioner's #21 objection to Page 23 (as noted below) for "Motions to Appoint Counsel":**

*"Petitioner seeks the appointment of counsel as well as an evidentiary hearing. (Docket Entries 153 and 169.)  He has failed to set forth good cause for why counsel should be appointed here or why a hearing is warranted.  These motions will be denied."*

Document #169 directed to the Hon. Magistrate Judge Joe Webster stated a good cause such as a *"Fraud Upon the Court", under "Chambers v. Nasco, INC, 501 US 32, 115 L. ED 2d 27, 111 S Ct 2123 (1991), Courts §18 "inherent or implied powers", as well as Courts §225.1; Equity §47 "power to vacate fraudulent judgment", "this Court has an inherent power to investigate a fraud upon the Court and to vacate an earlier judgment upon proof of such fraud."*

69

Refusing to have an evidentiary hearing over the matter of "fraud upon the court" which is not subject to a statutory time bar or even procedural time bar is insane and is permitting the frauds and abuses upon the Court. This power is an inherit power. Petitioner is bringing up "fraud upon the court" in the 2255 case because it meets the elements all along as Petitioner had shown evidence of the fraud but just didn't think to use the legal terminology of "fraud upon the court". Any time Petitioner has attempted to disprove the Government's\Respondent's factual basis elements of guilt, Petitioner had actually asserted that the Government had perpetuated a fraud upon the court, and that is not subject to time bar, and should have been investigated to protect the integrity and honesty of the Federal Courts. Failing to protect the Federal Court from lies and misinformation will create a public distrust of the Federal Courts and may lead to anarchy, maybe even civil war. As the general public may outcry, where there is no justice, there is no peace.

**Petitioner's #22 objection to Page 23 (as noted below) for "Petitioner Asks Court to Continue Supervised Release":**

"Petitioner seeks leave to remain on supervised release. (Docket Entry 154.) After this motion was filed, Petitioner's supervised release was revoked. (Docket Entry 200.) This motion should be denied as moot."

The Petitioner's supervised release may have been revoked under Document #200, however Petitioner had timely filed the appeal on the day of the oral judgment under Document #190, and an Amended Notice of Appeal under Document #205 to include the Doc. #200 written judgment that was filed on October 7, 2019, after the Writ of Mandamus was filed by Petitioner as cited in Document #196 acknowledging docketing of the "Writ of Mandamus". The appeal has a good chance of overturning the revocation, so the motion is not moot, unless the Court of Appeals nullifies the Document #157 Petition for revocation. If the Court of

Appeals considers that Petitioner never violated his conditions as charged under Document #157, then that motion is moot and Petitioner doesn't require the relief requested in Document #154.

**Petitioner's #23 objection to Page 25 (as noted below) for "Motion for Pre-Filing Injunction":**

*"In its response to Petitioner's request to file additional evidence, the Government requested a pre-filing injunction. (Docket Entry 148.) More specifically, the Government requests "a permanent pre-filing injunction barring [Petitioner] from filing any future motions, however captioned, that are directly or indirectly related to the above-captioned matters in any court, whether state or federal, without leave of this Court."(Docket Entry 149 at 2.)Although entitled a motion, this pleading is not docketed as such. Regardless, the undersigned recommends that it be denied.8 The All Writs Act, 28 U.S.C. § 1651, authorizes district courts to issue pre-filing injunctions to restrict access to the courts by "vexatious and repetitive litigants." Cromer, v. Kraft Foods N. Am., Inc., 390 F.3d 812, 817 (4th Cir. 2004). "In determining whether a pre-filing injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." Cromer, 90 F.3d at 818. Such a drastic remedy should be used "sparingly." Id.at 817. "[E]ven if a judge, after weighing the relevant factors, properly determines that a litigant's abusive conduct merits a pre-filing injunction, the judge must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." Id. The undersigned has considered the four Cromer factors above and concludes that, at present, they do not tip in favor of an injunction, especially where the Government itself admits that "there has been no judicial finding in the above-captioned matter that Petitioner's prior filings were 'frivolous.'" (Docket Entry 149 at 8.) In reaching this conclusion, the Court has considered the totality of the circumstances, including (but not limited to) Plaintiff's mental health. Nevertheless, a lesser remedy here does seem in order. More specifically, Petitioner's pleadings are unnecessarily voluminous, at times uncivil and, beyond this, Petitioner himself has admitted that he has previously filed baseless pleadings*

*in a fit of anger. (Docket Entry 125, Ground Three.) In light of this, instead of the drastic remedy of a permanent injunction, the undersigned recommends warning Petitioner that his pro se status does not entitle him to avoid the Rules Governing Section 2255 Proceedings and the Local Rules of this Court, which will be enforced. All filings and matters before the Court must be well grounded in fact and law and must also be presented in a civil manner. Pleadings should also be succinct. Failure to abide by these requirements will result in more drastic measures."*

Petitioner wants to make a note that a majority of the meritless motions Petitioner admitted to have filed which were one of the elements of the Government's "Pre-Filing Injunction" Motion, were all filed while Petitioner was in maximum security, incarcerated, where Petitioner has a severely limited access to or even no access to a law library at all.

For example, Martinsville City Jail does not have a law library, so Documents #154, and #165 could not have been filed possibly under any legal merit because Petitioner has no access to a law library and no law library is at that detention facility.

Also Petitioner shouldn't be punished for his pro se filings when the intent of Petitioner is not to defraud the Court, but only to seek justice. Petitioner has done better at following the rules of the Court when he is not in a detention facility. Petitioner has not lied to the Court (*even in the context of the false guilty plea because circumstances and deprivation of his right to effective counsel had* caused it, Petitioner being misinformed and not knowing what evidence the Government had planned to use for the jury trial). Petitioner has not attempted to deceive the Court. Petitioner has been up front about any evidence he believed would help demonstrate his innocence.

It is a fact that many of Petitioner's meritless, even considered frivolous motions were filed while Petitioner was in the County Detention Centers where they are

more opt to save money and it is more difficult for inmates in County Detention Centers to get access to a law library and have to go through usually strict approval processes by the officers. In Federal Prisons, it is easier to access law libraries unless the Prison is under a lockdown or emergency.

Petitioner however does agree with the Magistrate that *"they do not tip in favor of an injunction"*, because Petitioner can prove that most of the meritless filings were while Petitioner was in a County Jail or facility where it is more difficult or almost impossible to get access to a law library and get access to the Federal Rules of the Court, which differs in Federal Prisons as the State detention facilities try to save money as they don't have the same resources as the Federal Government does.

Petitioner does not object to denying the Government's motion for a pre-filing injunction and is not injured in this denial. Petitioner only wants to object to any reasoning that may show that Petitioner had any intent to file meritless and frivolous things with showing a good excusable reason why these filings had no legal merit.

For example the meritless motions listed below were all sent from County Detention Centers where getting access to a law library is extremely difficult or even almost impossible:

1. Envelope — Document #34, Attachment #2 – Guilford County Jail
2. Motion for Miscellaneous Relief — Document #35 – No envelope docketed but assumed that it came from Guilford County Detention Center
3. Motion for Miscellaneous Relief — Document #36 – No envelope docketed but assumed that it came from Guilford County Detention Center
4. Envelope — Document #37, Attachment #1 - Guilford County Jail

73

5. Envelope — Document #38, Attachment #1 - Guilford County Jail

6. Envelope — Document #39, Attachment #1 - Guilford County Jail

7. Envelope — Document #40, Attachment #1 - Guilford County Jail

8. Envelope — Document #41, Attachment #1 - Guilford County Jail

9. Envelope — Document #42, Attachment #1 - Guilford County Jail

10. Envelope — Document #43, Attachment #1 - Guilford County Jail

11. Envelope — Document #44, Attachment #1 - Guilford County Jail

12. Envelope — Document #45, Attachment #1 - Guilford County Jail

13. Envelope — Document #49, Attachment #1 - Orange County Jail

14. Envelope — Document #50, Attachment #1 - Orange County Jail

15. Envelope — Document #51, Attachment #1 - Orange County Jail

Orange County Detention Center in Hillsborough, North Carolina, even though contracted by the United States Marshals Service to hold federal prisoners, it does not have a federal law library and their only law library consists of the North Carolina General Statutes book. There is no known Federal Court rules material for inmates in Orange County Detention Center.

Petitioner has demonstrated that he had no intent to abuse the filing system. Petitioner's first time ever being charged with a federal crime and it takes a lot of time for Petitioner to learn the proper ways to follow rules and follow procedures the right way. Petitioner isn't a lawyer and Petitioner isn't an officer of the Court.

**Petitioner's #24 objection to the final conclusion:**

Petitioner objects to the "conclusion" of the Magistrate. Petitioner clearly has a due process right to be given the opportunity to demonstrate facts and merits of his actual innocence claim before being foreclosed upon. The Court should not deprive

74

Petitioner of such opportunity. Filing motions and pleadings is not entirely an opportunity as Petitioner should have been given access to the full discovery materials that was first obtained by Mr. Placke. Petitioner should be entitled to an evidentiary hearing, a right to discovery materials to fully show the contradictions, to have a mental examination on the basis of establishing merits of false confession which is a defense to Brian's guilty confession on August 29, 2012. An affirmative defense or even simply a defense, Brian's false confession is a defense to his admission of guilt and should be examined before the Court considers foreclosing Brian's actual innocence claim altogether. The U.S. Attorney office did not respond to Brian's first motion for sanctions asking to overturn a fraudulent begotten judgment which would be considered a VOID judgment, null and void. Again citing Document #199, *"MOTION entitled "Motion for Sanctions and to Vacate Judgment in Plaintiff's/Respondent's Favor" "Motion and Brief/Memorandum of Law in Support of Requesting the Honorable Court in this case Vacate Fraudulent Begotten Judgment or Judgments" filed by BRIAN DAVID HILL. **Response to Motion due by 10/25/2019**."* No responses have been made by October 25, 2019 which landed on a Friday. Even if the Court were to consider the U.S. Attorney's response timely filed in the event that they had filed their response on a Monday which would be October 28, 2019, they did not file a response on that date either. When the Respondent aka the U.S. Attorney Office files no response to allegations against them in regards to a "fraud upon the court", then they do not object to such allegations, that such allegations were never defamatory as they had attempted to once claim in their motion for pre-filing injunction, and the allegations may be proven true on its face and thus demonstrates invalid judgments were ever entered against Petitioner and gave Petitioner a clear cut miscarriage of justice in the judgment(s) against Petitioner. Despite the AEDPA's one-year statute of limitations, Petitioner is clearly entitled to relief for actual

innocence and for any frauds upon the court that he is a victim of. Any frauds perpetuated by the United States that were proven true further opens up Petitioner's 2255 Motion to open a gateway exception to the statute of limitations. If the Respondent engages in any frauds concerning the guilt of Petitioner, then the AEDPA should not be barring Petitioner from relief as that proves facts of actual innocence, and such frauds would be considered newly discovered evidence that could not have been brought up previously. Besides, the Motion for Sanctions is based on the Court's inherit power and not based on the statute which is subject to time-bar. Whether the Court considers the Motion for Sanctions as part of the 2255 motion or not, the fraud upon the court allegations and case law is not subject to a time-bar and can be collaterally attacked on its face. Fraud upon the court and actual innocence go hand-and-hand because any proven frauds by the adversary party that were of the guilt wash away any facts of the guilt and create a barrier of actual innocence against the frauds that were perpetuated against the Petitioner in Respondent's means as a way to win a case by whatever means necessary even if such means are unlawful. In fact Petitioner clearly has the right to argue that Respondent may have no merits at all as the Respondent is an officer or officers of the court and are under strict rule following guidelines. Respondent is not proceeding pro se and they are obliged to be honest, truthful, and not engage in any frauds against Petitioner by using the judicial machinery to create a compromised judiciary that will be partial and wrongfully punish the adverse party of Respondent. If Petitioner had caught them multiple times using perjury and false facts of guilt, then Petitioner has the right to argue that they had no merits all along and thus the final judgment of conviction (Dkt. 54) is not a final judgment and that not allowing Petitioner to collaterally attack the conviction and any other invalid judgments on the basis of fraud and due process deprivations creates another miscarriage of justice and proves on the record that the Middle District of North

76

Carolina federal courts no longer hold integrity that they allow lies and frauds by the officers of their respective court which are licensed attorneys subject to the State Bar Rules, as well as all laws of the land. Petitioner has a right to relief one way or another. Even if the 2255 Motion is untimely, the fraud upon the court is a separate matter which entitles Petitioner to relief from any invalid/void judgments on the record in this case.

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") was never meant to suspend Habeas Corpus for all federal crimes. In fact Petitioner may plan on asking law professors to engage in suing the Federal Government to nullify the AEDPA statute of limitations altogether or limit them to only cases of terrorism and rebellion since the Constitution clearly states: "*The Privilege of the Writ of Habeas Corpus shall not be suspended unless when in Cases of Rebellion or Invasion the public Safety may require it*." (The Suspension Clause of the Constitution (Article I, Section 9, Clause 2)). It never said that it should be suspended for charges of all federal crimes, but that "unless in Cases of Rebellion or Invasion the public Safety may require it". Petitioner has never been accused of engaging in a rebellion against the United States, and has never engaged in acts of invasion against the United States. Petitioner plans on challenging whether the founding fathers of the United States of America historically gave Congress the power to suspend the Writ of Habeas Corpus for all federal offenses/crimes or whether the suspension should have been narrowed down to only cases of terrorism, rebellion, and invasion. For the Federal Government to retroactively use an anti-terrorism law against all federal prisoners regardless of their charges doesn't sound constitutional and may have given power and authority to Congress that it never did have authority of to begin with. The AEDPA law should be subject to only terrorism cases and in cases of rebels (enemy combatants).

Petitioner will push for this change in the Supreme Court if possible with non-globalists being appointed as justices for the U.S. Supreme Court, now may be the time to finally fix the wrongs of the AEDPA law that Bill Clinton had passed into law, Bill Clinton was one of the globalists of the New World Order along with George W. Bush and Herbert Walker Bush. This is no longer the era of globalism according to current United States President Donald John Trump. The New World Order is OVER. Now is the time to fix the corrupt laws in place that the globalists had placed into power. Petitioner will also consider asking Donald Trump to pass an executive order ending the unconstitutional suspension of Habeas Corpus by limiting the one-year statute of limitations to only cases of terrorism, rebellion, and illegal invasion. The Constitution clearly states that Habeas Corpus shall not be suspended unless in cases of rebellion (enemy combatants) or invasion that the public safety may require it, and that makes sense as with rebels and invaders Habeas Corpus could get in the way of protecting the United States from rebellion or invasion. Habeas Corpus was never meant to be suspended for just general federal offenses, even sex offenses, because it opens the door to great miscarriages of justice in the highest level of the judicial system, the federal courts. Can lead to innocent people being thrown on the sex offender registry and to be treated as second class citizens and doesn't have the right to vote and doesn't have the right to participate in the very Government they pay taxes to. U.S. Attorneys should not be working hard to convict innocent people and fighting so hard against those trying to prove actual innocence as that clearly violates N.C. State Bar Rule 3.8.

Since Respondent did not have anything to say or object to in regards to the first "Motion for Sanctions" Dkt. 199, Petitioner is entitled to relief by granting of that first motion and undoing the damage caused by the first Supervised Release Violation judgment. That first fraudulent judgment was used against Petitioner in

Document #157, Document #156, and Document #158. That fraudulent judgment had prejudiced the Petitioner and was used against him in any future charges against Petitioner. So that will now affect all future judgments and decisions from the first fraudulently begotten judgment caused by Respondent. The Supervised Release Violation that was used in part of ruling against Petitioner's actual innocence is VOID and is a fraudulent begotten judgment which cannot be sustained as a valid judgment. The U.S. Probation Office had engaged in a fraud upon the court and should not be given leeway to repeatedly punish and sanction Petitioner as if he had deserved what he had gotten. That does not include Jason McMurray of Roanoke, Virginia. Jason McMurray did not have any intent to engage in any frauds. The frauds came directly from Supervisory Officer Edward R. Cameron who Jason McMurray has to report to regarding Brian's supervision. Edward Cameron and the U.S. Attorney Office aka the Respondent have both deceived the Court and such frauds have created voidable judgements. The 9 months of imprisonment is clearly illegal and no non-corrupt U.S. Marshals should ever enforce a void judgment. The Supreme Court or a higher Court should get involved in prohibiting this Court from enforcing any void judgments from here on out. Petitioner knows how to file a Writ of Mandamus. Petitioner knows how to file these kinds of Writs in higher court. In fact Petitioner had received the very relief requested in Appeal no. 19-2077, so it was dismissed as moot at the request of Petitioner, so Petitioner's Writ was not frivolous. Petitioner has the right at any time to file a Writ of Mandamus asking a higher court to ask the lower Court not to entertain fraudulent judgements in any favor of the Respondent. Writs of Prohibition can be used as a tool to prevent enforcement of void judgments. Petitioner requests that any fraudulent begotten judgments that was proven by Petitioner must cease enforcement and cease any usage of that against Petitioner

cumulatively in any future rulings against Petitioner, and any void judgments shall not have the consequences of a valid judgment.

## Attached evidence

Supplements by Petitioner in SUPPORT of all objections to the Magistrate. These supplements are for all objections filed and apply to all objections by Petitioner.

1. Supplement 1: NC State Bar rules, "Rule 3.8 Special Responsibilities of a Prosecutor", Adopted by the Supreme Court: July 24, 1997 – Total of 5 pages

2. Supplement 2: SUPPLEMENT IN SUPPORT OF "PETITIONER'S OBJECTIONS TO "ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE" (Dkt. #210)" -- Supplement of Fraud upon the court by Witness, Investigator & Brian's legal assistant:   Stella Forinash – 21 pages

3. Supplement 3: SUPPLEMENT IN SUPPORT OF "PETITIONER'S OBJECTIONS TO "ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE" (Dkt. #210)" -- Supplement about Brian's 2255 Motion by Witness, Investigator & Brian's legal assistant Stella Forinash – 24 pages

50 pages total of Supplements.

## END OF OBJECTIONS

Petitioner also requests that the Court set aside the recommendations at least until all issues of "Fraud Upon the Court" that Petitioner had claimed are addressed in this case.

WHEREFORE, Petitioner requests that the Court not make a final decision/determination on the 2255 case until a decision had been made on the issues of "fraud upon the court" in Document #199 "MOTION entitled "Motion for Sanctions and to Vacate Judgment in Plaintiff's/Respondent's Favor" "Motion and Brief/Memorandum of Law in Support of Requesting the Honorable Court in this case Vacate Fraudulent Begotten Judgment or Judgments" filed by BRIAN DAVID HILL. Response to Motion due by 10/25/2019. (Attachments: # (1) Supplement 1, # (2) Supplement 2, # (3) Exhibit 1, # (4) Exhibit 2, # (5) Envelope - Front and Back) (Civil Case number: 17CV1036) (Garland, Leah)";

WHEREFORE, Petitioner requests that the Court not make a final decision/determination on the 2255 case until a decision had been made on the issues of "fraud upon the court" in Document #206 "MOTION entitled "Petitioner's Second Motion for Sanctions and to Vacate Judgment that was in Plaintiff's/Respondent's Favor; Motion and Brief/Memorandum of Law in support of Requesting the Honorable Court in this case Vacate Fraudulent begotten Judgment or Judgments" filed by BRIAN DAVID HILL. Response to Motion due by 11/5/2019. (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Supplement 1, # (4) Supplement 2, # (5) Supplement 3, # (6) Supplement 4, # (7) Envelope - Front and Back) (Garland, Leah)";

WHEREFORE, Petitioner requests that pursuant to Fed. Rules of Crim. P. Rule 37(a)(1) the Court defer making a final decision/determination on the 2255 case until the final Appellate decision (See Document # 203) of the Document #198 order denying the "motion for recusal (Doc. [195])", "Document #195 MOTION entitled "Motion to Disqualify Judge" filed by BRIAN DAVID HILL. Responses due by 10/21/2019. (Attachments: # (1) Envelope - Front and Back) (Civil Case number: 17CV1036) (Garland, Leah)"; Petitioner requests that if the

Court of Appeals remands the District Court to recuse the Hon. Judge Thomas D. Schroeder, that the 2255 final decision not yet be decided until the higher court's decision on the Motion to Recuse;

WHEREFORE, Petitioner requests that the Dkt. 151 MOTION entitled "Petitioner's Motion for requesting Psychological/Psychiatric Evaluation to Determine actual Innocence factor under False Confession element and to resolve the controversy/conflict between Government and Petitioner over "Delusional Disorder" be granted;

WHEREFORE, Petitioner requests that he be given a full opportunity to demonstrate actual innocence on its merits including full access to the discovery materials again and an evidentiary hearing and not foreclose on the gateway of a miscarriage of justice as would be an improper suspension of habeas corpus;

WHEREFORE, Petitioner requests that he Court nullify the past void judgments entered against Petitioner and was used against Petitioner, and not enforce such void judgments and not use them against Petitioner

WHEREFORE, Petitioner requests any other relief that the Court seems as necessary and proper.

Respectfully submitted,

Brian D. Hill
Signed

Signed
Brian D. Hill (Pro Se)
310 Forest Street, Apartment 1
Martinsville, Virginia 24112
Phone #: (276) 790-3505



Former U.S.W.G.O. Alternative News reporter
I stand with QANON/Donald-Trump – Drain the Swamp
I ask Qanon and Donald John Trump for Assistance (S.O.S.)
Make America Great Again

Respectfully filed with the Court, this the 30th day of October, 2019.

Petitioner also requests with the Court that a copy of this pleading be served upon the Government as stated in 28 U.S.C. § 1915(d), that "The officers of the court shall issue and serve all process, and preform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases". Petitioner requests that copies be served with the U.S. Attorney office of Greensboro, NC via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

## CERTIFICATE OF SERVICE

Petitioner hereby certifies that on October 30, 2019, service was made by mailing the original of the foregoing:

"PETITIONER'S OBJECTIONS TO "ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE" (Dkt. #210)"

by deposit in the United States Post Office, in an envelope (certified mail), Postage prepaid, on October 30, 2019 addressed to the Clerk of the Court in the U.S. District Court, for the Middle District of North Carolina, 324 West Market Street, Greensboro, NC 27401.

Then pursuant to 28 U.S.C. §1915(d), Petitioner requests that the Clerk of the Court move to electronically file the foregoing using the CMIECF system which will send notification of such filing to the following parties to be served in this action:

| Anand Prakash Ramaswamy | Angela Hewlett Miller |
|---|---|
| U.S. Attorney Office | U.S. Attorney Office |
| Civil Case # 1:17 -cv-1036 | Civil Case # 1: 17 -cv-1036 |
| 101 South Edgeworth Street, 4th | 101 South Edgeworth Street, 4th |
| Floor, Greensboro, NC 27401 | Floor, Greensboro, NC 27401 |
| Anand.Ramaswamy@usdoj.gov | angela.miller@usdoj.gov |
| JOHN M. ALSUP | |
| U.S. Attorney Office | |
| 101 South Edgeworth Street, 4th | |
| Floor, Greensboro, NC 27401 | |
| john.alsup@usdoj.gov | |

This is pursuant to Petitioner's "In forma Pauperis" ("IFP") status, 28 U.S.C. §1915(d) that "The officers of the court shall issue and serve all process, and perform all duties in such cases ... "the Clerk shall serve process via CM/ECF to serve process with all parties.

| Date of signing:<br><br>*October 30, 2019* | Respectfully submitted,<br><br>*Brian D. Hill*<br>Signed<br>Signed<br>Brian D. Hill (Pro Se)<br>310 Forest Street, Apartment 1<br>Martinsville, Virginia 24112<br>Phone #: (276) 790-3505<br><br>**U.S.W.G.O.**<br><br>I stand with QANON/Donald-Trump – Drain the Swamp<br>I ask Qanon and Donald John Trump for Assistance (S.O.S.)<br>Make America Great Again |
|---|---|

I ask Department of Defense ("DOD") military Constitutional oath keepers, alliance, Qanon for help in protecting me from corruption and criminal behavior of Government.

Certified Mail tracking no: 7019-1120-0001-4751-4597

Friend's justice site: JusticeForUSWGO.wordpress.com

84

# Supplement 1

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Supplement in attachment to "PETITIONER'S OBJECTIONS TO "ORDER AND
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE" (Dkt. #210)"



FOLLOW US

Member Login    For Councilors   |   Directories   |   Forms   |   Adopted Opinions   |   Rules   |   Contact Us

Search



NORTH CAROLINA
STATE BAR

Home   ☐   For Lawyers   ☐   Ethics/Rules of Professional Conduct   ☐   Rules of Professional Conduct
   ☐   Rule 3.8 Special Responsibilities of a Prosecutor

# ADVOCATE

☐ Previous Rule

Next Rule ☐

## RULE 3.8 SPECIAL RESPONSIBILITIES OF A PROSECUTOR

The prosecutor in a criminal case shall:

(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;

(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;

(c) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;

(d) after reasonably diligent inquiry, make timely disclosure to the defense of all evidence or information required to be disclosed by applicable law, rules of procedure, or court opinions including all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal;

(e) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client, or participate in the application for the issuance of a search warrant to a lawyer for the seizure of information of a past or present client in connection with an investigation of someone other than the lawyer, unless:

   (1) the information sought is not protected from disclosure by any applicable privilege;

   (2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and

   (3) there is no other feasible alternative to obtain the information;

(f) except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused and exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 or this Rule.

(g) When a prosecutor knows of new, credible evidence or information creating a reasonable likelihood that a convicted defendant did not commit an offense for which the defendant was convicted, the prosecutor shall:

   (1) if the conviction was obtained in the prosecutor's jurisdiction, promptly disclose that evidence or information to (i) the defendant or defendant's counsel of record if any, and (ii) the North Carolina Office of Indigent Defense Services or, in the case of a federal conviction, the federal public defender for the jurisdiction; or

   (2) if the conviction was obtained in another jurisdiction, promptly disclose that evidence or information to the prosecutor's office in the jurisdiction of the conviction or to (i) the defendant or defendant's counsel of record if any, and (ii) the North Carolina Office of Indigent Defense Services or, in the case of a federal conviction, the federal public defender for the jurisdiction of conviction.

(h) A prosecutor who concludes in good faith that evidence or information is not subject to disclosure under paragraph (g) does not violate this rule even if the prosecutor's conclusion is subsequently determined to be erroneous.

## Comment

[1] A prosecutor has the responsibility of a minister of justice and not simply that of an advocate; the prosecutor's duty is to seek justice, not merely to convict or to uphold a conviction. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence. Precisely how far the prosecutor is required to go in this direction is a matter of debate and varies in different jurisdictions. See the ABA Standards of Criminal Justice Relating to the Prosecution Function. A systematic abuse of prosecutorial discretion could constitute a violation of Rule 8.4.

[2] The prosecutor represents the sovereign and, therefore, should use restraint in the discretionary exercise of government powers, such as in the selection of cases to prosecute. During trial, the prosecutor is not only an advocate, but he or she also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all. In our system of criminal justice, the accused is to be given the benefit of all reasonable doubt. With respect to evidence and witnesses, the prosecutor has responsibilities different from those of a lawyer in private practice; the prosecutor should make timely disclosure to the defense of available evidence known to him or her that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. Further, a prosecutor should not intentionally avoid pursuit of evidence merely because he or she believes it will damage the prosecutor's case or aid the accused.

[3] Paragraph (c) does not apply, however, to an accused appearing pro se with the approval of the tribunal. Nor does it forbid the lawful questioning of an uncharged suspect who has knowingly waived the rights to counsel and silence.

[4] Every prosecutor should be aware of the discovery requirements established by statutory law and case law. See, e.g., N.C. Gen. Stat. §15A-903 et. seq, Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. U.S., 405 U.S. 150 (1972); Kyles v. Whitley, 514 U.S. 419 (1995). The exception in paragraph (d) recognizes that a prosecutor may seek an appropriate protective order from the tribunal if disclosure of information to the defense could result in substantial harm to an individual or to the public interest.

[5] Paragraph (e) is intended to limit the issuance of lawyer subpoenas in grand jury and other criminal proceedings, and search warrants for client information, to those situations in which there is a genuine need to intrude into the client-lawyer relationship. The provision applies only when someone other than the lawyer is the target of a criminal investigation.

[6] Paragraph (f) supplements Rule 3.6, which prohibits extrajudicial statements that have a substantial likelihood of prejudicing an adjudicatory proceeding. In the context of a criminal prosecution, a prosecutor's extrajudicial statement can create the additional problem of increasing public condemnation of the accused. Although the announcement of an indictment, for example, will necessarily have severe consequences for the accused, a prosecutor can, and should, avoid comments which have no legitimate law enforcement purpose and have a substantial likelihood of increasing public opprobrium of the accused. Nothing in this Comment is intended to restrict the statements that a prosecutor may make which comply with Rule 3.6(b) or 3.6(c).

[7] Like other lawyers, prosecutors are subject to Rules 5.1 and 5.3, which relate to responsibilities regarding

lawyers and nonlawyers who work for or are associated with the lawyer's office. Paragraph (f) reminds the prosecutor of the importance of these obligations in connection with the unique dangers of improper extrajudicial statements in a criminal case. In addition, paragraph (f) requires a prosecutor to exercise reasonable care to prevent persons assisting or associated with the prosecutor from making improper extrajudicial statements, even when such persons are not under the direct supervision of the prosecutor. Ordinarily, the reasonable care standard will be satisfied if the prosecutor issues the appropriate cautions to law-enforcement personnel and other relevant individuals.

[8] When a prosecutor knows of new, credible evidence or information creating a reasonable likelihood that a defendant did not commit an offense for which the defendant was convicted in the prosecutor's district, paragraph (g)(1) requires prompt disclosure to the defendant. However, if disclosure will harm the defendant's interests or the integrity of the evidence or information, disclosure should be made to the defendant's lawyer if any. Disclosure must be made to North Carolina Indigent Defense Services (NCIDS) or, if appropriate, the federal public defender, under all circumstances regardless of whether disclosure is also made to the defendant or the defendant's lawyer. If there is a good faith basis for not disclosing the evidence or information to the defendant, disclosure to NCIDS or the federal public defender and to any counsel of record satisfies this rule. If the conviction was obtained in another jurisdiction, paragraph (g)(2) allows the prosecutor promptly to disclose the evidence or information to the prosecutor's office in the jurisdiction of conviction in lieu of any other disclosure. The prosecutor in the jurisdiction of the conviction then has an independent duty of disclosure under paragraph (g)(1). In lieu of disclosure to the prosecutor's office in the jurisdiction of conviction, paragraph (g)(2) requires disclosure to the defendant or to the defendant's lawyer, if any, and to NCIDS or, if appropriate, the federal public defender.

[9] The word "new" as used in paragraph (g) means evidence or information unknown to a trial prosecutor at the time of the conviction or, if known to a trial prosecutor at the time of the conviction, never previously disclosed to the defendant or defendant's legal counsel. When analyzing new evidence or information, the prosecutor must evaluate the substance of the information received, and not solely the credibility of the source, to determine whether the evidence or information creates a reasonable likelihood that the defendant did not commit the offense.

[10] Nevertheless, a prosecutor who receives evidence or information relative to a conviction may disclose that evidence or information as directed in paragraph (g)(1) and (2) without examination to determine whether it is new, credible, or creates a reasonable likelihood that a convicted defendant did not commit an offense. A prosecutor who receives evidence or information subject to disclosure under paragraph (g) does not have a duty to undertake further investigation to determine whether the defendant is in fact innocent.

[11] A prosecutor's independent judgment, made in good faith, that the new evidence or information is not of such nature as to trigger the obligations of paragraph (g), though subsequently determined to have been erroneous, does not constitute a violation of this Rule.

History Note: Statutory Authority G.S. 84-23

Adopted by the Supreme Court: July 24, 1997

Amendments Approved by the Supreme Court: March 1, 2003; November 16, 2006; March 16, 2017

## Ethics Opinion Notes

**RPC 129**. Opinion rules that prosecutors and defense attorneys may negotiate plea agreements in which appellate and postconviction rights are waived, except in regard to allegations of ineffective assistance of counsel or prosecutorial misconduct.

**RPC 152**. Opinion rules that the prosecutor and the defense attorney must see that all material terms of a negotiated plea are disclosed in response to direct questions concerning such matters when pleas are entered in open court.

**RPC 197**. Opinion rules that a prosecutor must notify defense counsel, jail officials, or other appropriate persons to avoid the unnecessary detention of a criminal defendant after the charges against the defendant have been dismissed by the prosecutor.

**RPC 204**. Opinion rules that it is prejudicial to the administration of justice for a prosecutor to offer special treatment to individuals charged with traffic offenses or minor crimes in exchange for a direct charitable contribution to the local school system.

**RPC 243**. Opinion rules that it is prejudicial to the administration of justice for a prosecutor to threaten to use his discretion to schedule a criminal trial to coerce a plea agreement from a criminal defendant.

**2011 Formal Ethics Opinion 16**. Opinion rules that a criminal defense lawyer accused of ineffective assistance of counsel by a former client may share confidential client information with prosecutors to help establish a defense to the claim so long as the lawyer reasonably believes a response is necessary and the response is narrowly tailored to respond to the allegations.

**2013 Formal Ethics Opinion 1** . Opinion rules that, subject to conditions, a prosecutor may enter into an agreement to consent to vacating a conviction upon the convicted person's release of civil claims against the prosecutor, law enforcement authorities, or other public officials or entities.

**2013 Formal Ethics Opinion 6** . Opinion rules that a state prosecutor does not violate the Rules of Professional Conduct by asking the court to enter an order for arrest when a defendant detained by ICE fails to appear in court on the defendant's scheduled court date.

## SEARCH RULES

**27 N.C.A.C. Chapter 2**

Select a Rule

# Supplement 2

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Supplement in attachment to "PETITIONER'S OBJECTIONS TO "ORDER AND
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE" (Dkt. #210)"

In the United States District Court
For the Middle District of North Carolina

| | | |
|---|---|---|
| **Brian David Hill,** | ) | |
| **Petitioner/Defendant** | ) | |
| | ) | **Criminal Action No. 1:13-CR-435-1** |
| **v.** | ) | |
| | ) | **Civil Action No. 1:17-CV-1036** |
| **United States of America,** | ) | |
| **Respondent/Plaintiff** | ) | |
| | ) | |
| | ) | |

# SUPPLEMENT IN SUPPORT OF "PETITIONER'S OBJECTIONS TO "ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE" (Dkt. #210)"

### Supplement of Fraud upon the court by Witness, Investigator & Brian's legal assistant: Stella Forinash

The fraud upon the court started when Brian was given his constitutional right to an attorney. The constitution doesn't state that this attorney has to be effective. He was only given half of the insulin prescribed by medical doctors most of the time he was in jail which was 11 months. He was moved to various jails which is hard for someone with autism and not allowed an autism or medical expert in court, not allowed any support for his 3 disabilities covered under the Americans with disabilities Act. On most court days, his glucose was high because he was not given any insulin until that evening. Since February, 1992 Brian had been given a fast acting insulin shot at each meal and an extra slow acting insulin shot to cover the 8 hours at night as well as an extra shot at times when he is upset, and his blood glucose swings high due to the fact that he is a brittle diabetic due to his autism and OCD routines. Brian kept telling his court appointed attorney that there was a virus on his laptop computer on the day of the police raid; that he was set up with child porn and gave a false confession due to his

1

autism when 2 police detectives from Mayodan, NC questioned him at lunchtime the day after the police raid as they ignored the Americans with Disabilities Act.

Mayodan, NC attorney is also the state of NC pro templar senator, Phil Berger Sr. His son, Phil Berger Jr was the District Attorney of Rockingham County, NC. This Robert Bridge is a brother to Phil Berger Jr.'s assistant district attorney, Melanie Bridge. Todd Brim works for the police chief of Mayodan, NC Chief Charles Caruso. Brian met Berger and Caruso at town hall meetings. They claim they find something downloading on Brian's computer on August 22, 2012 without a search warrant. Then after they get a search warrant and removed all computers and hard drives on August 28, 2012, they claim that child porn was downloaded from July 20, 2012 to July 27, 2012 (This was downloaded according to these police over 3 weeks before they hacked into Brian's computer without a search warrant.

Brian had upset Phil Berger Sr & Chief of police Charles Caruso at the Mayodan town hall meeting on July 9, 2012 and was writing bad articles about them so according to Phil Berger Sr's son's assistant who is the sister of Detective Bridge and the other detective who works under Police chief Caruso. Brian decided to download child porn 2 weeks later. These detectives are familiar with this child porn, yet the US government revealed in the Presentence Investigation Report in paragraph #13, Document #33, Filed 09/16/2014 page 6 of 26 that none of the children have been identified as part of a known series by the National Center for Missing and exploited Children. Knowing that Brian is disabled (brittle diabetes and autism) these 2 police question Brian alone at lunchtime without checking his glucose. Did 3 attorneys not see something strange here? Then it doesn't end here. According to the NC SBI report, there are 454 files of interest downloaded from July 20, 2012 until July 28, 2013 with the emule program. The Mayodan police got a confession from Brian. Was this a true confession or a false confession according to the NC SBI Discovery report? Brian told the police he had downloaded it for a year. July 20, 2012 until July 27, 2012 is one week, not one year according to the police.

According to the NC SBI report it was downloaded from July 20, 2012 until August 28, 2012 which was not a year. This was 5 weeks. The NC SBI report doesn't stop there. It was downloaded for another 11 months until July 28, 2013 while it was in the hands of the Mayodan Police and the NC State Bureau of investigations in Greensboro, NC. Now Brian's

2

confession is a false confession: One year does not equal one week or five weeks. Did Brian give any other confessions to the Mayodan police that was proved false in the NC SBI report?



Let's compare the Mayodan, NC police report with the NC SBI discovery report. Appears that the police report on #65 is talking about Brian's IP address and the date of July 20, 2012 – July 27, 2012 that 3 well known child porn are downloaded and Bridge is very familiar with these 3.

65. The IP address 24.148.156.211 was first logged in the CPS undercover system by the automated tools previously described on 07/20/2012 offering to participate in the distribution of child Pornography known to me. Between 07/20/2012 and 07/26/2012, the IP address 24.148.156.211 was logged, showing a continual pattern of child pornography, by the automated tools. That IP address was logged as offering to participate in the distribution of 3 files of known or suspected child pornography during that period of time. Of those 3 files logged your affiant has seen in prior investigation and can attest that he knows personally that 2 of them are indeed child pornography as defined by the North Carolina General Statutes. The other 1 are known by other officers participating in the undercover operation to be child pornography. The 2 that are known by your affiant can be described as follows:

He told the police that he had one netbook computer they didn't get at his house. He told them there was child porn in that. It was the last item on the inventory. The NC SBI report says there was no child porn in that computer. Brian's confessions were now proven to be false. Brian let the court know these facts in 2015 after he & his family saw the NC SBI report

3

together for the first time. Brian was given a copy of his Mayodan police report. The prosecuting attorneys (Rule 3.8) fought hard in Danville, VA federal court in 2017 to make sure that Brian did not get a copy of his NC SBI report. After Brian's 2nd court appointed attorney realized Brian was going to use this to prove he gave a false confession on August 29, 2012, he made sure Brian would never see the discovery again. We asked Mr. Coalter (2nd attorney) how much he would charge to help Brian with his 2255 Motion. This is a factual fraud on the court by the prosecution and 2 court appointed attorneys. There are many more frauds on the court that we can prove. Meanwhile an innocent man remains on the sex registry and is subject to prison where he is denied half of his insulin due to his autism behavior and communication disability where this NC court keeps criminalizing autism.



eMule Known.net  The Known.net saves all files eMule knows of whether they are shared files, files currently in the download list, or downloaded in the past. For every file, information like file size, file name, hash sets, hash values, and some statistics are saved. From the analysis, this record showed that 414 files had been downloaded with the eMule program between July 19, 2013, and July 28, 2013. This record also showed that files were shared with other users and the number of times each file was shared.

On the next page is where Brian was doing more research about what type of virus was on his computer. He learned more about the emule virus in April, 2013. He didn't see this report until January, 2015. Neither court appointed attorney showed it to Brian. The first one would not let Brian's family or friends see it either. The second attorney did show it to Brian's family. We didn't have time to read it, but Brian's mom asked about the netbook. We had a copy of the inventory with us. Brian's 2nd attorney checked the NC SBI report with the serial number: No child porn was on Brian's netbook computer. It was clearly on the Mayodan police confession tape where Brian told the police in the beginning that he was innocent and had a virus on his computer, Why didn't the prosecution attorney check into this? Why didn't the 2 court appointed attorneys bring out other court cases where people were found innocent due to a

4

computer virus? Brian and his family brought this out in Brian's 2255 Motion as proof documents. Both attorneys also ignored the threat emails Brian had received. Copies of these are in his 2255 Motion,

Emule virus type has infected people around the entire world including ...


https://www.youtube.com/watch?v=Xyy1wDioa_k
Apr 6, 2013 - Uploaded by USWGONetwork
... alternative news former founder Brian D. Hill. The **emule virus** has infected computers around the entire ...

**From: <johnsnatchz@tormail.org>**
**Date: Sun, Apr 7, 2013 at 5:30 AM**
**Subject: You better watch out........**
**To: admin@uswgo.com**

**You better watch out Brian...We are watching you...Having child porn planted on your hard drives and computer was only the beginning and we will set you up for violent sex crimes if you don't watch your back...Have fun becoming a sex offender...Police won't believe you no matter how much evidence you have that you been set up we know some people in the SBI who will make sure you are convicted. You will be shut up by being a sex criminal. Your friends Alex Jones, Dan, James, Sean, Alex, and others are next...BeWare!**

*First threatening email that I had received from tormail.org. Source: Federal Court Docket entry, U.S. District Court for the Middle District of North Carolina, Case 1:13-cr-00435-WO, Document 30, Filed 09/10/14, Page 3 of 5.*



Brian Hill <admin@uswgo.com>

### Your gonna get it

**sallysamsong@tormail.org** <sallysamsong@tormail.org>                    Sat, Apr 20, 2013 at 11:58 PM
To: admin@uswgo.com

Your gonna get it....We know what your tryin to do....You'll regret ever being an investigative news reporter....Youll regret what you just did....better watch your back Brian....DONT REPORT ANY MORE ARTICLES OR TALK TO ANY REPORTERS ABOUT THIS CHILD PORN VIRUS OR YOU GONNA GET IT

5

As you can see above the next day after Brian put that video on YouTube, he received a threat, and they admitted putting child porn on Brian's computer and threatened other alternative news people. They did make child porn attempts on these alternative news people and others. This email says that they knew people in the NC SBI (I believe they meant NC, and the court) as prosecuting attorneys and judges are ignoring Brian's proof documents of innocence and making sure that he stays on the sex registry and keeps going to prison just like these threats say as well as more threats in 2015 when Brian tried to appeal his case after reading the dates of download on the NC SBI report. All of these are on court record and being ignored by judges.

This court appointed attorney let Brian hear the police tape where he initially told the police that he had a computer virus and was innocent. The police told him that they had seen and liked his USWGO website and USWGO YouTube videos. It was lunch time. They didn't test Brian's blood glucose to see if he needed some glucose to think better. They didn't provide a family member or an autism expert to give Brian a fair chance, so he confessed, repeated what they said then after this he was allowed to eat some food after he and his mom left the police station. The police had Brian and his mom to sign a paper after they were interrogated. Brian's court appointed attorney showed him this and the part of the Mayodan police report where his confession was typed on the report. He was not shown any papers from the NC SBI report. This attorney would not let Brian's family or friends see any part of the discovery. Brian told him he was innocent. His family and friends told him the same. Brian's family and friends were willing to be witnesses for him in court. We found out later and submitted to this court proof documents that this attorney deleted all of the proof Brian's family submitted to him in emails.

He (attorney) was not prepared to go to court and told the court that. See **document Case 1:13-cr-00435-WO Document 18 Filed 06/04/14** Page 1 of 4. 1. The Defendant is charged with one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). 2. The Defendant was arraigned on January 2. 2014, pled not guilty and the case was assigned to the February 2014 Criminal Term. On motion of undersigned counsel, the Court ordered an examination under 18 U.S.C. §§ 4241(b) and 4242(a). The report of that examination was filed with the Court on May 8, 2014. The Defendant actually returned to the

6

Middle District of North Carolina on May 14, 2014. At a status conference earlier today, **the Court denied the Defendant's pro se motions to suppress, denied the Defendant's request for new counsel, and set the matter for trial on Monday, June 9, 2014.**

Case 1:13-cr-00435-WO Document 18 Filed 06/04/14 Page 1 of 4

Undersigned counsel and his wife are flying to Boston, Massachusetts, tomorrow morning, June 5, 2014, to attend their son's graduation from the Massachusetts Institute of Technology, and **are not scheduled to return until the evening of Sunday, June 8, 2014**. Accordingly, **undersigned counsel will be unable to consult further with the Defendant, explain and discuss today's rulings, and otherwise determine whether a trial is even necessary, before trial is now scheduled to begin.** The Defendant submits that failure to grant the requested continuance **would deny counsel for the Defendant the reasonable time necessary for effective preparation,** taking into account both **the exercise of due diligence and the Defendant's condition**, as detailed in the report filed with the Court on May 8, 2014, that the ends of justice are best served by granting this continuance, and that they 1 **Counsel for both parties continue to believe an appropriate resolution of the case is possible,** and late today Government Counsel emailed undersigned counsel a summary of a **new, and very reasonable, plea offer**. Case 1:13-cr-00435-WO Document 18 Filed 06/04/14

Pages 2 of 4 outweigh the interest of the public and the Defendant in a speedy trial. Accordingly, the Defendant agrees that any delay occasioned by the granting of this continuance should be excluded in computing the time within which the trial of this matter must commence. See Title 18, United States Code, Sections 3161(h)(7)(A), (B)(iv). WHEREFORE, the **Defendant hereby moves for an order continuing the trial of this matter to the July 2014 Criminal Term. Respectfully submitted this the 4th day of June, 2014.** LOUIS C. ALLEN III Federal Public Defender /s/ Eric D. Placke ERIC D. PLACKE First Assistant Federal Public Defender.

See Title 18, United States Code, Sections 3161(h)(7)(A), (B)(iv).   Case 1:13-cr-00435-WO Document 18-1 Filed 06/04/14 Page 1 of 1, court continued on **June 10, 2014**. Brian said "guilty" as told but continued fighting and letting the court know that he was innocent and NOT guilty. This truly did result in a miscarriage of justice. Brian's attorney wanted this extra time

7

so he could get Brian to admit guilt despite the FACTS in this case that Brian kept telling him that he was innocent; Brian's family and friends told him the same thing. Mr. Placke was offered PROOF documents. Knowing all of Brian's severe disabilities, he really didn't try to represent Brian. He wanted the guilty plea and waited until the last minute the evening of June 9. He got Brian to say "guilty" by persuading Brian's family to tell Brian it is in his best interest. It really didn't make any difference to Mr. Placke whether Brian was innocent or guilty. It makes a big difference to Brian; Proving innocent, Brian would be free. Guilty would mean being on the sex registry for years and on probation and losing a lot of freedoms. To be punished for crimes you did not commit is totally against the Constitution. This was the first known fraud upon the court by Brian's court appointed attorney being deceiving to Brian, Brian's family and to the court. It was also fraud upon the court by the prosecuting attorney who was presented proof of Brian's innocence from the very beginning (Rule 3.8) and both were told about Brian's autism by Attorney Susan Basko. Even before Susan's email, both attorneys had the discovery materials from the Mayodan Police Department and the NC SBI. It doesn't take a genius to read that two police from Rockingham County, NC broke into someone's computer before obtaining a search warrant on August 22, 2012, then write that child porn was being downloaded from July 20, 2012 – July 27, 2012. Recorded on the NC SBI report from July 20, 2012 - July 28, 2013 (11 months after they took Brian's computer).

Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 78-87 of 99

Brian explains to the court that he had a computer virus in August, 2012 and gave a false confession in August, 2012. Brian could have come home in June, 2014, but he is still fighting in September telling the court that he is innocent; sending documents of proof of his innocence to the court as he continues to suffer in jail with many days only receiving his 4-5 required insulin shots per day prescription to one or two shots per day. Court doesn't want to hear this. Prosecuting attorney ignores (Rule 3.8) Case 1:13-cr-00435-WO Document 28 Filed 09/03/14 Page 1-11 of 11.

I, Brian David Hill, declare under penalty of perjury that the foregoing is true and correct. Executed on September 7, 2014.

Character Statement:     Brian D. Hill   Signed

8

"I am Brian D. Hill. I am 24 years old. I have mild autism which makes me different, makes me unique, but I am not a criminal. I do not have the mindset of a criminal. I do not have the intent of a criminal. I do not want to commit crimes. I do not wish to commit crimes. I have a respect for the law. I have type 1 brittle diabetes. I have OCD. With the combination of my diabetes and mental issues, I am disabled and receive SSI, EBT which is food stamps, and Medicaid assistance. I am supposed to have a medical caretaker. This is my Mother who was my caretaker prior to my arrest. I am a Christian that believes in God. My favorite music is Dance, Trance, Techno and Rap. I can make friends and socialize despite my disability. I like to do photography and have taken photos of Mayan ruins, old factories, historical buildings, mountains, butterflies, flowers, waterfalls, rivers, beaches, lighthouses, animals, bugs, festivals, cars and more. I have a good heart. I am attracted to and prefer asian women. I am not a pedophile. I am not a predator". Case 1:13-cr-00435-WO Document 29 Filed 09/09/14 Page 8 of 9.

Motion pro se.                    Motion to File Evidence.              Filed Sep 10, 2014

Evidence attached to this Pro Se Motion is to be filed on the docket then used for the earlier Motion I filed for Withdrawal of my Guilty Plea to support a basis for a fair and just reason for such withdraw. The attachments include the threat email I received, my USWGO article on the Mayodan Police Chief, Affidavits from my family, and any other evidence to support my factual claim of innocence for withdrawal of my plea. I hereby file the "Motion to File Evidence" with the Clerk of the Court using U.S. Mail. Respectfully submitted, this the 9th day of September, 2014. Brian David Hill, Defendant

Case 1:13-cr-00435-WO Document 30 Filed 09/10/14 Page 1 of 5

Evidence on record on this page is the threat email Brian received in his USWGO Email account on April 20, 2013 from a Tormail Email account which says "Your gonna get it. We know what your tryin to do. Youll regret ever being an investigative news reporter. Better watch your back, Brian. DON'T REPORT ANY MORE ARTICLES OR TALK TO ANY REPORTERS ABOUT THIS CHILD PORN VIRUS OR YOU GONNA GET IT.

Case 1:13-cr-00435-WO Document 30 Filed 09/10/14 Page 2 of 5

9

Evidence on record on this page is the threat email Brian (USWGO) received was on April 7, 2013 from johnsnatchz@tormail.org to admin@uswgo.com. It says "You better watch out Brian. We are watching you. Having child porn planted on your hard drives and computer was only the beginning, and we will set you up for violent sex crimes if you don't watch your back. Have fun becoming a sex offender. Police won't believe you no matter how much evidence you have that you been set up as we know some people in the SBI who will make sure you are convicted. You will be shut up by being a sex criminal. Your friends Alex Jones, Dan, James, Sean, Alex, and others are next. Be ware! Case 1:13-cr-00435-WO Document 30 Filed 09/10/14 Page 3 of 5

Presidential Pardon Application: Hand written copy. (8). I have already served 9 months in jail and Butner Prison. I have suffered enough punishment for the set up against me. I do not deserve a conviction. I don't need to suffer more in jail than I already have. I am not a predator; I am prey. I have suffered and can't fight back at those who are causing me to suffer. All I can do is keep writing letters to government officials, my family and the media. (9). Since my incarceration, my blood sugars have got more out of control, my health deteriorates the longer I suffer in jail. My Feb. 2014 A1C 3-month average blood hemoglobin level was 10.9. Before incarceration it was lower and kept under better control. Before my arrest, my weight was over 200 pounds and now is less than 160 pounds. (10). If I stay in jail longer than 12 months, I will lose my SSI and have to reapply which could take years. I cannot work with my disability. I cannot survive without my SSI. My life is in the government's hands. Yes, I could divorce the government to get out of this terrible charge, become sovereign to escape conviction, but then I will lose my SSI, Medicaid and food stamps just to get no conviction under individual sovereignty. I'd rather not go that far to to beat my conviction, that is why I am trying for a pardon. Case 1:13-cr-00435-WO Document 34-1 Filed 09/18/14 Page 6 of 12.

That as a consequence of writing articles, postings on line that directly threaten Phil Berger Sr.'s election campaign that he has direct access to his son, Phil Berger Jr. that he could use to investigate and prosecute his political enemies through the state of North Carolina Justice Department. (3) That Berger Sr.'s ties by blood to Phil Berger Jr. may constitute a conflict of interest. That this motion is to investigate whether Berger Jr. was investigating and intended to prosecute me through the state. (4) Whether Berger Jr. has abused his position as a District

10

Attorney to target his father's political enemies in the county. Whether he had intent to target me as his father's political enemy. (5) To investigate to prove a conflict of interest and bias against me. I file this with the clerk of the court using U.S. Mail. Respectfully submitted to the court this the 15th day of September, 2014. Brian David Hill. Page 2 of 2

Case 1:13-cr-00435-WO Document 35 Filed 09/18/14 Page 2 of 2

Motion of Discovery: Filed September 18, 2014. In the United States District Court for the Middle District of North Carolina. United States of America vs Brian David Hill. Motion Pro Se 1:13CR435-1. I, Brian David Hill, file a Motion of Discovery with the court to ORDER a forensic computer examination, if necessary, to find evidence of viruses, spyware, Trojan horses, modified Windows DS Files and signs of computer hacking. Since I am indigent, I request that the court fund and order this examination, then a forensic report made for the court on the following factors: (1) Whether the computer/computers and hard drives contained viruses, spyware, Trojan horses, malware and root, kits. (2) Whether the computer/computers and hard drives have been hacked into, have illegally modified windows files, have security vulnerabilities and any other evidence of computer hacking. Page 1 of 2.

Case 1:13-cr-00435-WO Document 36 Filed 09/18/14 Page 1 of 2

(3) Whether there was evidence tampering done by the police detectives going through my computer files before my property was sent off to the state crime lab. (4) Whether my computer/computers had up to date security software, updated security patches through Windows Update, and a sufficient firewall to deter hackers from successfully hacking into my computer without my knowledge and consent. I request with the court to do this forensic examination as soon as possible. I ask that due to my high diabetic A1C and fragile health that this examination be conducted quickly in less than a month as scanning for viruses doesn't take that much time. This will prove that my computer was hacked around the time of the alleged offense. Respectfully submitted to the court this the 15th day of September, 2014. I file this with the U.S. Court using U.S. Mail. Brian David Hill    Page 2 of 2.

Case 1:13-cr-00435-WO Document 36 Filed 09/18/14 Page 2 of 2

11

That a person with mild Autism can indeed give a "False Confession" and/or "Misleading Statements". With my mild autism, the threat by Charles J. Caruso (Mayodan, NC police chief), and my admission on court record that my confession was not truthful; my confession should be suppressed on Mental Health and coercion grounds. (5) That Sue Basko, a lawyer for Independent Media had asked the Prosecutor to "reconsider the prosecution of Brian Hill". Sue can be contacted at 310-770-7413. (6) That the Mayodan police may not have been truthful in their police reports with Affidavit statements provided from my family. I typed an article that embarrassed and angered the Mayodan police chief.     For all evidence submitted, I recommend that the court move to withdraw my plea of guilty, that the court move to suppress the confession and evidence, and that the court weigh case dismissal, pretrial diversion or push for a Presidential Pardon for my conviction. I file this with the Clerk of the Court using US Mail. Respectfully submitted to the court this the 9th day of September, 2014. This Motion will be mailed out six to seven days after the 9th after my commissary order. Brian David Hill     Page 2/2. Case 1:13-cr-00435-WO Document 37 Filed 09/18/14 Page 2 of 75

Autism Communication card: The person you are interacting with "May repeat your words and phrases: your body language and emotional reactions. May have difficulty expressing needs". Behavior: "May be extremely sensitive to lights, sounds or touch. May display a lack of eye contact. May have no fear of real danger". In Criminal Justice Situations: "May not understand rights or warnings. May become anxious in new situations. May not understand consequences of their actions. If verbal, may produce false confession or misleading statement".

Case 1:13-cr-00435-WO Document 37 Filed 09/18/14 Page 13 of 75

Principles for Prosecutors Considering Child Pornography Charges against Persons with Asperger's Syndrome: "Among the difficulties faced by young person's afflicted with Asperger's Syndrome (AS) and their families is the misinterpretation of the atypical behavior of the AS patient as dangerous and criminal". "There is nothing inherit in Autism Spectrum Disorders, such as Asperger's, to make individuals inclined to sexual deviance of any kind". "Persons with AS are far less likely to be predators than victims". "Asperger's Syndrome is a lifelong disability which on its own creates substantial hurdles for the patient. Criminal prosecution, conviction and the typical sanctions imposed in such cases are not necessary to

12

protect the public in the case of an AS patient, but they are imponderably harsh, cruel and debilitating to persons with AS and their families on whom they are dependent. Generally those individuals are not a threat to society: it's the other way around. AS patients are frequently the target of abuses, such as bullying, often from poorly chosen "friends". This one article covers 6 pages to help attorneys to understand people with autism. It gives all the sources and contributors to this article. Sponsors: Individuals and Organizaitons. This article covers pages 14 – 19. Case 1:13-cr-00435-WO Document 37 Filed 09/18/14 Page 14 of 75

In the United States District Court For the Middle District of North Carolina    United States vs Brian David Hill    Motion Pro se 1:13-CR-00435-1    MOTION TO WITHDRAW GUILTY PLEA AND REQUEST A TRIAL

I, Brian David Hill, file with the court a "Motion to Withdraw Guilty Plea and Request a Trial". For all evidence I have filed on docket, evidence attached to this Motion, and the remainder of evidence I will send or give to the court by Tuesday, September 30, 2014, all advances evidence to back my factual assertions contained in this Motion to advance a fair and just reason to withdraw my guilty plea, and to request a trial.    I am also attaching an additional Motion to file with the court to Suppress the evidence and confession based on evidence submitted to docket and to Probation Officer Beige W. Tapp.    Here are my Factual Assertions for filing this Motion:    Case 1:13-cr-00435-WO Document 43 Filed 09/26/14 Page 1 of 2

1. I am innocent of the charge. 2. I haven't been given effective assistance of counsel. 3. That I have Autism and haven't been given a disability advocate. 4. I was coerced into pleading guilty. Me and my family have been manipulated into my guilty plea. 5. My lawyer cited that I was delusional when the truth is I am not delusional. The psychologist didn't review over mine and my family's evidence before applying that label on me. My lawyer has lied to me and my family and has refused to come up with a defense for Jury trial. My lawyer refused to call forth witnesses in my defense, was only interested in getting me to sign a plea agreement. 6. My high diabetic A1C blood hemoglobin level (10.9) has affected my judgment in the pleading hearing. 7. I wanted to withdraw my guilty plea days to a week after I pled guilty. My lawyer delayed the discussion to withdraw my guilty plea. I hereby file this Motion with the clerk of the court using U.S. Mail. I submit and request this Motion on this the 24th day of September, 2014.    Brian David Hill    Case 1:13-cr-00435-WO Document 43 Filed 09/26/14 Page 2 of 2

13

November 8, 2013

Mayodan Police Department
Attn: Charles J. Caruso, Chief of Police
101 North 3rd Avenue
Mayodan, NC 27027

Re: OCA / Case No. 2012-00287, Roberta and Brian Hill

Dear Mr. Caruso:

      I have been retained by Brian Hill for the purposes of recovering seized property being held by the Mayodan Police Department. At the time of the search and seizure, which occurred on or about August 28, 2012, Mr. Hill was advised by your agency that the items seized would be returned to him within 6 to 12 months. At this time, the Mayodan Police Department has had possession of Mr. Hill's property for 14 months, and no formal criminal charges have been filed. As such, I am requesting that the items outlined on the attached MPD-337 (Receipt for Evidence and/or Property) be returned to Mr. Hill. Please contact me so that we may schedule a time convenient for your agency and staff to return those items to Mr. Hill or his designee. Should you have any questions, please feel free to contact me. I look forward to hearing back from you.

                Sincerely,

                WALKER, MELVIN & WOODALL, LLP

                Beverley A. Smith

Enclosure
cc:    Client

Right after this letter was sent to Mayodan, NC, there was a warrant for Brian's arrest,

TRANSCRIPT OF HEARING BEFORE THE HONORABLE WILLIAM L. OSTEEN, JR. UNITED STATES DISTRICT JUDGE APPEARANCES: For the Government: ANAND P. RAMASWAMY, AUSA Office of the U.S. Attorney 101 S. Edgeworth Street, 4th Floor Greensboro, North Carolina 27401   US v. Hill - Hearing - September 30, 2014

14

I received a declaration from a woman named Susan Basko. Ms. Welch, if you'll hand that to
Mr. Ramaswamy. I don't know if you all have seen that declaration. If you'll step forward and
take a look. Have you seen that, Mr. Placke?



<div align="center">

**U.S. District Court**
**North Carolina Middle District**

USA v HILL    )    Case No: 1:13-cr-00435-WO
             )    Chief Judge William L. Osteon,

</div>

Declaration of Susan Basko in Support of Brian David Hill's Motion to Withdraw
his Guilty Plea, Motion for a Substitute Attorney, Sentencing, and any other
purposes

<div align="center">

Case 1:13-cr-00435-WO Document 46 Filed 09/30/14 Page 1-3 of 3

</div>

MR. PLACKE: I have, Your Honor. That is what arrived at our office via email last week, one of
several different emails from Ms. Basko. THE COURT: Have you communicated with her at
all? MR. PLACKE: No, I haven't, Your Honor. THE COURT: I don't know who she is to make --
she claims she's a lawyer. MR. PLACKE: I did check with the California State Bar and the
Illinois State Bar. She is currently admitted to practice in both states. THE COURT: Is this Mr.
Hill's family in the back? MR. PLACKE: It is, Your Honor. THE COURT: Grandparents and
mother?                US v. Hill - Hearing - September 30, 2014

 MR. PLACKE: Yes, Your Honor. THE COURT: Have you all been contacted by this woman,
Ms. Basko? MS. BURNETT: In December of 2013. THE COURT: Mr. Ramaswamy, if you don't
mind, will you hand that affidavit back to Ms. Welch. Let me ask you about this. If you all don't
mind, if you'll step forward.  Right behind Mr. Placke will be fine. Actually, just Ken Forinash
and Stella Burnett. Mr. -- is it Forinash? Is that correct? MR. FORINASH: Yes, sir. THE
COURT: Let me ask you first. This affidavit says that "I have been told by Brian's
grandparents, Ken Forinash and Stella Burnett, that Brian wants to withdraw his guilty plea
because he is innocent, and he wants a substitute public defender." Did you all tell her that?
MS. BURNETT: Yes, sir, we did. THE COURT: And why did you tell her that? MS. BURNETT:
Because Brian is innocent, and he's really not been represented. This attorney has never

<div align="center">

15

</div>

talked to us until right at the end. He called us the night before the sentencing hearing and told us to have Brian to plead guilty and so that's what we did, and that was wrong because Brian is not guilty. He's got autism. He's not guilty. He doesn't like being around children. US v. Hill Hearing - September 30, 2014  THE COURT: What does the autism got to do with his guilt or innocence?  US v. Hill - Hearing - September 30, 2014

MR. RAMASWAMY  Early in this matter, very early in this matter, there was an email. I believe because our email addresses are part of the ECF record, Mr. Placke and I received the same email. As Mr. Placke did, I did confirm that she was -- this person was a licensed attorney in California, appears to be a licensed but nonpracticing attorney. I did not look at it so much in the attorney context because -- as with much of the filings here and some of the things that are from prior proceedings in this court and in the magistrate court related to Mr. Hill that become reported on the internet by persons associated with him that are largely not representing what actually happened, it appeared that person, the attorney, was yet another one of the ones associated through the internet of reporting things were not factually correct to maintain the actual innocence. I hadn't considered it in terms of her -- she's the only one of the group who is in that filing to the Court using her credentials as an attorney to bolster her statements, but there are a number of people, not in filings to the Court, but in internet postings who, I'd say, maintain similar positions. That had not been a concern because I think to explore that further may go into some of the issues and the persecution -- US v. Hill - Hearing - September 30, 2014  the ideas of persecution or give an impression that this prosecution is about anything other than the offense conduct. It has nothing to do with any belief political or otherwise of the defendant. I'm not certain --

So what I'm considering doing is, in light of the current allegations, allowing Mr. Placke to withdraw from this case, appointing substitute counsel, and giving notice of the fact that I am considering whether or not I should withdraw Mr. Hill's acceptance of responsibility for falsely asserting in a very public manner his innocence of the case without ever presenting any facts that would address the specific facts of this case, setting that matter on for a hearing, and asking the Government to subpoena Ms. Basko, because Ms. Basko has submitted a declaration, given under penalty of perjury, that Mr. Hill is innocent of the charges.

16

MR. PLACKE: Your Honor, I received in terms of discovery in this case from the Government two CDs, one of which contained the audio recording of the interview of Mr. Hill, the other of which contained law enforcement reports in PDF format. I've printed those out. The reports are a Mayodan Police Department report dated August 22, 2012, and a North Carolina State Bureau of Investigation case file dated October 23, 2013. And perhaps in light of everything else, I should just return those to the Government at this point. THE COURT: Mr. Ramaswamy, I'll note Mr. Placke is returning the material to you

Brian tells the court that he had attended Mayodan town hall meetings in March, April, May, July 2012, about the emule virus or the Trojan horse on his computer after this day (July 9, 2012), about Mayodan police chief's threat to him in front of his family during the police raid on August 28, 2012 and before on July 9, 2012 and that he gave a false confession to the police on August 29, 2012 due to his autism. See Case 1:13-cr-00435-TDS **Document 28 Filed 09/03/14 Page 1 of 11.** Brian only pled guilty on that one day because his family told him to say "Guilty". (Why did they do that? Was it because his ineffective attorney called Brian's family the night before on June 9, 2014 and told Brian's family that the case was going to trial the next day and the jury would be selected. He told Brian's family that he had nothing to use for Brian's defense. What happened to all of the documents Brian's family & friends had sent to him as proof of Brian's innocence? He told Brian's family that the prosecuting (Government's attorney) had the discovery and the police tape as evidence that Brian was guilty and would get 20 years in prison, but the government's attorney offered "Time served in exchange for a guilty plea". How many families would say "We'll take the 20 years over time served when he is actually innocent, but his attorney has no case to present to this court". See what Brian's family said about this in his 2255 Motion. Case 1:13-cr-00435-TDS **Document 134 Filed 11/14/17 Page 50 of 99**. According to this court, there was child porn in Brian's computer. Neither Brian nor his family saw the child porn. Brian was pleading guilty on June 10, 2014 to the fact that they said it was in his computer "possession", not **pleading guilty of intent or knowingly putting it in there** and ineffective attorney who told his family to tell Brian to take the guilty plea of time served the night before. There are other court documents about this from Brian's family.

From September 3, 2014 until September 26, 2014 Brian gave this court in the middle district of North Carolina proof of his innocence and the government's attorney and the judge received all of these documents proving Brian is innocent of knowingly downloading child porn, gave a

17

false confession due to his autism and police disobeying the Americans with Disabilities Act and has no interest at all in children. Then the proof that Brian's court appointed attorney and the government's attorney (Prosecution) knew all along that Brian had autism and was innocent. First proof that the prosecution ignored his oath of office (**Rule 3.8 Special Responsibilities of a Prosecutor**): Refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause; Make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense. Susan Basko, an attorney in Illinois and California who had helped other alternative news people who had child porn attempts by reporting these to FBI and other authorities: Declaration of Susan Basko in support of Brian David Hill's Motion to Withdraw his Guilty Plea Motion for Substitute Attorney, etc, filed September 29, 2014. She had notified Brian's court appointed attorney and the prosecuting attorney early in the case that Brian had autism, was innocent and set up attempts on other alternative news people. **Case 1:13-cr-00435-TDS Document 46 Filed 09/30/14 Page 1-3 of 3. When one reads the transcript of the September 30, 2014 court case, both attorneys admitted getting the emails from Attorney Susan Basko early in the case (January, 2014) and confirmed that she was an attorney**. Brian was appointed another attorney, but the constitution doesn't state that the attorney has to really work for the client as we found proof later from comparing the Mayodan, NC police report with the NCSBI discovery report in January, 2015. After all of this, Brian's health really started deteriorating, and it was now a choice to either come home and get all of the insulin his body needed or continue suffering in various jails until he went in a coma and died. It was never about proving in this court "Intent" that Brian had knowingly downloaded child porn. It was all about "possession" that it was found in his laptop computer. Brian again pleaded "Guilty of possession" assuming there really was child porn in his computer.

This second attorney let Brian and his family read the discovery in his office, what the NC SBI report said in January, 2015, not providing a means to hear the tape. The Mayodan, NC police had already sent Brian a copy of the police report per Brian's request. After reading this, Brian had even more proof of his innocence. This alone could have been used by either court appointed attorney to prove Brian's innocence. Again another violation of the **Rule 3.8 Special Responsibilities of a Prosecutor as he originally had access to this information.**

Right after Brian and his family read the dates on the NC State Bureau of Investigation report, this was the proof that there was some type of virus or Trojan horse on Brian's computer as he originally told the 2 police detectives on August 29, 2012 and as he told this court on September 3, 2014 (Document 28) and before and as his family told his court appointed attorney in January, 2014 and as Sue Basko told both attorneys in January, 2014 and again told the court in Sept. 2014 (Document 46).  According to this document witnessed by Brian, his mom and 2 of his grandparents and shown on his 2255 Motion (Case 1:13-cr-00435-TDS   Document 134   Filed 11/14/17   Page 53-54 of 99),  Brian asked the court for a Motion to Extend Time to File an Appeal on January 12, 2015:  Case 1:13-cr-00435-TDS Document 55 Filed 01/12/15 Page 1-4 of 4.  The NC SBI report states that items of interest was downloaded on Brian's computer from July 20, 2012 until July 28, 2013.  Brian's laptop computer was removed from Brian's house on August 28, 2012 during the hours long police raid.  This is proof that both court appointed attorneys and the government's attorney had the proof that for these 11 months, Brian did not have his computer.  This computer for 11 months of that time was in the possession of the Mayodan police and the NCSBI in Greensboro, NC.  This court case could have been prevented and charges should have been dropped or never started.  This has cost the federal government and tax payers a lot of money and has caused needless worry and expense for Brian and his family for 6 years and has caused further needless health problems and health deterioration for Brian and is definitely fraud upon the court, but let's not stop here, there is more fraud upon the court.

With Brian's disabilities so severe the court never once provided a medical expert in autism to clarify how people with autism do give false confessions.   Brian submitted his proof that he was diagnosed with PDD at the age of 2 and mild autism at the age of 4.  He submitted proof that he has brittle diabetes, history of seizures causing loss of consciousness and without being force fed glucose in the form of juice, cake icing, or other sugar product he would die. He has OCD, generalized anxiety.  He could not attend school without a one on one and the school was required to do an annual "individualized education program" (IEP) meeting and develop a written IEP due to Brian's autism, brittle diabetes and seizures and had medical professionals involved with this.  Yet this court and all jails have ignored all of Brian's disabilities and want to criminalize autism.   He and his family submitted proof in his 2255

19

motion in November, 2017 of his actual innocence. From October, 2017 – September, 2018 he and his mom were exposed to carbon monoxide gas in their home. His mom testified to that. The judge made it clear that Brian's mom was not an expert in carbon monoxide gas while failing to obtain an expert to give Brian a fair hearing as Brian had submitted proof to the court about the carbon monoxide gas. This judge showed impartiality, always doing what the prosecuting attorney tells him to do. Neither the judge nor the prosecuting attorney show compassion for all of Brian's severe disabilities, are criminalizing autism and want the maximum sentencing for Brian. They ignored his probation officer's testimony where he told them that Brian was doing good and chose to be a witness for Brian, not for the prosecution.

During the June 2015 case, he bragged about Brian's probation officer (whom Brian & his family can prove she told truths and lies), punished Brian for his small autistic meltdown where no one was hurt. There was more fraud upon the court in that case, and it should have been appealed too. Now Brian has a really good probation officer from Roanoke, VA. He has been Brian's probation officer for 4 years and understands autism, OCD and brittle diabetes. There is a lot of respect between this probation officer and Brian and Brian's family. This judge showed no respect at all for this fantastic probation officer. Brian continues receiving cruel and unusual punishment time and time again by a judge and prosecuting attorney who have no compassion whatsoever as they criminalize autism. This prosecuting attorney many times has ignored his responsibility about the rule 3.8.

Brian has been a resident of Virginia since August, 2012. His Medicaid insurance and medical Medicaid waiver is in Virginia as are all of his medical doctors, his family and his probation officer. His criminal case needs to be moved to Virginia too and needs to be dissolved as from the beginning; Brian is innocent of any crime and is not a criminal. Criminalizing autism is the same thing as criminalizing someone in a wheelchair who is paralyzed for not walking. Autism is a communication & behavior disorder due to underdevelopment of the brain; brain damage. Breaking laws is based on "intent", giving a false confession and misleading statements when police clearly break the "Americans with Disabilities Act" is not intent. Having an autistic meltdown in your home due to a probation officer not trained in how to handle someone with autism where no one is hurt is not "intent to break a law". Being exposed to carbon monoxide causing autism to worsen causing you to leave your house late at night while others are

sleeping, then meeting someone near a walking trail who threatens your mom, and you are proven not to be obscene is not "intent to break any laws" but instead this person is a victim of a stranger who threatened killing Brian's mom if Brian didn't do as told. Brian was under the effects of carbon monoxide gas and his autism had worsened on that night. You can read more about fraud on the court in the middle district of North Carolina, and the many ways Brian's constitutional and disability rights have been broken as well as ineffective attorneys and the many ways the prosecution (Government's attorneys) have broken Rule 3.8 **in my Witness, Investigator & Brian's legal assistant about his 2255 Motion** supplement. Brian and his family put this 2255 Motion together in November, 2017 with proof of Brian's actual innocence.  The proof documents were attached as supplements in November & December, 2017  and are recorded in 17 categories with document number and page & exhibit numbers on the last 4 pages of "Petitioner's Objections to "Order and Recommendations of the US Magistrate Judge" Supplement.

There should never be a case in the United States of America where someone who is a virgin who has never raped, touched or hurt any child, woman or man is on a sex registry simply because of a computer virus and being set up. Yet this court ignores all of Brian's proof, denies all of his pro se motions, and criminalizes his disabilities. Not only is this "Fraud upon the court", but this is also discrimination for disabilities where a person can't work and discrimination on the poor who can't afford federal attorneys. It is also discrimination on "Freedom of Speech" as well as many of Brian David Hill's constitutional rights.

All of this proof needs to go all the way up to our U. S. Supreme Court of more proof of **human rights violations** in Federal Courts of people with autism in the United States of America. Instead of addressing and acknowledging this disabled US citizen, they ignore, deny all pro se motions, continue to punish and criminalize autism. They deny as proven his medical and constitutional rights. He is innocent. How much more proof documents do we need to present that an innocent, disabled person has been set up? There is a lot of fraud on the court, even more than we have presented here. What gets me the most is that we have proven more than once that he is innocent, and they are making his autism, OCD and diabetes worse by telling him that it doesn't make any difference whether he is  guilty or innocent, it's all about time limits. This is stressful to Brian and his entire family. Please investigate. Thank you.

21

# Supplement 3

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Supplement in attachment to "PETITIONER'S OBJECTIONS TO "ORDER AND
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE" (Dkt. #210)"

In the United States District Court
For the Middle District of North Carolina

Brian David Hill,
Petitioner/Defendant

v.

United States of America,
Respondent/Plaintiff

)
)
)
)
)
)
)
)
)
)
)

Criminal Action No. 1:13-CR-435-1

Civil Action No. 1:17-CV-1036

## PETITIONER'S OBJECTIONS TO "ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE" (Dkt. #210)

### Supplement about Brian's 2255 Motion by Witness, Investigator & Brian's legal assistant   Stella Forinash

The entire government's case against Brian is based on his false guilty plea **(Self-Incrimination)** without taking into consideration the fact that he has many disabilities covered under the "**Americans with Disabilities Act**": Brittle insulin dependent diabetes, seizure history, autism and OCD. These are all covered, yet the court ignores his proof that the police in Mayodan, NC questioned him at lunchtime the day after the police raid without providing disability supports. The Mayodan chief of police who removed Brian by force and threatened him at the Mayodan, NC public town hall meeting on July 9, 2012 threatened Brian again at Brian's house in Mayodan on August, 27, 2012 during the police raid in front of Brian's mom & grandparents. He kept telling Brian to "Fess up" to downloading child porn during the police raid, that there were two people who lived there. This was telling Brian if he did not say it was him, Brian's mom could be charged. There is a common law rule in the **Fifth Amendment of our Constitution;** the rationale was the **unreliability of the confession's contents when induced by a promise of benefit or a threat of harm.** Neither attorney in Brian's criminal case brought out the fact that according to the "Government's Discovery" from the Mayodan police report, 2 detectives without a search warrant snuck into Brian's laptop computer and claimed they found child porn. What does the Constitution say about this? This involves Brian's **Fourth Amendment Constitution rights.** " The right of the people to be secure in their persons, houses, papers, and effects, **against unreasonable searches and seizures**, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized". These detectives claim they are familiar with the child porn that they claimed

1

was in this laptop computer. The US government revealed in the Presentence Investigation Report in paragraph #13, Document #33, Filed 09/16/2014 page 6 of 26 that none of the children have been identified as part of a known series by the National Center for Missing and exploited Children. There is a clear disagreement between the police and the federal government. The NC SBI report claims this child porn continued to be downloaded for 11 months after police removed this computer from Brian's house. For all we know these 2 policemen could have put that virus in Brian's computer right before they got a search warrant to remove all computers, hard drives, etc from the home of this mother and her disabled son. Why wouldn't two attorneys bring this out? Why did the government's attorney ignore this fact?

**In June, 2014 Brian was denied his constitutional right of a fair trial and due process.** His first court appointed attorney called Brian's family the night before and told them to tell Brian the next day to take the guilty plea. If he doesn't, he will be convicted since this attorney had nothing to offer this court in Brian's defense (threat of harm due to an ineffective attorney). If Brian said he was guilty, he would get out of jail (benefit). It didn't make any difference to this attorney whether his client was guilty or innocent. There is a common law rule in the **Fifth Amendment of our Constitution; the rationale was the unreliability of the confession's contents when induced by a promise of benefit or a threat of harm.**

Brian has now proven to the court that he gave a **false guilty** and provided proof in his 2255 Motion. The **fifth amendment of our US Constitution** clearly states that a defendant "<u>shall not be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law</u>". In its first decision on the admissibility of confessions, the Court adopted the common-law rule, stressing that while a **"voluntary confession of guilt** is among the most effectual proofs in the law, from the very nature of such evidence it <u>must be subjected to careful scrutiny and received with great caution.</u>' Brian has been appointed many ineffective attorneys as well as **not being allowed to have a medical expert to explain** how people with autism will give false guilty and misleading comments when the interrogation does not cover supports for people with disabilities or to explain about brittle diabetes and OCD. Brian was expected without medical experts in autism and diabetes to know exactly what he was doing on court days. An expert would have explained that Brian with autism is more visual, that he has a communication disability which involves his brain. He has good hearing, but his hearing is compared to a radio station with static that comes and goes. Brian has learned like many others with autism just to answer "Yes" to everything. On the days that Brian was in the Orange County, NC jail, he was not given insulin on court days. When his blood glucose is high, it affects his eyes, and he can't read. The federal court did not provide a medical person to test Brian's blood glucose during court to give him insulin when needed or glucose when blood glucose is low. There is a clear purpose for the federal law for people with disabilities. Brian had been denied all of the prescribed medicine (insulin) required by his body to avoid side effects of high glucose in jails and moved to various jails which for someone with his disabilities and severe illness is **cruel and unusual punishment.** **Amendment VIII)** of the United States Constitution prohibits the federal government from imposing excessive bail, excessive fines, or **cruel and unusual punishments.** All

2

through the 6 years that Brian has been involved with the middle district of North Carolina court system, he and his family have proof of **fraud upon the court** as well as **not being allowed his Constitutional due process in the court system**, and the proof is in his 2255 Motion based on proof of his actual innocence, ineffective attorneys and many due process violations from the Middle District of NC federal courts. **"Due Process is that which comports with the deepest notions of what is fair and right and just."** A **false confession** is an admission of guilt for a **crime** for which the confessor is not responsible. **False confessions** can be induced through coercion or by the mental disorder or incompetency of the accused. A **forced confession** is not valid in revealing the truth. Below this magistrate judge is acting like an expert in autism and brittle diabetes. Is he really an expert?

**Petitioner's #1 objection to Pages 2, 3, and portion of 4 (as noted below ) for "A. The Rule 11 Hearing":**

The Rule 11 Hearing Petitioner pled guilty in this Court to possession of child pornography on June 10, 2014. (Minute Entry 6/10/2014.) indicated that there was nothing about his mild autism or diabetes that prevented him from understanding the proceedings. (Docket Entry 113at 4-8.) Petitioner, under oath, stated "Yeah. Yes, sir." (Id.at 17. Petitioner indicated that he understood. (Id.at 10. ). Petitioner admitted he had read the indictment and discussed the charge and any possible defenses with his counsel, whose services with which he was satisfied. (Id.at 8-9.) Petitioner indicated that he understood the plea agreement, had been presented with sufficient time to review the plea agreement and discuss it with counsel, and that it was the entire plea agreement. (Id.at 11.) Petitioner stated that no one had made any threats or promises other than those in the plea agreement to get him to plead guilty.

**Case 1:13-cr-00435-WO Document 18 Filed 06/04/14 Page 1 of 4 What Brian's court appointed attorney wrote:** The Defendant was arraigned on January 2, 2014, **pled not guilty** and the case was assigned to the February 2014 Criminal Term. On motion of undersigned counsel, the Court ordered an examination under 18 U.S.C. §§ 4241(b) and 4242(a). The report of that examination was filed with the Court on May 8, 2014. The Defendant actually returned to the Middle District of North Carolina on May 14, 2014. **At a status conference earlier today, the Court denied the Defendant's pro se motions to suppress, denied the Defendant's request for new counsel**, and set the matter for trial on Monday, June 9, 2014. (Note:"Due Process is that which comports with the deepest notions of what is **fair and right and just**".)

This was the reason Brian took the guilty plea as recorded in a supplement in his 2255. See **Document 134 Filed 11/14/17 Page 50 of 99**. This attorney did use the benefit or a threat of harm the night before on the phone to Brian's family when he told Brian's family to tell Brian to plea guilty: (get out of jail so you will be able to go home & get all of your insulin to feel better – time served in exchange for pleading guilty OR twenty years in prison due to ineffective attorney if you continue saying you are innocent & continue just getting enough insulin to keep you alive while suffering from high glucose for years in jail – cruel and unusual punishment). There is a common law rule in the **Fifth Amendment of**

3

our Constitution; the rationale was the **unreliability of the confession's contents when induced by a promise of benefit or a threat of harm.** He had an attorney who was not working for Brian, was working more for the prosecution, and when Brian tried to inform this court of that fact, all of his motions were denied. Due to Brian's disabilities he has always done better writing or reading (as long as his blood glucose is not high) than he does when someone is verbally asking him questions.

**Autism spectrum disorder (ASD) is a developmental disorder that affects communication and behavior.** To have a fair trial under our constitution, Brian needed a medical professional to explain to the court why they always got "Yes answers" to every question even though facts prove that there should have been "No answers instead of yes answers" to some of the questions the court asked Brian. This proves that this disabled citizen was not given his constitution right to "Due process".

**Petitioner's #6 objection to Page 8 (as noted below) for "F. The First Supervised Release Hearing":**

"The Court observed that it "sounds highly unlikely that somebody who has a prepaid cell phone would anonymously receive unsolicited child pornography." (Id.at 61.)" This was what the judge said – his opinion – not based on fact. My husband & I were in the court room. This judge could have asked us about the phone just like at the end, he told Brian's family to respect the probation officer" Again he is jumping to his own opinion – not based on fact. We do respect the probation officer but can't respect someone whose job is to find ways to help her client, not to on purpose provoke an autism meltdown and have this person arrested admitting in court that she had no training in autism. Brian was punished for something he can't help due to his autism by spending one month in jail with half of his insulin (Cruel and unusual punishment) and forced home confinement for 6 months wearing a monitor. The court is turning autism into a criminal act without providing an expert medical person to explain to the court about an autistic meltdown. Is it like a temper tantrum, or is it part of his brain that he can't control and shouldn't be punished at all as no one was hurt? We have caught this probation officer in other lies. It was proven that Brian felt bad afterwards when he was back to himself and apologized to her 3 times for calling her names and getting upset when she told him he couldn't use his phone to text, not even to text his attorney. Now about the phone. It was my phone. It had no internet service as I don't like to use phones with internet. I prefer internet on computers, not phones. The phone we bought to replace that one had no internet service. My phone number remained the same for years. Minutes and text prepaid were building up, and the reason I loaned the phone to Brian was so the minutes & text could be used. I only use my phone for emergencies. Brian called the Rockingham County, NC sheriff's department. They apparently had access to my phone number, told Brian they were going to notify the Mayodan, NC police department. After that the Mayodan police number showed up twice on my phone. After that there was a threat by an anonymous phone number and after this threat later there was child porn sent to my cell phone. We no longer wanted this phone. Brian quickly notified his probation officer about it and gave it to her to have it examined. We did not have Internet service on my phone. We only paid for phone time and text messaging. Minutes & text not used in one month would roll over to the next month or next year. We paid a flat fee of $10.00 a month for this service per phone, and this fee is automatically taken out of our checking account and recorded in our email

4

account. We got another phone to replace this one with the same phone number and no internet service. This tracfone website answers the judge's question: https://www.tracfone.com/how-it-works

Connect with your family and friends with the comfort of a dependable prepaid plan. With our no-frills plans, you get the data, texts and minutes you need — without the commitment. •No contracts •No bills •No overages •No activation or cancellation fees, ever. AUTO-REFILL MAKES IT EASY. Auto-Refill is available on most plans. Just enroll and relax. Auto-Refill will keep your service going. If you ever run out of Airtime you can add more anytime. Block any unwanted phone calls immediately with **Call Detector**. It's free to download! With Unlimited Carryover®, your unused data, text and minutes never expire with active service* – you get to keep what you pay for. We make switching easy and saving simple. You can choose to keep any of the following when you make the move to Tracfone: Keep your smartphone. Keep your phone number (or get a new one). Keep your network. Bringing your own phone is easy. You just need to check if your phone is compatible. Then, buy an Activation Kit and choose the best plan for your needs.

**Petitioner's #15 objection to Pages 18 through 19 (as noted below) for "f. Actual Innocence":**

""6. Petitioner's assertion that he suffers from echolalia and simply repeated what the officers said to him"

Again this magistrate judge, two other judges and the government's attorney are not experts in autism. Never once in 6 years did they hire a medical professional in autism to prove or disprove what Brian & his family have told this court or have written to the court in Brian's 2255 Motion. It's a fact that Brian's autism is brain damage. His brain did not develop fully in the communication and behavior areas. Brian is very intelligent so that part of his brain was not affected. It is with some people with autism. Because the brain is affected, people with autism continue throughout adulthood as they do when they were first diagnosed. In Brian's case he was diagnosed with PDD (Pervasion developmental disorder) at the age of 2 and mild autism at the age of 4. Brian included that diagnosis in his 2255 Motion which was ignored by this magistrate judge in **Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 94-99 of 99** This is a record dated 10-19-1994 from the Division for Treatment and Education of Autistic and Related Communication Handicapped Children; Department of Psychiatry University of North Carolina. "Currently Brian exhibits immediate and delayed echolalia, and repeats some phrases he has heard over and over". He understands and follows simple routine commands but cannot use or answer "Wh" questions. It clearly states that "Brian is prone to small episodes of temper tantrums". This is now called "autistic meltdowns". "**When he became upset, his language consisted largely of echolalia**". Brian usually responded to his name by repeating it. Brian used language and gestures to communicate. At the start of testing, Brian's language consisted mostly of delayed and immediate echolalia. He would ask questions. However, Brian had much more difficulty answering questions". At times, his language was difficult to understand. Brian's IEP should reflect the acknowledgement that he is a child diagnosed with autism. Signed by a Child Therapist, Parent Consultant and a Licensed Practicing Psychologist.

5

Cited from Magistrate's opinion: "Third, Petitioner also filed a transcript of an interview with law enforcement in which he admits downloading and viewing child pornography. 6. (Docket Entry 132 at 7-8.)"

Read **Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 79-87 of 99. This is his mom (Roberta Hill)'s eye witness account as she is Brian's main caregiver trained in autism, was a nurses aid in NC and was at the Mayodan police station when Brian confessed falsely to downloading it and was at the June & September, 2014 hearings. She also read the discovery (police report & NC SBI report).**

**Petitioner's #15 objection to Page 19 (as noted below) for "f. Actual Innocence":**

Does this magistrate judge actually address proof documents Brian has displayed in his 2255 Motion? Does the magistrate judge reference the notarized declaration that Brian's grandmother (Stella Forinash) wrote in **Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 34-72 of 99**. Does he acknowledge the notarized declaration that Brian's grandfather (Kenneth R. Forinash, TSgt, USAF, Ret) wrote in **Document 134 Filed 11/14/17 Page 73-75 of 99**. Does he acknowledge the notarized declaration that Brian's mom (Roberta Hill) wrote in **Document 134 Filed 11/14/17 Page 76-87 of 99?** Does he acknowledge Attorney Susan Basko's Declaration **Case 1:13-cr-00435-TDS Document 46 Filed 09/30/14 Page 1-3 of 3**. Susan Basko is a lawyer for independent media and Attorney and Counsellor of the Supreme Court of the United States of America whom Brian contacted in 2013. Is this magistrate judge ignoring Brian's proof of innocence and Brian's witnesses and Brian's constitutional and disability rights? Is this judge not showing bias, ignoring Brian's actual proof documents that are part of his 2255 Motion submitted to this court in November and December, 2017?

This is further proof of additional fraud upon the court and further proof of more of Brian's constitutional rights being violated in the Middle District of North Carolina. According to our US Constitution, Sixth Amendment - Rights of Accused in Criminal Prosecutions a defendant has a right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; **to have compulsory process for obtaining witnesses in his favor,** and to have the Assistance of Counsel for his defense.

g. The Merits As explained above, all of Petitioner's grounds are time-barred. **However, if the Court were to reach the merits of Petitioner's grounds for relief, it would deny them.**
Ground One

**Case 1:13-cr-00435-TDS Document 210 Filed 10/21/19 Page 19 of 27**

6

**This goes along with the threat emails Brian received in 2013 & 2015. To see the entire email threats, go to Brian's 2255 Motion   Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 70 of 101

```
            id 1UO1wB-0001eD-DU
            for admin@uswgo.com; Sun, 07 Apr 2013 09:30:59 +0000
Date: Sun, 7 Apr 2013 09:30:59 -0000
Subject: You better watch out........
From: johnsnatchz@tormail.org
To: admin@uswgo.com
MIME-Version: 1.0
Content-Type: text/plain;charset=iso-8859-1
Content-Transfer-Encoding: 8bit
X-Confirm-Reading-To: johnsnatchz@tormail.org
Disposition-Notification-To: johnsnatchz@tormail.org
Importance: High
Return-Receipt-To: johnsnatchz@tormail.org
X-TorMail-User: johnsnatchz
Message-Id: <1UO1wB-0001eb-DJ@internal.tormail.org>

You better watch out Brian...We are watching you...Having child porn
planted on your hard drives and computer was only the beginning and we
will set you up for violent sex crimes if you don't watch your back...Have
fun becoming a sex offender...Police won't believe you no matter how much
evidence you have that you been set up we know some people in the SBI who
will make sure you are convicted. You will be shut up by being a sex
criminal. Your friends Alex Jones, Dan, James, Sean, Alex, and others are
next...BeWare!
```

# SETUP

Town of Mayodan knew Brian's address (Example)  Email Brian sent to town of Mayodan on 3/12/2012     Case 1:13-cr-00435-TDS Document 132 Filed 11/14/17 Page 42 of 103

Subject: Copy of documentation that will be sent to the town council
From: Brian Hill <admin@uswgo.com>
Date: 3/12/2012 4:11 PM
To: Lessa Hopper <mhopper@townofmayodan.com>, Michael Brandt <mbrandt@townofmayodan.com>

Dear Lessa Hopper and Michael Brandt,

I Brian D. Hill have made a digital PDF copy of the very same document in-print that I am going to be delivering to the town council today. I have certified my digital PDF document myself as to

7

being the same copy as the document each town council member, the town clerk, and the town attorney will get. The town manager can simply overview the copy given to the town clerk. The reason is I like it to be on the town official public records. I have made 5 copies in-print for 3 of the 5 council members, the town attorney Philip E. Berger, and the town clerk to keep in town records. I like to request the town clerk make two more copies (from the PDF Attached) to which I will pay the $0.10 a page fee, the whole document is 59 pages and I only need two more copies to giver to the two town officials. I will hold off on giving the mayor a copy until the town debates Agenda 21. I prefer the council debating it first and researching all the facts before it gets to the mayors attention. The document will also be added on scribd which is on the public record.

Sincerely,
Brian D. Hill

Home: (336)510-7972
Home: 413 N. 2nd ave. Mayodan, NC 27027
Admin, Founder, webmaster, and head reporter of USWGO Alternative News (uswgo.com)
Reporter of FederalJack.com and We Are Change
admin@uswgo.com

---

Attachments:

Documentation for the Mayodan Town Council Finalized(Certified).pdf          27 bytes

---

📄 **Author**                    **Topic: The Police are harassing my mom now (Read 3088 times)**

0 Members and 1 Guest are viewing this topic.



**USWGO**                    ○ **The Police are harassing my**
Guest                            **mom now**
                                 « on: July 12, 2012, 07:57:02 PM »

I have to get on the Alex Jones Show even for just a 15 minute segment.

Because of telling people what the chief of police did to me my mom is now being harassed by the police chief

When my mom was walking down to the Dollar General store right close to downtown, a police van start driving up to where my mom was walking on the sidewalk and start asking her questions.

They told her that a girl was walking down the sidewalk and asked if she seen her and she said no.

Then they started asking her if she lived in the street and she told them that we lived in the stone house down the street.

So now the police are surveilling us and harassing my mom and she could not make out what the polices face was but it could have been Charles Caruso. He saw me and my mom at the town council office with the two chairs. My cop is a total scumbag to be coming after my mom over the video published and what I said in the article below.

8

**How could police harass us over asking State Senator Phil Berger a question. I need to be on the Alex Jones show or else I may end up in prison and my life is already hell. I can't even walk downtown anymore or drive down to Madison because of the police watching us and looking for one little excuse to arrest my mom and have me under receivership even though I am 22 years old but I am disabled and need someone to watch my blood sugar levels.**

http://uswgo.com/reporter-intimidated-and-booted-from-town-council-when-asking-a-question.htm

**DATE?** Case 1:13-cr-00435-TDS Document 132 Filed 11/14/17 Page 85-88 of 103



Guest



The Police are harassing my mom now

« **on:** July 12, 2012, 07:57:02 PM »

Now here is the Mayodan police report dated Aug. 22, 2012:  Discovery used by the government attorneys:  Case 1:13-cr-00435-TDS Document 132 Filed 11/14/17 Page 46 of 103

---

20171115100357107.pdf  ·  46 / 103  ·  2012-00287

**Mayodan Police Department**

Status Codes: L = Lost  S = Stolen  R = Recovered  D = Damaged  Z = Seized  B = Burned  C = Counterfeit / Forged  F = Found

| Status Codes | DCI | Status | Quantity | Type Measure | Suspected Type | Possess | Buy | Sale | Mfg | Importing | Operating |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D R U G S | | | | | | | | | | | |

**Offender Used**
- Alcohol/Drugs: ☐Yes ☐Unk  ☒No ☐N/A
- Computer: ☐Yes ☐Unk  ☒No ☐N/A

| Offender 1 | Age: 22 | Race: W | Sex: M |
| Offender 4 | Age: | Race: | Sex: |
| Offender 2 | Age: 45 | Race: W | Sex: F |
| Offender 5 | Age: | Race: | Sex: |
| Offender 3 | Age: | Race: | Sex: |
| Offender 6 | Age: | Race: | Sex: |

**Primary Offender Resident Status:** ☒ Resident  ☐ Non-Resident  ☐ Unknown

Name (Last, First, Middle): **HILL, BRIAN DAVID**
Also Known As:
Home Address: **413 North 2nd Avenue, Mayodan NC**

Occupation: **DISABLED**
Business Address:

| DOB. / Age | Race | Sex | Hgt | Wgt | Build | Hair Color | Hair Style | Hair Length | Eye Color | Glasses |
|---|---|---|---|---|---|---|---|---|---|---|
| 24 | W | M | 600 | 185 | | BLO | | | BLU | |

Scars, Marks, Tattoos, or other distinguishing features (i.e. limp, foreign accent, voice characteristics)

---

9

Suspect Hate / Bias Motivation:   □ Yes   ■ No     Unknown (Offender's motivation not known)

<div style="border: 1px solid">

N
A
R
R
A
T
I
V
E

On Wednesday, August 22, 2012 at 1400 hours, I, Detective Sergeant Todd Brim, received a report of a possible Child Pornography case at 413 North 2nd Avenue in Mayodan, North Carolina.

I met with Reidsville Police Detective Robert Bridge at his department to discuss this case.  Detective Bridge stated that he was a member of the Internet Crimes Against Children (ICAC) Task Force.  According to Detective Bridge, he discovered that an Internet Protocol (IP) address in our jurisdiction was being used to download child pornography.

Detective Bridge said he obtained a subpoena for the IP address information, and determined that the IP address was registered to Roberta Hill of 413 North 2nd Avenue in Mayodan, North Carolina.  Using this information, I confirmed that Roberta Ruth Hill and her son, Brian David Hill, resided at this residence through verification of utilities and police officer knowledge.

At 1430, I phoned Chief Charles Caruso and asked him to drive by the residence and photograph it with his cellular phone.  I also requested that he check for any open and unsecured "Wi-Fi" signals in the area.  He photographed the residence and noted that no unsecured "Wi-Fi" signals were being broadcasted by any residents in the area of 413

</div>

**INCIDENT/INVESTIGATION REPORT**
*Mayodan Police Department*

Narr. (cont.) OCA: 2012-00287                                                    Page 3

North 2nd Avenue.

While in Detective Bridge's office, he showed me the webpages and downloaded files that were retrieved by the ICAC software.  The videos downloaded by the Hill's IP address (24.148.156.211) were child pornography, commonly referred to as Pre-Teen Soft Core (PTSC) and Pre-Teen Hard Core (PTHC).  I personally viewed a five second segment of each video and confirmed that it was child pornography.

Detective Bridges said that the person or persons using IP address 24.148.156.211 were utilizing Peer to Peer (P2P) file sharing programs to download pornographic videos and pictures of children.  These programs require that the person operating the computer search for specific content to download.  Therefore, it was determined that whomever downloaded the images and videos using IP address 24.148.156.211 did so deliberately and not accidentally.  Using this information, Detective Bridge and I wrote a search warrant for Roberta Ruth Hill, Brian David Hill and the premises and property located at 413 North 2nd Avenue in Mayodan, North Carolina.

Case 1:13-cr-00435-TDS Document 132 Filed 11/14/17 Page 47 of 103

**Photo** of Brian & Mayodan town attorney & NC pro templar senator, Phil Berger Sr in 2012

Case 1:13-cr-00435-TDS Document 132 Filed 11/14/17 Page 52 of 103

Public Facebook Photo of Melanie Bridge in 2012

10



**Melanie Bridge**

To see what she shares with friends, send her a friend request.

## Work and Education



**Rockingham County District Attorney's Office**
Assistant District Attorney · Oct 2005 to present

## Family



**Robert Bridge**
Brother

ittps://www.facebook.com/melanie.bridge.3/about[6/26/2013 1:02:18 AM]

ittps://www.facebook.com/robertbridge55/friends?collection_token=

11

- Town of Mayodan Corruption is only the beginning of the elites TERROR | USWGO Alternative News **on Mon, 16th Jul 2012 3:24 am** (Edit)

  [...] from taking photos and video that would hurt the power of the power broker. That of course was the chief of police of Mayodan and other unknown security and police squads and the staffers at the Senate Office that [...]

- Congress looking to outlaw reporters right to report on criminal government corruption | USWGO Alternative News **on Mon, 16th Jul 2012 4:12 am** (Edit)

  [...] of the Press on our end has already been threatened at the Mayodan Town Council, where the chief of Police Charles Caruso forced me back and booted me [...]

Case 1:13-cr-00435-TDS Document 132 Filed 11/14/17 Page 98 of 103

Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 1-2 of 101

## AFFIDAVIT

Aprox. 11:30 AM Dec. 24, 2013

I was called by Joy Walter. She asked me a series of questions related to Brian. She asked about his birth date, address, and many other personal questions related to where he lives. She asked me if I would be willing to be a third party custodian if Brian is going to be released under parole. She informed that she didn't know what the judge was going to decide, but she wanted to know if that would be a possibility with me. She informed me that I would be held responsible for him. He would be placed under the Adam Walsh Sex Offender Specific Conditions and therefore would be put under electronic monitoring, would not be allowed on a computer, not allowed near any children under 18 years of age, would not be allowed near a school and would not be allowed to have a phone. She asked me if I would report to them if he violated any of these conditions. She was asking all kinds of personal questions related where Brian lives and about how the apartments are arranged. She also informed me that my computers in my apartment would have to be checked by the parole officer and that they would have to be password protected. She asked me if Brian and I owned any guns and then informed me that we would not be allowed to have any guns. When she found out the apartments were owned by my parents she then started to ask their names. I told her that I need to think about her question in relation to being a third party custodian. She told me that she would call back on Thursday. She called three other times. Under these conditions, I later declined to be a third party custodian. I know he is innocent and would never download child porn.

12

Tuesday December 24, 2013    3:30 PM

Brian called using the pay tel phone, and we talked about 20 minutes  (learned later that he now has $28.00 left out of the $50.00 we put in this morning - $1.10 per minute).  We all got to talk to him.  He told us that they wanted him dead in that jail too because they were not giving him his insulin and asked us if we can do something so he can get his insulin.  He said he kept walking in his cell to try to bring his glucose down and told them he would just not eat and was losing weight.  He said that he talked to Rodney White (SBI undercover) who told Brian that the NC state bureau was not after him.  They did get his emails and was investigating it.   Said something like it was the federal, not the state.  Brian was confused about what he said.  They put Brian in the DNA database.  Then Brian told us when they videotaped him in the nude at Winston Salem, they taped his penis and anus and one of the guys was smiling a lot, and Brian was still upset about that.  He said he had not talked to his lawyer yet.  We told his facebook support group about the jail not giving Brian his insulin, and his friend Kitty advised us to find some medical documentation and fax it to the jail.  We did this.

**Personal and Confidential**

| **To:** Guilford County Jail | **From:** Brian David Hill's Mother and |
| | Grandparents |
| **Fax:** 336-641-2793 | **Page** 6 Pages + Cover Sheet |

Many Medical documents prove cruel & unusual punishment while Brian was in the jail system in NC

## Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 3-18 of 101

Brian's family found out on this day that Brian had been telling the US Marshalls that he was not getting insulin on court days due to the fact that the Orange County Jail in NC had no night nurse, and the Marshalls picked him up before the nurse got to the jail.  Marshalls had someone who could test his blood glucose on this day and found out Brian was telling the truth.  They said they would never put Brian back in that jail again.  Of course this was the time that Brian was ready to come home anyway.

13



CONE HEALTH
The Network for Exceptional Care

CONE HEALTH SERVICE AREA
1200 N Elm Street

HILL,BRIAN D
MRN: 014730125
DOB: ▮▮▮▮▮ Sex: M
Adm:11/7/2014, D/C:11/7/2014

| **Patient Information** | | | |
|---|---|---|---|
| Patient Name | Sex | DOB | SSN |
| Hill, Brian D | Male | 5/26/1990 | xxx-xx-0319 |

**ED Provider Notes by Scott T Goldston, MD at 11/7/2014 3:14 PM**

Author: Scott T Goldston, MD
Filed: 11/7/2014 5:39 PM
Status: Signed
CSN: 630173081       Arrival date & time 11/7/14 1440

Service: Emergency Medicine
Note Time: 11/7/2014 3:14 PM
Editor: Scott T Goldston, MD (Physician)

Author Type: Physician
Note Type: ED Provider Notes

**History**

*First MD Initiated Contact with Patient 11/07/14 1449*

Chief Complaint
Patient presents with
· Hyperglycemia

(Consider location/radiation/quality/duration/timing/severity/associated sxs/prior Treatment)

HPI Comments: 24 yo male with hx of type 1 diabetes and autism presents with hyperglycemia. He came into Marshall's company and was noted to have a blood sugar of 534. He apparently had increased respirations and was given 30 units of his novolin. His glucose came down to 510 a few hours later on a recheck. He missed his insulin last night. Due to his continued elevated glucose and increased respirations he was sent to ED for evaluation. History is mildly limited due to his autism, but he denies any infectious symptoms, vomiting, diarrhea or abd pain. States he thinks he has a history of DKA.

Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 19-21 of 101

Unbelievable that I and my family had evidence, that my own Assistant Federal Public Defender, Eric David Placke had destroyed and deleted evidence in his own email account that would have been used to have a Factual-Basis for suppressing my false confession on June 4, 2014. This evidence is completely legal and documented because, the minute he had replied to an email sent by a member of my family, then he has sent a email which may contain evidence that he conducted misconduct and malpractice to such an extent where I never should have ever trusted my own Attorney, because his actions contradict his own statements in records on email record and on court record.

Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 25 of 101

For proof, check this Document:

Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 27-30 of 101

Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 34-35 of 101

14

Placke lied to Federal Judge N. Carlton Tilley Junior on June 4, 2014, against my wishes that I wanted him to tell the Judge the truth, that my confession was false and was a byproduct of coercion. He also lied to the Federal Judge on my claim of possible evidence tampering, because he had access to the SBI Case file # 2012-20146, and the file was by the SBI Special Agent Rodney V. White's investigation file on Brian David Hill, which is myself. He completely avoided the State Crime Laboratory and completely did not do an Affidavit that I am aware of, so basically he expects the Federal Court to convict me on only his words not under Affidavit. Then of course Mr. Placke read through the SBI report because he told me things verbally in 2014 that he only could have learned from reading those pages. He used that to try to convince me of how difficult it would be to prove my actual innocence and to stick with my false guilty plea. Yet he completely ignored the fact that Page IV stated that over 400+ files had been downloaded using the eMule program between the dates July 20, 2012, and July 28, 2013. So if he is claiming that it may be child porn files, then he has admitted, without ever recanting such claims, that possible child porn files had downloaded from eMule since it was in Mayodan Police Custody on August 28, 2012. Then on Wednesday, October 3, 2012, at 1000 hours, the Detective in Mayodan Police Department persuaded SBI Agent Rodney V. White to take custody of my seized property and conduct the forensic analysis <u>outside of the State</u>

The Federal Court was used as a vehicle against me, to prevent me from ever being served discovery papers and the confession Audio CD, and then the whole criminal case was one-sided with a Assistant Federal Public Defender that had me ready to take the guilty plea by refusing to do any work to prove my Innocence.

Let me begin with the evidence I further argue as to why my Attorney was not my Defense Attorney but <u>was my enemy</u> and was <u>never going to do anything to prove my Innocence.</u> He was working against me every step of the way.

Mr. Placke had apparently, according to a printed copy of an email that he had sent to my family, deleted all email attachments which contain exculpatory and important evidence and information. I shall cite <u>Exhibit 1</u>, in this letter along with a Declaration that makes it valid under the Federal Rules of Evidence.

I shall cite and quote the words from <u>Exhibit 1</u>, that proves that Mr. Placke deleted Affidavits and other important evidence that was sent to his email account from my family, while I was sitting in Jail.

Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 26 of 101

15

Mr Placke,
Attached are files containing info we believe you should have pertaining to Brian D. Hill. If you have any questions or need to contact us, you can contact us at this email or at phone 276-632-2599. We also sent a fax to your office this morning with medical information about Brian.

We want to thank you for all you are doing to help Brian.

Stella & Ken Forinash[attachment "Asperger's Syndrome Info for Prosecutors.pdf" deleted by Eric Placke/NCMF/04/FDO] [attachment "Brian - Dec. 2013 list of health issues and medical - 2.doc" deleted by Eric Placke/NCMF/04/FDO] [attachment "Brian - Dec. 2013 list of health issues and medical.doc" deleted by Eric Placke/NCMF/04/FDO] [attachment "Fax to Guilford County Jail.doc" deleted by Eric Placke/NCMF/04/FDO] [attachment

about:blank

"Ken-Affidavit.jpg" deleted by Eric Placke/NCMF/04/FDO] [attachment "Ken's Affidavit.doc" deleted by Eric Placke/NCMF/04/FDO] [attachment "Roberta-Affidavit.doc" deleted by Eric Placke/NCMF/04/FDO] [attachment "Roberta-Affidavit.jpg" deleted by Eric Placke/NCMF/04/FDO] [attachment "Stella-Affidavit.doc" deleted by Eric Placke/NCMF/04/FDO] [attachment "Stella-Affidavit.jpg" deleted by Eric Placke/NCMF/04/FDO]

This is all of the proof of Brian's actual innocence, set up threats that whoever sent these emails in 2013 and emails and text in 2015, Connections between Investigators & Politicians Unethical & Conflict of interest, ineffective attorney, and fraud upon the court that I'm going to put in this document. You have access to all of this proof and more In Brian's 2255 Motion in various documents because we have hundreds of pages of proof. To make these documents and exhibits easier to find, **check the last 4 pages**.

We noticed in Document 210 Filed 10/21/19 by a Middle District of NC magistrate judge this on page 19, so that is why we decided to put these documents here and location of them in Brian's 2255 Motion of actual innocence and Constitution violations in this court. November – December, 2017 The Merits As explained above, all of Petitioner's grounds are time-barred.

16

**However, if the Court were to reach the merits of Petitioner's grounds for relief, it would deny them.**

Here is a list of the new evidence that was **not** brought up during Brian's hearings in 2014 but is brought up in his 2255 Motion of actual innocence with proof by Brian, his mom and his grandparents: We have put our information of Brian's innocence to this court as part of his 2255 Motion in 17 different categories with the document, date, page number and Exhibit number on the bottom of this document (last 4 pages).

Brian ran an alternative news website while living in Mayodan, NC from 2009-2012. This website was called "USWGO". He also had a YouTube video page (**11**). He started going to town hall meetings in Mayodan, NC in March and April, 2012 where he met the NC State pro templar senator, Phil Berger who was also the attorney for the town of Mayodan (**11**). Brian did research and talked about agenda 21 and the unconstitutional part of the NDAA at the Mayodan town hall meetings. He got a petition signed by some citizens of Mayodan and Rockingham County, NC and presented this petition to Senator Berger at the May, 2012 town hall meeting. Brian attended the July Mayodan town hall meeting on July 9, 2012. As soon as the meeting was over he went up to Senator Berger with microphone in hand to ask him a question about this petition. Immediately the Mayodan chief of police, Charles Caruso grabbed Brian and told him "Session is closed" as the reporter from the Rockingham Update was still there (**10**). That video remains on YouTube as proof. He also wrote an article on his USWGO website about the incident.

On August 28, 2012 there was a police raid on Brian's and his mom's house. Brian's grandparents were visiting at the time. The Mayodan Police chief whom Brian had been writing articles about and who was on the video on July 9, 2012 was there with many police from Mayodan, NC. Brian and his family were forced to stand on the front porch for hours while the police confiscated all of Brian's & his mom's computers, hard drives, etc. Mr. Caruso kept telling Brian in front of Brian's family to "Fess up or his mom would be held responsible because there were only two people who lived in this house, and he didn't think it was the mother"(**10**).

Before they left the house, they told Brian and his mom to come down to the police station the next morning to pick up the inventory report of all items confiscated from their house. Brian and his mom spent that night at this house where they had lived for over 7 years without access to a phone because their phone was an internet phone, and the police took their Internet router. Brian has brittle diabetes and seizures resulting in concussions when his blood glucose goes real low so they would not be able to call for help. Brian also has a developmental disability called "Autism" and OCD which means that he was uncomfortable about germs after the police had touched everything in their house (**2**). Diabetes, seizures, autism and OCD are all covered under the "Americans with Disabilities Act." There are supposed to be federal laws that when the police question someone with autism, they are not supposed to do this alone. They are supposed to have supports. Someone with brittle diabetes requires blood glucose monitoring, insulin if it is high and sugar drinks or glucose if it is low. Brian was questioned at

lunchtime after the traumatic event of the police raid the afternoon before by 2 police who broke the Americans with Disabilities laws by not providing any supports (2). At first Brian told them he was innocent and there was a virus in his computer, but then he confessed to it and repeated what the police said. He even told them that he had a netbook computer at home that they didn't get and told them there was child porn on that too and told them he had been downloading it for a year. The police came to Brian's house, picked up the netbook computer and added it to the inventory. The entire time Brian was in the various jails in NC he was not given all of his prescribed medicine insulin and had weakened and lost a lot of weight. Without the supply of insulin doctors had prescribed for Brian, he would have died (2). He was getting no help for his autism or his OCD so he did falsely say he was guilty so he could come home and get the medicine he needed to survive, and so he wouldn't lose his SSI disability money and Medicaid because if he was in jail for 12 months, he would have lost that too, and Brian had been living off of this money since he was a baby due to brittle diabetes and autism and would never be able to survive without money and Medicaid, insulin and could not work for pay. On most court days, he was not given any insulin at all until he returned to jail that night (2). The US Marshall found this to be true and told Brian's family in November, 2014 (a court day) when they found out Brian had not been lying when he told them he was not given insulin because the Marshalls removed Brian from jail before the nurse got there. They did test his blood glucose that day, and it was super high so they took him to the emergency room in Cone Hospital in Greensboro, NC. His court day was rescheduled.

Brian's court appointed attorneys did not show him the discovery papers from the NC State Bureau of investigation (SBI) (4). The first attorney let Brian hear the tape from the Mayodan police department where Brian first said he was innocent and had a virus on his computer then said on tape that he was guilty, and he showed Brian a few pages, and that was all he went over with Brian. He would not let Brian's family read any part of the discovery or hear the tape. When Brian got home, he asked his 2nd court appointed attorney if he and his family could see the discovery together. We got a chance to see it in January, 2015. We saw the proof that if Brian had good attorneys, all the proof of his innocence was in the government's discovery material: the conflicts between the Mayodan police report and the NC SBI report. When you compare both of these, they prove Brian gave a false confession (Autism) and misleading statements (6). We have found out that part of the traits of people with autism is that they get confused when 2 people question them without following the guidelines for questioning people with the Autism disability and naturally get false confessions. Brian proved this to be true.

The parts of the discovery that Brian and his family wrote in his 2255 Motion was that when he said he had downloaded it for a year was not true (It was a false confession) (6). According to the Mayodan police report, it was being downloaded to Brian's laptop computer on **July 20, 2012** which was 11 days after Mayodan police chief removed Brian from the town hall meeting, 11 days after Brian put this video on his YouTube video page and 11 days after he wrote an article about this on his USWGO page and was doing more investigative reporting about Phil Berger (Mayodan town attorney & NC pro templar senator), Charles Caruso (Mayodan police chief) and Mayodan, NC. According to the Mayodan police report, it had downloaded for one week, not a year like Brian said (6). According to the NC SBI report, it was downloaded on **July 20, 2012 until July 28, 2013**. Mayodan police confiscated Brian's laptop

18

computer during the police raid as their inventory states on the date of **August 28, 2012**. **The NC SBI report shows it was downloaded for 11 months when Brian did not have this computer which meant that the NC Mayodan police and the NC SBI in Greensboro, NC were downloading child porn for 11 months or there was a virus on Brian's computer just as he said at first when the Mayodan police questioned him when he told them he was innocent, and there was a virus on his computer (7).** The NC SBI report showed there was no child porn on the netbook computer that the Mayodan police confiscated and was the last item on their inventory list (6). That was two false confessions (autism) that Brian gave and was proven false. Both of his 2 court appointed attorneys had access to this information and could have cleared Brian David Hill's name (1), but neither one did so it is new evidence not covered before 2014 in court to prove Brian gave false confessions due to autism, and being questioned by 2 police at lunch time who ignored his disabilities and the Americans with Disabilities Act.

Other things which was not brought up in court, new information and proof of actual innocence which Brian and his family brought up in his 2255 Motion was that he was set up with child porn on his computer. He received 2 emails in 2013 from the person or people who actually admitted that they were the ones who put it in Brian's computer in 2012. They admitted that they planned to set up other alternative news people. Sue Basko, attorney from Illinois and California who had helped other alternative people contacted Brian's court appointed attorney and the prosecution attorney right after Brian's arrest and informed them that Brian had autism and was innocent. She told them about the child porn set ups that alternative news people were getting and the attempts to set up alternative news people with child porn (9), and that was what happened to Brian. He had asked her for help before in 2013, but she found out on Pacer that there was a warrant out for his arrest in December, 2013. Both attorneys ignored this and admitted in court that they did (1). This proves the prosecution guilty of breaking rule 3.8. He wanted to make sure that an innocent man with many disabilities was punished.

Declaration from Sue Basko (8): See this document **number 46**: After Sue Basko spoke up for Brian and his innocence in court in September, 2014, and after Brian was released from jail in November, 2014, and after he and his family saw the discovery together in January, 2015 and found proof about his false confession, Brian tried to do an appeal but was told that it didn't make any difference if he was innocent, he waited too late to appeal his case, but during this time, other things were done to Brian. His second attorney, Scott Coalter had asked the judge if he could have the computers which did not have child porn returned, and the judge said he could. Brian was appointed an attorney who went to the Mayodan police department and brought back to Brian all of the laptops which the Mayodan police department confiscated from his home that did not work in February, 2015. These were old laptops which no longer worked. Brian saved them for parts. There was one hard drive which looked like it would work. Brian's grandparents brought a case for this hard drive so he could check it out. This was on Valentine's Day in 2015. When Brian checked it, he saw child porn for the first time in his life, and he thought it was horrible. He ran upstairs and told his family what was on the hard drive. This was Saturday, it was starting to snow, and Brian, his mom & grandparents didn't want it in their home so they destroyed the hard drive into different pieces, put each part in a different grocery bag and loaded up

19

everything the Mayodan police had returned to Brian, and Brian and his family got in the car and stopped at several gas stations and emptied one bag at a time in various trash cans at various locations. We ate at a restaurant in Rocky Mount, VA, and then finished throwing everything out at some more gas stations one bag at a time until everything returned was gone. That night Brian received a text message on the cell phone he had borrowed from his grandmother from someone about the child porn on the hard drive (9). Attorney Sue Basko had gotten some threat messages from the same person/people threatening Brian's life if he didn't stop the appeal and threatened Sue Basko, some of Brian's court appointed attorneys, Brian and his family. She sent this threat message to Brian's mom, his grandparents and the appeal attorney in email. Brian's grandparents sent an email to his probation officer for him about this. Brian put all of this in the court records in 2015 (9). This too was new evidence and was ignored by this court.

The court did appoint Brian another attorney after receiving Sue Basko's declaration (8). He had the same discovery materials from the Mayodan police department and the NC SBI and could have brought out the conflicts (4) which would have proven Brian was innocent. He could have brought out more about Brian's disabilities but didn't (2). At this point Brian's health had deteriorated more, and he and his family were aware that this attorney would not help either. (15).

Another piece of new evidence that was not brought out in court in 2014 but was brought out in Brian's 2255 Motion was the relationships of everyone in Brian's case (16). Brian had upset the Mayodan town attorney who is also the NC pro templar senator, 3rd in line to be governor of North Carolina. His son is also an attorney and was the district attorney for Rockingham County, NC. His name is all over the discovery paper, so he was part of the team who wanted Brian arrested and set up with child porn. His name is Phil Berger, Jr. The raid on Brian's house was done by the Mayodan police chief and police under him in Mayodan, NC. There was another police who was from the Reidsville, Rockingham County police department. Brian found out on Facebook that he is a brother of the Rockingham County, NC assistant DA who had worked with Phil Berger Jr for years. He and the detective from Mayodan who works under police chief, Caruso were the two detectives who questioned Brian alone during lunchtime and got his false confession. They talked about Brian's website and how they liked his USWGO page. Brian gave proof to the court about this in his 2255 Motion and other proof of his actual innocence that was not brought out or acknowledged in 2014 and how his constitutional rights were being violated in NC. Ineffective counsel and proof (1) (15).

Unconstitutional conditions (3)

Our family has noticed that many in the court system in the Middle district of NC lack compassion. Brian's goal is to prove to this court that he is innocent and was set up due to his alternative news reporting when he was young. Brian has made mistakes, and the court has too. Brian and his family can't afford a federal attorney, and Brian has asked for one for his 2255 Motion. He has had to learn laws on his own. Brian wants and deserves his freedom back and to vacate all of this. If he was guilty, that would be another story. Please give Brian his freedom back, his constitutional rights and his rights as a disabled person. Yes, under the influence of an autistic meltdown, he did say some rude things to

20

his first probation officer. After his meltdown was over, he felt bad about that and apologized to her by phone, fax and even asked his mom to send her an email. His intent is to continue being a law abiding citizen. We have a group in Virginia by the name of REACH that we can contact for help anytime there is an autistic crisis in the future. Please realize Brian is totally innocent of any real crimes as he does not have INTENT to be a criminal. He respects our country and the laws of our land. The reason he got in trouble was because of his blunt reporting. He has learned never to be a reporter again. He just wants his freedom to be able to take better care of his brittle diabetes and health.

(1) Case 1:13-cr-00435-TDS **Ineffective Attorney Proof Document - Placke** 128  Filed 11/14/17  Page 7, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 27, 28, 29, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, 73, 83 of 101 (Exhibit 1, 3, 5, 15); Case 1:13-cr-00435-TDS Document 128-1  Filed 11/14/17  Page 27, 32-33. 37-38; 41, 57 of 71; Case 1:13-cr-00435-TDS  Document 130  Filed 11/14/17  Page 3 of 27; Case 1:13-cr-00435-TDS Document 131  Filed 11/14/17  Page 23-39; 55-68 of 101;  Case 1:13-cr-00435-TDS Document 134  Filed 11/14/17  Page 16-18; 48-51; 53-56; 59-62; 66-70; 85-87 of 99; Case 1:13-cr-00435-TDS  Document 136  Filed 12/04/17  Page 3-11 of 11; Case 1:13-cr-00435-TDS Document 136-1  Filed 12/04/17  Page 1 of 19

(2) **Disabilities (ADA)** Document 128  Filed 11/14/17  Page 7, 27, 28, 31, 34, 35, 36, 42, 43, 50 – 60, 62-75. 90-92 of 101 (Exhibit 53, 15, 17 part 1& part 2); Case 1:13-cr-00435-TDS Document 128-1  Filed 11/14/17  Page 8, 33-34-36; 41-57 of 71 (Exhibit 2); Case 1:13-cr-00435-TDS  Document 131  Filed 11/14/17  Page 4 of 10; Case 1:13-cr-00435-TDS Document 131  Filed 11/14/17  Page 3-21 of 101; Case 1:13-cr-00435-TDS  Document 134  Filed 11/14/17  Page 16-18; 22; 41; 44-45; 47-53; 58-59; 74; 77-78; 88-99 of 99;  Case 1:13-cr-00435-TDS Document 137  Filed 12/04/17  Page 4 of 25; Case 1:13-cr-00435-TDS Document 150-1 Filed 04/06/18 Page 10 of 29

(3) **Constitutional Rights** Document 128  Filed 11/14/17  Page 9, 11, 22, 23, 24, 28, 34, 35, 36, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 62-66 of 101;  Case 1:13-cr-00435-TDS Document 128-1  Filed 11/14/17  Page 35-36, 41, 45-46; 57-60  of 71; Case 1:13-cr-00435-TDS  Document 134  Filed 11/14/17  Page 52; 70 of 99; Case 1:13-cr-00435-TDS Document 150-1 Filed 04/06/18 Page 1-4 of 29;  Case 1:13-cr-00435-TDS Document 150-1 Filed 04/06/18 Page 1-29 of 29

(4) **Discovery** Document 128  Filed 11/14/17  Page 10, 11, 20, 32, 33, 39, 40, 42, 49 – 60, 62-74, 75-87, 92-93  of 101 (Exhibit 43, 14, 17 part 1 & 2) Document 33, page 6; Case 1:13-cr-00435-TDS  Document 128-1  Filed 11/14/17  Page 16-27, 28-32; 38-39 of 71; (Exhibit 23, 36, 33, 45, 12, 34); Document 84-2; Case 1:13-cr-00435-TDS  Document 128-1  Filed 11/14/17  Page 57-60 of 71  (Exhibit 50, 51, 52, 49);  Case 1:13-cr-00435-TDS  Document 130  Filed 11/14/17  Page 5 of 27; Case 1:13-cr-00435-TDS  Document 133  Filed 11/14/17  Page 1-4; 5-7;  of 105; Case 1:13-cr-00435-TDS  Document 133  Filed 11/14/17 Page 29-44;  46-54; 61-65; 66-73; 74-75; 77-78; 98-104 of 105; Case 1:13-cr-00435-TDS Document 134  Filed 11/14/17  Page 20; 44; 48-54; 57-58; 62-66; 68-69; 81-86  of 99;  Case 1:13-cr-00435-TDS  Document 136  Filed 12/04/17  Page 1-11 of 11;  Case 1:13-cr-

00435-TDS Document 136-1 Filed 12/04/17 Page 1-19 of 19; Case 1:13-cr-00435-TDS Document 136-2 Filed 12/04/17 Page 1-27 of 27; Case 1:13-cr-00435-TDS Document 136-3 Filed 12/04/17 Page 1-4 of 4; Case 1:13-cr-00435-TDS Document 136-4 Filed 12/04/17 Page 1-10 of 10; Case 1:13-cr-00435-TDS Document 137 Filed 12/04/17 Page 1-25 of 25; Case 1:13-cr-00435-TDS Document 137-1 Filed 12/04/17 Page 1-5 of 5; Case 1:13-cr-00435-TDS Document 137-3 Filed 12/04/17 Page 1-8 of 8; Case 1:13-cr-00435-TDS Document 137-4 Filed 12/04/17 Page 1-2 of 2; Case 1:13-cr-00435-TDS Document 137-6 Filed 12/04/17 Page 1-8 of 8; Case 1:13-cr-00435-TDS Document 137-7 Filed 12/04/17 Page 1-2of 2; Case 1:13-cr-00435-TDS Document 71-5 Filed 04/03/15 Page 1 of 4; Case 1:13-cr-00435-TDS Document 150-1 Filed 04/06/18 Page 1-29 of 29

(5) **Conflicts between Police report & NC SBI Discovery Report** Document 128 Filed 11/14/17 Page 14, 50-60, 82-83 of 101; Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 53-54; 59-66; 79-86 of 99

(6) **False Confession=Autism** Document 128 Filed 11/14/17 Page 14, 15, 19, 27, 28, 33, 35, 36, 37. 38, 39, 40, 41, 42, 43, 49-60, 62-75, 81, 90-92 of 101; Document 51, 15, 16, 19 (Exhibit 15, 17); Case 1:13-cr-00435-TDS Document 128-1 Filed 11/14/17 Page 8-9, 63, 65 of 71; TDS Document 134 Filed 11/14/17 Page 19; 40; 48-52; 59; 64-66; 78-79; 81-86 of 99

(7) **Computer Virus or Trojan Horse or Hacker** Document 128 Filed 11/14/17 Page 14, 16, 22, 23, 24, 25, 26, 28, 29. 30, 31, 32, 33, 34, 42, 53, 62-72, 78, 79, 82-87, 89 of 101 (Exhibit 11, 13, 10); Document 51, Document 128-1 Filed 11/14/17 Page 5-7, 10, 23 of 71 (Exhibit 4 Article 1 & 2); Case 1:13-cr-00435-TDS Document 129 Filed 11/14/17 Page 1 of 5; Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 40-54; 78-89 of 101; Case 1:13-cr-00435-TDS Document 133 Filed 11/14/17 Page 55-60; 65 of 105; Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 16-18; 19; 38; 47-48; 52; 57-58; 63 of 99

(8) **Witnesses** Document 128 Filed 11/14/17 Page 16. 27, 29, 30, 31, 32 of 101 **(Document #46 Entered 9/30/2014)** (Exhibit 7, 8, 9, 21); Case 1:13-cr-00435-TDS Document 128-1 Filed 11/14/17 Page 57-60 of 71 (Exhibit 50, 51, 52, 49); Document 131 Filed 11/14/17 Page 2 of 101; Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 34-71; 73-75; 76-87 of 99; Case 1:13-cr-00435-TDS Document 137-5 Filed 12/04/17 Page 1-2 of 2; Case 1:13-cr-00435-TDS Document 150-1 Filed 04/06/18 Page 1-29 of 29

(9) **Threat messages admitting they set Brian up in 2013 & 2015** Document 128 Filed 11/14/17 Page 16, 81-82 of 101 (Exhibit 6, 7, 8, 9, 27, 19) (Document #46 Entered 9/30/2014); Document 128-1 Filed 11/14/17 Page 10-11 of 71; Case 1:13-cr-00435-TDS Document 131 Filed 11/14/17 Page 69-71 of 101; Case 1:13-cr-00435-TDS Document 133 Filed 11/14/17 Page 74-75 of 105; Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 41; 42-43; 49-50 of 99; Case 1:13-cr-00435-TDS Document 136-1 Filed 12/04/17 Page 7-9; 11-19 of 19; Case 1:13-cr-00435-TDS Document 71-1 Filed 04/03/15 Page 1-6 of 6; Case 1:13-cr-00435-TDS Document 71-4 Filed 04/03/15 Page 1-13 of 13

22

(10) **Threat by police chief on day of police raid and 11 days before child porn was downloaded to Brian's computer** Document 128 Filed 11/14/17 Page 15, 72, 82, 100-101 of 101 (Exhibit 37, 27. 35); Case 1:13-cr-00435-TDS Document 128-1 Filed 11/14/17 Page 1 of 71 Exhibit 32, 30 or 28); Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 16; 37-39; 46; 58; 60-61; 64; 66; 75; 78 of 99; Case 1:13-cr-00435-TDS Document 150-1 Filed 04/06/18 Page 5 of 29

(11) **Proof that Brian was in alternative news before child porn set up** Document 128 Filed 11/14/17 Page 17, 22, 61, 93-101 of 101 (**Exhibits** 21, Part 1,2,3, 4, 5, 44, 24, 18. 22. 47, 25, 29. 26, 27); Case 1:13-cr-00435-TDS Document 128-1 Filed 11/14/17 Page 1-3, 10, 13, 45; 61-62 of 71 (Exhibit 20); Case 1:13-cr-00435-TDS Document 130 Filed 11/14/17 Page 1 of 27; Case 1:13-cr-00435-TDS Document 133 Filed 11/14/17 Page 22-28; 29; 64-65; 93-97 of 105; Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 1-12; 13-15; 35-37; 39; 43; 60-62 of 99; Case 1:13-cr-00435-TDS Document 138 Filed 12/04/17 Page 5-7; 8-25; 26-34 of 34

(12) **Plea agreement** Case 1:13-cr-00435-TDS Document 128 Filed 11/14/17 Page 20, 21 of 101; Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 50 of 99; Case 1:13-cr-00435-TDS Document 136-2 Filed 12/04/17 Page 19 of 27

(13) **Actual Innocence** Document 128 Filed 11/14/17 Page 34, 35, 40, 41, 44, 45, 46, 47, 48, 49, 50-60, 62-75, 78, 81, 82, 88 of 101 (Exhibit 48, 17); Document 33 page 6; Document 128-1 Filed 11/14/17 Page 10; 60- of 71 (Exhibit 6); Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 16-18; 19-20; 21-22; 50-55; 59-65; 71 of 99; Case 1:13-cr-00435-TDS Document 140 Filed 12/07/17 Page 1-6 of 6; Case 1:13-cr-00435-TDS Document 150-1 Filed 04/06/18 Page 1-29 of 29

(14) **Police interrogation** Case 1:13-cr-00435-TDS Document 128 Filed 11/14/17 Page 38, 49 – 60, 62-70 of 101 (Exhibit 5, 14, 17); Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 64-65; 79-87 of 99

(15) Case 1:13-cr-00435-TDS **Ineffective Attorney Proof  Document – (Coalter)** Document 128 Filed 11/14/17 Page 49, 50, 73. 83 of 101; Case 1:13-cr-00435-TDS Document 128-1 Filed 11/14/17 Page 27-31, 41, 57 of 71; Case 1:13-cr-00435-TDS Document 133 Filed 11/14/17 Page 81-92 of 105; Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 48-49; 53-55; 59-62; 70; 75 of 99; Case 1:13-cr-00435-TDS Document 137 Filed 12/04/17 Page 1-25 of 25

(16) **Connections between Investigators & Politicans  Unethical & Conflict of interest** Case 1:13-cr-00435-TDS Document 128 Filed 11/14/17 Page 101 of 101 (Exhibit 35) Case 1:13-cr-00435-TDS Document 128-1 Filed 11/14/17 Page 16-2 7, 69 of 71; (Exhibit 23, 36, 33, 45, 12, 34); Document 84-2; Case 1:13-cr-00435-TDS Document 131 Page 1-2; Document 132 Filed 11/14/17 Page 46-47, 52, 57-68, 85-88, 98 of 103  Document 133 Filed 11/14/17 Page 8-10; 13-16; 74-75 of 105; Case 1:13-cr-00435-TDS Document 134 Filed 11/14/17 Page 1-12; 45-46; 58; 63-64; 69-70 of 99; Case 1:13-cr-00435-TDS Document 136-2 Filed 12/04/17 Page 15-16 of 27

23

(17) **U.S. Attorney** (rule3.8) Case 1:13-cr-00435-TDS  Document 128-1  Filed 11/14/17  Page 37-40, 41; 60-63 of 71 (Exhibit 19, 33);  Case 1:13-cr-00435-TDS  Document 134  Filed 11/14/17  Page 48-51; 55, 71 of 99;  Case 1:13-cr-00435-TDS  Document 137  Filed 12/04/17  Page 1-25 of 25;  Case 1:13-cr-00435-TDS Document 150-1 Filed 04/06/18 Page 1-29 of 29.

I, Stella Burnette Forinash, declare pursuant to Title 28 U.S.C. section 1746 under penalty of perjury under the laws of the United States of America that what I have written here and on the "Supplement of Fraud Upon the Court" (21 pages) is true and correct to the best of my knowledge as Brian & I offer proof document information and location of where this proof is located.  I know we are presenting a lot of information and apologize for that.  I thank you for your time reading these documents.  It's my sincere hope **that Brian will be free of this miscarriage of justice (20.4.1.3 Section 276 (1)** and will be removed from the sex registry as that is supposed to be for guilty people and not the innocent.

Stella Burnette Forinash
201 GREYSON ST
MARTINSVILLE VA 24112

24