In the United States District Court
For the Middle District of North Carolina



FILED
JAN 2 7 2022
IN THIS OFFICE
Clerk. U.S. District Court
Greensboro, N. C.
By

**Brian David Hill,**
**Petitioner/Defendant**

v.

**United States of America,**
**Respondent/Plaintiff**

)
)
)
)
)
)
)
)
)
)

**Criminal Action No. 1:13-CR-435-1**

**Civil Action No. _____**

# BRIEF / MEMORANDUM OF LAW AND ATTACHED EXHIBITS IN SUPPORT OF THE PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY. MOTION UNDER 28 U.S.C. § 2255

Criminal Defendant Brian David Hill ("Brian D. Hill", "Hill", "Brian",

"Defendant", "Petitioner") is respectfully filing this Brief / Memorandum of Law

in support of Petitioner's Motion to Vacate, Set aside, or Correct a Sentence by a

Person in Federal Custody, pursuant to 28 U.S.C. § 2255 ("2255 Motion").

Pursuant to this Brief / Memorandum of Law in support of Petitioner's Motion to

Vacate, Set aside, or Correct a Sentence by a Person in Federal Custody,

representing himself unless an attorney is appointed by this Court for timely filing

of the foregoing 2255 Motion, respectfully files this Brief / Memorandum of Law

explaining why the 2255 Motion should be granted by this Court.

1

This is pursuant to 28 U.S.C. § 2255 and the Federal Petition for a Writ of Habeas Corpus under the United States Constitution, giving a criminal Defendant the ability to collaterally attack the sentence and conviction on the grounds of:

GROUND ONE      That the Trial Court had tried the Supervised Release Violation charge (Documents #156, #157, and #158) on a Trial by Bench basis without a Jury and without the reasonable doubt standard in conflict with the case law decision by Haymond under the U.S. Supreme Court. See United States v. Haymond, 139 S. Ct. 2369 (2019).

GROUND TWO      That the Trial Court erred and/or abused discretion in finding that the evidence before it was sufficient to find that Petitioner had violated his supervised release by violating Virginia Code § 18.2-387 because the evidence fails to show that Petitioner acted intentionally to make an obscene display or exposure of his person.

GROUND THREE     That the Trial Court had abused its discretion when it denied Petitioner's motion to continue the revocation hearing until after the underlying criminal appeal was completed.

GROUND FOUR     Actual Innocence; That Brian David Hill was actually innocent and/or legally innocent of the violation; and would have a better chance at being found innocent in State Court rather than being forced to withdraw appeal due to the interference from the Federal Court in not

2

allowing the State Court to conclude its criminal trial process. Therefore, regardless of Brian filing a motion to withdrawing his appeal in the Circuit Court of Martinsville, he still asserted his Actual Innocence and had preserved that issue for further filings in either the Circuit Court of Martinsville, an Absolute Pardon from the Governor of Virginia, or on the basis of the Petition for the Writ of Actual Innocence in the Court of Appeals of Virginia. The withdrawing of appeal does not declare guilt and does not admit guilt. The Judge Hon. Giles Carter Greer actually stricken from the record that the Law Clerk or whoever typed up the final conviction in Circuit Court had typed the words "DEF ~~CHANGED HIS PLEA TO GUILTY AND~~" and was struck from the record. So there is no guilty plea at all and the State Criminal Case can still be overturned in the future on the ground of Actual Innocence.

GROUND FIVE     Fraud on the Court

GROUND SIX Unconstitutional Interference with the State Court Process and/or Unwarranted Usurpation of Power by the Federal Court against the State Court Process in violation of the Tenth Amendment of the United States Constitution.

GROUND SEVEN     It is now possible and Petitioner suspects that the originating judicial officer who revoked the supervised release on document

3

#200 may or may not be a target of a blackmail scheme involving child rape and murder due to claims by Attorney L. Lin Wood asserting in public statements that "judges" and "officials" were being ordered to rape and murder children on video recordings and thus were compromised and no longer impartial to the decisions they made while being blackmailed. Regardless of whether the blackmail was material to any decisions made against Brian David Hill, it would still make the judge partial and/or biased and/or compromised. This violates the U.S. constitution's guarantee that the trier of fact remain impartial during the criminal proceedings of a case.

GROUND EIGHT     SPOLIATION OF EVIDENCE AKA DESTRUCTION OF EVIDENCE BY (#1) MARTINSVILLE POLICE DEPARTMENT, (#2) SOVAH HEALTH MARTINSVILLE HOSPITAL (WHILE THEY KNEW BRIAN DAVID HILL WAS UNDER LAW ENFORCEMENT CUSTODY) (#3) AND/OR COMMONWEALTH ATTORNEY GLEN ANDREW HALL ESQUIRE VIOLATES THE CRIMINAL DEFENDANT'S CONSTITUTIONAL RIGHT TO DISCOVERY EVIDENCE MATERIAL PERTINENT TO HIS CRIMINAL CASE PURSUANT TO BRADY V. MARYLAND, 373 U.S. 83 (1963) AND GIGLIO V. UNITED STATES, 405 U.S. 150 (1972). DESTRUCTION OF EVIDENCE ALSO MAY BE FRAUD ON THE COURT

4

GROUND NINE IMPROPER VENUE, LACK OF TERRORITORIAL

JURISDICTION; IMPROPER JURISDICTION ACCORDING TO

CHANGE OF JURISDICTION AS REQUESTED BY THE U.S.

PROBATION OFFICE AND ACCORDING TO THE SIXTH

AMENDMENT OF THE UNITED STATES CONSTITUTION; THIS 2255

MOTION AND CASE SHOULD ALSO BE TRIED IN THE

JURISDICTION OF THE ALLEGED SUPERVISED RELEASE

VIOLATION IN MARTINSVILLE, VIRGINIA; THE MIDDLE

DISTRICT OF NORTH CAROLINA FEDERAL JUDGES HAD NO

LEGAL AUTHORITY OR JURISDICTION TO INTERPRET VIRGINIA

LAW AND ATTEMPT TO OVERRIDE VIRGINIA LAW; ALSO

VIOLATES FEDERAL RULES OF CRIMINAL PROCEDURE 18

GROUND TEN FILED EVIDENCE NOT TAKEN INTO

CONSIDERATION AT TRIAL ON SEPTEMBER 12, 2019; WITNESSES

FILED WITH THE COURT DIRECTLY MATERIAL TO THE TRIAL

WERE NOT CALLED FOR TO TESTIFY AT TRIAL ON SEPTEMBER

12, 2019; FILED AFFIDAVITS NOT TAKEN INTO CONSIDERATION

AT TRIAL; VIOLATION OF DUE PROCESS CLAUSE OF U.S.

CONSTITUTION, DEPRIVATION OF CRIMINAL DEFENDANT'S DUE

PROCESS RIGHTS UNDER THE CONSTITUTION

5

GROUND ELEVEN    VIRGINIA'S GENERAL ASSEMBLY HAD

CREATED NEW LAW GIVING BRIAN DAVID HILL A NEW

CRIMINAL DEFENSE (WHICH IS LEGAL INNOCENCE WHEN A

DEFENSE CAN BE PROVEN TO A COURT AND PERMISSIBLE)

WHICH WARRANTS ACQUITTAL ON A VIRGINIA CONVICTION

OR THAT BRIAN DAVID HILL CANNOT BE CONVICTED OF

INDECENT EXPOSURE UNDER VIRGINIA CODE § 18.2- 387 DUE TO

A NEW LEGAL DEFENSE FOR A CRIMINAL CHARGE

AUTHORIZED BY VIRGINIA CODE § 19.2-271.6 WHICH HAD

BECAME LAW IN 2021


There is new evidence, a new Virginia Law, and a much need to expand the

record and even appoint a Special Master which the record needs to be developed

and evidence thoroughly investigated before disposition of this timely 2255 case.

Therefore, Petitioner requests appointment of counsel for this 2255 case for

purposes of discovery, expanding the record, and to develop the facts and of the

truth. The facts and truth are together on this and should be allowed to be

developed before disposition.

Petitioner had learned from his first filed 2255 Motion under Document

#125 how he filed quite a lot of evidence, like over 50 Exhibits and lengthy

6

Declarations separate from the first 2255 Motion over a different conviction not at issue with this 2255 Motion case. So, Petitioner is ensuring in this 2255 Motion that whatever was already filed on the record in this case will be used as reference and anything not filed in the record in this case will be filed as additional Exhibits. Table of authorities will not be included to save pages and make the Brief / Memorandum of Law less pages to review over. Petitioner will also make things easier for the U.S. Attorney Office by making sure that his mother emails a digital PDF copy of the 2255 Motion, Exhibits, and Brief / Memorandum of Law to ensure that the U.S. Attorney Office has an easier time reviewing over the evidence and Brief / Memorandum of Law to be fair and making sure that the mistakes of the first 2255 Motion over a different conviction/judgment does not occur in the second Motion. It is considered the First 2255 Motion for the conviction entered on Documents #200 and #186. Mistakes from the first which led the Government to push for an oppressive pre-filing injunction. Petitioner will only file Exhibits which are not in the record already in this case.

Disclaimer: All links and exhibits printed from the internet were obtained by family of Petitioner and Petitioner did not use the internet during this exhibit gathering process for this 2255 Motion. Any links which is text can be obtained by the family of Petitioner and given to Petitioner as text files or document files which were used in the 2255 Motion Brief / Memorandum of Law. Also the Wayback

7

Machine was used by Brian's family since links can be erased at any time due to changes overtime. This is to help preserve the evidence referenced and/or used in the Brief / Memorandum of Law.

The U.S. District Court may want or need to enter a Writ of Certiorari (Review) asking the Clerk to obtain copies of the state records from the Circuit Court of the City of Martinsville if it aids in making a decision of the conviction of Document #200 regarding charging Document #157.

8

# TABLE OF CONTENTS

Cover page, GROUNDS ASSERTED......................................................1

TABLE OF CONTENTS...............................................................9

BEGINNING ARGUMENTS..........................................................10

BACKGROUND OF THE CASE......................................................13

CHARGING DOCUMENTS AT ISSUE IN THIS 2255 CASE..................16

AT ISSUE IN THIS 2255...............................................................22

JURISDICTION, VENUE AND TIMELINESS....................................32

GROUND I..............................................................................35

GROUND II.............................................................................33

GROUND III............................................................................84

GROUND IV – ACTUAL INNOCENCE - LEGAL INNOCENCE.......88/89

GROUND V – FRAUD ON THE COURT.......................................106

GROUND VI ..........................................................................111

GROUND VIII .........................................................................145

GROUND IX ......................................................................154/155

GROUND X ...........................................................................171

GROUND XI ......................................................................176/177

CONCLUSION.........................................................................182

EXHIBIT LIST FOR 2255 BRIEF / MEMORANDUM OF LAW...............186

9

CERTIFICATE OF SERVICE........................................................190

## **BEGINNING ARGUMENTS**

1. Petitioner will begin his arguments.

2. The arguments herein will assert why the sentence and judgment of conviction should be completely vacated or set aside.

3. If Petitioner's 2255 Motion is granted for vacating or setting aside this Supervised Release Violation conviction, Petitioner asks that this Court inform the Western District of Virginia (pursuant to Transfer Order of Supervised Release case under Documents #262 and #263), as well as inform U.S. Probation Officer Jason McMurray of Roanoke, Virginia and the Chief Probation Officer that the Revocation Judgment was reversed; if that is the case.

4. The jurisdiction for this 2255 Motion in this Court may or may not be considered legally appropriate as the Chief Judge Francis Urbanski for the Western District of Virginia had advised Petitioner that he can only challenge the judgments of the Supervised Release Violations in the Middle District of North Carolina. See Document #5, Western District of Virginia, case no. 4:20-cr-00027;
"*Memorandum Opinion and Order- Hill should file any amendments to his motion adding any additional grounds for relief or he should notify the court that he is withdrawing his motion. If he is not withdrawing, Hill also should file any*

10

*additional argument or information that he has to support an assertion that his*
*2255 motion was timely filed. After thirty days have passed, if his motion is not*
*withdrawn, the court will construe it as a 2255 motion and transfer it to the*
*sentencing court as to Brian David Hill re [3] MOTION to Vacate/Nullify. Hill's*
*motion to proceed in forma pauperis, ECF No. 4, is thus DENIED as unnecessary.*
*Responses due by 1/20/2021*." However, Petitioner will file the Motion for
Appointment of Special Master due to the GROUND VII BLACKMAIL
EVIDENCE by Attorney L. Lin Wood (See pages 124-145), or in alternative
transfer the venue and jurisdiction to the Western District of Virginia to investigate
any of the blackmailed judge or judges in the alleged Lizard Squad obtained
blackmail videos and preside over the 2255 case. Any judge in the Middle District
of North Carolina may be or may not be blackmailed with child rape and murder or
in any Court according to Attorney L. Lin Wood, thus the conflicts of interest and
self-interest of protecting the identities of the judges engaging in child rape, the
interests of justice require that it be a Special Master or a judge in a different
jurisdiction such as the Western District of Virginia. Even then it still may require
a Special Master. Again, a separate motion is filed with the 2255 Motion.

    5. Petitioner will present his evidence, the new Virginia law regarding a
criminal defense of no intent due to Autism Spectrum Disorder, cite arguments and
case law, as to why each and every ground should be granted or considered or

both. Each ground may require the need to expand the record and petition the Virginia court for Writ of Certiorari (Review) for facts not fully developed on the record of this case.

6. Again, as to **GROUND VII**, Petitioner requests that a Special Master be appointed to review over the blackmail video recordings alleged by Attorney L. Lin Wood, and asks for any additional investigators to aid in the Special Master to review over and thoroughly investigate the blackmail video recordings to ensure the credibility, authenticity, legality, and the identity of those **"judges"** and "officials" **in those blackmail video recordings in the possession of the source or sources of Attorney L. Lin Wood, and whether they pertain to any Judge that had been involved with any proceedings regarding Document #157 charging document.** Attorney L. Lin Wood does not possess the actual videos himself but does possess the encryption key password to the encryption file containing the alleged blackmail videos, according to Lin Wood. Petitioner had separately asked the Judicial Council of the Fourth Circuit to investigate the blackmail videos and have an investigator review over each and every blackmail video materials to see which Federal Judges are within the child rape videos, for the safety of the children alleged in the videos described by Attorney Lin Wood, and to ensure that nobody is sexually abusing children and getting away with it. They refused to investigate and denied the Petition for Review on January 4, 2022.

12

7. So now it is up to a Special Master to conduct an investigative review over each and every alleged video to find out if Judge Thomas David Schroeder, and/or William Lindsey Osteen Junior are in any of the child rape and child murder blackmail videos, the so-called videos alleged by Attorney L. Lin Wood. Brian David Hill had his mother Roberta Hill to email Attorney L. Lin Wood with a copy of the 2255 Motion, Brief / Memorandum of Law and Exhibits (*since the legal pleadings do reference Lin Wood's claims, he has a right to at least see those references to ask for any corrections to any of the statements concerning Lin Wood*) as a witness or had knowledge of the source/sources that had the alleged videos concerning **GROUND VII**, and the email was through Roberta Hill by usage of rbhill67@comcast.net and read receipt requested. Lin Wood is a material witness and had made public statements about "judges" and "officials" in regards to the blackmail materials he had warned the American people about.

## BACKGROUND OF THE CASE

8. Brian David Hill, the Petitioner was charged and arrested on September 21, 2018, with indecent exposure under Virginia Code, § 18.2-387. Petitioner was charged in the General District Court in the City of Martinsville by Officer Robert Jones, the Federal Prosecution's witness (Document #215, Transcript). An

13

Affidavit to support the arrest and criminal charge was entered. See **Exhibit 1**.

Pages 1-4, the original charge and complaint Affidavit. See also the Supervised

Release Violation charge mirrored aka spoke of basically the same claims; under

Documents #156, #157, and #158.

9. On September 21, 2018, Brian D. Hill had attempted to inform the

Martinsville Police that he was on Federal Probation and gave them the name of

his Probation Officer. Petitioner had made statements regarding the State charge in

pleadings filed pro se with the U.S. District Court.

10. Under Document #152, STATUS REPORT and Document #153,

DECLARATION; Petitioner gave his statements under oath regarding the new

criminal charge in the City of Martinsville while the charge was pending in the

General District Court. See Documents #152 and #153. Document #152 was filed

on October 3, 2018, and Document #153 was filed on October 17, 2018.

11. General District Court is not an actual State Court of Record and is not

under the general confines of the Constitution regarding a Court of Record. It is not

following the exact strict confines of the Constitution, does not offer a jury trial

and the courtroom isn't designed for any jury trial, but resolves little disputes and

violations of ordinances and misdemeanor charges. It is sometimes labeled various

terms such as a "police court" or "cop court". It does not have any transcript

records of any statements made by any witness in those proceedings. General

District Court does not have jury trials and does not have the capacity for a jury

trial but only a Bench Trial to be conducted over small criminal and civil matters.

The only records of this Court which any Court can request copies of are the paper

records. The paper records can be transferred to the Circuit Court if a verdict of

guilty in the General District Court is appealed timely. That is the way it works in

the Commonwealth of Virginia, and the way that Petitioner knows how it works

after experiencing the system for himself. The Middle District of North Carolina

does not know or understand how the Virginia Courts work and neither of how the

Courts operate in the Commonwealth of Virginia, and this fact is being made

known in this Brief / Memorandum of Law.

12. The Middle District of North Carolina does not know or understand case

law of the Court of Appeals of Virginia in the Commonwealth of Virginia, and this

fact is being made known in this Brief / Memorandum of Law.

13. The Middle District of North Carolina does not know or understand case

law of the Supreme Court of Virginia in the Commonwealth of Virginia, and this

fact is being made known in this Brief / Memorandum of Law.

14. Under Document #154, "Petitioner asks Court to continue Supervised

Release". See Document #154. It was construed as a MOTION by the Deputy

Clerk. Response to Motion due by 11/16/2018. **That motion was uncontested** and

was not disputed. **Undisputed contentions of Petitioner.**

15

15. On Oct. 29, 2018, Petitioner then files Document #155 STATUS REPORT entitled "October 25, 2018 Status Report" filed by BRIAN DAVID HILL.

16. **CHARGING DOCUMENTS AT ISSUE IN THIS 2255 CASE:** The U.S. Probation Office on Nov. 13, 2018 had filed the original Petition and any other relevant documents charging Petition with a Supervised Release Violation, requesting revocation of Petitioner's supervised release under (#1) Document #156: "SEALED Statement of Reasons as to BRIAN DAVID HILL. (Bailey, Jeanne)"; (#2) Document #157: "USPO PROB 12C - Offender Under Supervision as to BRIAN DAVID HILL. (Bailey, Jeanne) Modified on 5/15/2019 to unseal. (Daniel, J)"; and (#3) Document #158: "SEALED USPO PROB 12C - Supplement Report as to BRIAN DAVID HILL (Attachments: # (1) Memo to Clerk) (Bailey, Jeanne)".

17. Subsequently, the "ORDER FOR WARRANT as to BRIAN DAVID HILL. Signed by CHIEF JUDGE THOMAS D. SCHROEDER on 11/13/2018. (Daniel, J) Modified on 5/15/2019 to unseal. (Daniel, J)" was filed that same day. See Doc. #159.

18. On Nov. 13, 2018, Document #160 was filed entitled: "Warrant Issued SRV as to BRIAN DAVID HILL. (Daniel, J) Modified on 5/15/2019 to unseal. (Daniel, J)".

16

19. On Dec. 12, 2018, Document #163, Petitioner had filed DECLARATION entitled "DECLARATION of BRIAN DAVID HILL filed by BRIAN DAVID HILL. (Attachments: # (1) Envelope - Front and Back) (Garland, Leah)".

20. On Dec. 13, 2018, Document #164, Petitioner had filed the "AMENDED DECLARATION of BRIAN DAVID HILL entitled "Declaration of Brian David Hill in support of continuing Supervised Release, towards innocence of case" filed by BRIAN DAVID HILL. (Attachments: # (1) Envelope - Front and Back)(Garland, Leah)".

21. On Dec. 21, 2018: Petitioner had filed Document #165 entitled: "MOTION to Dismiss (Entitled: Motion for Summary Judgment or Case Dismissal of Supervised Release Violation) by BRIAN DAVID HILL. Response to Motion due by 1/9/2019. Civil Case 1:17CV1036. (Attachments: # (1) Envelope - Front and Back)(Taylor, Abby)". Not contested by the U.S. Attorney Office. That motion was uncontested and was not disputed. **Undisputed contentions of Petitioner.**

22. On December 21, 2018, the General District Court in the City of Martinsville, also known as the "police court" had found Petitioner guilty of indecent exposure. Again, the General District Court is not a constitutionally compliant Court and does not offer jury trials as it is not a State Court of Record as it usually resolves only smaller disputes. Partially due to ineffective counsel of

17

Scott Albrecht not putting on a better defense such as Brian not being medically cleared as no lab work and no drug tests were ever conducted by the Hospital when originally ordered after drawing blood, they should have conducted as laboratory tests with the blood vials they had but they refused to do such and neither did Martinsville Police Department. Both refused. Martinsville Police Department is corrupt for destroying biological evidence or allowing destruction of biological evidence. Blood samples are considered biological evidence.

23. Petitioner was arrested on December 22, 2018 by the U.S. Marshals Service. See Document #185, pursuant to the charging documents.

24. Petitioner had filed his Notice of Appeal in his State criminal conviction in the General District Court on December 26, 2018. Then the criminal conviction in the General District Court aka the "police court", not a State Court of Record thereafter was annulled and treated as if it had never happened. Then the charge was transferred to the State's/Commonwealth's Court of Record known as the Circuit Court of the City of Martinsville ("Circuit Court"). Then the charge was again to be tried as a Trial De Novo.

25. On December 26, 2018, Petitioner appeared before the U.S. Magistrate Judge Robert Ballou in Roanoke, Virginia at a hearing with witness U.S. Probation Officer Jason McMurray. Transcript is not available as Petitioner is In Forma Pauperis ("IFP") as that IFP status had not been revoked. So Petitioner cannot

18

afford to obtain this Transcript and the rules of the Western District of Virginia might make it difficult to obtain the Transcript without a Court Order after request by the Public Defender. Petitioner requests that the Government or the Court obtain this transcript of the hearing to expand the record for this 2255 case. See Document #176 and all attachments.

26. On January 9, 2019 or sometime in January, 2019, Petitioner was transferred to FCI-1 Butner, North Carolina for the psychological evaluation. Psychological report was received on April 26, 2019. See Document #176 and all attachments. **NOTE:** Petitioner contests that evaluation and demands a new outpatient mental evaluation by an independent mental health expert to challenge the one by corrupt Dr. Dawn Graney in 2019 since she is a conflict of interest by working for the U.S. Department of Justice, her opinions and expertise are a conflict of interest with inherit partiality and bias, as well as outright lies and gas lighting. Her opinions should be taken with a grain of salt since the psychiatrist in Document #23 had said in his expertise that Petitioner does not have "Pedophilic Disorder", ruled it out reversing Dr. Dawn Graney's corrupt and conflicted diagnosis. So Dr. Dawn Graney is a liar and other psychiatrists like the one appointed in Document #23 had disagreed with her wrongful diagnosis of "Pedophilic Disorder". So Petitioner asserts that Dr. Dawn Graney is a terrible evaluator and will keep asserting this since she is a conflict of interest and biased

19

for the Government. She works for the Federal Bureau of Prisons under the U.S. Department of Justice.

27. On May 14, 2019, Petitioner had been released on bond by the Western District of Virginia. Petitioner had fully complied with the bond conditions straight until the bond was terminated after the final disposition. See Documents #176-2 and Document #176-3.

28. Petitioner was then required to turn himself in to the Martinsville City Jail over the dispute of being released by the Federal Court on Federal bond conditions without informing the Circuit Court of the Commonwealth of Virginia. Petitioner voluntarily turned himself in after Brian and his family informed Probation Officer Jason McMurray about this by telephone and the Probation Officer was accepting of Petitioner turning himself in until the State Court granted bond as well. Turned himself in around May 31, 2018. Motion for bond was entered and was granted by the Hon. Giles Carter Greer or a Magistrate Judge in Circuit Court. Petitioner was released by the Martinsville City Jail on June 4, 2019. Petitioner informed the Probation Officer and was ready to get his name cleared in the Circuit Court.

29. On June 24, 2019, Petitioner filed the Document #178: "DECLARATION entitled "Evidence Declaration of Brian David Hill regarding State Pro Se Motion in Opposition to Government's/Respondent's Document #156,

20

#157, and #158" filed by BRIAN DAVID HILL." See Document #178 and all attachments.

30. On June 24, 2019, Petitioner filed the Document #179: "DECLARATION entitled "June 21, 2019 Declaration of Brian David Hill in Opposition to Government's/Respondent's Documents #156, #157, and #158" filed by BRIAN DAVID HILL. (Attachments: # (1) Envelope - Front and Back) (Civil Case number: 17CV1036) (Garland, Leah)". See Document #179 and all attachments.

31. On June 26, 2019: Court files the "NOTICE OF HEARING as to BRIAN DAVID HILL. Final Hearing re Revocation of Supervised Release set for 8/9/2019 at 02:00 PM in Winston-Salem Courtroom #2 before CHIEF JUDGE THOMAS D. SCHROEDER. (Engle, Anita) (Main Document 180 replaced on 6/27/2019) (Engle, Anita)." See Document #180.

32. On July 22, 2019, Petitioner had filed his Document #181: "DECLARATION entitled "Evidence Declaration of Brian David Hill Regarding Carbon Monoxide and Letgter to Martinsville Police Chief in Opposition to Government's/Respondent's Documents #[156], #[157], #[158], #[159], and #[160]" filed by BRIAN DAVID HILL. (Attachments: # (1) Exhibit 0, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Exhibit 3, # (5) Exhibit 4, # (6) Exhibit 5, # (7) Exhibit 6, # (8) Exhibit 7, # (9) Exhibit 8, # (10) Exhibit 9, # (11) Exhibit 10, #

21

(12) Envelope - Front and Back) (Garland, Leah)". See Document #181 and all attachments. Letter was accidently misspelled in pleading as "Letgter" in the original filing.

33. On July 22, 2019, Petitioner's attorney Renorda Pryor had filed the: "MOTION to Continue Revocation of Supervised Release Hearing by BRIAN DAVID HILL. (Attachments: # (1) Text of Proposed Order)(PRYOR, RENORDA)".

34. On Document #183, on the date of July 23, 2019, The District Court had filed the "ORDER as to BRIAN DAVID HILL signed by CHIEF JUDGE THOMAS D. SCHROEDER on 7/23/2019; that the Defendant's motion for a continuance is GRANTED, and the Defendant's supervised release violation hearing is rescheduled to September 12, 2019, at 2:00 p.m. in Courtroom 2 in Winston-Salem, North Carolina. (Sheets, Jamie)".

35. On August 16, 2019, the SRV Arrest Warrant had finally been filed. See Document #185: "SRV Arrest Warrant Returned Executed on 12/22/2018 in case as to BRIAN DAVID HILL. (Sheets, Jamie)".

36. **AT ISSUE IN THIS 2255:** On September 12, 2019, the Trial for the Supervised Release Violation had been conducted and concluded. See docket text for Document #186:

37. "Minute Entry for proceedings held before CHIEF JUDGE THOMAS D.

22

SCHROEDER in WS-2:FINAL HEARING RE REVOCATION OF
SUPERVISED RELEASE as to BRIAN DAVID HILL held on 9/12/2019. AUSA
Anand Ramaswamy present for the Government. Attorney Renorda Pryor present
for the Defendant. Defendant present on bond. Defendant moves for a continuance.
Government opposes the motion. Court DENIES motion. Defendant denies
violation 1 of [157] Petition. Matter is contested (see Witness and Exhibit List)
The Court finds the defendant in violation and Supervised Release is revoked. The
defendant is REMANDED to the Bureau of Prisons for 9 months, followed by 9
years of Supervised Release (see Judgment and Commitment). Defendant
permitted to self-report directly to the institution designated by the BOP or to the
USMS in Greensboro, NC by 12:00 PM on 12/6/2019. Defendant's Release
Conditions modified to include GPS location monitoring to begin within 7 days
and a curfew at the probation officer's discretion.(Court Reporter Briana Bell.)
(Engle, Anita) Modified on 9/13/2019 to correct typographical error. (Engle,
Anita)"

See the Document in Document #186 for the "EXHIBIT AND WITNESS LIST".

None of Petitioner's pro se filings under Documents #152, #153, #154, #155, #163,

#164, #165, #178, #179, and #181 were ever admitted in the Trial record of the

Supervised Release Violation proceeding. That is wrong and is an error to not

include any of Petitioner's relevant affidavits, evidence, and filings all relevant and

directed towards the SRV violation proceeding and it's charging documents.

38. Petitioner filed his "PRO SE NOTICE OF APPEAL (Interlocutory)"

under Document #187 on the same day as the Trial. The appeal was never

transmitted to the U.S. Court of Appeals to be opened up as an interlocutory appeal

and instead never worked out. Attorney Renorda Pryor attempted to construe it as a

Motion to Continue but it was denied verbally by Chief Judge Thomas David

Schroeder on September 12, 2019, during the Trial.

23

39. Petitioner filed his "Notice of Appeal Without Fee Payment —

Document #190" on the same day as the Trial. The appeal was transmitted to the

U.S. Court of Appeals on Sept. 13, 2019 on Document #191.

Exhibit receipts were filed in Documents #188 and #189. Again, Documents #152,

#153, #154, #155, #163, #164, #165, #178, #179, and #181 were never filed into

the record in those documents either.

40. On October 7, 2019, the Judge Thomas David Schroeder had filed the

written judgment of criminal conviction on Document #200: "JUDGMENT ON

REVOCATION OF PROBATION/SUPERVISED RELEASE. The Defendant's

supervised release is revoked. Nine (9) months imprisonment. Nine (9) years

supervised release is re-imposed under the same terms and conditions as previously

imposed. The Defendant shall surrender to the U.S. Marshal for the Middle District

of N.C. or to the institution designated by the Bureau of Prisons by 12:00 p.m. on

12/6/2019 as to BRIAN DAVID HILL. Signed by CHIEF JUDGE THOMAS D.

SCHROEDER on 10/4/2019. (Daniel, J)".

41. The appeal had commenced after the final written judgment was issued

by the Hon. Thomas David Schroeder.

42. On October 7, 2019, the "Transmission of Update Item to USCA as to

BRIAN DAVID HILL re: [200] JUDGMENT ON REVOCATION OF

PROBATION/SUPERVISED RELEASE. (Daniel, J)". In English, it means that

24

the Judgment was transmitted to the U.S. Court of Appeals for the Fourth Circuit to finally process the appeal filed the same day as the oral verdict of Revocation of Supervised Release which is the criminal conviction being challenged here. The judgment of Revocation is the same as a criminal conviction but mislabeled as a sentence enhancement as the U.S. Supreme Court had argued in United States v. Haymond, 139 S. Ct. 2369 (2019). See Document #201.

43. On October 11, 2019, Document #205 was entered entitled as "AMENDED NOTICE OF APPEAL without payment of fees filed by BRIAN DAVID HILL re [200] Judgment on Revocation of Prob/SR. (Attachments: # (1) Envelope - Front and Back) (Garland, Leah)". It is still timely filed as the original NOTICE OF APPEAL which was timely filed the exact same day as the oral judgment but at the time the written judgment was not entered and required a lot of days. Because the written judgment was filed very slowly and was filed on October 7, 2019, the AMENDED NOTICE OF APPEAL was filed to ensure that the NOTICE OF APPEAL concerns both the oral verdict and the written verdict aka the Judgment of a criminal verdict in a criminal case. A criminal conviction, and is at issue in this 2255 case.

44. On October 15, 2019, Document #206 was filed entitled as "MOTION entitled "Petitioner's Second Motion for Sanctions and to Vacate Judgment that was in Plaintiff's/Respondent's Favor; Motion and Brief/Memorandum of Law in

support of Requesting the Honorable Court in this case Vacate Fraudulent begotten Judgment or Judgments" filed by BRIAN DAVID HILL. Response to Motion due by 11/5/2019. (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Supplement 1, # (4) Supplement 2, # (5) Supplement 3, # (6) Supplement 4, # (7) Envelope - Front and Back) (Garland, Leah)". The **Respondent aka the United States of America,** the Government, **had not contested any of the contentions in that motion by the response due date of November 5, 2019**. The fact it was uncontested means the following FACTS were undisputed as alleged by Petitioner with attached Exhibits of evidence:

1. The U.S. Attorney Office and U.S. Probation Office had defrauded the Court. Petitioner had asked for "sanctions against the Government/Respondent/Plaintiff counsel Assistant U.S. Attorney ("AUSA") Anand Prakash Ramaswamy at the Greensboro, NC Office, Kevin M. Alligood (U.S. Probation Officer Specialist), and Edward R. Cameron (Supervisory U.S. Probation Officer). The sanctions are on the basis of the fraud upon the court / fraud on the court. The fraud is the perjury of U.S. Probation Officer Specialist ("USPOS") Kevin M. Alligood ("Kevin") in the Petition for Warrant or Summons for Offender Under Supervision (See Petition under Document #157, ECF No. 157). Also the false statements of USPOS Kevin that ended up as statements carried under penalty of perjury as stated in the Petition for Revocation under Order for Warrant —— Document #157, was approved by Supervisor Edward R. Cameron.".

26

2. The undisputed facts alleged in the Motion had asked for vacating the Final Judgment under Document #200 on the ground of "fraud on the Court" which such sanctions do warrant vacatur of a final judgment or order. See Chambers v. Nasco, Inc., 501 U.S. 32 (1991); and Hazel-Atlas Glass Co. v Hartford-Empire Co., 322 U.S. 238 (1944).

3. Petitioner had also argued that: "These are not the full facts of fraud upon the court as Brian is still awaiting the Transcript to challenge the final revocation judgment on appeal. Once the transcript is acquired, more inquires will be conducted of the fraud upon the court by the adverse party counsel AUSA Ramaswamy and be documented and then a final motion for sanctions." Facts can be further developed in expending the record in the foregoing 2255 case. Petitioner had meant inquires will be conducted of the fraud upon the court against the adverse party counsel AUSA Ramaswamy. The Court should understand what Petitioner had insinuated in his uncontested undisputed Motion for Sanctions.

45. The uncontested, undisputed Document #206 Motion has FACTS which were undisputed and contentions which were undisputed by the Government in this case. FACTS which may require vacatur of the original conviction under Document #200. That alone should have been default judgment in Petitioner's favor and vacating of the judgment under Document #200. That is in accordance with Local Rule 7.3 paragraphs (f) and (k).

27

46. On October 15, 2019, Document #208 was filed entitled as "USCA ORDER appointing Renorda E. Pryor as counsel for BRIAN DAVID HILL re: [203] Notice of Appeal Without Fee Payment. USCA Case #19-4758. (Daniel, J)". Case number assigned for this appeal was case no. 19-4758. That would be the U.S. Court of Appeals for the Fourth Circuit.

47. On October 31, 2019, Document #212 was filed entitled as "USCA ORDER as to BRIAN DAVID HILL. The court grants the motion to relieve counsel from further representation on appeal. The court appoints Edward Ryan Kennedy to represent Brian David Hill on appeal. USCA Case Number 19-4758. (Sheets, Jamie)". A new attorney was appointed to represent Brian David Hill, the Petitioner, for appeal in the case no. 19-4758.

48. On November 8, 2019, Appeal Document #13, case no. 19-4758, the document Motion for Emergency Stay of Judgment pending appeal was filed and entitled "Emergency MOTION by Brian David Hill for stay pending appeal. Date of action to be stayed, if applicable: December 6, 2019.. Date and method of service: 11/08/2019 ecf. [1000623185] [19-4758] Edward Kennedy [Entered: 11/08/2019 01:01 PM]".

49. On November 15, 2019, Appeal Document #19, case no. 19-4758, the document response by the counsel Anand Prakash Ramaswamy of the U.S. Attorney Office in opposition to the Motion for Emergency Stay of Judgment

28

pending appeal was filed and entitled "RESPONSE/ANSWER by US to Motion for stay pending appeal [13]. Nature of response: in opposition. [19-4758] Anand Ramaswamy [Entered: 11/15/2019 11:49 AM]".

50. On November 20, 2019, Appeal Document #20, case no. 19-4758, the Fourth Circuit filed an order denying the Motion for Emergency Stay of Judgment pending appeal was filed and entitled "COURT ORDER filed denying Motion for stay pending appeal [13]. Copies to all parties. [1000629889] [19-4758] JSN [Entered: 11/20/2019 12:22 PM]".

51. On December 6, 2019, Petitioner had self-reported to the Federal Prison FMC Lexington as ordered by the Court. On the exact day of December 6, 2019. The Federal Bureau of Prisons, that same day, had filed an Order with the Unit Secretary ordering the release of Brian David Hill from Federal Prison due to the overserving of his sentence. This was due to an EMERGENCY AUDIT. The sentence calculations are confidential or classified and Petitioner is not aware of how the audit was conducted, but the U.S. Probation Officer Jason McMurray was notified of the Order for Release. There had been a Motion under Document #234 asking to reconsider and allow the Petitioner to serve the remainder of his sentence under home detention. Petitioner filed a NOTICE of withdrawing that older Motion since Petitioner had overserved his sentence and had no sentence left to serve, thus the Motion to Reconsider on its merits were moot. See Document #235

29

entitled "NOTICE of Withdrawal of [234] MOTION for Reconsideration, filed by
BRIAN DAVID HILL. (Attachments: # (1) Envelope - Front and Back) (Garland,
Leah)" NOTICE was filed on December 16, 2019.

52. On December 19, 2019, Appeal Document #21 and JOINT APPENDIX
under Appeal Document #22, case no. 19-4758, the Petitioner's counsel filed an
BRIEF entitled "BRIEF by Brian David Hill in electronic and paper format. Type
of Brief: OPENING. Method of Filing Paper Copies: hand delivery. Date Paper
Copies Mailed, Dispatched, or Delivered to Court: 12/19/2019. [1000648495] [19-
4758] Edward Kennedy [Entered: 12/19/2019 11:36 AM]".

53. On January 7, 2020, Appeal Document #28, case no. 19-4758, the
Respondent's counsel Anand Prakash Ramaswamy filed an OPPOSITION BRIEF
entitled "On December 19, 2019, Appeal Document #21 and JOINT APPENDIX
under Appeal Document #22, case no. 19-4758, the Petitioner's counsel filed an
BRIEF entitled "BRIEF by Brian David Hill in electronic and paper format. Type
of Brief: OPENING. Method of Filing Paper Copies: hand delivery. Date Paper
Copies Mailed, Dispatched, or Delivered to Court: 12/19/2019. [1000648495] [19-
4758] Edward Kennedy [Entered: 12/19/2019 11:36 AM]".

54. On January 17, 2020, Appeal Document #30, case no. 19-4758, the
Petitioner's counsel filed a REPLY BRIEF to the Government's OPPOSING
BRIEF entitled "BRIEF by Brian David Hill in electronic and paper format. Type

of Brief: REPLY. Method of Filing Paper Copies: hand delivery. Date Paper Copies Mailed, Dispatched, or Delivered to Court: 01/17/2020. [1000664594] [19-4758] Edward Kennedy [Entered: 01/17/2020 10:04 AM]".

55. On October 16, 2020, Appeal Document #33, case no. 19-4758, the Fourth Circuit filed an UNPUBLISHED PER CURIAM OPINION affirming the Document #200 judgment of the lower court entitled "UNPUBLISHED PER CURIAM OPINION filed. Originating case number: 1:13-cr-00435-TDS-1. Copies to all parties and the district court/agency. [1000830549]. [19-4758] JSN [Entered: 10/16/2020 09:15 AM]".

56. On October 16, 2020, Appeal Document #34, case no. 19-4758, the Fourth Circuit filed a JUDGMENT ORDER affirming the Document #200 judgment of the lower court entitled "JUDGMENT ORDER filed. Decision: Affirmed. Originating case number: 1:13-cr-00435-TDS-1. Entered on Docket Date: 10/16/2020. [1000830553] Copies to all parties and the district court/agency. [19-4758] JSN [Entered: 10/16/2020 09:19 AM]".

57. On October 27, 2020, Appeal Document #36, case no. 19-4758, the Petitioner's counsel filed a PETITION FOR REHEARING entitled "PETITION for rehearing and rehearing en banc by Brian David Hill. [19-4758] Edward Kennedy [Entered: 10/27/2020 10:26 AM]".

31

58. On November 17, 2020, Appeal Document #38, case no. 19-4758, the Fourth Circuit had filed an ORDER DENYING THE PETITION FOR REHEARING entitled "COURT ORDER filed denying Motion for rehearing and rehearing en banc [36], Copies to all parties. [1000849346] [19-4758] JSN [Entered: 11/17/2020 10:22 AM]".

59. On January 8, 2021, the Petitioner's counsel had timely filed the Petition for Writ of Certiorari in the Supreme Court of the United States, also called the U.S. Supreme Court. Filed under case No. 20-6864, regarding Fourth Circuit case no. 19-4758.

60. On January 22, 2021, the Government had waived its right to respond for party: United States of America. Filed under case No. 20-6864, regarding Fourth Circuit case no. 19-4758.

61. On February 22, 2021, the Justices denied the Petition for the Writ of Certiorari, a normal practice for a majority of petitions in Supreme Court of the United States, also called the U.S. Supreme Court. Filed under case No. 20-6864, regarding Fourth Circuit case no. 19-4758. The decision does not mean the Petition or Appeal had any lack of merit. It simply means that the Justices did not consider this Petition in a sea of denied Certiorari Petitions.

## JURISDICTION, VENUE AND TIMELINESS

62. Therefore the 2255 Motion deadline for challenging the Document #200 final criminal judgment and conviction after a criminal trial prosecution, would be one year after: "(1) the date on which the **judgment of conviction becomes final**". See Title 28 U.S.C. Section 2255(f). As long as the 2255 Motion is filed on or before February 22, 2022, one year exactly after the final Supreme Court decision rendered on February 22, 2021, concerning the conviction at question here in this 2255 case, it is timely filed.

33. Petitioner asserts jurisdiction may or may not be proper under 28 U.S.C. Section 2255 in regards to the Middle District of North Carolina or if it may need to be in the Western District of Virginia.

34. See "GROUND IX – IMPROPER VENUE, LACK OF TERRORITORIAL JURISDICTION; IMPROPER JURISDICTION ACCORDING TO CHANGE OF JURISDICTION AS REQUESTED BY THE U.S. PROBATION OFFICE AND ACCORDING TO THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION; THIS 2255 MOTION AND CASE SHOULD ALSO BE TRIED IN THE JURISDICTION OF THE ALLEGED SUPERVISED RELEASE VIOLATION IN MARTINSVILLE, VIRGINIA; THE MIDDLE DISTRICT OF NORTH CAROLINA FEDERAL JUDGES HAD NO LEGAL AUTHORITY OR JURISDICTION TO INTERPRET VIRGINIA LAW AND ATTEMPT TO OVERRIDE VIRGINIA LAW; ALSO

33

VIOLATES FEDERAL RULES OF CRIMINAL PROCEDURE 18", Page 151 of 167 of this Brief / Memorandum of Law. Even if venue may be proper to challenge the conviction due to improper venue in the first place, GROUND IX may be the only adequate remedy if the conviction was a nullity from the very beginning on territorial jurisdiction or subject matter jurisdiction.

35. The venue may be proper in the Middle District of North Carolina but Petitioner maintains that there may be bias or prejudice or conflict of interest which requires a change of venue or need for appointment of a Special Master to act as investigator of the GROUNDS and/or as judicial officer, and maintains that ground and requests that it be preserved. This is due to the ground of BLACKMAIL of JUDGE or BLACKMAIL of JUDGES. Petitioner requests an appointment of a Special Master for the circumstances of addressing, investigating, expanding the record, deposing Attorney L. Lin Wood and his source or sources regarding the blackmail videos statements, and reviewing over the BLACKMAIL MATERIALS with unlocking the encrypted blackmail materials from the encryption key password maintained by Attorney L. Lin Wood; and the BALCKMAIL VIDEOS maintained by the source or sources of Attorney L. Lin Wood which the encryption key password can be used to decrypt the encrypted blackmail materials alleged by Attorney L. Lin Wood. See "**GROUND VII** – IT IS NOW POSSIBLE AND PETITIONER SUSPECTS THAT THE ORIGINATING

34

JUDICIAL OFFICER WHO REVOKED THE SUPERVISED RELEASE ON
DOCUMENT #200 MAY OR MAY NOT BE A TARGET OF A BLACKMAIL
SCHEME INVOLVING CHILD RAPE AND MURDER DUE TO CLAIMS BY
ATTORNEY L. LIN WOOD ASSERTING IN PUBLIC STATEMENTS THAT
"JUDGES" AND "OFFICIALS" WERE BEING ORDERED TO RAPE AND
MURDER CHILDREN ON VIDEO RECORDINGS AND THUS WERE
COMPROMISED AND NO LONGER IMPARTIAL TO THE DECISIONS
THEY MADE WHILE BEING BLACKMAILED. REGARDLESS OF
WHETHER THE BLACKMAIL WAS MATERIAL TO ANY DECISIONS
MADE AGAINST BRIAN DAVID HILL, IT WOULD STILL MAKE THE
JUDGE PARTIAL AND/OR BIASED AND/OR COMPROMISED. THIS
VIOLATES THE U.S. CONSTITUTION'S GUARANTEE THAT THE TRIER
OF FACT REMAIN IMPARTIAL DURING THE CRIMINAL PROCEEDINGS
OF A CASE", See Page 124 through 145 of this filing.


**GROUND I - THE DISTRICT COURT ERRED AS A MATTER OF LAW
IN CONDUCTING THE REVOCATION HEARING WITHOUT A JURY
AND BY MAKING FINDINGS OF GUILT BY PREPONDERANCE OF
THE EVIDENCE, RATHER THAN BEYOND A REASONABLE DOUBT.**


36. The district court aka the Trial Court erred as a matter of law in
conducting the revocation hearing without a jury and by making findings of guilt

by preponderance of the evidence while a majority of evidence filed pro se was ignored without ever a decision as to the admissibility of the evidence (*omission of pro se evidence filed by Petitioner directly relevant to the Supervised Release Violation charge, Due Process clause Constitutional violation*), rather than beyond a reasonable doubt, based upon those findings of fact.

37. Until 2019, it was undisputedly considered constitutionally permissible to revoke supervised release in a bench hearing, without a jury, and to determine guilt by preponderance of the evidence, rather than beyond reasonable doubt, based upon findings of fact by the district court. See, e.g., United States v. Capley, 978 F.2d 829, 81 (4th Cir 1992); United States v. Faulks, 195 F. App'x 196, 198 (4th Cir. 2006) (unpublished). The law had been changed by the Supreme Court and thus requires that the Trial Court conduct future Supervised Release Violation trials differently and treat it exactly the same as an original criminal prosecution for a Federal charge or Grand Jury Indictment. The Petitioner will explain why herein.

38. The facts and/or arguments of law demonstrate that, on June 26, 2019, approximately two and one-half (2 ½) months prior to Petitioner's revocation hearing on September 12, 2019, the Supreme Court of the United States decided United States v. Haymond, 139 S. Ct. 2369 (2019).

36

39. In Haymond, the defendant Andre Haymond was initially convicted of possession of child pornography, which is the same initial offense of the original criminal case conviction as Petitioner, though that original conviction is not at issue in this 2255 Motion. Id. at 2373. As in the instant case, Haymond was sentenced to a term of (10) years of supervised release. Id. at 2574. Haymond was later caught, while on supervised release, with additional child pornography and a revocation hearing was conducted before a district judge without a jury and under a preponderance of the evidence standard, not the beyond a reasonable doubt standard. Id. Similarly, in the instant case with exception to the issue of Petitioner being charged with a Supervised Release Violation based upon a state criminal charge, Petitioner appeared before a district judge in a revocation hearing based upon his alleged indecent exposure on September 21, 2018, without a jury and under a preponderance of the evidence standard. Didn't even wait for a conviction in the Circuit Court but ruled his revocation based upon a verdict of guilty by a "police court" aka a Court not of Constitutional compliance, when the appeal to Trial De Novo had erased that verdict of guilty in December 21, 2018. The General District Court is not an actual Court of Record, and Petitioner appealed the decision to a State Court of Record which is the Circuit Court and was not under a final conviction at the time the Revocation Judgment was entered on September 12, 2019.

37

40. Both Haymond and Petitioner were sentenced to an additional term of incarceration based upon the findings of fact of a district judge, without a jury, by a preponderance of the evidence. A majority of evidence filed by Petitioner was never noted to being admitted under the Trial evidence under Trial Documents #186, #188, and #189. Petitioner had filed evidence which was never taken into consideration during the original Trial and Sentencing. See Documents #152, #153, #154, #155, #163, #164, #165, #178, #179, and #181. None of them were admitted at Trial despite being filed pursuant to the original charge of Supervised Release Violation under Documents #156, #157, and #158. Whether by ineffective counsel or by errors of violating the Constitutional rights to due process by the Trial Court, those exhibits were never introduced into evidence at Trial. At least the Trial Court could have decided to admit those filings prior to making the final judgment under Document #200.

41. Although Haymond's violation invoked the mandatory minimum provision of 18 U.S.C. § 3583(k), whereas Petitioner's sentence for his alleged violation charge fell under 18 U.S.C. § 3583(e), Petitioner maintains that the expanded scope of trial by jury and the burden of proof being beyond a reasonable doubt also applies to Section 3583(e) violations, such as this case, either directly through Haymond or through an expansion and/or change in existing law. Petitioner maintains that the U.S. Supreme Court never restricted the constitutional

38

right to Trial by Jury to only section 18 U.S.C. § 3583(k). The Supreme Court would not waste time giving such broad constitutional rights to only one statutory section or subsection. That right there is an error of law for inferior Courts to limit the scope of Haymond to only one section or subsection of a statute.

42. "Together with the right to vote, those who wrote our Constitution considered the right to trial by jury the heart and lungs, the mainspring and the center wheel of our liberties, without which the body must die; the watch must run down; the government must become arbitrary. Just as the right to vote sought to preserve the people's authority over their government's executive and legislative functions, the right to a jury trial sought to preserve the people's authority over its judicial functions." Haymond, 139 S. Ct. at 2375. (internal citations omitted)[1].

43. Many statements and passages in the Court's opinion strongly suggest that the Sixth Amendment right to a jury trial applies to any supervised-release revocation proceeding. For example, the first sentence of the opinion reads: "Only a jury, acting on proof beyond a reasonable doubt, may take a person's liberty." Haymond, 139 S. Ct. at 2373.

---

[1] For the sake of brevity, Petitioner will not reproduce all of the Supreme Court of the United States' eloquent remarks from Haymond on the historic and fundamental importance of both the right to trial by jury and that proof of criminal conduct must be beyond a reasonable doubt. Petitioner hereby incorporates by reference, as if fully set forth herein, pages 2376 through 2378 of the Haymond opinion.

39

44. Unlike the previous statement of ages old law, in a supervised-release revocation proceeding, a judge, based on the preponderance of the evidence, may make a finding that takes a person's liberty, in the sense that the defendant is sent back to prison. The Supreme Court recognized that the Sixth Amendment applies to a "criminal prosecution," and then gave that term a broad definition that encompasses any supervised-release revocation proceeding.

45. The Court defined a "crime" as any "ac[t] to which the law affixes ... punishment," and says that a "prosecution" is "the process of exhibiting formal charges against an offender before a legal tribunal." Haymond, 139 S. Ct. at 2376. The Court, however, uses this definition for the purpose, of declaring that every supervised-release revocation proceeding is a criminal prosecution. See Haymond 139 S. Ct. at 2379 ("[A] 'criminal prosecution' continues and the defendant remains an 'accused' with all the rights provided by the Sixth Amendment, until a final sentence is imposed.... [A]n accused's final sentence includes any supervised release sentence he may receive".) [i]

46. The 2255 Motion can vacate or set aside both a sentence and conviction if it is unlawful or unconstitutional or erroneously entered in a Court of Law. Even fraud on the court warrants reversal of a judgment if it is a fraudulent begotten judgment.

47. The verdict under Document #200 violates both the Fifth Amendment and Sixth Amendment of the United States Constitution, the Judgment of Revocation of Supervised Release violates both the Fifth Amendment and Sixth Amendment of the United States Constitution; see Haymond 139 S. Ct. at 2379. The judicial decision under Document #200 is illegal, unlawful under GROUND I due to not being given a jury trial.

48. Quoting Blakely v. Washington, 542 U.S. 296, 304 (2004), the Court states that "a jury must find beyond a reasonable doubt every fact which the law makes essential to a punishment that a judge might later seek to impose." Haymond, 139 S. Ct. at 2370. Since a defendant sentenced to incarceration after being found to have violated supervised release is receiving a "punishment," then the Court's statement means that any factual finding upon which that judgment is based must be made by a jury, not by a judge.

49. While both Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. United States, 570 U.S. 99 (2013), apply only to a defendant's sentencing proceeding and not to a supervised-release revocation proceeding, which has been described at times as a "postjudgment sentence-administration proceedin[g], " the Court states that "the demands of the Fifth and Sixth Amendments" cannot be "dodge[d] by the simple expedient of relabeling a criminal prosecution a ... 'sentence modification' imposed at a 'postjudgment sentence administration

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 42 of 194

proceeding." Haymond, 139 S. Ct. at 2379. The meaning of the Court's above statement is clear. A supervised-release revocation proceeding is a criminal prosecution and is therefore governed by both the Fifth and Sixth Amendments. See Haymond, 139 S. Ct. at 2390 ("any accusation triggering a new and additional punishment [must be] proven to the satisfaction of a jury beyond a reasonable doubt"); Id. at 2380 ("a jury must find all of the facts necessary to authorize a judicial punishment").

50. The Court, in summary, posits that parole was constitutional, but supervised release is entirely different. Haymond, 139 S. Ct. at 2381-82. The implication in the above statements is clear enough: All supervised-release revocation proceedings must be conducted in compliance with the Sixth Amendment. The Court hints at where it is heading when it writes: "[O]ur opinion, [does] not pass judgment one way or the other on § 3583(e)'s consistency with Apprendi." Haymond, 139 S. Ct. at 2382-84, n.7. Section 3583(e), the section under which Petitioner was sentenced, sets out the procedure to be followed in all supervised-release revocation proceedings. Therefore, the Court left open the door that provision, the one through which Petitioner was sentenced, is not consistent with Apprendi, which means that Petitioner's proceeding required trial by jury.

51. There is no clear ground for limiting the Haymond opinion only to Section 3583(k) or 3583(e). The Court simply let that issue sleep for another day.

42

Today is that day. This Court should recognize the larger paradigm shift which has occurred in the Supreme Court's reasoning, which when applied, protects Petitioner from being sentenced to further incarceration without a jury and requires a beyond a reasonable doubt evidence standard.

52. United States v. Haymond, 139 S. Ct. 2369, 2379 (2019) ("Calling part of a criminal prosecution a "sentence modification" imposed at a "postjudgment sentence-administration proceeding" can fare no better. As this Court has repeatedly explained, any "increase in a defendant's authorized punishment contingent on the finding of a fact" requires a jury and proof beyond a reasonable doubt "no matter" what the government chooses to call the exercise. Ring , 536 U.S. at 602, 122 S.Ct. 2428.").

53. United States v. Haymond, 139 S. Ct. 2369, 2380 (2019) ("The Constitution seeks to safeguard the people's control over the business of judicial punishments by ensuring that any accusation triggering a new and additional punishment is proven to the satisfaction of a jury beyond a reasonable doubt. By contrast, the view the government and dissent espouse would demote the jury from its historic role as "circuitbreaker in the State's machinery of justice," Blakely , 542 U.S. at 306, 124 S.Ct. 2531, to " 'low-level gatekeeping,' " Booker , 543 U.S. at 230, 125 S.Ct. 738. If the government and dissent were correct, Congress could require anyone convicted of even a modest crime to serve a sentence of supervised

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 44 of 194

release for the rest of his life. At that point, a judge could try and convict him of any violation of the terms of his release under a preponderance of the evidence standard, and then sentence him to pretty much anything. At oral argument, the government even conceded that, under its theory, a defendant on supervised release would have no Sixth Amendment right to a jury trial when charged with an infraction carrying the death penalty. We continue to doubt whether even Apprendi's fiercest critics "would advocate" such an "absurd result." Blakely , 542 U.S. at 306, 124 S.Ct. 2531.")

### GROUND II – That the Trial Court erred and/or abused discretion in finding that the evidence before it was sufficient to find that Petitioner had violated his supervised release by violating Virginia Code § 18.2- 387 because the evidence fails to show that Petitioner acted intentionally to make an obscene display or exposure of his person.

54. The district court erred as a matter of law in finding that the evidence before it was sufficient to find that Petitioner violated his supervised release by violating Virginia Code § 18.2-387 because the evidence fails to show that Petitioner acted intentionally to make an obscene display or exposure of his person. That statute provides, in relevant part, that "[e]very person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so

44

expose himself, shall be guilty of a Class 1 misdemeanor." Va. Code § 18.2-387 (emphases added).

55. "The 'obscenity' element of Code § 18.2–387 may be satisfied when: (1) the accused admits to possessing such intent, Moses v. Commonwealth, 611 S.E.2d 607, 608 (Va. App. 2005)( en banc ); (2) the defendant is visibly aroused, Morales v. Commonwealth, 525 S.E.2d 23, 24 (Va. App. 2000); (3) the defendant engages in masturbatory behavior, Copeland v. Commonwealth , 525 S.E.2d 9, 10 ( Va. App. 2000); or (4) in other circumstances when the totality of the circumstances supports an inference that the accused had as his dominant purpose a prurient interest in sex, Hart, 441 S.E.2d at 707–08. The mere exposure of a naked body is not obscene. See Price v. Commonwealth, 201 S.E.2d 798, 800 (Va. 1974) (finding that `[a] portrayal of nudity is not, as a matter of law, a sufficient basis for finding that [it] is obscene')." Romick v. Commonwealth, No. 1580-12-4, 2013 WL 6094240, at *2 (Va. Ct. App. Nov. 19, 2013)(unpublished)(internal citations reformatted).

56. While the evidence may show that Petitioner was naked in public at night, as stated above, nudity, without more, is not obscene under Virginia law. Rather, "[t]he word `obscene' where it appears in this article shall mean that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is a shameful or morbid interest in nudity, sexual

45

conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value." Va. Code § 18.2- 372 (emphasis added).

57. While Virginia does not appear to have established a clean definition of criminal intent, Black's Law Dictionary defines it as "[a]n intent to commit an actus reus without any justification, excuse, or other defense."

58. However Virginia's General Assembly had passed and the Governor had signed it to be codified as a new law in 2021 (Virginia Code § 19.2-271.6), which allows a criminal defendant with Autism Spectrum Disorder, Psychosis Disorder, or any other intellectual disabilities or mental illness or illnesses to be used as a defense to a criminal charge, in regards to INTENT, and intent is necessary to convict a criminal defendant of violating Virginia Code § 18.2- 387. A criminal defense permitted by a Court is "Actual Innocence" and is legal innocence. A criminal defense can mean that a criminal conviction cannot be sustained by evidence or by a matter of law and thus a defendant cannot be legally authorized to be punished by a Court of Law. This statute had not existed in the years of 2018 or 2019 when Petitioner was tried in front of Trial Court on September 12, 2019, (Doc. #186) and further adjudged on Document #200. This statute had not existed

46

in the year of 2018 when Petitioner was tried and wrongfully convicted in the General District Court for the City of Martinsville on December 21, 2018. This statute had not existed in the year of 2019 when Petitioner was wrongfully convicted in the Circuit Court for the City of Martinsville on November 18, 2019. Therefore Petitioner is entitled to a criminal defense of **no intent** to commit any act which would violate Virginia Code § 18.2- 387. That is upon proving that Petitioner had Autism Spectrum Disorder or any other legally considered intellectual disability or mental disorder at the time of the alleged offense charge. If this Court wishes to decide whether Petitioner had violated his Supervised Release due to his Virginia state charge of violating Virginia Code § 18.2- 387, then this Court has to also consider his LEGALLY AUTHORIZED criminal defense pursuant to Virginia Code § 19.2-271.6.

59. For the sake of brevity, Petitioner will not reproduce all of the arguments and remarks from "GROUND XI – VIRGINIA'S GENERAL ASSEMBLY HAD CREATED NEW LAW GIVING BRIAN DAVID HILL A NEW CRIMINAL DEFENSE (WHICH IS LEGAL INNOCENCE WHEN A DEFENSE CAN BE PROVEN TO A COURT AND PERMISSIBLE) WHICH WARRANTS ACQUITTAL ON A VIRGINIA CONVICTION OR THAT BRIAN DAVID HILL CANNOT BE CONVICTED OF INDECENT EXPOSURE UNDER VIRGINIA CODE § 18.2- 387 DUE TO A NEW LEGAL DEFENSE FOR A

47

CRIMINAL CHARGE AUTHORIZED BY VIRGINIA CODE § 19.2-271.6

WHICH HAD BECAME LAW IN 2021" on the fundamental importance of both

the new Virginia Law and as to the Legal Innocence of Brian David Hill in regards

to his charge of Document #157; and that Petitioner legally has a criminal defense

meaning **no intent** when **intent is necessary to convict**. Petitioner hereby

incorporates by reference, as if fully set forth herein, pages 176 through 182.

60. In summary, in order to show that Petitioner violated his supervised

release by committing the offense of indecent exposure under Virginia law, the

government **was required to prove, among other things, that Petitioner had the

intent** to display or expose himself in a way which has, as its dominant theme or

purpose, appeal to the prurient interest in sex, as further defined above, without

any **justification, excuse, or other defense**.[2] The government failed to do so.

Rather, the government's evidence, presented through its own witnesses, showed

Petitioner as someone who was running around naked between midnight and 3:00

a.m. and taking pictures of himself because he believed that someone was going to

hurt his family if he did not do so.

---

[2] For the reasons stated above, the government's burden was to prove every
element of the offense, including the mens rea, beyond a reasonable doubt.
However, even if, arguendo, this Court were to find that the government's burden
was only a preponderance of the evidence, the government has still failed to carry
its burden.

61. The district court did not hear, however, any evidence of Petitioner having his dominant theme, or purpose being an appeal to the prurient interest in sex. For example, there was no evidence of Petitioner making any sexual remarks, being aroused, masturbating, or enjoying his conduct, sexually or otherwise.

62. The district court did not hear of the new criminal defense under Virginia Code § 19.2-271.6, where Petitioner had a defense to warrant that there was no intent and therefore the law was not broken.

63. Material and relevant evidence filed by Petitioner was never taken into consideration at the Trial under Documents #152, #153, #154, #155, #163, #163, #164, #165, #178, #179, and #181. Therefore the Petitioner asks the Habeas Court in the taking action on the § 2255 Motion to consider that the evidence prior to Trial be considered or should have been considered in regards to the Judgment under Document #200 and Document #186 Minute Entry and Document filing for Document #186. Suppression of evidence without a good legal reason or excuse violates a criminal defendant's rights under the Due Process Clause. If evidence is admissible, it should have been admitted at Trial but wasn't.

64. For example, Document #153, Affidavit by Petitioner attempting to explain the circumstances of what had happened on September 21, 2018. It explained the date of his arrest, and Document #153 is an Affidavit as it stated on Page 11 of document #153 the following words: "I declare under penalty of perjury

49

that the foregoing is true and correct. Executed on October 10, 2018." In fact the multiple written filings before Brian's arrest for the Supervised Release Violation had stated under penalty of perjury, under oath, that Petitioner had never masturbated. None of that was taken into consideration by the Trial Court on September 12, 2019.

CITATIONS:

"...I was threatened to get naked, **I never masturbated**, it was a crazy incident. Whoever threatened me needs to be charged and arrested..." (ECF No. 153, Pg. 9)
"**I never masturbated**, I told the police the truth. When I was seen by a passing vehicle, **I never masturbated**." (ECF No, 163, Pg. 4)
Same statements in Amended declaration under Document #164. Multiple affidavits, same statements that Brian had never masturbated in public. There is no evidence at all of obscenity, no evidence of sexual behavior.

65. If a person was purposing to expose himself in public because he or she found it sexually arousing, it would be logical that he or she would pick a place and time where he or she would expect to encounter lots of members of the public. Petitioner did not do that. Rather, he was running around between midnight and 3:00 a.m. and the witnesses to his nudity were few. Hence, the statements Petitioner made to police and his conduct both indicate that, in the light most favorable to the government, he was naked in public while having a psychiatric

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 51 of 194

episode. It could have been caused by Autism Spectrum Disorder or Psychosis

(See the evidence in Documents #221-8 and #181-10) or Carbon Monoxide

Poisoning, but in the light most favorable to the government Petitioner's conduct

was without the intent necessary to commit indecent exposure under Virginia law.

Consequently, the district court erred, as a matter of law, when it found that

Petitioner had violated his supervised release by committing the Virginia state law

offense of indecent exposure as per Virginia Code § 18.2-387.

66. There has been new evidence found which was not addressed on

September 12, 2019, it could not have been addressed until the transcript was fully

reviewed over. See Document #215. This new evidence could not have been

addressed at the Trial on September 12, 2019, until after it was thoroughly

reviewed over and then addressed at a later time. So the 2255 Motion and this

Brief / Memorandum of Law warrants reversing of the Judgment on Document

#200 based on newly discovered evidence that could not have been addressed at

the Trial until after the Trial. In fact the Document #215 Transcript was not filed

with the Court until November 6, 2019, a few months after the Trial. So the

findings are considered new evidence as it could not have been brought up until

after the final Trial had concluded. Taking the time to review the Transcript and

find the statements, misstatements, any perjury. It takes quite a bit of time even for

a lawyer to figure out what was said in a Transcript of a Trial.

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 52 of 194

CITATION (Page 34 of Document #215, TRANSCRIPT):

> Q. Okay. But as part of your investigation, have you been
> able to find out whether there were some threatening matters
> that was sent to him or his family?
> A. I have not heard anything of that, no.
> Q. But do you -- but you didn't do the investigation?
> A. No.
> Q. Did Mr. Hill -- when you approached him, did he tell you
> that he had autism?
> A. He did.
> Q. And do you guys -- does your -- I would say does your --
> does the department train you on how to approach someone with
> autism?
> A. We deal with some academy-wise and not much follow-up
> after that.

67. Wait a minute, he was the Officer who charged Brian David Hill with indecent exposure and yet he either "didn't do the investigation" or didn't want to further investigate. There are many holes in the case and that usually happens with incompetent law enforcement officers. If he is the one who was investigating, he didn't even look at the threatening greeting cards because he charged Petitioner quickly within a few hours and then they have no jurisdiction to investigate any further as it goes to the judges and the lawyers for resolution. It was a quick trigger criminal charge without a thorough investigation.

68. Right there cited from the Transcript proves to this Court that there was no thorough investigation and Petitioner was charged quickly. He didn't even know of the targeted harassment greeting cards and the threatening greeting card.

52

See the threatening and targeted harassment campaign of greeting cards under Exhibit 7 — Document #181-8. After he was charged, the Martinsville Police Department was under no further legal obligation to investigate any evidence of even Brian's claims or interview any potential witnesses (like Pete Compton for example, see Document #221-16, Page 3 of 3) as the case is then changed from the jurisdiction of the local police investigator to the Commonwealth Attorney for the City of Martinsville in the Commonwealth of Virginia. The prosecutor's job is only to win for the Government, the prosecutor is under no legal obligation to conduct further investigations and if he was, well they did a very terrible investigation by refusing to open up the envelope addressed to Police Chief G. E. Cassady (See **Exhibit 15** Video DVD or Blu-Ray DVD Disc) as they acted like any evidence did not exist if favorable to the criminal defendant. None of the officers of Martinsville Police Department ever asked Brian D. Hill or Roberta Hill to produce the evidence of the threatening greeting card that Brian had allegedly claimed. None of them attempted to further determine if Brian was lying or telling the truth. They just closed the case quickly and let the attorneys deal with the matter which was not the appropriate action, it was not the appropriate response. They screwed things up. They should have done more investigating but they did not, and that ruins the credibility of the very witness Robert Jones, Martinsville Police department who testified on September 12, 2019. See "EXHIBIT AND

53

WITNESS LIST" under Document #186. Witness named "Robert Jones,

Marinsville Police Department". Didn't even spell Martinsville correctly, a clerical

mistake.

69. In fact there is further evidence but does not need to be exhibited

for this 2255 case as it is already filed with the Western District of Virginia,

Federal Court. This Court can expend the record by requesting those records by

requesting transferring of those records from that Court's Clerk and/or file a Writ

of Certiorari to obtain those records. Further evidence which was not presented and

could not have been presented in the Trial Court on September 12, 2019. Petitioner

rather not load the 2255 full of exhibits when copies of evidence is already on

Federal Court records, even if in a different Federal District but still relevant and

material to this 2255 case. Again, a copy of those records can be transferred upon

request to the Clerk of that Court. Petitioner requests that the evidence exhibits be

transferred to the Federal Court over this 2255 case to expand the record for this §

2255 case.

70. Remember when Petitioner had filed a copy with the U.S. District Court

of his letter being mailed to Chief of Police G. E. Cassady of Martinsville Police

Department attempting to explain to the Police Department with evidence exhibits

and medical records as to why Petitioner was naked on September 12, 2019, since

the officers there failed to conduct even a thorough investigation prior to charging Petitioner with indecent exposure?

71. See Document #181, "DECLARATION entitled "Evidence Declaration of Brian David Hill Regarding Carbon Monoxide and Letgter to Martinsville Police Chief in Opposition to Government's/Respondent's Documents #[156], #[157], #[158], #[159], and #[160]" filed by BRIAN DAVID HILL. (Attachments: # (1) Exhibit 0, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Exhibit 3, # (5) Exhibit 4, # (6) Exhibit 5, # (7) Exhibit 6, # (8) Exhibit 7, # (9) Exhibit 8, # (10) Exhibit 9, # (11) Exhibit 10, # (12) Envelope - Front and Back) (Garland, Leah)". Filed in Jul 22, 2019. Letter was accidently misspelled in pleading as "Letgter" in the original filing.

72. The new evidence not known to the Trial Court was that Martinsville Police Department refused to conduct any further criminal case investigation into the indecent exposure case investigation on September 21, 2018, after quickly charging Petitioner with violation of Virginia Code § 18.2-387. After charging Petitioner super quickly, the same day, the Commonwealth Attorney Glen Andrew Hall, Esquire or the Commonwealth's Attorney at the time had jurisdiction over the case and also refused to investigate the new evidence after Petitioner was charged. Any evidence mailed to the Martinsville Police Department or the Commonwealth Attorney is ignored, turned away, and turned over to the Public

55

Defender who refuses to do anything with it. This very much destroys the credibility of both the U.S. Probation Office and the Martinsville Police Department for quickly charging Brian David Hill and quickly attempting to revoke the Supervised Release of Petitioner without conducting further investigation based on new evidence. This is very poor judgment by a Law Enforcement Agency. See the evidence emailed to USPO Jason McMurray but the Supervisory Officer Edward R. Cameron and the boss both ignored the evidence emailed to USPO McMurray. See **Exhibit 17**, Exhibit pages 65 through 68. See **Exhibit 16**, Exhibit pages 62 through 64. The higher ups at the U.S. Probation Office in Document #157 are at fault here and have defrauded the Court throughout the entire Supervised Release Violation process, spearheaded by corrupt Supervisory U.S. Probation Officer Edward R. Cameron, of Greensboro, North Carolina. He is no longer in charge and cannot ever attempt to retaliate against Petitioner so his name will be brought up with the truth even if it is against him in a negative but truthful light. AUSA Ramaswamy should be ashamed of himself too, the fraudster. Ignoring evidence, refusing to accept evidence. Edward Cameron loves ignoring evidence as he sees only what will convict Petitioner but nothing else evidence-wise matters.

73. Here is the new evidence but filed with the Western District of Virginia in a Federal Lawsuit in attempting to prevent the Commonwealth's wrongful

56

garnishment or taking of Brian David Hill's federally protected SSI money. The new evidence of photographs will be introduced in this 2255 case. The photographs of the sealed mailing envelope, the same envelope presented in video testimony under Declaration in **Exhibit 15**. See EXHIBIT PAGE 61 OF 87.

74. See case files in U.S. District Court for the Western District of Virginia:

75. See Case no. 4:20-cv-00017-JLK, Document #2-2, Filed 03/27/20, Page 39 of 72 Pageid#: 70

76. See Case no. 4:20-cv-00017-JLK, Document #2-2, Filed 03/27/20, Page 40 of 72 Pageid#: 71

77. See Case no. 4:20-cv-00017-JLK, Document #2-2, Filed 03/27/20, Page 41 of 72 Pageid#: 72

78. See Case no. 4:20-cv-00017-JLK, Document #2-2, Filed 03/27/20, Page 42 of 72 Pageid#: 73

79. See Case no. 4:20-cv-00017-JLK, Document #2-2, Filed 03/27/20, Page 43 of 72 Pageid#: 74

80. What does this prove exactly? It proves on August 7, 2019, that the chief of police of the city of Martinsville had signed for the envelope full of evidence mailed by the Petitioner in this case (Document #181 EVIDENCE). The police refused to investigate it and turned it over to the Commonwealth Attorney Glen Andrew Hall on the same day, August 7, 2019 at "1455 hours". Then that same

envelope was turned over to the Circuit Court appointed lawyer Matthew Scott Thomas Clark who never did anything with it. Matthew Scott Thomas Clark never informed his client that the envelope was turned over to the Commonwealth Attorney and then turned over to him, the ineffective lousy court appointed lawyer. That means that the minute the Petitioner was charged with indecent exposure, the police refused to investigate or look at any further evidence because of the quick charge and arrest. The police refused to actually investigate it thoroughly and thus they had no actual solid case, they never did.

81. The Trial Court knew none of this at the time of the final hearing on September 12, 2019. This section 2255 case brings new evidence which was not known to the Trial Court on the final hearing of September 12, 2019. That alone warrants reversing of that final decision under Document #200 and Document #186 Minute Entry. All evidence relevant and material to a criminal charge must be admitted unless the evidence admission violates the Federal Rules of Evidence.

82. In fact here is even more evidence that the testimony of Witness named "Robert Jones, Marinsville Police Department" was either not credible or that he lied under oath which is PERJURY. Perjury as to whether Brian David Hill was truly medically cleared or prematurely released knowing that Petitioner was going directly to jail where receiving medical care is very poorly done and cannot be done quickly.

58

**CITATION (Page 34 of Document #215, TRANSCRIPT)**
**TESTIMONY OF ROBERT JONES AND QUESTIONS ASKED BY**
**ATTORNEY RENORDA PRYOR:**

Q. Did he also tell you that he was a diabetic as well?
A. I do not recall him telling me that, no.
Q. Did he tell you that he was also OCD?
A. Not that I recall.

83. You would think that it was important for an officer to know whether

Brian David Hill was diabetic or not when arresting him or interviewing him or

interrogating him. They didn't even check his blood sugar as that would be a good

indicator was to why he was naked. Very poorly conducted Law Enforcement

procedures, very poorly conducted for any professional of Law Enforcement.

CITATION (Page 34 through 35 of Document #215, TRANSCRIPT):

Q. Okay. Did you get those reports from -- the medical
reports?
A. **No, I did not do a subpoena for his hospital records.**
Q. Okay. **Did you speak to a doctor or anyone regarding his
condition or anything** of that nature that night?
A. We -- other than just checking with him to see if they
were going to be releasing him or admitting him, **no.**
Q. **Do you recall any tests that were taken that night besides
just checking,** I believe you said, his knee?
A. **No, ma'am. Like I said, when we -- we also checked him
for mental health issues** is the reason why they cleared him
psychologically, to make sure there was nothing going on there.
Once they do that, they do lab work and other stuff. I didn't
ask about his medical history.
Q. **Was there any tests dealing with his blood alcohol content
or anything of that nature?**

59

A. **I don't know if they did. Like I said, I did not get his records. They normally do, but I do not have that.**

84. The important parts marked in bold and underlined. What does the officer mean by "we also checked him for mental health issues". It wasn't the Police, it was somebody working at the Hospital who evaluated Brian David Hill. What does Officer Robert Jones mean under oath by "we also checked him"? He didn't even believe that Brian David Hill was Autistic. See Roberta Hill's testimony under oath in **Exhibit 20**, EXHIBIT PAGE 84 THROUGH 87. See Brian Hill's claims in the Affidavit where he cussed out Officer Robert Jones some point after he insinuated that Petitioner was lying about being autistic. Dennis Debbaudt white paper referred to Document #132, Pages 9 through 12 of 103 for the Court to review what Petitioner was referring to. See **Exhibit 21**, EXHIBIT PAGE 88 THROUGH 99, Witness letter from Stella B. Forinash. See the Witness Letter from Kenneth Forinash under Exhibit 22, Exhibit pages 99 through 107.

CITATION OF Document #153 letter:
Page 5 of 11: "I told him "You don't understand Autism!", maybe "are you trained in Autism?" Sgt. R.D. Jones said "How do I know you even have Autism" I responded with Dennis Debbaudt a law enforcement trainer. He did a white paper."
Page 5 of 11: "He gave me that look where he didn't want to accept anything I said."
Page 6 of 11: "I further told Sgt. R.D. Jones that I was going to win the jury trial and sue him for violating the ADA. Argument escalated to me saying to him "Fu*k you!" At one point things cooled down and I was in front of the TV with a Magistrate."

60

85. Right there shows clear ignorance and failure of Martinsville Police Department to do its job properly. They failed and the Habeas Corpus should push for a sanction to reverse the wrongful conviction on September 12, 2019, and the final judgment on Document #200.

86. I would like to introduce to you the original charge and criminal complaint Affidavit in the General District Court.

87. See **Exhibit 1**, pages 1-3. The affidavit stated in part: **"He was medically and psychologically cleared."** That falsehood was also mirrored by the U.S. Probation Office under penalty of perjury under document #157 and I quote: **"Mr. Hill was medically and psychologically cleared."** Both are perjury as it is a false statement. The Officer quickly charged and arrested and the investigation ended and was moved to the Courts and the laws. If Petitioner is wrong to assume this, then why was the envelope full of evidence with new leads signed for by Police Chief G. E. Cassady (**Exhibit 15**) and then turned over to basically the lawyers instead of Investigators? The Martinsville Police didn't care about investigating anything, they ARE INCOMPETENT. They are lousy as supposedly professional officers and yet they don't want to look at any evidence. They are deficient in doing their jobs and they cover up their incompetence by quickly charging Petitioner with indecent exposure. How dreadful. They essentially lied to

61

USPO Jason McMurray. The Martinsville Police Department, they ought to be sanctioned by this Court or charged with perjury or even Obstruction of Justice for all of this craziness.

88. The Hospital did poorly and didn't even check Petitioner's diabetic blood sugar level but the record said he was diabetic but they never even checked his blood glucose level. They have done a far worse job than the Town of Mayodan in his original child pornography case. This is neglect of duty and medical neglect at best, pure sheer corruption at worst.

89. The Petitioner tried to obtain any laboratory results and the Hospital did none of that, despite the misleading testimony by Officer Robert Jones that: "**They normally do, but I do not have that**", as if he personally believes that the Hospital normally conducts laboratory testing. Well, why didn't they conduct laboratory testing and drug testing and alcohol testing of Brian David Hill before arresting him??? They didn't. They neglected to investigate any of that prior to charging Brian with indecent exposure. They neglected Brian both medically and neglected to properly investigate anything, they were quick on the trigger to arrest and charge Brian with indecent exposure. It was all done improperly. Neglect of duty.

90. Petitioner had made extrajudicial statements regarding the alleged indecent exposure charge back in 2018, and is permanently in Federal Court

records, his writings permanently in there and under Oath or Affirmation as a Declaration, valid under "28 U.S. Code § 1746 - Unsworn declarations under penalty of perjury".

CITATION: "At one point I felt like I might collapse **so I may have been drugged**. I had to keep sitting on benches." (ECF No. 153, Pg. 3 of 11). AGAIN, CITATION: "At one point I felt like I might collapse **so I may have been drugged**. (ECF No. 153, Pg. 3 of 11).

91. Petitioner actually said in a Declaration, written and signed by Brian David Hill, the Petitioner, and it was executed on October 10, 2018. Filed on October 17, 2018. Petitioner has no drug use history which was why his requirement for drug testing was suspended by his former supervising U.S. Probation Officer Kristy L. Burton. See Document #86. So Petitioner has no drug history, so Petitioner then makes a very scary and critical statement saying that he believes somebody drugged him, presumably with a narcotic or substance and yet Martinsville Police Department refused to drug test him and the Hospital never laboratory tested him. Because of the neglect by Law Enforcement and the Hospital, they cannot argue that Petitioner was not drugged or did not suffer under Carbon Monoxide poisoning because they do not have the affirmative laboratory proofs to disprove any of his claims as to being drugged or poisoned or whatnot.

92. They do not have any evidence to disprove his claims because blood vials were destroyed by the Hospital and/or Martinsville Police Department. When

63

somebody who has no drug abuse history all of the sudden writes an affidavit or declaration to the Federal Court and tells them in writing that he "may have been drugged", the Court and the U.S. Probation Office should have mobilized for a medical unit or drug testing unit to look into Brian's bazaar claims. They did none of that. Both the Police and Probation Office are at fault for not verifying his claims of being drugged, they failed when given the opportunity to see who drugged him and why. They cannot claim Brian had no substances or gasses or drugs in his system at the time he was arrested, AUSA Ramaswamy has no right, they have no right since Brian David Hill was in custody, not free, and it was up to Law enforcement to test his body for anything that could have influenced him to what had happened on September 21, 2018. The police failed Brian, not the other way around. The U.S. Probation Office failed him, not the other way around. They all refused to do a simple laboratory test or tests. They ignored Brian's claims of "**so I may have been drugged**" and refused to even test him for anything. What a letdown. Petitioner shouldn't be convicted of violating Supervised Release because the Police or Hospital failed or refused to drug test somebody claiming they may have been drugged, and that could have proven the Carbon Monoxide Poisoning Levels with a Carboxy-hemoglobin test. Again, Carbodyhemoglobin.

93. Where is the proof that the Hospital laboratory tests were cancelled without a valid reasonable explanation here??? See Document #181-11, Page 8 of

64

8. That proof was in the evidence mailed to Martinsville Police Department, in the sealed envelope mailing which was never opened by the Police.

94. It looked like alcohol tests and maybe drug tests were possibly ordered after drawing the blood samples from Brian David Hill. The medical Hospital staff witnesses' names are all on the medical record and can be subpoenaed by this Court if necessary to expand the record. However, the tests were cancelled without a good reason why and it said: "Corrections: (The following items were deleted from the chart)". That means the Hospital decided to renege on the laboratory tests at the expense of proving that Petitioner was under the influence of Carbon Monoxide poisoning or that he may have been drugged by somebody out on the Dick and Willie hiking trail in the City of Martinsville where Petitioner was on September 21, 2018.

95. The federal prosecution was supposed to prove every element of the offense but they did not, they clearly did not. Martinsville Police Department, the Commonwealth Attorney Glen Andrew Hall, and Martinsville Memorial Hospital aka Sovah Hospital of Martinsville all destroyed criminal case evidence, evidence which was essential to why Petitioner was out in the nude. Spoliation of evidence and the Federal Prosecution Anand Prakash Ramaswamy purposefully went along with this garbage. This violates Federal Law to destroy exculpatory evidence including biological evidence relevant or material to a crime or any criminal

65

investigation. Also it violates the rights of a criminal defendant under both Giglio v. United States, 405 U.S. 150 (1972) and Brady v. Maryland, 373 U.S. 83 (1963). Petitioner was entitled to the blood vials drawn from his arm on September 21, 2018, said he thought that he was "drugged" in document #153, page 3.

96. Because evidence was ignored and destroyed by Martinsville Police Department, it is clear that they violated Brian's rights to criminal discovery. That is another reason to vacate the conviction of Brian David Hill under Document #200 and Minute entry under Document #186.

97. There was no clear and convincing evidence proving that Brian David Hill was medically cleared, maybe he was psychologically cleared, yes, but should not have been medically cleared. That was premature and erroneous and thus cannot be established as a FACT by the Commonwealth or even by the Federal Prosecutor or even by the U.S. Probation Office. All three have defrauded the Court with such claims of being medically cleared but they, the Martinsville Police Department didn't even know that Petitioner was diabetic. Petitioner could have had a diabetic coma or diabetic seizure while handcuffed or had a diabetic seizure at the back of a squad car. They clearly lied when they claimed that he was medically cleared. Somebody screwed up here, either the police, the Hospital, or both. Somebody has to the pay the price for the misdoings of all of them.

66

98. Then there is the failure of the Hospital to notice obvious signs that something medically had gone wrong after his arrest.

99. It is a fact on the record that Brian Hill was released from the Hospital on September 21, 2018 from 4:04AM to 5:11AM under pages 2 through 8 of Document #181-11. Petitioner was not at the Hospital for a lengthy time to make a decent determination on whether Brian was in fact medically cleared or not. Laboratory tests ordered then cancelled and blood vials destroyed which is exculpatory evidence, biological evidence, all violating Petitioner's constitutional rights to exculpatory evidence under Giglio v. United States, 405 U.S. 150 (1972).

100. The Commonwealth who prosecuted the case did not know that for a fact of Petitioner being medically cleared or not that they filed a Motion for Reciprocal Discovery (request to Expand the Record to obtain the Commonwealth Attorney Glen Andrew Hall's filed "Motion for Reciprocal Discovery") after Brian's pro se filings. Commonwealth said in their responsive Discovery request pleading that they wanted any documentation of "...the existence of which is known to the Attorney for the Commonwealth, and any relevant written reports of autopsies, ballistic tests, fingerprint analysis, blood, urine and breath tests, other scientific reports, and written reports of a physical or mental examination of the Defendant or the alleged victim made in connection with this particular case." None of that was obtained because they didn't even know and requested the

evidence far too late when the Hospital already destroyed the blood vials aka the biological evidence, and Martinsville Police failed or refused to even make sure that the Hospital retains the evidence. It is spoliation of evidence. Violation of ethical law enforcement protocols. Violation of proper law enforcement protocols.

101. If they did get the evidence, the very same Medical Record that was filed by Petitioner pro se in Document #181-11, then they know that the Hospital had decided to refuse to conduct the Laboratory testing including alcohol levels and had just decided to release Brian to "Jail/Police" on Page 8 of 8, ECF. #181-11. The Hospital had clearly skirted their responsibility, had committed medical neglect knowing that Brian was going directly to Jail and could not contact his private physician, it was incompetence. It was neglect of duty and stupidity. The Medical Record also shows that they never tested his Type 1 Diabetic blood sugar when they knew he was diabetic (Page 3 of 8, ECF. #181-11).

102. That also does not make him medically cleared when they never even tested his blood sugar level knowingly sending him out to face a Magistrate Judge for his charge of Indecent Exposure without ever checking his blood sugar. A big medical NO!-NO! on record. Also, See Document #181-3, Page 4 of 5 of the record in this case, zoom in closely at the words, "Sinus Tachycardia", and "105bpm" which is beats per minute.

68

103. A resting blood pulse should not be over 100 or is considered Tachycardia, an abnormally high heart rate. Then see Document #181-5, Pages 2 to 3, "TRANSIENT CARDIAC DYSFUNCTION IN ACUTE CARBON MONOXIDE POISONING". That document mentions of the same term "bpm" and explains what it means. Then it also said that "First responders arrived within 30 minutes and found her to have sinus tachycardia with a heart rate of 100 beats per minute".

104. From the Medical Records in Document #181-3, Page 4 of 5; and Document #181-11, Page 6 of 8 of the record, it is clear that Brian had a history of "Tachycardia" in 2017 medical record and had similar abnormal readings multiple times at the Hospital on the day of his arrest for Indecent Exposure on September 21, 2018, after being at the Hospital for an estimated 1 hour or less there, not enough time to fully check his health to make sure that he was truly medically cleared, they did not. Again, ECF no. #181-11, Page 6 of 8, Around 4:09AM the "Pulse 119", around 5:01AM "Pulse 106". Those readings were actually worse than the "Sinus Tachycardia" 2017th medical record reading on Document #181-3, Page 4 of 5 of the record. Petitioner has proven to this court FACTUALLY beyond a reasonable doubt that Petitioner was "NOT" medically cleared. He was not medically cleared. That was a lie by Officer Robert Jones of Martinsville Police

69

Department. That lie was also in the U.S. Probation Office's charge against Petitioner in charging Document #157.

105. So, wouldn't Brian's health be worse than when he was in the Hospital on "Sunday, November 18, 2017", according to Document #181-3, Pages 2 through 5 of the record. Brian actually was Hospitalized with "Sinus Tachycardia" for having a resting blood pulse of "105" but yet on September 21, 2018, his blood pulse was actually worse than the last time he was admitted in the Hospital for a very short period of time but they never actually did any laboratory tests when they clearly should have when considering his behavior described by police and didn't even understood that Brian was suffering under Tachycardia and they "Discharged to Jail/Police" on 4:52AM according to their report. None of it makes any sense, they released a patient knowing that Jail has the worst Medical Care in America, they released him while he suffered under Tachycardia and they never checked his blood sugar knowing that was he was diabetic before they discharged him and not even giving him an hour at the Hospital. Hardly gave any time to actually give any thorough medical clearing.

106. Then on Document #181-11, Page 6 of 8, it said: "Differential diagnosis: fracture, sprain, penetrating trauma, et al. bdh ED course: Cleared from a psychiatric standpoint by Behavioral Health. patient will be discharged to jail." That actually does not say the words "cleared" from a regular medical standpoint

70

and they could not legally say so when evidence showed that Brian had Tachycardia readings that were actually higher than Brian's last Hospital stay in 2017, in 2017 he was injured in the head with blood pouring out of his head. Petitioner can expand the record by submitting the entire medical record of 2017 for a comparison. That is all in the Record prior to the final conviction of Brian David Hill for Indecent Exposure. So, it is a FACT that Brian was not medically cleared and that the Arresting Officer and his affidavit under Criminal COMPLAINT on **Exhibit 1** was wrong when the evidence had shown that Brian was not medically cleared at all. Especially when Officer Robert Jones was clearly ignorant of Brian's mental health and medical problems at the Trial on September 12, 2019.

107. So, they used his arrest as an excuse to cancel the Laboratory Tests and then the blood vials reportedly destroyed and evidence spoliated, which is evidence destruction, OBSTRUCTION OF JUSTICE under 18 U.S. Code § 1519 since Petitioner was on Federal Supervised Probation. So Petitioner should have been entitled to a laboratory test or drug test after his arrest. None of this is right and Officer Robert Jones said under oath that laboratory tests are normally done. Again he said under oath that "A. **I don't know if they did. Like I said, I did not get his records. They normally do, but I do not have that.**" This is blatant neglect of duty. That officer sounded stupid and moronic and yet pushed for the revocation of

71

Petitioner's supervised release with his non-thorough investigation results. Petitioner is angry that this moronic police officer is cause of his years of suffering in this case since 2018. Years of suffering and the Commonwealth of Virginia wanting to demand thousands upon thousands of dollars of his federally protected SSI disability money to pay legal costs of this moronic officer and his moronic push for the prosecution by Glen Andrew Hall. Petitioner should win in this case to have the wrongful conviction reversed at once in both the State and this Federal case.

108. Also I like to introduce **Exhibit 19,** Page 72 of 82 of the Exhibit pages.

109. The Affidavit by Brian David Hill describes the ineffectiveness of the lawyers, how corrupt Public Defender Lauren McGarry of the Martinsville's Public Defender Office had worked for the Commonwealth Attorney Office of Martinsville and she omitted that in her LinkedIn profile as Roberta Hill had investigated. A filing was put in to ask for substitute counsel because she was a walking and talking CONFLICT OF INTEREST. She refused to let Brian David Hill have any defense for the jury trial for the charge of indecent exposure during the Trial De Novo process. Any pleadings Petitioner ever filed in the Circuit Court was ignored. Petitioner asked for case dismissal, ignored. Petitioner asked for Substitute Counsel, ignored but Lauren McGarry then voluntarily filed a similar motion for Substitute Counsel and it was granted. Any motions Brian Hill had filed

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 74 of 194

were all ignored by the Hon. Giles Carter Greer. Any motions filed by lawyers were acted upon quickly. When Petitioner's new lawyer Matthew Scott Thomas Clark told Brian David Hill that he couldn't find any "carbon monoxide experts" because none of them would agree to it because they only testify in civil cases but not criminal cases. Whether he lied or not is the question. Whenever Petitioner or his family had asked for these experts, they demand to only speak to the lawyer. So pro se filers have no chance since these experts may consider testifying in a criminal case but only through the lawyer. The lawyer refuses to have any experts. So it was all one sided and that was why Petitioner had filed his Motion to Withdraw Appeal because he would NOT receive a fair trial in the Circuit Court with his lawyers symbolically stabbing him in the back and going sideways.

110. See **Exhibit 4**, Exhibit pages 20 through 31. Read the entire Motion to Withdraw Appeal and learn the conspiracy of Lauren McGarry attempting to turn Attorney McPheeters against Brian David Hill so that he refused to represent Petitioner in the State Trial De Novo. The behind the scenes backstabbing and garbage which led to Petitioner having no choice but to withdraw appeal in the Circuit Court. Names were not included in the Motion to Withdraw Appeal due to fear of lawsuits and angering her, but Petitioner is angry at owing thousands of dollars to these corrupt lawyers, so Petitioner is bringing up their names in this 2255 case. Petitioner is angry and cannot take this anymore. Petitioner wants

73

JUSTICE, JUSTICE, JUSTICE, and JUSTICE. Not the mind games and lawyers playing dirty mind games to have Brian give up and accept guilt when he is not guilty. The lawyer McPheeters did agree that Petitioner could have won in the Jury Trial based on the case law but then Lauren McGarry spoke to him another day and at the next attorney meeting he acted like he wanted to run away and not be involved with Petitioner's state case. So there was a lot of underhanded stuff going on here which Petitioner is willing to disclose on the record even at risk of being sued. Petitioner is angry and is angry about the underhanded mind games, Petitioner is angry at the mind games of lawyers and wants justice in this case. There are good lawyers though, but Petitioner has seen the worst lawyers in Martinsville and beyond. It is just the way things are.

111. Roberta Hill had typed in her Affidavit for Petitioner's 2255 case about the fact that the Martinsville Police Department had asked Roberta Hill if her son had Autism or was autistic. The fact that they were ignorant shows that Officer Robert Jones had lied about Brian Hill being medically cleared. He didn't even review over the medical records. He had no absolute factual knowledge to the best of his abilities to be able to factually state under Affidavit in the Criminal Complaint and in the Supervised Release Violation charge that Brian David Hill was medically cleared. See **Exhibit 20**, Exhibit pages 83 through 87. See **Exhibit**

74

**21**, Exhibit pages 88 through 99. See the Witness Letter from Kenneth Forinash under Exhibit 22, Exhibit pages 99 through 107.

112. The Affidavit of Roberta Hill shows and demonstrates to this Court some photographs of the big hole or worse damage in the ceiling and wall around the fireplace of Apartment 2, Brian David Hill's residence at the time of the alleged offense charge on September 21, 2018. The photographs were taken in 2019, which means that Carbon Monoxide Gas continued exhausting through the fireplaces instead of through the exhaust holes on top of the chimney of the Apartments of Brian David Hill (Apartment 2) and Roberta Hill (Apartment 1). The photographs shown the walls looking like tears coming down and holes in the walls. Like it was going to just fall apart at any moment. See **Exhibit 20**, EXHIBIT PAGES 85 AND 86 OF 87. See **Exhibit 21**, Exhibit pages 88 through 99. See the Witness Letter from Kenneth Forinash under Exhibit 22, Exhibit pages 99 through 107. That was the damage caused by the Carbon Monoxide Gas and the moisture caused by it. The Affidavit describes that Roberta Hill had hired a chimney expert to try to check on some damage near the fireplace and he started figuring out that it was caused by Carbon Monoxide Gas. If Carbon Monoxide Gas was evident in the Apartment of Brian David Hill as photographed in **Exhibit pages 85 through 87, 86 through 87**. If Carbon Monoxide Gas was evident in the

75

Apartment of Brian David Hill, then this can do some serious damage or affliction to Brian David Hill's mental state and body.

113. See Document #181-4, the issues regarding Carbon Monoxide and the article is by Medical Doctors: "Kent Olson, MD, FACEP, FACMT, FACCT, Medical Director and Clinical Professor of Medicine & Pharmacy" and Craig Smollin, MD, Assistant Medical Director and Clinical Professor of Medicine* Kent Olson, California Poison Control System, San Francisco Division and The University of California, California, USA BMJ Clin Evid. 2008; 2008: 2103. PMCID: PMC2907971 Published online 2008 Jul 23. PMID: 19445736".

114. In is a fact that "Severe poisoning can be fatal, and up to a third of survivors have delayed neurological sequelae." Meaning brain injury. Does this Court and the Federal Prosecutor really want to believe that Brian David Hill couldn't be made or forced or compelled by prolonged exposure to the Carbon Monoxide Gas to make him run out there in the presumably in the middle of the night butt naked on a hiking trail and only got spotted around maybe 3:00AM and then Martinsville Police Department finally detained him??? Brian David Hill was never acting like this previously from age 1 to 28. Never did this kind of behavior as a teenager, never did this kind of behavior at age 18 or 21. All of the sudden he does this around age 28 and cannot act correctly or think correctly. Heck he was diagnosed with a psychosis a month after he was arrested, by Dr. Conrad Daum of

76

Piedmont Community services none the less. Even a psychiatrist thought Brian David Hill was exhibiting a form of psychosis. Throughout this criminal case since 2014 in the Middle District of North Carolina, Brian was never diagnosed as having exhibited a psychosis prior to him being arrested or diagnosed a month after he was arrested. See Document #221-14, Pages 13 through 18 of 18.

115. Something was clearly mentally wrong with Brian David Hill. That is why Anand Prakash Ramaswamy did not prove the intent of Brian David Hill, because he too probably wonders why Petitioner was under psychosis and the other weird things going on which show that something else was going on, something outside of the control of Brian David Hill. Brian David Hill should have been hospitalized on September 21, 2018, but they refused. They should have committed him involuntarily at least for 48 hours in the inpatient psych unit until further tests were done and psychological profiling. That did not happen. So the Prosecution can never claim that Brian David Hill was never sick or suffered under any drug, narcotic, substance, or gas, because the laboratory tests were cancelled without a good excuse or reasonable explanation, biological evidence such as blood vials were destroyed.

116. It is clear that Brian David Hill did not violate Virginia Code § 18.2-387. Indecent exposure. Petitioner had not done this behavior prior, not even as a teenager when usually teenagers have a higher risk of doing things like drinking,

drugs, streaking, anything crazy to increase adrenaline and crazy behaviors because of the teenage hormones. Arguably, for a man who never exhibited those behaviors at any young age decided out of the blue at night to walk miles away from home while diabetic with Type 1 brittle diabetes. The police never found any diabetic equipment when they found him, they didn't even know he was diabetic according to the testimony of Robert Jones. See Document #215, TRANSCRIPT, pages 34 of 81:

> Q Did he also tell you that he was a diabetic as well?
> **A I do not recall him telling me that, no.**
> Q Did he tell you that he was also OCD?
> A Not that I recall.

117. Petitioner had not even told the Officer he was diabetic. The officer found a camera in his possession which was why they had the photographs of him naked, but they did not find any diabetic medical equipment in his possession. They did not find any insulin shots or insulin injection pens. They did not ever admit to finding any glucose tablets. They did not find any evidence that he had anything in his possession as to his Obsessive Compulsive Disorder such as hand sanitizer, napkins, even wash cloths. Petitioner was basically walking miles away from home without the necessary diabetic needs. If he had any intent that he was planning or had planned to walk outside naked, he would have carried all medical

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 80 of 194

supplies with him, as well as maps, a cellular phone which there was none. The Federal Court had the wrong description in the Trial Exhibits record.

118. See Document #188, it said: "Government's Exhibit 1 (Sealed) Thumbnail Photos **from Defendant's Phone**" They described that the photos were taken from a Cell Phone. **That is incorrect.** The Martinsville Search Warrant says a regular camera. The Search Warrant was filed on November 29, 2018.

119. It said: "Pink Sanyo digital camera and SD card in the Martinsville Police Dept evidence vault under evidence card number 32532 listed as item 1." It says nothing as to being a "phone". How stupid can the U.S. Attorney be to fraudulently describe Petitioner using a cell phone to take the photos of himself and not a digital camera? It is fraud or clerical mistake and must be corrected from the trial record from a clerical correctional standpoint of the record. The Court must review over the fraudulent Exhibit 1 term of "phone" and call it a "camera". That is truthfully what it was, a digital camera, not a phone.

120. So there were was no cell phone either in the charging State case. Nothing to prove or show intent. Intent would mean having notes, some kind of map or cell phone with GPS map software. Arguably for Mens Reas: If Brian David Hill had ever planned such a thing, there would be maps, notes, appropriate medical equipment to sustain him while he would be out there, and hand sanitizer for his OCD. There were no cell phones involved here and no cell phone cameras

involved here. Only a digital camera as evidenced by the Search Warrant executed in 2018.

121. Petitioner's appellate appointed attorney, Edward Ryan Kennedy who had reviewed over the case after removing Renorda Pryor as appellate counsel, he argued from his professional assessment as an officer of the Court that "statements Appellant made to police and his conduct both indicate that, in the light most favorable to the government, he was naked in public **while having a psychiatric episode**, but **without the intent necessary to commit indecent exposure under Virginia law**."

131. Again, you heard what this Attorney from West Virginia actually just said: "naked in public **while having a psychiatric episode**". He may be right. Petitioner wasn't thinking clearly. He never carried any of his life saving diabetic equipment or medicines on September 21, 2018. Officer Robert Jones found no evidence in Brian's possession after his arrest indicating that Brian David Hill was Type 1 Brittle Diabetic when he is clearly and was clearly Type 1 Brittle Diabetic.

132. Also while Petitioner was in Jail, after Roberta Hill, Stella Forinash, and Kenneth Forinash realized that Brian David Hill and Roberta Hill were exposed to Carbon Monoxide gas, they emailed the evidence to U.S. Probation Officer Jason McMurray which is evidence that U.S.P.O. McMurray was informed while the Supervised Release Violation charge was still pending. The U.S.

80

Probation Office should have reconsidered its charge against Brian David Hill and they did not. Petitioner is not blaming Jason McMurray as to why the emails were never acted upon despite the evidence in those emails. It is his Supervisory Probation Officer Edward R. Cameron of Greensboro, North Carolina who again does not care about the truth and the facts. With the repeatedly lies Petitioner has caught Edward R. Cameron approving those falsehoods, it seems like Edward Cameron may love to defraud the U.S. District Court against Petitioner, he loves approving the filing of questionable or false information against Brian David Hill, for whatever reason. Look at the first fraud on the court by Kristy Burton, See Document #137. This is not the first time Edward R. Cameron, the Supervisory Probation Officer had filed fraudulent information or questionable information against Brian David Hill and it would probably not be his last had the Probation Office in Roanoke not moved the case to the Western District of Virginia. See Documents #260, #262. Jason McMurray was truthful compared to Kristy Burton in 2015.

133. The evidence that U.S. Probation Officer McMurray was forewarned about the Carbon Monoxide poisoning prior to the Trial on September 12, 2019, was under **Exhibit 16**, **Exhibit pages 62 through 64**. See also **Exhibit 17**, a second email to Jason McMurray, **Exhibit pages 65 through 68**. This proves that USPO McMurray is a star witness, a key witness, in this 2255 Motion and he must

81

be given a deposition, be allowed to testify under oath, or file an affidavit regarding his witnessing of the damage in Brian David Hill's apartment in 2018 around his fireplace during his supervision of Petitioner. He also felt that Brian David Hill had acted weird in 2018 and Petitioner assumes that he more of believes it is more evidentially proven of Carbon Monoxide Gas rather than some guy wearing a hoodie. Carbon Monoxide gas is dangerous and is at issue here.

CITATION from **Exhibit 17** (citation omitted):

"Before we send a copy of the letter. We understand that you can't legally help Brian, but **you are a witness during 2018 of the damage in Brian's apartment around the fireplace** just like we are."

"We got a letter from Brian yesterday, and **he asked us to send photos of the damage on the ceiling and walls around his fireplace in the living room of the apartment where he has been living since May, 2016.** There was also white residual inside of his fireplace. The **chimney expert who found the carbon monoxide damage** said that this could be cleaned with detergent & water so Brian's mom has already cleaned that. It needed months to dry before repairs. There is a carpenter lined up to repair it around April 20th. It was the young son of the owner of the chimney company in Rocky Mount, VA who was sent to clean the fireplace (chimney sweep) and to put screen on all 3 holes to keep birds out of the fireplace; **instead he put tin over all 3 holes including the hole for the natural gas heater and the gas water heater in the basement leaving no where for the gas and water steam to escape in October, 2017. None of us were aware that there was tin there** and thought it was screen."

82

134. Petitioner's family was concerned that Petitioner was not going to be getting a fair trial in both of his indecent exposure cases (Supervised Release Violation, State case) involving this Supervised Release Violation and State case.

135. See **Exhibit 18**, Email subject: RE: carbon monoxide exposure from fireplace; emailed to Roberta Hill, and sent from Lisa Garrett who worked as a Fire Marshal of the Division Chief of Fire Prevention, Henry County Department of Public Safety. See **Exhibit pages 69 through 70 of 87**. They were clueless over the issue regarding Brian David Hill's fireplace. This is a whole new territory.

136. In regards to how a criminal case should treat Carbon Monoxide in regards to culpability: The Federal Courts are outdated as well as the Virginia Courts are outdated on how to hold people culpable who were under the influence of Carbon Monoxide Gas exposure. Trying to figure out whether intent can be proven or not on the basis that somebody acted abnormal which led to an arrest but was under Carbon Monoxide Gas Exposure and that of course causes Carbon Monoxide Poisoning. The Courts need updating on how they will treat cases where Carbon Monoxide exposure can be proven in regards to a criminal defendant's conduct which leads to an arrest.

137. Hence the final arguments for this ground is that there is no intent whatsoever as to why Brian David Hill was out there naked at night on a walking

trail on September 21, 2018. Petitioner is LEGALLY innocent of indecent exposure as per Virginia Code § 18.2-387. As a matter of law, Brian David Hill is innocent. Legal Innocence is Actual Innocence. Petitioner did not violate the law.

### GROUND III – THAT THE TRIAL COURT HAD ABUSED ITS DISCRETION WHEN IT DENIED PETITIONER'S MOTION TO CONTINUE THE REVOCATION HEARING UNTIL AFTER THE UNDERLYING CRIMINAL APPEAL WAS COMPLETED.

138. This Court made a big mistake on September 12, 2019, when it denied Petitioner's motion to continue the revocation hearing (See Document #187, oral motion to continue) until after the underlying criminal appeal in the Commonwealth of Virginia was completed. Instead the Federal Court interfered with the matters of the State Court and usurped the power of the State Court to determine if Petitioner had truly violated Virginia Code § 18.2-387 or not, under Virginia Code and its own Court's interpretation of Virginia Law. A Middle District of North Carolina Federal Court does not know Virginia Law, does not understand Virginia Law, and has no authority to interpret Virginia Law and any violations of Virginia Law except Federal Courts in the Commonwealth of Virginia. Federal Courts in the Commonwealth of Virginia can better interpret a potential violation of Virginia Law as any lawyers and judges in the

Commonwealth of Virginia and licensed to practice law by the State Bar of Virginia in the Commonwealth of Virginia will understand Virginia Law more better than Federal Judges and attorneys practicing in North Carolina. As stated above, this Court should extend and/or modify existing law to find that Petitioner had a constitutional right to a trial by jury and for his guilt to be determined to the beyond a reasonable doubt standard.

139. An abuse of discretion occurs when the district court demonstrates "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Morris v. Slappy, 461 U.S. 1, 11-12 (1983).

140. However, if the district court had not wanted to empanel a jury, it could have still protected Petitioner's constitutional rights by simply granting Petitioner's motion to continue the hearing in order to allow Petitioner's pending state court appeal to reach a final decision. See pages 4-5 of Document #215. Had the district court done so, it could have used the final conviction from the Virginia state court, if the appeal were unsuccessful, as a factual basis for a revocation because Petitioner would have, at that point, been determined to be guilty of said underlying offense beyond a reasonable doubt by a jury of his peers. Conversely, if said appeal were successful, then the district court could have dismissed the revocation petition. Therefore, the district court demonstrated an unreasoning and

arbitrary insistence upon expeditiousness in the face of a justifiable request for delay by insisting that the hearing proceed that day.

141. Because of the unconstitutional usurpation of power conducted on September 12, 2019, by Chief Judge Thomas David Schroeder who made an unreasonable push for a conviction rather than let the State Court do its job, it had caused the State Court to fail because of the wrongful interference with the State Court Trial process, which obstructs and interferes with the Constitutional right to a Trial by Jury under the Sixth Amendment of the U.S. Constitution. Chief Judge Thomas David Schroeder of the Trial Court had interfered with the State Court Trial process. Then he insisted that Petitioner was already guilty because of the finding of guilty in the General District Court on December 21, 2018. See pages 7 and 8 of Document #215. Respectfully, Petitioner asserts that the judge was wrong and that decision violated the Tenth Amendment of the U.S. Constitution. The Judge refused to let the State Court conduct fact findings and findings of law. His decisions contaminated the Judicial Process unlawfully, unconstitutionally in the State Court. It has become a constitutional crisis nightmare.

142. It is true when the entire Supervised Release Violation charge was over whether or not Petitioner had violated a Virginia Law passed by the Virginia Legislature and that law is interpreted by its Court process, it is up to the originating State Court's interpretation of the potential law violation at issue. It is

86

up to the Virginia Legislature to create and repeal laws for the Commonwealth of Virginia. It is up to the Virginia court System, its State Judiciary, to determine whether a criminal defendant had violated Virginia Law or not. It is not up to the Middle District of North Carolina to ever be allowed to interpret Virginia Law, even under a Federalist system. It should have been up to the Western District of Virginia or the Eastern District of Virginia. The United States of America is a republic of a Federal Government which represents the States. It is a Union of the States. Every State has its own guaranteed republic, with the basic three branches of Government, and has the guaranteed Constitutional rights for every State judicial system. Even under Federalism, the Tenth Amendment was amended to the Constitution where any State law or State Government or State judicial decision which isn't prohibited by Federal Law and isn't conflicting with the U.S. Constitution is left to the States respectively or to the people. The U.S. Constitution requires that States also give fair trials and jury trials of law.

143. Nothing in the statute which constitutes Supervised Release Violation charges or proceedings prohibits a State Court from deciding as a matter of law whether an actual State or Local Law was actually violated, before deciding in a Probation hearing whether the State Law was violated or not. It should have been up to the Commonwealth of Virginia and its judicial system to decide whether Brian David Hill actually violated Virginia Law in its final judicial decision of

comity before the Federal Court should have made that determination based upon the final decision of a State Court. The violation is not based on Federal, it was entirely based on whether Petitioner had violated Virginia Code or not, to constitute Petitioner potentially violating a condition over violating a State or Local Law. The only ones capable of correctly interpreting Virginia Law and if a Virginia Law were actually violated is the Courts of Virginia, and the U.S. Supreme Court in regards to Virginia Codes and Virginia cases itself. Even the Virginia Constitution could be altered if a particular State Constitutional amendment may violate Federal Law or Constitutional law.

144. As provided in 18 U.S.C. 3583(e)(4), and discussed at the revocation hearing the district court could have ordered Appellant to remain at his place of residence during non-working hours and/or placed him on electronic monitoring. Such an order would have alleviated any public safety concern while Petitioner's appeal was ongoing in State Court. Therefore, the district court abused its discretion when it denied Petitioner's motion to continue, as the district court could have alleviated the basis for this appeal by merely granting the continuance. It will be further argued in **"GROUND VI – UNCONSTITUTIONAL INTEFERENCE WITH THE STATE COURT PROCESS AND/OR UNWARRANTED USURPATION OF POWER AGAINST THE STATE**

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 90 of 194

**COURT PROCESS IN VIOLATION OF THE TENTH AMENDMENT OF THE UNITED STATES CONSTITUTION".** Paragraphs 191 through 215.

### GROUND IV – ACTUAL INNOCENCE - LEGAL INNOCENCE

145. Petitioner has a lot of potential grounds showing Actual Innocence. Petitioner was deprived of his Brady Rights and rights under Giglio v. United States. See Giglio v. United States, 405 U.S. 150 (1972) "(Giglio") and Brady v. Maryland, 373 U.S. 83 (1963) ("Brady"). Blood vials which could have been analyzed for Carbon Monoxide poisoning by usage of a Carboxyhemoglobin test. The Martinsville Police could have conducted the test if not the Hospital based on the blood which was already drawn from Petitioner's arm on September 21, 2018. They could have easily found abnormal levels and would have considered not charging Petitioner but have him Hospitalized or arrested for a limited period of time pending explanation from a medical standpoint why Petitioner was out there in the nude. So the destruction of the blood vials of blood samples drawn from Petitioner on September 21, 2018, show the blatant ignorance and corruption and neglect of duty by Martinsville Police Department the original Law Enforcement which caused the charge against Petitioner. Petitioner was deprived of Brady

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 91 of 194

rights, of Giglio rights. It isn't just withholding of evidence, it is destruction of evidence and willful neglect of duty.

146. Petitioner has no evidence of masturbatory behavior on September 21, 2018. The Commonwealth of Virginia and the U.S. Attorney had no evidence of masturbatory behavior on September 21, 2018. There is no evidence that Petitioner had any intent to being sexual in public. He had not been accused of that prior to September 21, 2018, and had not been charged with anything of the sort since then. This was only one time that this weird incident had ever happened and under very strange circumstances.

147. As the evidence had stated in GROUND I, GROUND II, GROUND III of the 2255 Motion and Brief / Memorandum of Law, Petitioner is legally innocent of indecent exposure under Va. Code § 18.2-387.

148. The appeal arguments by Attorney Edward Ryan Kennedy were good arguments and his arguments were being used in this Brief / Memorandum of Law, however the new evidence never used and never admitted on September 12, 2019, make it clear that Petitioner was never guilty of violating Virginia Code § 18.2-387. New evidence such as the Police and their neglect of duty, the trail of neglect of duty. The ignoring of evidence and refusal to investigate anything Petitioner mails to Martinsville Police Department. They refuse to investigate anything regarding the indecent exposure case because they quickly charged him and

90

refused and failed to conduct an actual thorough investigation worthy of Law enforcement. They did no actual investigation, they just quickly charged him with a crime and moved on. That is not how the law works and how it is supposed to work.

149. Petitioner asks this Court to examine the witnesses and have Officer Robert Jones explain why he lied about Brian David Hill being medically and psychologically cleared when the Hospital fell short and never even tried to figure out why Petitioner had Tachycardia readings and why they never checked his diabetic blood glucose. They never even completed the laboratory tests when the officer said they normally do the laboratory tests. It is clear that the Martinsville Police department is covering up their neglect of duty by wrongfully convicting Petitioner of indecent exposure and destroying evidence.

150. Petitioner also has evidence he wishes to file with the Court. See **Exhibit 2**. Three different Court Orders in the Martinsville Court system were not followed by the Commonwealth Attorney of Virginia who represented Martinsville Police Department. That **Exhibit 2** shows three different Court orders from Judges regarding Brady material aka the discovery evidence materials. None of them were followed but because Petitioner had terrible ineffective legal counsel in the State Court system, none of them pushed for sanctions against Glen Andrew Hall, Esq.,

91

the Commonwealth Attorney of the City of Martinsville. Evidence destroyed and covered up forever.

151. It is clear that Petitioner is innocent of indecent exposure under Virginia Code § 18.2- 387. All Grounds asserted by Petitioner in this new 2255 case in 2022 all support the notion that Petitioner is innocent. He is innocent because there is clearly no intent and intent is needed to convict. The evidence was destroyed by Martinsville Police Department. They violated three different court orders. They covered up evidence which would have exonerated Petitioner and may had prevented the Supervised Release Violation charge from ever occurring. Petitioner is not in the wrong here. The ones in the wrong are Martinsville Police Department for destroying evidence. The ones in the wrong are Martinsville Police Department for ignoring evidence and ignoring medical records and papers. The ones in the wrong are Martinsville Police Department for ignoring witnesses such as Pete Compton the chimney expert who was aware of carbon monoxide at the residence of Brian David Hill in the city of Martinsville. The ones in the wrong are Martinsville Police Department for destroying the body-camera footage recorded on September 21, 2018, and never turning it over to the counsel of the defense and never turned it over to the Federal Prosecution because they destroyed the body-camera footage and/or covered it up. Brian David Hill is clearly innocent here. Martinsville Police are guilty in this case of NEGLECT OF DUTY. They have

spoliated evidence aka spoliation of evidence. None of this can be reversed, the damage is already done and cannot be undone. Petitioner is innocent. Brian David Hill = Innocence.

152. Petitioner was cheated out of acquittal. He said so in Transcript.

CITATION OF See Page 71, Document #215 TRANSCRIPT:

"Your Honor, there's a lot more evidence that couldn't be presented at this hearing. We needed more time. That's why I filed the notice of interlocutory appeal. We would have had witnesses to come and testify. We need more time, and I need to go through the state appeal because I am actually innocent."

153. Petitioner requests the assistance of a medical expert over the issue of Carbon Monoxide poisoning to show Factual Innocence.

154. Petitioner requests the assistance of a mental health expert over the issue of intent regarding a criminal defendant with Autism Spectrum Disorder to show Factual Innocence.

155. Petitioner requests the assistance of an expert witness: Law Enforcement trainer Dennis Debbaudt over the issue of Autism Spectrum Disorder when questioned by law enforcement or making statements to law enforcement to show Factual Innocence. See his whitepaper in the Document #132, Pages 9 to 12 of 103.

> Law Enforcement trainer expert Dennis Debbaudt:
> 2338 SE Holland Street
> Port St. Lucie, Florida 34953

93

Phone: (772) 398-9756
Email: DDPI@flash.net

156. Petitioner requests the assistance of an expert witness or witness of

Carbon Monoxide Gas at Brian's Apartment: Chimney expert Pete Compton over

the issue of Carbon Monoxide Gas to show Factual Innocence. See his affidavit or

testimony in the Document #221-16, Page 3 of 3.

> Chimney expert Pete Compton:
> 296 Dodson Rd
> Bassett, VA 24055
> Phone: 276-629-4453

157. Petitioner likes to present AVC-HD DVD Disc (can be played on BLU-

RAY video players) and DVD Video Disc with the testimony of Brian David Hill

on January 5, 2021. It is 30 minutes and 13 seconds of testimony, physical

evidence being presented, and it is all relevant and material to the Virginia charge.

It is all relevant and material to the Supervised Release Violation charge. See

**Exhibit 15**.

158. Brian's family have uploaded the Exhibit 15 video on a public but

unlisted YouTube page https://www.youtube.com/watch?v=5PMalR45MSo and is

available in case the Judge cannot gain access to the DVD Video Disc or AVC-HD

DVD Blu-Ray playable disc.

94

159. In support of Petitioner's assertion of Actual Innocence, he will present the witnesses which need to file Affidavits and even be examined and/or cross examined by a hearing or Zoom Conference or Deposition:

1. Investigator Robert D. Jones of Martinsville Police Department who found Brian David Hill, arrested Brian David Hill, and charged Brian David Hill with the Virginia Code alleged violation on September 21, 2018;

2. Pete Compton (Document #181, Attachment #2) the ACE Chimney specialist from Bassett, Virginia who found the metal tin on top of the exhaust areas of the top of the chimney at the residence of Brian David Hill in 2018 and 2019, causing Carbon Monoxide gas to enter both apartments of Brian David Hill and Roberta Hill;

3. Roberta Hill, who had also experienced Carbon Monoxide Gas exposure from 2017, 2018, and stopped at 2019 after the intervention by Pete Compton where he removed the metal tin from the chimney. Even after the arrest of Brian David Hill, Roberta was still under Carbon Monoxide Gas exposure, before the arrest of Brian David Hill as well;

4. Brian David Hill, who had experienced Carbon Monoxide Gas exposure from 2017, 2018. Brian David Hill returned back to his residence after being released on bond, months after the intervention by Pete Compton where he removed the metal tin from the chimney;

5. Jason McMurray, who works at the Roanoke, Virginia office of the United States Probation Office. Supervises Brian David Hill and also had witnessed the damage on the wall of Brian David Hill's apartment in 2018 at the time of the Carbon Monoxide Gas exposure;

6. Dr. Conrad Daum, a forensic psychiatrist of Piedmont Community Services in Martinsville, Virginia, who evaluated Brian David Hill a month after he was arrested on indecent exposure. He thought Petitioner Brian David Hill was exhibiting a psychosis or paranoia. Psychosis is a symptom

documented of those who were prolong exposed to Carbon Monoxide Gas exposure.

160. Also I like to introduce **Exhibit 19,** Page 72 of 82 of the Exhibit pages.

161. The Affidavit by Brian David Hill describes the ineffectiveness of the lawyers, how corrupt Public Defender Lauren McGarry of the Martinsville's Public Defender Office had worked for the Commonwealth Attorney Office of Martinsville and she omitted that in her LinkedIn profile as Roberta Hill had investigated. A filing was put in to ask for substitute counsel because she was a walking and talking CONFLICT OF INTEREST. She refused to let Brian David Hill have any defense for the jury trial for the charge of indecent exposure during the Trial De Novo process. Any pleadings Petitioner ever filed in the Circuit Court was ignored. Petitioner asked for case dismissal, ignored. Petitioner asked for Substitute Counsel, ignored but Lauren McGarry then voluntarily filed a similar motion for Substitute Counsel and it was granted. Any motions Brian Hill had filed were all ignored by the Hon. Giles Carter Greer. Any motions filed by lawyers were acted upon quickly. When Petitioner's new lawyer Matthew Scott Thomas Clark told Brian David Hill that he couldn't find any "carbon monoxide experts" because none of them would agree to it because they only testify in civil cases but not criminal cases. Whether he lied or not is the question. Whenever Petitioner or his family had asked for these experts, they demand to only speak to the lawyer. So

96

pro se filers have no chance since these experts would consider testifying in a criminal case but only through the lawyer. The lawyer refuses to have any experts. So it was all one sided and that was why Petitioner had filed his Motion to Withdraw Appeal because he would receive a fair trial in the Circuit Court with his lawyers symbolically stabbing him in the back and going sideways.

163. See **Exhibit 4**, Exhibit pages 20 through 31.

164. Roberta Hill had typed in her Affidavit for Petitioner's 2255 case about the fact that the Martinsville Police Department had asked Roberta Hill if her son had Autism or was autistic. The fact that they were ignorant shows that Officer Robert Jones had lied about Brian Hill being medically cleared. He didn't even review over the medical records. He had no absolute factual knowledge to the best of his abilities to be able to factually state under Affidavit in the Criminal Complaint Affidavit and in the Supervised Release Violation charge that Brian David Hill was medically cleared. See **Exhibit 20**, Exhibit pages 83 through 87. See **Exhibit 21**, Exhibit pages 88 through 99. See the Witness Letter from Kenneth Forinash under Exhibit 22, Exhibit pages 99 through 107.

165. The Affidavit of Roberta Hill shows and demonstrates to this Court some photographs of the hole in the ceiling of Apartment 2, Brian David Hill's residence at the time of the alleged offense charge on September 21, 2018. The photographs were taken in 2019, which means that Carbon Monoxide continued

97

exhausting through the fireplaces instead of through the exhaust holes on top of the chimney of the Apartments of Brian David Hill (Apartment 2) and Roberta Hill (Apartment 1). The photographs shown the walls looking like tears and holes in the walls. Like it was going to just fall apart at any moment. That was the damage caused by the Carbon Monoxide Gas and the moisture caused by it. The Affidavit describes that Roberta Hill had hired a chimney expert to try to check on some damage near the fireplace and he started figuring out that it was caused by Carbon Monoxide Gas. If Carbon Monoxide Gas was evident in the Apartment of Brian David Hill as photographed in Exhibit pages 86 through 87. If Carbon Monoxide Gas was evident in the Apartment of Brian David Hill, then this can do some serious damage or affliction to Brian David Hill's mental state.

166. See Document #181-4, the issues regarding Carbon Monoxide and the article is by Medical Doctors: "Kent Olson, MD, FACEP, FACMT, FACCT, Medical Director and Clinical Professor of Medicine & Pharmacy" and Craig Smollin, MD, Assistant Medical Director and Clinical Professor of Medicine* Kent Olson, California Poison Control System, San Francisco Division and The University of California, California, USA BMJ Clin Evid. 2008; 2008: 2103. PMCID: PMC2907971 Published online 2008 Jul 23. PMID: 19445736".

167. In is a fact that "Severe poisoning can be fatal, and up to a third of survivors have delayed neurological sequelae." Meaning brain injury. Does this

98

Court and the Federal Prosecutor really want to believe that Brian David Hill couldn't be made or forced or compelled by prolonged exposure to the Carbon Monoxide Gas to make him run out there in the middle of the night butt naked on a hiking trail and only got spotted around maybe 3:00AM and then Martinsville Police Department finally detained him??? Brian David Hill was never acting like this previously from age 1 to 28. Never did this kind of behavior as a teenager, never did this kind of behavior at age 18 or 21. All of the sudden he does this around age 28 and cannot act correctly or think correctly. Heck he was diagnosed with a psychosis a month after he was arrested, by Dr. Conrad Daum of Piedmont Community services none the less. Even a psychiatrist thought Brian David Hill was exhibiting a form of psychosis. Throughout this criminal case since 2014 in the Middle District of North Carolina, Brian was never diagnosed as having exhibited a psychosis prior to him being arrested or diagnosed a month after he was arrested. See Document #221-14, Pages 13 through 18 of 18.

167. Something was clearly mentally wrong with Brian David Hill. That is why Anand Prakash Ramaswamy did not prove the intent of Brian David Hill, because he too probably wonders why he was under psychosis and the other weird things going on which show that something else was going on, something outside of the control of Brian David Hill. Brian David Hill should have been hospitalized on September 21, 2018, but they refused. They should have committed him

99

involuntarily at least for 48 hours in the inpatient psych unit until further tests were done and psychological profiling. That did not happen. So the Prosecution can never claim that Brian David Hill was never sick or suffered under any drug, narcotic, or gas, because the laboratory tests were cancelled without a good excuse or reasonable explanation, biological evidence such as blood vials were destroyed.

168. It is clear that Brian David Hill did not violate § 18.2-387. Indecent exposure. Petitioner had not done this behavior prior, not even as a teenager when usually teenagers have a higher risk of doing things like drinking, drugs, streaking, anything crazy to increase adrenaline and crazy behaviors because of the hormones. A man who never exhibited those behaviors at any young age decided out of the blue at night to walk miles away while diabetic with Type 1 brittle diabetes. The police never found any diabetic equipment when they found him, they didn't even know he was diabetic according to the testimony of Robert Jones.

169. See Document #215, TRANSCRIPT, pages 34 of 81:

> Q Did he also tell you that he was a diabetic as well?
> **A I do not recall him telling me that, no.**
> Q Did he tell you that he was also OCD?
> A Not that I recall.

170. Petitioner had not even told the Officer he was diabetic. The officer found a camera in his possession which was why they had the photographs of him naked, but they did not find any diabetic medical equipment in his possession.

100

They did not find any insulin shots or insulin injection pens. They did not ever admit to finding any glucose tablets. They did not find any evidence that he had anything in his possession as to his Obsessive Compulsive Disorder such as hand sanitizer, napkins. Petitioner was basically walking miles away from home without the necessary diabetic needs. If he had any intent that he was planning or had planned to walk outside naked, he would have carried all medical supplies with him, as well as maps, cellular phones which there was none. The Federal Court had the wrong description. They described that the photos were taken from a Cell Phone. That is incorrect. The Martinsville Search Warrant says a regular camera. The Search Warrant was filed on November 29, 2018.

172. It said: "Pink Sanyo digital camera and SD card in the Martinsville Police Dept evidence vault under evidence card number 32532 listed as item 1."

173. So there were no cell phone either. Nothing to prove or show intent. Intent would mean having notes, some kind of map or cell phone with GPS map software. If Brian David Hill had ever planned such a thing, there would be maps, notes, appropriate medical equipment to sustain him while he would be out there, and hand sanitizer for his OCD. There were no cell phones involved here and no cell phone cameras.

174. Petitioner's appointed attorney, Edward Ryan Kennedy who had reviewed over the case after removing Renorda Pryor as appellate counsel, he

101

argued from his professional assessment as an officer of the Court that" statements Appellant made to police and his conduct both indicate that, in the light most favorable to the government, he was naked in public **while having a psychiatric episode**, but without the intent necessary to commit indecent exposure under Virginia law."

175. Again, you heard what this Attorney from West Virginia actually just said: "naked in public **while having a psychiatric episode**". He may be right. Petitioner wasn't thinking clearly. He never carried any of his life saving diabetic equipment or medicines on September 21, 2018. Officer Robert Jones found no evidence in Brian's possession after his arrest indicating that Brian David Hill was Type 1 Brittle Diabetic when he is clearly and was clearly Type 1 Brittle Diabetic.

176. Also while Petitioner was in Jail, after Roberta Hill, Stella Forinash, and Kenneth Forinash realized that Brian David Hill and Roberta Hill were exposed to Carbon Monoxide gas, they emailed the evidence to U.S. Probation Officer Jason McMurray which is evidence that U.S.P.O. McMurray was informed while the Supervised Release Violation charge was still pending. The U.S. Probation Office should have reconsidered its charge against Brian David Hill and they did not. Petitioner is not blaming Jason McMurray as to why the emails were never acted upon despite the evidence in those emails. It is his Supervisory Probation Officer Edward R. Cameron who again does not care about the truth and

102

the facts. He loves to defraud the U.S. District Court, he loves filing false information against Brian David Hill, for whatever reason. Look at the first fraud on the court by Kristy Burton, See Document #137. This is not the first time Edward R. Cameron, the Supervisory Probation Officer had filed fraudulent information against Brian David Hill and it would probably not be his last had the Probation Office in Roanoke not moved the case to the Western District of Virginia. See Documents #260, #262.

177. The evidence that U.S. Probation Officer McMurray was forewarned about the Carbon Monoxide poisoning prior to the Trial on September 12, 2019, was under **Exhibit 16**, Exhibit pages 62 through 64. See also **Exhibit 17**, a second email to Jason McMurray, Exhibit pages 65 through 68. This proves that USPO McMurray is a star witness, a key witness, in this 2255 Motion and he must be given a deposition, be allowed to testify under oath, or file an affidavit regarding his witnessing of the damage in Brian David Hill's apartment in 2018 during his supervision of Petitioner. He also knows that Brian David Hill had acted weird and that he more of believes it is more evidential of Carbon Monoxide Gas rather than some guy wearing a hoodie. Carbon Monoxide gas is dangerous.

> CITATION from **Exhibit 17** (citation omitted):
> "Before we send a copy of the letter. We understand that you can't legally help Brian, but **you are a witness during 2018 of the damage in Brian's apartment around the fireplace** just like we are."

"We got a letter from Brian yesterday, and **he asked us to send photos of the damage on the ceiling and walls around his fireplace in the living room of the apartment where he has been living since May, 2016**. There was also white residual inside of his fireplace. The **chimney expert who found the carbon monoxide damage** said that this could be cleaned with detergent & water so Brian's mom has already cleaned that. It needed months to dry before repairs. There is a carpenter lined up to repair it around April 20th. It was the young son of the owner of the chimney company in Rocky Mount, VA who was sent to clean the fireplace (chimney sweep) and to put screen on all 3 holes to keep birds out of the fireplace; instead he put **tin over all 3 holes including the hole for the natural gas heater and the gas water heater in the basement leaving no where for the gas and water steam to escape in October, 2017**. None of us were aware that there was tin there and thought it was screen."

178. Petitioner's family was concerned that Petitioner was not going to be getting a fair trial in both of his indecent exposure cases (Supervised Release Violation, State case) involving this Supervised Release Violation and State case.

179. See **Exhibit 18**, Email subject: RE: carbon monoxide exposure from fireplace; emailed to Roberta Hill, and sent from Lisa Garrett who works as a Fire Marshal of the Division Chief of Fire Prevention, Henry County Department of Public Safety. See Exhibit pages 69 through 70 of 87. They were clueless over the issue regarding Brian David Hill's fireplace. This is a whole new territory.

104

180. The Federal Courts are outdated as well as the Virginia Courts are outdated on how to hold people culpable who were under the influence of Carbon Monoxide Gas exposure. Trying to figure out whether intent can be proven or not on the basis that somebody acted abnormal which led to an arrest but was under Carbon Monoxide Gas Exposure and probably Carbon Monoxide Poisoning. The Courts need updating on how they will treat cases where Carbon Monoxide exposure can be proven in regards to a criminal defendant's conduct which leads to an arrest.

181. Hence the final arguments for this ground is that there is no intent whatsoever as to why Brian David Hill was out there naked at night on a walking trail on September 21, 2018. Petitioner is innocent of indecent exposure as per Virginia Code § 18.2-387. As a matter of law, Brian David Hill is innocent. See Exhibit 23, Exhibit pages 108 through 111, the "Printout of Statute Virginia Code § 19.2-271.6. Evidence of defendant's mental condition admissible; notice to Commonwealth".

182. For the sake of brevity, Petitioner will not reproduce all of the arguments and remarks from "GROUND XI – VIRGINIA'S GENERAL ASSEMBLY HAD CREATED NEW LAW GIVING BRIAN DAVID HILL A NEW CRIMINAL DEFENSE (WHICH IS LEGAL INNOCENCE WHEN A DEFENSE CAN BE PROVEN TO A COURT AND PERMISSIBLE) WHICH

WARRANTS ACQUITTAL ON A VIRGINIA CONVICTION OR THAT

BRIAN DAVID HILL CANNOT BE CONVICTED OF INDECENT EXPOSURE

UNDER VIRGINIA CODE § 18.2-387 DUE TO A NEW LEGAL DEFENSE

FOR A CRIMINAL CHARGE AUTHORIZED BY VIRGINIA CODE § 19.2-

271.6 WHICH HAD BECAME LAW IN 2021" on the fundamental importance of

both the new Virginia Law and as to the Legal Innocence of Brian David Hill in

regards to his charge of Document #157; and that Petitioner legally has a criminal

defense meaning **no intent** when **intent is necessary to convict**. Petitioner hereby

incorporates by reference, as if fully set forth herein, pages 176 through 182.


## GROUND V – FRAUD ON THE COURT


183. The U.S. Attorney Office knows this is true. They defrauded the Court

because the entire case was already contaminated by destruction of evidence, lying

and claiming that Petitioner was medically cleared when they have no proof of

that. The Police Department refusing to accept any evidence mailed or emailed by

family or friends. The Police department isn't doing their job. They didn't even

know that Petitioner was diabetic. The Officer Robert Jones admitted to that fact

under penalty of perjury in open Court on September 12, 2019.

184. The whole Trial was a sham since it would not let the Circuit Court or the matters of law make a determination in Virginia, the Trial should not have led to a conviction. Evidence was ignored or suppressed.

CITATION OF See Page 71, Document #215 TRANSCRIPT: "Your Honor, there's a lot more evidence that couldn't be presented at this hearing. We needed more time. That's why I filed the notice of interlocutory appeal. We would have had witnesses to come and testify. We need more time, and I need to go through the state appeal because I am actually innocent."

185. However, Anand Prakash Ramaswamy knew all of this. He knew he prosecuted another fraud on the court, just like with Kristy L. Burton lying on the stand multiple times in 2015. See Document #137. All he has ever done was presented fraudulent prosecutions. It is all about winning the case at all costs no matter what. He prosecuted the erroneous claim that Brian David Hill was a danger to the community aka he means a danger to society over having an Autistic meltdown which is common with Autistic people. So he is calling every adult and child with Autism Spectrum Disorder a DANGER TO A COMMUNITY aka a DANGER TO SOCIETY. He is calling every Autistic person who ever had an autistic meltdown around police or anybody a DANGER TO SOCIETY or DANGER TO THE COMMUNITY. What a liar Anand Prakash Ramaswamy is, he has no empathy for the mentally handicapped. He has no empathy for the mentally and physically disabled. He has no empathy or sympathy for those damaged by the vaccinations. He never had Autism, he doesn't know what it is

107

like, he has never lived a day in Brian Hill's shoes. He is ignorant just like the Police Department. He doesn't respect the truth or the law, he respects only winning his cases.

186. Ramaswamy knew all of this about the issues raised in Document #181, he knew that the laboratory tests were destroyed or never completed by the Hospital or Martinsville Police or both. He knew that the blood vials were destroyed. He knew under Document #153 where Petitioner said that he may have been drugged. He didn't want to mandate a simple and quick drug test in October, 2018 to verify Petitioner's claims under oath in Document #153 Declaration. Ramaswamy had waived his right and no drug test now can go back to 2018. Ramaswamy screwed up the entire case again hoping he will just win through his fraudulent prosecutions. Petitioner is getting sick and tired of Anand Prakash Ramaswamy lying about him and repeatedly engaging in fraud on the court. Petitioner is tired of this charade. Petitioner wants this to END, wants this to STOP.

187. Petitioner asserts fraud on the court charges against Federal Prosecutor Anand Prakash Ramaswamy. Petitioner asserts that he had undisputed, uncontested claims of fraud concerning the second Supervised Release Violation in Document #206. It is uncontested, undisputed, even though it wasn't a "2255" filed in the right form. Now the 2255 in the right form asserts document #206 is uncontested

108

and all contentions in that motion are in fact true. Petitioner had shown through uncontested Motion Document #206 that Anand Prakash Ramaswamy had defrauded the Court, again. How can a Court continue allowing the uncontested motions under Local Rule 7.3 to not provide any relief?

188. Again, On October 15, 2019, Document #206 was filed entitled as "MOTION entitled "Petitioner's Second Motion for Sanctions and to Vacate Judgment that was in Plaintiff's/Respondent's Favor; Motion and Brief/Memorandum of Law in support of Requesting the Honorable Court in this case **Vacate Fraudulent begotten Judgment or Judgments**" filed by BRIAN DAVID HILL. **Response to Motion due by 11/5/2019.** (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Supplement 1, # (4) Supplement 2, # (5) Supplement 3, # (6) Supplement 4, # (7) Envelope - Front and Back) (Garland, Leah)". The Respondent aka the United States of America, the Government, had not contested any of the contentions in that motion by the response due date of **November 5, 2019.** The fact it was uncontested means the following FACTS asserted in that Motion were undisputed as alleged by Petitioner with attached Exhibits of evidence. The facts of the prosecution being based on fraud and they didn't respect Petitioner's constitutional rights to prove his innocence in the State Court. The whole thing was meant to fabricate guilt in the State Court by convicting Petitioner on September 12, 2019. Ramaswamy knew Petitioner could

109

have won and could have been found innocent. He knew about the Carbon Monoxide, he knew about Brian's letter to the Martinsville Police Chief (Doc. #181) since every pro se filed document in this Court is automatically emailed to the U.S. Attorney Office by CM/ECF NOTICE OF ELECTRONIC FILING. They clearly knew the entire case was botched up and continued with their fabrication of the truth and fabrication of the facts. Fabrication of the alleged guilt.

189. Petitioner didn't have all the facts during the Supervised Release Violation hearing on September 12, 2019, because it all happened so fast and it takes time to investigate everything. Petitioner knows that the Hospital screwed things up. Petitioner knows that the body-camera footage was destroyed by Martinsville Police Department. Petitioner repeatedly asked for the body-camera footage but his requests were ignored and the evidence destroyed in violation of three State Court orders regarding Brady Material and discovery evidence materials for a criminal case prosecution. Destruction of evidence normally happens in a fraudulent prosecution. See video testimony and shown evidence in **Exhibit 15**.

190. Petitioner personally believes that Anand Prakash Ramaswamy had defrauded the Court to obtain a favorable judgment and bias and prejudice from Chief Judge Thomas David Schroeder under Document #200. The fraud needs to be undone, the issues need to be corrected. The fraud is undisputed, Ramaswamy

110

cannot go back and undo waiving his rights to respond to the contentions under Document #206 Motion for Sanctions. That was Local Rule 7.3 paragraphs (f) and (k). Petitioner as well as the Court are victims of fraud on the court. This is egregious. Egregious abuses against logic and truth.

## GROUND VI – UNCONSTITUTIONAL INTEFERENCE WITH THE STATE COURT PROCESS AND/OR UNWARRANTED USURPATION OF POWER AGAINST THE STATE COURT PROCESS IN VIOLATION OF THE TENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

191. This ground specifically asserts that there is new evidence which needs to be developed and thoroughly investigated before disposition of this ground. That the interference led to the wrongful conviction in the Circuit Court, and such meddling with the affairs of the State Court by predetermining the guilt of violating Virginia Code by a Federal Court in the State of North Carolina, a foreign state.

192. Petitioner requests appointment of counsel for this 2255 case.

193. Petitioner has a 21 minute phone call recording (See **Exhibit 3**, Audio CD evidence of phone call recording) of his phone conversation with State Court appointed attorney Matthew S.T. Clark of Martinsville, Virginia. This phone

conversation aids in proving unlawful and unconstitutional and unwarranted

Federal interference and an unwarranted usurpation of power with the judgment of

conviction on September 12, 2019, Document #200. The Audio CD which the U.S.

Attorney and the Court should also have a copy of, listen to the conversation.

Petitioner waives attorney-client privilege for this specific phone call conference

recording under the one party consent statute for phone call recording. The

attorney in such recording never asserted confidentiality and never requested that

the conversation not be recorded. Virginia is a one party consent state for phone

call recording. This conversation proves that right after Matthew Clark was

informed of the verdict by Hon. Chief Judge Thomas David Schroeder at the

Supervised Release Violation Revocation hearing on September 12, 2019, the

attorney started consistently putting pressure on Brian Hill, his client, to give up on

fighting in the State Court and withdraw his appeal in the Circuit Court.

194. Then Petitioner did withdraw appeal due to such interference but he

maintained his Actual Innocence and preserved his Actual Innocence to overturn

his wrongful state conviction at a later time. See **Exhibit 4**. He did not waive

having the Governor overturn his conviction with an Absolute Pardon on the

ground of his Actual Innocence. He filed a Pardon Application in 2019 or 2020,

with the secretary of the Commonwealth. That application for a Pardon of

Innocence is still pending at the time of this 2255 case. Petitioner also preserved

112

his right to file a Petition for the Writ of Actual Innocence in the Court of Appeals of Virginia. Petitioner can present proof of this upon request by this Court. After Petitioner files the Petition for the Writ of Actual Innocence, he will so notify this Court as yet another issue why disposition of the 2255 Motion would not be appropriate until all State Court remedies are exhausted in regards to his charge in September 21, 2018.

195. According to the audio recording, the attorney Matthew Scott Thomas Clark started arguing that Brian wasn't revoked because of violating any law but was revoked of his Supervised Release because of Brian's behavior. That wasn't the charge here, his charge on Document #157 was the allegation of violating State Law, not regarding his "behavior".

196. Upon analysis and investigation, Matthew Clark had lied to Mr. Hill about various things to wrongfully pressure Brian Hill into withdrawing his appeal in the Circuit Court and the federal interference had caused such issues. One such lie was his claim to Mr. Hill that he was a "Federal Attorney" and gave his alleged proclaimed expert advice regarding Supervised Release Violations and told Brian that his behavior was why Brian lost in Federal Court, as if judging him. Even made it sound to appear or have said that even if Brian can win in State Court, he would still lose in Federal Court because of his behavior. Upon investigation into whether there are any records that Matthew Scott Thomas Clark ever served or

113

practiced in a Federal Court, there is no evidence of such. Only practiced law in the Virginia Courts as referenced by his family's research at lawyers.com the main website his family can find attorney information and the areas of law which they practice. Brian's conditions under SRV does not specify exactly in writing that his "behavior" can cause a successful revocation. Only if his behavior had violated a condition. It can cause maybe the Probation Officer to intervene and cause more mandatory mental health screenings, but Brian's "behavior" alone does not violate his conditions of Supervised Release. It is only that Brian not violate another Federal, State, or Local law, as well as other conditions he has to comply with to avoid a revocation. None of them specify that Brian's "behavior" alone if no law was violated can trigger a violation. Brian was however accused of violating the first Supervised Release condition triggered by Brian's autistic "behavior" but that was because Brian was charged with not following the orders of the Probation Officer Kristy L. Burton. So in regards to not following orders of the Probation Officer, "behavior" can cause the revocation or violation charge, but "behavior" not violating a law and not conflicting with a particular condition of release does not warrant a revocation. A behavior where no law is broken and no condition was violated is not grounds for revocation.

197. Then the Attorney Matthew Scott Thomas Clark continued shooting down all of Brian's suggestions. Telling Brian that he cannot find an expert

114

witness who would agree to testify in a criminal case who would understand carbon monoxide. That Brian would face seven jurors from the Bible belt who would look at Brian's behavior and would feel stigmatized over why Brian would be naked out in public at night at a time when exposure to another person would be few if any. Then the attorney said that Brian would be facing more prison time if he fought this and the "jury" felt that Brian wasn't "telling the truth". You can hear footsteps in the background as Petitioner was pacing back and forth on the hardwood floor of his home. It was clear that Petitioner was frustrated with this attorney.

198. Again, See **Exhibit 4**. The Motion to Withdraw Appeal.

199. However the Circuit Court did not consider his withdrawal as a guilty plea and any notion of changing plea was stricken from the record of the State Court. Petitioner never plead guilty.

200. See **Exhibit 5**. The conviction. In that conviction, no guilty plea was entered as noted. The words "DEF CHANGED HIS PLEA TO GUILTY AND" were stricken from the record in the State Court. Only that he had withdrawn appeal, but the words "DEF ~~CHANGED HIS PLEA TO GUILTY AND~~" aka "~~PLEA TO GUILTY~~" were stricken by the Judge in the Circuit Court. So there is no guilty plea at all in this final conviction. Despite the unwarranted and

115

unconstitutional interference by the Federal Court not allowing the State Court to finish its Trial De Novo process under the Sixth Amendment of the United States Constitution, Petitioner still did not plead guilty.

201. The door is still open for Petitioner to get his wrongful conviction overturned in the State Court system on legal innocence. He could succeed with new evidence filed in the Circuit Court. If the 2255 case succeeds or any new evidence surfaces in any evidentiary hearing in this 2255 case then he can use that as evidence to help ask for a new trial in the Circuit Court and overturn his State conviction just by the findings in the 2255 case, this 2255 case directly affects the decision which could be made in the State Court at a later time. He could succeed with an Absolute Pardon from the Governor of Virginia on the basis of Actual Innocence. Brian can also file a Petition for the Writ of Actual Innocence and Brian promises this Federal Court that he will file a Petition for the Writ of Actual Innocence in Virginia if he has no other avenue for acquittal because Brian will attempt to exhaust every remedy possible to prove that he is innocent of indecent exposure and thus did not violate the conditions of his Supervised Release on the date of September 21, 2018. Petitioner does have the ability to ask for a New Trial based upon evidence which was inadmissible at the time of conviction in 2019, so Petitioner has that option.

202. It is a FACT however that the Federal Court wrongfully and unconstitutionally interfered with the constitutionally protected process of the State Trial De Novo by jury trial which erased the finding of guilty on December 21, 2018. The Trial De Novo erased that conviction and a verdict of not guilty based upon legal innocence would have been enough to settle the Supervised Release Violation in the Federal Court. They didn't wait for the State Court to develop the facts. They had overwritten the State Court's jury trial process by asserting a wrongful bench verdict of guilty. This violates both the Sixth Amendment and Fourteenth Amendment of the United States Constitution. Due process of law.

203. Federal courts primarily interfere with state courts in three ways: by enjoining proceedings in them, by issuing writs of habeas corpus to set aside convictions obtained in them, and by adjudicating cases removed from them. With regard to all three but particularly with regard to the first, there have been developed certain rules plus a statutory limitation designed to minimize needless conflict. There was no Habeas Corpus proceeding by the Federal Court over the State Trial process on September 12, 2019, there was no removal of the state case to have it tried in the Federal Court, and there was no good reason for the Federal Court to make its final decision until after the Trial since the verdict in the Supervised Release Violation hearing would be the imprisonment of Petitioner in a Federal Prison which would interfere with the State Court Trial process under the

Fifth Amendment of the U.S. Constitution, the Fourteenth Amendment of the U.S. Constitution, the Tenth Amendment of the U.S. Constitution, and the Sixth Amendment of the U.S. Constitution.

204. Comity.—"[T]he notion of 'comity,'" Justice Black asserted, is composed of "a <u>proper respect for state functions,</u> a recognition of the fact that the entire country is made up of a <u>Union of separate state governments,</u> and a <u>continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.</u> This, perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism'. . . ." See Younger v. Harris, 401 U.S. 37, 44 (1971). Compare Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100 (1981), with id. at 119–25 (Justice Brennan concurring, joined by three other Justices).

205. Comity is a self-imposed rule of judicial restraint whereby independent tribunals of concurrent or coordinate jurisdiction act to moderate the stresses of coexistence and to avoid collisions of authority. It is not a rule of law but "one of practice, convenience, and expediency," which persuades but does not command. See Mast, Foos & Co. v. Stover Manufacturing Co., 177 U.S. 458, 488 (1900). Recent decisions emphasize comity as the primary reason for restraint in federal court actions tending to interfere with state courts. E.g., O'Shea v. Littleton, 414

118

U.S. 488, 499–504 (1974); Huffman v. Pursue, Ltd., 420 U.S. 592, 599–603 (1975); Trainor v. Hernandez, 431 U.S. 434, 441 (1977); Moore v. Sims, 442 U.S. 415, 430 (1979). The Court has also cited comity as a reason to restrict access to federal habeas corpus. Francis v. Henderson, 425 U.S. 536, 541 and n.31 (1976); Wainwright v. Sykes, 433 U.S. 72, 83, 88, 90 (1977); Engle v. Isaac, 456 U.S. 107, 128–29 (1982). See also Rosewell v. LaSalle National Bank, 450 U.S. 503 (1981); Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100 (1981) (comity limits federal court interference with state tax systems); Levin v. Commerce Energy, Inc., 560 U.S. ___, No. 09–223, slip op. (2010) (comity has particular force in cases challenging constitutionality of state taxation of commercial activities). And see Missouri v. Jenkins, 495 U.S. 33 (1990).

206. The Federal Court should reverse the judgment on Document #200 for violating the Tenth Amendment of the U.S. Constitution, for not following the behavior of judicial restraint, for not following comity.

Here is the citation of the Tenth Amendment:

**CITATION OF AMENDMENT X, UNITED STATES CONSTITUTION:** "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

119

207. The Federal Court should have waited until the final legal precedent of Brian David Hill's innocence or guilt as to his charge of violating Virginia Code § 18.2- 387 were set by the Circuit Court of the City of Martinsville. Appellate Courts are only usually overturning cases or affirming cases including criminal cases over matters of law. The Supervised Release Violation charge was over a matter of law. The Federal Court overexerted its authority and had overwritten even the Supreme Court of Virginia and the Court of Appeals of Virginia which is unconstitutional and unlawful usurpation of power and authority. The Court acted in excess of jurisdiction by its decree under Document #200 and Document #186 Minute Entry. That itself makes the judgment illegal, null and void.

208. Abstention.—Perhaps the fullest expression of the concept of comity may be found in the abstention doctrine. The abstention doctrine instructs federal courts to abstain from exercising jurisdiction if applicable state law, which would be dispositive of the controversy, is unclear and a state court interpretation of the state law question might obviate the necessity of deciding a federal constitutional issue. C. Wright, Handbook Of The Law Of Federal Courts 13 (4th ed. 1983). The basic doctrine was formulated by Justice Frankfurter for the Court in Railroad Comm'n v. Pullman Co., 312 U.S. 496 (1941). Other strands of the doctrine are that a federal court should refrain from exercising jurisdiction in order to avoid needless conflict with a state's administration of its own affairs, Burford v. Sun Oil

Co., 319 U.S. 315 (1943); Alabama Public Service Comm'n v. Southern Ry., 341 U.S. 341 (1951); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293 (1943); Martin v. Creasy, 360 U.S. 219 (1959); Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983); New Orleans Public Service, Inc. v. Council of the City of New Orleans, 491 U.S. 350 (1989) (carefully reviewing the scope of the doctrine), especially where state law is unsettled. Meredith v. City of Winter Haven, 320 U.S. 228 (1943); County of Allegheny v. Frank Mashuda Co., 360 U.S. 185 (1959); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959). See also Clay v. Sun Insurance Office Ltd., 363 U.S. 207 (1960). Although pendency of an action in state court will not ordinarily cause a federal court to abstain, there are "exceptional" circumstances in which it should. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); Will v. Calvert Fire Insurance Co., 437 U.S. 655 (1978); Arizona v. San Carlos Apache Tribe, 463 U.S. 545 (1983). But, in Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996), an exercise in Burford abstention, the Court held that federal courts have power to dismiss or remand cases based on abstention principles only where relief being sought is equitable or otherwise discretionary but may not do so in common-law actions for damages.

209. Abstention is not proper, however, where the relevant state law is settled, or where it is clear that the state statute or action challenged is

121

unconstitutional no matter how the state court construes state law. See City of Chicago v. Atchison, T. & S.F. Ry., 357 U.S. 77 (1958); Zwickler v. Koota, 389 U.S. 241, 249–51 (1967). See Babbitt v. United Farm Workers Nat'l. Union, 442 U.S. 289, 306 (1979) (quoting Harman v. Forssenius, 380 U.S. 528, 534–35 (1965)). See Harman v. Forssenius, 380 U.S. 528, 534–35 (1965); Babbitt v. United Farm Workers Nat'l., 442 U.S. 289, 305–12 (1979). Abstention is not proper simply to afford a state court the opportunity to hold that a state law violates the federal Constitution. Wisconsin v. Constantineau, 400 U.S. 433 (1971); Zablocki v. Redhail, 434 U.S. 374, 379 n.5 (1978); Douglas v. Seacoast Products, Inc., 431 U.S. 265, 271 n.4 (1977); City of Houston v. Hill, 482 U.S. 451 (1987) ("A federal court may not properly ask a state court if it would care in effect to rewrite a statute"). But if the statute is clear and there is a reasonable possibility that the state court would find it in violation of a distinct or specialized state constitutional provision, abstention may be proper, Harris County Comm'rs Court v. Moore, 420 U.S. 77 (1975); Reetz v. Bozanich, 397 U.S. 82 (1970), although not if the state and federal constitutional provisions are alike. Examining Bd. v. Flores de Otero, 426 U.S. 572, 598 (1976). Federal jurisdiction is not ousted by abstention; rather it is postponed.

210. Federal-state tensions would be ameliorated through federal-court deference to the concept that state courts are as adequate a protector of

122

constitutional liberties as the federal courts and through the minimization of the likelihood that state programs would be thwarted by federal intercession. Federal courts would benefit because time and effort would not be expended in decision of difficult constitutional issues which might not require decision. American Trial Lawyers Ass'n v. New Jersey Supreme Court, 409 U.S. 467, 469 (1973); Harrison v. NAACP, 360 U.S. 167 (1959). Dismissal may be necessary if the state court will not accept jurisdiction while the case is pending in federal court. Harris County Comm'rs v. Moore, 420 U.S. 77, 88 n.14 (1975). E.g., Spector Motor Service v. McLaughlin, 323 U.S. 101 (1944); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959); Harrison v. NAACP, 360 U.S. 167 (1959).

211. The District Court aka the Trial Court had committed a grave interference, a usurpation of power, and an unconstitutional interference with the constitutional Jury Trial process of the Circuit Court and the Appellate Courts of deciding law by the decision rendered under Document #200. Not Just Document #200 but the Minute Entry under Document #186.

212. At this point, vacatur of the entire Supervised Release Violation charge and conviction is appropriate and should just be vacatur instead of a new trial, since the interference had directly led to withdrawing appeal. Again, see **Exhibit 4**. The damage has been done so egregiously that the only viable remedy to restore

123

the Constitutional rights of Petitioner in the Commonwealth of Virginia is by vacating the entire charge under Document #157.

213. The damage done was too far gone. The Court needs to reverse its decision on Document #200, Document #186, and dismiss the violation for this complete unconstitutional upheaval.

214. Petitioner likes to present AVC-HD DVD Disc (can be played on BLU-RAY video players) and DVD Video Disc with the testimony of Brian David Hill on January 5, 2021. It is 30 minutes and 13 seconds of testimony, physical evidence being presented, and it is all relevant and material to the Virginia charge. It is all relevant and material to the Supervised Release Violation charge. See **Exhibit 15**.

215. Brian's family have uploaded the **Exhibit 15** video on a public but unlisted YouTube page https://www.youtube.com/watch?v=5PMalR45MSo and is available in case the Judge cannot gain access to the DVD Video Disc or AVC-HD DVD Blu-Ray playable disc.

# GROUND VII – IT IS NOW POSSIBLE AND PETITIONER SUSPECTS THAT THE ORIGINATING JUDICIAL OFFICER WHO REVOKED THE SUPERVISED RELEASE ON DOCUMENT #200 MAY OR MAY NOT BE A TARGET OF A BLACKMAIL SCHEME INVOLVING CHILD RAPE AND MURDER DUE TO CLAIMS BY ATTORNEY L. LIN WOOD

Case 1:13-cr-00435-TDS Document 292 Filed 01/27/22 Page 126 of 194

**ASSERTING IN PUBLIC STATEMENTS THAT "JUDGES" AND**
**"OFFICIALS" WERE BEING ORDERED TO RAPE AND MURDER**
**CHILDREN ON VIDEO RECORDINGS AND THUS WERE**
**COMPROMISED AND NO LONGER IMPARTIAL TO THE DECISIONS**
**THEY MADE WHILE BEING BLACKMAILED. REGARDLESS OF**
**WHETHER THE BLACKMAIL WAS MATERIAL TO ANY DECISIONS**
**MADE AGAINST BRIAN DAVID HILL, IT WOULD STILL MAKE THE**
**JUDGE PARTIAL AND/OR BIASED AND/OR COMPROMISED. THIS**
**VIOLATES THE U.S. CONSTITUTION'S GUARANTEE THAT THE**
**TRIER OF FACT REMAIN IMPARTIAL DURING THE CRIMINAL**
**PROCEEDINGS OF A CASE**

216. This ground specifically now asserts that there is new evidence which needs to be developed and thoroughly investigated before disposition of this ground.

217. Petitioner requests both Special Master and appointment of representative counsel for this ground. Once appointed, Representative Counsel will need a lot of time to thoroughly investigate the blackmail materials alleged by Attorney L. Lin Wood.

218. Evidence had been filed at an earlier time on the Docket Sheet by the Law Clerk to the Hon. Norwood Carlton Tilley Junior, Law Clerk named Leah Garland, pursuant to Petitioner's request of filing Lin Wood's alleged claims of the

125

blackmail evidence containing a portion of all reviewed Twitter tweets from Attorney L. Lin Wood. See Document #290, #290-1, #290-2, #290-3.

219. There are more tweets that Petitioner's family have located regarding the alleged statements of blackmail videos which were not filed in Document #290 and it's attachments. Those will be exhibited in this Brief / Memorandum of Law. Petitioner's mother Roberta Hill had received emails as well forwarded of what was originally emailed from Attorney L. Lin Wood which will also be exhibited in the 2255 case.

220. Disclaimer: Petitioner's family obtained the links, screenshots, and printed the emails for Petitioner to use in Exhibits and the text links in this Brief / Memorandum of Law. Petitioner did not use the internet to have the links used in this Brief / Memorandum of Law.

221. See **Exhibit 8**. Lin Wood Tweet. Authentication: http://web.archive.org/web/20210104073323/https://twitter.com/LLinWood/status/1345996301981413382

222. See **Exhibit 9**. Lin Wood Tweet. Authentication: http://web.archive.org/web/20210104072352/https://twitter.com/LLinWood/status/1345991175690457091

126

223. See **Exhibit 10**. Lin Wood Tweet. Authentication:

http://web.archive.org/web/20210103213443/https://twitter.com/LLinWood/status/1345822769842368512

224. See **Exhibit 11**. Lin Wood Tweet. Authentication:

http://web.archive.org/web/20210104073018/https://twitter.com/LLinWood/status/1345995391981019136

225. See **Exhibit 12**. Lin Wood Tweet. Authentication:

http://web.archive.org/web/20210104072454/https://twitter.com/LLinWood/status/1345993980811616256

226. See **Exhibit 13**. Lin Wood Tweet. Authentication:

http://web.archive.org/web/20210104070550/https://twitter.com/LLinWood/status/1345989745940320257

227. See **Exhibit 14**. Lin Wood Tweet. Authentication:

http://web.archive.org/web/20210104074120/https://twitter.com/LLinWood/status/1345992806750433280

228. The Attorney L. Lin Wood ("Lin Wood") had presented public statements on January 3 and/or 4, 2021, on or about those dates. Statements in regards to "judges" and "officials" involved in being targets of blackmail in a criminal scheme to blackmail those targets. The blackmail is presumably obtained

127

by a hacker group or hacktivist (aka computer or internet hacker activists) group known as The Lizard Squad which hacked the U.S. Intelligence Agencies of the United States of America and/or other Nation's intelligence agencies. The group known as "The Lizard Squad". According to Attorney Lin Wood, an American actor named Isaac Kappy had obtained the copies of the blackmail videos material and they were encrypted and the encryption key was turned over to a source or sources who went to Attorney Lin Wood after Isaac Kappy supposedly forced himself off of a bridge to death. Lin wood believed he was murdered to suppress the truth, as Isaac Kappy had attempt to get the blackmail videos to President Trump in an attempt to have special counsel investigate the blackmail to be thoroughly investigated.

229. Here is a bit of background information on actor Isaac Kappy given to Petitioner from his family which they retrieved from Wikipedia:

Isaac Kappy (February 17, 1977 – May 13, 2019) was an American actor and musician known for his roles in the films Thor (2011) and Terminator Salvation (2009) and in the AMC television series Breaking Bad. He was a member of the band Monster Paws

230. The blackmail video recordings which Lin Wood himself had described: "The blackmail targets are approached with a gun, a child, & a camera. The target is ordered to rape the child on video. The target is then ordered to shoot

128

the child on video. The target is then owned & controlled by the blackmailers until blackmail evidence loses its value." See Document #290-1, page 4 of 16. See http://web.archive.org/web/20210104072454/https://twitter.com/LLinWood/status/1345993980811616256 for authenticity of tweet. See disclaimer for Petitioner not using the internet and that the family obtained the links.

231. He even claimed that "judges" are involved in being blackmailed. His statement is so vague that it may encompass "justices" and/or "judges" of any level of Government including but not limited to State, Federal, and/or Local. He said that: "Many issues in our world may be tied to blackmail scheme I described tonight, including **bizarre behavior of officials & judges** in recent election. @realDonaldTrump **must appoint special prosecutor to thoroughly investigate**. **We need answers**. **We must investigate. For the children**." See Document #290-1, page 5 of 16. See http://web.archive.org/web/20210104090143/https://twitter.com/LLinWood/status/1346018918306099205 for authenticity of tweet. See disclaimer for Petitioner not using the internet and that the family obtained the links.

232. Attorney L. Lin Wood further made statements such as: "After Kappy received the hacked files from member of Lizard Squad, he gave files to one friend and the encryption key to another friend. He provided this information to his friends shortly before he was murdered in May 13, 2019. Members of Lizard

129

Squad were jailed for hacking." The fact that they, the hacker group, were arrested,

whoever they are, further demonstrates the credibility of Lin Wood's claims about

the alleged blackmail video recordings mentioned by Lin Wood. See **Exhibit 11**.

See

http://web.archive.org/web/20210104073018/https://twitter.com/LLinWood/status/

1345995391981019136 for authenticity of tweet. See disclaimer for Petitioner not

using the internet and that the family obtained the link.

Lin Wood made it clear that: "I believe Chief Justice John Roberts & a
multitude of powerful individuals worldwide are being blackmailed in a
horrendous scheme involving rape & murder of children captured on videotape. I
have the key to the files containing the videos. I have also shared this information."

233. Review over the rest of the Lin Wood tweets as they speak for themselves.

See Pages 4-16 of Document #290-1 for any tweets not mentioned in this Brief /

Memorandum of Law. Each one of them can be authenticated by Court upon

request to Petitioner's family members Roberta Hill, Stella Forinash, and/or

Kenneth Forinash; or they can be authenticated by contacting Attorney L. Lin

Wood and subpoenaing him for authenticating his tweets as well as authenticating

and verifying his claims of blackmail.

234. His Law Office may be contacted at the following address and is not his

home address:

L. Lin Wood, Esq.
GA Bar No. 774588
L. LIN WOOD, P.C.
1180 West Peachtree Street, Ste. 2400

Atlanta, GA 30309
P.O. Box 52584
Atlanta, GA 30355-6584
Telephone: (404) 891-1402
Facsimile: (404) 506-9111
Email: lwood@linwoodlaw.com
Email: lwood@fightback.law

235. Now that the blackmail tweets and authenticity can be established here,
it is time that the Court consider what to do for expanding the record for this 2255
Motion, Brief / Memorandum of Law, and 2255 case to determine if the Judicial
Officer Thomas David Schroeder may or may not be in one of the blackmail
videos which was described by Lin Wood. If the Chief Judge Thomas David
Schroeder is in any of the alleged blackmail videos of child rape and murder, then
all of his decisions in the case of United States of America v. Brian David Hill are
illegal, fraudulent, and unconstitutional and thus are NULL AND VOID. All
orders and judgments from Chief Judge Thomas David Schroeder would have to
be vacated on the ground of criminal blackmail if he is ever proven to be in one of
the alleged video recordings.

236. Therefore Petitioner requests and will file a separate Motion or Letter
Motion asking the assigned Magistrate Judge to appoint a Special Master for
GROUND VII blackmail video recordings or request a Change in Venue to the
Western District of Virginia to review over the grounds and conduct the 2255 case.
It is a conflict of interest for anybody working for the Chief Judge to be

131

investigating, subpoenaing, and reviewing over the alleged blackmail videos. Video defined as moving pictures/images which may include audio or sound recordings produced by a video recording device which records video tapes or digital video files.

237. Petitioner requests Special Master pursuant to Rule 53. Masters, of the Federal Rules of Civil Procedure, since 2255 Motions are using rules of both a civil and criminal type cases. This request will also be formally filed in a separate letter again citing why a Special Master is necessary, as well as appointing investigators to assist the Special Master.

Since the Chief Judge Thomas David Schroeder may be in one of those blackmail videos in the possession of Lin Wood, he should not be involved in any of the 2255 Motion proceedings and should not be involved in any appeal to or disposition to from the Magistrate's decision in the 2255 Case. Pursuant to 28 U.S. Code § 455(a) where "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or even where "Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding". Since the subject or suspect judge should not make a decision or have any involvement over any investigation regarding the blackmail videos alleged by Lin Wood, the conflict of interest requires recusal from any proceedings or any

132

further proceedings involving this 2255 Motion and **GROUND VII**. If the blackmail allegations are proven factual, then the judge must disqualify himself from all proceedings in the criminal case. If the blackmail allegations are proven factual then another judge must enter acquittals and/or vacaturs of all of Hon. Thomas Schroeder's judgments as the evidence of any blackmail must vacate all former criminal judgments of conviction due to the blackmail creating partiality of a judge.

237. The rule 53 specifies the grounds for granting such request for a Special Master under the following conditions or criteria:

1. "(1) Scope. Unless a statute provides otherwise, a court may appoint a master only to:"

   a. "(A) perform duties consented to by the parties;"

   b. "(B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:"

      i. (i) some exceptional condition; or

      ii. (ii) the need to perform an accounting or resolve a difficult computation of damages; or

133

c.  (C) address pretrial and posttrial matters that cannot be effectively and

timely addressed by an available district judge or magistrate judge of

the district.

238. The "some exceptional condition" ground requirement can be fulfilled as the

Chief Judge, arguably if he is in any of the blackmail videos alleged by Lin Wood

and the source(s) of his, should not be allowed to take part in any decision

regarding proving if this is true or baseless. Since the blackmail videos need to be

reviewed, the judges may or may not being involved in the blackmail video

recordings will not permit review over recordings or even investigation over such

recordings which may implicate themselves. They will not admit to any crime they

may or may not have committed. Therefore it is pertinent that this be thoroughly

investigated by a Special Master, qualified to do the job, and that assistants and/or

investigators should be ordered to review over the Lin Wood alleged blackmail

video recordings.

239. The facts need to be developed here. Expanding the record is necessary

to prove whether this blackmail ground is factual or not. It is easy for the Court to

obtain an Affidavit from Attorney Lin Wood as a witness. It is easy for this Court

to subpoena him on its own volition according to Rule 706. Court-Appointed

Expert Witnesses of the Federal Rules of Evidence or any other applicable rule.

Lin Wood cannot just disclose the video recordings to the general public as it

134

would be illegal under Federal Child Pornography Laws. A video showing child

rape and murder constitutes child pornography by what Attorney Lin Wood had

alleged. Therefore, great care must be taken in investigating the video recordings

obtained by The Lizard Squad. Action must be taken here. One threatening email

from a TORMAIL style anonymous email system claimed that one of the Federal

Judges was being directed by the child pornography set up perpetuator or

perpetrators in a plot to convict Brian David Hill again, alleging that they will

frame Brian Hill again (*NOTE: the alleged plot by the perpetuator or perpetrators

child porn emailed to Brian's grandmother's cell phone that Brian Hill had used in

2015 that was voluntarily turned over to U.S. Probation Officer Kristy L. Burton*)

and the plot was claimed to have the Judge set up by them to wrongfully convict

Brian David Hill. To suspect blackmail when this threatening email in 2015 and

the Attorney Lin Wood tweets in January, 2021, all seem to come together.

Blackmail of judges can cause the bad guys to blackmail the Federal Judge to

achieve an outcome in a criminal case or cases that the blackmailer so desires.

Brian David Hill has good reason to suspect that the Judge is being blackmailed

here. Petitioner hereby files **Exhibit 24**. An email originally from Attorney Susan

Basko (See Document #46) which was forwarded to Roberta Hill; as well as

Kenneth and Stella Forinash. This email is regarding a threatening email which

Attorney Susan Basko had received in 2015 threatening her and Brian D. Hill, the

Petitioner in this case, to give up on appealing and the assailant emailer threatening

to set up Brian Hill, the Petitioner, again with child porn in 2015. They were

basically threatening to set Brian up in 2015 to further destroy his character. It

even claimed that they knew former Chief Judge William Lindsey Osteen Junior,

was Chief Judge at the time Attorney Susan Basko had received this threatening

email which she promptly and in good faith, reported that message to the U.S.

Federal Bureau of Investigation ("FBI"). It was also reported to U.S. Probation

Officer Kristy L. Burton as well in 2015. Arguably, Petitioner assumes that if

former Chief Judge William Lindsey Osteen Junior had been fixed to rule a certain

way in any criminal or civil case at the direction of whoever allegedly sent the

threatening email, then that same logic applies to whether the Chief Judge Thomas

David Schroeder is also involved in one of the blackmail schemes as alleged by

Attorney Lin Wood. Somebody cannot just make a Federal Judge do something

against the law and against his/her will at the direction of a criminal conspiracy

unless that person had been compromised or blackmailed or set up. The email said

and I cite from the **Exhibit 24**, the following CITATION from the original email:


### CITATION OF EMAIL IN EXHIBIT 24: "WE..........

.....WILL.................SEND..............MORE...............THEN..............HE........
................WILL.............TECHNICALLY..........

.....BE..............GUILTY...............AGAIN...................JUDGE...............OST
EEN...............WILL.................CONVICT............

...HIM.....................AGAIN...............AS................WE.............WILL.............
.MAKE.................SURE..............OSTEEN.....

.........IS..................PROCIDING............JUDGE.................OVER............B
RIANS...............N

EW................INDICTMENT.

MORE.............CHILD.................PORN.............IS.............COMING.........
...THEN................MORE.................CHARG

ES............WILL............BE..............BROUGHT............BITCH"

This anonymous threat in this Evidence Exhibit had appeared to have been

directed at Attorney Susan Basko and at Petitioner Brian David Hill and is relevant

to the suspicion of BLACKMAIL SCHEME as alleged in GROUND VII.

240. Lin Wood had informed Petitioner that he does not have the actual

videos himself in his possession, but he did admit publicly to having knowledge of

the videos or the knowledge of the videos coming from his source/sources on

Twitter in January, 2020, and the description of the alleged child rape and murder

acts in the blackmail videos are from his source or sources (See **Exhibits 8**

**through 14**). Lin Wood doesn't have the videos but knows about the videos

enough to make tweets about it. Roberta Hill saw his tweets and taken screenshots

of them in 2020, given them to Petitioner, and thus Petitioner has the knowledge of

those tweets since 2020. Petitioner wants not the source or sources but the actual

blackmail videos to be reviewed and identities of those in the videos confirmed and

137

brought out on the Court Record if any Federal Judges are in the alleged blackmail videos. Petitioner doesn't want a situation where Lin Wood's source or sources run away in fear or go into hiding. Petitioner doesn't want the evidence to go away, the videos are too important to not pursue investigation. **Petitioner wants the evidence investigated and wants to know who is being blackmailed here.** Petitioner wants the blackmail videos investigated and reviewed once and for all to determine if any of the Federal Judges in the Middle District of North Carolina or if any of the Fourth Circuit Appeal Court Judges are in any of the blackmail videos. That would demonstrate that the Appeals may have been ruled fraudulently based on the blackmail and that the entire criminal case was fraudulently ruled upon always favorable to the United States of America, which makes no sense in an actual impartial court of law. Petitioner has a right to know and a civic duty to suspect that as the Supreme Court law is not being followed by the Fourth Circuit. The laws are not being followed anymore in the Court system generally and that scares Petitioner. They are not following any Supreme Court case laws anymore in this case. Something has happened which makes Petitioner feel hopeless and discovering that blackmail may be the cause of all of Brian David Hill's wrongful suffering in this criminal case. It is the only logical explanation here that Petitioner can accept as to why things are weird and Constitutional rights of Brian David Hill

138

continually be violated 10 to 20 times for years and years in this case and other cases without ever any reprieve.

## ANALYSIS OF LAW IF BLACKMAIL CLAIMS OF THE VIDEOS RECORDING IDENTITIES ARE PROVEN

241. If any judicial officer in the Middle District of North Carolina is ever proven to being involved in any of the Lin Wood's alleged video recordings from The Lizard Squad hacktivist group, then this draws legal issues and Constitutional issues which may warrant automatic vacatur of all or one criminal convictions including all Supervised Release Violation charges and findings, as well as the possibility for including the original criminal conviction but that would have to be addressed in a successive 2255 Motion or in a special motion under the Federal Rules of Civil Procedure regarding "fraud" as blackmail can prove partial decisions to being based on fraud rather than of sound judgment based on the facts and the law.

Citation Article III; Section 1; U.S. Constitution.

"The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish. The judges, both of the supreme and inferior courts, shall hold their offices during good behavior..."

139

242. It is not good behavior if judges are being blackmailed with child rape and murder. It is a criminal violation of Federal Codes and such behavior would be detrimental to the law and order of the United States of America. Any judges ever found by any evidence to have ever engaged in any sexual crimes or crimes of murder should not be holding public office and is not under any immunity as crimes committed outside of the duties of a judicial officer is contrary to the laws of the land and is heinous in nature. No public official should ever be committing any federal crimes and blackmail must not be allowed to be used as a tool to obtain fraudulent begotten judgments.

Citation Amendment VI; Bill of rights; U.S. Constitution.

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by <u>an impartial jury</u> of the state and district wherein the crime shall have been committed..."

243. Even a judge is a considered a "jurist" and considered a "trier of fact". All judges must be impartial or all partial decisions are unlawful and may be fraudulent based on the circumstances. If a judge is being blackmailed by somebody within the U.S. Government including any Intelligence Agencies, then the Judge is acting partial and must disqualify himself from all proceedings where the "United States of America" is a party to the case. In fact the judge should not

140

even be serving office if the rape and murder blackmail scheme alleged by Lin Wood is ever proven true.

244. In fact even 28 U.S. Code § 455 - Disqualification of justice, judge, or magistrate judge; prescribes that no judge may be involved in any legal proceeding where "his impartiality might reasonably be questioned."

Citation 28 U.S. Code § 455 - Disqualification of justice, judge, or magistrate judge.

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; (citations omitted)

245. If Lin Wood's "Lizard Squad" alleged existence of the video recordings ever are proven to have individuals involved with the Middle District of North Carolina or even the Fourth Circuit and was directly involved with the criminal case of Defendant Brian David Hill; then Lin Wood and/or his source/sources would have to file an affidavit and the findings would also possibly invoke 28 U.S. Code § 144 - Bias or prejudice of judge.

246. See Canon 3: A Judge Should Perform the Duties of the Office Fairly,

141

Impartially and Diligently. Code of Conduct for United States Judges. Also Canon 1: A Judge Should Uphold the Integrity and Independence of the Judiciary; states that: "*Although judges should be independent, **they must comply with the law** and should comply with this Code. **Adherence to this responsibility helps to maintain public confidence in the impartiality** of the judiciary. Conversely, **violation of this Code diminishes public confidence in the judiciary** and **injures our system of government under law**.*"

247. Even if the judge could argue in his/her defense that they may had been threatened by the blackmailer whether it is Deep State or corrupt element of the U.S. Government or a Third Party into doing the activities in a blackmail video, it does not excuse the criminal activity and does not excuse the "behavior". The judge's orders and judgments during such blackmail must all be scrutinized at a Constitutional level, Legal level, and ethical level, and many judgments may need to be reversed including the Supervised Release Violation conviction at issue in this 2255 Motion under Document #200. All judgments should be null and void as to the impartiality can never be established if a judge was blackmailed with a heinous crime by any means. Petitioner doesn't have to prove the child rape and murder blackmail was material to his case, all Petitioner would have to prove was that the blackmail made any judges involved "PARTIAL". Partiality is unconstitutional and all judges must remain impartial in cases at all times. If a judge was blackmailed with child rape and murder, then they are partial and not impartial. That would make every decision unconstitutional and not impartial

142

during the pendency of their proceedings, while being blackmailed. It's common sense to believe so.

248. It is common sense that if anybody working as a lawyer makes a public statement in writing or types on a public forum about "judges", "justices", and/or "officials" were being blackmailed with "child rape" and murder, they would need to be investigated by Law Enforcement immediately and the culprits caught and arrested, and the blackmailed individuals in our Government and Courts must resign from their offices since the blackmail ruins such impartiality.

249. Petitioner wants to know the truth, wants to understand why he keeps losing in Federal Courts, why he keeps losing over and over again. Even when Local Rule 7.3 said that uncontested motions are ordinarily granted without further notice. However all of his uncontested motions are denied even when they have exhibits and even when Petitioner was allowed to review over all of the discovery evidence materials after he falsely plead guilty in 2014. Petitioner cannot figure out why he keeps losing over 20, over 30 times no matter what evidence, witnesses, or case law is presented or suggested. Petitioner is aware that he angered the Deep State Swamp back in 2012, his website USWGO Alternative News kept getting hacker attacks from 2009 to 2012. Petitioner was receiving threats on his USWGO YouTube channel in 2009 or 2010 saying they would rape and kill his family in front of him, and other threats which Petitioner had assumed they were just trolls

143

or keyboard warriors at that time. Petitioner was sued by Righthaven LLC in 2011 and Petitioner went to the media and that got him a favorable judgment in the U.S. District Court in Colorado. All because he went to the media and that got him a lawyer, pro bono and not a Public Defender to fight against the lawsuit.

250. **OPINION PARAGRAPH:** Because Petitioner was framed with child porn, and arguably child pornography comes directly from the Pedophile Rings, aka Jeffrey Epstein and Ghislaine Maxwell and associates. They were involved with MOSSAD. So the Deep State and the Pedophile Rings are involved with child pornography, that got revealed with Ghislaine Maxwell's MOSSAD connections and her arrest for child sex trafficking. Petitioner was set up so that he couldn't go to the media and ask for help and get a pro bono lawyer for his criminal case like what he had done with being sued by Righthaven LLC. Petitioner was meant to be ruined by the Deep State in 2012 and of course they would have the Pedophile Rings, once a child is raped by somebody in Government that person is blackmailed for the rest of their lives.

251. Petitioner wants to know the truth why he cannot win no matter what motions he files, no matter what evidence he has, no matter what witnesses are offered. Petitioner's family feels like, if Brian David Hill is wrong about every little thing, then many witnesses are wrong about every little thing ever involving his case. Is many people who ever make statements in this case wrong too? None

144

of that makes any sense. Petitioner cannot be wrong in this criminal case 100% of the time. That doesn't make any sense. Logically somebody is being blackmailed or bribed or threatened here. Somebody is being directed to make Brian David Hill lose all of the time in this criminal case. "BLACKMAIL" is the only logical explanation here. It must be investigated, no matter what.

**GROUND VIII – SPOLIATION OF EVIDENCE AKA DESTRUCTION OF EVIDENCE BY (#1) MARTINSVILLE POLICE DEPARTMENT, (#2) SOVAH HEALTH MARTINSVILLE HOSPITAL (WHILE THEY KNEW BRIAN DAVID HILL WAS UNDER LAW ENFORCEMENT CUSTODY) (#3) AND/OR COMMONWEALTH ATTORNEY GLEN ANDREW HALL ESQUIRE VIOLATES THE CRIMINAL DEFENDANT'S CONSTITUTIONAL RIGHT TO DISCOVERY EVIDENCE MATERIAL PERTINENT TO HIS CRIMINAL CASE PURSUANT TO BRADY V. MARYLAND, 373 U.S. 83 (1963) AND GIGLIO V. UNITED STATES, 405 U.S. 150 (1972). DESTRUCTION OF EVIDENCE ALSO MAY BE FRAUD ON THE COURT**

252. This ground specifically brings up issues which cannot be adequately resolved from the record alone due to destruction and spoliation of evidence which

145

warrant an evidentiary hearing or deposition or subpoena asking questions. This is new evidence which needs to be further developed and thoroughly investigated before disposition of this ground.

253. Petitioner requests both Special Master and appointment of representative counsel for this ground since the Hon. Thomas David Schroeder would be biased in any action in investigating this ground due to **GROIUND VII, noted above**.

254. This is new evidence being discovered after the hearing on September 12, 2019 because the court appointed lawyers Matthew Scott Thomas Clark, Lauren McGarry, and Scott Albrecht as court appointed lawyers for the criminal case initiated by the Virginia State charge of Indecent exposure all did not give copies of the court Orders to their client Brian David Hill ("Petitioner"). It is the job of a lawyer to be serving copies of the Court Orders directly in the case to the client who they represent. Those lawyers kept Brian David Hill in the dark and asking for any paper copies of the court record are expensive at $0.50 a page upon request to the Clerk's office. Petitioner did not know what areas of the record had what. It was only until Petitioner had timely appealed his criminal conviction in the Circuit Court of Martinsville that the entire record of the criminal case was transmitted electronically through Portable Document Format (PDF) file. The appeal was timely filed after the final conviction on November 18, 2019. Notice of

146

Appeal was filed on November 27, 2019. In 2021, Petitioner had requested access

to the Record on Appeal to prepare the Petition for Appeal in the Court of Appeals

of Virginia as he had proceeded In Forma Pauperis under the Virginia law. As it

was granted or allowed, Petitioner had requested access to the Record on Appeal

for the first time in 2021. The Clerk emailed, to Roberta Hill, the PDF file of the

entire case files of his criminal case, attempted Virginia Writ of Habeas Corpus,

and attempted Petition for the Writ of Coram Vobis/Nobis. Petitioner had started

reviewing over the case files in 2021 to have discovered three different Court

Orders. One in the General District Court and two in the Circuit Court of the City

of Martinsville. See **Exhibit 2**. All three Court Orders involving Brady material

aka the discovery materials pertinent to a criminal case. See Brady v. Maryland,

373 U.S. 83 (1963). Since the discovery material of needlessly destroyed evidence

also concerns the Supervised Release Violation as well, it violates Giglio. See

Giglio v. United States, 405 U.S. 150 (1972).

    255. It was then and there that Petitioner started understanding that those

three Virginia State Court Orders were violated. Petitioner suspects that the

Martinsville Circuit Court Judge: Hon. Giles Carter Greer continues siding with

the Commonwealth Attorney and has an inherit bias or prejudice or partiality, so

Petitioner had attempted to file a Motion for Contempt charge against Glen

Andrew Hall, Esquire in the General District Court instead of the Circuit Court to

147

try to get some kind of justice. However that motion failed as the General District Court Clerk's Office refused to act on that motion because they claim they do not have jurisdiction after Petitioner had appealed the guilty verdict on December 21, 2018. Petitioner also suspects blackmail in regards to Hon. Giles Carter Greer (See **GROUND VII, the BLACKMAIL SUSPICION GROUND**) as he denies every motion and ignored motions when Petitioner had court appointed counsel. So Petitioner was stuck and could not pursue sanctions against the Commonwealth of Virginia for any contempt actions for destruction of evidence by the Commonwealth in violation of three Court Orders.

256. However, Petitioner will raise this ground in the 2255 case as any impartial judge ever picked to be assigned to the 2255 case would be a better option than the partial local judge Hon. Giles Carter Greer. Petitioner's family did research on him and found out that the judge does not respect pro se filings. Petitioner's counsel was ineffective throughout the entire State criminal case proceedings. Petitioner filed pro se motions for new counsel and those were ignored because the Court restricted that the current counsel must file a motion to ask for new counsel which doesn't make any sense and kept Petitioner held hostage to his court appointed lawyer.

257. Petitioner likes to present AVC-HD DVD Disc (can be played on BLU-RAY video players) and DVD Video Disc with the testimony of Brian David Hill

148

on January 5, 2021. It is 30 minutes and 13 seconds of testimony, physical

evidence being presented, and it is all relevant and material to the Virginia charge.

It is all relevant and material to the Supervised Release Violation charge. See

**Exhibit 15**.

258. Brian's family have uploaded the Exhibit 15 video on a public but

unlisted YouTube page https://www.youtube.com/watch?v=5PMalR45MSo and is

available in case the Judge cannot gain access to the DVD Video Disc or AVC-HD

DVD Blu-Ray playable disc.

258. As was argued in the **Exhibit 15** video testimony, these are the pieces

of evidence which Petitioner suspects is destroyed and spoliated aka spoliation of

evidence:

1. The body-camera footage (body-cam) recorded statements from Brian David

   Hill on September 21, 2018 as evidence was retained by Officer Robert D.

   Jones of Martinsville Police Department, or was retained by Martinsville

   Police Department. Petitioner had mailed multiple letters to Police Chief G.

   E. Cassady in early 2019 asking for the body-camera footage to be turned

   over to the defense counsel but those letters were ignored.

2. The blood vials drawn from Brian David Hill's arm at the Sovah Health

   Martinsville Hospital; formerly Martinsville Memorial Hospital. The blood

149

vials were drawn with Brian Hill's blood on September 21, 2018, after being arrested by Martinsville Police Department and taken to the Hospital in handcuffs under Police custody. Those blood vials were not laboratory tested despite being ordered but then cancelled and the blood vials destroyed. The police could have protected those vials as evidence, biological evidence. That evidence could have been subject to a drug test and if anything was found, could have led to a Carboxyhemoglobin (COHb) test. Because a drug test was never conducted and the blood vials were destroyed, the levels of Carbon Monoxide Poisoning is impossible to be determined by any scientific test due to the spoliation of the biological evidence. Carboxyhemoglobin (COHb) is a stable complex of carbon monoxide that forms in red blood cells when carbon monoxide gas is inhaled. COHb should be measured if carbon monoxide or methylene chloride poisoning is suspected.

259. Because Petitioner was already in Police custody while at the Hospital, it is downright stupid and unprofessional for a Law Enforcement officer arresting somebody for indecent exposure not to conduct a mandatory drug test or alcohol test or breathalyzer. Of course Petitioner was under Carbon Monoxide poisoning but it cannot be ruled out that Petitioner may have been drugged by an assailant. Therefore the U.S. Attorney and the Commonwealth Attorney cannot argue with

150

merit that Petitioner had no gas, substance, or narcotic aka being drugged in his body at the time he was found naked on September 21, 2018. Petitioner cannot prove he had any gas, substance, or narcotic aka being drugged in his system at the time of his arrest but they cannot claim with any merit that he had none either.

260. It is not unusual for a Corrupt Police Department, corrupt police to destroy forensic evidence pursuant to a criminal case or criminal charge. Because biological evidence which would have exonerated Petitioner's claims and police would have believed Petitioner was telling the truth about a guy wearing a dark hoodie if Petitioner could verify any drugs injected in his body or any gas inhaled led to Carboxyhemoglobin (COHb) in the blood. If the lab results of a drug test show abnormal readings of a different kind, then the Police would have searched for whatever this mysterious gas, substance, or narcotic was and it would have validated Petitioner's claim of being induced under Carbon Monoxide Poisoning in 2019 which can exhibit psychosis and hallucinations. It would prove Petitioner was temporarily mentally insane at the time through the usage of a Carbon Monoxide odorless gas poisoning. Therefore Petitioner had no intent to run around naked at night and thus Petitioner cannot be charged or convicted of indecent exposure as Petitioner could not have been held culpable as he was having a psychiatric episode at the time on September 21, 2018. The "psychiatric episode" argument from Attorney Edward Ryan Kennedy may not be farfetched in his appeal brief as

"Carbon Monoxide" can induce weird and abnormal behavior which an unknowing officer would misconstrue as criminal behavior but there is no intent which such intent must be necessary and proven to convict Petitioner of the charge.

261. Spoliation of evidence relevant and material to a criminal charge aka the indecent exposure under Virginia Code § 18.2-387 and the Supervised Release Violation in Federal Court violates a criminal defendant's constitutional right to discovery evidence materials in a criminal case after being charged. See Giglio v. United States, 405 U.S. 150 (1972); Brady v. Maryland, 373 U.S. 83 (1963).

262. It is not just violation of Brady and Giglio rights, but it also demonstrates evidence of fraud on the court as destruction of evidence is part of falsification of evidence by a prosecutor. See attorney research and case laws article titled "Responding to Falsification of Evidence By Jonathan K. Tycko"; Supplement 2 — Document #199-2.

> CITATION: "Where falsification takes the form of intentional destruction or alteration of evidence—an act often termed "spoliation" of evidence—then a court may decide to punish the wrongdoer and pro-altered evidence with the specific "purpose of depriving an opposing party of its use.""

263. See Burge v. St. Tammany Parish, 336 F.3d 363, 374 (5th Cir. 2003) (discussion of Louisiana law). "Claims for spoliation can lie, in some jurisdictions,

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 154 of 194

against both "first-party" defendants (namely, parties to the underlying civil litigation) and "third-party" defendants (namely, those who are not parties to the underlying civil litigation)." See, e.g., Smith v. Howard Johnson Co., 615 N.E.2d 1037, 1038 (Ohio 1993). "A party asserting a tort claim for spoliation must meet other elements typical to tort claims, such as causation and damages. Accordingly, whether pursuit of a tort claim for spoliation is advisable may depend both upon the state of local law in the relevant jurisdiction and also upon whether causation and damages can be proven."

264. It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause. See 2 J. WIGMORE (John Henry Wigmore), EVIDENCES § 278, at 133 James Harmon Chadborn ed., Little, Brown 1979) (1940) (emphasis added). See Federal Rules of Evidence 401.; 32 C.J.S. Evidence § 535 (2008); Evidence—Admissibility of Attempts by a Party to Suppress

Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 155 of 194

Evidence, 9 TEX. L. REV. 79, 100 (1930) (stating that it has "long been recognized" that a party's misconduct in manipulating evidence is admissible as indicating a "consciousness of the weakness of his case,'" and citing cases from the 1800s that applied the inference to the fabrication, suppression, or destruction of evidence)

264. Petitioner asserts in this ground with the facts and case law that the Supervised Release Violation triggered by the indecent exposure charge on September 21, 2018, was erroneous. Erroneous due to destruction of material evidence to the Actual Innocence of Petitioner. Destruction of biological evidence such as blood samples and police body-cam footage.

265. This ground specifically brings up issues which cannot be adequately resolved without the appointment of counsel.

**GROUND IX – IMPROPER VENUE, LACK OF TERRORITORIAL JURISDICTION; IMPROPER JURISDICTION ACCORDING TO CHANGE OF JURISDICTION AS REQUESTED BY THE U.S. PROBATION OFFICE AND ACCORDING TO THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION; THIS 2255 MOTION AND CASE SHOULD ALSO BE TRIED IN THE JURISDICTION OF THE ALLEGED SUPERVISED RELEASE VIOLATION IN MARTINSVILLE, VIRGINIA; THE MIDDLE DISTRICT OF NORTH CAROLINA FEDERAL JUDGES HAD NO LEGAL AUTHORITY OR JURISDICTION TO INTERPRET VIRGINIA LAW AND ATTEMPT TO**

## OVERRIDE VIRGINIA LAW; ALSO VIOLATES FEDERAL RULES OF CRIMINAL PROCEDURE 18

266. The new legal evidence which could not have been presented in the hearing dated September 12, 2019, was on the date of October 27th, 2020, the U.S. Probation Office had filed a Document #260 Petition to TRANSFER JURISDICION to the WESTERN DISTRICT OF VIRGINIA as follows:

> CITATION (Document #260, Page 3 of 3): Mr. Hill is currently being supervised in the Western District of Virginia. In coordination with this district, a transfer of jurisdiction has been tentatively agreed to, as Mr. Hill lacks ties to the Middle District of North Carolina and has resided for a period within the Western District of Virginia. To initiate this transfer, the Western District of Virginia has requested that Mr. Hill's supervised release conditions be modified to align with local sentencing conditions regarding sex offenders. Mr. Hill has voluntarily agreed to the adoption of these conditions. After the addition of these conditions, a transfer of jurisdiction will be processed. We respectfully request the Court adopt the conditions as outlined above.

267. The judge agreed to the request for transfer of jurisdiction and venue in the Documents #261, granting the request; and the Transfer Out/Probationer under Document #262.

155

268. This issue could not have been preserved on appeal since the U.S. Probation Office filed the TRANSFER REQUEST a year after the appeal was timely filed.

269. Because of the transfer request petitioned by the U.S. Probation Office in 2020, anything to do with his Supervised Release was transferred to the Western District of Virginia, including any modification of sentence of Supervised Release. Petitioner should no longer have to challenge his Supervised Release Violation sentence in the Middle District of North Carolina. Once the 2255 case has been opened, the U.S. District Court for the Middle District of North Carolina needs to ascertain the jurisdictional issues of whether it may or may not be appropriate to act on this 2255 in the Middle District of North Carolina or transfer the entire 2255 case to the jurisdiction of the Western District of Virginia.

270. Also it should be noted that the venue of the Supervised Release Violation hearing on September 12, 2019, was not held in the proper venue and not held in the proper jurisdiction. It was not held in the jurisdiction of the location of the charged offense. The alleged offense charge of what Petitioner had been accused of in Martinsville, Virginia was alleged to have been committed in the Western District of Virginia and not the Middle District of North Carolina.

Fed. R. Crim. P. 18 ("Section 18 - Place of Prosecution and Trial", "Unless a statute or these rules permit otherwise, the government must prosecute an offense

in a district where the offense was committed. The <u>court must set the place of trial within the district with due regard</u> for the <u>convenience of the defendant, any victim, and the witnesses,</u> and the prompt administration of justice.").

271. Even the Federal Rules of Criminal Procedure says that a "Trial" and prosecution must be conducted "in a district where the offense was committed". That would be the Western District of Virginia, and not the Middle District of North Carolina.

272. Let us reexamine the words of the Sixth Amendment of the U.S. Constitution.

CITATION: Amendment VI

> **In all criminal prosecutions**, the accused shall enjoy the right to a speedy and public trial, by an impartial **jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law**, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

273. The U.S. Constitution makes it clear that the trial should be held in the "state and district" wherein the crime shall have been committed.

274. Brian David Hill was under Supervised Release conditions in the Western District of Virginia since he was originally sentenced in this criminal case. Since November 12, 2014.

275. Cook v. United States, 138 U.S. 157, 162 (1891) ("United States v. Alberty, Hemp. 444. And in Ex parte Bollman, 4 Cranch, 75, it was held that if an offence be committed on land, the offender must be tried by the court having jurisdiction over the territory where the offence was committed. ").

276. The alleged accusation of a crime of violating Supervised Release conditions due to the alleged charge of "indecent exposure" under Virginia Code § 18.2-387; was allegedly to have been charged as to have been allegedly committed in the City of Martinsville in the State/Commonwealth of Virginia. The trial should have been conducted in Roanoke, Virginia, the U.S. District Court for the Western District of Virginia, or in Danville, Virginia, the U.S. District Court for the Western District of Virginia, or anywhere in any Federal Court in the Western District of Virginia.

277. It is a fact in the Middle District of North Carolina that none of the United States District Judges' know Virginia Law, they do not understand Virginia Law. The jurisdiction and expertise of all officers of the Court are in mainly Federal Law, and in North Carolina law and trial practice unless proven otherwise,

158

as the Trial De Novo was more of understood from the North Carolina trial

processes. That was further proven in the Transcript where Attorney Renorda

Pryor had attempted to explain to the Hon. Thomas David Schroeder, who presided

over the hearing, about what the Virginia Trial De Novo was and still didn't

practically understand the processes and appeals of the Commonwealth of

Virginia. Each state conducts an entirely different legal process, if that is indeed

the case.


278. CITATION from Transcript (Document #215, Page 4 through 5)
(citation reformatted):

```
      THE COURT: So explain to me exactly what is set for
                  hearing in Virginia.
      MS. PRYOR: So, Your Honor, he was found guilty of
       indecent exposure in Martinsville, Virginia. He
                        appealed that
            matter. That matter was scheduled for --
                  THE COURT: Let me stop you.
                  MS. PRYOR: I apologize, yes.
      THE COURT: So he's found guilty in the trial court?
      MS. PRYOR: He was found guilty at trial, yes, Your
                          Honor.
            THE COURT: So he's appealed it to whom?
      MS. PRYOR: He's appealed it to their -- which would
       be their next level, which would be their superior
                          court. In
      that case, when he went to court on -- I think that was
                            two
      weeks ago, they continued that matter to December 2 to
                         be heard
         at that time, and he now has a new attorney.
```

**THE COURT:** And what's the nature of that appeal?

**MS. PRYOR:** It is the underlining matters that are here on this case.

**THE COURT:** I understand. Is it a de novo review, or is it an appeal?

**MS. PRYOR:** It would be a de novo review, Your Honor.

**THE COURT:** All right. What was he found guilty of?

**MS. PRYOR:** He was found guilty of the charges that he's here for today, Your Honor, which was in violation of indecent exposure. I think it's 137 -- I think it's 20-137, which is indecent exposure. It is a misdemeanor, Your Honor.

**THE COURT:** According to the petition, it's Virginia Code 18.2-387.

**MS. PRYOR:** I apologize, Your Honor. That's correct.


279. The facts show from Transcript that both the Judge and Renorda Pryor were both ignorant in Virginia Law because both practice in the State of North Carolina. Attorney Renorda Pryor was ignorant because she didn't practice Virginia Law and so she didn't even argue Virginia Appellate Court's interpretation of Virginia Code § 18.2-387. Indecent exposure. See Moses v. Commonwealth, 611 S.E.2d 607, 608 (Va. App. 2005) (en banc); Morales v. Commonwealth, 525 S.E.2d 23, 24 (Va. App. 2000); Copeland v. Commonwealth, 525 S.E.2d 9, 10 (Va. App. 2000); and Price v. Commonwealth, 201 S.E.2d 798, 800 (Va. 1974). The Middle District of North Carolina clearly did not know of Virginia case law and the Virginia State Court's interpretation here. They would

160

understand North Carolina more than Virginia because the Middle District of North Carolina lives in North Carolina, resides in North Carolina, and is under the Middle District of North Carolina.

280. They have no knowledge of how Virginia courts actually work. They have never gone through its "draconian process" in the Court of Appeals of Virginia as one lawyer who represented Petitioner named John Ira Jones, IV had called the strict legal processes in the Commonwealth of Virginia as "draconian". Meaning that any little mistake in the legal papers such as not properly citing all parties involved in a case could land a case out of court to be dismissed. So the judges in the Middle District of North Carolina, have no knowledge or expertise in the legal process in the Commonwealth of Virginia, unless proven otherwise. It was wrongful for the Trial Court to make interpretations of Virginia Law without taking into consideration the Virginia case law as high as it's Supreme Court of Virginia. A Federal Court in North Carolina has no legal authority to write laws in the Commonwealth of Virginia. A Federal Court in North Carolina has no legal authority to make interpretations of Virginia Law to erase or modify the interpretations in the Commonwealth of Virginia. It made the determination that Petitioner was guilty of violating the substance or legality of the statute of Virginia Code § 18.2-387. Indecent exposure. However a foreign territorial Federal Court in a foreign State of North Carolina cannot override the interpretations of Virginia

161

Code. The only Court capable of overriding the interpretations of Virginia Code and Virginia Case Law is the Supreme Court of the United States of America and limited involvement by the Federal Courts within the Commonwealth of Virginia. A Federal Court in North Carolina has no legal authority to erase or rewrite Virginia Code unless a particular Code or interpretation of Virginia Code was later ruled as unconstitutional.

281. United States v. Mendoza, CRIMINAL CASE NO. 15-00064, 5 (D. Guam Jun. 3, 2016) ("In this case, the crime began in Colorado when the package in question was mailed from there to Guam. In addition, because the offense involved the use of mail, it was a continuing offense. When the package arrived on Guam, the crime was then completed. Accordingly, Guam is a proper venue because the crime was completed on Guam.") So only in the territory where the crime was committed or where the crime was then completed, that Federal District can be proper venue to try the alleged offense as charged.

282. The U.S. Constitution makes it clear that any criminal trial and any criminal prosecution has to be conducted at the "state and district wherein the crime shall have been committed" (Sixth Amendment, Citation omitted). The Constitution actually says in the "state and district" wherein the crime shall have been committed. That would be the Western District of Virginia. The Western District of Virginia has competent judges and competent Clerks.

Also it is convenient for the witnesses like:

7. Investigator Robert D. Jones of Martinsville Police Department who found Brian David Hill, arrested Brian David Hill, and charged Brian David Hill with the Virginia Code alleged violation on September 21, 2018;

8. Pete Compton (Document #181, Attachment #2) the ACE Chimney specialist from Bassett, Virginia who found the metal tin on top of the exhaust areas of the top of the chimney at the residence of Brian David Hill in 2018 and 2019, causing Carbon Monoxide gas to enter both apartments of Brian David Hill and Roberta Hill;

9. Roberta Hill, who had also experienced Carbon Monoxide Gas exposure from 2017, 2018, and stopped at 2019 after the intervention by Pete Compton where he removed the metal tin from the chimney. Even after the arrest of Brian David Hill, Roberta was still under Carbon Monoxide Gas exposure, before the arrest of Brian David Hill as well;

10. Brian David Hill, who had experienced Carbon Monoxide Gas exposure from 2017, 2018. Brian David Hill returned back to his residence after being released on bond, months after the intervention by Pete Compton where he removed the metal tin from the chimney;

11. Jason McMurray, who works at the Roanoke, Virginia office of the United States Probation Office. Supervises Brian David Hill and also had witnessed the damage on the wall of Brian David Hill's apartment in 2018 at the time of the Carbon Monoxide Gas exposure;

12. Dr. Conrad Daum, a forensic psychiatrist of Piedmont Community Services in Martinsville, Virginia, who evaluated Brian David Hill a month after he was arrested on indecent exposure. He thought Petitioner Brian David Hill was exhibiting a psychosis or paranoia. Psychosis is a symptom documented of those who were prolong exposed to Carbon Monoxide Gas exposure.

163

283. It is convenient for the witnesses as well as for access to any retention of evidence. It is inconvenient for the witnesses to have to travel all of the way to the Middle District of North Carolina. Especially Jason McMurray who works all of the way in Roanoke, Virginia, which takes an est. 40-45 minutes from Martinsville to Roanoke. Then from Martinsville to Winston-Salem, North Carolina, or Greensboro, North Carolina takes additional time. It is more convenient and saves tax-payer money to hold the Supervised Release Violation Trial in Roanoke, Virginia, instead of in Winston-Salem, North Carolina, or Greensboro, North Carolina

284. It is clear that venue and jurisdiction was not proper and the U.S. Constitution clearly states that the charge must be tried in the "district and state" where the alleged criminal charge had begun.

## FACTS WARRANTING THAT
## VENUE AND JURISDICTION WAS IMPROPER

1. It is a fact that Brian David Hill had been supervised by the U.S. Probation Office by the Western District of Virginia since his release from imprisonment on November 12, 2014;

2. It is a fact that Brian David Hill had lived in Martinsville, Virginia, throughout the entire Supervised Release sentence from his release from imprisonment on November 12, 2014, and ongoing;

3. It is a fact that the alleged Virginia charge of indecent exposure on September 21, 2018, had occurred in the Western District of Virginia and never had any relation with the Middle District of North Carolina maybe with the exception to Brian David Hill being originally sentenced by the Middle District of North Carolina and they controlled the Supervised Release conditions at the time  by a Supervisory Officer or any other Offices in the U.S. Probation Office for the Middle District of North Carolina but that control had been transferred to the Western District of Virginia in 2020 upon request by the U.S. Probation Office (Document #260);

4. The Western District of Virginia was just as capable to handle and prosecute the alleged Supervised Release Violation as charged under Documents #156, #157, and #158;

5. If the Supervised Release Violation is to ever have a new trial and be retried with newly discovered evidence, it would be best for the witnesses and evidence for venue to be the Western District of Virginia and would be Constitutionally permissible for the case to be retried in a Federal Court that respects Virginia Law and understands Virginia Law more than the Middle District of North Carolina ever did if they ever even respected Virginia Law;

165

6. The Middle District of North Carolina clearly did not respect Virginia Law, did not respect the case law of Virginia Appellate Court and had no legal jurisdiction to interpret Virginia Law; even in a Supervised Release Violation hearing, they cannot hold the authority to make legal arguments and statutory findings or interactions in another state where the Federal Court there could have made such interpretation. If a Federal Court in a foreign state can interpret law in another State instead of the Federal Court in the same State, then this opens the door for a Federal Court in the District of California to interpret Virginia law and make rulings on Virginia Law. This opens the door for a Federal Court in Arizona to interpret Virginia law.

285. Judge Schroeder did not know or understand Virginia laws, yet made the interpretation that Petitioner had somehow violated Virginia Code § 18.2-387 without ever understanding it's interpretations in the Appellate Courts and Constitutional interpretations by the U.S. Supreme Court. He lacked the legal ability to understand Virginia Law because he doesn't conduct the legal work in Virginia but mainly in North Carolina where the interpretations are different and the laws may be different or are interpreted differently.

286. There is a reason why the Sixth Amendment confines a Trial to the "district and state" where the accusation of the crime was alleged to have occurred and the charge to be filed for the Trial by jury. It said "in all criminal prosecutions" and the Supreme Court had ruled in 2019 that Supervised Release Violation charge

166

proceedings are considered a new charge and a new "criminal prosecution" and thus are entitled to the same Constitutional rights as any other criminal charge. See United States v. Haymond, 139 S. Ct. 2369, 204 L. Ed. 2d 897 (2019).

287. United States v. Haymond, 139 S. Ct. 2369, 2379 (2019) ("To the contrary, we recognized in Apprendi and Alleyne , a "criminal prosecution" continues and the defendant remains an "accused" with all the rights provided by the Sixth Amendment, until a final sentence is imposed. See Apprendi , 530 U.S. at 481–482, 120 S.Ct. 2348.")

288. United States v. Haymond, 139 S. Ct. 2369, 2376 (2019) ("Toward that end, the Framers adopted the Sixth Amendment's promise that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury." In the Fifth Amendment, they added that no one may be deprived of liberty without "due process of law."")

289. So if the Supreme Court is arguing in 2019 that Supervised Release Violations are to be treated the same as initial criminal prosecutions, **then the venue and jurisdiction of the Middle District of North Carolina IS IMPORER. Unconstitutional and Improper.**

290. Jurisdiction of the Middle District of North Carolina in the Supervised Release Violation allegation and charge in 2018 is unconstitutional under the Sixth

167

Amendment of the United States Constitution. It is outside of the jurisdiction, is outside of the territorial jurisdiction and is outside of the subject matter jurisdiction. No alleged crime was ever committed in the Middle District of North Carolina in 2018. No alleged crime accusation of Martinsville, Virginia was ever was charged in the Middle District of North Carolina in 2018 with the exception of the Supervised Release Violation charge under Document #157, but the Virginia Code criminal complaint was charged in Martinsville, Virginia. So under the 2019 decision of Haymond by the Supreme Court, it isn't just the right to a jury trial. The OPINION of the Supreme Court, the case law authority, the controlling case law of the Supreme Court, said that Supervised Release Violations which carries additional term of imprisonment are "criminal prosecutions" being mislabeled as sentencing enhancements. It is unusual for a Supervised Release Violation to be tried in a foreign State which doesn't even understand the statute at issue outside of the "state and district wherein the crime shall have been committed" (Sixth Amendment, Citation omitted). The Middle District of North Carolina is a "foreign State" in this matter and doesn't ever understand Virginia Law and never will understand Virginia Law as laws change in every State/Commonwealth every year, every month, every day. Doesn't matter that it was a Federal Case of Supervised Release being used as the scapegoat to erase, overwrite, and/or rewrite Virginia case laws. The Constitution clearly states at the State and District where "the crime

168

shall have been committed" (Sixth Amendment, Citation omitted) is where a Trial will be held, a JURY TRIAL.

291. The facts are at legal issue that the entire prosecution and Trial in the Middle District of North Carolina is unconstitutional and outside of the jurisdiction where allegedly and arguably where the accusation of where "the crime shall have been committed" (Sixth Amendment, Citation omitted).

292. If the Middle District of North Carolina has to follow the Supreme Court's verdict and legal interpretation of Haymond not to reopen a conflict with the circuits, to respect the Supreme Court of the United States and follow it's legal logic, then they now have to consider that the entire prosecution in the Middle District of North Carolina has a lack of territorial jurisdiction.

293. The charge and conviction in Middle District of North Carolina has a lack of territorial jurisdiction, lack of jurisdiction. The wrongful conviction under Documents #200 and Minute Entry #186 are unconstitutional and NULL and VOID. That is a fact if the Federal Court in North Carolina wishes to respect the Supreme Court and its legal interpretation of Haymond.

294. "A court has no jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and a court must have the authority to decide that question in the first instance." Rescue Army v.

169

Municipal Court of Los Angeles, 171 P2d 8; 331 US 549, 91 L. ed. 1666, 67 S.Ct. 1409.

295. "A universal principle as old as the law is that a proceedings of a court without jurisdiction are a nullity and its judgment therein without effect either on person or property." Norwood v. Renfield, 34 C 329; Ex parte Giambonini, 49 P. 732.

296. "A departure by a court from those recognized and established requirements of law, however close apparent adherence to mere form in method of procedure, which has the effect of **depriving one of a constitutional right**, is an **excess of jurisdiction**." Wuest v. Wuest, 127 P2d 934, 937.

297. "The law provides that once State and Federal Jurisdiction has been challenged, it must be proven." Main v. Thiboutot, 100 S. Ct. 2502 (1980).

298. A judgment rendered by a **court without personal jurisdiction** over the **defendant** is void. It is a nullity. [A judgment shown to be void for lack of personal service on the defendant is a nullity.] Sramek v. Sramek, 17 Kan. App. 2d 573, 576-77, 840 P.2d 553 (1992), rev. denied 252 Kan. 1093 (1993).

299. "Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach merits, but, rather, should dismiss the action." Melo v. US, 505 F2d 1026.

170

**GROUND X – FILED EVIDENCE NOT TAKEN INTO CONSIDERATION AT TRIAL ON SEPTEMBER 12, 2019; WITNESSES FILED WITH THE COURT DIRECTLY MATERIAL TO THE TRIAL WERE NOT CALLED FOR TO TESTIFY AT TRIAL ON SEPTEMBER 12, 2019; FILED AFFIDAVITS NOT TAKEN INTO CONSIDERATION AT TRIAL; VIOLATION OF DUE PROCESS CLAUSE OF U.S. CONSTITUTION, DEPRIVATION OF CRIMINAL DEFENDANT'S DUE PROCESS RIGHTS UNDER THE CONSTITUTION**

300. Simple but surely, filed evidence was never taken into consideration at the Trial Court on September 12, 2019. Evidence pertinent to and relevant to and material to the Supervised Release charge under document #156, #157, and #158.

301. A majority of evidence filed by Petitioner was never noted to being admitted under the Trial evidence under Trial Documents #186, #188, and #189. Petitioner had filed evidence which was never taken into consideration during the original Trial and Sentencing. See Documents #152, #153, #154, #155, #163, #164, #165, #178, #179, and #181. None of them were admitted at Trial despite being filed pursuant to the original charge of Supervised Release Violation under Documents #156, #157, and #158. Whether by ineffective assistance of counsel Renorda Pryor or by errors of due process of law by the Trial Court, those exhibits were never introduced into evidence at Trial. The Trial Court could have at least decided to admit those filings prior to making the final judgment under Document

171

#200. Either admit them or make a determination on the admissibility of each evidence filing.

302. See Holmes v. South Carolina, 547 U.S. 319 (2006); The United States Supreme Court reversed a South Carolina conviction in which the defendant was barred from introducing certain evidence that implicated another person in the commission of the crime. South Carolina had a rule of evidence that barred certain evidence implicating another perpetrator if the state presented forensic evidence that, if believed, strongly supported a guilty verdict. The Supreme Court unanimously (Justice Alito's first opinion) held that this rule violated the defendant's Due Process rights. See Washington v. Texas, 388 U.S. 14 (1967); Chambers v. Mississippi, 410 U.S. 284 (1973); Crane v. Kentucky, 476 U.S. 683 (1986); Rock v. Arkansas, 483 U.S. 44 (1987).

303. United States v. Scheffer, 523 U.S. 303 (1998). Though a defendant has a constitutional right to introduce evidence in his defense, this is subject to appropriate and rational rules of evidence.

304. *United States v. Abel*, 469 U.S. 45 (1984), the First Circuit wrote, "It would be a strange rule of law which held that relevant, competent evidence which tended to show bias on the part of a witness was nonetheless inadmissible because it also tended to show that the witness was a liar."

172

305. United States v. Murray, 736 F.3d 652 (2d Cir. 2013). In rebuttal, the government presented the testimony of a cell tower expert who provided an opinion (albeit somewhat equivocal) about the defendant's location based on the cell tower evidence. The defendant sought to introduce surrebuttal evidence but the trial judge denied his request on the basis that the expert's testimony was not significantly incriminating. The Second Circuit reversed.

306. See the Document in Document #186 for the "EXHIBIT AND WITNESS LIST". None of Petitioner's pro se filings under Documents #152, #153, #154, #155, #163, #164, #165, #178, #179, and #181 were ever admitted in the Trial record of the Supervised Release Violation proceeding. That is wrong and is an error to not include any of Petitioner's relevant affidavits, evidence, and filings all relevant and directed towards the SRV violation proceeding.

307. Why did Attorney Renorda Pryor not reprinted and tried to introduce Documents #152, #153, #154, #155, #163, #164, #165, #178, #179, and #181 at the Trial on September 12, 2019 as evidence to be considered?

308. Why did the Trial Court not admit the AFFIDAVIT/DECLARATION evidence in EXHIBIT AND WITNESS LIST (Doc. #186, Doc. #188, Doc. #189)

173

such as DECLARATION entitled "Evidence Declaration of Brian David Hill Regarding Carbon Monoxide and Letgter to Martinsville Police Chief in Opposition to Government's/Respondent's Documents #[156], #[157], #[158], #[159], and #[160]" filed by BRIAN DAVID HILL. (Attachments: # (1) Exhibit 0, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Exhibit 3, # (5) Exhibit 4, # (6) Exhibit 5, # (7) Exhibit 6, # (8) Exhibit 7, # (9) Exhibit 8, # (10) Exhibit 9, # (11) Exhibit 10, # (12) Envelope - Front and Back) (Garland, Leah)??? Why was it not admitted or ruled inadmissible but just ignored and treated like it doesn't exist? (Letter was accidently misspelled in pleading as "Letgter" in the original filing.)

309. It was erroneous and never even acknowledged from the U.S. Court of Appeals that there was missing evidence which was filed during the pendency of the proceedings. Evidence filed relevant and material to the charge under Document #157. Violates the Due Process clause of the U.S. Constitution.

310. Missing evidence that should have been either ruled admissible or inadmissible at Trial on September 12, 2019. That was a major error to not ever mention about those pieces of evidence. There is nothing in the Transcript under

174

Document #215 where the Chief Judge ever mentioned about the evidence in Documents #152, #153, #154, #155, #163, #164, #165, #178, #179, and #181.

311. The Trial Court ordered "Nine (9) months imprisonment" while the Trial Court deprived Petitioner of due process of law by ignoring evidence on record and refusing to rule on its admissibility and refused to admit the evidence on September 12, 2019. Deprived due process by ignoring evidence and Declarations and witnesses like Pete Compton.

312. This is an error of law, error of due process of law, in violation of the Fifth Amendment of the United States Constitution.

> Amendment V (Citation): No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

313. Petitioner was deprived of his Constitutional right to due process of law because the Documents #152, #153, #154, #155, #163, #164, #165, #178, #179, and #181 were never entered into the evidence at Trial and never entered into the final Order in Document #200. The Judge did not wanted to because then the Hon.

175

Thomas David Schroeder would've had to admit that Petitioner was attempting to send medical records and misc. evidence to Martinsville Police Department in 2019, accumulatively, proving that he may have been under a substance or gas at the time he was arrested such as Carbon Monoxide Gas exposure. The Judge would've have to admit that Roberta Hill received a targeted harassment campaign in 2018 prior to Brian David Hill, her son, being arrested. The Judge would have to admit that Brian David Hill may have been discharged from the Hospital prematurely without conducting a thorough laboratory testing or any drug testing. They didn't even test the Diabetic blood glucose of Brian David Hill at the time of his arrest after temporary but quick Hospitalization. The Hospital knew he suffered Tachycardia and the Hospital refused to even find out why that was. The Judge didn't want to do that and that was an ERROR OF LAW.

**GROUND XI – VIRGINIA'S GENERAL ASSEMBLY HAD CREATED NEW LAW GIVING BRIAN DAVID HILL A NEW CRIMINAL DEFENSE (WHICH IS LEGAL INNOCENCE WHEN A DEFENSE CAN BE PROVEN TO A COURT AND PERMISSIBLE) WHICH WARRANTS ACQUITTAL ON A VIRGINIA CONVICTION OR THAT BRIAN DAVID HILL CANNOT BE CONVICTED OF INDECENT EXPOSURE UNDER VIRGINIA CODE § 18.2- 387 DUE TO A NEW LEGAL DEFENSE FOR A CRIMINAL CHARGE AUTHORIZED BY VIRGINIA CODE § 19.2-271.6 WHICH HAD BECAME LAW IN 2021**

314. This ground is based on law, law not at the time of conviction on September 12, 2019 in the U.S. District Court, and thus this ground is also relevant to the 2255 since the entire Supervised Release Violation's basis for violation was based upon alleged violation of Virginia Code § 18.2- 387. See **Exhibit 23**, Exhibit pages 108 through 111, the "Printout of Statute Virginia Code § 19.2-271.6. Evidence of defendant's mental condition admissible; notice to Commonwealth".

315. Virginia's General Assembly had passed a new law in 2021 (Virginia Code § 19.2-271.6), which allows a criminal defendant with Autism Spectrum Disorder, Psychosis, or any other intellectual disabilities or mental illness or illnesses to be used as a defense to a criminal charge, in regard to INTENT, and intent is necessary to convict a criminal defendant of Virginia Code § 18.2- 387. A criminal defense is "Actual Innocence" and is legal innocence. A criminal defense can mean that a criminal conviction cannot be sustained and thus a defendant cannot be legally authorized to being punished by a Court of Law. This statute had not existed in the years of 2018 or 2019 when Petitioner was tried in front of Trial Court on September 12, 2019, and further adjudged on Document #200. This statute had not existed in the year of 2018 when Petitioner was tried and wrongfully convicted in the General District Court for the City of Martinsville on December 21, 2018. This statute had not existed in the year of 2019 when Petitioner was wrongfully convicted in the Circuit Court for the City of

177

Martinsville on November 18, 2019. Therefore Petitioner is entitled to a criminal defense of no intent to commit any act which would violate Virginia Code § 18.2-387. If this Court wishes to decide whether Petitioner had violated his Supervised Release due to his Virginia state charge of violating Virginia Code § 18.2- 387, then this Court has to also consider his LEGALLY AUTHORIZED criminal defense pursuant to Virginia Code § 19.2-271.6.

CITATION of NEW CODIFIED STATUTE CODIFIED IN 2021
(CITATIONS REFORMATTED):

§ 19.2-271.6. Evidence of defendant's mental condition admissible; notice to Commonwealth. (2021 updated section)
A. For the purposes of this section:
"Developmental disability" means the same as that term is defined in § 37.2-100.
"Intellectual disability" means the same as that term is defined in § 37.2-100.
"Mental illness" means a disorder of thought, mood, perception, or orientation that significantly impairs judgment or capacity to recognize reality.
B. In any criminal case, evidence offered by the defendant concerning the defendant's mental condition at the time of the alleged offense, including expert testimony, is relevant, is not evidence concerning an ultimate issue of fact, and shall be admitted if such evidence (i) tends to show the defendant did not have the intent required for the offense charged and (ii) is otherwise admissible pursuant to the general rules of evidence. For purposes of this section, to establish the underlying mental condition the defendant must show that his condition existed at the time of the offense and that the condition satisfies the diagnostic criteria for (i) a mental illness, (ii) a developmental disability or intellectual disability, or (iii) autism spectrum

178

disorder as defined in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association.

If a defendant intends to introduce evidence pursuant to this section, he, or his counsel, shall give notice in writing to the attorney for the Commonwealth, at least 60 days prior to his trial in circuit court, or at least 21 days prior to trial in general district court or juvenile and domestic relations district court, or at least 14 days if the trial date is set within 21 days of last court appearance, of his intention to present such evidence. In the event that such notice is not given, and the person proffers such evidence at his trial as a defense, then the court may in its discretion either allow the Commonwealth a continuance or, under appropriate circumstances, bar the defendant from presenting such evidence. The period of any such continuance shall not be counted for speedy trial purposes under § 19.2-243.

If a defendant intends to introduce expert testimony pursuant to this section, the defendant shall provide the Commonwealth with (a) any written report of the expert witness setting forth the witness's opinions and the bases and reasons for those opinions, or, if there is no such report, a written summary of the expected expert testimony setting forth the witness's opinions and bases and reasons for those opinions, and (b) the witness's qualifications and contact information.

C. The defendant, when introducing evidence pursuant to this section, shall permit the Commonwealth to inspect, copy, or photograph any written reports of any physical or mental examination of the accused made in connection with the case, provided that no statement made by the accused in the course of such an examination disclosed pursuant to this subsection shall be used by the Commonwealth in its case in chief, whether the examination was conducted with or without the consent of the accused.

D. Nothing in this section shall prevent the Commonwealth from introducing relevant, admissible evidence, including expert testimony, in rebuttal to evidence introduced by the defendant pursuant to this section.

E. Nothing in this section shall be construed as limiting the authority of the court from entering an emergency custody order pursuant to subsection A of § 37.2-808.

179

F. Nothing in this section shall be construed to affect the requirements for a defense of insanity pursuant to Chapter 11 (§ 19.2-167 et seq.).

G. Nothing in this section shall be construed as permitting the introduction of evidence of voluntary intoxication.

2021, Sp. Sess. I, cc. 523, 540.

316. This issue was not brought up on direct appeal because that law had not existed and could not have been used for Federal direct appeal due to the fact that Appeal Courts could only make findings based on the Record on Appeal at the time of final judgment or based upon law itself at the time the Petitioner was convicted whether wrongfully or rightfully. The law had changed and it concerns the Supervised Release Violation over a charge of violating Virginia Law when such law authorizes a new criminal defense which was not legally authorized previously.

317. On or about January 20, 2022, Petitioner had filed a Motion for Judgment of acquittal with the Clerk of the Circuit Court of the City of Martinsville under case no. R19000009-00; entitled: "MOTION FOR JUDGMENT OF ACQUITTAL BASED UPON NEW EVIDENCE WHICH COULD NOT BE ADMISSIBLE AT THE TIME OF CONVICTION; NEW EVIDENCE OF SPOLIATION OF EVIDENCE COMMITTED BY COMMONWEALTH OF VIRGINIA; REQUEST FOR SANCTIONS AGAINST COUNSEL GLEN ANDREW HALL, ESQUIRE (OFFICER OF THE COURT)

180

FOR VIOLATING COURT ORDERS FOR NOT TURNING OVER BODY-CAMERA FOOTAGE AND IT IS LIKELY DESTROYED AND BIOLOGICAL EVIDENCE OF BLOOD VIALS OBTAINED ON DAY OF CHARGE, ALSO LIKELY DESTROYED". Petitioner can also use this new law in a Petition for a Writ of Actual Innocence. Petitioner will file an appeal regardless of whether this motion is denied or granted unless it is granted and the Commonwealth of Virginia does not file an appeal to the decision of acquittal. This will directly affect the Supervised Release Violation charge under document #157, would prove that Brian David Hill did not engage in the commission of a crime on September 21, 2018, and thus the Document #200 judgment would need to be nullified on the grounds that Brian David Hill did not commit a crime on that day. If the motion is denied and based upon new law, then there may or may not be enough case law to make a determination based upon the appellate Courts as of yet. Any appeal will render a legal decision which may or may not acquit Brian David Hill of his charge of violating Virginia Code § 18.2- 387. This Court should request the records of the Circuit Court and the Court of Appeals of Virginia when expanding the record for this ground. If Petitioner fails on appeal and on the motion, Petitioner can file another Motion requesting a New Trial based upon previously unavailable evidence due to the previous Virginia Laws regarding admissibility of evidence in mounting a criminal defense to the criminal charge as a matter of law. Then upon

181

new trial, Petitioner can be found not guilty and that decision can carry on to the U.S. Probation Office in a written request to reverse the Violation charge as entered on Document #157 requesting vacatur of the original charge and of the conviction on Document #200.

## CONCLUSION

318. There are many Constitutional, statutory, or evidential grounds as to why the wrongful conviction on Documents #186 and #200, was unlawful, illegal, null and void and must be vacated immediately.

319. Petitioner has filed this 2255 Motion timely if it was before or on February 22, 2022, and it is over a new conviction of a crime dated on September 12, 2019 (Doc. #186, Minute Entry), and the written conviction order on October 7, 2019 (Doc. #200).

320. The GROUNDS I through XI (1 through 11) are all regarding the unlawful conviction of Brian David Hill, and the wrongful conviction of Brian David Hill. The conviction is unconstitutional, outside of jurisdiction, null and void, in excess of jurisdiction, interfered with and/or obstructed the Trial De Novo process in the Commonwealth of Virginia and violates the Due Process clause of the Amendment V of the United States Constitution.

321. Again, see "GROUND VII – IT IS NOW POSSIBLE AND PETITIONER SUSPECTS THAT THE ORIGINATING JUDICIAL OFFICER WHO REVOKED THE SUPERVISED RELEASE ON DOCUMENT #200 MAY OR MAY NOT BE A TARGET OF A BLACKMAIL SCHEME INVOLVING CHILD RAPE AND MURDER DUE TO CLAIMS BY ATTORNEY L. LIN WOOD…" If the GROUND of BLACKMAIL is in fact true and if Thomas David Schroeder is ever found to being in one of the alleged blackmail videotapes aka video recordings of the child rape and murder acts done for the blackmailer's purpose of blackmailing an official or judge, then the judge was disqualified from participating ever in the entire criminal case of Brian David Hill since 2015, and every order he ever gave would be illegal including the Document #200 Judgment. Illegal because the orders from the judge were partial, biased, and from a judge who may or may not have committed a sexual crime. That would nullify and make voidable every order this judge ever entered throughout the criminal case of United States v. Brian David Hill. Then it not only affects this 2255 Motion, Petitioner can then demand that the dismissal of the original 2255 Motion for the first conviction (Doc #125, Doc. #236, and Doc. #237) be nullified. That would be brought up in a separate motion or a successive 2255. However, proof of blackmail as the cause of a wrongful judgment is the most powerful ground of FRAUD ON THE COURT because the evidence of any blackmail draws the sound judgments of criminal

183

cases into serious question as to whether any of them were ever legitimate. It wouldn't just affect the criminal case of Brian David Hill, but would affect literally every case ever tried before the Chief Judge Thomas David Schroeder.

322. Petitioner also plans on filing the Petition for the Writ of Actual Innocence in the Court of Appeals of Virginia using the same basic evidence used in this 2255 Motion and maybe more if any further evidence is ever obtained. When such a Writ Petition is filed, it directly affects this newly filed 2255 Motion and Case for 2022. Being declared Actually Innocent of violating Virginia Code § 18.2-387, would nullify the grounds for Documents #157, #156, and #158. The Supervised Release Violation would be NULL AND VOID in 2018, if the Petitioner is found actually innocent within a Virginia Court. Petitioner will notify this Court after successful filing and docketing of the Petition for the Writ of Actual Innocence in the Court of Appeals of Virginia.

323. However, if the Petitioner is granted an Absolute Pardon based on the findings of Actual Innocence by the Governor of Virginia, then it directly affects this newly filed 2255 Motion and Case for 2022. That is because in 2019 or 2020, the Petitioner had filed a request for an Absolute Pardon through the Secretary of the Commonwealth. Petitioner never pled guilty to his charge on September 21, 2018, and that is a fact. Again, being declared Actually Innocent of violating Virginia Code § 18.2-387, would nullify the grounds for Documents #157, #156,

184

and #158. The Supervised Release Violation would be NULL AND VOID in 2018, if the Petitioner is found actually innocent by the Virginia Governor. Petitioner will notify this Court after successful entering of the Absolute Pardon and vacatur of the criminal conviction in the General District Court and final conviction affirming the General District Court verdict in 2019 due to the Motion to Withdraw Appeal.

324. Petitioner had filed a MOTION in the Circuit Court asking for a Judgment of Acquittal based upon a new legally permissive defense to his criminal charge as referenced in Document #157. Petitioner will so notify the Court if the MOTION is granted or if Brian David Hill is fully acquitted of his charge which led to Document #157 charge.

WHEREFORE, For the foregoing reasons as stated in the 2255 Motion and GROUNDS I THROUGH XI, and this Brief / Memorandum of Law, Petitioner asks this Court to: "Vacate the wrongful conviction entered on Document #200 and the wrongful judgment of Guilty and revoking Supervised Release on September 12, 2019 under Documents #186 (text entry/Minute Entry)", "or any other relief to which movant may be entitled.".

## EXHIBIT LIST FOR 2255 BRIEF / MEMORANDUM OF LAW

| Exhibit # | Page Range | Description |
|---|---|---|
| Exhibit 1 | 1-4 | Arrest Warrant and Criminal Complaint in General District Court of the City of Martinsville in the Commonwealth of Virginia |
| Exhibit 2 | 5-16 | Three Virginia State Court Orders. First three pages 6-8 are of the Index record showing that the three Court Orders came from the PDF copy of the Record on Appeal. Pages 9-10 are of the Discovery Order of the General District Court of the City of Martinsville. Pages 11-13 are the second Discovery Order from the Hon. Giles Carter Greer of the Circuit Court of the City of Martinsville. Pages 14-16 are the third Discovery Order from the Hon. Giles Carter Greer of the Circuit Court of the City of Martinsville |
| Exhibit 3 | 17-18 | Audio CD x1 Exhibit. NOTICE OF FILING PAPER OR PHYSICAL MATERIALS WITH THE CLERK was filed with the Clerk for the Record of the Physical filing of a piece of physical evidence. |
| Exhibit 4 | 19-31 | A photocopy of the filed "MOTION TO WITHDRAW APPEAL" filed by Brian David Hill on November 12, 2019. Photocopy sourced from the PDF copy of the |

186

| | | entire Record on Appeal of the Virginia criminal case from Circuit Court of the City of Martinsville. |
|---|---|---|
| Exhibit 5 | 32-34 | A photocopy of the ORDER IN MISDEMEANOR OR TRAFFIC INFRACTION PROCEEDING (1 page) and DISPOSITION NOTICE (1 page) |
| Exhibit 6 | 35-38 | Printout of Forward of email from Attorney L. Lin Wood. Printed from Roberta Hill email account rbhill67@comcast.net. |
| Exhibit 7 | 39-45 | Printout of Forward of email from Attorney L. Lin Wood. Printed from Roberta Hill email account rbhill67@comcast.net. |
| Exhibit 8 | 46-47 | Attorney L. Lin Wood Tweet (from Twitter) screenshot with link shown from Wayback machine. A tweet is a term referring to a social networking post. |
| Exhibit 9 | 48-49 | Attorney L. Lin Wood Tweet (from Twitter) screenshot with link shown from Wayback machine. A tweet is a term referring to a social networking post. |
| Exhibit 10 | 50-51 | Attorney L. Lin Wood Tweet (from Twitter) screenshot with link shown from Wayback machine. A tweet is a term referring to a social networking post. |
| Exhibit 11 | 52-53 | Attorney L. Lin Wood Tweet (from Twitter) screenshot with link shown from Wayback machine. A tweet is a term referring to a social networking post. |
| Exhibit 12 | 54-55 | Attorney L. Lin Wood Tweet (from Twitter) screenshot with link shown from Wayback machine. A tweet is a term referring to a social networking post. |

| Exhibit 13 | 56-57 | Attorney L. Lin Wood Tweet (from Twitter) screenshot with link shown from Wayback machine. A tweet is a term referring to a social networking post. |
|---|---|---|
| Exhibit 14 | 58-59 | Attorney L. Lin Wood Tweet (from Twitter) screenshot with link shown from Wayback machine. A tweet is a term referring to a social networking post. |
| Exhibit 15 | 60-61 | DVD Video Disc 480 Pixels x1 and AVC-HD DVD Blu-Ray Video disc 1080 Pixels x1. Two DVD discs total. Exhibit. NOTICE OF FILING PAPER OR PHYSICAL MATERIALS WITH THE CLERK was filed with the Clerk for the Record of the Physical filing of a piece of physical evidence. |
| Exhibit 16 | 62-64 | Email subject: "BRIAN DAVID HILL - Just found out more about Brian to share with you. This has to do with carbon monoxide poisoning"; To: jason_mcmurray@vawp.uscourts.gov |
| Exhibit 17 | 65-68 | Email subject: "Brian David Hill asked us to take photos of ceiling & walls above his fireplace from carbon dioxide to send to you"; To: jason_mcmurray@vawp.uscourts.gov |
| Exhibit 18 | 69-70 | Email subject: "RE: carbon monoxide exposure from fireplace"; From: Lisa Garrett <lgarrett@co.henry.va.us>; To: Roberta Hill <rbhill67@yahoo.com>, Kiah Cooper <kcooper@co.henry.va.us> |

188

| Exhibit 19 | 71-82 | DECLARATION OF BRIAN DAVID HILL IN SUPPORT OF THE PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY. MOTION UNDER 28 U.S.C. § 2255 FILED BY BRIAN DAVID HILL |
|---|---|---|
| Exhibit 20 | 83-87 | DECLARATION OF ROBERTA HILL IN SUPPORT OF THE PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY. MOTION UNDER 28 U.S.C. § 2255 FILED BY BRIAN DAVID HILL |
| Exhibit 21 | 88-98 | Witness letter from Stella B. Forinash. |
| Exhibit 22 | 99-107 | Witness letter from Kenneth Forinash. |
| Exhibit 23 | 108-111 | Printout of Statute Virginia Code § 19.2-271.6. Evidence of defendant's mental condition admissible; notice to Commonwealth. |
| Exhibit 24 | 112-115 | Copy of email from Roberta Hill's email account rbhill67@yahoo.com. Email subject: "Fw: BRIAN DAVID HILL EMERGENCY"; dated: "Tuesday, February 17, 2015, 08:46 AM EST" |

115 pages total.

Respectfully filed with the Court, this the 25th day of January, 2022.

Respectfully submitted,

$\underline{Brian\ D.\ Hill}$
Signed
Brian D. Hill

189

Signed
Brian D. Hill (Pro Se)
310 Forest Street, Apartment 2
Martinsville, Virginia 24112
Phone #: (276) 790-3505

**U.S.W.G.O.**

Former U.S.W.G.O. Alternative News reporter
I stand with Q and Lin Wood – Drain the Swamp
I ask Q and Lin Wood for Assistance (S.O.S.)
Make America Great Again
JusticeForUSWGO.wordpress.com
USWGO.COM
JUSTICEFORUSWGO.NL

Petitioner also requests with the Court that a copy of this pleading be served upon the Government as stated in 28 U.S.C.§ 1915(d), that "The officers of the court shall issue and serve all process, and preform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases". Petitioner requests that copies be served with the U.S. Attorney office of Greensboro, NC via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

## CERTIFICATE OF SERVICE

Defendant hereby certifies that on January 25, 2022, service was made by mailing the original and 2x copies of the foregoing:

(#1) "BRIEF / MEMORANDUM OF LAW AND ATTACHED EXHIBITS IN SUPPORT OF THE PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY. MOTION UNDER 28 U.S.C. § 2255"; (#2) "MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY. MOTION UNDER 28 U.S.C. § 2255"; and (#3) EXHIBITS 1-23.

by deposit in the United States Post Office, in an envelope, Postage prepaid, on January 25, 2022 addressed to the Clerk of the Court in the U.S. District Court, for the Middle District of North Carolina, 324 West Market Street, Greensboro, NC 27401.

Then pursuant to 28 U.S.C. §1915(d), Petitioner requests that the Clerk of the Court move to electronically file the foregoing using the CM/ECF system which will send notification of such filing to the following parties to be served in this action:

| | |
|---|---|
| Anand Prakash Ramaswamy<br>U.S. Attorney Office<br>Civil Case # 1:17 -cv-1036<br>101 South Edgeworth Street, 4th<br>Floor, Greensboro, NC 27401<br>Anand.Ramaswamy@usdoj.gov | Angela Hewlett Miller<br>U.S. Attorney Office<br>Civil Case # 1: 17 -cv-1036<br>101 South Edgeworth Street, 4th<br>Floor, Greensboro, NC 27401<br>angela.miller@usdoj.gov |
| JOHN M. ALSUP<br>U.S. Attorney Office<br>101 South Edgeworth Street, 4th<br>Floor, Greensboro, NC 27401<br>john.alsup@usdoj.gov | |

This is pursuant to Petitioner's "In forma Pauperis" ("IFP") status, 28 U.S.C. §1915(d) that "The officers of the court shall issue and serve all process, and perform all duties in such cases ... "the Clerk shall serve process via CM/ECF to serve process with all parties.

| | |
|---|---|
| Date of signing:<br><br>January 25, 2022 | Respectfully submitted,<br><br>*Brian D. Hill*<br>Signed<br>**Brian D. Hill**<br>Signed<br>Brian D. Hill (Pro Se)<br>310 Forest Street, Apartment 2<br>Martinsville, Virginia 24112<br>Phone #: (276) 790-3505<br>**U.S.W.G.O.**<br>I stand with Q and Lin Wood – Drain the Swamp |

191

|  | I ask Q and Lin Wood for Assistance (S.O.S.) |
|  | Make America Great Again |

Friend's justice site: JusticeForUSWGO.wordpress.com
JusticeForUSWGO.NL





Case 1:13-cr-00435-TDS   Document 292   Filed 01/27/22   Page 194 of 194