In the United States District Court
For the Middle District of North Carolina



FILED
SEP 13 2024
Clerk U.S. District Court
Greensboro, N.C.
BY

Brian David Hill,                )
Petitioner/Defendant             )
                                 )     Criminal Action No. 1:13-CR-435-1
              v.                 )
                                 )     Civil Action No. 1:22-CV-00074
United States of America,        )
Respondent/Plaintiff             )
                                 )
                                 )

---

<u>PETITIONER'S OBJECTIONS TO ORDER AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE (DKT. #336) REGARDING TO
MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE (DKT. #291)</u>





**Brian David Hill – Ally of Qanon**
**Founder of USWGO Alternative News**
**310 Forest Street,**
**Apt. 2 Martinsville,**
**Virginia 24112**
**(276) 790-3505**
**c/o: Rbhill67@comcast.net; Roberta Hill**

---

*Pro Se Appellant*          — *JusticeForUSWGO.wordpress.com*

I will not let the
Deep State CIA win.
CIA

COVER PAGE

1

NOW COMES the 28 U.S.C. § 2255 ("2255 Motion") Petitioner Brian David Hill ("Hill", "Brian", and "Petitioner") who is respectfully filing objections to the ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE (Dkt. #336)(" *ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*") by the Honorable U.S. Magistrate Judge Joe Webster ("U.S. Magistrate", "Magistrate", "U.S. Magistrate Judge") recommending denying and dismissing Petitioner's 2255 Motion case in favor of Respondent: United States of America ("USA") (Docket "Dkt." #319) in regard to Petitioner's filed 2255 Motion (Dkt. #291) in the Middle District of North Carolina.

1. Petitioner objects to the recommendation/recommendations of the U.S. Magistrate Judge including but not limited to the recommendation "that Petitioner's motion to vacate, set aside or correct sentence (Docket Entry 291) be DENIED and that this action be dismissed".

2. Petitioner had filed plenty of evidence (Docket Entries 291, 292, 293, 298, 299, 307-08.)(Docket Entry 323, all attachments., Docket Entry 324)(Docket Entry 336, all attachments) and witnesses' suggestions (Dkt. #325, #325-1) which warrant an evidentiary hearing if not enough evidence and arguments proving that relief is warranted in the 2255 Motion case filed by Petitioner. Petitioner also

2

would like to make notice to the Court that the U.S. Magistrate forgot to mention about the proposed witness list in Dkt. #325, #325-1, as there is no mention of Document #325 anywhere in the U.S. Magistrate's filing. See Document #336, Page 3 of 19. No mention of Document #325 which is the "NOTICE entitled Proposed Witness List of Petitioner for Any Evidentiary Hearing Necessary to Prove Actual Innocence of 2255 Motion Petitioner Brian David Hill by BRIAN DAVID HILL. (Attachments: # 1 Attachment) (Bowers, Alexis) (Entered: 07/28/2022)". Petitioner asserts that this Paragraph 2 is an additional objection to the U.S. Magistrate Judge's order and recommendation since the proposed witness list (Dkt. #325, #325-1) was totally ignored from the 2255 Motion case, was overlooked, and was not even mentioned in the recommendations (Dkt. #336) despite Dkt. #325-1 being a small proposed witness list, not many pages to read.

3. Petitioner will explain why the objections are warranted, and explaining why the recommendation/recommendations should be rejected by the U.S. District Court Judge, and Petitioner asks that the 2255 Motion case remain open for further proceedings. Petitioner requests order and remand for further proceedings.

4. Petitioner also asks that the objections be taken into full consideration to be enough for this Honorable Court to either reject the recommendations (the 2255 Motion case should be remanded for further proceedings) or grant a Certificate of Appealability in favor of Petitioner if necessary. Petitioner asks that all evidence

3

(Docket Entries 291, 292, 293, 298, 299, 307-08.)(Docket Entry 323, all

attachments., Docket Entry 324)(Docket Entry 336, all attachments) and witness

suggestions (Dkt. #325, #325-1) be taken into full consideration before making a

final decision affecting the outcome of this 2255 Motion case.

## PETITIONER'S OBJECTIONS

5. Petitioner objects to the U.S. Magistrate's erroneous claim in Pages 11-12

and Footnote 3:

> In this case, Petitioner cannot carry his burden of establishing a constitutional violation. There is no reason to believe that the Government or law enforcement or anyone else suppressed materially favorable evidence. Petitioner merely speculates and offers assertions about what the Martinsville Police Department should or could have done, for example, that they should have made the hospital draw his blood and then test it for carbon monoxide levels and that they allegedly destroyed favorable body camera footage. **3** What the Martinsville Police Department should or could have done is not proof of evidence in existence that is favorable to Petitioner and not a Brady violation.
>
> **Footnote 3**: Petitioner has submitted a statement from Martinsville Police Chief Rob Fincher in response to Petitioner's requests indicating that there were two videos (one from a body camera and one from an in-car camera) bearing Petitioner's name that were removed/deleted from the Department's digital video management system on April 9, 2019 as a matter of regular course because they were not marked as

4

"evidence." (Docket Entry 335, Ex. 1.) Petitioner makes much of this. However, even assuming this demonstrated the suppression of evidence, there is no reason to believe that Petitioner was prejudiced as a result. The evidence at Petitioner's revocation hearing was overwhelming, including officer testimony (Docket Entry 215 at 11-36), photographic evidence (Docket Entry 215 at 2), and a statement by Petitioner by way of explanation admitting that he was "naked." (Docket Entry 215 at 72; see also id. at 73 (district court judge explaining that "The exposure in this case was intentional and purposeful. There's really no way to explain otherwise. He's running around naked, taking pictures of himself and posing for the pictures of his genitals, and he's doing it in the open in the public.").) There is no reason to believe that additional video footage would have changed the outcome here.

6. "*In this case, Petitioner cannot carry his burden of establishing a constitutional violation. There is no reason to believe that the Government or law enforcement or anyone else suppressed materially favorable evidence. Petitioner merely speculates and offers assertions about what the Martinsville Police Department should or could have done*", that right there is not truthful and does not reflect the facts. It is not true, and the evidence is enough to reflect that relief is warranted because that opinion by the Magistrate is wrong, incorrect, or is in disregard for the truth. The Magistrate's opinions doesn't reflect the true and correct evidence which can be both authenticated and verified if the U.S. Attorney

5

had objected to those issues but there was no objection to the evidence filed in Docket Entry 334, Docket Entry 335, and Docket Entry 321 and Docket Entry 323. See Local Rule 7.3 MOTION PRACTICE of the Local Civil Rules of this Court. There was no objection to the witness list of witnesses suggested and proposed for the Court to consider (Dkt. #325, #325-1) in determining the innocence of Petitioner. One of the witnesses Robert Jones can again state under oath that Petitioner was not obscene when he was found to be in the nude on September 21, 2018. Referring to Officer Robert Jones. That testimony had been covered up from the transcript (Note: *Plenty of witnesses submitted affidavits and more witnesses were offered such as U.S. Probation Officer Jason McMurray and Attorney Renorda Pryor who are officers of the court*), so Officer Robert Jones should be compelled to either testify or submit an affidavit (cheaper and would save scarce judicial resources for judicial economy) verifying Petitioner's claim under oath along with three other witnesses who know that Officer Robert Jones admitted that Petitioner was not obscene when he was naked as stated under oath in Documents #216, #216-1, #216-2, #216-3, and #216-4, therefore no law was ever broken because Petitioner was not obscene. That means Petitioner did not violate the conditions of his supervised release and was wrongfully arrested. That same officer admitted that he didn't know Petitioner was diabetic (Dkt. #215, page 34, Lines 15-18 of Transcript), didn't know about lab testing results (Dkt. #215, page 35,

6

Lines 12-15 of Transcript), didn't know Petitioner had OCD (Dkt. #215, page 34, Lines 17-18 of Transcript), and didn't know Petitioner was protected as a medically disabled person under the Americans with Disabilities Act (ADA). He didn't know Petitioner's critical medical issues as this Court has been aware for years and years in this very criminal case of 1:13-cr-435-1. This Court had been aware of Petitioner's type one brittle diabetes (Document #307) for years and years since his arrest in 2014 over the original charge of Documents #1-2 in this case, verified by U.S. Marshals for years for the times when the U.S. Marshals had Petitioner imprisoned. Yet Officer Jones the only witness favorable to the United States of America (Respondent) didn't know anything of Petitioner's mental and physical health except having autism (Dkt. #215, page 34, Lines 7-14 of Transcript), one of Petitioner's multiple chronic health conditions documented to this court, and the U.S. Marshals knew of Petitioner's multiple health issues when Petitioner was in jail in 2014 and in 2015 in the Middle District of North Carolina. This Court cannot deny the existence of Petitioner's well documented chronic health issues. Yet Officer Jones said Petitioner was "medically and psychologically cleared" (Dkt. #293) without knowing all of the facts for sure. That is not true under oath, under penalty of perjury. This suggests that this witness lacks credibility when he charged Petitioner with indecent exposure in the first place. Petitioner recommends that the prosecutor charge Robert Jones with perjury for

7

making false statements about Petitioner being medically cleared when the lab tests were never proven to have been fully conducted, never verified whether or not Petitioner was drugged or was high on carbon monoxide poisoning or whatnot (Dkt. #181-11, cited in pages 7 and 8 in Dkt. #325). Robert Jones said under oath something that medical records verify wasn't even true. The officer wasn't aware of Petitioner's well documented chronicle health issues of Type 1 Brittle diabetes, and Obsessive Compulsive Disorder (OCD), but only Petitioner's autism spectrum disorder (a chronicle health issues) because he admitted the Petitioner told that very officer of his health issue but not all of the health issues Petitioner had suffered and still has suffered today.

7. The U.S. Magistrate Judge did the right thing granting Petitioner's motion to file a reply brief (Docket Entry 321) and Petitioner's motion to file additional evidence (Docket Entry 334). That is because now the Petitioner can use all available evidence on the record of this Trial Court to demonstrate that the U.S. Magistrate Judge had erred and did not make a correct assessment of the case in the foregoing statement above.

8. The U.S. Magistrate contends that: "*There is no reason to believe that the Government or law enforcement or anyone else suppressed materially favorable evidence*". That statement is not true and here is why. Evidence had been submitted on the record proving that the Petitioner had met this burden of proof that the

8

*Government or law enforcement or anyone else suppressed materially favorable*

*evidence.*

9. Now the U.S. Magistrate did acknowledge the letter from Police Chief

Rob Fincher: "*Petitioner has submitted a statement from Martinsville Police Chief*

*Rob Fincher in response to Petitioner's requests indicating that there were two*

*videos (one from a body camera and one from an in-car camera) bearing*

*Petitioner's name that were removed/deleted from the Department's digital video*

*management system on April 9, 2019 as a matter of regular course because they*

*were not marked as "evidence." (Docket Entry 335, Ex. 1.) Petitioner makes much*

*of this. However, even assuming this demonstrated the suppression of evidence,*

*there is no reason to believe that Petitioner was prejudiced as a result.*"

10. However the U.S. Magistrate had erred because he overlooked clear and

convincing evidence proving that the Virginia law was violated three times by the

"Government or law enforcement or anyone else" which caused suppressed

materially favorable evidence. The law was violated three times by non-

compliance of three court orders. See Document #335-11, Exhibit 10.

11. The three court orders prove that the Government or law enforcement or

anyone else in position of authority aka the state prosecutor did intentionally

caused the suppressed materially favorable evidence. The three court orders which

(1) was from General District Court for the City of Martinsville, Virginia, and (2)

9

two court orders from the Circuit Court for the City of Martinsville, Virginia. See Document #335-11, Page 2-9 of 9, and Document #335 Page 7-9 of 29.

12. As a matter of law and as a matter of record, the three court orders are of legal statute, of legal authority, and are enforced under Virginia Code Section 18.2-456 – "Cases in which courts and judges may punish summarily for contempt". When a single court order is ignored, not complied with, disregarded, or is disobeyed, it is considered CRIMINAL CONTEMPT OF COURT as a matter of law. All courts including this federal court knows that all court orders have to be followed as is the law. If a party disagrees with a court order and/or feels like it is not lawful, the party can ask the appeals court or even the U.S. Supreme Court to intervene to nullify the court order, or the party can even ask the judge aka the judicial officer to modify the court order to reflect the law or even vacate the court order. A party cannot defiantly disobey any court order which is normally ordered by a judge. That (disobeying a court order) is criminal contempt according to Virginia Code Section 18.2-456. Read Virginia Code Section 18.2-456, subsection 5. "***Disobedience or resistance of an*** *officer of the court, juror, witness, or other person to **any lawful process**, **judgment, decree**, or **order of the court**;...*". The Commonwealth's Attorney which is the law enforcement prosecutor of criminal cases before a court (and represents criminal prosecutions charged by the Police Department) was obligated by state law of Virginia as well as the State Bar Rules

10

of Virginia (provided by the Supreme Court of Virginia) to comply with court orders. All parties have to follow court orders otherwise then a court order means nothing. A court order is considered useless if there is no ability to legally enforce it. See Virginia State Bar RULE 3.4 Fairness To Opposing Party And Counsel, Section (a), Section (d), and Section (e). See Virginia State Bar RULE 8.4 Misconduct, Section (B).

13. Even though that specific statute had not been mentioned in earlier filings, those court orders were filed as evidence in the record of Exhibit 10 — Document #335, Attachment #11 in support of Petitioner's 2255 Motion case. That evidence is granted to be used in the final disposition of Petitioner's 2255 Motion case.

14. Here is the argument as to why and how this proves that Petitioner did meet this burden of proving that the government aka the law enforcement entity (Martinsville Police Department) of the City of Martinsville by and through the Commonwealth's Attorney willfully suppressed and DESTROYED evidence illegally which was favorable to the Petitioner. Evidence was covered up here. The prosecutor had NOT COMPLIED with the three court orders for discovery. Violates not just Virginia law but Virginia attorney rules. Thus evidence was covered up which would have changed the outcome of the supervised release violation case.

11

15. Disobeying any lawful court order generally in either state or federal is either a civil penalty or criminal violation of law. It is illegal to disregard, ignore, not comply with, and disobey a court order served upon the parties of a case.

16. Three court orders were entered in the Petitioner's indecent exposure case asking for Brady materials aka discovery materials (Document #335-11, all pages as specified in Document #335, Page 26 of 29). Those court orders were asked by the Public Defender representing the Petitioner in his state criminal case. This proves that the police "body-camera footage" was requested not just by the two judges but was pushed by the Public Defender. Those court orders were ignored by the state prosecutor and were ignored by Martinsville Police Department. Because of that, the body-camera footage was destroyed on "April 9, 2019 as a matter of regular course because they were not marked as "evidence." (Docket Entry 335, Ex. 1.)". The court and the Public Defender were never provided a copy of this body-camera footage as it was secretly deleted (never marked as evidence) and thus could not have been brought up on appeal unless actual evidence (like the letter of Rob Fincher) proved the existence of the body-camera footage. There was nothing on official record proving its existence until the letter from the Police Chief Rob Fincher in response to Petitioner's FOIA request to the City of Martinsville which was made known in February, 2023. See Document #335, Page 9-13 of 29, Document #335-4, Pages 3 to 9. This Court

12

clearly never would have taken any claims of Petitioner seriously regarding the body-camera footage without evidence to support his claims, even if he had theoretically brought it up on direct appeal without any tangible evidence. Petitioner is labeled as to having "delusional disorder", so the only way the U.S. District Court would accept Petitioner's claim about the existence of this body-camera footage would have been the letter (Docket Entry 335, Ex. 1.) when it was made known in February, 2023. So, this issue could not have been brought up before direct appeal or even during direct appeal. See Document #335, Page 3-7 of 29.

17. The argument of intent being proven here from the record and evidence shows that if that footage had been turned over, it wouldn't have been deleted. It's common sense that for it to be deleted automatically, it was never turned over to the Petitioner's/Defendant's attorney and was never submitted at the Trial on December 21, 2018. That itself proves spoliation when multiple court orders were asking for these specific pieces of evidence but those orders were ignored by the state prosecutor which is contempt of court, and that is illegal. Spoliation by and through defying multiple court orders for discovery materials shows a reckless disregard for following the rules, and spoliation is proven in the context of the prosecutor and law enforcement who rather violate court orders than comply with

13

them over something as simple as video evidence materials by and through the usage of a police body-camera device.

18. Why would the state prosecutor in Petitioner's indecent exposure case risk committing contempt of court three separate times by disobeying the court orders when all attorneys required by law have to respect the court and follow its court orders? Because the evidence more likely than not would have hurt the prosecutions case. When a prosecutor rather violate three court orders for discovery rather than turn over the evidence to be examined and copied, that means the prosecutor has something to hide. Why Not? If the body-camera footage would help the prosecutor convict the defendant then they would have used the body-camera footage with no trouble at all. Any reasonable jury member and trier of fact would accept these statements and arguments.

19. The body-camera footage was recorded at the time Brian was found naked and Brian making (recorded) statements to Officer Jones, and would have shown if Brian were intoxicated. Any behavioral expert and toxicologist could review over the body-camera footage to determine if Petitioner's behavior shows his intoxication when he was naked based on his behavior. Like any toxicologist and behavioral expert can tell if somebody is usually intoxicated including drunk, or on drugs, or suffered from a substance or gas. The body-camera footage is Brady materials and should have been brought up at the revocation hearing on

14

September 12, 2019 but was not brought up because only the evidence which could hurt Brian was introduced into the federal court but anything that could hurt the prosecution was reportedly deleted. That is a one sided court trial and is not a fair trial as guaranteed by the U.S. Constitution. The U.S. Magistrate Judge of this honorable court overlooked at the fact that these court orders were not followed which violates Virginia law, violates Professional Conduct rules for attorneys, and thus takes into question about the elements of the supervised release violation allegations, and questions the credibility of it all. If those court orders were followed, the body camera footage would have been available at the supervised release violation hearing and both parties would have had an opportunity to question the body-camera footage significance to the issues at trial. Especially the issues of intoxication and why the lab tests were deleted from the chart. The spoliation has been proven in the record of the court of the 2255 case because it was never marked as evidence despite the court orders demanding this evidence but such orders were violated which was addressed in the evidence thanks to the granted motion to file additional evidence ( Docket Entry 334 and 335).

20. Letters were sent to Martinsville Police Department asking for the body-camera footage and those letters went unanswered. Documents #335-5 (EXHIBIT 4), #335-7 (EXHIBIT 6), #335-9 (EXHIBIT 8), and #335-10 (EXHIBIT 9) as specified in Document #335, Pages 4, 5, 6, 7, 12, 25, 26. The fact that both letters

15

and court orders were ignored led up to the deletion of the evidence on April 9, 2019. That does prove intentional and deliberate deletion of evidence, spoliation of evidence, and destruction of evidence favorable to the defense/Petitioner. See Documents #335-5, #335-10, #335-9, #335-7, and Document #335, pages 12-17. The Petitioner did exercise due diligence by repeatedly asking for this Brady Material evidence. Sending letters and the Public Defender asking for those court orders if proof that the defendant aka the Petitioner did exercise due diligence for the body-camera footage. Therefore Petitioner's brady rights were violated.

21. The U.S. Magistrate Judge erroneously stated that: "*However, even assuming this demonstrated the suppression of evidence, there is no reason to believe that Petitioner was prejudiced as a result*". That reason was already given under penalty of perjury as the evidence in Document #335 was granted to being accepted by the Court does prove "*that Petitioner was prejudiced as a result*". See Document #335, pages 13, 14, 16, 20, and 21. Petitioner had stated over and over again that he was intoxicated because of the carbon monoxide, which means under the influence like somebody behaving while on anything from drugs to bath salts to substances to gas to alcohol to anything which impairs the person's ability to think straight. Anything which can cause brain impairment is intoxication or takes away a person's culpability for any alleged offense depending on how much the normal brain function is impaired by anything. It can be a drug, it can be gas exposure, it

16

can be substances, it can be bath salts. A person who is involuntarily intoxicated cannot be legally held culpable for charges like indecent exposure because of the lack of intent, Mens Rea. While Virginia does not appear to have established a clean definition of criminal intent, Black's Law Dictionary defines it as "[a]n intent to commit an actus reus without any justification, excuse, or other defense." It also disproves the element of the U.S. Probation Office saying under oath that Petitioner was mentally and psychologically cleared before (Dkt. #157) being arrested for indecent exposure (Dkt. #293). See Document #335, Page 21; Document #323, pages 6-24 of 35.

22. The U.S. Magistrate Judge erred as a matter of law when he said: "*The evidence at Petitioner's revocation hearing was overwhelming, including officer testimony (Docket Entry 215 at 11-36), photographic evidence (Docket Entry 215 at 2), and a statement by Petitioner by way of explanation admitting that he was "naked." (Docket Entry 215 at 72; see also id. at 73 (district court judge explaining that "The exposure in this case was intentional and purposeful. There's really no way to explain otherwise. He's running around naked"*". From what the Magistrate and the U.S. District Court are both claiming, they assume (without understanding Virginia law) as though simply being naked is a criminal act in violation of supervised release conditions. At this rate this Court would erroneously consider taking a shower at a fitness gym or bath at a Japanese Onsen

17

would be considered illegal. That is not true as a matter of Virginia Law, as a

matter of fact, and as a matter of the Supreme Court of Virginia as well as the U.S.

Supreme Court ruling of nudity without more. See Romick v. Commonwealth,

Record No. 1580-12-4, 3 (Va. Ct. App. Nov. 19, 2013) (""Code § 18.2-387

requires proof that defendant intentionally made an obscene display or exposure of

his person, or the private parts thereof, in any public place." Hart v.

Commonwealth, 18 Va. App. 77, 79, 441 S.E.2d 706, 707 (1994)."). See Hart v.

Commonwealth, 18 Va. App. 77, 79, 441 S.E.2d 706, 707 (1994). See Moses v.

Commonwealth, 45 Va. App. 357, 360, 611 S.E.2d 607, 608 (2005).

    23. As a matter of law, the Supreme Court of Virginia stated that obscenity

is required for a criminal conviction of indecent exposure. See Romick v.

Commonwealth, Record No. 1580-12-4, 3-4 (Va. Ct. App. Nov. 19, 2013) ("The

"obscenity" element of Code § 18.2-387 may be satisfied when: (1) the accused

admits to possessing such intent, Moses v. Commonwealth, 45 Va. App. 357, 360,

611 S.E.2d 607, 608 (2005) (en banc); (2) the defendant is visibly aroused,

Morales v. Commonwealth, 31 Va. App. 541, 543, 525 S.E.2d 23, 24 (2000); (3)

the defendant engages in masturbatory behavior, Copeland v. Commonwealth, 31

Va. App. 512, 514, 525 S.E.2d 9, 10 (2000); or (4) in other circumstances when the

totality of the circumstances supports an inference that the accused had as his

dominant purpose a prurient interest in sex, Hart, 18 Va. App. at 80, 441 S.E.2d at

707-08. **The mere exposure of a naked body is not obscene.** See Price v.

Commonwealth, 214 Va. 490, 493, 201 S.E.2d 798, 800 (1974) (finding that "[a]

**portrayal of nudity is not, as a matter of law, a sufficient basis for finding that**

**[it] is obscene**").”). The **mere exposure of a naked body is not obscene**. See

Price v. Commonwealth, 214 Va. 490, 493, 201 S.E.2d 798, 800 (1974).

    24. The U.S. Magistrate was pretty much insinuating obsessively that

Petitioner guilty simply because he was naked, knowingly naked, naked, naked,

naked, not masturbating, but was simply naked. Not sexually naked. That is not

true as a matter of law when simply being naked is not considered obscene, even

when genitals are clearly visible because nudists by legal definition mean being

one without clothes, and nudists are of non-sexual social nudity both indoors and

outdoors. The U.S. Supreme Court also ruled that non-sexual nudity is not illegal.

At best, the judge has portrayed that Petitioner was engaging in acts of what many

call as “NUDISM” activity at night when the risk of encountering any member of

the general public would be minimum. See **Sunshine Book Co. v. Summerfield,**

**Postmaster General, 355 U.S. 372 (1958)**. See Seattle v. Johnson, 58 Wn. App.

64, 58 Wash. App. 64, 791 P.2d 266 (Wash. Ct. App. 1990); Seattle v. Johnson, 58

Wn. App. 64, 69 (Wash. Ct. App. 1990) (“Since the Seattle ordinance contains no

such exemption for nonobscene, expressive nude activity, it is facially overbroad.

The City would nonetheless have us rehabilitate this statute by a narrow

construction, asserting that if conduct is "likely to cause reasonable affront or alarm", it must therefore be nonexpressive and obscene.") The Court is portraying Petitioner non-sexual nudism as indecent exposure or being obscene when the direct appeal already had arguments that non-sexual nudity isn't obscene. Let's say the Court ignores/overlooks the intoxication and allows the cover ups of all evidence, arguably Petitioner may not have had the best place to be naked (nudism) but Virginia law does require that a person in Virginia be obscene according to Price v. Commonwealth, 214 Va. 490, 493, 201 S.E.2d 798, 800 (1974) and other authoritative case law decisions/rulings. The entire element of his criminal charge was about whether Petitioner was obscene or not when he was charged with indecent exposure (Dkt. #293 and Dkt. #157). The U.S. Magistrate had erred and so has the Trial Court by focusing on only the nakedness of Petitioner rather than whether Petitioner was intentionally obscene or not. The reason why the Supreme Court of Virginia makes nudity alone not a crime is because then the indecent exposure statute can be construed to criminally charge somebody at a YMCA for using a public shower because maybe one person is shy so he/she gets offended, and anybody can be charged with a crime for going to a nudist resort or nudist beach or nudist private property. Anybody who poses for artists nude for the purpose of others drawing a "naked body" could face a prosecution and conviction under this court's reasoning by this Magistrate. Simple

20

nudity is not illegal in Virginia due to the implications such as people being targeted by law enforcement for simple things such as naked posing for artists to do artwork which is constructive creativity, bathing at a public bath house, bathing at a hot spring including any Japanese Onsen, and public gym showers. At this rate they can charge anybody for nude art gallery artwork at a public art museum, especially ones which are taxpayer funded. Simple nudity is not a crime at least in Virginia (by its highest court) for the reasons where the indecent exposure statute could be overbroad to charge and convict many people of this crime over things like public showers, public bathhouses, nudist resorts, nudist beaches, private property which hold nudist activities, people posing in colleges and universities for artwork and education where God forbid they draw a naked person as a work of art, and single gender changing rooms because some gay or lesbian person might be offended at same gender nudity. The Court found that Petitioner was naked and thus assumed that Petitioner violated his supervised release conditions. That is not true as that was not even the charge. The criminal charge was in the Commonwealth/State of Virginia that Petitioner: "intentionally made an obscene exposure of his person in a public place."

25. Petitioner objects to the U.S. Magistrate's erroneous claim in Page 9:

> a. Grounds Four and Ten ("Actual Innocence")
> Should Be Denied. Petitioner's fourth ground is styled as
> an assertion of "actual innocence." (Docket Entry 291,

21

Ground Four.) It is not. Petitioner makes a number of allegations, many incorporating his first, second, and third arguments in this § 2255 motion and several arguing that his Brady and Giglio rights were violated because the Martinsville Police Department could have done a number of things to determine whether Petitioner was poisoned by carbon monoxide and that the department allegedly destroyed body camera footage. (Docket Entry 292 at 89-106.) To the extent that this ground is not otherwise barred because the substance of which has previously been raised on appeal, there is no merit to Petitioner's contention.

26. The issues which were proven in Petitioner's reply to the U.S. Attorney (Dkt. #323) was that Petitioner was not medically cleared as stated under penalty of perjury by the U.S. Probation Office. Yes, on the surface Petitioner "makes a number of allegations", but Petitioner did file evidence which proves his claims for his 2255 case. See Document #323, pages 6-24. These important pieces of evidence were overlooked. The U.S. Magistrate erred by downplaying the evidence, arguments, and claims as mere "number of allegations" as if no real proof was ever filed. That is not true and is an error of facts. Real proof was filed.

27. First of all, in all criminal prosecutions the prosecution has to prove every element of the alleged offence charge in a criminal case in order to secure a criminal conviction. United States v. Haymond, 139 S. Ct. 2369, 2376 (2019) ("Together, these pillars of the Bill of Rights ensure that the government must

22

prove to a jury every criminal charge beyond a reasonable doubt, an ancient rule

that has "extend[ed] down centuries." Apprendi v. New Jersey , 530 U.S. 466, 477,

120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)."). In a criminal case, the prosecution

bears the burden of proving that the defendant is guilty beyond all reasonable

doubt. That includes every element of the offense. Every element established in the

criminal charge. One such element was the element of Petitioner being declared

medically and psychologically cleared and the second element being that Petitioner

was declared as to making an obscene display. However the evidence contradicts

those elements.

28. The elements of the criminal charge includes the U.S. Probation Office

stating under penalty of perjury that Petitioner was medically and psychologically

cleared (Dkt. #157). The U.S. Magistrate swayed his contention to talking about

Petitioner's stance on whether the police could have done this or should have done

this or should have done that but did not do so. Petitioner was stating the facts and

arguments with supporting evidence which disproves the elements of guilt.

Petitioner has to be found actually innocent aka factually innocent once a single

element of a crime has been disproved, and once the law demonstrates that a act of

a criminal defendant was not illegal. Simply being naked is not obscene.

Photographs of the defendant naked is the same as artwork in art galleries which

are open to the general public. There are photos of nudists which the U.S. Supreme

23

Court had ruled is not adult content as there is no lewd behavior. See Matter of Excelsior Pict. Corp. v. Regents, 3 N.Y.2d 237, 165 N.Y.S.2d 42, 144 N.E.2d 31 (N.Y. 1957). See Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S. Ct. 365, 2 L. Ed. 2d 352, 1958 U.S. LEXIS 1662.

29. Petitioner was establishing that he was not medically cleared. See Document #323, pages 6-24. There is nothing speculative in proving with specific pieces of evidence that Petitioner was not medically cleared as previously assumed.

30. The U.S. Magistrate Judge is incorrectly and falsely stating what actually happened when he said: "*73 (district court judge explaining that "The exposure in this case was intentional and purposeful. There's really no way to explain otherwise. He's running around naked, taking pictures of himself and posing for the pictures of his genitals, and he's doing it in the open in the public.").)*" Doesn't mention that this was done at night when nobody is out usually walking these trails. Logically if somebody wanted to do this because they may find it arousing, it would be logical to do this behavior in a time and place where somebody would more likely encounter other members of the public to see the display of nudity. Petitioner did not do that. The photos did not show a close up of his genitals and did not focus on his genitals. Nudists have photos taken of themselves and are protected under the First Amendment of the U.S. Constitution

24

as stated by the U.S. Supreme Court. Nudists are not sexual and their whole body is on display like in art galleries (NOTE: art galleries are known to have nude paintings or statues), so that is why the Supreme Court of Virginia had stated that simply being naked is not evidence of being obscene. See Price v. Commonwealth, 214 Va. 490, 493, 201 S.E.2d 798, 800 (1974). See Sunshine Book Co. v. Summerfield, Postmaster General, 355 U.S. 372 (1958). See Attorney General v. A Book Named "Naked Lunch", 351 Mass. 298, 218 N.E.2d 571 (Mass. 1966). See Seattle v. Buchanan, 90 Wn. 2d 584, 601 (Wash. 1978) ("Scenes of nudity in a movie, like pictures of nude persons in a book, must be considered as a part of the whole work. See Miller v. California, 413 U.S. 15, 24 [ 37 L.Ed.2d 419, 93 S.Ct. 2607] (1973); Kois v. Wisconsin, 408 U.S. 229 [ 33 L.Ed.2d 312, 92 S.Ct. 2245] (1972). In this respect such nudity is distinguishable from the kind of public nudity traditionally subject to indecent-exposure laws."). See Seattle v. Buchanan, 90 Wn. 2d 584, 623 (Wash. 1978) ("Erznoznik v. Jacksonville, supra at 210-11. Thus, because an unwilling viewer of nudity in films may avert his eyes, nude performances may not be banished from public parks."). See Seattle v. Buchanan, 90 Wn. 2d 584, 624 (Wash. 1978) ("In that case the court sustained a First Amendment challenge to an ordinance prohibiting the screening of films containing nudity in outdoor theaters on the grounds that protected speech was suppressed. Erznoznik v. Jacksonville, supra at 211 n. 8. It is clear from these cases

that nudity as a part of expressive performances is symbolic speech protected by the First Amendment."). The FACT was Petitioner wasn't taking photos of only his genitals (the only way the Judge's statement is even remotely truthful is if photos were presented at the Trial Court showing CLOSE UPS of the genitalia, there was none of that??? Was there????), the photos shown his whole body, and nudists have similar photos of being photographed naked but is not sexual. Each state has different statutes and laws pertaining to public nudity, obscenity, and lewdness. In Virginia, it does require obscenity to convict somebody of the statute. See Romick v. Commonwealth, Record No. 1580-12-4, (Va. Ct. App. Nov. 19, 2013) ("Kenneth Wayne Romick was convicted of indecent exposure, third offense, in violation of Code §§ 18.2-387 and 18.2-67.5:1, and he argues the evidence was insufficient to prove that he intentionally made a display of his private parts and that such display was obscene. We agree that such display was not obscene and reverse and dismiss the indictment.") Petitioner wasn't flashing his genitals (he didn't just walk around flashing anybody); he was simply naked. He wasn't wearing a long coat and opening it up to flash anybody. The U.S. District Court said Petitioner was naked, then says he is "*posing for the pictures of his genital.*". The photos are of his whole entire body, not focused on the genitals. Am I wrong here? The statements from this U.S. Magistrate seems to contradict each other because Petitioner was naked in photographs, his entire body was

26

shown and not one specific part of his body, but then it twists around to, he is photographic his genitals from the way the Magistrate makes it sound. That is not the truth. This opinion of this Magistrate Judge is twisting the facts of what actually happened. Does Petitioner need to have a lawyer who knows about legal nudist photos to then as a demonstration of Petitioner's conduct in a photo versus what is shown in the legal constitutional photos of nudists and legal nudist artwork in Government museums with nudity (at tax payer's expense) and compare to the naked photos of Petitioner??? This Court is characterizing nudity as obscene when simply being naked is not obscene. See Price v. Commonwealth, 214 Va. 490, 493, 201 S.E.2d 798, 800 (1974). See Copeland v. Commonwealth, 31 Va. App. 512, 514, 525 S.E.2d 9, 10 (2000) and Morales v. Commonwealth, 31 Va. App. 541, 543, 525 S.E.2d 23, 24 (2000). Another issue is that the photos were not public and were not being made public. They were in a private backpack (*whether it was Petitioner's backpack or somebody else's backpack given to Petitioner can be saved for another day, as Petitioner had no medical supplies for his type one brittle diabetes and not even a cell phone (it was a pink camera and not a cell phone) in this backpack*). Whether or not you believe there was a man in a hoodie (Dkt. #153), the photos were not shared with anybody except law enforcement retrieved the photos from this "pink camera". They were the ones who made the nude photos public, they made them public in the state court and the federal court.

27

The transcript does prove that Attorney Renorda Pryor (court appointed defense attorney of Petitioner) asked for the nude photos to be SEALED, because Petitioner wasn't running around sharing these photos BUT IT WAS THE PROSECUTOR sharing these photos and making them public without recommending that they be sealed to protect Petitioner's privacy and dignity. If it weren't for Renorda Pryor requesting that they be sealed, they would have been public for any member of the corrupt corporate Bilderberg Group media to use and publish against Petitioner. The U.S. Attorney didn't object to the nude photos being sealed but they didn't call for them to be sealed. Shows the intent of Petitioner, that he didn't intend any publication of the nude photos. See Dkt. #215, page 18, Lines 10-14 of Transcript; Dkt. #215, page 19, Lines 7-12 of Transcript; Dkt. #215, page 22, Lines 11-14 of Transcript; Dkt. #215, page 29, Lines 17-23 of Transcript. These transcript sections do prove that if it weren't for Renorda Pryor asking for the photos to be sealed, they would have been public then anybody could have asked for a copy of the nude photos of Brian D. Hill, the Petitioner, in order to humiliate him in using the U.S. District Court as a humiliation ritual, as a political struggle session, like as a denunciation rally. Regardless of the guy in the hoodie or man in the hoodie, the photos were not public photos but private photos because the public didn't know those photos were taken. They were private photos secured in a pink camera (not cell phone) in a backpack. The prosecutor and police

28

made those photos "public" and they would have been made public had Renorda Pryor not asked for them to be sealed. The U.S. Attorney said: "*And I have no objection __if counsel moves to seal this one as well__, Your Honor.*" If Renorda Pryor had not asked that they be sealed then this Court would become a place, a venue to share the nude photos of Petitioner with anybody of the public who wanted them and paid to request the nude photos from the Clerk of the Court. If Petitioner was so terrible and awful for being nude in photographs (*nudists smile in photographs brought by naturist organizations like the American Association for Nude Recreation (AANR) for example or PureNudism or H&E naturist magazine, or any other nudist organization that's been around for a long time*) then the prosecutor was making those photos public or may even be giving the public the curiosity to want to look at Petitioner's nude photos if anybody is curious enough to want to view them, making them almost public. If the photos were not sealed, then this Court could have arguably become like a de-facto nude photo publication storage and distribution center where anybody can ask the Clerk of the Court for the nude photos (Exhibits) of Brian Hill. When you look at the photos, there was nobody around in the photos when these photos were taken in the middle of the night. Doesn't seem like the intent of somebody trying to make an obscene display to members of the public when the members of the public aren't even evident in the pictures. That is why it is important to verify that Petitioner wasn't intoxicated

29

made those photos "public" and they would have been made public had Renorda Pryor not asked for them to be sealed. The U.S. Attorney said: "*And I have no objection **if counsel moves to seal this one as well**, Your Honor.*" If Renorda Pryor had not asked that they be sealed then this Court would become a place, a venue to share the nude photos of Petitioner with anybody of the public who wanted them and paid to request the nude photos from the Clerk of the Court. If Petitioner was so terrible and awful for being nude in photographs (*nudists smile in photographs brought by naturist organizations like the American Association for Nude Recreation (AANR) for example or PureNudism or H&E naturist magazine, or any other nudist organization that's been around for a long time*) then the prosecutor was making those photos public or may even be giving the public the curiosity to want to look at Petitioner's nude photos if anybody is curious enough to want to view them, making them almost public. If the photos were not sealed, then this Court could have arguably become like a de-facto nude photo publication storage and distribution center where anybody can ask the Clerk of the Court for the nude photos (Exhibits) of Brian Hill. When you look at the photos, there was nobody around in the photos when these photos were taken in the middle of the night. Doesn't seem like the intent of somebody trying to make an obscene display to members of the public when the members of the public aren't even evident in the pictures. That is why it is important to verify that Petitioner wasn't intoxicated

29

with anything during the time of the nude photos and after the time of the nude photos with a simple and easy lab tests by the nursing staff before declaring him medically cleared when that wasn't the case. He was not medically cleared. Petitioner Brian was out of it that night, not being sexual and not sharing any private photos with anyone else. Even though he did claim he was threatened to place the SD card at some place for this guy in the hoodie, that action had never happened because of Petitioner being seen by somebody in a moving vehicle who saw a naked man running. These are walking trials used by people in the daytime, and nobody rational is expecting to make an obscene display to members of the public if theoretically going to use these trails at night for that purpose. Okay, somebody in a moving vehicle sees a naked man running but not masturbating and not standing there showing his genitals. None of that happened because it was a naked man running. Police admitted in court the only ones out there were the police and someone made a call that someone was running in the nude like this person was scared, not on purpose making a display of his body. Nobody ever claimed to be the victim and nobody pressed charges except for one officer at Martinsville Police Department who misunderstood Petitioner's intent and didn't even know of his chronic health issues well documented before this Court throughout this entire criminal case from start to finish. This was a medical emergency, not someone being sexual in any way, shape or form. The police

30

officer's testimony before this Court is quite clear, someone was driving on the road and saw a naked man running so he or she called the police saying that person was seeing someone running in the nude at night, not making a public display (not standing, not masturbating), running as though scared or running from someone. That part of the policeman's testimony was also ignored by the Magistrate. It is clear as day that the elements of the obscenity element were not met. Petitioner wasn't verified as to not being on any drugs at all. That is important as a matter of fact and as a matter of law when medically clearing somebody before releasing them to law enforcement to be charged, to make sure no drugs and no alcohol is in the body of the suspect at the time. That did not happen. It is clear as day on the record that Petitioner was under the influence of carbon monoxide (Dkt. #215, page 45, Lines 23-25 of Transcript; Dkt. #215, page 46, Lines 1-25 of Transcript; Dkt. #215, page 47, Lines 1-9 of Transcript) and was a type 1 diabetic without any emergency medical supplies including a phone. None of this makes any sense if arguably Petitioner intended to make an obscene display miles away from home in the nude. It is clear as day that the Court made a wrong decision to convict Petitioner as the facts reflect his innocence. He is innocent because the prosecution did not prove he was medically cleared because they don't even know what caused the multiple tachycardia readings (*somebody on drugs or carbon monoxide or some other serious medical issue has tachycardia*) and never completed the lab

31

tests. They never said Petitioner was A-Okay because he was not intoxicated in any way, nothing was done to prove that. They didn't prove Petitioner wasn't intoxicated. Not medically cleared. Every element of a crime allegation must be proven with clear and convincing evidence. It was not.

31. The Magistrate mischaracterized the facts with these contradictions. Making something sexual or obscene when clearly it was not. The officer did admit that Petitioner wasn't even obscene (Dkt. #216-1, #216-2, #216-3, and #216-4) but the Court Reporter covered that up in the transcript (Dkt. #215). Maybe this Court needs to ask the witness Robert Jones again (Dkt. #325, #325-1) the very question which Attorney Renorda Pryor asked him on September 12, 2019. That question was: "Was the Defendant being obscene when he was found naked? Do you think he was being obscene?". See Documents #216-1, #216-2, #216-3, and #216-4, all pages of each one. The statements were removed and covered up from the Transcript to paint this false picture of Petitioner. Plenty of witnesses agreed that the transcript doesn't include everything. Petitioner offered even more witnesses than those four affidavits/declarations (Dkt. #216) but the judge rejected it (Dkt. #223). However, the witness can be asked that question again in open court and hopefully Officer Jones's will not be covered up from the transcript a second time. Hopefully.

32

32. Petitioner objects to all of the U.S. Magistrate's opinions and findings and statements in pages 6 through 18:

33. The reason why Petitioner is trying to not highlight every single false statement throughout the Magistrate's opinions and findings is because this document will be hundreds upon hundreds of pages addressing the gaslighting, false information, and erroneous claims through pages 6 through 18 of the ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE (Dkt. #336). For the sake of brevity, Instead Petitioner asserts in this major objection that the ORDER AND RECOMMENDATION is not credible because it overlooks relevant evidence, overlooks material evidence, overlooks material and relevant witnesses (Dkt. #325, #325-1) including asking the Government's own witness Robert Jones about whether Petitioner was obscene or not, and sounds as if the prosecution may have drafted the document and just handed it over to the U.S. Magistrate Judge in Petitioner's humble opinion. Hope that is not the case here. The Magistrate's opinions and findings sounded one sided when it should be based on the facts, witnesses, and arguments from both parties in a case which is a fair trial, a fair submission of the facts. The Petitioner was reading to see if he could find any mention of the Exhibits in support of the 2255 Motion (Dkt. 291) but the Magistrate did not mention about the evidence contents of any of the Exhibits in Dkt. #293 in his order and recommendation.

33

34. Here is a list of evidence that this U.S. Magistrate Judge had overlooked, ignored, and not taken into consideration throughout the "ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE"

1. Proposed witness list were ignored, overlooked, and disregarded by the Magistrate Judge even though those witnesses have very compelling information as to the innocence of Brian Hill. See Dkt. #325, "*this proposed witness list is of material witnesses, relevant witnesses, and necessary witnesses for any evidentiary hearing for the foregoing 2255 Motion case to prove the actual innocence aka factual innocence of Brian David Hill. These witnesses are necessary for proving actual innocence, are necessary for proving the facts to disprove the prosecution's elements of the charged crime, and are necessary for justice to be done instead of a miscarriage of justice against innocent man Brian David Hill.*" Also, one of the witnesses Robert Jones could be asked the same question again of whether Brian D. Hill was obscene or not, as what was asked before at the revocation hearing but was covered up in the transcript. It would be good to question that witness twice on the very question and answer which was covered up. That way it cannot be covered up twice by a court reporter or it would look

34

suspicious to the American people who investigate this case and watch this case. Again, see Documents #216-1, #216-2, #216-3, and #216-4.

2. Proof that Brian David Hill was not medically and psychologically cleared: Document #325, pages 6 through 25. First of all, let's look at See page 8 of Dkt. #181-11, page 8, cited in pages 7 and 8 in Dkt. #325. The lab tests were ordered and then were deleted from the chart. When you read the entire medical record in Dkt. #181-11, as well as the transcript, you find out that police took him to the hospital (Dkt. #215, page 15: "*A He was complaining of knee pain; at which point, we transported him to the hospital to get him checked out to make sure he was okay.*") The police were present, they would know if blood was drawn as they admitted to being there. In fact, the police officer admitted under penalty of perjury that he thought lab work was done when Petitioner was declared medically and psychologically cleared. See Document #293, all pages 1-4 and U.S. Probation charging Document #157. This is a factual element of the alleged offense allegation at issue in the 2255 Motion case. That factual element was disproved by facts which counter that narrative of "Mr. Hill was medically and

35

psychologically cleared." That is not true based on the facts in the 2255 Motion case. First of all, pages 7 and 8 in Dkt. #325 argue things in the true and correct medical record proving that lab tests were deleted from the chart after being ordered. This is not a conspiracy theory, and this is not speculation. The medical record proves that lab tests were not proven to have been conducted. The body wasn't examined in case the Petitioner was intoxicated. Why order lab tests and then just decide not to do the lab tests? Cannot be considered medically cleared since not everything was examined at the hospital when it is easy to obtain a blood sample. In fact the officer Robert Jones who testified at Petitioner's supervised release violation hearing admitted he didn't even know what was in Petitioner's medical records, never subpoenaed for his medical record (Dkt. #215, page 34, Lines 23-25 of Transcript), never asked the doctor about his lab tests and medical issues (Dkt. #215, page 35, Lines 1-9 of Transcript), after assuming that lab work was done and everything (Dkt. #215, page 35, Lines 10-11 of Transcript). This is clear fraud on an affidavit, clear fraud under penalty of perjury because the officer assumed the lab work was done and Petitioner's body was examined before being medically

36

cleared. That is not true based on the evidence including the medical records and financial records from both Virginia Medicaid and the billing records from Sovah, the "local hospital". See Dkt. #324: "SEALED Attachments to Main Document to 323 Reply to Response. (Attachments: # 1 Exhibit 4, # 2 Exhibit 9) (Bowers, Alexis) (Entered: 07/28/2022)". **EXHIBIT 2** is the billing records from the local hospital, SEALED by the clerk. A false statement by Officer Robert Jones who is the U.S. Government's/Respondent's witness (Document #186) in the Trial Court at issue in the 2255 Motion case. If anybody was making a conspiracy theory or speculation without the facts, it was Officer Robert Jones assuming lab work was done when it wasn't. Assuming they did the tests when they hardly did anything when you read the entire medical record (Dkt. #181-11, all pages). Attorney Renorda Pryor asked if the Police Officer who arrested Petitioner for indecent exposure: "Q *Was there any tests dealing with his blood alcohol content or anything of that nature*?". The U.S. Government's witness Robert Jones said under oath that: "**A I don't know if they did. Like I said, I did not get his records. They normally do, but I do not have that**." (Dkt. #215, page 35,

37

Lines 12-15 of Transcript) This is not a conspiracy theory or speculation. The same officer along with the U.S. Probation Office who said: "Following an examination at a local hospital, Mr. Hill was medically and psychologically cleared" then turned around and said "I don't know if they did. **Like I said, I did not get his records**…". Then the medical records show hardly any examinations. No lab tests, no CT scans or CAT scans or any scans. No checking diabetic blood sugar. Resting blood pulse was abnormal three times and the doctor never asked to find out the cause. Never asked to verify intoxication despite the tachycardia. It is clear fraud to claim that Brian Hill was medically cleared after an "examination" when the officer who said that which reflected in the supervised release charge in Federal Court and in the arresting affidavit charge in State Court then said: "I don't know if they did". Officer said: "they do lab work and other stuff." (Dkt. #215, page 35, Lines 10 of Transcript) No lab work was done because it was covered up and deleted from the chart (Dkt. #181-11, page 8, cited in pages 7 and 8 in Dkt. #325). It doesn't matter about what the Martinsville Police Department could have done or should have done, the officer lied under oath about the medical clearing of

38

Petitioner. Petitioner accurately stated in reply in the 2255 Motion case that he was not medically and psychologically cleared as previously assumed. See Document #325, pages 6 through 25. He did prove actual innocence and fraud on the court as stated in Document 292, pages 2 and 3, #292 at pages 88-110 (MEMORANDUM by BRIAN DAVID HILL re 291 MOTION to Vacate, Set Aside or Correct Sentence (pursuant to 28 U.S.C. 2255) filed by BRIAN DAVID HILL. (1:22CV74)).

3. Petitioner had correctly stated in additional evidence (GRANTED by U.S. Magistrate Judge in Dkt. #336, Page 19 of 19) in support of his 2255 Motion Case (Dkt. #291) that the body-camera footage was covered up (Document #335, Page 2 through 27) and was spoliated illegally because of the court orders (legally ordered by the court) being disobeyed and not complied with (See Document #335-11, all pages as specified in Document #335, Page 26 of 29). Petitioner correctly argued and proven that the law was not followed by the Martinsville Police Department, Commonwealth's Attorney Office for the City of Martinsville which is the state prosecutor of Petitioner's indecent exposure case, and the U.S. Attorney did nothing to prevent this evidence from being spoliated

39

illegally. This brady evidence wasn't just deleted and destroyed, it was deleted after court orders were issued and the law (Va. Code § 18.2-456) requires all court orders and decrees to be followed. Petitioner did explain how and why the U.S. Government and state prosecutor did allow evidence to be destroyed and this evidence would have changed the outcome of the supervised release violation as explained in Document #335, Page 15-17. The U.S. Magistrate Judge erred and overlooked the fact that the Petitioner has a right to push for an adverse inference instruction as an inherit sanction when evidence is proven to have been illegally destroyed. Petitioner has met his burden of proof. See McCargo v. Texas Roadhouse, Inc., Civil Action No. 09-cv-02889-WYD-KMT, 5 (D. Colo. May. 2, 2011) (" Sanctions for spoliation of evidence are appropriate when (1) a party had a duty to preserve the evidence because it knew, or should have known, that litigation was imminent, and (2) the other party was prejudiced by the destruction of the evidence. Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1149 (10th Cir. 2009). The burden is on the moving party to prove, by a preponderance of the evidence, that **the opposing party failed to preserve evidence or destroyed it**. See In re Krause, 367

B.R. 740, 764 (D. Kan. 2007).”). See also Gates Rubber Co. v.

Bando Chemical Industries, Ltd., 167 F.R.D. 90, 104 (D. Colo.

1996) (“The imposition of dispositive sanctions " should be

confined to the ‘ flagrant case’ in which it is demonstrated that the

failure to produce ‘ materially affect(s) the substantial rights of the

adverse party’ and is ‘ prejudicial to the presentation of his case.’ "

**Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 503 (4th**

**Cir.1977)**, cert. denied, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d

768 (1978).”). The U.S. Magistrate contends that: “*In this case,*

*Petitioner cannot carry his burden of establishing a constitutional*

*violation. There is no reason to believe that the Government or law*

*enforcement or anyone else suppressed materially favorable*

*evidence.*” (Dkt. #336, pg. 19) The three court orders which can be

verified and authenticated (See Document #335-11, all pages as

specified in Document #335, Page 26 of 29) proven that the

prosecutor had a duty under the law and order of the court to

preserve the body-camera footage and give that footage over to the

Petitioner (if Pro Se) or his attorney. The state prosecutor was

obligated by law and court order but refused to preserve that

evidence. The Petitioner had proven “that the Government or law

enforcement or anyone else suppressed materially favorable evidence." (Dkt. #336, pg. 19) The U.S. Magistrate Judge erred and made a false statement on that remark.

4. The U.S. Magistrate ignored the proposed witness list and witness suggestions (Dkt. #325, #325-1) for any evidentiary hearing to determine whether or not Petitioner was obscene (Dkt. #216-1, #216-2, #216-3, and #216-4) when obscenity is the very critical element of whether Petitioner is innocent or guilty. The next critical element of guilt or innocence is whether Petitioner was truly medically cleared or not after being thoroughly examined including a simple blood work (*officer said they normally do but he don't have that*). By questioning both Dr. Brant Hinchman and Officer Jones, questions can be asked of them about why Petitioner was not fully and completely lab tested when anybody found outside in the middle of the night naked usually would be drug tested or alcohol tested or both just to be sure the person wasn't intoxicated. For the element of guilt to be satisfied, Petitioner would need to be proven to have been medically cleared to the extent where he would have to be proven and verified to not be intoxicated. If they cannot prove and verify that Petitioner was not

42

intoxicated when he was found naked, then they do not know for a fact of Petitioner being medically cleared. Petitioner should only be convicted of a supervised release violation after proving that Petitioner was of sound mind, had no intoxication in his body, and would have to prove that Petitioner was medically cleared since that is an issue (an element of the accused crime) in both his state criminal case (Exhibit #1, Dkt. #293) and in his supervised release violation charging document (Charging Document, Dkt. #157). The charging document said: "*Following an examination at a local hospital, Mr. Hill was medically and psychologically cleared.*" That was not truthful, that was not factual, and that statement lacks credibility despite being under oath. His lab work was never examined, his blood work was never examined, and his diabetic blood sugar was never tested, his diabetes was never examined. All proven within the medical record of September 21, 2018. See Dkt. #181-11 as reference in timely filed REPLY in Dkt. #323, pages 7, 11, 12, 13, 14, and 25. Petitioner was not given a full examination, and that is not speculation. It is not a conspiracy theory. IT IS IN THE MEDICAL RECORD. Officer Robert Jones and Dr. Brant Hinchman should appear before an evidentiary hearing to ask the

43

Doctor why he never fully examined Petitioner before discharging Petitioner to "JAIL/POLICE". Petitioner has to not be intoxicated to be guilty of "intentionally" committing an unlawful act of obscenity (making an obscene display) and indecent exposure. Petitioner has to have intent and intent was not proven until Petitioner has been proven to have been free of drugs, gases, substances, chemicals, or anything else that can cause Petitioner to become intoxicated where he may not understand and appreciate the consequences of his actions as his actions may not even be of his own free will. The witnesses need to be questioned over the very evidence Petitioner had filed in his 2255 case. The Petitioner should be allowed to question in open-court the very fact of Petitioner not being completely examined by the medical staff at the hospital under the direction of Dr. Brant Hinchman. Petitioner was not medically cleared, and the medical record proven it. Petitioner is in fact innocent and the questioning of the witnesses is necessary and material for the determination of actual innocence, possible perjury by Officer Robert Jones, and a determination of fraud on the court. The magistrate was wrong to ignore the

witnesses and ignore the proposed witness list (Dkt. #325, #325-1)

for the 2255 Motion case.

35. Petitioner objects to the U.S. Magistrate's opinion in page 18:

> "The Court has considered all of Petitioner's
> submissions including his supplement. None of his
> grounds for relief have any merit."

36. How on earth does none it not shows any merit???

37. The evidence had proven that court orders existed and ordered evidence
to be turned over to the Petitioner and/or his attorney (See Document #335-11, all
pages as specified in Document #335, Page 26 of 29), evidence was deleted
because it was never marked as evidence in non-compliance with those court
orders from a constitutional court of law (Document #335-2, pages 1-5, as
specified in Document #335, Pages 4, 7, 8, 10, 11, 22). Letters were sent asking for
the body-camera footage and one was verified by return receipt at Martinsville
Police Department who had the body-camera footage. See Documents #335-5
(EXHIBIT 4), #335-7 (EXHIBIT 6), #335-9 (EXHIBIT 8), and #335-10
(EXHIBIT 9) as specified in Document #335, Pages 4, 5, 6, 7, 12, 25, 26. Yet the
body-camera footage was still deleted despite all the letters mailed and despite the
three court orders. This does prove intentional or willful spoliation of evidence

which contradicts the opinion of the U.S. Magistrate. They do have merit because evidence is evidence.

38. Petitioner declared the evidence under penalty of perjury to being true and correct. Petitioner filed evidence which can be verified, confirmed, and authenticated if the U.S. Government wishes it so.

39. It is clear as day that the U.S. Magistrate Judge overlooked all evidence which is favorable to the grounds of ACTUAL INNOCENCE and FRAUD UPON THE COURT. See Ground Four: Actual Innocence, and Ground Five: FRAUD ON THE COURT.

40. These are not conspiracy theories and not mere allegations. They are attached to EXHIBITS of evidence. As explained above, Petitioner had proven that he was not medically and psychologically cleared. The U.S. Government's own witness Officer Jones said that he didn't know what his lab tests were (Dkt. #215, page 35, Lines 12-15 of Transcript) when they were deleted from the chart but then Officer Jones said they do lab work and other stuff (Dkt. #215, page 35, Lines 10-11 of Transcript). The officer said he didn't even know Petitioner was diabetic (Dkt. #215, page 34, Lines 15-18 of Transcript), which that is a serious medical condition and Dr. Brant Hinchman didn't think to warn Officer Jones about Petitioner Brian's serious type one brittle diabetes where Petitioner Brian could have died in a police car by officers not knowing Petitioner Brian Hill was

46

diabetic. The officer didn't know anything except being told Petitioner had autism

(Dkt. #215, page 34, Lines 7-9 of Transcript). The officer claiming Petitioner was

"medically and psychologically cleared" (Dkt. #215, page 34, Lines 21-22 of

Transcript).

42. Does the U.S. District Court consider medically cleared to not being lab

tested and confirmed to not being intoxicated when found naked at night on a

"walking trail" (Dkt. #215, page 13, Lines 16-17 of Transcript)???

43. Does the U.S. District Court consider intoxication to being a defense to

the charge of indecent exposure at issue in this supervised release violation charge

and conviction???

44. Does the U.S. District Court consider that not verifying whether or not

Petitioner was drugged or intoxicated because the lab tests were DELETED FROM

THE CHART to being sufficient as an element and fact of being medically

cleared???

45. Does the U.S. District Court consider if Petitioner was able to

demonstrate intoxication at the time of the accused/alleged offense if the (deleted)

body-camera footage had been used at the Trial on September 12, 2019 to being

sufficient as an element and fact of being medically cleared and of whether or not

Petitioner was obscene???

46. Petitioner objects to the U.S. Magistrate's opinion in page 18:

"II. Petitioner's Remaining Grounds Should Be
Denied or Dismissed. a. Grounds Four and Ten ("Actual
Innocence") Should Be Denied."

47. Petitioner has demonstrated in both the reply brief (Docket Entry 323)
with attached exhibits and supplement with attached exhibits (Docket Entry 335)
that he does have evidence, elements, and merit for actual innocence. Petitioner has
demonstrated in Dkt. 291, Dkt. #292, Dkt. #293 and all exhibits that he does have
evidence, elements, and merit for proving/showing actual innocence.

48. Petitioner objects to the U.S. Magistrate's opinions in page 18:

"b. Ground Five Alleging Fraud on the Court
Should Be Denied."

49. Petitioner has demonstrated in both the reply brief (Docket Entry 323)
with attached exhibits and supplement with attached exhibits (Docket Entry 335)
that he does have evidence, elements, and merit for proving/showing that the
prosecution/Respondent committed fraud on the court. Petitioner has demonstrated
in Dkt. 291, Dkt. #292, Dkt. #293 and all exhibits that he does have evidence,
elements, and merit for proving/showing that the prosecution/Respondent
committed fraud on the court.

50. Petitioner objects to the U.S. Magistrate's opinions in page 10:

48

"Also, Brady is not violated if the undisclosed information could have been discovered through due diligence by the defendant. Barnes v. Thompson, 58 F.3d 971, 976 n. 4 (4th Cir.), cert. denied, 516 U.S. 972 (1995)."

51. Two different Courts (General District Court, Circuit Court) specifically asked for the body-camera footage as ASKED BY THE ATTORNEY OF THE DEFENDANT Scott Albrecht of the Public Defender Office on record as evidence in the record of the 2255 Motion case. See Document #335-11, all pages as specified in Document #335, Page 26 of 29. It was already discovered through due diligence because the Court specifically asked for it as asked by the Public Defender. Brady was violated. The U.S. Magistrate is wrong on this contention, it is err, it is not a truthful statement, it is erroneous, it is not a factual statement by the Magistrate. The two Courts of both General District Court and Circuit Court asked for it, the defense attorney asked for it, letters asked for it, and it was ignored. Brady was violated. Again, see the letters and evidence in Documents #335-5 (EXHIBIT 4), #335-7 (EXHIBIT 6), #335-9 (EXHIBIT 8), and #335-10 (EXHIBIT 9) as specified in Document #335, Pages 4, 5, 6, 7, 12, 25, 26.

## PETITIONER'S PRESERVATION OF ISSUES

49

52. Petitioner preserves the following issues for both appeal and in objecting to the ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE (Dkt. #336):

a. The Magistrate did not take all evidence and arguments into consideration in his recommendation. The evidence proves actual innocence and fraud on the court/fraud upon the court. The witness Robert Jones said he never discussed Brian's medical history, assumed lab tests were done but were deleted from the chart as the Officer said he doesn't know because he never got his medical records, didn't know Petitioner was even diabetic with insulin shots and low blood sugars which can cause the body to have seizures and death, didn't know Petitioner had OCD, didn't know anything except Petitioner having autism because he was told that by Petitioner. The Magistrate did not take into consideration that evidence contradicts the elements by the federal prosecution in the supervised release violation hearing on September 12, 2019. The Magistrate incorrectly stated that Petitioner had not met the burden of proving that the "*Government or law enforcement or anyone else suppressed materially favorable evidence*". Petitioner had proven that there were letters mailed to Martinsville Police Department and three court orders asking for the body-camera footage. See letters in Documents #335-5 (EXHIBIT 4), #335-7 (EXHIBIT 6), #335-9 (EXHIBIT 8), and #335-10 (EXHIBIT 9) as specified in Document #335, Pages 4, 5, 6, 7, 12, 25, 26. Those

50

orders were ignored, disobeyed, and was not complied with by the prosecution

which is criminal contempt of court under Virginia Code § 18.2-456(A.)(5.). That

is illegal. Because the law was violated three times, that it is like giving a person a

warning who was driving a vehicle who was caught speeding on a highway and

then within days or weeks the person is caught speeding again down a highway

and then was caught speeding for a third time. Three court orders from three

separate times being disobeyed does indicate that the body-camera footage was

illegally deleted/destroyed which is spoliation, and it does prejudice the

defense/Petitioner. Petitioner did demonstrate prejudice in the supplement with

attached exhibits (Docket Entry 335, Dkt. 335 pg. 15-17, "I like to ASSERT an

adverse inference..."). A punitive "adverse-inference instruction" is a sanction that

would allow the judge to instruct the jury to infer facts about the non-producing

party's missing evidence in a way that would be adverse to that party's case. See

Gates Rubber Co. v. Bando Chemical Industries, Ltd., 167 F.R.D. 90, 104 (D.

Colo. 1996) ("The imposition of dispositive sanctions " should be confined to the '

flagrant case' in which it is demonstrated that the failure to produce ' materially

affect(s) the substantial rights of the adverse party' and is ' prejudicial to the

presentation of his case.' " Wilson v. Volkswagen of America, Inc., 561 F.2d 494,

503 (4th Cir.1977), cert. denied, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768

(1978)."). **A court generally relies on its inherent authority to sanction parties**

**in cases of discovery misconduct**. Sanctions for discovery violations follow in descending order of severity from: 1) dismissal, striking pleadings or entry of default judgment; to 2) **adverse inference instruction**; 3) evidentiary determinations and preclusion; and/or 4) fines, attorney's fees and costs. The Petitioner did prove unlawful destruction of Brady evidence materials warranting the adverse inference instruction in the 2255 Motion case warranting that merit does exist, prejudice has been demonstrated, and the burden of proof has been met by Petitioner as to both Actual Innocence and Fraud on the court in Grounds FIVE, FOUR, and TEN. The Magistrate should correct his erroneous recommendation to find that Petitioner has suffered prejudice of not being able to demonstrate intoxication which would ultimately affect the supervised release violation trial. A criminal defendant cannot be revoked of his supervised release when evidence had shown that Petitioner was intoxicated at the time, he was found naked in a public place at night, because being involuntarily intoxicated negates obscenity, negates intent, and fully demonstrates that no law was broken by Petitioner on September 21, 2018. The body-camera footage would have demonstrated that Petitioner was not medically cleared to the standards which are set by law. Petitioner was not cleared at all but was prematurely released from the hospital to Jail/Police.

b. The U.S. Magistrate erred and made incorrect, untruthful, false statements and/or made a blatant disregard for the truth in various areas of the U.S. Magistrate's recommendations. Read paragraphs 1-51 (pages 2-49 of Objections).

c. The U.S. Magistrate ignored the proposed witness list and witness suggestions (Dkt. #325, #325-1) for any evidentiary hearing to determine whether or not Petitioner was obscene (Dkt. #216-1, #216-2, #216-3, and #216-4) when obscenity is the very critical element of whether Petitioner is innocent or guilty. The next critical element of guilt or innocence is whether Petitioner was truly medically cleared or not after being thoroughly examined including a simple blood work (officer said they normally do but he don't have that). By questioning both Dr. Brant Hinchman and Officer Jones, questions can be asked of them about why Petitioner was not fully and completely lab tested when anybody found outside in the middle of the night naked usually would be drug tested or alcohol tested or both just to be sure the person wasn't intoxicated. For the element of guilt to be satisfied, Petitioner would need to be proven to have been medically cleared to the extent where he would have to be proven and verified to not be intoxicated. If they cannot prove and verify that Petitioner was not intoxicated when he was found naked, then they do not know for a fact of Petitioner being medically cleared. Petitioner should only be convicted of a supervised release violation after proving that Petitioner was of sound mind, had no intoxication in his body, and would have

53

to prove that Petitioner was medically cleared since that is an issue (an element of the accused crime) in both his state criminal case (Exhibit #1, Dkt. #293) and in his supervised release violation charging document (Charging Document, Dkt. #157). The charging document said: "Following an examination at a local hospital, Mr. Hill was medically and psychologically cleared." That was not truthful, that was not factual, and that statement lacks credibility despite being under oath. His lab work was never examined, his blood work was never examined, and his diabetic blood sugar was never tested, his diabetes was never examined. All proven within the medical record of September 21, 2018. See Dkt. #181-11 as reference in timely filed REPLY in Dkt. #323, pages 7, 11, 12, 13, 14, and 25. Petitioner was not given a full examination, and that is not speculation. It is not a conspiracy theory. IT IS IN THE MEDICAL RECORD. Officer Robert Jones and Dr. Brant Hinchman should appear before an evidentiary hearing to ask the Doctor why he never fully examined Petitioner before discharging Petitioner to "JAIL/POLICE". Petitioner has to not be intoxicated to be guilty of "intentionally" committing an unlawful act of obscenity (making an obscene display) and indecent exposure. Petitioner has to have intent and intent was not proven until Petitioner has been proven to have been free of drugs, gases, substances, chemicals, or anything else that can cause Petitioner to become intoxicated where he may not understand and appreciate the consequences of his actions as his actions may not even be of his

54

own free will. The witnesses need to be questioned over the very evidence Petitioner had filed in his 2255 case. The Petitioner should be allowed to question in open-court the very fact of Petitioner not being completely examined by the medical staff at the hospital under the direction of Dr. Brant Hinchman. Petitioner was not medically cleared, and the medical record proven it. Petitioner is in fact innocent and the questioning of the witnesses is necessary and material for the determination of actual innocence, possible perjury by Officer Robert Jones, and a determination of fraud on the court. The magistrate was wrong to ignore the witnesses and ignore the proposed witness list (Dkt. #325, #325-1) for the 2255 Motion case.

d. An evidentiary hearing is warranted over the issues brought up throughout this objections document in paragraphs 1-51 (pages 2-49 of Objections). The issues such as the Petitioner being actually innocent and that fraud on the court was proven as Petitioner was not medically cleared. The U.S. Probation Office said: "*Following an examination at a local hospital, Mr. Hill was medically and psychologically cleared*" but that has been proven to have not been true. It doesn't matter about the U.S. Magistrate contending that Petitioner says what the police could have done or should have done. The fact is the police and the hospital never conducted the examination of Petitioner's intoxication status (whether Petitioner was clear of any gas, substance, drug, alcohol), never conducted the examination

55

of Petitioner's diabetic blood glucose/blood sugar, and never conducted the examination of why Petitioner's resting blood pulse was over 100 which is abnormal (the hospital ignored that issue for another day, that day never came) (Dkt. 181-11, Page 6 of 8). Abnormal resting blood pulse is over 100 which is known as the medical term of "TACHYCARDIA". Tachycardia. Tachycardia has been found in patients who were intoxicated with anything from drugs, to substances, to gasses. Petitioner will cite a case where a hospital refuses to discharge a patient while exhibiting persistent tachycardia like what Petitioner suffered on September 21, 2018. Petitioner again proves that he was not medically cleared. See D'Amato v. Costine, MICV 15-5800-H, (Mass. Super. Aug. 23, 2016) ("The MGH records indicate that **D'Amato was " unable to be discharged due to persistent tachycardia** thought to be **related to ETOH w/d [alcohol withdrawal]**" and was admitted to the hospital for treatment of alcohol withdrawal.") Patient's abnormal readings were never examined at the "local hospital". It is a lie what the U.S. Probation Office had said in its original charging document (Dkt. #157). It is clear that the witnesses Robert Jones and the U.S. Probation Office who charged Petitioner had lacked credibility in its charge in Dkt. #157. When a witness such as Robert Jones and the U.S. Probation Office makes statements under oath which are contradicted by physical evidence and/or tangible evidence such as medical records and any other medical or financial records, it is

56

clear that not everything was truthful in that charging document on Dkt. #157. Not everything was truthful, and therefore Petitioner has proven enough that there is some form or fashion of fraud on the court and actual innocence. Otherwise, the Magistrate is gaslighting this Court into believing and assuming that Petitioner has nothing to offer except being guilty. That makes no sense. Evidence is evidence and evidence should not be ignored.

    e. Actual Innocence has been proven. Fraud on the court has been proven.

    f. The U.S. Attorney Office who represents Respondent had 21 days to object to the facts, evidence, and arguments within Petitioner's "MOTION for Leave to File Additional Evidence. by BRIAN DAVID HILL. Re 291 MOTION to Vacate, Set Aside or Correct Sentence (pursuant to 28 U.S.C. 2255) by BRIAN DAVID HILL." Dkt. #334 and Dkt. #335 evidence of: "SUPPLEMENT by BRIAN DAVID HILL re 291 MOTION to Vacate, Set Aside or Correct Sentence (pursuant to 28 U.S.C. 2255). Civil Case 1:22CV74. (Attachments: # 1 Exhibit List, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Envelope)(Taylor, Abby) (Entered: 02/22/2023)". See Local Rule 7.3 MOTION PRACTICE of the Local Civil Rules of this Court. Since that motion was granted by the U.S. Magistrate, all evidence is of the record and should be taken into consideration before final disposition of Petitioner's 2255 Motion case. The U.S.

Attorney who represents Respondent: United States of America did not object to the additional evidence because of it being newly discovered due to corruption of the former Chief of Police G. E. Eddie Cassady in the City of Martinsville along with corrupt former city lawyer Eric Monday. Petitioner had finally proven the cover up of the body-camera footage last year and the police chief Rob Fincher saying if he did still have the body-camera footage he would have no problem providing a copy of it to the Petitioner in Petitioner's legal quest to prove his innocence. The body-camera footage was covered up when G. E. Cassady was the police chief, and that evidence would have proven intoxication. The U.S. Attorney knew how serious this issue was regarding the letter from the police chief in response to Petitioner's FOIA request. Brady evidence was illegally destroyed as proven by three court orders (Document #335-11, all pages as specified in Document #335, Page 26 of 29) and certified letter to the police chief in 2019. Petitioner kept asking for the body-camera footage but the letters were ignored and so the body-camera footage was illegally destroyed instead in non-compliance with court orders. Due diligence was conducted by Petitioner, but the Respondent was okay with the unlawful destruction of evidence by Martinsville Police Department, in violation of three court orders.

g. Petitioner's constitutional rights of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) was violated. His

58

GROUND 8 (Dkt. #292, Page 4 of 194) and GROUND 5 (Dkt. #292, Page 3 of 194) does have merit. The body-camera footage destruction wasn't proven until February, 2023. It could not have been discovered at an earlier time since the former police chief was corrupt enough to ignore the multiple letters to the chief of police including the certified mail and return receipt. Documents #335-5 (EXHIBIT 4), #335-7 (EXHIBIT 6), #335-9 (EXHIBIT 8), and #335-10 (EXHIBIT 9) as specified in Document #335, Pages 4, 5, 6, 7, 12, 25, 26. Ignoring the three court orders for the body-camera footage (Document #335-11, all pages as specified in Document #335, Page 26 of 29). Petitioner was deprived of his Brady rights by the Respondent: United States of America who was given evidence by Martinsville Police Department (evidence against Petitioner) who violated three court orders ordering them to turn over the body camera footage in 2018 and 2019 but instead that evidence was spoliated. See the court orders in Document #335-11, all pages as specified in Document #335, Page 26 of 29. Petitioner has met his burden. Petitioner has proven that he did everything he possibly could as a criminal defendant to obtain this Brady evidence of the police body-camera footage which was covered up and destroyed after three court orders were not complied with.

## CONCLUSION

The U.S. Magistrate Judge's recommendations within his (Dkt. #336)("*ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE*

*JUDGE*") recommending denying and dismissing Petitioner's 2255 Motion case, it is erroneous, contradicts the facts, ignored the witnesses proposed which are material to the innocence of Petitioner and is material to many grounds in Petitioner's 2255 Motion, and has opinions and findings which are in in reckless disregard for the truth as they do not represent the evidence. The recommendations by the Magistrate need to be rejected and the 2255 Motion case remanded for further proceedings. Petitioner has filed enough evidence and a lot of evidence proving his claims of fraud on the court, Brady violation, and actual innocence. Petitioner is entitled to relief herein. Petitioner has met his burden of proof. Petitioner recommends this Honorable Court reject the Magistrate's recommendation in Document #336 recommending denying and dismissing Petitioner's 2255 Motion case.

Brian Hill is actually innocent of all three elements of his criminal charge. If the Court is still not convinced, they should hold an evidentiary hearing and appoint an attorney to represent Petitioner in this case to fully demonstrate through the testimony of the proposed witnesses (Dkt. #325, #325-1) to demonstrate that factual innocence has been proven by Petitioner. The Court needs to grant Petitioner's 2255 Motion and/or question the witnesses before disposition of Petitioner's 2255 Motion to prevent a miscarriage of justice. Convicting an innocent man of violating supervised release is a miscarriage of justice.

Respectfully filed with the Court, this the 12th day of September, 2024.

Respectfully submitted,

Brian D. Hill

Signed

**Brian D. Hill**

Signed

Brian D. Hill (Pro Se)

310 Forest Street, Apartment 2

Martinsville, Virginia 24112

Phone #: (276) 790-3505



Former U.S.W.G.O. Alternative News reporter

I stand with Q Intelligence and Lin Wood – Drain the Swamp

I ask Q Intelligence and Lin Wood for Assistance (S.O.S.)

Make America Great Again

https://rumble.com/v2ozhp6-the-deep-state-can-frame-you-the-documentary.html

-- JusticeForUSWGO.wordpress.com

USWGO.COM // JUSTICEFORUSWGO.NL

Petitioner also requests with the Court that a copy of this pleading be served upon the Government as stated in 28 U.S.C.§ 1915(d), that "The officers of the court shall issue and serve all process, and preform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases". Petitioner requests that copies be served with the U.S. Attorney office of Greensboro, NC via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

## CERTIFICATE OF SERVICE

61

Petitioner/Defendant hereby certifies that on September 12, 2024, service was made by mailing the original of the foregoing:

"PETITIONER'S OBJECTIONS TO ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE (DKT. #336) REGARDING TO MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (DKT. #291)"

by deposit in the United States Post Office, in an envelope, Postage prepaid, on September 12, 2024 addressed to the Clerk of the Court in the U.S. District Court, for the Middle District of North Carolina, 324 West Market Street, Greensboro, NC 27401.

Then pursuant to 28 U.S.C. §1915(d), Petitioner requests that the Clerk of the Court move to electronically file the foregoing using the CM/ECF system which will send notification of such filing to the following parties to be served in this action:

| | |
|---|---|
| Anand Prakash Ramaswamy<br>U.S. Attorney Office<br>Civil Case # 1:17 -cv-1036<br>101 South Edgeworth Street, 4th<br>Floor, Greensboro, NC 27401<br>Anand.Ramaswamy@usdoj.gov | Angela Hewlett Miller<br>U.S. Attorney Office<br>Civil Case # 1: 17 -cv-1036<br>101 South Edgeworth Street, 4th<br>Floor, Greensboro, NC 27401<br>angela.miller@usdoj.gov |
| JOHN M. ALSUP<br>U.S. Attorney Office<br>101 South Edgeworth Street, 4th<br>Floor, Greensboro, NC 27401<br>john.alsup@usdoj.gov | Margaret M. Reece<br>U.S. Attorney Office<br>251 N. Main ST., Ste. 726<br>Winston-Salem, NC 27101<br>morgan.reece@usdoj.gov |

This is pursuant to Petitioner's "In forma Pauperis" ("IFP") status, 28 U.S.C. §1915(d) that "The officers of the court shall issue and serve all process, and perform all duties in such cases ... "the Clerk shall serve process via CM/ECF to serve process with all parties.

| | |
|---|---|
| Date of signing:<br><br>Sept. 12, 2024 | Respectfully submitted,<br><br>Brian D. Hill<br>Signed<br>Brian D. Hill |

62

Signed
Brian D. Hill (Pro Se)
310 Forest Street, Apartment 2
Martinsville, Virginia 24112
Phone #: (276) 790-3505



I stand with Q Intelligence and Lin Wood – Drain the Swamp

I ask Q Intelligence and Lin Wood for Assistance (S.O.S.)

Make America Great Again

Friend's justice site: JusticeForUSWGO.wordpress.com

JusticeForUSWGO.NL; https://rumble.com/v2ozhp6-the-deep-state-can-frame-you-the-documentary.html





63

## The Deep State Can Frame You – the Documentary

https://rumble.com/v2ozhp6-the-deep-state-can-frame-you-the-documentary.html

